KIRBY AISNER & CURLEY LLP
*Co-Counsel for Jared Chassen*
700 Post Road, #237
Scarsdale, NY 10583
(914)401-9501
Dawn Kirby, Esq.
dkirby@kacllp.com

SCHWARTZ LAW PLLC
*Co-Counsel for Jared Chassen*
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
Allen Schwartz, Esq.
allen@allenschwartzlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| JJ ARCH LLC, | Case No. 24-10381 (JPM) |
| Debtor. | |

----------------------------------------------------X

## MOTION FOR AN ORDER DISMISSING THE DEBTOR'S BANKRUPTCY CASE

Jared Chassen ("Mr. Chassen"), by and through his undersigned counsel, submits this motion (the "Motion") for entry of an order dismissing the chapter 11 subchapter V case of JJ Arch LLC ("JJ Arch" or the "Debtor"). In support of the Motion, Mr. Chassen contemporaneously submits a declaration by Allen Schwartz, Esq. (the "Schwartz Decl.," attached as **Exhibit A**), the Declaration of Jared Chassen (the "Chassen Decl.," attached as **Exhibit B**), and the Declaration of Dawn Kirby (the "Kirby Decl.," attached as **Exhibit C**) and respectfully states as follows:

## PRELIMINARY STATEMENT

1.     This bankruptcy petition (the "Petition") is an unauthorized, bad-faith filing that wholly disregards the JJ Arch LLC Operating Agreement and defies and disobeys numerous court orders.

2.     The filing should be dismissed as unauthorized and in bad-faith because Jeffrey Simpson ("Mr. Simpson") never sought or obtained the consent of JJ Arch's other member, Mr. Chassen, as required by the JJ Arch LLC Operating Agreement ("JJ Arch Operating Agreement") and court orders entered in the New York County Supreme Court, Commercial Division (the "Commercial Division"), by the Honorable Joel M. Cohen in an action captioned *Simpson v. Chassen*, Index No. 158055/2023 (N.Y. Co.) (the "Commercial Division Proceeding"). Further, the filing itself is predicated on perjurious statements to this Court that Mr. Simpson is the "sole member" of JJ Arch because he terminated Chassen on August 5, 2023 (*See* Bankr. Doc. 1 at 4, 7, 12), when multiple court orders expressly provide that both Simpson and Chassen remain members, that neither can terminate each other without prior court permission, and that Simpson must obtain Chassen's consent for the "Major Decisions" listed in the JJ Arch Operating Agreement, one of which is a bankruptcy filing. *See* Schwartz Decl. Ex. 10, August 22, 2023 Order; Schwartz Decl. Ex. 12, September 15, 2023 Order to Show Cause; Schwartz Decl. Ex. 13, Nov. 22, 2023 Decision and Order; Schwartz Decl. Ex. 7, Amended JJ Arch LLC Operating Agreement (the "Amended JJ Arch Operating Agreement") at § 3.2(ii) (requiring Chassen's consent before any Bankruptcy Action);[1] Schwartz Decl. Ex. 1, JJ Arch LLC Operating Agreement at Definitions, Bankruptcy Action.

3.     Mr. Simpson and Mr. Chassen have been embroiled in extensive and voluminous litigation in the Commercial Division since August 2023 in which each has sought to terminate

---

[1] As amended by the May 22, 2021 Amendment No. 1 to Limited Liability Company Agreement of JJ Arch LLC. The amended JJ Arch LLC Agreement did not alter the removal provisions.

the other. Mr. Simpson was himself also terminated by Chassen in early August 2023 and Mr. Simpson was only restored as a member and to managerial authority by an August 21, 2023 court order he sought which restored both as members, with Chassen's consent rights enshrined in that order. Schwartz Decl. Ex. 10, August 22, 2023 Order Regarding Interim Operating Procedures. Mr. Simpson again attempted to terminate Chassen on September 1, 2023, which was again nullified by Commercial Division orders, with those same orders enjoining them from further purporting to terminate the other without prior court permission. Schwartz Decl. Ex. 12, September 15, 2023 Order to Show Cause; Schwartz Decl. Ex. 13, Nov. 22, 2023 Decision and Order.

4.      In his sworn bankruptcy petition to this Court, Mr. Simpson falsely swears under penalty of perjury that he is authorized to file this bankruptcy because he is the sole member of JJ Arch after he purported to terminate Mr. Chassen on August 5, 2023 (Bankr. Doc. 1 at 4, 7, 12). Mr. Simpson attaches a purported "Written Consent of the Managing Member of JJ Arch LLC" wherein he states that he elected to file bankruptcy "as sole member" of JJ Arch and that "Chassen has been removed from the Company for, *inter alia*, his conduct and for cause . . ." *Id.* at 7. In the perjurious list of equity holders in JJ Arch submitted to the bankruptcy court, Mr. Simpson claims "Mr Chassen was deemed to have resigned as a member of JJ Arch, as of August 5, 2023" and "accordingly Mr. Simpson currently owns 100% of the equity interests" in JJ Arch. *Id.* at Schedule I. He makes the same claim in his sworn "Corporate Ownership Statement." *Id.* at Corporate Ownership Statement.

