**OLSHAN FROME WOLOSKY LLP**
Adam H. Friedman
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
afriedman@olshanlaw.com

*Attorneys for Arch Real Estate Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JJ ARCH LLC,<br><br>             Debtor.[1] | Chapter 11<br>(Subchapter V)<br><br>Case No. 24-10381 (JPM) |

**ARCH REAL ESTATE HOLDINGS LLC'S NOTICE OF JOINDER TO JARED CHASSEN'S MOTIONS (1) FOR AN ORDER SCHEDULING A HEARING IN SHORTENED NOTICE AND (2) FOR AN ORDER DISMISSING THE DEBTOR'S BANKRUPTCY CASE**

Arch Real Estate Holdings LLC ("AREH") by and through its counsel, Olshan Frome Wolosky, LLP respectfully submit this *Notice of Joinder to the Motion for an Order Scheduling a Hearing on Shortened Notice* ("Motion to Shorten") [Doc. No. 5] and *Motion for an Order Dismissing the Debtor's Bankruptcy Case* [Doc. No 4] (the "Motion to Dismiss"), filed by Jared Chassen ("Mr. Chassen") (collectively, the "Motions")

1.  AREH joins in the Motion to Shorten, and likewise asks that this case be dismissed as an unauthorized filing made in bad faith. As established in the Motion to Dismiss, Mr. Simpson, improperly, without authorization, and in direct disobedience of the JJ Arch Operating Agreement

---

[1] The last four digits of the Debtor's federal tax identification number is 4251.

12412604-4

and numerous Commercial Division[2] orders affirming Mr. Chassen's rights under the operating agreement, placed JJ Arch into bankruptcy proceedings, which requires the immediate dismissal of this case.

2. As relates to the Motion to Shorten, expedited relief is required due to the cloud this filing has placed over AREH's operations. Any delay in resolving the Motion to Dismiss could result in a chain of events that would include one or more sale transactions not closing, a foreclosure based upon a confession of judgement being executed upon, and subcontractors not being repaid. Filed contemporaneously herewith is the *Declaration of Kevin Wiener In Support of Arch Real Estate Holdings LLC's Notice of Joinder to Jared Chassen's Motion to Dismiss and Motion to Shorten Notice* which details the exigencies and potential harm and prejudice that AREH, its portfolio companies, and their creditors, will face absent an expedited hearing on the Motion to Dismiss.

3. As set forth in the Motion to Dismiss, <u>prior</u> to the entry of a State Court TRO and Preliminary Injunction, Mr. Simpson effectively controlled AREH. Critically important, these orders <u>removed</u> him as the control party of AREH,. These orders are now being collaterally attacked by this filing and threaten AREH's own internal affairs and business operations. Expedited relief is clearly warranted here.

4. If the Motion to Dismiss is not heard on an expedited basis, Mr. Simpson will achieve what he could not in State Court- namely, gaining control over AREH's "Major Decisions"- thus putting a cloud over, and deadlock within, the corporate authority and governance of AREH. The carefully timed bad faith filing was done after repeated unsuccessful attempts to wrestle control over JJ Ach and create deadlock at AREH. Unabashed, Simpson seeks to get in

---

[2] All capitalized terms herein not otherwise defined shall have the meaning as set forth in the Motion to Dismiss.

2

12412604-4

Bankruptcy Court what he has repeatedly failed to achieve in the protracted litigation in State Court: control over AREH. A binding State Court injunction provides for exactly the opposite.

5. The United States Supreme Court has long made clear that should a court find "that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Price v. Gurney,* 324 U.S. 100, 106, 65 S. Ct. 513, 89 L.Ed. 776 (1945).

6. As Bankruptcy Courts around the country facing similar fact patterns agree, should a court find that a debtor files bankruptcy without the prerequisite authority under the corporation's governing documents, "the Court . . . would be required to dismiss [that] unauthorized filing even if § 1112(b) were not in the Bankruptcy Code." *In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D.N.J. 2021)(quoting *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) and *citing In re Southern Elegant Homes, Inc.,* 2009 WL 1639745 at *1 (Bankr. E.D.N.C. June 9, 2009) (dismissing unauthorized petition without relying on § 1112(b)); *In re N2N Commerce, Inc.,* 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (same); *In re Telluride Income Growth Ltd. P'ship,* 311 B.R. 585, 591 (Bankr. D. Colo. 2004) (same); *Kelly v. Elgin's Paint & Body Shop, Inc. (In re Elgin's Paint & Body Shop, Inc.),* 249 B.R. 110, 112 (Bankr. D.S.C. 2000) (same).