5.      Mr. Simpson's statements under penalty of perjury to this Court that he is authorized to file this petition on behalf of the debtor because he owns 100% of the membership interests in JJ Arch are thus not only false but are also an attack on the power and integrity of judicial system. His claim that he has bankruptcy filing authority because Chassen ceased to be a

member of JJ Arch as of August 5, 2023, (Bankr. Doc. 1 at 4, 7, 12), is in direct defiance of the very order that restored Chassen as managing member, as well as Commercial Division Orders that nullified and enjoined Mr. Simpson's further attempt to terminate Chassen on September 1, 2023 and orders which ultimately enjoined both from purporting to terminate each other without prior court permission.

6.       Mr. Simpson's purpose in bringing the Petition under chapter 11 is to use this Court as a vehicle to collaterally attack and defy these orders, using the automatic stay as a sword. The JJ Arch Operating Agreement, together with the orders in the Commercial Division Proceeding, leave no doubt that Mr. Simpson not only lacked authority to bring the Petition, but that this filing is in bad faith and in contempt of court.[2]

## JURISDICTION AND VENUE

7.       This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.       Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9.       This proceeding has been initiated pursuant to §§ 105(a) and 1112(b) of title 11 of the United States Code, 11 U.S.C §§ 101, et seq. (the "Bankruptcy Code").

---

[2] Mr. Chassen intends to bring a criminal contempt proceeding against Mr. Simpson before the Commercial Division to punish him for his injury to the power and dignity of the Commercial Division and the judicial system. As discussed herein, the Commercial Division repeatedly ordered that both Chassen and Simpson are members of JJ Arch, and in direct disobedience, Mr. Simpson filed this Petition as "sole member." **The Commercial Division also required that Mr. Simpson obtain Chassen's consent before any Major Decision such as bankruptcy, which Mr. Simpson also defied.** In addition, Mr. Simpson violated other Commercial Division orders which specifically required him to obtain Mr. Chassen's consent before asset sales, and which compelled him to give Mr. Chassen bank account viewing access and books and records. Unlike civil contempt, criminal contempt "is utilized to protect the dignity of the judicial system and to compel respect for its mandates." *McCormick v Axelrod*, 59 N.Y.2d 574, 583 (N.Y. Ct. App. 1983). The punishment for criminal contempt "may be by fine, not exceeding one thousand dollars, or by imprisonment, not exceeding thirty days, in the jail of the county where the court is sitting, or both, in the discretion of the court." NY Jud. § 751. "Criminal contempt orders, which are purely punitive, are outside the scope of the automatic stay whose purpose is to protect the estate for the benefit of creditors and promote the estate's orderly disposition." *In re Maloney*, 204 B.R. 671, 674 (Bankr. E.D.N.Y. 1996) (citations omitted).

## RELIEF REQUESTED

10.     By this Motion, Mr. Chassen requests the entry of an order, substantially in the form submitted herewith, (I) dismissing the Debtor's chapter 11 subchapter V case pursuant to 11 U.S.C. § 1112(b)[3]; and (II) granting a hearing on shortened notice.

## REQUEST FOR RELIEF ON SHORTENED NOTICE

11.     Typically, a motion to dismiss requires twenty-one days' notice pursuant to Bankruptcy Rule 2002(a)(2).

12.     Federal Rule of Bankruptcy Procedure 9006(c) provides as follows:

> (c) *Reduction.*
>
> (1) *In General.* Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.
>
> (2) *Reduction Not Permitted.* The court may not reduce the time for taking action under Rules 2002 (a)(4) and (a)(8), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

13.     Thus, the Federal Rules of Bankruptcy Procedure specifically authorize the Court to hear this Motion on shortened notice, for cause shown.

Mr. Chassen respectfully submits that sufficient cause exists for scheduling a hearing on shortened notice to consider the Motion as set forth in the concurrently filed Declaration of Dawn Kirby.

## BACKGROUND

---

[3] Should this Court decline to grant this Motion, Mr. Chassen intends to seek relief from the automatic stay pursuant to 11 U.S.C. § 362 in a separate motion, and expressly reserves all rights to do so. Mr. Chassen further reserves all rights to move before this Court or the Commercial Division for damages and/or sanctions as a result of this frivolous and fraudulent bankruptcy filing.

## I. The Parties.

14.     Mr. Chassen and Mr. Simpson are the two members of JJ Arch, the former managing member of Arch Real Estate Holdings LLC ("AREH"), and its various subsidiaries and affiliates. *See* Schwartz Decl., Ex. 1, JJ Arch LLC Operating Agreement at §1.1, Definitions, Members; Ex. 2. Arch Real Estate Holdings LLC Operating Agreement at Preamble. Previously, Mr. Simpson and Mr. Chassen had worked together at Greystone Development, an affiliate of Greystone & Co., Inc. a real estate services firm. Schwartz Decl., Ex. 3 Sept. 18, 2023 Chassen Aff. at ¶ 3. In 2017, Mr. Simpson unceremoniously left Greystone, where he had a reputation of being overly aggressive, after numerous failed projects which blew through their budgets. *Id.* at ¶¶ 5-7. The separation was acrimonious. *Id.* at ¶¶ 6-7.