7. Here, Mr. Simpson not only filed the chapter 11 petition without requisite authority, but he did so while intentionally evading and disregarding and violating existing State Court orders- not disclosed to this Court in the petition- which this Court should reject. This Court should instead give full faith and credit to the State Court orders and their clear requirements concerning the internal affairs, governance, and corporate authority of this alleged Debtor. *See, In re Pasta Bar By Scotto II, LLC*, No. 15-12766, 2015 WL 7307246, at *3 (Bankr. S.D.N.Y. Nov. 19, 2015)

3

12412604-4

(Glenn. J.) (enforcing "Major Decision" right of LLC member regarding authority to file bankruptcy and dismissing unauthorized chapter 11 filing).

8.  To evade the clear requirements of the state court orders that require <u>both</u> owners of the Debtor consent to a bankruptcy filing, Mr. Simpson goes so far as to falsely swear in the petition and to this Court that he is the "100 percent" owner of JJ Arch, based on a purported termination notice in August 2023. What Mr. Simpson fails to disclose is that the Commercial Division Judge has previously nullified and enjoined this purported termination. Aside from the unabashed frivolity and sanctionable conduct of such an attempt, it does prove one thing: that Mr. Simpson recognizes that Mr. Chassen's consent, as a co-owner, was absolutely required. There would be no other reason for such a desperately false claim that Mr. Chassen is no longer a co-member of the alleged Debtor.

9.  AREH also wishes to bring to this Court's attention additional factual background regarding the Commercial Division Proceeding, which further illustrates the abject impropriety of Mr. Simpson's conduct in bringing the Petition and the impact of this filing on AREH.

10. AREH has two members: JJ Arch and 608941 NJ Inc ("Oak"). As mentioned above, by virtue of this structure, JJ Arch's internal affairs can and do have a material impact on AREH, primarily as dictated through the AREH Operating Agreement, but also as ordered or decided in the Commercial Division Proceeding.

11. As outlined in the Motion to Dismiss, the question of Mr. Simpson's status at JJ Arch is being litigated in the Commercial Division Proceeding. For now, Mr. Simpson is serving as the alleged Debtor's managing member pursuant to various orders entered in the Commercial Division Proceeding. *See* March 14, 2024 Declaration of Allen Schwartz ("Schwartz Decl.") at ¶¶ 6-12. This is relevant to AREH because prior to November 2023, the alleged Debtor served as

4

AREH's managing member. *See* Schwartz Decl., Ex. 18 (November 3, 2023 order of the Commercial Division temporarily restraining Mr. Simpson and JJ Arch from acting as AREH's managing member, the "TRO") and Ex. 22 (November 22, 2023 order of the Commercial Division entering preliminary injunctive relief extending the TRO, among other relief, the "November PI").[3]

12. Accordingly, <u>prior</u> to the TRO and the November PI, Mr. Simpson effectively controlled AREH. Critically important, these orders <u>removed</u> him as the control party of AREH, which orders are now being collaterally attacked and threaten AREH's own internal affairs and business operations.

13. To say Mr. Simpson has resisted the November PI would put it lightly, and JJ Arch's sudden and unexpected bankruptcy filing is his latest affront on that order, following a series of earlier, unsuccessful attacks.[4] The focal point of Mr. Simpson's resistance (which commenced in January 2024, at which point, the November PI had been in effect for months) concerns the provision of the November PI that provides that either he *or* Jared Chassen may consent to <u>AREH's</u> Major Decisions on behalf of the Debtor. *See* Schwartz Decl., Ex. 22 at ¶ 2. AREH, in turn, is in a critical phase in its existence (brought about by Mr. Simpson's mismanagement and misconduct), which requires it to undertake numerous Major Decisions. Mr. Simpson urges that only his consent (and not Mr. Chassen's) should be effective on behalf of JJ

---

[3] The Commercial Division Proceeding was initiated by Mr. Simpson and named Mr. Chassen and the company's primary banking partner as defendants. Oak's substantial economic interest implicated by the dispute within JJ Arch and its impact on AREH, through which Oak has invested more than $50 million dollars and assumed hundreds of millions of dollars in liability as a guarantor, led it to intervene in the Commercial Division Proceeding and seek emergency relief, including for the November PI.