15.     As things were faltering at Greystone, Mr. Simpson tried to start a new development business but struggled to find investors. *Id.* at ¶ 8. Mr. Chassen had developed a relationship with 608941 NJ LLC's ("Oak") CEO, Michael Wiener, where they had discussed pursuing potential real estate opportunities together. *See* Schwartz Decl., Ex. 4, Oct. 17, 2023 Michael Weiner Affirm. at ¶¶ 17-18. Mr. Chassen later told Mr. Wiener that not only was Mr. Chassen interested, but that Mr. Simpson was too. *Id.* at ¶ 21.

16.     Mr. Simpson and Chassen formed JJ Arch together as part of a joint venture with Oak. *Id.* at ¶ 24.   Oak is a Canadian family-owned holding company that is an active investor in many industries, including real estate. *Id.* at ¶¶ 2-5. Under this joint-venture, memorialized in the December 11, 2017 Limited Liability Company Operating Agreement of Arch Real Estate Holdings LLC (the "AREH Operating Agreement"), JJ Arch acted as managing member of AREH and Oak was the investor-member. Schwartz Decl., Ex. 2, AREH Operating Agreement at Preamble, § 1.1. at definition for "Managing Member."  Oak ultimately contributed at least $50

million into properties managed by AREH in addition to guaranteeing loans underlying many of these properties as well. *See* Schwartz Decl., Ex. 5, October 17, 2023 Kevin Weiner Affirm. at ¶¶ 34, 57.

17. The real estate portfolio owned and controlled by AREH and its affiliates and subsidiaries ("Arch") grew at its height to more than $1Bn in assets under management, held in various single purpose companies affiliated with or controlled by AREH. Schwartz Decl., Ex. 3, Sept. 18, 2023 Chassen Aff. at ¶ 9. AREH also owns and controls a property management company, a brokerage company, a construction company, and a construction employment company, each of which provides services relating to real properties that Arch controls. *Id.; See also* Schwartz Decl., Ex. 6, Nov. 16, 2023 Rebecca Tokarczyk Aff. at ¶ 13.

## II. The Operating Agreements.

18. Under the JJ Arch Operating Agreement, Mr. Simpson is the managing member of JJ Arch while Mr. Chassen has consent rights to Major Decisions, which includes the decision to file for bankruptcy. *See* Schwartz Decl., Ex. 7, Amended JJ Arch LLC Operating Agreement at § 3.2. Section 3.2 of the Amended JJ Arch Operating Agreement provides that Mr. Simpson must obtain Mr. Chassen's consent before he can "file, acquiesce to, consent to or take of any Bankruptcy Action." *Id.*at § 3.2(ii). A Bankruptcy Action is defined broadly to include, "[w]ith respect to any Member, with respect to any Person, if such Person . . .files a voluntary petition in bankruptcy." *Id.* at § 1.1, Definitions, Bankruptcy Action. "Person" means "an individual, trust, estate, partnership, joint venture, association, company, corporation or other entity." *Id.* at § 1.1, Definitions, Person.

19. The JJ Arch Operating Agreement also contains a Resignation provision which allows Mr. Simpson and Mr. Chassen to terminate each other for Cause Events. *Id.* at §1.1,

Definitions, Resignation. The JJ Arch Operating Agreement incorporates the AREH Operating Agreement's Cause Events wholesale without any changes or modifications. *Id*. at §1.1, Definitions, Cause Event. It provides that a Cause Event is "with respect to a Member, the occurrence of a Cause Event (as defined in the AREH Operating Agreement) with respect to such Member." *Id*.

20.     The Cause Events that allow Mr. Simpson and Mr. Chassen to remove each other (and allow Oak to terminate JJ Arch) are: (i) willful misconduct in relation to the business or affairs of AREH or its subsidiaries; (ii) breach of fiduciary duty in relation to the business or affairs of AREH or its subsidiaries; (iii) gross negligence in relation to the business or affairs of AREH or its subsidiaries that results in a material loss to AREH, its subsidiaries, JJ Arch, or Oak; (iv) a final non-appealable finding of fraud by a court of competent jurisdiction in any relation to any business of its affairs; (v) misappropriation of AREH or its subsidiaries funds or assets; (vi) a felony conviction by Mr. Simpson; (vii) any wrongful act or omission resulting in the acceleration of any loan encumbering AREH's property; or (viii) any material breach of the AREH Operating Agreement. Schwartz Decl. Ex. 2, AREH Operating Agreement at §1.1, Definitions, Cause Event.

**III.     The Supreme Court Has Barred Mr. Simpson from Terminating Mr. Chassen Without its Prior Permission or Taking a Major Decision without Mr. Chassen's Consent.**

21.     Mr. Simpson filed this bankruptcy in contempt of multiple orders entered in the Commercial Division Proceeding. In that litigation both Mr. Simpson and Mr. Chassen seek to terminate each other for alleged Cause Events as members of JJ Arch. *See* Schwartz Decl. Ex. 8, Complaint; Schwartz Decl. Ex. 9, Amended Counterclaims.   The Cause Events that led Mr. Chassen to seek to terminate Mr. Simpson are described in his Amended Counterclaims, and

include misappropriation of AREH assets, self-dealing, extortion of Oak, and repeated threats to blow-up AREH and its subsidiaries. Schwartz Decl. Ex. 9, Amended Counterclaims at ¶¶ 23-98.