[4] Simpson's previous attacks include: (1) Mr. Simpson's January 29, 2024 Order to Show Cause seeking to vacate or modify the November PI, which was denied (Schwartz Decl., Exs. 25, 26); (2) Mr. Simpson's email to the Deputy Chief Administrative Judge of New York County, airing various grievances about the Commercial Division Proceeding (Schwartz Decl., Ex. 27); and (3) Mr. Simpson's untimely and meritless appeal of the November PI and his concurrent motion to stay the November PI, which motion was denied, and which appeal is still pending (Schwartz Decl., Ex. 29). These instances represent only Simpson's resorts to the courts, and do not include his numerous false statements to counterparties and third parties regarding his consent rights, and his threats of legal action against parties who have proceeded with transactions on Mr. Chassen's consent, as expressly ordered in the November PI. *See, e.g.*, Schwartz Decl., Ex. 24.

12412604-4

Arch. Mr. Simpson urges that only his consent consent (and not Mr. Chassen's) should be effective on behalf of JJ Arch.[5] If Simpson were to get what he wants—which the Commercial Division has rejected—then he could unilaterally prevent AREH from taking any Major Decisions.

14. With this context in mind, it is evident that the fraudulent Petition is nothing more than an exercise in self-help: as no court has agreed with Mr. Simpson that he should have unilateral right to block AREH from undertaking Major Decisions, the Petition represents an attempt to seize that power by force. By exploiting potential confusion about what JJ Arch's bankruptcy means for AREH, Mr. Simpson hopes to put a cloud over the November PI, create doubt as to the ability of Mr. Chassen act on behalf of JJ Arch (based on his demonstrably false statements that Mr. Chassen is no longer a member of JJ Arch),[6] delay adjudication of his substantial wrongdoing that is the subject of the Commercial Division Proceeding, and waste the parties' substantial time and resources in the process (not to mention this Court's). In other words, he is using this bankruptcy proceeding to attempt to create the deadlock he would otherwise create if he obtained the relief the Commercial Division has already twice rejected, and the Appellate Division is now considering. While Mr. Simpson's lack of authorization to put JJ Arch into

---

[5] This position lacks any basis in the relevant operating agreements. Absent any dispute regarding control over JJ Arch, both unanimity of its members would be required to approve a Major Decision by AREH. *See* Schwartz Decl., Ex. 2 at § 7.1.4; Ex. 1 at § 3.1(b). While the question over JJ Arch's membership is being litigated, the November PI provides that **either** member can consent to a Major Decision by AREH. Besides the clear contractual basis for the November PI, the Commercial Division registered its concern that Mr. Simpson might use a unilateral consent right to block Major Decisions or otherwise frustrate AREH's operations, which his subsequent conduct has only reinforced.

[6] Simpson and his counsel's willingness to make false oaths as to the membership of JJ Arch are baffling. Setting aside the obvious legal liability for this conduct, these statements lack any logical coherence. This is because it is only by virtue of the Commercial Division's August 21, 2023 order (Schwartz Decl, Ex. 10) that Mr. Simpson has any basis to claim membership in JJ Arch, as it was this order that reinstated him to JJ Arch after Mr. Chassen removed him. Thus, in bringing this Petition, he simultaneously ignores and relies on this and subsequent orders of the Commercial Division. Moreover, the false statements claiming that Mr. Chassen is no longer a member of JJ Arch implicitly concede his authorization is required under JJ Arch Operating Agreement, or else there would be no reason to make blatantly false assertions.

6

12412604-4

bankruptcy without Mr. Chassen's consent leaves no doubt that this case must be dismissed, the facts illustrating his improper motives further require this result.[7]

WHEREFORE, for the reasons cited in the Motion to Dismiss and herein, and as may be raised as the hearing, AREH respectfully joins the Motion to Dismiss and asks that this case be dismissed.

Dated: March 18, 2024

**OLSHAN FROME WOLOSKY LLP**
*Attorneys for Arch Real Estate Holdings LLC*

By: /s/ *Adam H. Friedman*
Adam H. Friedman
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
afriedman@olshanlaw.com

---

[7] As yet further evidence of the extreme irregularities with the Petition, JJ Arch's purported counsel in this bankruptcy action formerly represented AREH in the Commercial Division Proceeding and a related proceeding. If this Court were to decline to dismiss the Petition, an immediate disqualification of counsel must ensue. This is because the Commercial Division Proceedings involve claims of breach of fiduciary duty and misappropriation of funds brought by his former client (AREH) against his current client (JJ Arch). In other words, permitting counsel's representation to continue would be to allow counsel for one party to switch sides in the middle of the litigation, and take up the defense of an adverse party, which the Rules of Professional Conduct absolutely prohibit and which Bankruptcy Code section 327(a) prohibits.

12412604-4