22.     In August 2023, Mr. Simpson and Mr. Chassen purported to terminate each other, but on August 21, 2023, after Simpson filed a motion seeking to be restored as managing member of JJ Arch, the Commercial Division ruled that "the August 2023 instruments sent by Mr. Simpson and Mr. Chassen to the other purportedly resigning or terminating the other as member or managing member of JJ Arch are hereby void and of no force or effect." Schwartz Decl. Ex. 10, Aug. 21, 2023 Order Regarding Interim Operating Procedures at 2. The Commercial Division also ordered that "the business, affairs, and assets of JJ Arch shall be managed by Mr. Simpson, subject to the limitations set forth in Section 3.2 of the JJ Arch Operating Agreement, which provides among other things that any Company Major Decision, as defined in the JJ Arch Operating Agreement, shall be undertaken only with the prior written consent of Mr. Chassen." *Id.*

23.     On September 1, 2023, just days later, Mr. Simpson sent Mr. Chassen another purported termination notice. Schwartz Decl., Ex. 11, Sept. 14, 2023 Chassen Aff. at ¶ 52. On September 15, 2023, the Supreme Court directed that Mr. Simpson "shall reinstate Mr. Chassen" and that "neither Mr. Simpson nor Mr. Chassen shall purport to terminate or 'resign' the other from membership in the company without court permission." Schwartz Decl., Ex. 12, September 15, 2023 Order to Show Cause. The Court expressly reiterated that its "Order Regarding Interim Operating Procedures (NYSCEF 36) remains in effect." *Id.*

24.     The Commercial Division recognized that Simpson, by his conduct during the two-week period after his restoration as managing member, "demonstrated the inclination to take every opportunity possible to either get around court orders or further inflame the situation at every turn."

*See* Schwartz Decl. Ex. 31, Sept. 29, 2023, Hr. Tr. at 50:18-21. Simpson "has acted in ways that trouble [the Court] in terms or complying with court orders . . ." *Id.* at 43:3-5.

25. On November 22, 2023, the Supreme Court granted a preliminary injunction which provided that "Mr. Simpson's purported termination letter to Mr. Chassen is void and shall not take effect." Schwartz Decl., Ex. 13, November 22, 2023 Decision and Order at 2. Further, "Mr. Simpson and Mr. Chassen are enjoined from unilaterally seeking to terminate or force the resignation of the other member without permission of the Court. The Court again expressly reiterated that its "Order Regarding Interim Operating Procedures (NYSCEF 36) remains in effect." *Id.*

26. As addressed in Section VI below, Simpson has subsequently sought permission from the Commercial Division to terminate Chassen—proving his obvious awareness not only that Chassen remains a member of JJ Arch, but that also lacks authority to remove Chassen, having himself only been restored to managerial control by court order. *See* Schwartz Decl., Ex. 25. As of the date of the Petition, Mr. Simpson's motion seeking to remove Chassen remains pending. *See* Schwartz Decl., Ex. 26. The Commercial Division scheduled an at least two-day evidentiary hearing to occur in June 2024 with cross-motions due on March 22, 2024, as Chassen had told the Court he would cross-move for permission to terminate Simpson. Schwartz Decl. ¶ 9.

IV. **The Supreme Court Enforced Oak's Termination of JJ Arch as Managing Member of AREH Based on Overwhelming Evidence of Mr. Simpson's Misconduct.**

27. In October 2023, Mr. Simpson was again threatening that he would put AREH into bankruptcy without Oak's consent, even though such a decision was a Major Decision that required Oak's consent, and was refusing to provide books and records. Schwartz Decl., Ex. 5, Oct. 17, 2023 Kevin Weiner Affirm. at ¶ 65. On October 17, 2023, Oak intervened in the Supreme Court Action seeking the emergency appointment of a temporary receiver over JJ Arch, and cited Mr.

Simpson's increasingly unstable behavior, breaches of fiduciary duty, misappropriation of assets, and threats to destroy AREH. Schwartz Decl. Ex. 14, Oct. 17, 2023 Order to Show Cause. On October 27, 2023, the Supreme Court issued an Interim Order which compelled Mr. Simpson to comply with his obligations under the AREH Operating Agreement, which included its consent rights regarding any bankruptcy filing, and to provide Oak with books and records "of AREH and all subsidiary entities to whom Investor Member or its affiliate has contributed capital or that are directly or indirectly managed by AREH." Schwartz Decl., Ex. 15, Oct. 27, 2023 Interim Order Regarding Measures During the Pendency of the Order to Show Cause Regarding the Appointment of Receiver for JJ Arch at 3-7. Within approximately two hours, Mr. Simpson notified AREH's employees that he was furloughing them indefinitely, jeopardizing not only AREH, but the safety of the tenants in its properties. *See* Schwartz Decl. Ex. 16, Nov. 3, 2023 Dana King Affidavit at ¶ 10. On October 31, 2023, Oak terminated JJ Arch as managing member of AREH. *See* Schwartz Decl. Ex. 17, Oak's Termination Notice.

28.     On November 3, 2023, Oak moved for a temporary restraining order and preliminary injunction barring JJ Arch from acting as managing member of AREH and enforcing Oaks' removal. *See* Schwartz Decl. Ex. 18, Oak's Order to Show Cause. Oak submitted voluminous testimony showing that Mr. Simpson had committed numerous Cause Events. For example, Oak submitted the testimony of Rebecca Tokarczyk, AREH's former accounting manager, who described Mr. Simpson "an extremely aggressive person whose management style can only be described as abusive." Schwartz Decl., Ex. 6, Nov. 16, 2023 Rebecca Tokarczyk Aff. at ¶ 15. She testified that at AREH "accounting operations fell below what I considered to be standard operating procedures, based on my education and prior work experience within other organizations. The degree of informality, lack of documentation, and general lack of discipline or

rigor in process was very concerning to me, but AREH was also not a place where differences of opinion were encouraged or even tolerated[.]" *Id.* at ¶ 10. She described being asked by Mr. Simpson to transfer funds in ways that she considered "questionable, if not fraudulent." *Id.* at ¶ 17. When she expressed her concern, Mr. Simpson told her, "I am the Managing Member, I can take money from wherever I want." *Id.* She testified, "[b]ased on my experience working under the direction of Mr. Simpson for the past year, I do not believe Mr. Simpson is fit to run any company including, but not limited to, AREH and JJ Arch. In my opinion, he has failed his fiduciary duties as Managing Member." *Id.* at ¶ 23.

29.     Oak also presented testimony that Mr. Simpson used funds he earned from AREH "to buy other properties owned by JJ Arch or personally, while using AREH resources to staff and manage those properties without compensation." Schwartz Decl. Ex. 19, Nov. 17, 2023 Michael Wiener Affirm. at ¶ 24. Mr. Simpson improperly used AREH funds to pay for an auto shop unrelated to AREH.  Schwartz Decl. Ex. 20, Nov. 13, 2023 Kevin Wiener Affirm. at ¶¶ 16-17 (describing how Mr. Simpson improperly used AREH funds to pay for auto-shop unrelated to AREH); *id.* at ¶¶ 21-22 (describing unpaid taxes and unopened IRS default correspondence). Mr. Simpson's misconduct was longstanding. Schwartz Decl. Ex. 11, Sept. 14, 2023 Chassen Aff. at ¶¶ 19-25 (describing how Mr. Simpson forced AREH employees to misrepresent investments, failed to supervise or manage projects, prioritized his personal gain, improperly used AREH employees for other businesses, and abused employees and investors); Schwartz Decl. Ex. 21, Oct. 6, 2023 Chassen Aff. at ¶¶ 19-23 (testifying that rather than disclose to AREH's investors that proposed 1031 exchange vehicles had failed, and investors were facing huge tax liabilities, information he knew since 2022, Mr. Simpson hid this information from investors, and never sent investors K-1s.).

30.     On November 22, 2023 the Commercial Division granted Oak's motion and on November 28, 2023 issued the Amended PI Decision and Order which removed JJ Arch as the managing member of AREH pending the conclusion of the lawsuit and provided that either Mr. Simpson or Mr. Chassen could consent to major decisions at AREH on behalf of JJ Arch. Schwartz Decl. Ex. 22, Nov. 22, 2023 Amended PI Decision and Order. The Amended PI Decision and Order had been "justified by what [the Court] consider[s] overwhelming evidence of just some outrageous conduct." Schwartz Decl. Ex. 23, Feb. 2, 2024 Hr. Tr. at 50:5-7. Mr. Simpson did not appeal or seek leave to reargue the Amended PI Decision and Order.

### V.     After Taking Managerial Control, Oak Injected Cash into AREH and is Working to Stave Off Imminent Portfolio-Wide Foreclosures.

31.     The Amended PI Decision and Order was issued against the backdrop of a company, AREH, that was, and still is, facing portfolio-wide defaults and foreclosures wrought by Mr. Simpson. *See* Schwartz Decl. Ex. 21, Oct. 6, 2023 Chassen Affirm. at ¶¶ 7-13, 22, 24, 27. Since Oak took over as interim managing member of AREH, it has stabilized AREH, worked to restructure AREH so that it can be viable, injected capital, and negotiated with lenders to stave off foreclosures. Schwartz Decl. Ex. 24, Feb. 1, 2024 Kevin Wiener Affirm. at ¶¶ 3-10; *see also* Schwartz Decl. Ex. 20, Nov. 13, 2023 Kevin Wiener Affirm. at ¶¶ 3-9. Instead of supporting Oak's efforts, Mr. Simpson has acted to stymie Oak at every turn. Schwartz Decl. Ex. 24, Feb. 1, 2024 Kevin Wiener Affirm. at ¶¶ 47-51. Indeed, he has said that "he is unwilling to provide major decision consent to any restructuring agreement with a lender unless Oak releases him from any claims to the property." Schwartz Decl. Ex. 19, Nov. 17, 2023 Michael Wiener Affirm. at ¶ 18. His attempts to extort releases for consent is "readily explained by the fact that at this point releases from Oak are likely worth far more to Mr. Simpson than whatever negligible equity he still holds in [AREH]." *Id.* at ¶ 25.

32.     Though the Amended PI Decision and Order expressly provided that either Mr. Simpson or Mr. Chassen could consent on behalf of JJ Arch, and barred Mr. Simpson from interfering with Oak's management of AREH, to prevent Oak from entering any forbearances, Mr. Simpson told lenders that his consent was required and worked to prevent forbearances that would stave off imminent foreclosures. Schwartz Decl. Ex. 24, Feb. 1, 2024 Kevin Weiner Aff. at ¶¶ 33-51.

## VI.     Mr. Simpson Has Engaged in Failed Efforts to Attack the Amended PI Decision and Order.

33.     On January 29, 2023, Mr. Simpson brought a motion seeking to vacate the Amended PI Decision and Order alleging changed or compelling circumstances and for permission to terminate Mr. Chassen as a member of JJ Arch. *See* Schwartz Decl. Ex. 25, Signed Order to Show Cause.  Mr. Chassen had brought a motion seeking a limited temporary receiver over JJ Arch, as well as a temporary restraining order and preliminary injunctive relief requiring books and records access, bank account viewing access, and limits on Mr. Simpson's asset sales and distributions. *See* Schwartz Decl. Ex. 33, Chassen's January 28, 2023 Affidavit in Support of Order to Show Cause. On February 8, 2024, after oral argument, Justice Cohen denied Mr. Simpson's motion to vacate the Amended PI Decision and Order and set for a two-day evidentiary hearing, Mr. Simpson's motion for permission to terminate Mr. Chassen, with a March 22, 2024 deadline for Mr. Chassen to file a cross-motion for permission to terminate Mr. Simpson, and Oak to file any relevant cross-motions. *Id*. The Court granted Mr. Chassen's request for a temporary restraining order in part and set that motion to be heard at the same evidentiary hearing. *See* Schwartz Decl. Ex. 32, February 07, 2024 Signed Order to Show Cause.

34.     On February 12, 2024, Mr. Simpson sent a letter to the Deputy Chief Administrative Judge of the New York City Courts attacking Justice Cohen and claiming that he

was biased against Simpson because he was "impressed" with big-law firm attorneys, not the overwhelming evidence of his own malfeasance. *See* Schwartz Decl. Ex. 27, Feb. 12, 2024 Email from Simpson to Deputy Chief Administrative Judge of the New York City Courts Deborah Kaplan. On February 16, 2024, Special Counsel to the Deputy Chief Administrative Judge responded that if Mr. Simpson disagreed with the Commercial Division's decisions, "an application to reargue or an appeal might be appropriate." *See* Schwartz Decl. Ex. 28, Feb. 16, 2024 Letter from Special Counsel to Simpson.

35. On February 22, 2024, Mr. Simpson filed an emergency motion to the Appellate Division, First Department seeking to stay the portion of the Amended PI Decision and Order that allowed Mr. Chassen to consent to Major Decisions on behalf of JJ Arch. *See Simpson v. Chassen*, Appellate Division, First Department Docket No. 2024-01021 at Doc. Nos 3, 5. On February 22, 2024, the Appellate Division, First Department, after briefing and oral argument, denied Mr. Simpson's application for interim emergency relief, and referred the motion to a panel for disposition. *Id.* At Doc. Nos. 6-9; *See* Schwartz Decl. Ex. 30, Appellate Division, First Department Feb. 22, 2024 Order.

## VII.  Mr. Simpson Filed this Perjurious Bankruptcy Petition without Mr. Chassen's Consent and in Defiance of the Supreme Court.

36. On March 7, 2024, Mr. Simpson filed this bankruptcy petition on behalf of JJ Arch without seeking or obtaining Chassen's consent in derogation of the JJ Arch Operating Agreement and numerous court orders. Mr. Simpson's bankruptcy filing is perjurious, predicated on his claim that Chassen is not a member of JJ Arch since August 5, 2023 and thus he was authorized to file this petition without Chassen's consent because Mr. Simpson is the 100% member. The filing, and the representations made in it, is in direct disobedience of the Commercial Division's orders.

37.     As demonstrated herein, this case should be dismissed for cause because Mr.

Simpson did not have the requisite authority under the JJ Arch Operating Agreement to place JJ

Arch into bankruptcy proceedings. This petition is, in fact, a forum shopping gambit that is nothing

less than a contempt of the Commercial Division predicated on false statements to this Court. It is

the epitome of a bad-faith bankruptcy filing, filed without Chassen's consent or authorization, in

derogation of the JJ Arch Operating Agreement and in direct defiance of the Commercial Division.

**I.      The Debtor's Chapter 11 Subchapter V Case Should Be Dismissed for Cause.**

**A.  The Standard for Dismissing a Debtor's Case.**

38.     Section 1112(b) of the Bankruptcy Code requires a court to dismiss a case "for

cause," unless the court determines that the appointment of a trustee or an examiner under section

1104(a) of the Bankruptcy Code is in the best interests of the creditors and the estate.  *See* 11

U.S.C. § 1112(b)(1).

39.     The Bankruptcy Code does not define "cause."  Rather, section 1112(b)(4) of the

Bankruptcy Code lists several non-exclusive examples of "cause" needed to dismiss a bankruptcy

case. Therefore, courts may also consider other factors when deciding whether cause exists to

dismiss a bankruptcy case. *See In re Ameribuild Const. Mgmt. Inc.*, 399 B.R. 129, 131 n.3 (Bankr.

S.D.N.Y. 2009); *In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) ("A finding of

cause is not limited to the grounds stated in 1112(b).").   Furthermore, "cause" may be established

upon a finding of the debtor's "bad faith." *In re GEL, LLC*, 495 B.R. 240, 246 (Bankr. E.D.N.Y.

2012).   A court's consideration of cause is a fact-specific inquiry.  *In re Taberna Preferred

Funding IV, Ltd.*, 594 B.R. 576, 601 (Bankr. S.D.N.Y. 2018).

**B. Mr. Simpson Does Not Possess the Requisite Authority to Place JJ Arch into Bankruptcy Proceedings and His Filing Violates Multiple Court Orders.**

40.     It is a basic proposition of law that a bankruptcy petition shall be dismissed if it was filed without authorization. *See In re E. End Dev., LLC*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013); *In re Pasta Bar By Scotto II, LLC*, No. 15-12766, 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. Nov. 19, 2015) (Glenn. J.) (dismissing chapter 11 case as an unauthorized filing and upholding as enforceable an operating agreement provision that required approval of a supermajority of the LLC members to approve a bankruptcy filing). *See also In re Aamagin Prop. Grp., LLC*, No. CV 23-383-JWD-RLB, 2024 WL 457801, at *1 (M.D. La. Feb. 6, 2024) (affirming dismissal of a bankruptcy petition filed by one member of an LLC where the operating agreement required unanimous consent of the members to do so); *Hadeed v Advanced Vascular Resources of Johnstown, LLC*, 590 B.R. 323, 324 (Bankr W.D. Pa. 2018) (dismissing petition filed without consent. State law determines who has the authority to file a bankruptcy petition on behalf of a business entity because "[t]he Bankruptcy Code does not establish what the internal requisites are for the initiation of a voluntary corporate bankruptcy proceeding." *In re American Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) (quoting *In re Autumn Press, Inc.*, 20 B.R. 60, 61 (Bankr. D. Mass. 1982)); *In re ComScape Telecom., Inc*, 423 BR 816, 830 (Bankr S.D. Ohio 2010) ("It also is well-settled that applicable state law determines whether a bankruptcy filing was authorized.") (citations omitted).

41.     Further, even without relying on § 1112(b), Courts dismiss bankruptcy proceedings when the Court "'finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings," in which case "it has no alternative but to dismiss the petition.'" *In re ComScape Telecom*, 423 B.R. at 830 (quoting *Price v. Gurney,* 324 U.S. 100, 106, 65 S. Ct. 513, 89 L. Ed. 776 (1945)). S*ee In re Southern Elegant Homes, Inc.,* 2009

Bankr. LEXIS 1478, 2009 WL 1639745 at *1 (Bankr. E.D.N.C. June 9, 2009) (dismissing unauthorized petition without relying on § 1112(b)); *In re N2N Commerce, Inc.,* 405 B.R. 34, 41 (Bankr. D. Mass. 2009)(same); *In re Telluride Income Growth Ltd. P'ship,* 311 B.R. 585, 591 (Bankr. D. Colo. 2004)(same); *Kelly v. Elgin's Paint & Body Shop, Inc. (In re Elgin's Paint & Body Shop, Inc.),* 249 B.R. 110, 112 (Bankr. D. S.C. 2000) (same). *See also In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D.N.J. 2021) (noting "the Court . . . would be required to dismiss [that] unauthorized filing even if § 1112(b) were not in the Bankruptcy Code") (quoting *In re ComScape Telecom*, 423 B.R. at 830).

42.     Here, the JJ Arch Operating Agreement requires both members of JJ Arch—Mr. Simpson and Mr. Chassen—to consent to the filing of any Bankruptcy Action, as that term is defined in the JJ Arch Operating Agreement. *See* Schwartz Decl. Ex. 7, Amended JJ Arch Operating Agreement at § 3.2(ii) (requiring Chassen's consent before any Bankruptcy Action); Schwartz Decl. Ex. 1, JJ Arch LLC Operating Agreement at Definitions, Bankruptcy Action (defining Bankruptcy Action). Chassen's consent rights are also enshrined in multiple court orders, including the court order on August 22, 2023, sought by Simpson, that restored Simpson himself to managerial control of JJ Arch by which he purports to have any authority to act on behalf of JJ Arch. *See* Schwartz Decl. Ex. 10, Aug. 21, 2023 Order Regarding Interim Operating Procedures.

43.     In the August 21, 2023 *Order Regarding Interim Operating Procedures* (the "August Interim Order") by which Simpson was restored to managerial control of JJ Arch, the Commercial Division held that "the August 2023 instruments sent by Mr. Simpson and Mr. Chassen to the other purportedly resigning or terminating the other as member or managing member of JJ Arch are hereby void and of no force or effect." *Id.* at 2. The Commercial Division also ordered that "the business, affairs, and assets of JJ Arch shall be managed by Mr. Simpson,

subject to the limitations set forth in Section 3.2 of the JJ Arch Operating Agreement, which provides among other things that any Company Major Decision, as defined in the JJ Arch Operating Agreement, shall be undertaken only with the prior written consent of Mr. Chassen." *Id.*

44.     The Amended JJ Arch Operating Agreement provides that if "Simpson desires to cause the Company or an Investment Entity to take any of the following decisions or actions (each a "Company Major Decision"), Simpson shall provide written notice thereof to Chassen . . . Any Company Major Decision shall be undertaken only with the prior written consent of Chassen . . ." Schwartz Decl. Ex. 7, Amended JJ Arch Operating Agreement at §3.2(b). Section 3.2(b)(ii) lists as one of the Company Major Decisions, an action to "file, acquiesce to, consent to, or take any Bankruptcy Action."

45.     The Commercial Division reaffirmed that the August Interim Order was still in full force and effect in its September 15, 2023 *Emergency Order to Show Cause* (Schwartz Decl. Ex. 12) and November 22, 2023 *Decision and Order on Motion.* Schwartz Decl. Ex. 13.

46.     Mr. Simpson's filing defies all these orders.[4] It is predicated on his false, sworn claim that he is the 100% member of JJ Arch and therefore does not need Chassen's consent to file bankruptcy. Multiple state court orders expressly provide otherwise. Mr. Simpson has no right to simply disagree with the Commercial Division and act as if its orders do not matter. Both the terms of the JJ Arch Operating Agreement and the Commercial Division orders require Mr. Simpson to provide notice and obtain consent from Mr. Chassen to place the Debtor into bankruptcy. Mr.

---

[4] It is black letter law "[a]n injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn." *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 766–67 (1983) (citing Restatement (Second) of Contracts §§ 261 & 264 (1981) (other citations omitted). Mr. Simpson's pending appeal of the November PI, regardless of its merits, does not alter this rule.  In fact, Mr. Simpson's pending appeal in the First Department conclusively establishes his awareness of the binding effect of the Commercial Division's orders.

Simpson did not notify Mr. Chassen or obtain consent, nor did he apprise this Court of the numerous orders issued by the Commercial Division directly addressing his authorization to file (or of the existence of the Commercial Division Proceeding at all). Chassen Aff. at ¶¶ 3-4; Schwartz Decl. at ¶ 12. In fact, he falsely swore to this Court that he was the 100 percent owner of JJ Arch based on a termination notice in August 2023 that the Commercial Division had enjoined and nullified. As such, this case must be dismissed because it was filed in derogation of State law and was wholly unauthorized.[5]

47. Mr. Simpson's filing of the Petition, in violation of both the operating agreement and court orders, presents a nearly identical fact-pattern to that in *In re Arista Imaging of N. Miami, LLC*, No. 19-26519-AJC, 2020 WL 609613 (Bankr. S.D. Fla. Feb. 7, 2020), where the court held: "The Court believes the record before it indicates 'cause' is present here on the basis that the Debtors' chapter 11 cases were commenced improperly by Farrell, an ousted manager subject to a validly issued state court order that he not have any involvement in or control over any matter relating to either of the Debtors and who acted without requisite corporate authority under the governing Operating Agreement, state law, and the orders of the State Court." *Id.* at *8. The *Arista* court dismissed out of hand the notion that the state court orders need not be regarded, and dismissed the unauthorized chapter 11 case. *Id.* at *9, *12. The same result is compelled here.

48. Similarly, *In Re S&R Grandview LLC*, 2013 WL 5525729 (Bankr. E.D.N.C. 2013), the Court dismissed the case as an unauthorized bad faith filing where a State Court order enjoined

---

[5] While Mr. Simpson's lack of authority to initiate the Debtor's case is dispositive to the question of whether it must be dismissed, it was also brought in bad faith, in violation of Bankruptcy Code Section 1112(b). *See In re Hartford & York LLC*, 2014 Bankr. LEXIS 997, at *9 (Bankr. E.D.N.Y. 2014). For the sake of brevity, the issue of Mr. Simpson's bad faith and the applicability of the bad faith factors from *C-TC 9th Ave. Partnership v. Norton Co.* (*In re C-TC 9th Ave. Partnership*), 113 F.3d 1304, 1311 (2d Cir. 1997) are not addressed herein, but Mr. Chassen stands ready to submit supplemental briefing on this issue at the Court's request.

the individual who caused the Debtor to file its chapter 11 case from exercising any of his rights as a member of the Debtor organization.

## NOTICE

49.     Notice of this Motion will be given to: (i) the Debtor and its counsel; (ii) the United States Trustee for the Southern District of New York; and (iii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 or as otherwise ordered by the Court.

## CONCLUSION

**WHEREFORE**, Mr. Chassen respectfully requests that this Court enter an order substantially in the form submitted herewith, dismissing the Debtor's chapter 11 subchapter V case pursuant to 11 U.S.C. § 1112(b), and granting a hearing on shortened notice.

Dated: March 14, 2024

**KIRBY AISNER & CURLEY LLP**

*/s/ Dawn Kirby*
Dawn Kirby
700 Post Road, #237
Scarsdale, NY 10583
(914)401-9501
dkirby@kacllp.com

*/s/ Allen Schwartz*
SCHWARTZ LAW PLLC
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel to Mr. Chassen*