# EXHIBIT 2

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 2 of 82

1

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK: TRIAL TERM PART 3
 2   - - - - - - - - - - - - - - - - - - - - X
     JEFFREY SIMPSON, individually and derivatively,
 3   as managing member of JJ ARCH LLC, suing
     derivatively as managing member of ARCH REAL
 4   ESTATE HOLDINGS LLC and JJ ARCH LLC,

 5                         Plaintiff,
                                               INDEX NO.
 6        - against -                          158055/23

 7   JARED CHASSEN and FIRST REPUBLIC BANK,

 8                         Defendants.
     - - - - - - - - - - - - - - - - - - - - X
 9   JARED CHASSEN, individually and derivatively,
     as managing member of JJ ARCH LLC, suing
10   derivatively as managing member of ARCH REAL
     ESTATE HOLDINGS LLC and JJ ARCH LLC
11
                         Counterclaim-Plaintiff
12
          - against -
13
     JEFFREY SIMPSON and YJ SIMCO LLC,
14
                         Counterclaim-Defendants,
15            and

16   JJ ARCH LLC and ARCH REAL ESTATE HOLDINGS LLC
     - - - - - - - - - - - - - - - - - - - - X
17   608941 NJ INC.,
                         Plaintiff,
18
          - against -
19
     JEFFREY SIMPSON, JJ ARCH LLC and ARCH REAL
20   ESTATE HOLDINGS LLC,

21                       Defendants,

22            and

23   ARCH REAL ESTATE HOLDINGS LLC,

24                       Nominal Defendant.
     - - - - - - - - - - - - - - - - - - - - X
25
```

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 - 02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 3 of 82

2

                              Appearances

 1

 2                           60 Centre Street
                             New York, New York
 3                           February 2, 2024

 4                           <u>PROCEEDINGS</u>

 5

     BEFORE:
 6          HONORABLE JOEL M. COHEN,
                                        Justice
 7

 8   APPEARANCES:

 9

         ALTMAN & COMPANY P.C.
10       Attorneys for Plaintiff Jeffrey Simpson
         P.O. Box 590
11       Southampton, New York  11969
         BY:   STEVEN ALTMAN, ESQ.
12

13       SCHWARTZ LAW FIRM PLLC
         Attorneys for Defendant Jared Chassen
14       150 Broadway, Suite 701
         New York, New York 10038
15       BY:   ALLEN SCHWARTZ, ESQ.

16
         HAYNES and BOONE LLP
17       Attorneys for Plaintiff 608941 NJ INC. (Oak)
         30 Rockefeller Plaza - 26th Floor
18       New York, New York  10112
         BY:   LESLIE C. THORNE, ESQ.
19            AISHLINN BOTTINI, ESQ.

20
         Appearing via Microsoft Teams
21       MEISTER SEELIG & FEIN LLP
         Attorneys for Plaintiff 608941 NJ INC. (Oak)
22       125 Park Avenue - 7th Floor
         New York, New York  10017
23       BY: STEPHEN B. MEISTER, ESQ.

24
         *** APPEARANCES CONTINUING ***
25

                 Bonnie Piccirillo - Official Court Reporter

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 4 of 82

3

Appearances

1

2

        Appearing Microsoft Teams
3       POLSINELLI PC
        Attorneys for Arch Real Estate Holdings
4       600 Third Avenue - 42nd Floor
        New York, New York  10016
5       BY:  AARON ZERYKIER, ESQ.

6

        Also Present:
7       WESTERMAN BALL EDERER MILLER
        ZUCKER & SHARFSTEIN LLP
8       Attorneys for Non-Parties
        Adam Peldman and Jonathan Peldman
9       1201 RXR Plaza
        Uniondale, New York  11556
10      BY:  JEFFREY MILLER, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22                              Bonnie Piccirillo
                                Official Court Reporter
23

24

25

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 5 of 82

4

Proceedings

1

2            THE COURT:  Good morning, everyone.  We have a lot

3       to accomplish in a relatively compressed time.  I'm going to

4       be more strict than I normally in on time because we have to

5       deal with two motions in this case, and I have hearings back

6       to back for the rest of the day.

7            So, for each motion I'm going to go with

8       twenty minutes a side, and then we'll move from there.

9            So, before we get started, let's do appearances

09:35:23   10  beginning with the plaintiff.

11           MR. ALTMAN:  Good morning, your Honor.  Steven

12      Altman for the plaintiff, Jeffrey Simpson.

13           MR. SCHWARTZ:  Good morning, your Honor.  Allen

14      Schwartz on behalf of Jared Chassen.

15           MS. THORNE:  Leslie Thorne and Aishlinn Bottini for

16      608941 NJ, Inc., also referred to as Oak.

17           MR. ZERYKIER:  And Aaron Zerykier for Arch Real

18      Estate Holdings online.

19           THE COURT:  Your affiliation?

09:36:20   20  MR. ZERYKIER:  I'm with Polsinelli PC.

21           MR. MEISTER:  Good morning, your Honor.  Stephen

22      Meister, remotely, Meister Seelig for Oak, as well.

23           THE COURT:  And we have another counselor in the

24      courtroom.

25           MR. MILLER:  Good morning, your Honor.  My name is

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 6 of 82

5

Proceedings

1    Jeffrey Miller from Westerman Ball.  I sent a letter into

2    the Court yesterday.  I represent --

3              THE COURT:  Can you come a little closer so the

4    court reporter can hear you.

5              MR. MILLER:  Sure.  I represent Adam Peldman and

6    Jonathan Peldman who are the largest investors in one

7    property that's being cut up in the dispute.

8              THE COURT:  I've seen the letter, and I understand

9    where it fits in; but at this point, your client hasn't

09:37:30  10   intervened or sued anybody, so it's relevant -- I mean,

11   it's good context for me to have while these two folks fight

12   with each other.  It is good for all of us to remember that

13   their conflicts may affect third parties who if they haven't

14   already done so, could be lobbing claims at them, as well.

15              I, certainly, understand that and I, certainly,

16   hope that the two gentlemen at the center of this understand

17   that as well.

18              MR. MILLER:  I appreciate that, and we will move to

19   intervene if necessary.

09:38:07  20              THE COURT:  I don't know that it will be an

21   intervention in this case as opposed to a separate one.

22   This case doesn't need more complexity.

23              MR. MILLER:  I know.  I understand.  We're just

24   here to protect the rights of my client and to be heard so

25   nothing happened today that would adversely prejudice them.

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 7 of 82

6

Proceedings

1              THE COURT:  Well, it might.  Not intentionally, but

2       you can't protect the rights of your client unless you

3       are -- you have a stake in the litigation and you enter an

4       appearance; but I'm not suggesting I'm going to ignore the

5       fact that one of the many entities that's at issue in this

6       fight today involves real human beings who are at the wrong

7       end of the stick.

8              So, I certainly understand it, but you should not

9       feel like the only recourse you have is to write letters

09:39:09  10      from the side in this case.  If your client has claims it

11      thinks it needs to assert to have a judge really taking it

12      more specifically into account, then you know how to do

13      that.

14             MR. MILLER:  I understand.  We plan to do that.  We

15      got retained and wanted to send a letter because we knew a

16      TRO hearing was happening.  We will be doing that.

17             THE COURT:  I think it was probably a smart move,

18      but nobody suggested I shouldn't read it so I did.  It's a

19      good reminder to everyone that these -- keeping the damage

09:39:49  20      to these two combatants or three, perhaps, is not realistic

21      and that there are other investors here.  I've heard from

22      other investors from time to time, so I do appreciate the

23      letter, but as I said, and I -- just in dealing between

24      these two parties who also have a stake in the same

25      property, I guess, the interests of that property are going

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 8 of 82

7

Proceedings

1      to be part of the discussion today.  But I wouldn't count on

2      the sort of non-appearing non-party, non-intervenor status

3      as I can't really give any relief to your clients directly.

4      I can only give relief to the parties in front of me.

5                MR. MILLER:  I appreciate that.

6                THE COURT:  But I appreciate the letter.

7                All right, anyone else that I haven't had

8      appearance from on the line?  I just ask the folks on the

9      line to remain on mute unless and until you're ready to

09:40:56   10      speak so we can keep the background noise to a minimum.

11                So, again, as I say, twenty minutes a side.

12                The first motion -- we'll take in the order they

13      were filed -- is an order to show cause with a TRO filed by

14      Mr. Chassen.  So, the main agenda item on that one is there

15      is a request for a TRO relief, relief pending the

16      preliminary injunction hearing.

17                So, with most orders to show cause, the main agenda

18      items are setting the schedule for a hearing on the broader

19      request for a preliminary injunction relief in this case, an

09:41:50   20      appointment of a receiver; but, substantively, my focus

21      today is on the TRO.

22                MR. SCHWARTZ:  Yes, your Honor.

23                THE COURT:  And I have read all the stuff.

24                MR. SCHWARTZ:  Thank you, your Honor.

25                Good morning, your Honor.  So, as your Honor just

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 9 of 82

8

Proceedings

1      noted, we are here today seeking a temporary restraining

2      order in connection with the motion for a preliminary

3      injunction and the appointment of a temporary receiver.  If

4      the temporary receiver is appointed, some of the injunctive

5      relief -- the preliminary injunctive relief that we're

6      requesting would be no longer potentially necessary if the

7      receiver were put in place.

8            Your Honor, with respect to the request for the

9      temporary restraining order, Mr. Chassen seeks an injunction

09:42:58   10   to bar Mr. Simpson from transferring JJ Arch's assets, from

11     encumbering JJ Arch's assets, from taking distributions for

12     himself from JJ Arch's assets until this motion can be

13     heard.

14           It also seeks access to JJ Arch's bank accounts,

15     which Mr. Simpson despite this Court's orders has not given

16     Mr. Chassen full access to and also full access to the books

17     and records of businesses that Mr. Chassen has still

18     deprived -- Mr. Simpson has deprived Mr. Chassen of viewing.

19           As your Honor knows, the standard is for an

09:43:38   20   injunction is likely of the success, irreparable injury,

21     balancing of the equities; but for a TRO the linchpin under

22     CPLR 6313 is the threat of irreparable injury before the

23     Court can hear the motion on the merits.  And here, your

24     Honor, Chassen has established each of these elements.

25           First, your Honor, Mr. Chassen has demonstrated

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 10 of 82

9

Proceedings

1    that Mr. Simpson is actively attempting to take JJ Arch's

2    assets because for one thing, Mr. Simpson has touted this.

3    He has told Mr. Chassen that "I have the full and exclusive

4    right to issue capital calls, and you owe 1.2 million so I

5    can take whatever cash I need without your consent."

6            That e-mail is available at NYSCEF number 492.

7            In his affidavit that he submitted just a couple of

8    days ago -- it's at NYSCEF 527 at paragraph 30 -- he tells

9    the Court, "I would like to and intend to sell the 225 Head

09:44:48  10  of Pond Road property to, quote, alleviate a 1.2 million

11   member loan that Chassen owes me."

12           He's actively selling company assets, your Honor,

13   on his personal Facebook page, including a vehicle, an

14   antique vehicle that under a contract Mr. Chassen, he is

15   obligated to convey to Mr. Chassen.

16           THE COURT:  I do object to something being called

17   an antique that was sold in the year I was in law school,

18   but go ahead.

19           MR. SCHWARTZ:  We've submitted evidence, your

09:45:32  20  Honor, that he has already taken thousands of dollars.

21   That's evidence at NYSCEF 493 and 510.

22           And he's been paying his own personal legal bills

23   from JJ Arch money funds without posting the undertaking

24   required by Section 10.3 of the JJ Arch Operating Agreement,

25   which requires undertaking be posted to the company in the

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 11 of 82

10

Proceedings

1    event that Mr. Simpson is found to have acted with gross

2    negligence or --

3            THE COURT:  Do you have evidence that they're using

4    JJ Arch money to pay counsel because they deny that?

5            MR. SCHWARTZ:  We have NYSCEF number 518.  We have

6    evidence of wire transfers going out to the Mr. Simpson's

7    counsel.

8            THE COURT:  From Arch accounts?

9            MR. SCHWARTZ:  Yes, at NYSCEF number 518.

09:46:16  10            THE COURT:  Well, you make the point that if they

11    are Arch's counsel, they can be paid by Arch.  I think the

12    point you make in your motion is he shouldn't be able to pay

13    his personal counsel.

14            So putting aside the subsidiary request you have

15    for disqualification, if assuming Mr. Altman is

16    simultaneously representing Mr. Simpson personally and also

17    JJ Arch and assuming both of those representations are

18    appropriate, wouldn't it be fine for JJ Arch to pay the JJ

19    Arch part as long as Mr. Simpson is paying the Mr. Simpson

09:47:01  20    part?

21            MR. SCHWARTZ:  If that were in fact happening, your

22    Honor and that was actually being allocated in any

23    verifiable way potentially that might be appropriate, but

24    what isn't appropriate is to transfer in this case that

25    we -- the evidence that we've submitted at 518, payments to

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 12 of 82

11

Proceedings

1      Mr. Israel who is representing -- purported to represent

2      both Mr. Simpson and JJ Arch and post no undertaking

3      whatsoever and, basically, getting payment directly from the

4      company for that.

5              So, going on to other -- this is not --

6              THE COURT:  And, I assume, most of the basis for

7      your -- the most significant relief you're seeking is to

8      basically stop asset sales?

9              MR. SCHWARTZ:  Correct, your Honor.

09:48:00    10              THE COURT:  And, I assume, that's based on your

11      client's consent rights under the Operating Agreement?

12              MR. SCHWARTZ:  It's based on the consent rights

13      under the Operating Agreement in part; but it's also based

14      on an August 1, 2023, contract that Mr. Simpson and

15      Mr. Chassen entered into that is the subject of some of

16      Mr. Chassen's counterclaims in this case, which Mr. Chassen

17      seeks specific performance and under which certain assets

18      were to be conveyed.  There's going to be a division of some

19      of the assets, and I would like to actually --

09:48:37    20              THE COURT:  Well, I will tell you, look, that's

21      kind a new one.  I thought I had heard everything going on

22      in this case and that contract, I don't know that I fully

23      had gotten briefed on before; but that one there's disputes

24      about, right?  Whether it was ever finalized, whether it's

25      applicable.  There is no dispute about the Operating

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 13 of 82

12

Proceedings

1    Agreement part, which, you know, again, your motion covers a

2    lot of territory and I'm trying to just take it piece by

3    piece.

4           The largest piece, at least in terms of

5    significance and also in terms of third-party investors, is

6    the JJ Arch business piece; and that one, I assume, the

7    dispute is you're claiming, well, look, under the agreement

8    we have consent rights as to a bunch of things that are

9    called major decisions, which is extremely broadly defined.

09:49:40   10    They say, Well, you lost those because -- your client lost

11    those and really isn't part of JJ Arch anymore because of

12    various defaults, which have also not been adjudicated;

13    right?

14           MR. SCHWARTZ:  Yes, your Honor, but in terms of

15    talking about probability of success on the merits with

16    these claims, I think it is important that I address each of

17    these claims because I think if I explain -- if I could

18    explain to the Court what this member loan purports to say

19    and how it is -- and the ways in which it is, frankly, a

09:50:18   20    pretext to loot company assets.

21           THE COURT:  By "member loan" you're talking about

22    their argument for why Mr. Chassen is basically out?

23           MR. SCHWARTZ:  Correct.

24           THE COURT:  Because he was some sort of a capital

25    call or a deficiency in the capital accounts, one or both of

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 14 of 82

13

Proceedings

1    those things; and that's their pathway to saying, Well,

2    whatever rights you might have had as a JJ Arch member, Mr.

3    Chassen, those are over because of those issues?

4         MR. SCHWARTZ:  Correct, and so I think it is

5    important that I walk the Court through all that.  That

6    capital -- that purported capital call we labeled -- well,

7    we've labeled the fraudulent capital call in our amended

8    complaint where we seek to declare it null and void and

9    ultra vires and where -- it is important to note that

09:51:14   10    capital call was issued on August 31st, the day before

11    Mr. Simpson did his second purported termination of

12    Mr. Chassen.

13         I think the capital call and the contract are

14    intertwined, so if I can just quickly or as quickly as I can

15    address both those things to the court.

16         THE COURT:  Slowly, but still quickly.

17         MR. SCHWARTZ:  Thank you, your Honor.

18         Your Honor, in the August 1st, 2023, contract,

19    which is at NYSCEF number 509, Simpson and Chassen agreed

09:51:42   20    that Chassen would be bought out of the Rever Motors

21    business for $675,938.35, and Chassen would own the other

22    assets 50/50 with a company called YJ Simco that was owned

23    by Mr. Simpson and his wife, with Chassen entitled to

24    co-manage the real property known as 225 Head of Pond,

25    Watermill, New York.

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 15 of 82

14

Proceedings

1          THE COURT:  Head of Pound?

2          MR. SCHWARTZ:  Head of Pond.

3          THE COURT:  And this is the August 1 Agreement?

4          MR. SCHWARTZ:  This is the August 1 Agreement,

5     correct, your Honor, and that property is owned by this

6     entity 225 HPR LLC.

7          Chassen under the contract was also to receive

8     three antique vehicles that he paid for to Rever Motors that

9     were listed on Schedule A of the Agreement, and the initial

09:52:33  10     payment to Chassen that Simpson was to make $500,000 was to

11     be made from a loan through Connect One Bank that Simpson

12     was to obtain in the amount of $995,000 and that Chassen was

13     to guarantee half of with Simpson responsible for making

14     payments on the loan.

15          Exhibit B of that contract, your Honor, at NYSCEF

16     509, provides a breakdown for how Simpson and Chassen

17     reached the amount of $675,000 -- $675,938.35.  The

18     calculation there, your Honor, shows the actual buyout was

19     $1,186,329.84.

09:53:20  20          It then broke down further and added a repayment of

21     a loan that -- to Simpson by Chassen of $50,000; and then it

22     deducted Simpson's repayment of half of a personal line of

23     credit they had jointly taken out, as well as agreed upon

24     balances of payments for purposes of this personal contract

25     for the entity 550 JJ NY LLC, 225 HPR LLC and another

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 16 of 82

15

Proceedings

1    property called 80H Schwenks, S-C-H-W-E-N-K-S.

2           Exhibit B of the contract, your Honor, also

3    incorporated that they had already split 50/50 of the

4    proceeds of a sale of that 80H Schwenks property in 2023.

5           Just after entering this August 1st contract,

6    Mr. Simpson, he repudiated it by refusing to close the loan

7    with Connect One Bank that had already been approved on

8    July 27, 2023, before the contract was entered.

9           This is shown in NYSCEF 517.  The e-mails attached

09:54:30   10    that are in NYSCEF 517 from the bank, the bank tells both

11    Chassen and Simpson --

12           THE COURT:  What was going to be the borrower

13    entity in the loan?

14           MR. SCHWARTZ:  Simpson.

15           THE COURT:  Simpson personally?

16           MR. SCHWARTZ:  And Chassen was going to guaranty

17    half.

18           THE COURT:  Right, and the bank wanted proof of

19    liquidity for both individuals?

09:54:49   20    MR. SCHWARTZ:  And proof of liquidity had been

21    provided, your Honor, because the loan was approved before

22    they entered the contract.  So, this is not a situation --

23           THE COURT:  Did your client have the liquidity that

24    was required?

25           MR. SCHWARTZ:  Yes, he did, your Honor.

Proceedings

1          THE COURT:  Despite -- I mean, I've seen some

2     e-mails back and forth to suggest otherwise.

3          MR. SCHWARTZ:  He had it and got approved.  He had

4     liquidity and he was approved for the loan.  Mr. Simpson's

5     claim he didn't have the liquidity are based on his

6     statements that Mr. Chassen made to Mr. Simpson, that

7     Mr. Chassen did not want Mr. Simpson to know what he did or

8     didn't have.  He had the funds to be able to get the loan --

9          THE COURT:  In the e-mail that they put in their

09:55:30   10     papers as not genuine?

11          MR. SCHWARTZ:  The e-mail from Chassen to Simpson?

12          THE COURT:  Saying he had $25,000 in the bank.

13          MR. SCHWARTZ:  It is a genuine e-mail.  Doesn't

14     mean that the truth of the statement in the e-mail -- what

15     he was telling Mr. Simpson was true.  He did not want

16     Mr. Simpson to know -- I mean, this is not in the record,

17     your Honor, but he -- and we'll be happy to respond to this,

18     but he did not want Mr. Simpson to know his, like, the state

19     of his finance at that time.

09:55:59   20          THE COURT:  Did he want the lender to know?

21          MR. SCHWARTZ:  He got approved.  He gave the lender

22     his full information.  That will all be backed up.  The

23     lender approved the loan based on the information he

24     submitted.  And it is important to know, your Honor, this

25     loan was approved before they entered the contract, so it

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 18 of 82

17

Proceedings

1    wasn't as if this was an open issue.

2         THE COURT:  So, what happened?  Why did this break

3    down?

4         MR. SCHWARTZ:  So, what happened, your Honor, is

5    that as -- if you scroll through the e-mails in NYSCEF

6    number 517, the bank then tells Mr. Simpson and Mr. Chassen

7    they had accidentally failed to include a provision that had

8    been in their previous loan, that they had accidentally

9    failed to include it and that they wanted them to resign the

09:56:40  10    documents with that provision.  That provision was provision

11    saying they couldn't take other unsecured lines of credit;

12    and in the prior loan they had taken out a personal line of

13    credit that they had taken out previously, that provision

14    was there so the bank asked them to resign.

15         THE COURT:  Well, that could be a material change,

16    right?  Because if you're operating lots of other

17    businesses, promising not to take any other lines of credit,

18    that's not an insignificant difference; is it?

19         MR. SCHWARTZ:  But it was the exact same provision

09:57:09  20    that was in their prior loan, your Honor.

21         THE COURT:  May be true, but for this contract, it

22    wasn't in the loan papers for this contract, right,

23    originally?

24         MR. SCHWARTZ:  It wasn't in the loan papers that

25    the bank had sent.  Your Honor, Mr. Simpson's reasons for

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 19 of 82

18

Proceedings

1    refusing to close the loan are abundantly clear.

2           If your Honor looks at NYSCEF 581, a back and forth

3    between Simpson and Chassen talking about his -- how upset

4    he was about Oak's proposal that Mr. Chassen take over

5    JJ Arch.  As we've submitted in our papers, we've attached

6    the e-mails showing the back and forth where Mr. Simpson

7    reaches out to Oak, which suggests Oak should take over

8    JJ Arch in exchange for various benefits to Mr. Simpson; and

9    then Oak responds that they would rather have Mr. Chassen be

09:58:13    10    placed in charge and Mr. Simpson leave the company.

11           And after that, those e-mails which in July

12    Mr. Simpson goes if you see it -- you could see in the

13    e-mails Mr. Simpson's back and forth as he struggles to how

14    he accept that or how he's going to deal with that and his

15    emotional turmoil I guess is the best way to state it.

16           These e-mails at NYSCEF 581 show that the real

17    reason was that he was upset about, about all of that.

18           He writes to him on August 3rd, which is when he

19    was supposed to close, he says:  Quote, "Interesting how you

09:58:55    20    demand 500K per year when the value you have brought has

21    crashed down like a deck of cards with an insolvent partner.

22    They put you in a proposed agreements that makes you a MM

23    --" a managing member -- "of a situation I would never

24    approve, nor are you capable.  There are implications to you

25    for taking these positions against me in JJ.  You are not in

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 20 of 82

19

Proceedings

1    control and going against me has ramifications.  You have

2    swallowed your own words, just like Michael.  No, I don't

3    trust you and it isn't repairable any time soon.  For that,

4    I do not feel sympathy for your cash position, and I am not

5    putting myself in further debt for your inabilities at RM.

6    The day you stepped aside, it has done better since the day

7    we started it."

8         "All bets are off.  No buyout apart from Rever.  No

9    distributions at Schwenks that is 50/50.  Your cars will be

09:59:58   10    delivered to your house.  I don't want to see those things

11    ever again," et cetera, et cetera.

12         He goes on to say "This is despicable how you take

13    advantage of me.  It is over.  I'll be much happier in life

14    not being around you."

15         So, your Honor, it is pretty clear the reason

16    Mr. Simpson refused to close on this August 1st contract

17    based on this August 3rd e-mail had to do with the events

18    surrounding Oak's proposal and Oak's -- and Oak's desire to

19    have -- that Mr. Simpson would leave the company and how

10:00:32   20    infuriated he was at Mr. Chassen about that proposal.

21         THE COURT:  I mean, putting aside the merits of it,

22    that is a pretty significant change in the landscape; isn't

23    it?  I mean, the obvious one contract which at least it

24    sounds like the understanding at that time was Simpson would

25    continue to run JJ Arch and this was, you know, a division

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 21 of 82

20

Proceedings

1    of certain other assets.  And then when we next look at it,

2    you say everything is the same except Simpson is out.

3    That's kind of a --

4            MR. SCHWARTZ:  Simpson wasn't out at that point,

5    your Honor, and the proposal from Oak was made in July.  If

6    your Honor looks further in the e-mails back in the e-mail

7    chains, you see an e-mail from Mr. Simon July 25th, 2023,

8    talk saying that when Michael sent you the, quote, "puppet

9    proposal and you felt he put you in a bad spot, why did you

10:01:31    10    not chastise him over e-mail in front of me and everybody

11    else to say what the fuck are you doing?  You don't need to

12    use my style," you know, et cetera, et cetera.

13            So, this is not something that happened after the

14    contract.  This is stuff that happened before the contract.

15    The purpose of the contract was to figure out a way for them

16    to part ways in terms of and resolve certain disputes over

17    assets.  This is not that --

18            THE COURT:  All right, we're coming close to

19    twenty minutes.  I want to make sure you get -- I mean, I

10:01:59    20    get the August 1 Agreement.

21            What about the rest of your relief?

22            MR. SCHWARTZ:  So, your Honor, I just would like

23    the walk through, if I can, the, quote, purported member

24    loan.

25            So, Mr. Simpson purports to terminate Chassen by

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 22 of 82

21

Proceedings

1    August 5th.  That's when those events happened.  And then

2    before he again terminates him on September 1, 2023, he

3    issues a retroactive capital call to JJ Arch that is

4    available at NYSCEF 519.

5          Your Honor, the capital call, basically, takes some

6    of the calculations from this contract and then -- this

7    personal contract, but then whole ignores the rest of the

8    contract's provisions.  But even if the contract had never

9    existed, your Honor, the capital --

10:02:49  10          THE COURT:  Which contract are we talking about?

11          MR. SCHWARTZ:  August 1st contract.

12          THE COURT:  The capital call is under the Operating

13    Agreement, right?

14          MR. SCHWARTZ:  So, the capital call, basically,

15    takes the breakdown, Exhibit B of the contract, about what

16    was owed, allocating different amounts that had been

17    potentially contributed or not contributed to the various

18    subsidiary entities and then uses those as a -- as a basis

19    to issue a retroactive capital call to Mr. Chassen.

10:03:21  20          THE COURT:  Right, I get it; but the capital call,

21    itself, is under the Operating Agreement.  You're saying it

22    is based on the relative capital contributions reflected in

23    this Agreement?

24          MR. SCHWARTZ:  Correct, correct, and also the

25    personal line of credit, amongst other things.  I would like

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 23 of 82

22

Proceedings

1    to walk your Honor through that.

2           First of all, your Honor, if your Honor looks at

3    the Operating Agreements for these entities, 1640 Montauk,

4    HPR LLC, JJ 550, New York LLC, they all say JJ Arch shall

5    have no obligation to make any further capital contributions

6    to these entities, okay, number one.

7           So, JJ Arch did not have any capital obligations to

8    these entities.  Even more importantly, none of these

9    entities ever even issued a capital call to JJ Arch.  So

10:04:09   10    even if JJ Arch did have an obligation, they never actually

11    got a capital call from any of these entities.

12           If your Honor looks at Section 4.2 of the JJ Arch

13    Operating Agreement, it says it allows him to issue a

14    capital call to meet, quote, general and administrative

15    expenses.  It doesn't allow him to issue capital calls for

16    the expenses of other entities that JJ Arch had no capital

17    obligations to and who never even issued capital calls to

18    JJ Arch.  It, also, doesn't authorize him to issue

19    retroactive capital calls.

10:04:41   20           The same is true with the 146 East 89th Street

21    property which we spoke with your Honor -- we discussed at

22    the beginning of the case which has other investors.

23    That -- those entities 146 East 89th Borrower 1 LLC, 146

24    East 89th Borrower 2, 146 East 89th Street Borrower 3 LLC,

25    all of those Operating Agreements under Section 3.2 of those

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 24 of 82

23

Proceedings

1    Operating Agreements provide that JJ Arch should not have a

2    capital call obligations to those entities.  They may issue

3    capital calls to the members of those entities; and if they

4    don't answer those capital calls or respond, then JJ Arch

5    would have the right to loan money to those entities.

6          Again, no capital call has ever been issued to any

7    of those entities.  There's no -- there was never loans to

8    those entities.

9          So, the basis for putting -- for saying that

10   Mr. Simpson because of anything -- any of the other

11   businesses that he has a right to issue a retroactive

12   capital call at the JJ Arch level under any of these

13   Operating Agreements, there's no basis for that.

14         On top of it, your Honor, he also uses 500,000 that

15   comes from personal line of credit.  That was a personal

16   line of credit.  It wasn't a JJ Arch expense.

17         THE COURT:  Okay, counsel, twenty minutes is

18   expired.  I have your papers for beyond that, but we have a

19   lot to get to so I'm going to switch to Mr. Altman.  I did

20   give you more like twenty-five minutes, so.

21         MR. ALTMAN:  Good morning, your Honor.  With any

22   luck, I'll be able to put it back on schedule.

23         I'll frame the issues.  What you will hear a lot

24   from me today is about enforcing written agreements between

25   the parties, the two Operating Agreements.  That is -- our

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 25 of 82

24

Proceedings

1    focus on that will be the focus of presentation in both

2    cases.

3            The starting point here is the Operating Agreement

4    for JJ Arch.  I, also, want to frame the issues that are on

5    the table and not.  I understood from your directions that

6    the Court is not entertaining today the possibility of entry

7    of a receiver.

8            THE COURT:  Correct.

9            MR. ALTMAN:  So, I'm going to focus only on those

10:06:58   10   aspects that seek to impair, impede, affect Mr. Simpson's

11   operations of JJ Arch.  And as to that, with respect to the

12   JJ Arch Operating Agreement, our papers I think, Judge, make

13   pretty clear and you've ruled Mr. Simpson can do just about

14   anything he wants except --

15           THE COURT:  Every time you quote that order, you

16   put in bold the portion of the paragraph that says

17   "Mr. Simpson has managerial control" and then you take the

18   bolding off for the part that says that it's subject to

19   paragraph 3.2, which are very significant consent rights.

10:07:35   20           MR. ALTMAN:  Without question.

21           THE COURT:  Which, basically, is a major carve-out.

22           MR. ALTMAN:  Let's break them apart.  That's where

23   I intended to go, exactly where I intended to go.

24           So, the day-to-day operations of the company,

25   Mr. Chassen has no rights to anything.

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 26 of 82

25

Proceedings

1          THE COURT:  Subject to it being a major decision.

2          MR. ALTMAN:  Subject to it being a major decision.

3     If it is not a major decision, Mr. Chassen doesn't have an

4     opportunity to anything, any money.

5          THE COURT:  Most of the things in the TRO or

6     certainly a number of the larger ones are right between the

7     eyes definition of major decision.

8          MR. ALTMAN:  Only two of them.

9          THE COURT:  Well, they're the big ones.

10:08:17  10          MR. ALTMAN:  I'll get to that.  I want to take a

11     little piece at a time, right.

12          If and to the extent Mr. Chassen is complaining

13     about you paid the cellphone bill, you didn't do that; Mr.

14     Simpson is entitled to do that, clearly under the Agreement.

15     There's no objection to that.  Any money that he spent with

16     respect to that is perfect and proper and authorized and

17     directed by the Operating Agreement, off the table.

18          Next, I wasn't going to jump into right away, but

19     counsel fees, easy also.  I have not received and I have no

10:08:49  20     expectation of receiving any fees, not one penny from JJ

21     Arch.  Haven't been paid, I make that representation to the

22     Court.

23          THE COURT:  So, the wire transfer, that's not

24     accurate?

25          MR. ALTMAN:  Not me.  Not since I've been in it.

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 27 of 82

26

Proceedings

1    Those were monies that were paid before to Mr. Israel and,

2    otherwise, who were at the time representing JJ Arch.  Off

3    the table.

4          Next issues, the two issues that -- the two matters

5    that are, arguably, major decisions:  The 1983 Porsche, I

6    think your Honor and I are similar same age.  I, too, was in

7    law school 1983.  First of all, it's a de minimis matter

8    because the car is being marketed for $45,000 and maybe

9    we'll get an offer for it for $36,000.  But be that as it

10:09:43   10    may, if that were to be the tale wagging the dog, the sole

11    basis for Mr. Chassen's claim to that property is this

12    August 1 Agreement, which as you acknowledge has never been

13    consummated and, surely, from what I heard so far today --

14          THE COURT:  Well, it was signed.

15          MR. ALTMAN:  It was signed, but never consummated.

16          THE COURT:  What does consummated mean in this

17    setting?

18          MR. ALTMAN:  A condition precedent expressly in

19    the contract that the loan was going to be secured from

10:10:09   20    Connect One Bank was not achieved.  The money that was

21    funding the initial payment was from that loan.  The loan

22    didn't close.  You've observed the reason why.  This was a

23    fascinating sort of concession.

24          Mr. Schwartz represented to the Court that an

25    e-mail that we attached where Mr. Chassen said he only had

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 28 of 82

27
                            Proceedings

  1    25,000 and he didn't have the half million dollars, that's a

  2    lie; but what he told the bank was the truth that he really

  3    had the money.

  4         Suffice to say that their claim for a TRO or a

  5    preliminary injunction that they have -- will fail to show

  6    likelihood of success on the merits of any claim based on

  7    the August 1 contract, based on the testimony in the record,

  8    and argument today.  So, I move past that.

  9         There's no question --

10:11:01  10    THE COURT:  Well, again, for the TRO part, again,

 11    I'm looking at -- the first part of the TRO is really about

 12    selling assets of JJ Arch.

 13         Next thing, part B of it was the -- hang on a

 14    second.  First part of the TRO was transferring, encumbering

 15    assets of JJ Arch towards control entities.  That's the

 16    first thing we talked about.  That's the consent rights

 17    issue.

 18         The next one is transferring or encumbering or

 19    disposing of assets that were purportedly conveyed to

10:11:42  20    Chassen under this August 1 Agreement.

 21         I agree with you there that it's a different

 22    question, it's a different agreement.

 23         A TRO is not as much about likelihood of success on

 24    the merits as a PI.  You have to look at the merits and make

 25    sure there's some rationale for it; but it's mostly about,

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 29 of 82

28

Proceedings

1    you know, please put a hold on this for a week or two until

2    we can have our PI hearing because it's irreparable harm.

3          So, I questioned also what's the irreparable harm

4    under this part?  The only thing I could find is there's a

5    case or two that says vintage vehicles are unique assets

6    under some provision of the CPLR and, you know, it's like

7    sewing the Hope diamond or something where money won't

8    really do it.  That's the argument.

9          I don't even know if that is really even played out

10:12:48   10    very well; but if there's any argument for these August 1

11    assets, most of that is just a financial thing.  If they win

12    on the contract, they get money back.  There's one asset,

13    1983 antique Porsche.  Is that a unique asset that we have

14    to stop the sale of right now?

15          MR. ALTMAN:  I agree.  I don't think I need to say

16    more.

17          THE COURT:  Well, you do because there is a case

18    saying that a 1967 Ferrari is.

19          MR. ALTMAN:  1967 Ferrari is not 1983 Porsche.  We

10:13:28   20    can go out and buy 15 1983 Porsches today with a hundred

21    thousand miles on it, not a 1967 Ferrari.  That's a whole

22    other story, not a car that I could buy for $36,000.  I'm

23    not going to spend more of my time on that issue.

24          THE COURT:  Fine.

25          MR. ALTMAN:  If that's okay with the Court.

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 30 of 82

29

Proceedings

1          THE COURT:  But the one that most -- I was most

2     focused on because it also affects all these third parties

3     is the 2A, which is can we put a hold on asset dispositions

4     until we figure out the receivership question, which are

5     asset dispositions that would -- I would say -- under the

6     Agreement seem to require consent unless Mr. Chassen has de

7     facto no longer has those rights.

8          MR. ALTMAN:  So, as usual, Judge, spot on and right

9     on top of all the issues exactly as they are.  We say in our

10:14:34  10     papers, I think fairly clearly as I could express it in

11     writing.  We say that Mr. Chassen doesn't have any rights in

12     JJ Arch anymore.

13          THE COURT:  None of that has been decided.  You

14     have an argument that based on a lot of undecided issues at

15     this point, that you will, ultimately, prevail in showing

16     for yet another reason Mr. Chassen should have been kicked

17     out of this membership a long time ago; but that is not

18     something I'm going to be -- look, let me take a step back.

19          I think your papers make allegations that are, to

10:15:21  20     my mind, nonfrivolous about things that happened, some of

21     which I haven't heard of before and that will have to be

22     litigated between the two gentlemen.  They're not done.

23          My inclination, candidly, is to until I see and

24     there's some adjudication of Mr. Chassen forfeiting those

25     rights, I'm going to stick with the contract in place as you

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 31 of 82

30

Proceedings

1      started out by saying and the fight between them will go on.

2      But until that happens, my inclination, anyway, is to adhere

3      to the contract which I've done consistently with one

4      exception.

5              MR. ALTMAN:  That would please us and that's a

6      serious one, but we'll talk about later.

7              THE COURT:  The AREH is a different case.

8              MR. ALTMAN:  But, here, precisely to that point --

9      I suppose I should put it in the argument to be sure --

10:16:23   10    there's no question contrary to what counsel's argument that

11     Mr. Simpson has rights to issue the capital calls that he

12     did.  Counsel misquoted Section 4.2(a) -- excuse me -- (b)

13     of the JJ Arch Operating Agreement.

14              Section 4.2(b), Sub (ii), makes clear that Mr.

15     Simpson's can determine that the company is required to make

16     a capital contribution to an initial capital investment,

17     initial capital entity.

18              And if you walk back, I won't spend the time here

19     to the definition.  It's a defined term.

10:17:05   20              THE COURT:  Where are you reading from?

21              MR. ALTMAN:  Page 10, 4.2(b)(ii).  That

22     specifically authorizes, we say, Mr. Simpson to make a

23     capital call with respect to the investment entities because

24     there's no question that JJ Arch is the managing member of

25     the four companies that operate --

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 32 of 82

31

Proceedings

1          THE COURT:  That's if the company is required to

2      make a capital contribution to an investment entity.

3          MR. ALTMAN:  And those decisions were all to be

4      made by Mr. Simpson as the managing member of JJ Arch, which

5      he had unfettered control.

6          THE COURT:  And "required" you think means

7      something other than legally required.  If he thinks it is a

8      good idea.

9          MR. ALTMAN:  It is not more than a good idea.  You

10:17:58 10  don't have money to pay debts, your Honor; or you can't pay

11     back loans and you need to refinance loans.  It is required

12     in order to operate the business.

13         THE COURT:  Well, each of these investment entities

14     had other investors; right?

15         MR. ALTMAN:  No, no, no.  This morning, this is

16     just Mr. Chassen and except for Mr. Peldman and may be a

17     perfect time to segue to discuss him in connection with

18     this.

19         There may have been one other thing I wanted to get

10:18:23 20  into.  I can't remember it, so obviously not.

21         So here's the problem with maintaining the status

22     quo and not allowing any efforts to refinance or market the

23     properties.

24         Mr. Simpson and Mr. Peldman have been in regular

25     dialog in a concerted effort to refinance the 88th Street

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 33 of 82

32

Proceedings

1    property.  Mr. Chassen has made clear he's not

2    participating.  He's refused to give his consent.  We've

3    attached the exhibits that I'm sure you've seen where he

4    delayed and foot dragged, and it's urgent.  Mr. Peldman

5    rightly said please help us.  Here's an independent party.

6    He's got real money in the game.

7         We are actively working with Mr. Peldman and his

8    counsel to work out an arrangement to refinance the

9    property; and if that's not successful, to sell it.

10:19:19    10         THE COURT:  But now you're getting into -- you're

11    saying that he should have consented and there's no basis

12    for him not consenting, and maybe he's subject to a lawsuit

13    for not doing that.

14         MR. ALTMAN:  I'm saying something more.  I'm saying

15    that if you grant the relief that he's seeking, it will

16    block that valid legitimate appropriate --

17         THE COURT:  The relief doesn't block anything other

18    than Mr. Simpson proceeding unilaterally.  Mr. Chassen has

19    fiduciary duties of his own probably to these investors, and

10:20:04    20    whoever proceeds and either does or doesn't consent to JJ

21    Arch doing things does so at their own peril.

22         MR. ALTMAN:  Yes, I agree completely.

23         THE COURT:  But you're saying -- what you're saying

24    is that the Court should say, Well, forget about the consent

25    rights because those are stupidly being not exercised and I

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 34 of 82

33

Proceedings

1    should let despite what the contract says, let Mr. Simpson

2    just do it without regard to the consent and where do I get

3    the power to do that?

4          MR. ALTMAN:  I've already passed over that.  I've

5    given you the reasons, foreclosure, resignation; but I'm not

6    talking about that now.  Now I'm moving to a next place and

7    I'm saying the requested TRO is too broad and it will

8    effectively preclude Mr. Peldman and Mr. Simpson from

9    refinancing the property.

10:20:53  10     THE COURT:  I agree the way it's written does not

11    bind itself to the scope of the consent rights, which is one

12    problem I have with it.

13          MR. ALTMAN:  That's all we want, Judge.  We want to

14    live under the contract.  I do say first he has no rights.

15    He's been terminated.  He's been foreclosed upon.  He's been

16    resigned.  We can do --

17          THE COURT:  Let me move on.  So, it also asks about

18    preventing him from making distributions to himself.  And,

19    again, what I would at least think about adding at least

10:21:32  20    conceptually in my mind is not making distributions to

21    himself in a way that would contravene Article 5 of the

22    Operating Agreement because the Operating Agreement talks

23    about distributions and how they get done.

24          And I don't know exactly -- I've had a lot of small

25    companies where they come in and there's kind of like the

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 35 of 82

34

Proceedings

1    law of this company where, well, I take a distribution here

2    and I pay for this.  That's all out the window when you're

3    here.  Now it's the law of the State of New York and the law

4    of this contract.

5           So, as I read it, anyway, there are regulations in

6    the contract about how distributions will work and when they

7    will occur and you first look at capital accounts.  So, if

8    Mr. Simpson can establish that the capital accounts permit a

9    distribution first to him because he's owed the money,

10:22:30   10   that's the way the contract works.

11          After that, every distribution has to be pro rata;

12   right?

13          MR. ALTMAN:  Agree a thousand percent.  As I

14   started and I'll maintain, we will live by the contract.

15   Here's where --

16          THE COURT:  And is right now -- I've sort of

17   generally described the process here, but is the rationale

18   for any distributions that Mr. Simpson might take that he is

19   entitled to preferential distributions under Article 5 of

10:23:10   20   the -- yeah, because it says in terms of distributions they

21   go first to the members in proportion to their respective

22   capital contributions until their respective unreturned

23   capital contributions have been reduced to zero.

24          Is that the rationale for any distributions you

25   want to make unilaterally?

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 36 of 82

35

Proceedings

1          MR. ALTMAN:  Yes, your Honor, and the amounts in

2     the capital accounts are not a creation of Mr. Simpson.

3     It's a creation of Mr. Chassen.  It's in fact the -- I

4     thought I would be able to avoid that -- it was based on a

5     schedule of the respective capital accounts prepared by

6     Mr. Chassen.  The numbers are not disputable.

7          So, yes, we're entitled to that, but there's more.

8     That's sort of a dayenu.

9          But here's the last piece of it.  Not only is Mr.

10:24:19  10     Simpson entitled to those monies, Mr. Chassen has admitted

11     in his papers that contrary, in direct contravention of the

12     Operating Agreement and your orders, he's taken money

13     himself and highjacked it from Head of Pond.  Not only has

14     he interfered with "I want Airbnb it," even though he has no

15     right to do under the Agreement.

16          THE COURT:  Look, I don't know if I have them all.

17     I have the Operating Agreements and I have been operating

18     under the -- and focussing on the Operating Agreements for

19     JJ Arch.  I recognize that there are sub-agreements at the

10:24:56  20     investment entity levels.

21          MR. ALTMAN:  They're all the same.

22          THE COURT:  So, I don't know what those really are.

23          And, I get it, that in the ordinary course of

24     business, people have kind of paid themselves periodically

25     without following the niceties of Article 5.  That's over.

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 37 of 82

36

Proceedings

1          MR. ALTMAN:  Right, and that should be --

2          THE COURT:  Unless you have a salary, like an

3    employment agreement or something like that.

4          MR. ALTMAN:  Mr. Chassen has none, and under the

5    JJ Arch Operating Agreement he's not entitled to take any

6    money and he's been taking money.

7          THE COURT:  The next two -- I want to make sure I

8    get through my list of things I have to decide on this

9    motion.

10:25:38    10          MR. ALTMAN:  Sure.

11          THE COURT:  The next one is talking about using JJ

12    Arch funds to pay counsel to represent him in a personal

13    capacity or to pay JJ Arch's counsel funds.  So, you're

14    saying no funds -- they seem to believe that JJ Arch funds

15    are being used to pay Mr. Simpson's counsel.

16          MR. ALTMAN:  Not since I've been in the case.

17          THE COURT:  So, you're being paid directly by

18    Mr. Simpson personally?

19          MR. ALTMAN:  Who is paying my fees I don't think

10:26:15    20    need be matter of public record; but I represent to the

21    Court without question, unconditionally, I have not been

22    paid not one penny, not sui marquis (phonetic) -- as we

23    learned in law school -- from JJ Arch period or any of the

24    non-Arch entities owned by JJ Arch.

25          THE COURT:  Well, I guess, then there's no harm in

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 38 of 82

37

Proceedings

1    being an injunction against it because, look, conceptually

2    you can't use company funds to pay personal counsel.  That's

3    just -- there's no rationale for that.  So, if he hasn't

4    done it and not planning on --

5            MR. ALTMAN:  Until this issue of the alleged

6    conflict between the dominant principal of JJ Arch and

7    whether or not it is appropriate for me to continue to

8    represent JJ Arch.

9            THE COURT:  Well, that's a real issue.  I mean, I

10:27:12   10    don't know that it is a TRO issue right now, but the next

11    thing is the vehicle.  We talked about that already.

12            Then there's something about HPR LLC where they

13    want Simpson not to interfere.  Is that one of the entities

14    that's under this August 1 Agreement?

15            MR. ALTMAN:  That's Head of Pond.  All the entities

16    are part of the August 1 Agreement.  Head of pond, 222 Head

17    of Pond Road is a piece of real estate in the Hamptons --

18    not too far from where I live -- that's owned by this

19    property.  That's the entity.  That's the property that

10:27:59   20    Mr. Chassen in direct violation of the Operating Agreement

21    has been operating as an Airbnb and keeping the money for

22    himself.

23            THE COURT:  And what about the online viewing

24    access to bank accounts?  You're saying -- they say that

25    they're still not getting it.

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 39 of 82

38

Proceedings

1          MR. ALTMAN:  We're not --

2          THE COURT:  There's a new account they reference in

3     their papers they didn't know about until recently.

4          MR. ALTMAN:  And I put an affidavit -- I think it

5     is the last exhibit in my papers that I filed yesterday

6     afternoon, is an e-mail from Mr. Simpson to the banker at

7     that bank very specifically instructing the bank to give him

8     online access.  Whether or not the bank is or is not, we

9     don't know.  If there's anything more that we need to do to

10:28:48   10     assist in allowing that to happen if it's is not happening,

11     of course we'll do it, Judge.

12          THE COURT:  And the last thing, I'm not even sure

13     whether I'm reading from the right list anymore, but books

14     and records.

15          MR. ALTMAN:  If this is a -- I don't want to give

16     it an adjective.

17          Mr. Chassen has full access to all books and

18     records and always has.  What Mr. Schwartz's papers refer

19     to is a standard form books and records request that was

10:29:20   20     made under the BCL to predecessor counsel when he was in the

21     case and to which it was responded, "You have everything."

22          That's certainly not the basis for -- if he could

23     identify particular.  And here's another one where it's

24     curious because you want to stand it on its head.

25          THE COURT:  All right, look, I need to move on to

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 40 of 82

39

Proceedings

1     the next motion.

2            I'm going to grant this in part and very carefully

3     here.  I think the TRO is too broad, but I think there are

4     elements of it that I think do make sense.

5            Again, my principle here is it sounds like to me

6     there are real disputes with this August 1 Agreement.  There

7     are real disputes as to certain conduct that Simpson alleges

8     against Chassen that may or may not impact ultimately

9     Chassen's interests in JJ Arch.

10:30:26   10            I don't think the issues under either of those are

11    sufficiently clear or ripe for me to start throwing

12    injunction thunderbolts around based on either side's view

13    at this point.

14            What I do think is clear and remains clear is that

15    there is an Operating Agreement that is supposed to govern

16    and does govern JJ Arch subject only to some modifications

17    and clarifications in various orders during this case

18    because of the sort of extraordinary events that occurred;

19    but my touchstone in all the orders has been wherever I can

10:31:08   20    is to stick very carefully to the Operating Agreement unless

21    and until we get to a point of deciding that someone has

22    breached it to the point that they lose those rights.

23            And so given that, I will enter an order pending

24    the hearing on the motion for a preliminary injunction and

25    temporary receiver that Simpson shall not sell or transfer

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 41 of 82

40

Proceedings

1    assets subject to the JJ Arch Operating Agreement -- I'm

2    sorry -- shall not sell or transfer JJ Arch assets or assets

3    in the investment companies without Chassen's written

4    consent under Section 3.2 of the Operating Agreement, which

5    consent shall not be unreasonably withheld.

6           So, that's the basic provision of the amended

7    Operating Agreement, which in exchange for changing the

8    succession under the Operating Agreement to Mr. Chassen

9    gives Mr. Chassen very broad consent rights, and they do

10:32:27   10   clearly cover the sale of any asset of the company or any

11   portion thereof, and the definition also includes the fact

12   that:  "Any action or decision that would constitute a

13   company major decision if made or taken by the company shall

14   be a company major decision if made or taken by any

15   Investment Entity."

16          So, it covers the subentities through this.

17          And I'll write this out so that it is a little more

18   clearer, but the restriction that plaintiff seeks is going

19   to be circumscribed by, essentially, Simpson cannot sell

10:33:23   20   assets of the company or investment entities or transfer or

21   encumber them if they are subject to as a major decision

22   under 3.2 without Chassen's consent, which consent shall not

23   be unreasonably withheld.

24          Second, Simpson shall not make distributions to

25   himself from JJ Arch accounts and funds in any way that

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 42 of 82

41

Proceedings

1    contravenes Article 5 of the JJ Arch Operating Agreement as

2    amended.

3         Simpson may not use JJ Arch funds or other money

4    drawn directly from JJ Arch accounts to make payments to

5    counsel representing him in a personal capacity.

6         I will add Simpson shall continue to provide

7    Chassen with online viewing access of the bank accounts of

8    JJ Arch and all JJ Arch controlled entities.  That may be

9    belts and suspenders; but just so that there is no doubt, if

10:34:51   10   it's not happening, it should be.

11        And, finally, Simpson shall continue to provide if

12   he hasn't already Chassen with the JJ Arch and JJ Arch

13   controlled entities books and records under the process of

14   Article 6 of the JJ Arch Operating Agreement.

15        The remainder of the TRO is denied.  We have to set

16   a schedule for the PI hearing.

17        Eric, do we have a time in mind for when we might

18   be able to hear these guys?  The parties can prepare a

19   briefing schedule, but we need to figure out when we can see

10:35:50   20   them.  We have a very busy trial schedule at the moment.

21   So, we'll work on that for the time being, but I do want

22   full briefing on the receivership motion and the preliminary

23   injunction and all of that; and we'll be thinking about when

24   we can hear you and then we can work backward for the

25   briefing schedule.

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 43 of 82

42

Proceedings

1            So, what we're going to do is I have another

2    hearing coming in at roughly 11, which I'll push a little

3    bit; and while that's going on, you can meet with

4    Mr. Scarlet to agree on a schedule for briefing and we'll

5    find a hearing date.

6            If you want that hearing to have witnesses, if you

7    want it to be an evidentiary hearing, we're going to need to

8    know that because that will affect how much time we -- how

9    much time we devote to it.

10:36:47    10            MR. SCHWARTZ:  Okay, your Honor.

11            MR. ALTMAN:  I have a question about a

12    clarification with respect to your intended order.

13            As I would like to understand the order, that it

14    does not preclude, for example, Mr. Simpson and Mr. Peldman

15    to continue to attempt to secure refinancing.

16            THE COURT:  It absolutely does not interfere with

17    that.

18            MR. ALTMAN:  Okay.

19            THE COURT:  My only point is, though, that --

10:37:15    20            MR. ALTMAN:  If we're actually going to sell it,

21    we have to present it, get his consent in writing and then

22    come back to you if he --

23            THE COURT:  We're done with this, okay?  We have to

24    move on to the next motion.  I'm willing to if you want to

25    propose language for the TRO that may provide some guidance.

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 44 of 82

43

Proceedings

1    Nothing should stand in the way of you all doing the right

2    thing for Mr. Miller's client back there.  If you needed

3    anymore urging from me, if one or both parties are somehow

4    using this personal grudge to the disadvantage of third

5    parties, that's going to be an incredibly dumb thing to do.

6          And I don't know if it is going to be in front of

7    me or not, but any denial of consent in situations where it

8    is later viewed to be completely irrational and in harms of

9    third party, people better think that through very

10:38:33   10   carefully.  I have no idea whether it's a smart thing to do

11   or not, that's not my job; but you all are real estate

12   professionals and I urge you not -- I was showing my law

13   clerk earlier the apocryphal story of Kilkenny Cat.  I don't

14   know if you remember that story?  The two cats that hate

15   each other so much that they tie their tails together, and

16   they fought endlessly until all that was left was fur.  It's

17   an allegory or a simili for people who fight so viciously

18   that they kind of lose site of the game, and they end up

19   destroying themselves in the process.  Don't do that.

10:39:15   20        Let's move to the next motion, which was

21   Mr. Simpson's motion to make changes to my order with

22   respect to AREH, Arch Real Estate Holdings.  This one does

23   not have a TRO component to it.  It seeks two things.

24          It seeks to authorize Mr. Simpson to terminate

25   Mr. Chassen from JJ Arch, which is similar to what we were

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 45 of 82

44

Proceedings

1    talking about before; and it also seeks to reinstate JJ Arch

2    as managing member of JJ Arch Real Estate Holdings with full

3    authority to do all sorts of things.

4         Essentially, it's a request to reconsider my

5    earlier order making Oak the managing member.

6         Now, this one, normally, I would just be having

7    this hearing to set a schedule.  I got a request to

8    accelerate some sort of a hearing on this because the view

9    was that the pendency of this was the overhang of it was

10:40:39   10    causing harm.

11         So, I'll listen to that.  My choices today given

12    that I've now received an opposition, the movant has filed a

13    brief, I could just decide the motion right here and now;

14    or I can request additional evidence in briefing or

15    something in between.

16         So, I don't have any TRO to consider, so go ahead.

17         MR. ALTMAN:  Well, let me frame the issue this way,

18    your Honor.

19         THE COURT:  So, we're going to have to -- again, I

10:41:18   20    have -- I'll give you another twenty minutes a side.

21         MR. ALTMAN:  I'd like to think -- again, I'll try

22    to.  I think in my mind I can do it faster, but we'll see.

23         THE COURT:  I'll probably interrupt you less this

24    time.

25         MR. ALTMAN:  The application that's being sought

45

Proceedings

1      now by Oak is for the ultimate relief in this case

2      effectively --

3                THE COURT:  I'm sorry, the application by who?

4                MR. ALTMAN:  By Oak.

5                THE COURT:  What application have they made?

6                MR. ALTMAN:  They are asking you to decide our

7      motion to vacate your prior order effectively giving them

8      sole control and wiping out completely Mr. Simpson's consent

9      rights under the AREH Operating Agreement.

10:42:10   10                THE COURT:  Maybe I missed something.  This is your

11      motion, right?

12                MR. ALTMAN:  It is, it is.  But make no mistake,

13      this motion is a request by Oak to confirm an agreement --

14      an order from you which takes away completely any right by

15      Mr. Simpson to consent to the sale or any --

16                THE COURT:  Well, the status quo, that's what it is

17      now.

18                MR. ALTMAN:  Well, no, it is really not.  What your

19      order did was a little more than, and Oak giving them credit

10:42:48   20      didn't push on it too hard because the concern is right

21      here.

22                The way your November 10th order -- 10th, I may

23      have the date wrong -- says is that preserve the status quo;

24      but maintain the consent rights of JJ Arch, and the JJ Arch

25      consent rights can be granted by either Mr. Simpson or

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 47 of 82

46

Proceedings

 1    Mr. Chassen.

 2         THE COURT:  And what you want in your motion -- at

 3    least as I see your pathway -- is by the part of your motion

 4    that seeks to terminate Mr. Chassen again is that that will

 5    effectively give Mr. Simpson the sole consent rights under

 6    my prior order.

 7         MR. ALTMAN:  In a sense that's one way to put it,

 8    but I'd like to go back to my original theme was we would

 9    like you to enforce the Operating Agreement as written, and

10:43:41   10    I submit to you that the Architect Real Estate Holdings

11    Operating Agreement when originally formed had the

12    80 percent operating member is JJ Arch of which Mr. Simpson

13    is the managing member.  He controlled that 80 percent

14    interest.  The investment member, Oak, owned 10 percent.

15    All the decisions were being made by Mr. Simpson.

16         We've -- I'm not trying to reargue what finding you

17    made with respect to that.  I know it is hard to hear

18    that --

19         THE COURT:  Aren't you doing that?

10:44:16   20    MR. ALTMAN:  Excuse me?

21         THE COURT:  It is exactly what you're doing.

22         MR. ALTMAN:  I'm really not intending that.

23         THE COURT:  You just want me to change the result?

24         MR. ALTMAN:  No.  The one piece of it where you

25    went beyond what the Agreement provides.

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 48 of 82

47

Proceedings

1          THE COURT:  I didn't do it by accident.  I

2     explained it very clearly why I was doing it.

3          MR. ALTMAN:  And that's exactly what they want.  If

4     rather than give me discovery and a hearing, which is what I

5     made pretty clear when I was here last time that's what we

6     want.  This is a big issue, a lot involved, a lot at stake.

7     It can't be decided summarily on the papers.  At that point

8     Oak had just put in some reply papers, which I hadn't had a

9     chance to see, this is sort of the same thing again.

10:44:54   10          I don't have an opportunity of what's been

11     presented to you today, I cannot cross-examine an affidavit

12     by Mr. Wiener which I got yesterday at noon, absolutely

13     incapable.  I wouldn't even pretend to do it, not in a

14     million years.

15          I've also been deprived of any discovery with

16     respect to anything on this issue.  I served discovery

17     requests as soon as we came in in an effort to intending

18     that we would be making this motion that it would be decided

19     in the ordinary course.

10:45:20   20          Now, I understand --

21          THE COURT:  Have you been rebuffed on discovery?

22     Why haven't I heard that?

23          MR. ALTMAN:  Because I've been gentlemanly and

24     counsel -- we set a schedule let's not do it right now, it's

25     the holidays.  We'll do it at the end of January, first days

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 49 of 82

48

Proceedings

1    in February, let's do the parties first.

2         I'm a busy practitioner as well and counsel at

3    Haynes and Boone asked for this request, and I gave it to

4    them.  To date, they asked for an extension of time until --

5    I think it's this week or next week to respond to my

6    discovery requests.  I haven't gotten anything yet.

7         So, it's not surprising to me.  I mean, it's nice

8    litigation gambit what they're trying to do.  Have the issue

9    that we crystallized that we said because you really,

10:46:07    10    really, Judge, if you allow the Oak to make business

11    decisions and sell or refinance the AREH properties without

12    Mr. Simpson's consent, that I believe is not permitted, not

13    conceived in connection with this.

14         THE COURT:  I mean, there is an appellate court;

15    right?

16         MR. ALTMAN:  Oh, that's where I'm going, Judge.  I

17    mean, I'll jump forward to it.  If today or soon you're

18    going to grant that relief, I'm going to ask you to stay the

19    order, and I'm going to go to the First Department.

10:46:43    20    THE COURT:  Counselor, I already have granted that

21    relief in November.

22         MR. ALTMAN:  They haven't acted on it.  They still

23    have not done anything.  Here's the other problem.  As

24    aggressive a litigator and arguer as I am, I'm really a

25    practicing settler.  What should be happening is Oak should

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 50 of 82

49

Proceedings

1    be sharing with Mr. Simpson the proposed transactions and

2    the things that they're working on and solicit his input so

3    that he may be involved in it.

4            If that were happening, we may not be -- we

5    probably would, but we may not be here, certainly not to

6    that extent.  We haven't gotten any of that.

7            Investor calls have been had.  They have attempted

8    to block him from it.  There's been no cooperation

9    whatsoever because they got this one step up in a

10:47:26  10    preliminary application where they got an order from you

11    that says, well, looks like we can kind of do whatever we

12    want and sell all these properties or refinance them without

13    Mr. Simpson's consent.

14            The motion that we made -- and I didn't ask for

15    temporary relief saying don't do it.  I want them to

16    continue doing whatever they do.  But, ultimately, if the

17    information that we've presented from Ms. Las and other

18    investors, what the parties specifically told Mr. Simpson

19    that what we want to do is get out and our primary purpose

10:48:01  20    is to relieve our personal guaranties.

21            If what Oak is doing is even handed, we have no

22    objection; but we have no way of knowing that because they

23    totally blocked them out and I haven't been provided any

24    discovery.  And if you do that today, that's where the case

25    is going.  I'll ask you to stay it.  You'll either grant it

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 51 of 82

50

Proceedings

1    or deny it.  I'll go to First Department.  They'll grant it

2    or deny it.   I would like for that not to happen.

3         THE COURT:  Well, the changing of roles of making

4    Oak managing member and the switch, it has a contractual

5    basis to it; and it was, in my view, justified by what I

6    consider overwhelming evidence of just some outrageous

7    conduct.

8         MR. ALTMAN:  I understand that.

9         THE COURT:  And, so, I don't want to go through all

10:48:53  10   of that again; but that record to me was overwhelming in

11   favor of doing it that way.  And to be quite honest, and I

12   get it, you haven't cross-examined the affidavits and

13   neither have I heard any cross-examination of it; but the

14   story I hear from Oak in their affidavits and in their plans

15   is a sort of a cohesive cogent plan and, frankly, what I

16   hear and see from the Simpson side is not.

17         Now, I haven't heard anything to suggest that their

18   plan of outsourcing and not having as many employees and

19   having it be done by professionals, that's the kind of sort

10:49:46  20   of rational plan at least I envisioned when I made that

21   order to begin with.  Because, let's face it, this place was

22   spinning out of control and into the ground.

23         MR. ALTMAN:  For lack of funding and, yes, I agree

24   with you.  Although, it's the first I have heard of

25   outsourcing to replace employees was in the papers that I

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 52 of 82

51

Proceedings

1    read yesterday afternoon.  First time I ever heard of it.

2    We've gotten no information whatsoever, no information with

3    the real issue, the one I'd like to focus --

4         THE COURT:  I don't know if this is what you're

5    seeking, also.  I don't recall making any order that -- you

6    know, JJ Arch is still a member of AREH, and they should be

7    entitled to the same kind of information that any member

8    would be entitled to.

9         MR. ALTMAN:  We agree.  The problem here is this

10:50:34    10    side fight that Oak is controlling between Mr. Simpson and

11    Mr. Chassen because Mr. Chassen knows everything because

12    he's on salary at Oak now.  We've got some claims against

13    them about that, but the projector of this entire investment

14    vehicle has been given no information whatsoever with

15    respect to the proposed transactions for all of the entities

16    that he put together, that he brought, 125 investors with

17    over $110 million of investment money.

18         THE COURT:  Candidly, that's from my perspective

19    his own fault because of how --

10:51:14    20         MR. ALTMAN:  Not getting information now.

21         THE COURT:  No, not that.  Look, I don't really

22    throw around orders like that in cases very often.  It's the

23    last thing I want to do is get involved in this, but the --

24    the animus that I observed was clearly hurting the entity

25    and all the other third parties that depend on the entity;

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 53 of 82

52

Proceedings

1    and it got to the point where it was so dysfunctional that I

2    didn't feel like there was any other choice and I didn't see

3    anything in the papers I've read in connection with this

4    motion which causes me to even for a moment change my mind

5    on that.

6         So, again, if you want to appeal that, that's fine;

7    but I don't see any reason to what is effectively asking me

8    to just change my mind on that decision at this point.  But

9    I don't recall seeing anything in that decision that

10:52:26  10   deprived Mr. Simpson or anyone at JJ Arch for information to

11   which they would be entitled, but not decision-making

12   authority.  That order put him in the role that Oak was

13   supposed to be in before as a, you know, they're an

14   investor, he's an investor at this point and that's that.

15        So that part of this motion I'm not, frankly,

16   persuaded by.

17        The second part, which is the Chassen facing part,

18   I think that sounds like a real claim.  I don't know a lot

19   about it at this point or enough about it to make any

10:53:13  20   decision on it other than to schedule it for whatever

21   hearing it is you want.  But, I'm -- I guess maybe what

22   you're asking me for is you want an evidentiary hearing now

23   on the first part to essentially reconsider the order I made

24   in November that I based on the evidence that was in front

25   of me and I'm not inclined to do that.

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 54 of 82

53
Proceedings

1          MR. ALTMAN:  That's not what I'm asking for now.

2     Let me try to as best I can put a point on it.

3          If and to the extent you enter any order or

4     continue any order that allows Oak to sell, dispose,

5     refinance or do anything with respect to the investment

6     entities of AREH without Mr. Simpson's consent, I submit to

7     you it is contrary to the Arch Operating Agreement and we're

8     going to ask for an immediate stay and appeal afterwards.

9          I get how you got to where you got, but that's too

10:54:14  10     far.

11          THE COURT:  Let me hear from the other side.

12          MS. THORNE:  Thank you, your Honor.  I'll try to

13     keep it very brief.

14          I did want to stress the emergency nature, why we

15     asked for a hearing right away; and that is because there

16     are a number of deals in process where the properties will

17     be foreclosed upon if they are not consummated.  We have

18     consents from investors.  We have worked out deals with

19     lenders.  We're happy to discuss the details of any of those

10:54:51  20     if your Honor has concerns about that.

21          THE COURT:  Is Chassen now an employee of Oak?

22          MS. THORNE:  No, he is not.  What we have here in

23     this motion and in Mr. Simpson's representations to lenders

24     that his consent is required is simply proof of why your

25     Honor entered the order in the first place.  And part of the

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 55 of 82

54

Proceedings

1    reason we believe that Simpson didn't choose to seek a TRO,

2    because he's accomplished what he wants by having the motion

3    on file because it's simply shown confusion and concern from

4    all the lenders about what order is on the table, what may

5    happen in a week.

6         And that's why we would respectfully request that

7    your Honor confirm your previous order and including the

8    fact that we do not need Mr. Simpson's consent for any major

9    decisions.

10:55:55   10         THE COURT:  Well, you need either his or Chassen's.

11         MS. THORNE:  Correct.

12         THE COURT:  You need one of the JJ Arch members'

13    consents.

14         MS. THORNE:  Yes.  I did just want to correct the

15    record on a couple of things.

16         THE COURT:  And, by the way, Mr. Chassen in making

17    those decisions is supposed to be exercising his fiduciary

18    duties to JJ Arch and the like.  So, that's not supposed to

19    be just a proxy for Oak consenting to its own transactions.

10:56:27   20         MS. THORNE:  We absolutely have no problem with

21    that.  We have no reason to believe Mr. Chassen isn't doing

22    that.  We have been providing all of the information to him

23    -- although, word on that with respect to Mr. Simpson as

24    well -- for him to independently assess and determine --

25         THE COURT:  I'm sorry, did you say you are also

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 56 of 82

55

Proceedings

1    providing same information to Mr. Simpson?

2         MS. THORNE:  I don't know if it is the same

3    information, but I do take issue with the fact that

4    Mr. Simpson says he is not being kept in the loop.  He

5    certainly is.

6         If you look at his own exhibits that were filed in

7    connection with his motion, they are replete with

8    discussions about the deal terms, discussions about the

9    lease of -- at 88 University.  You see e-mails from

10:57:11   10   Mr. Wiener saying, "I wanted to keep you in the loop on

11   everything that's happening."

12        So, I would, you know --

13        THE COURT:  What would be the reason not to give

14   him the same information that Chassen is given?

15        MS. THORNE:  Well, I will say because I do want to

16   repeat, I don't know exactly if it's a mirror image of

17   what's being provided; but I will say absolutely there would

18   be a reason.

19        I mean Mr. Simpson has done nothing but try to end

10:57:37   20   these deals, misrepresenting facts to lenders so that he can

21   stand in the way of them happening despite the fact that

22   they are quite obviously in the best interest of investors,

23   and we have never done anything to keep any information away

24   from him.  There are obviously conversations that are had

25   with Mr. Chassen that Mr. Simpson is not on the phone.  He

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 57 of 82

56

Proceedings

1    has been on every single investor call.

2         And that's my only reluctance saying there may not

3    be a perfect mirror of information, but I can commit to your

4    Honor that Oak has provided him with information on the

5    deals as is evident from even what he has submitted to this

6    Court.

7         THE COURT:  Sufficient information that he can

8    determine whether to exercise his consent right?

9         MS. THORNE:  Absolutely, he has been involved in --

10:58:28   10    THE COURT:  So, all material information about

11    these transactions?

12         MS. THORNE:  All material information about the

13    transactions.  He's been on phone calls with the lenders

14    himself.  He's had his own discussion with them apart from

15    us.  He's had discussion with other investors who are

16    spearheading those negotiations.  There is no hiding the

17    ball here.

18         THE COURT:  Just so we're clear, I'm trying to get

19    my bearings on this again.  That's not the kind of

10:59:01   20    involvement that he's necessarily entitled to.

21         MS. THORNE:  Correct.

22         THE COURT:  Because Oak is the managing member

23    under my aware anyway and makes the managerial decisions.

24    JJ Arch is now the -- essentially the investor member and is

25    entitled to some information, but is not entitled to be

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 58 of 82

57

Proceedings

1    making the decisions or being on the phone with lenders or

2    getting involved and certainly not in interfering with Oak's

3    job as managing member.  So, I'm not sort of nodding along

4    to all this saying that that's something he's entitled to

5    do.  He's entitled to the kind of information that investor

6    member should get.

7            So, it is a narrower kind of thing, and I don't

8    want to be misunderstood as saying that, well, you know,

9    because JJ Arch used to be the managing member, they should

10:59:59   10   still get that kind of access.  That's not the way I

11   intended this order to work.  This was a switching of sides.

12   Frankly, the agreement does provide for that under certain

13   circumstances where there is cause; and the record is I

14   think clear in the last motion, there was cause to do that.

15           MS. THORNE:  And I appreciate that, your Honor.

16   And I'll just tell you from a practical perspective, the

17   reason that Oak has provided more information than it has to

18   is because, ideally, everyone we get on board with these and

19   we could all have a kumbaya moment and get some deals done.

11:00:39   20   So, Oak is not in a situation where they're trying

21   to cut him out.  Ideally, we would all just agree on these

22   things as we should, as everyone else is agreeing.  But,

23   instead, what has happened is what I think exactly what your

24   Honor feared would happen which is an unbelievable amount of

25   interference and, frankly, using this Court to try to sell

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 59 of 82

58

Proceedings

1      doubt amongst lenders about whose consent is required for

2      deals to go through.

3              THE COURT:  Well, there should be no -- I don't

4      understand what the uncertainty is.  There's an order which

5      I hope it's clear.  This is a motion, although not styled

6      this way, asking me to reconsider it and I'm not going to

7      based on what I've seen.

8              MS. THORNE:  All right.  Well, thank you very much,

9      your Honor.

11:01:33  10            THE COURT:  There is a part of the order, though,

11      that also asks for relief against Mr. Chassen.

12              MR. SCHWARTZ:  Yes, can I address that --

13              THE COURT:  Before I let Oak's counsel sit down, I

14      do understand because it's a clever potentially move here

15      that this is a potential side door around an overt asking me

16      to change the order.  If the other part of the order which

17      seeks to jettison Mr. Chassen from JJ Arch were it to be

18      granted, I went back and looked at my other order and the

19      consent rights were to be exercised by either of JJ Arch's

11:02:13  20      members, Mr. Chassen or Mr. Simpson.

21              So the second one, trojan horse, if you will, is if

22      I do that, if I say, Well, you know, based on this

23      August 1st thing or something that happened in September,

24      Chassen's out; that probably has the effect of changing the

25      text of my earlier order or at least it could unless I

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 60 of 82

59

Proceedings

1    change it along with it.

2          MS. THORNE:  And, your Honor, that's exactly what

3    we're worried about because what we need to finalize --

4          THE COURT:  To be honest with you, I'm prepared

5    based on the papers I have already to deny the branch of

6    this that relates to changing my prior order.  I'm not

7    prepared to just wipe away without some additional process

8    to get rid of a new argument about "terminating"

9    Mr. Chassen based on, frankly, a record that's a little

11:03:18   10    murky to me.

11          MS. THORNE:  And I'll let Mr. Schwartz address part

12    of that; but I would argue, your Honor, that when you

13    entered the PI, it was based on our mountain of evidence

14    related to cause events under the --

15          THE COURT:  And the cause changes -- just the way

16    that contract, works, right -- it's cause to remove the

17    managing member; and when that as I recall the language, it

18    basically you switch positions and they become an investor

19    member with consent rights.

11:03:55   20          MR. THORNE:  That's correct.  But one thing I would

21    note is that under the JJ Arch Agreement, cause events for

22    removal plaintiff of Mr. Simpson are supported by the cause

23    events under Arch.  And I know we're not deciding that

24    today.

25          THE COURT:  Well, that's a motion that's not even

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 61 of 82

60

Proceedings

1    in front of me.  It's a removal of Mr. Simpson at JJ Arch.

2    Right now the only thing -- well, it depends on what month

3    it is because I usually have a motion to remove one or both

4    of them at any particular time in my docket.  This time the

5    one that I have is the motion to remove Chassen.

6         MR. THORNE:  Right.  And I would note, though, that

7    there should not be any scenario regardless of what happens

8    there where Mr. Simpson somehow recovers those consent

9    rights through the back door or otherwise given that those

11:04:50    10    cause events flow through to the JJ Arch.

11         THE COURT:  Well, I'm pointing out that I recognize

12    the possible play that they are putting in motion here; and

13    I would have to consider in granting that whether as a

14    consequence of that I would have to modify my order which

15    the earlier, the November order which was specifically

16    predicated on there being two JJ Arch members; so I would at

17    that point reconsider how to -- how, if at all, to change

18    that order.

19         But, that's the next step in this because the

11:05:37    20    battle within JJ Arch doesn't directly involve Oak; but it

21    does through this mechanism that I just described.  But

22    there are allegations of financial chicanery at JJ Arch that

23    Oak may not even know about and probably doesn't care about

24    unless it affects its own interests and shouldn't really;

25    but I just want to make sure you are seeing the same thing I

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 62 of 82

61

Proceedings

1    am which is that although the second part of this motion

2    which I'm not denying out of hand today and I'll set for an

3    argument and probably an evidentiary hearing, you'll want to

4    be there because you'll want to at least argue for

5    protecting Oak's rights to the extent that JJ Arch's

6    membership changes.

7          MR. SCHWARTZ:  Your Honor --

8          THE COURT:  Quick one, because I do have a group of

9    people waiting to come next.  I have may ask if any of them

11:06:43   10    want to be the receiver at some point during this.

11         MR. SCHWARTZ:  Your Honor, it is our position that

12    the Court should -- we fully briefed, we put in opposition

13    within the timeframe that the Court asked.  We put in an

14    affidavit.  We put in a memorandum of law.  We addressed --

15         THE COURT:  Mr. Altman asked me if I would have an

16    evidentiary hearing on his motion; and my general rule,

17    although a lot of preliminary injunction hearings are

18    settled on affidavits, if the parties want an evidentiary

19    hearing I'm usually amenable to providing that because

11:07:21   20    affidavits aren't that useful, frankly, especially with you

21    two guys.  I mean, not you two lawyers, but when I -- these

22    two people are diametrically opposed on almost anything.  I

23    don't get a lot of comfort just from hearing the dueling

24    affidavits between these two individuals, candidly, I

25    don't.

Bonnie Piccirillo - Official Court Reporter

62

Proceedings

1          MR. SCHWARTZ:  Your Honor, I understand that, but

2     we have -- these are ultimate issues.  In our amended

3     counterclaims we're seeking Mr. Simpson's removal from

4     JJ Arch.  We will -- if your Honor is intending to not deny

5     the motion today, we're going to obviously move, ourselves,

6     to terminate Mr. Simpson.  Clearly, there will be dueling

7     motions on this issue before your Honor.

8          Ultimately, these are ultimate issues that go to

9     the core of the case and so it's, I think -- I think your

11:08:15  10     Honor's order that basically --

11          THE COURT:  That's actually a good point.  So, is

12     the motion -- I think what they're seeking is sort of

13     permission to terminate.

14          Probably in one of my earlier orders I said enough

15     with these unilateral terminations.  None of these are going

16     to be effective unless there's an order from the court along

17     with it.  But you're right, that is -- a decision on whether

18     there are grounds to terminate one or the other is what

19     lawsuits are about.  The only thing that I really could

11:08:54  20     grant is some temporary change in status pending the

21     remaining remainder of the case.  But, yeah, if you want to

22     have a reciprocal motion on for the same thing, I suppose

23     you can.

24          MR. SCHWARTZ:  I mean, we certainly will do that,

25     your Honor.  But I think, also, if your Honor looks at the

63

Proceedings

1    bases that are raised in this motion as they pertain to Mr.

2    Chassen, they are so -- they're so limited in what they

3    allege and basically comes down to --

4         THE COURT:  I, candidly, don't agree with that.

5    Applying a somewhat of a motion to dismiss kind of standard

6    if I accept as true all of the things that they're alleging

7    that Mr. Chassen did, it may not be accurate; but if it is

8    accurate, it doesn't seem frivolous to me.

9         MR. SCHWARTZ:  Your Honor, if you look at the

11:09:51  10    e-mails with respect to the 89th Street property; for

11    example, there is no evidence that Mr. Chassen did not

12    consent.  Mr. Chassen is a named defendant in the

13    foreclosure action as a guarantor and he's liable for any

14    deficiency judgment.  Mr. Chassen did respond to Mr. Peldman

15    on January 3rd.

16         THE COURT:  So, you're saying that he unequivocally

17    consented to --

18         MR. SCHWARTZ:  Correct, correct, and there was --

19    Mr. Simpson attaches an e-mail just from I believe it was

11:10:23  20    January 8th where they attached -- where the e-mail has a

21    proposed agreement with the lender that says it is subject

22    to further review from counsel.

23         THE COURT:  Put this aside for a second.  Are you

24    representing in court right now that he consents to that

25    going forward?

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 65 of 82

64

Proceedings

1           MR. SCHWARTZ:  He has consented, he consented to

2     the refinancing this property.  He is going to be liable for

3     any deficiency judgment on this loan.

4           THE COURT:  Well, I suggest that because for

5     whatever reason, I have two lawyers standing in front of me

6     who have every reason to want to move forward with that

7     transaction who don't think they have the consent.  I would

8     suggest whatever form that they consider necessary to

9     memorialize that consent, your client even if he thinks he's

11:11:11  10   already done it, confirms it quickly.

11          MR. SCHWARTZ:  He confirms it in e-mail -mail that

12    we attached.

13          THE COURT:  Forget e-mails.  Let's forget

14    everything that -- whatever else has happened, I have two

15    folks who don't think it happened.  So, I would suggest that

16    the three lawyers when we're done here which is going to be

17    extremely soon, get together and find an appropriate way of

18    documenting this consent so that at least this sub-issue can

19    move on, okay?

11:11:43  20   MR. SCHWARTZ:  Certainly, your Honor.  There's

21    no -- we'll do that after, your Honor.

22          But I'd just also like to point out, your Honor,

23    that in the January 9th e-mail where this proposal was

24    attached subject to further review by counsel, Mr. Simpson,

25    again, tells Mr. Chassen, "Jared, please be advised that I

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 66 of 82

65

Proceedings

1      am the sole managing member of JJ Arch and you have no

2      ability to do anything without my explicit approval."

3              Again, at NYSCEF number 594.  This continues --

4              THE COURT:  At some level there's nothing incorrect

5      about that sentence.

6              MR. SCHWARTZ:  While he's asking Mr. Chassen to

7      consent, he's always saying, nothing you can do.  You have

8      no rights at all.  Everything --

9              THE COURT:  Well, that part would be wrong.

11:12:29  10          MR. SCHWARTZ:  Okay.

11              THE COURT:  Look, this isn't that hard, right?  I

12      mean, I understand that these guys couldn't agree on the day

13      of the week, but the contract puts them in the cats tied

14      with their tails together.

15              Simpson is in charge, but there's an enormous

16      carveout for what's called major decisions; but to my

17      reading, a lot of those are broader definition of major

18      decisions than you see in a lot of agreements, but that's

19      what they agreed to.  So, they're locked together, tied

11:13:10  20      together, sometimes the cats in the telling of the story in

21      a bag tied together, don't let them eat each other because

22      it's not going to work out very well.

23              MR. SCHWARTZ:  Absolutely, absolutely, your Honor;

24      but if I could just make one other point, your Honor.

25              There's no evidence -- Mr. Simpson presented no

Bonnie Piccirillo - Official Court Reporter

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 67 of 82

66

Proceedings

1      evidence, your Honor, of a request that was -- that

2      Mr. Chassen refused.  Under the JJ Arch Operating Agreement,

3      if Mr. Chassen ignores a request, he automatically is deemed

4      a consent.  So, there is not any evidence that there's been

5      affirmative refusal --

6           THE COURT:  I guess that's your position.

7      Mr. Altman wrote I thought some persuasive papers that

8      sounded fairly reasonable in the other direction that, you

9      know -- look, the fact that I have come out on numerous

11:14:01  10      occasions finding that Mr. Simpson's actions were

11      unreasonable doesn't mean that he's wrong on everything; and

12      there's some things that I read in there about the back and

13      forth which doesn't put your client in the best light

14      either.

15           So, I wouldn't get too over confident by the fact

16      that there's been a bit of a winning streak because I

17      haven't gotten to the bottom of these intra-JJ Arch disputes

18      yet, and I will.

19           MR. SCHWARTZ:  Your Honor, we're certainly not over

11:14:37  20      confident about anything, your Honor; but I think -- I think

21      the upshot of everything here, your Honor, is JJ Arch is no

22      longer a managing member of AREH because of Mr. Simpson.

23      The misconduct of Mr. Simpson throughout this case and

24      previously is -- has been established to your Honor's

25      satisfaction sufficient to remove the company and cause JJ

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 68 of 82

67

Proceedings

1    Arch tremendous damage.

2        So, I feel confident that when we make our

3    competing motion for his removal that it will be amply

4    supported.

5        THE COURT:  You can make whatever motion you want.

6    You make a good point.  Look, what I'm going to do on this

7    motion is I'm going to deny the branch relating to what I

8    consider a motion to reconsider my prior order and defer

9    ruling on the JJ Arch portion of the motion pending an

11:15:33  10    evidentiary hearing.

11        I'm going to leave you with Mr. Scarlet to talk

12    about the schedule while I talk to these next folks, but

13    that's my resolution of the two motions today.

14        I appreciate hearing from you all.  It's been a

15    well-fought battle, so thank you very much and we'll see you

16    next time.

17        MR. ALTMAN:  Thank you, your Honor.

18        Just with respect to in the order that you enter

19    make clear whether or not you're granting or denying my

11:16:02  20    request for a stay to the extent it permits Oak to go

21    forward --

22        THE COURT:  Is there a request for a stay in the

23    motion?

24        MR. ALTMAN:  No.

25        THE COURT:  Well, if you're making -- I'm not going

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 69 of 82

68

Proceedings

 1     to stay it -- I'm not going to stay the continuing --

 2     there's already an order in place in November, which nobody

 3     has asked me to stay.  If what you're saying is now having

 4     denied what I consider your request to renew that motion,

 5     you want me now to go back and stay an order that I put in

 6     place in November the answer is no, I'm not going to do

 7     that.

 8          MR. ALTMAN:  That's all I need to know.  Thank you.

 9          THE COURT:  All right, thanks, everyone.

11:16:43  10          MR. ALTMAN:  Thank you.

11          MR. SCHWARTZ:  Thank you.

12          *     *     *     *     *

13          (Certification on next page)

14

15

16

17

18

19

20

21

22

23

24

25

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 70 of 82

69

1

2

3                       **C E R T I F I C A T I O N**

4

5      INDEX NO. 158055/23   JEFFREY SIMPSON et al vs.

6                           JARED CHASSEN et al CHASSEN

7                                ---

8

9                           THIS IS HEREBY CERTIFIED TO BE A
                            TRUE AND CORRECT TRANSCRIPT.
10

11                          *Bonnie Piccirillo*
                            BONNIE PICCIRILLO
12                          OFFICIAL COURT REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 71 of 82

1

## $

**$1,186,329.84** [1] - 14:19
**$110** [1] - 51:17
**$25,000** [1] - 16:12
**$36,000** [2] - 26:9, 28:22
**$45,000** [1] - 26:8
**$50,000** [1] - 14:21
**$500,000** [1] - 14:10
**$675,000** [1] - 14:17
**$675,938.35** [2] - 13:21, 14:17
**$995,000** [1] - 14:12

## 1

**1** [13] - 11:14, 14:3, 14:4, 20:20, 21:2, 22:23, 26:12, 27:7, 27:20, 28:10, 37:14, 37:16, 39:6
**1.2** [2] - 9:4, 9:10
**10** [2] - 30:21, 46:14
**10.3** [1] - 9:24
**10016** [1] - 3:4
**10017** [1] - 2:22
**10038** [1] - 2:14
**10112** [1] - 2:18
**10th** [2] - 45:22
**11** [1] - 42:2
**11556** [1] - 3:9
**11969** [1] - 2:11
**1201** [1] - 3:9
**125** [2] - 2:22, 51:16
**146** [4] - 22:20, 22:23, 22:24
**15** [1] - 28:20
**150** [1] - 2:14
**158055/23** [1] - 1:6
**1640** [1] - 22:3
**1967** [3] - 28:18, 28:19, 28:21
**1983** [5] - 26:5, 26:7, 28:13, 28:19, 28:20
**1st** [5] - 13:18, 15:5, 19:16, 21:11, 58:23

## 2

**2** [2] - 2:3, 22:24
**2023** [6] - 11:14, 13:18, 15:4, 15:8, 20:7, 21:2
**2024** [1] - 2:3
**222** [1] - 37:16
**225** [4] - 9:9, 13:24, 14:6, 14:25
**25,000** [1] - 27:1

## 25

**25th** [1] - 20:7
**26th** [1] - 2:17
**27** [1] - 15:8
**2A** [1] - 29:3

## 3

**3** [1] - 1:1, 22:24
**3.2** [4] - 22:25, 24:19, 40:4, 40:22
**30** [2] - 2:17, 9:8
**31st** [1] - 13:10
**3rd** [3] - 18:18, 19:17, 63:15

## 4

**4.2** [1] - 22:12
**4.2(a** [1] - 30:12
**4.2(b** [1] - 30:14
**4.2(b)(ii)** [1] - 30:21
**42nd** [1] - 3:4
**492** [1] - 9:6
**493** [1] - 9:21

## 5

**5** [4] - 33:21, 34:19, 35:25, 41:1
**50/50** [3] - 13:22, 15:3, 19:9
**500,000** [1] - 23:14
**500K** [1] - 18:20
**509** [2] - 13:19, 14:16
**510** [1] - 9:21
**517** [3] - 15:9, 15:10, 17:6
**518** [3] - 10:5, 10:9, 10:25
**519** [1] - 21:4
**527** [1] - 9:8
**550** [2] - 14:25, 22:4
**581** [2] - 18:2, 18:16
**590** [1] - 2:10
**594** [1] - 65:3
**5th** [1] - 21:1

## 6

**6** [1] - 41:14
**60** [1] - 2:2
**600** [1] - 3:4
**608941** [4] - 1:17, 2:17, 2:21, 4:16
**6313** [1] - 8:22

## 7

**701** [1] - 2:14
**7th** [1] - 2:22

## 8

**80** [2] - 46:12, 46:13
**80H** [2] - 15:1, 15:4
**88** [1] - 55:9
**88th** [1] - 31:25
**89th** [5] - 22:20, 22:23, 22:24, 63:10
**8th** [1] - 63:20

## 9

**9th** [1] - 64:23

## A

**AARON** [1] - 3:5
**Aaron** [1] - 4:17
**ability** [1] - 65:2
**able** [5] - 10:12, 16:8, 23:22, 35:4, 41:18
**absolutely** [7] - 42:16, 47:12, 54:20, 55:17, 56:9, 65:23
**abundantly** [1] - 18:1
**accelerate** [1] - 44:8
**accept** [2] - 18:14, 63:6
**access** [8] - 8:14, 8:16, 37:24, 38:8, 38:17, 41:7, 57:10
**accident** [1] - 47:1
**accidentally** [2] - 17:7, 17:8
**accomplish** [1] - 4:3
**accomplished** [1] - 54:2
**account** [2] - 6:12, 38:2
**accounts** [11] - 8:14, 10:8, 12:25, 34:7, 34:8, 35:2, 35:5, 37:24, 40:25, 41:4, 41:7
**accurate** [3] - 25:24, 63:7, 63:8
**achieved** [1] - 26:20
**acknowledge** [1] - 26:12
**acted** [2] - 10:1, 48:22
**action** [2] - 40:12, 63:13
**actions** [1] - 66:10
**actively** [3] - 9:1, 9:12, 32:7
**actual** [1] - 14:18
**Adam** [2] - 3:8, 5:5
**add** [1] - 41:6
**added** [1] - 14:20
**adding** [1] - 33:19

**additional** [2] - 44:14, 59:7
**address** [4] - 12:16, 13:15, 58:12, 59:11
**addressed** [1] - 61:14
**adhere** [1] - 30:2
**adjective** [1] - 38:16
**adjudicated** [1] - 12:12
**adjudication** [1] - 29:24
**administrative** [1] - 22:14
**admitted** [1] - 35:10
**advantage** [1] - 19:13
**adversely** [1] - 5:25
**advised** [1] - 64:25
**affect** [3] - 5:13, 24:10, 42:8
**affects** [2] - 29:2, 60:24
**affidavit** [4] - 9:7, 38:4, 47:11, 61:14
**affidavits** [5] - 50:12, 50:14, 61:18, 61:20, 61:24
**affiliation** [1] - 4:19
**afternoon** [2] - 38:6, 51:1
**afterwards** [1] - 53:8
**age** [1] - 26:6
**agenda** [2] - 7:14, 7:17
**aggressive** [1] - 48:24
**ago** [2] - 9:8, 29:17
**agree** [11] - 27:21, 28:15, 32:22, 33:10, 34:13, 42:4, 50:23, 51:9, 57:21, 63:4, 65:12
**agreed** [2] - 13:19, 14:23, 65:19
**agreeing** [1] - 57:22
**agreement** [6] - 12:7, 27:22, 36:3, 45:13, 57:12, 63:21
**Agreement** [44] - 9:24, 11:11, 11:13, 12:1, 14:3, 14:4, 14:9, 20:20, 21:13, 21:21, 21:23, 22:13, 24:3, 24:12, 25:14, 25:17, 26:12, 27:20, 29:6, 30:13, 33:22, 35:12, 35:15, 36:5, 37:14, 37:16, 37:20, 39:6, 39:15, 39:20, 40:1, 40:4, 40:7, 40:8, 41:1, 41:14, 45:9, 46:9, 46:11, 46:25,
**acknowledge** — *(continued)*

**53:7, 59:21, 66:2**
**Agreements** [7] - 22:3, 22:25, 23:1, 23:13, 23:25, 35:17, 35:18
**agreements** [4] - 18:22, 23:24, 35:19, 65:18
**ahead** [2] - 9:18, 44:16
**Airbnb** [2] - 35:14, 37:21
**AISHLINN** [1] - 2:19
**Aishlinn** [1] - 4:15
**allegations** [2] - 29:19, 60:22
**allege** [1] - 63:3
**alleged** [1] - 37:5
**alleges** [1] - 39:7
**alleging** [1] - 63:6
**allegory** [1] - 43:17
**ALLEN** [1] - 2:15
**Allen** [1] - 4:13
**alleviate** [1] - 9:10
**allocated** [1] - 10:22
**allocating** [1] - 21:16
**allow** [2] - 22:15, 48:10
**allowing** [2] - 31:22, 38:10
**allows** [2] - 22:13, 53:4
**almost** [1] - 61:22
**ALTMAN** [67] - 2:9, 2:11, 4:11, 23:21, 24:9, 24:20, 24:22, 25:2, 25:8, 25:10, 25:25, 26:15, 26:18, 28:15, 28:19, 28:25, 29:8, 30:5, 30:8, 30:21, 31:3, 31:9, 31:15, 32:14, 32:22, 33:4, 33:13, 34:13, 35:1, 35:21, 36:1, 36:4, 36:10, 36:16, 36:19, 37:5, 37:15, 38:1, 38:4, 38:15, 42:11, 42:18, 42:20, 44:17, 44:21, 44:25, 45:4, 45:6, 45:12, 45:18, 46:7, 46:20, 46:22, 46:24, 47:3, 47:23, 48:16, 48:22, 50:8, 50:23, 51:9, 51:20, 53:1, 67:17, 67:24, 68:8, 68:10
**Altman** [5] - 4:12, 10:15, 23:19, 61:15, 66:7
**amenable** [1] - 61:19
**amended** [4] - 13:7,

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 72 of 82

2

40:6, 41:2, 62:2
**amount** [3] - 14:12, 14:17, 57:24
**amounts** [2] - 21:16, 35:1
**amply** [1] - 67:3
**animus** [1] - 51:24
**answer** [2] - 23:4, 68:6
**antique** [4] - 9:14, 9:17, 14:8, 28:13
**anyway** [3] - 30:2, 34:5, 56:23
**apart** [3] - 19:8, 24:22, 56:14
**apocryphal** [1] - 43:13
**appeal** [2] - 52:6, 53:8
**appearance** [2] - 6:4, 7:8
**appearances** [1] - 4:9
**APPEARANCES** [2] - 2:8, 2:24
**appearing** [1] - 7:2
**Appearing** [2] - 2:20, 3:2
**appellate** [1] - 48:14
**applicable** [1] - 11:25
**application** [4] - 44:25, 45:3, 45:5, 49:10
**applying** [1] - 63:5
**appointed** [1] - 8:4
**appointment** [2] - 7:20, 8:3
**appreciate** [6] - 5:18, 6:22, 7:5, 7:6, 57:15, 67:14
**appropriate** [6] - 10:18, 10:23, 10:24, 32:16, 37:7, 64:17
**approval** [1] - 65:2
**approve** [1] - 18:24
**approved** [7] - 15:7, 15:21, 16:3, 16:4, 16:21, 16:23, 16:25
**ARCH** [11] - 1:3, 1:3, 1:4, 1:9, 1:10, 1:10, 1:16, 1:19, 1:23
**Arch** [92] - 3:3, 4:17, 9:23, 9:24, 10:4, 10:8, 10:11, 10:17, 10:18, 10:19, 11:2, 12:6, 12:11, 13:2, 18:5, 18:8, 19:25, 21:3, 22:4, 22:7, 22:9, 22:10, 22:12, 22:16, 22:18, 23:1, 23:4, 23:12, 23:16, 24:4, 24:11, 24:12, 25:21, 26:2, 27:12, 27:15, 29:12, 30:13,

30:24, 31:4, 32:21, 35:19, 36:5, 36:12, 36:14, 36:23, 36:24, 37:6, 37:8, 39:9, 39:16, 40:1, 40:2, 40:25, 41:1, 41:3, 41:4, 41:8, 41:12, 41:14, 43:22, 43:25, 44:1, 44:2, 45:24, 46:12, 51:6, 52:10, 53:7, 54:12, 54:18, 56:24, 57:9, 58:17, 59:21, 59:23, 60:1, 60:10, 60:16, 60:20, 60:22, 62:4, 65:1, 66:2, 66:17, 66:21, 67:1, 67:9
**Arch's** [9] - 8:10, 8:11, 8:12, 8:14, 9:1, 10:11, 36:13, 58:19, 61:5
**Architect** [1] - 46:10
**AREH** [7] - 30:7, 43:22, 45:9, 48:11, 51:6, 53:6, 66:22
**arguably** [1] - 26:5
**argue** [2] - 59:12, 61:4
**arguer** [1] - 48:24
**argument** [9] - 12:22, 27:8, 28:8, 28:10, 29:14, 30:9, 30:10, 59:8, 61:3
**arrangement** [1] - 32:8
**Article** [5] - 33:21, 34:19, 35:25, 41:1, 41:14
**aside** [4] - 10:14, 19:6, 19:21, 63:23
**aspects** [1] - 24:10
**assert** [1] - 6:11
**assess** [1] - 54:24
**asset** [6] - 11:8, 28:12, 28:13, 29:3, 29:5, 40:10
**assets** [20] - 8:10, 8:11, 8:12, 9:2, 9:12, 11:17, 11:19, 12:20, 13:22, 20:1, 20:17, 27:12, 27:15, 27:19, 28:5, 28:11, 40:1, 40:2, 40:20
**assist** [1] - 38:10
**assume** [3] - 11:6, 11:10, 12:6
**assuming** [2] - 10:15, 10:17
**attached** [7] - 15:9, 18:5, 26:25, 32:3, 63:20, 64:12, 64:24

**attaches** [1] - 63:19
**attempt** [1] - 42:15
**attempted** [1] - 49:7
**attempting** [1] - 9:1
**Attorneys** [5] - 2:10, 2:13, 2:17, 2:21, 3:8
**attorneys** [1] - 3:3
**August** [20] - 11:14, 13:10, 13:18, 14:3, 14:4, 15:5, 18:18, 19:16, 19:17, 20:20, 21:1, 21:11, 26:12, 27:7, 27:20, 28:10, 37:14, 37:16, 39:6, 58:23
**authority** [2] - 44:3, 52:12
**authorize** [2] - 22:18, 43:24
**authorized** [1] - 25:16
**authorizes** [1] - 30:22
**automatically** [1] - 66:3
**available** [2] - 9:6, 21:4
**Avenue** [2] - 2:22, 3:4
**avoid** [1] - 35:4
**aware** [1] - 56:23

## B

**backed** [1] - 16:22
**background** [1] - 7:10
**backward** [1] - 41:24
**bad** [1] - 20:9
**bag** [1] - 65:21
**balances** [1] - 14:24
**balancing** [1] - 8:21
**BALL** [1] - 3:7
**Ball** [1] - 5:1
**ball** [1] - 56:17
**Bank** [3] - 14:11, 15:7, 26:20
**BANK** [1] - 1:7
**bank** [14] - 8:14, 15:10, 15:18, 16:12, 17:6, 17:14, 17:25, 27:2, 37:24, 38:7, 38:8, 41:7
**banker** [1] - 38:6
**bar** [1] - 8:10
**based** [18] - 11:10, 11:12, 11:13, 16:5, 16:23, 19:17, 21:22, 27:6, 27:7, 29:14, 35:4, 39:12, 52:24, 58:7, 58:22, 59:5, 59:9, 59:13
**bases** [1] - 63:1
**basic** [1] - 40:6

**basis** [8] - 11:6, 21:18, 23:9, 23:13, 26:11, 32:11, 38:22, 50:5
**battle** [2] - 60:20, 67:15
**BCL** [1] - 38:20
**bearings** [1] - 56:19
**become** [1] - 59:18
**BEFORE** [1] - 2:5
**begin** [1] - 50:21
**beginning** [2] - 4:10, 22:22
**behalf** [1] - 4:14
**beings** [1] - 6:6
**belts** [1] - 41:9
**benefits** [1] - 18:8
**best** [4] - 18:15, 53:2, 55:22, 66:13
**bets** [1] - 19:8
**better** [2] - 19:6, 43:9
**between** [10] - 6:23, 18:3, 23:24, 25:6, 29:22, 30:1, 37:6, 44:15, 51:10, 61:24
**beyond** [2] - 23:18, 46:25
**big** [2] - 25:9, 47:6
**bill** [1] - 25:13
**bills** [1] - 9:22
**bind** [1] - 33:11
**bit** [2] - 42:3, 66:16
**block** [3] - 32:16, 32:17, 49:8
**blocked** [1] - 49:23
**board** [1] - 57:18
**bold** [1] - 24:16
**bolding** [1] - 24:18
**Bonnie** [1] - 3:22
**books** [5] - 8:16, 38:13, 38:17, 38:19, 41:13
**BOONE** [1] - 2:16
**Boone** [1] - 48:3
**borrower** [1] - 15:12
**Borrower** [3] - 22:23, 22:24
**Bottini** [1] - 4:15
**BOTTINI** [1] - 2:19
**bottom** [1] - 66:17
**bought** [1] - 13:20
**Box** [1] - 2:10
**branch** [2] - 59:5, 67:7
**breached** [1] - 39:22
**break** [2] - 17:2, 24:22
**breakdown** [2] - 14:16, 21:15
**brief** [2] - 44:13, 53:13
**briefed** [2] - 11:23, 61:12

**briefing** [5] - 41:19, 41:22, 41:25, 42:4, 44:14
**broad** [3] - 33:7, 39:3, 40:9
**broader** [2] - 7:18, 65:17
**broadly** [1] - 12:9
**Broadway** [1] - 2:14
**broke** [1] - 14:20
**brought** [2] - 18:20, 51:16
**bunch** [1] - 12:8
**business** [5] - 12:6, 13:21, 31:12, 35:24, 48:10
**businesses** [3] - 8:17, 17:17, 23:11
**busy** [2] - 41:20, 48:2
**buy** [2] - 28:20, 28:22
**buyout** [2] - 14:18, 19:8
**BY** [6] - 2:11, 2:15, 2:18, 2:23, 3:5, 3:10

## C

**calculation** [1] - 14:18
**calculations** [1] - 21:6
**candidly** [4] - 29:23, 51:18, 61:24, 63:4
**cannot** [2] - 40:19, 47:11
**capable** [1] - 18:24
**capacity** [2] - 36:13, 41:5
**capital** [42] - 9:4, 12:24, 12:25, 13:6, 13:7, 13:10, 13:13, 21:3, 21:5, 21:9, 21:12, 21:14, 21:19, 21:20, 21:22, 22:5, 22:7, 22:9, 22:11, 22:14, 22:15, 22:16, 22:17, 22:19, 23:2, 23:3, 23:4, 23:6, 23:12, 30:11, 30:16, 30:17, 30:23, 31:2, 34:7, 34:8, 34:22, 34:23, 35:2, 35:5
**car** [2] - 26:8, 28:22
**cards** [1] - 18:21
**care** [1] - 60:23
**carefully** [3] - 39:2, 39:20, 43:10
**cars** [1] - 19:9
**carve** [1] - 24:21
**carve-out** [1] - 24:21
**carveout** [1] - 65:16
**case** [20] - 4:5, 5:21,

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 - 02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 73 of 82

3

5:22, 6:10, 7:19, 10:24, 11:16, 11:22, 22:22, 28:5, 28:17, 30:7, 36:16, 38:21, 39:17, 45:1, 49:24, 62:9, 62:21, 66:23

**cases** [2] - 24:2, 51:22

**cash** [2] - 9:5, 19:4

**Cat** [1] - 43:13

**cats** [3] - 43:14, 65:13, 65:20

**causes** [1] - 52:4

**causing** [1] - 44:10

**cellphone** [1] - 25:13

**center** [1] - 5:16

**Centre** [1] - 2:2

**certain** [5] - 11:17, 20:1, 20:16, 39:7, 57:12

**certainly** [11] - 5:15, 6:8, 25:6, 38:22, 49:5, 55:5, 57:2, 62:24, 64:20, 66:19

**Certification** [1] - 68:13

**cetera** [4] - 19:11, 20:12

**chains** [1] - 20:7

**chance** [1] - 47:9

**change** [9] - 17:15, 19:22, 46:23, 52:4, 52:8, 58:16, 59:1, 60:17, 62:20

**changes** [3] - 43:21, 59:15, 61:6

**changing** [1] - 40:7, 50:3, 58:24, 59:6

**charge** [2] - 18:10, 65:15

**CHASSEN** [2] - 1:7, 1:9

**Chassen** [87] - 2:13, 4:14, 7:14, 8:9, 8:16, 8:17, 8:18, 8:24, 8:25, 9:3, 9:11, 9:14, 9:15, 11:15, 11:16, 12:22, 13:3, 13:12, 13:19, 13:20, 13:21, 13:23, 14:7, 14:10, 14:12, 14:16, 14:21, 15:11, 15:16, 16:6, 16:7, 16:11, 17:6, 18:3, 18:4, 18:9, 19:20, 20:25, 21:19, 24:25, 25:3, 25:12, 26:25, 27:20, 29:6, 29:11, 29:16, 29:24, 31:16, 32:1, 32:18, 35:3, 35:6, 35:10, 36:4, 37:20, 38:17,

39:8, 40:8, 40:9, 41:7, 41:12, 43:25, 46:1, 46:4, 51:11, 52:17, 53:21, 54:16, 54:21, 55:14, 55:25, 58:11, 58:17, 58:20, 59:9, 60:5, 63:2, 63:7, 63:11, 63:12, 63:14, 64:25, 65:6, 66:2, 66:3

**Chassen's** [7] - 11:16, 26:11, 39:9, 40:3, 40:22, 54:10, 58:24

**chastise** [1] - 20:10

**chicanery** [1] - 60:22

**choice** [1] - 52:2

**choices** [1] - 44:11

**choose** [1] - 54:1

**circumscribed** [1] - 40:19

**circumstances** [1] - 57:13

**claim** [5] - 16:5, 26:11, 27:4, 27:6, 52:18

**claiming** [1] - 12:7

**claims** [5] - 5:14, 6:10, 12:16, 12:17, 51:12

**clarification** [1] - 42:12

**clarifications** [1] - 39:17

**clear** [13] - 18:1, 19:15, 24:13, 30:14, 32:1, 39:11, 39:14, 47:5, 56:18, 57:14, 58:5, 67:19

**clearer** [1] - 40:18

**clearly** [6] - 25:14, 29:10, 40:10, 47:2, 51:24, 62:6

**clerk** [1] - 43:13

**clever** [1] - 58:14

**client** [9] - 5:9, 5:24, 6:2, 6:10, 12:10, 15:23, 43:2, 64:9, 66:13

**client's** [1] - 11:11

**clients** [1] - 7:3

**close** [6] - 15:6, 18:1, 18:19, 19:16, 20:18, 26:22

**closer** [1] - 5:3

**co** [1] - 13:24

**co-manage** [1] - 13:24

**cogent** [1] - 50:15

**COHEN** [1] - 2:6

**cohesive** [1] - 50:15

**combatants** [1] - 6:20

**comfort** [1] - 61:23

**coming** [2] - 20:18,

42:2

**commit** [1] - 56:3

**companies** [3] - 30:25, 33:25, 40:3

**COMPANY** [1] - 2:9

**company** [18] - 9:12, 9:25, 11:4, 12:20, 13:22, 18:10, 19:19, 24:24, 30:15, 31:1, 34:1, 37:2, 40:10, 40:13, 40:14, 40:20, 66:25

**competing** [1] - 67:3

**complaining** [1] - 25:12

**complaint** [1] - 13:8

**completely** [4] - 32:22, 43:8, 45:8, 45:14

**complexity** [1] - 5:22

**component** [1] - 43:23

**compressed** [1] - 4:3

**conceived** [1] - 48:13

**conceptually** [2] - 33:20, 37:1

**concern** [2] - 45:20, 54:3

**concerns** [1] - 53:20

**concerted** [1] - 31:25

**concession** [1] - 26:23

**condition** [1] - 26:18

**conduct** [2] - 39:7, 50:7

**confident** [3] - 66:15, 66:20, 67:2

**confirm** [2] - 45:13, 54:7

**confirms** [2] - 64:10, 64:11

**conflict** [1] - 37:6

**conflicts** [1] - 5:13

**confusion** [1] - 54:3

**Connect** [3] - 14:11, 15:7, 26:20

**connection** [5] - 8:2, 31:17, 48:13, 52:3, 55:7

**consent** [40] - 9:5, 11:11, 11:12, 12:8, 24:19, 27:16, 29:6, 32:2, 32:20, 32:24, 33:2, 33:11, 40:4, 40:5, 40:9, 40:22, 42:21, 43:7, 45:8, 45:15, 45:24, 45:25, 46:5, 48:12, 49:13, 53:6, 53:24, 54:8, 56:8, 58:1, 58:19, 59:19, 60:8, 63:12,

64:7, 64:9, 64:18, 65:7, 66:4

**consented** [2] - 32:11, 63:17, 64:1

**consenting** [2] - 32:12, 54:19

**consents** [3] - 53:18, 54:13, 63:24

**consequence** [1] - 60:14

**consider** [6] - 44:16, 50:6, 60:13, 64:8, 67:8, 68:4

**consistently** [1] - 30:3

**constitute** [1] - 40:12

**consummated** [4] - 26:13, 26:15, 26:16, 53:17

**context** [1] - 5:11

**continue** [7] - 19:25, 37:7, 41:6, 41:11, 42:15, 49:16, 53:4

**continues** [1] - 65:3

**CONTINUING** [1] - 2:24

**continuing** [1] - 68:1

**contract** [39] - 9:14, 11:14, 11:22, 13:13, 13:18, 14:7, 14:15, 14:24, 15:2, 15:5, 15:8, 15:22, 16:25, 17:21, 17:22, 19:16, 19:23, 20:14, 20:15, 21:6, 21:7, 21:8, 21:10, 21:11, 21:15, 26:19, 27:7, 28:12, 29:25, 30:3, 33:1, 33:14, 34:4, 34:6, 34:10, 34:14, 59:16, 65:13

**contract's** [1] - 21:8

**contractual** [1] - 50:4

**contrary** [3] - 30:10, 35:11, 53:7

**contravene** [1] - 33:21

**contravenes** [1] - 4:1

**contravention** [1] - 35:11

**contributed** [2] - 21:17

**contribution** [2] - 30:16, 31:2

**contributions** [4] - 21:22, 22:5, 34:22, 34:23

**control** [6] - 19:1, 24:17, 27:15, 31:5, 45:8, 50:22

**controlled** [2] - 41:8, 41:13, 46:13

**controlling** [1] - 51:10

**conversations** [1] - 55:24

**convey** [1] - 9:15

**conveyed** [2] - 11:18, 27:19

**cooperation** [1] - 49:8

**core** [1] - 62:9

**correct** [13] - 11:9, 12:23, 13:4, 14:5, 21:24, 24:8, 54:11, 54:14, 56:21, 59:20, 63:18

**counsel** [19] - 10:4, 10:7, 10:11, 10:13, 23:17, 25:19, 30:12, 32:8, 36:12, 36:13, 36:15, 37:2, 38:20, 41:5, 47:24, 48:2, 58:13, 63:22, 64:24

**counsel's** [1] - 50:10

**counselor** [2] - 4:23, 48:20

**count** [1] - 7:1

**Counterclaim** [1] - 1:11

**counterclaim** [1] - 1:14

**counterclaim-Defendants** [1] - 1:14

**Counterclaim-Plaintiff** [1] - 1:11

**counterclaims** [2] - 11:16, 62:3

**COUNTY** [1] - 1:1

**couple** [2] - 9:7, 54:15

**course** [3] - 35:23, 38:11, 47:19

**Court** [16] - 3:22, 5:2, 8:23, 9:9, 12:18, 13:5, 24:6, 25:22, 26:24, 28:25, 32:24, 36:21, 56:6, 57:25, 61:12, 61:13

**court** [5] - 5:4, 13:15, 48:14, 62:16, 63:24

**COURT** [133] - 1:1, 4:2, 4:19, 4:23, 5:3, 5:8, 5:20, 6:1, 6:17, 7:6, 7:23, 9:16, 10:3, 10:8, 10:10, 11:6, 11:10, 11:20, 12:21, 12:24, 13:16, 14:1, 14:3, 15:12, 15:15, 15:18, 15:23, 16:1, 16:9, 16:12, 16:20, 17:2, 17:15, 17:21, 19:21, 20:18, 21:10, 21:12, 21:20, 23:17,

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 74 of 82

4

24:8, 24:15, 24:21,
25:1, 25:5, 25:9,
25:23, 26:14, 26:16,
27:10, 28:17, 28:24,
29:1, 29:13, 30:7,
30:20, 31:1, 31:6,
31:13, 32:10, 32:17,
32:23, 33:10, 33:17,
34:16, 35:16, 35:22,
36:2, 36:7, 36:11,
36:17, 36:25, 37:9,
37:23, 38:2, 38:12,
38:25, 42:16, 42:19,
42:23, 44:19, 44:23,
45:3, 45:5, 45:10,
45:16, 46:2, 46:19,
46:21, 46:23, 47:1,
47:21, 48:14, 48:20,
50:3, 50:9, 51:4,
51:18, 51:21, 53:11,
53:21, 54:10, 54:12,
54:16, 54:25, 55:13,
56:7, 56:10, 56:18,
56:22, 58:3, 58:10,
58:13, 59:4, 59:15,
59:25, 60:11, 61:8,
61:15, 62:11, 63:4,
63:16, 63:23, 64:4,
64:13, 65:4, 65:9,
65:11, 66:6, 67:5,
67:22, 67:25, 68:9
**Court's** [1] - 8:15
**courtroom** [1] - 4:24
**cover** [1] - 40:10
**covers** [2] - 12:1,
40:16
**CPLR** [2] - 8:22, 28:6
**crashed** [1] - 18:21
**creation** [2] - 35:2,
35:3
**credit** [8] - 14:23,
17:11, 17:13, 17:17,
21:25, 23:15, 23:16,
45:19
**cross** [3] - 47:11,
50:12, 50:13
**cross-examination** [1]
- 50:13
**cross-examine** [1] -
47:11
**cross-examined** [1] -
50:12
**crystallized** [1] - 48:9
**curious** [1] - 38:24
**cut** [2] - 5:7, 57:21

---

## D

**damage** [2] - 6:19,
67:1

**date** [3] - 42:5, 45:23,
48:4
**day-to-day** [1] - 24:24
**dayenu** [1] - 35:8
**days** [2] - 9:8, 47:25
**de** [2] - 26:7, 29:6
**deal** [3] - 4:5, 18:14,
55:8
**dealing** [1] - 6:23
**deals** [6] - 53:16,
53:18, 55:20, 56:5,
57:19, 58:2
**debt** [1] - 19:5
**debts** [1] - 31:10
**decide** [3] - 36:8,
44:13, 45:6
**decided** [2] - 29:13,
47:7, 47:18
**deciding** [2] - 39:21,
59:23
**decision** [13] - 25:1,
25:2, 25:3, 25:7,
40:12, 40:13, 40:14,
40:21, 52:8, 52:9,
52:11, 52:20, 62:17
**decision-making** [1] -
52:11
**decisions** [11] - 12:9,
26:5, 31:3, 46:15,
48:11, 54:9, 54:17,
56:23, 57:1, 65:16,
65:18
**deck** [1] - 18:21
**declare** [1] - 13:8
**deducted** [1] - 14:22
**deemed** [1] - 66:3
**defaults** [1] - 12:12
**Defendant** [2] - 1:24,
2:13
**defendant** [1] - 63:12
**Defendants** [2] - 1:8,
1:14
**defendants** [1] - 1:21
**defer** [1] - 67:8
**deficiency** [3] - 12:25,
63:14, 64:3
**defined** [2] - 12:9,
30:19
**definition** [4] - 25:7,
30:19, 40:11, 65:17
**delayed** [1] - 32:4
**delivered** [1] - 19:10
**demand** [1] - 18:20
**demonstrated** [1] -
8:25
**denial** [1] - 43:7
**denied** [2] - 41:15,
68:4
**deny** [6] - 10:4, 50:1,
50:2, 59:5, 62:4,

67:7
**denying** [2] - 61:2,
67:19
**Department** [2] -
48:19, 50:1
**deprived** [4] - 8:18,
47:15, 52:10
**derivatively** [4] - 1:2,
1:3, 1:9, 1:10
**described** [2] - 34:17,
60:21
**desire** [1] - 19:18
**despicable** [1] - 19:12
**despite** [4] - 8:15,
16:1, 33:1, 55:21
**destroying** [1] - 43:19
**details** [1] - 53:19
**determine** [3] - 30:15,
54:24, 56:8
**devote** [1] - 42:9
**dialog** [1] - 31:25
**diametrically** [1] -
61:22
**diamond** [1] - 28:7
**difference** [1] - 17:18
**different** [4] - 21:16,
27:21, 27:22, 30:7
**direct** [2] - 35:11,
37:20
**directed** [1] - 25:17
**direction** [1] - 66:8
**directions** [1] - 24:5
**directly** [5] - 7:3, 11:3,
36:17, 41:4, 60:20
**disadvantage** [1] -
43:4
**discovery** [6] - 47:4,
47:15, 47:16, 47:21,
48:6, 49:24
**discuss** [2] - 31:17,
53:19
**discussed** [1] - 22:21
**discussion** [2] - 7:1,
56:14, 56:15
**discussions** [2] - 55:8
**dismiss** [1] - 63:5
**dispose** [1] - 53:4
**disposing** [1] - 27:19
**dispositions** [2] -
29:3, 29:5
**disputable** [1] - 35:6
**dispute** [3] - 5:7,
11:25, 12:7
**disputes** [5] - 11:23,
20:16, 39:6, 39:7,
66:17
**disqualification** [1] -
10:15
**distribution** [3] - 34:1,
34:9, 34:11

**distributions** [11] -
8:11, 19:9, 33:18,
33:20, 33:23, 34:6,
34:18, 34:19, 34:20,
34:24, 40:24
**division** [2] - 11:18,
19:25
**docket** [1] - 60:4
**documenting** [1] -
64:18
**documents** [1] - 17:10
**dog** [1] - 26:10
**dollars** [2] - 9:20, 27:1
**dominant** [1] - 37:6
**done** [14] - 5:14, 19:6,
29:22, 30:3, 33:23,
37:4, 42:23, 48:23,
50:19, 55:19, 55:23,
57:19, 64:10, 64:16
**door** [2] - 58:15, 60:9
**doubt** [2] - 41:9, 58:1
**down** [5] - 14:20, 17:3,
18:21, 58:13, 63:3
**dragged** [1] - 32:4
**drawn** [1] - 41:4
**dueling** [2] - 61:23,
62:6
**dumb** [1] - 43:5
**during** [2] - 39:17,
61:10
**duties** [2] - 32:19,
54:18
**dysfunctional** [1] -
52:1

---

## E

**e-mail** [15] - 9:6, 16:9,
16:11, 16:13, 16:14,
19:17, 20:6, 20:7,
20:10, 26:25, 38:6,
63:19, 63:20, 64:11,
64:23
**e-mails** [11] - 15:9,
16:2, 17:5, 18:6,
18:11, 18:13, 18:16,
20:6, 55:9, 63:10,
64:13
**East** [4] - 22:20,
22:23, 22:24
**easy** [1] - 25:19
**eat** [1] - 65:21
**EDERER** [1] - 3:7
**effect** [1] - 58:24
**effective** [1] - 62:16
**effectively** [5] - 33:8,
45:2, 45:7, 46:5,
52:7
**effort** [2] - 31:25,
47:17

**efforts** [1] - 31:22
**either** [8] - 32:20,
39:10, 39:12, 45:25,
49:25, 54:10, 58:19,
66:14
**elements** [2] - 8:24,
39:4
**emergency** [1] - 53:14
**emotional** [1] - 18:15
**employee** [1] - 53:21
**employees** [2] - 50:18,
50:25
**employment** [1] - 36:3
**encumber** [1] - 40:21
**encumbering** [1] -
8:11, 27:14, 27:18
**end** [4] - 6:7, 43:18,
47:25, 55:19
**endlessly** [1] - 43:16
**enforce** [1] - 46:9
**enforcing** [1] - 23:24
**enormous** [1] - 65:15
**enter** [4] - 6:3, 39:23,
53:3, 67:18
**entered** [6] - 11:15,
15:8, 15:22, 16:25,
53:25, 59:13
**entering** [1] - 15:5
**entertaining** [1] - 24:6
**entire** [1] - 51:13
**entities** [25] - 6:5,
21:18, 22:3, 22:6,
22:8, 22:9, 22:11,
22:16, 22:23, 23:2,
23:3, 23:5, 23:7,
23:8, 27:15, 30:23,
31:13, 36:24, 37:13,
37:15, 40:20, 41:8,
41:13, 51:15, 53:6
**entitled** [14] - 13:23,
25:14, 34:19, 35:7,
35:10, 36:5, 51:7,
51:8, 52:11, 56:20,
56:25, 57:4, 57:5
**Entity** [1] - 40:15
**entity** [9] - 14:6, 14:25,
15:13, 30:17, 31:2,
35:20, 37:19, 51:24,
51:25
**entry** [1] - 24:6
**envisioned** [1] - 50:20
**equities** [1] - 8:21
**Eric** [1] - 41:17
**especially** [1] - 61:20
**ESQ** [7] - 2:11, 2:15,
2:18, 2:19, 2:23, 3:5,
3:10
**essentially** [4] - 40:19,
44:4, 52:23, 56:24
**establish** [1] - 34:8

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 75 of 82

5

established [2] - 8:24, 66:24
estate [2] - 37:17, 43:11
ESTATE [5] - 1:4, 1:10, 1:16, 1:20, 1:23
Estate [5] - 3:3, 4:18, 43:22, 44:2, 46:10
et [4] - 19:11, 20:12
event [1] - 10:1
events [7] - 19:17, 21:1, 39:18, 59:14, 59:21, 59:23, 60:10
evidence [13] - 9:19, 9:21, 10:3, 10:6, 10:25, 44:14, 50:6, 52:24, 59:13, 63:11, 65:25, 66:1, 66:4
evident [1] - 56:5
evidentiary [6] - 42:7, 52:22, 61:3, 61:16, 61:18, 67:10
exact [1] - 17:19
exactly [8] - 24:23, 29:9, 33:24, 46:21, 47:3, 55:16, 57:23, 59:2
examination [1] - 50:13
examine [1] - 47:11
examined [1] - 50:12
example [2] - 42:14, 63:11
except [3] - 20:2, 24:14, 31:16
exception [1] - 30:4
exchange [2] - 18:8, 40:7
exclusive [1] - 9:3
excuse [2] - 30:12, 46:20
exercise [1] - 56:8
exercised [2] - 32:25, 58:19
exercising [1] - 54:17
exhibit [3] - 14:15, 15:2, 38:5
Exhibit [1] - 21:15
exhibits [2] - 32:3, 55:6
existed [1] - 21:9
expectation [1] - 25:20
expense [1] - 23:16
expenses [2] - 22:15, 22:16
expired [1] - 23:18
explain [2] - 12:17, 12:18

explained [1] - 47:2
explicit [1] - 65:2
express [1] - 29:10
expressly [1] - 26:18
extension [1] - 48:4
extent [5] - 25:12, 49:6, 53:3, 61:5, 67:20
extraordinary [1] - 39:18
extremely [2] - 12:9, 64:17
eyes [1] - 25:7

**F**

face [1] - 50:21
Facebook [1] - 9:13
facing [1] - 52:17
fact [9] - 6:5, 10:21, 35:3, 40:11, 54:8, 55:3, 55:21, 66:9, 66:15
facto [1] - 29:7
facts [1] - 55:20
fail [1] - 27:5
failed [2] - 17:7, 17:9
fairly [2] - 29:10, 66:8
far [3] - 26:13, 37:18, 53:10
fascinating [1] - 26:23
faster [1] - 44:22
fault [1] - 51:19
favor [1] - 50:11
feared [1] - 57:24
February [2] - 2:3, 48:1
fees [3] - 25:19, 25:20, 36:19
FEIN [1] - 2:21
felt [1] - 20:9
Ferrari [3] - 28:18, 28:19, 28:21
fiduciary [2] - 32:19, 54:17
fight [5] - 5:11, 6:6, 30:1, 43:17, 51:10
figure [3] - 25:15, 29:4, 41:19
file [1] - 54:3
filed [5] - 7:13, 38:5, 44:12, 55:6
finalize [1] - 59:3
finalized [1] - 11:24
finally [1] - 41:11
finance [1] - 16:19
financial [2] - 28:11, 60:22
fine [3] - 10:18, 28:24, 52:6

FIRM [1] - 2:13
First [2] - 48:19, 50:1
first [17] - 7:12, 8:25, 22:2, 26:7, 27:11, 27:14, 27:16, 33:14, 34:7, 34:9, 34:21, 47:25, 48:1, 50:24, 51:1, 52:23, 53:25
FIRST [1] - 1:7
fits [1] - 5:9
five [1] - 23:20
Floor [3] - 2:17, 2:22, 3:4
flow [1] - 60:10
focus [5] - 7:20, 24:1, 24:9, 51:3
focused [1] - 29:2
focussing [1] - 35:18
folks [4] - 5:11, 7:8, 64:15, 67:12
following [1] - 35:25
foot [1] - 32:4
foreclosed [2] - 33:15, 53:17
foreclosure [2] - 33:5, 63:13
forfeiting [1] - 29:24
forget [3] - 32:24, 64:13
form [2] - 38:19, 64:8
formed [1] - 46:11
forth [5] - 16:2, 18:2, 18:6, 18:13, 66:13
forward [4] - 48:17, 63:25, 64:6, 67:21
fought [2] - 43:16, 67:15
four [1] - 30:25
frame [3] - 23:23, 24:4, 44:17
frankly [7] - 12:19, 50:15, 52:15, 57:12, 57:25, 59:9, 61:20
fraudulent [1] - 13:7
frivolous [1] - 63:8
front [6] - 7:4, 20:10, 43:6, 52:24, 60:1, 64:5
fuck [1] - 20:11
full [7] - 8:16, 9:3, 16:22, 38:17, 41:22, 44:2
fully [2] - 11:22, 61:12
funding [2] - 26:21, 50:23
funds [9] - 9:23, 16:8, 36:12, 36:13, 36:14, 37:2, 40:25, 41:3
fur [1] - 43:16

**G**

gambit [1] - 48:8
game [2] - 32:6, 43:18
general [2] - 22:14, 61:16
generally [1] - 34:17
gentlemanly [1] - 47:23
gentlemen [2] - 5:16, 29:22
genuine [2] - 16:10, 16:13
given [7] - 8:15, 33:5, 39:23, 44:11, 51:14, 55:14, 60:9
govern [2] - 39:15, 39:16
grant [6] - 32:15, 39:2, 48:18, 49:25, 50:1, 62:20
granted [3] - 45:25, 48:20, 58:18
granting [2] - 60:13, 67:19
gross [1] - 10:1
ground [1] - 50:22
grounds [2] - 62:18
group [1] - 61:8
grudge [1] - 43:4
guarantee [1] - 14:13
guaranties [1] - 49:20
guarantor [1] - 63:13
guaranty [1] - 15:16
guess [5] - 6:25, 18:15, 36:25, 52:21, 66:6
guidance [1] - 42:25
guys [3] - 41:18, 61:21, 65:12

**H**

half [4] - 14:13, 14:22, 15:17, 27:1
Hamptons [1] - 37:17
hand [1] - 61:2
handed [1] - 49:21
hang [1] - 27:13
happier [1] - 19:13
happy [2] - 16:17, 53:19
hard [3] - 45:20, 46:17, 65:11
harm [4] - 28:2, 28:3, 36:25, 44:10
harms [1] - 43:8
hate [1] - 43:14
HAYNES [1] - 2:16
Haynes [1] - 48:3

head [2] - 37:16, 38:24
Head [7] - 9:9, 13:24, 14:1, 14:2, 35:13, 37:15, 37:16
hear [9] - 5:4, 8:23, 23:23, 41:18, 41:24, 46:17, 50:14, 50:16, 53:11
heard [11] - 5:24, 6:21, 8:13, 11:21, 26:13, 29:21, 47:22, 50:13, 50:17, 50:24, 51:1
hearing [22] - 6:16, 7:16, 7:18, 28:2, 39:24, 41:16, 42:2, 42:5, 42:6, 42:7, 44:7, 44:8, 47:4, 52:21, 52:22, 53:15, 61:3, 61:16, 61:19, 61:23, 67:10, 67:14
hearings [2] - 4:5, 61:17
help [1] - 32:5
hiding [1] - 56:16
highjacked [1] - 35:13
himself [8] - 8:12, 33:18, 33:21, 35:13, 37:22, 40:25, 56:14
hold [2] - 28:1, 29:3
Holdings [5] - 3:3, 4:18, 43:22, 44:2, 46:10
HOLDINGS [5] - 1:4, 1:10, 1:16, 1:20, 1:23
holidays [1] - 47:25
honest [2] - 50:11, 59:4
Honor [77] - 4:11, 4:13, 4:21, 4:25, 7:22, 7:24, 7:25, 8:8, 8:19, 8:24, 8:25, 9:12, 9:20, 10:22, 11:9, 12:14, 13:17, 13:18, 14:5, 14:15, 14:18, 15:2, 15:21, 15:25, 16:17, 16:24, 17:4, 17:20, 17:25, 18:2, 19:15, 20:5, 20:6, 20:22, 21:5, 21:9, 22:1, 22:2, 22:12, 22:21, 23:14, 23:21, 26:6, 31:10, 35:1, 42:10, 44:18, 53:12, 53:20, 53:25, 54:7, 56:4, 57:15, 57:24, 58:9, 59:2, 59:12, 61:7, 61:11, 62:1, 62:4, 62:7, 62:25, 63:9, 64:20,

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 - 02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 76 of 82

6

64:21, 64:22, 65:23, 65:24, 66:1, 66:19, 66:20, 66:21, 67:17
**Honor's** [2] - 62:10, 66:24
**HONORABLE** [1] - 2:6
**Hope** [1] - 28:7
**hope** [2] - 5:16, 58:5
**horse** [1] - 58:21
**house** [1] - 19:10
**HPR** [4] - 14:6, 14:25, 22:4, 37:12
**human** [1] - 6:6
**hundred** [1] - 28:20
**hurting** [1] - 51:24

**I**

**idea** [3] - 31:8, 31:9, 43:10
**ideally** [2] - 57:18, 57:21
**identify** [1] - 38:23
**ignore** [1] - 6:4
**ignores** [2] - 21:7, 66:3
**ii** [1] - 30:14
**image** [1] - 55:16
**immediate** [1] - 53:8
**impact** [1] - 39:8
**impair** [1] - 24:10
**impede** [1] - 24:10
**implications** [1] - 18:24
**important** [4] - 12:16, 13:5, 13:9, 16:24
**importantly** [1] - 22:8
**inabilities** [1] - 19:5
**Inc** [1] - 4:16
**INC** [3] - 1:17, 2:17, 2:21
**incapable** [1] - 47:13
**inclination** [2] - 29:23, 30:2
**inclined** [1] - 52:25
**include** [2] - 17:7, 17:9
**includes** [1] - 40:11
**including** [2] - 9:13, 54:7
**incorporated** [1] - 15:3
**incorrect** [1] - 65:4
**incredibly** [1] - 43:5
**independent** [1] - 32:5
**independently** [1] - 54:24
**INDEX** [1] - 1:5
**individually** [2] - 1:2, 1:9

**individuals** [2] - 15:19, 61:24
**information** [22] - 16:22, 16:23, 49:17, 51:2, 51:7, 51:14, 51:20, 52:10, 54:22, 55:1, 55:3, 55:14, 55:23, 56:3, 56:4, 56:7, 56:10, 56:12, 56:25, 57:5, 57:17
**infuriated** [1] - 19:20
**initial** [4] - 14:9, 26:21, 30:16, 30:17
**injunction** [11] - 7:16, 7:19, 8:3, 8:9, 8:20, 27:5, 37:1, 39:12, 39:24, 41:23, 61:17
**injunctive** [2] - 8:4, 8:5
**injury** [2] - 8:20, 8:22
**input** [1] - 49:2
**insignificant** [1] - 17:18
**insolvent** [1] - 18:21
**instead** [1] - 57:23
**instructing** [1] - 38:7
**intend** [1] - 9:9
**intended** [4] - 24:23, 42:12, 57:11
**intending** [3] - 46:22, 47:17, 62:4
**intentionally** [1] - 6:1
**interest** [2] - 46:14, 55:22
**Interesting** [1] - 18:19
**interest** [3] - 6:25, 39:9, 60:24
**interfere** [2] - 37:13, 42:16
**interfered** [1] - 35:14
**interference** [1] - 57:25
**interfering** [1] - 57:2
**interrupt** [1] - 44:23
**intertwined** [1] - 13:14
**intervene** [1] - 5:19
**intervened** [1] - 5:10
**intervenor** [1] - 7:2
**intervention** [1] - 5:21
**intra** [1] - 66:17
**intra-JJ** [1] - 66:17
**Investment** [1] - 40:15
**investment** [11] - 30:16, 30:23, 31:2, 31:13, 35:20, 40:3, 40:20, 46:14, 51:13, 51:17, 53:5
**investor** [7] - 49:7, 52:14, 56:1, 56:24, 57:5, 59:18

**investors** [12] - 5:6, 6:21, 6:22, 12:5, 22:22, 31:14, 32:19, 49:18, 51:16, 53:18, 55:22, 56:15
**involve** [1] - 60:20
**involved** [5] - 47:6, 49:3, 51:23, 56:9, 57:2
**involvement** [1] - 56:20
**involves** [1] - 6:6
**irrational** [1] - 43:8
**irreparable** [4] - 8:20, 8:22, 28:2, 28:3
**Israel** [2] - 11:1, 26:1
**issue** [23] - 6:5, 9:4, 17:1, 21:19, 22:13, 22:15, 22:18, 23:2, 23:11, 27:17, 28:23, 30:11, 37:5, 37:9, 37:10, 44:17, 47:6, 47:16, 48:8, 51:3, 55:3, 62:7, 64:18
**issued** [4] - 13:10, 22:9, 22:17, 23:6
**issues** [11] - 13:3, 21:3, 23:23, 24:4, 26:4, 29:9, 29:14, 39:10, 62:2, 62:8
**item** [1] - 7:14
**items** [1] - 7:18
**itself** [2] - 21:21, 33:11

**J**

**January** [4] - 47:25, 63:15, 63:20, 64:23
**Jared** [3] - 2:13, 4:14, 64:25
**JARED** [2] - 1:7, 1:9
**Jeffrey** [3] - 2:10, 4:12, 5:1
**JEFFREY** [4] - 1:2, 1:13, 1:19, 3:10
**jettison** [1] - 58:17
**JJ** [101] - 1:3, 1:4, 1:9, 1:10, 1:16, 1:19, 8:10, 8:11, 8:12, 8:14, 9:1, 9:23, 9:24, 10:4, 10:17, 10:18, 11:2, 12:6, 12:11, 13:2, 14:25, 18:5, 18:8, 18:25, 19:25, 21:3, 22:4, 22:7, 22:9, 22:10, 22:12, 22:16, 22:18, 23:1, 23:4, 23:12, 23:16, 24:4, 24:11, 24:12, 25:20, 26:2, 27:12,

27:15, 29:12, 30:13, 30:24, 31:4, 32:20, 35:19, 36:5, 36:11, 36:13, 36:14, 36:23, 36:24, 37:6, 37:8, 39:9, 39:16, 40:1, 40:2, 40:25, 41:1, 41:3, 41:4, 41:8, 41:12, 41:14, 43:25, 44:1, 44:2, 45:24, 46:12, 51:6, 52:10, 54:12, 54:18, 56:24, 57:9, 58:17, 58:19, 59:21, 60:1, 60:10, 60:16, 60:20, 60:22, 61:5, 62:4, 65:1, 66:2, 66:17, 66:21, 66:25, 67:9
**job** [2] - 43:11, 57:3
**JOEL** [1] - 2:6
**jointly** [1] - 14:23
**Jonathan** [2] - 3:8, 5:6
**Judge** [6] - 24:12, 29:8, 33:13, 38:11, 48:10, 48:16
**judge** [1] - 6:11
**judgment** [2] - 63:14, 64:3
**July** [4] - 15:8, 18:11, 20:5, 20:7
**jump** [2] - 25:18, 48:17
**Justice** [1] - 2:6
**justified** [1] - 50:5

**K**

**keep** [4] - 7:10, 53:13, 55:10, 55:23
**keeping** [2] - 6:19, 37:21
**kept** [1] - 55:4
**kicked** [1] - 29:16
**Kilkenny** [1] - 43:13
**kind** [13] - 11:21, 20:3, 33:25, 35:24, 43:18, 49:11, 50:19, 51:7, 56:19, 57:5, 57:7, 57:10, 63:5
**knowing** [1] - 49:22
**known** [1] - 13:24
**knows** [2] - 8:19, 51:11
**kumbaya** [1] - 57:19

**L**

**labeled** [2] - 13:6, 13:7
**lack** [1] - 50:23
**landscape** [1] - 19:22

**language** [2] - 42:25, 59:17
**larger** [1] - 25:6
**largest** [2] - 5:6, 12:4
**Las** [1] - 49:17
**last** [6] - 35:9, 38:5, 38:12, 47:5, 51:23, 57:14
**law** [9] - 9:17, 26:7, 34:1, 34:3, 36:23, 43:12, 61:14
**LAW** [1] - 2:13
**lawsuit** [1] - 32:12
**lawsuits** [1] - 62:19
**lawyers** [3] - 61:21, 64:5, 64:16
**learned** [1] - 36:23
**lease** [1] - 55:9
**least** [7] - 12:4, 19:23, 33:19, 46:3, 50:20, 58:25, 61:4, 64:18
**leave** [3] - 18:10, 19:19, 67:11
**left** [1] - 43:16
**legal** [1] - 9:22
**legally** [1] - 31:7
**legitimate** [1] - 32:16
**lender** [4] - 16:20, 16:21, 16:23, 63:21
**lenders** [7] - 53:19, 53:23, 54:4, 55:20, 56:13, 57:1, 58:1
**Leslie** [1] - 4:15
**LESLIE** [1] - 2:18
**less** [1] - 44:23
**letter** [5] - 5:1, 5:8, 6:15, 6:23, 7:6
**letters** [1] - 6:9
**level** [2] - 23:12, 65:4
**levels** [1] - 35:20
**liable** [2] - 63:13, 64:2
**lie** [1] - 27:2
**life** [1] - 19:13
**light** [1] - 66:13
**likelihood** [2] - 27:6, 27:23
**likely** [1] - 8:20
**limited** [1] - 63:2
**linchpin** [1] - 8:21
**line** [7] - 7:8, 7:9, 14:22, 17:12, 21:25, 23:15, 23:16
**lines** [2] - 17:11, 17:17
**liquidity** [5] - 15:19, 15:20, 15:23, 16:4, 16:5
**list** [2] - 36:8, 38:13
**listed** [1] - 14:9
**listen** [1] - 44:11

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 77 of 82

7

**litigated** [1] - 29:22
**litigation** [2] - 6:3, 48:8
**litigator** [1] - 48:24
**live** [3] - 33:14, 34:14, 37:18
**LLC** [20] - 1:3, 1:4, 1:9, 1:10, 1:13, 1:16, 1:19, 1:20, 1:23, 14:6, 14:25, 22:4, 22:23, 22:24, 37:12
**LLP** [3] - 2:16, 2:21, 3:7
**loan** [25] - 9:11, 12:18, 12:21, 14:11, 14:14, 14:21, 15:6, 15:13, 15:21, 16:4, 16:8, 16:23, 16:25, 17:8, 17:12, 17:20, 17:22, 17:24, 18:1, 20:24, 23:5, 26:19, 26:21, 64:3
**loans** [2] - 23:7, 31:11
**lobbing** [1] - 5:14
**locked** [1] - 65:19
**look** [15] - 11:20, 12:7, 20:1, 27:24, 29:18, 34:7, 35:16, 37:1, 38:25, 51:21, 55:6, 63:9, 65:11, 66:9, 67:6
**looked** [1] - 58:18
**looking** [1] - 27:11
**looks** [6] - 18:2, 20:6, 22:2, 22:12, 49:11, 62:25
**loop** [2] - 55:4, 55:10
**loot** [1] - 12:20
**lose** [2] - 39:22, 43:18
**lost** [2] - 12:10
**luck** [1] - 23:22

**M**

**mail** [16] - 9:6, 16:9, 16:11, 16:13, 16:14, 19:17, 20:6, 20:7, 20:10, 26:25, 38:6, 63:19, 63:20, 64:11, 64:23
**mails** [11] - 15:9, 16:2, 17:5, 18:6, 18:11, 18:13, 18:16, 20:6, 55:9, 63:10, 64:13
**main** [2] - 7:14, 7:17
**maintain** [2] - 34:14, 45:24
**maintaining** [1] - 31:21
**major** [13] - 12:9,

24:21, 25:1, 25:2, 25:3, 25:7, 26:5, 40:13, 40:14, 40:21, 54:8, 65:16, 65:17
**manage** [1] - 13:24
**managerial** [2] - 24:17, 56:23
**managing** [17] - 1:3, 1:3, 1:9, 1:10, 18:23, 30:24, 31:4, 44:2, 44:5, 46:13, 50:4, 56:22, 57:3, 57:9, 59:17, 65:1, 66:22
**market** [1] - 31:22
**marketed** [1] - 26:8
**marquis** [1] - 36:22
**material** [3] - 17:15, 56:10, 56:12
**matter** [2] - 26:7, 36:20
**matters** [1] - 26:4
**mean** [17] - 5:10, 16:1, 16:14, 16:16, 19:21, 19:23, 20:19, 26:16, 37:9, 48:7, 48:14, 48:17, 55:19, 61:21, 62:24, 65:12, 66:11
**means** [1] - 31:6
**mechanism** [1] - 60:21
**meet** [2] - 22:14, 42:3
**Meister** [2] - 4:22
**MEISTER** [3] - 2:21, 2:23, 4:21
**member** [29] - 1:3, 1:3, 1:9, 1:10, 9:11, 12:18, 12:21, 13:2, 18:23, 20:23, 30:24, 31:4, 44:2, 44:5, 46:12, 46:13, 46:14, 50:4, 51:6, 51:7, 56:22, 56:24, 57:3, 57:6, 57:9, 59:17, 59:19, 65:1, 66:22
**members** [4] - 23:3, 34:21, 58:20, 60:16
**members'** [1] - 54:12
**membership** [2] - 29:17, 61:6
**memorandum** [1] - 61:14
**memorialize** [1] - 64:9
**merits** [6] - 8:23, 12:15, 19:21, 27:6, 27:24
**Michael** [2] - 19:2, 20:8
**Microsoft** [2] - 2:20, 3:2
**might** [5] - 6:1, 10:23,

13:2, 34:18, 41:17
**miles** [1] - 28:21
**MILLER** [8] - 3:7, 3:10, 4:25, 5:5, 5:18, 5:23, 6:14, 7:5
**Miller** [1] - 5:1
**Miller's** [1] - 43:2
**million** [5] - 9:4, 9:10, 27:1, 47:14, 51:17
**mind** [6] - 29:20, 33:20, 41:17, 44:22, 52:4, 52:8
**minimis** [1] - 59:13
**minimum** [1] - 7:10
**minutes** [6] - 4:8, 7:11, 20:19, 23:17, 23:20, 44:20
**mirror** [2] - 55:16, 56:3
**misconduct** [1] - 66:23
**misquoted** [1] - 30:12
**misrepresenting** [1] - 55:20
**missed** [1] - 45:10
**mistake** [1] - 45:12
**misunderstood** [1] - 57:8
**MM** [1] - 18:22
**modifications** [1] - 39:16
**modify** [1] - 60:14
**moment** [3] - 41:20, 52:4, 57:19
**money** [18] - 9:23, 10:4, 23:5, 25:4, 25:15, 26:20, 27:3, 28:7, 28:12, 31:10, 32:6, 34:9, 35:12, 36:6, 37:21, 41:3, 51:17
**monies** [2] - 26:1, 35:10
**Montauk** [1] - 22:3
**month** [1] - 60:2
**morning** [8] - 4:2, 4:11, 4:13, 4:21, 4:25, 7:25, 23:21, 31:15
**most** [7] - 7:17, 11:6, 11:7, 25:5, 28:11, 29:1
**mostly** [1] - 27:25
**motion** [47] - 4:7, 7:12, 8:2, 8:12, 8:23, 10:12, 12:1, 36:9, 39:1, 39:24, 41:22, 42:24, 43:20, 43:21, 44:13, 45:7, 45:11, 45:13, 46:2, 46:3, 47:18, 49:14, 52:4,

52:15, 53:23, 54:2, 55:7, 57:14, 58:5, 59:25, 60:3, 60:5, 60:12, 61:1, 61:16, 62:5, 62:12, 62:22, 63:1, 63:5, 67:3, 67:5, 67:7, 67:8, 67:9, 67:23, 68:4
**motions** [3] - 4:5, 62:7, 67:13
**Motors** [2] - 13:20, 14:8
**mountain** [1] - 59:13
**movant** [1] - 44:12
**move** [12] - 4:8, 5:18, 6:17, 27:8, 33:17, 38:25, 42:24, 43:20, 58:14, 62:5, 64:6, 64:19
**moving** [1] - 33:6
**MR** [123] - 4:11, 4:13, 4:17, 4:20, 4:21, 4:25, 5:5, 5:18, 5:23, 6:14, 7:5, 7:22, 7:24, 9:19, 10:5, 10:9, 10:21, 11:9, 11:12, 12:14, 12:23, 13:4, 13:17, 14:2, 14:4, 15:14, 15:16, 15:20, 15:25, 16:3, 16:11, 16:13, 16:21, 17:4, 17:19, 17:24, 20:4, 20:22, 21:11, 21:14, 21:24, 23:21, 24:9, 24:20, 24:22, 25:2, 25:8, 25:10, 25:25, 26:15, 26:18, 28:15, 28:19, 28:25, 29:8, 30:5, 30:8, 30:21, 31:3, 31:9, 31:15, 32:14, 32:22, 33:4, 33:13, 34:13, 35:1, 35:21, 36:1, 36:4, 36:10, 36:16, 36:19, 37:5, 37:15, 38:1, 38:4, 38:15, 42:10, 42:11, 42:18, 42:20, 44:17, 44:21, 44:25, 45:4, 45:6, 45:12, 45:18, 46:7, 46:20, 46:22, 46:24, 47:3, 47:23, 48:16, 48:22, 50:8, 50:23, 51:9, 51:20, 53:1, 58:12, 59:20, 60:6, 61:7, 61:11, 62:1, 62:24, 63:9, 63:18, 64:1, 64:11, 64:20, 65:6, 65:10, 65:23, 66:19, 67:17, 67:24, 68:8,

68:10, 68:11
**MS** [15] - 4:15, 53:12, 53:22, 54:11, 54:14, 54:20, 55:2, 55:15, 56:9, 56:12, 56:21, 57:15, 58:8, 59:2, 59:11
**murky** [1] - 59:10
**mute** [1] - 7:9

**N**

**name** [1] - 4:25
**named** [1] - 63:12
**narrower** [1] - 57:7
**nature** [1] - 53:14
**necessarily** [1] - 56:20
**necessary** [3] - 5:19, 8:6, 64:8
**need** [15] - 5:22, 9:5, 20:11, 28:15, 31:11, 36:20, 38:9, 38:25, 41:19, 42:7, 54:8, 54:10, 54:12, 59:3, 68:8
**needed** [1] - 43:2
**needs** [1] - 6:11
**negligence** [1] - 10:2
**negotiations** [1] - 56:16
**never** [8] - 18:23, 21:8, 22:10, 22:17, 23:7, 26:12, 26:15, 55:23
**NEW** [2] - 1:1, 1:1
**new** [3] - 11:21, 38:2, 59:8
**New** [15] - 2:2, 2:11, 2:14, 2:18, 2:22, 3:4, 3:9, 13:25, 22:4, 34:3
**next** [18] - 20:1, 25:18, 26:4, 27:13, 27:18, 33:6, 36:7, 36:11, 37:10, 39:1, 42:24, 43:20, 48:5, 60:19, 61:9, 67:12, 67:16, 68:13
**nice** [1] - 48:7
**niceties** [1] - 35:25
**NJ** [4] - 1:17, 2:17, 2:21, 4:16
**NO** [1] - 1:5
**nobody** [2] - 6:18, 68:2
**noise** [1] - 7:10
**Nominal** [1] - 1:24
**Non** [1] - 3:8
**non** [4] - 7:2, 36:24
**non-appearing** [1] - 7:2

24-10381-jpm   Doc 14-2   Filed 03/18/24   Entered 03/18/24 19:17:58   Exhibit 2 - 02-02-2024 - Transcript of Proceedings in Simpson v Chassen   Pg 78 of 82

8

non-Arch [1] - 36:24
non-intervenor [1] - 7:2
Non-Parties [1] - 3:8
non-party [1] - 7:2
none [4] - 22:8, 29:13, 36:4, 62:15
nonfrivolous [1] - 29:20
noon [1] - 47:12
normally [2] - 4:4, 44:6
note [3] - 13:9, 59:21, 60:6
noted [1] - 8:1
nothing [5] - 5:25, 43:1, 55:19, 65:4, 65:7
November [6] - 45:22, 48:21, 52:24, 60:15, 68:2, 68:6
null [1] - 13:8
number [9] - 9:6, 10:5, 10:9, 13:19, 17:6, 22:6, 25:6, 53:16, 65:3
numbers [1] - 35:6
numerous [1] - 66:9
NY [1] - 14:25
NYSCEF [14] - 9:6, 9:8, 9:21, 10:5, 10:9, 13:19, 14:15, 15:9, 15:10, 17:5, 18:2, 18:16, 21:4, 65:3

O

Oak [32] - 2:17, 4:16, 4:22, 18:7, 18:9, 20:5, 44:5, 45:1, 45:4, 45:13, 45:19, 46:14, 47:8, 48:10, 48:25, 49:21, 50:4, 50:14, 51:10, 51:12, 52:12, 53:4, 53:21, 54:19, 56:4, 56:22, 57:17, 57:20, 60:20, 60:23, 67:20
oak [1] - 2:21
Oak's [7] - 18:4, 19:18, 57:2, 58:13, 61:5
object [1] - 9:16
objection [2] - 25:15, 49:22
obligated [1] - 9:15
obligation [2] - 22:5, 22:10
obligations [3] - 22:7, 22:17, 23:2

observed [2] - 26:22, 51:24
obtain [1] - 14:12
obvious [1] - 19:23
obviously [4] - 31:20, 55:22, 55:24, 62:5
occasions [1] - 66:10
occur [1] - 34:7
occurred [1] - 39:18
OF [3] - 1:1, 1:1
offer [1] - 26:9
Official [1] - 3:22
often [1] - 51:22
One [3] - 14:11, 15:7, 26:20
one [39] - 5:6, 5:21, 6:5, 7:14, 9:2, 11:21, 11:23, 12:6, 12:25, 19:23, 22:6, 25:20, 27:18, 28:12, 29:1, 30:3, 30:6, 31:19, 33:11, 36:11, 36:22, 37:13, 38:23, 43:3, 43:22, 44:6, 46:7, 46:24, 49:9, 51:3, 54:12, 58:21, 59:20, 60:3, 60:5, 61:8, 62:14, 62:18, 65:24
ones [2] - 25:6, 25:9
online [4] - 4:18, 37:23, 38:8, 41:7
open [1] - 17:1
operate [2] - 30:25, 31:12
Operating [36] - 9:24, 11:11, 11:13, 11:25, 21:12, 21:21, 22:3, 22:13, 22:25, 23:1, 23:13, 23:25, 24:3, 24:12, 25:17, 30:13, 33:22, 35:12, 35:17, 35:18, 36:5, 37:20, 39:15, 39:20, 40:1, 40:4, 40:7, 40:8, 41:1, 41:14, 45:9, 46:9, 46:11, 53:7, 66:2
operating [4] - 17:16, 35:17, 37:21, 46:12
operations [2] - 24:11, 24:24
opportunity [2] - 25:4, 47:10
opposed [2] - 5:21, 61:22
opposition [2] - 44:12, 61:12
order [44] - 7:12, 7:13, 8:2, 8:9, 24:15, 31:12, 39:23, 42:12,

42:13, 43:21, 44:5, 45:7, 45:14, 45:19, 45:22, 46:6, 48:19, 49:10, 50:21, 51:5, 52:12, 52:23, 53:3, 53:4, 53:25, 54:4, 54:7, 57:11, 58:4, 58:10, 58:16, 58:18, 58:25, 59:6, 60:14, 60:15, 60:18, 62:10, 62:16, 67:8, 67:18, 68:2, 68:5
orders [7] - 7:17, 8:15, 35:12, 39:17, 39:19, 51:22, 62:14
ordinary [2] - 35:23, 47:19
original [1] - 46:8
originally [1] - 17:23, 46:11
otherwise [3] - 16:2, 26:2, 60:9
ourselves [1] - 62:5
outrageous [1] - 50:6
outsourcing [2] - 50:18, 50:25
overhang [1] - 44:9
overt [1] - 58:15
overwhelming [1] - 50:6, 50:10
owe [1] - 9:4
owed [2] - 21:16, 34:9
owes [1] - 17:1
own [10] - 9:22, 13:21, 19:2, 32:19, 32:21, 51:19, 54:19, 55:6, 56:14, 60:24
owned [5] - 13:22, 14:5, 36:24, 37:18, 46:14

P

P.C [1] - 2:9
P.O [1] - 2:10
page [4] - 9:13, 30:21, 68:13
paid [8] - 10:11, 14:8, 25:13, 25:21, 26:1, 35:24, 36:17, 36:22
papers [18] - 16:10, 17:22, 17:24, 18:5, 23:18, 24:12, 29:10, 29:19, 35:11, 38:3, 38:5, 38:18, 47:7, 47:8, 50:25, 52:3, 59:5, 66:7
paragraph [2] - 9:8, 24:16, 24:19
Park [1] - 2:22

part [26] - 7:1, 10:19, 10:20, 11:13, 12:1, 12:11, 20:16, 24:18, 27:10, 27:11, 27:13, 27:14, 28:4, 37:16, 39:2, 46:3, 52:15, 52:17, 52:23, 53:25, 58:10, 58:16, 59:11, 61:1, 65:9
PART [1] - 1:1
participating [1] - 32:2
particular [2] - 38:23, 60:4
Parties [1] - 3:8
parties [12] - 5:13, 6:24, 7:4, 23:25, 29:2, 41:18, 43:3, 43:5, 48:1, 49:18, 51:25, 61:18
partner [1] - 18:21
party [4] - 7:2, 12:5, 32:5, 43:9
passed [1] - 33:4
past [1] - 27:8
pathway [2] - 13:1, 46:3
pay [10] - 10:4, 10:12, 10:18, 31:10, 34:2, 36:12, 36:13, 36:15, 37:2
paying [3] - 9:22, 10:19, 36:19
payment [3] - 11:3, 14:10, 26:21
payments [4] - 10:25, 14:14, 14:24, 41:4
PC [2] - 3:3, 4:20
Peldman [11] - 3:8, 5:5, 5:6, 31:16, 31:24, 32:4, 32:7, 33:8, 42:14, 63:14
pendency [1] - 44:9
pending [4] - 7:15, 39:23, 62:20, 67:9
penny [2] - 25:20, 36:22
people [5] - 35:24, 43:9, 43:17, 61:9, 61:22
per [1] - 18:20
percent [4] - 34:13, 46:12, 46:13, 46:14
perfect [2] - 25:16, 31:17, 56:3
performance [1] - 11:17
perhaps [1] - 6:20
peril [1] - 32:21
period [1] - 36:23

periodically [1] - 35:24
permission [1] - 62:13
permit [1] - 34:8
permits [1] - 67:20
permitted [1] - 48:12
personal [15] - 9:13, 9:22, 10:13, 14:22, 14:24, 17:12, 21:7, 21:25, 23:15, 36:12, 37:2, 41:5, 43:4, 49:20
personally [3] - 10:16, 15:15, 36:18
perspective [2] - 51:18, 57:16
persuaded [1] - 52:16
persuasive [1] - 66:7
pertain [1] - 63:1
phone [3] - 55:25, 56:13, 57:1
phonetic [1] - 36:22
PI [4] - 27:24, 28:2, 41:16, 59:13
Piccirillo [1] - 3:22
piece [8] - 12:2, 12:3, 12:4, 12:6, 25:11, 35:9, 37:17, 46:24
place [7] - 8:7, 29:25, 33:6, 50:21, 53:25, 68:2, 68:6
placed [1] - 18:10
Plaintiff [5] - 1:5, 1:11, 1:17, 2:10, 2:17, 2:21
plaintiff [4] - 4:10, 4:12, 40:18, 59:22
plan [4] - 6:14, 50:15, 50:18, 50:20
planning [1] - 37:4
plans [1] - 50:14
play [1] - 60:12
played [1] - 28:9
Plaza [2] - 2:17, 3:9
PLLC [1] - 2:13
point [23] - 5:9, 10:10, 10:12, 20:4, 24:3, 29:15, 30:8, 39:13, 39:21, 39:22, 42:19, 47:7, 52:1, 52:8, 52:14, 52:19, 53:2, 60:17, 61:10, 62:11, 64:22, 65:24, 67:6
pointing [1] - 60:11
Polsinelli [1] - 4:20
POLSINELLI [1] - 3:3
Pond [6] - 9:10, 13:24, 14:2, 35:13, 37:15, 37:17
pond [1] - 37:16

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 - 02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 79 of 82

9

**Porsche** [3] - 26:5, 28:13, 28:19
**Porsches** [1] - 28:20
**portion** [3] - 24:16, 40:11, 67:9
**position** [1] - 19:4, 61:11, 66:6
**positions** [2] - 18:25, 59:18
**possibility** [1] - 24:6
**possible** [1] - 60:12
**post** [1] - 11:2
**posted** [1] - 9:25
**posting** [1] - 9:23
**potential** [1] - 58:15
**potentially** [4] - 8:6, 10:23, 21:17, 58:14
**Pound** [1] - 14:1
**power** [1] - 33:3
**practical** [1] - 57:16
**practicing** [1] - 48:25
**practitioner** [1] - 48:2
**precedent** [1] - 26:18
**precisely** [1] - 30:8
**preclude** [2] - 33:8, 42:14
**predecessor** [1] - 38:20
**predicated** [1] - 60:16
**preferential** [1] - 34:19
**prejudice** [1] - 5:25
**preliminary** [9] - 7:16, 7:19, 8:2, 8:5, 27:5, 39:24, 41:22, 49:10, 61:17
**prepare** [1] - 41:18
**prepared** [3] - 35:5, 59:4, 59:7
**Present** [1] - 3:6
**present** [1] - 42:21
**presentation** [1] - 24:1
**presented** [3] - 47:11, 49:17, 65:25
**preserve** [1] - 45:23
**pretend** [1] - 47:13
**pretext** [1] - 12:20
**pretty** [4] - 19:15, 19:22, 24:13, 47:5
**prevail** [1] - 29:15
**preventing** [1] - 33:18
**previous** [2] - 17:8, 54:7
**previously** [2] - 17:13, 66:24
**primary** [1] - 49:19
**principal** [1] - 37:6
**principle** [1] - 39:5
**pro** [1] - 34:11

**probability** [1] - 12:15
**problem** [5] - 31:21, 33:12, 48:23, 51:9, 54:20
**proceeding** [1] - 32:18
**PROCEEDINGS** [1] - 2:4
**proceeds** [2] - 15:4, 32:20
**process** [5] - 34:17, 41:13, 43:19, 53:16, 59:7
**professionals** [2] - 43:12, 50:19
**projector** [1] - 51:13
**promising** [1] - 17:17
**proof** [3] - 15:18, 15:20, 53:24
**proper** [1] - 25:16
**properties** [4] - 31:23, 48:11, 49:12, 53:16
**property** [17] - 5:7, 6:25, 9:10, 13:24, 14:5, 15:1, 15:4, 22:21, 26:11, 32:1, 32:9, 33:9, 37:19, 63:10, 64:2
**proportion** [1] - 34:21
**proposal** [6] - 18:4, 19:18, 19:20, 20:5, 20:9, 64:23
**propose** [1] - 42:25
**proposed** [4] - 18:22, 49:1, 51:15, 63:21
**protect** [2] - 5:24, 6:2
**protecting** [1] - 61:5
**provide** [5] - 23:1, 41:6, 41:11, 42:25, 57:12
**provided** [5] - 15:21, 49:23, 55:17, 56:4, 57:17
**provides** [2] - 14:16, 46:25
**providing** [3] - 54:22, 55:1, 61:19
**provision** [8] - 17:7, 17:10, 17:13, 17:19, 28:6, 40:6
**provisions** [1] - 21:8
**proxy** [1] - 54:19
**public** [1] - 36:20
**puppet** [1] - 20:8
**purported** [4] - 11:1, 13:6, 13:11, 20:23
**purportedly** [1] - 27:19
**purports** [2] - 12:18, 20:25
**purpose** [2] - 20:15,

49:19
**purposes** [1] - 14:24
**push** [2] - 42:2, 45:20
**put** [12] - 8:7, 16:9, 18:22, 20:9, 23:22, 24:16, 28:1, 29:3, 30:9, 38:4, 46:7, 47:8, 51:16, 52:12, 53:2, 61:12, 61:13, 61:14, 63:23, 66:13, 68:5
**puts** [1] - 65:13
**putting** [5] - 10:14, 19:5, 19:21, 23:9, 60:12

**Q**

**questioned** [1] - 28:3
**quick** [1] - 61:8
**quickly** [4] - 13:14, 13:16, 64:10
**quite** [2] - 50:11, 55:22
**quo** [3] - 31:22, 45:16, 45:23
**quote** [6] - 9:10, 18:19, 20:8, 20:23, 22:14, 24:15

**R**

**raised** [1] - 63:1
**ramifications** [1] - 19:1
**rata** [1] - 34:11
**rather** [2] - 18:9, 47:4
**rational** [1] - 50:20
**rationale** [4] - 27:25, 34:17, 34:24, 37:3
**reached** [1] - 14:17
**reaches** [1] - 18:7
**read** [6] - 6:18, 7:23, 34:5, 51:1, 52:3, 66:12
**reading** [3] - 30:20, 38:13, 65:17
**ready** [1] - 7:9
**Real** [5] - 3:3, 4:17, 43:22, 44:2, 46:10
**REAL** [5] - 1:3, 1:10, 1:16, 1:19, 1:23
**real** [11] - 6:6, 13:24, 18:16, 32:6, 37:9, 37:17, 39:6, 39:7, 43:11, 51:3, 52:18
**realistic** [1] - 6:20
**really** [16] - 6:11, 7:3, 12:11, 27:2, 27:11, 28:8, 28:9, 35:22,

45:18, 46:22, 48:9, 48:10, 48:24, 51:21, 60:24, 62:19
**reargue** [1] - 46:16
**reason** [12] - 18:17, 19:15, 26:22, 29:16, 52:7, 54:1, 54:21, 55:13, 55:18, 57:17, 64:5, 64:6
**reasonable** [1] - 66:8
**reasons** [2] - 17:25, 33:5
**rebuffed** [1] - 47:21
**receive** [1] - 14:7
**received** [2] - 25:19, 44:12
**receiver** [7] - 7:20, 8:3, 8:4, 8:7, 24:7, 39:25, 61:10
**receivership** [2] - 29:4, 41:22
**receiving** [1] - 25:20
**recently** [1] - 38:3
**reciprocal** [1] - 62:22
**recognize** [2] - 35:19, 60:11
**reconsider** [5] - 44:4, 52:23, 58:6, 60:17, 67:8
**record** [7] - 16:16, 27:7, 36:20, 50:10, 54:15, 57:13, 59:9
**records** [5] - 8:17, 38:14, 38:18, 38:19, 41:13
**recourse** [1] - 6:9
**recovers** [1] - 60:8
**reduced** [1] - 34:23
**refer** [1] - 38:18
**reference** [1] - 38:2
**referred** [1] - 4:16
**refinance** [7] - 31:11, 31:22, 31:25, 32:8, 48:11, 49:12, 53:5
**refinancing** [3] - 33:9, 42:15, 64:2
**reflected** [1] - 21:22
**refusal** [1] - 66:5
**refused** [3] - 19:16, 32:2, 66:2
**refusing** [2] - 15:6, 18:1
**regard** [1] - 33:2
**regardless** [1] - 60:7
**regular** [1] - 31:24
**regulations** [1] - 34:5
**reinstate** [1] - 44:1
**related** [1] - 59:14
**relates** [1] - 59:6
**relating** [1] - 67:7

**relative** [1] - 21:22
**relatively** [1] - 4:3
**relevant** [1] - 5:10
**relief** [16] - 7:3, 7:4, 7:15, 7:19, 8:5, 11:7, 20:21, 32:15, 32:17, 45:1, 48:18, 48:21, 49:15, 58:11
**relieve** [1] - 49:20
**reluctance** [1] - 56:2
**remain** [1] - 7:9
**remainder** [2] - 41:15, 62:21
**remaining** [1] - 62:21
**remains** [1] - 39:14
**remember** [3] - 5:12, 31:20, 43:14
**reminder** [1] - 6:19
**remotely** [1] - 4:22
**removal** [4] - 59:22, 60:1, 62:3, 67:3
**remove** [1] - 59:16, 60:3, 60:5, 66:25
**renew** [1] - 68:4
**repairable** [1] - 19:3
**repayment** [2] - 14:20, 14:22
**repeat** [1] - 55:16
**replace** [1] - 50:25
**replete** [1] - 55:7
**reply** [1] - 47:8
**Reporter** [1] - 3:22
**reporter** [1] - 5:4
**represent** [6] - 5:2, 5:5, 11:1, 36:12, 36:20, 37:8
**representation** [1] - 25:21
**representations** [2] - 10:17, 53:23
**represented** [1] - 26:24
**representing** [5] - 10:16, 11:1, 26:2, 41:5, 63:24
**REPUBLIC** [1] - 1:7
**repudiated** [1] - 15:6
**request** [16] - 7:15, 7:19, 8:8, 10:14, 38:19, 44:4, 44:7, 44:14, 45:13, 48:3, 54:6, 66:1, 66:3, 67:20, 67:22, 68:4
**requested** [1] - 33:7
**requesting** [1] - 8:6
**requests** [2] - 47:17, 48:6
**require** [1] - 29:6
**required** [9] - 9:24, 15:24, 30:15, 31:1,

24-10381-jpm  Doc 14-2  Filed 03/18/24  Entered 03/18/24 19:17:58  Exhibit 2 - 02-02-2024 - Transcript of Proceedings in Simpson v Chassen  Pg 80 of 82

10

31:6, 31:7, 31:11, 53:24, 58:1

requires [1] - 9:25
resign [2] - 17:9, 17:14
resignation [1] - 33:5
resigned [1] - 33:16
resolution [1] - 67:13
resolve [1] - 20:16
respect [13] - 8:8, 24:11, 25:16, 30:23, 42:12, 43:22, 46:17, 47:16, 51:15, 53:5, 54:23, 63:10, 67:18
respectfully [1] - 54:6
respective [3] - 34:21, 34:22, 35:5
respond [4] - 16:17, 23:4, 48:5, 63:14
responded [1] - 38:21
responds [1] - 18:9
responsible [1] - 14:13
rest [3] - 4:6, 20:21, 21:7
restraining [2] - 8:1, 8:9
restriction [1] - 40:18
result [1] - 46:23
retained [1] - 6:15
retroactive [4] - 21:3, 21:19, 22:19, 23:11
Rever [1] - 13:20, 14:8, 19:8
review [2] - 63:22, 64:24
rid [1] - 59:8
rightly [1] - 32:5
rights [27] - 5:24, 6:2, 11:11, 11:12, 12:8, 13:2, 24:19, 24:25, 27:16, 29:7, 29:11, 29:25, 30:11, 32:25, 33:11, 33:14, 39:22, 40:9, 45:9, 45:24, 45:25, 46:5, 58:19, 59:19, 60:9, 61:5, 65:8
ripe [1] - 39:11
RM [1] - 19:5
Road [2] - 9:10, 37:17
Rockefeller [2] - 2:17
role [1] - 52:12
roles [1] - 50:3
roughly [1] - 42:2
rule [1] - 61:16
ruled [1] - 24:13
ruling [1] - 67:9
run [1] - 19:25
RXR [1] - 3:9

**S**

S-C-H-W-E-N-K-S [1] - 15:1
salary [2] - 36:2, 51:12
sale [4] - 15:4, 28:14, 40:10, 45:15
sales [1] - 11:8
satisfaction [1] - 66:25
scarlet [2] - 42:4, 67:11
scenario [1] - 60:7
Schedule [1] - 14:9
schedule [12] - 7:18, 23:22, 35:5, 41:16, 41:19, 41:20, 41:25, 42:4, 44:7, 47:24, 52:20, 67:12
school [3] - 9:17, 26:7, 36:23
Schwartz [3] - 4:14, 26:24, 59:11
SCHWARTZ [49] - 2:13, 2:15, 4:13, 7:22, 7:24, 9:19, 10:5, 10:9, 10:21, 11:9, 11:12, 12:14, 12:23, 13:4, 13:17, 14:2, 14:4, 15:14, 15:16, 15:20, 15:25, 16:3, 16:11, 16:13, 16:21, 17:4, 17:19, 17:24, 20:4, 20:22, 21:11, 21:14, 21:24, 42:10, 58:12, 61:7, 61:11, 62:1, 62:24, 63:9, 63:18, 64:1, 64:11, 64:20, 65:6, 65:10, 65:23, 66:19, 68:11
Schwartz's [1] - 38:18
Schwenks [3] - 15:1, 15:4, 19:9
scope [1] - 33:11
scroll [1] - 17:5
second [7] - 13:11, 27:14, 40:24, 52:17, 58:21, 61:1, 63:23
section [1] - 30:14
Section [5] - 9:24, 22:12, 22:25, 30:12, 40:4
secure [1] - 42:15
secured [1] - 26:19
see [15] - 18:12, 19:10, 20:7, 29:23, 41:19, 44:22, 46:3, 47:9, 50:16, 52:2, 52:7, 55:9, 65:18, 67:15
seeing [2] - 52:9, 60:25
seek [3] - 13:8, 24:10, 54:1
seeking [6] - 8:1, 11:7, 32:15, 51:5, 62:3, 62:12
seeks [9] - 8:9, 8:14, 11:17, 40:18, 43:23, 43:24, 44:1, 46:4, 58:17
Seelig [1] - 4:22
SEELIG [1] - 2:21
seem [3] - 29:6, 36:14, 63:8
segue [1] - 31:17
sell [10] - 9:9, 32:9, 39:25, 40:2, 40:19, 42:20, 48:11, 49:12, 53:4, 57:25
selling [2] - 9:12, 27:12
send [1] - 6:15
sense [2] - 39:4, 46:7
sent [3] - 5:1, 17:25, 20:8
sentence [1] - 65:5
separate [1] - 5:21
September [2] - 21:2, 58:23
serious [1] - 30:6
served [1] - 47:16
set [4] - 41:15, 44:7, 47:24, 61:2
setting [2] - 7:18, 26:17
settled [1] - 61:18
settler [1] - 28:7
sewing [1] - 28:7
shall [9] - 22:4, 39:25, 40:2, 40:5, 40:13, 40:22, 40:24, 41:6, 41:11
SHARFSTEIN [1] - 3:7
sharing [1] - 49:1
show [4] - 7:13, 7:17, 18:16, 27:5
showing [3] - 18:6, 29:15, 43:12
shown [2] - 15:9, 54:3
shows [1] - 14:18
side [8] - 4:8, 6:10, 7:11, 44:20, 50:16, 51:10, 53:11, 58:15
side's [1] - 39:12
sides [1] - 57:11
signed [2] - 26:14, 26:15
significance [1] - 12:5
significant [3] - 11:7,
19:22, 24:19
Simco [1] - 13:22
SIMCO [1] - 1:13
similar [2] - 26:6, 43:25
simili [1] - 43:17
Simon [1] - 20:7
simply [2] - 53:24, 54:3
SIMPSON [3] - 1:2, 1:13, 1:19
Simpson [97] - 2:10, 4:12, 8:10, 8:15, 8:18, 9:1, 9:2, 10:1, 10:16, 10:19, 11:2, 11:14, 13:11, 13:19, 13:23, 14:10, 14:11, 14:13, 14:16, 14:21, 15:6, 15:11, 15:14, 15:15, 16:6, 16:7, 16:11, 16:15, 16:16, 16:18, 17:6, 18:3, 18:6, 18:8, 18:10, 18:12, 19:16, 19:19, 19:24, 20:2, 20:4, 20:25, 23:10, 24:13, 24:17, 25:14, 30:11, 30:22, 31:4, 31:24, 32:18, 33:1, 33:8, 34:8, 34:18, 35:2, 35:10, 36:18, 37:13, 38:6, 39:7, 39:25, 40:19, 40:24, 41:3, 41:6, 41:11, 42:14, 43:24, 45:15, 45:25, 46:5, 46:12, 46:15, 49:1, 49:18, 50:16, 51:10, 52:10, 54:1, 54:23, 55:1, 55:4, 55:19, 55:25, 58:20, 59:22, 60:1, 60:8, 62:6, 63:19, 64:24, 65:15, 65:25, 66:22, 66:23
Simpson's [17] - 10:6, 14:22, 16:4, 17:25, 18:13, 24:10, 30:15, 36:15, 43:21, 45:8, 48:12, 49:13, 53:6, 53:23, 54:8, 62:3, 66:10
simultaneously [1] - 10:16
single [1] - 56:1
sit [1] - 58:13
site [1] - 43:18
situation [3] - 15:22, 18:23, 57:20
situations [1] - 43:7
slowly [1] - 13:16
small [1] - 33:24
smart [2] - 6:17, 43:10
sold [1] - 9:17
sole [4] - 26:10, 45:8, 46:5, 65:1
solicit [1] - 49:2
someone [1] - 39:21
sometimes [1] - 65:20
somewhat [1] - 63:5
soon [4] - 19:3, 47:17, 48:17, 64:17
sorry [3] - 40:2, 45:3, 54:25
sort [12] - 7:2, 12:24, 26:23, 34:16, 35:8, 39:18, 44:8, 47:9, 50:15, 50:19, 57:3, 62:12
sorts [1] - 44:3
sought [1] - 44:25
sounded [1] - 66:8
sounds [3] - 19:24, 39:5, 52:18
Southampton [1] - 2:11
spearheading [1] - 56:16
specific [5] - 11:17
specifically [5] - 6:12, 30:22, 38:7, 49:18, 60:15
spend [2] - 28:23, 30:18
spent [1] - 25:15
spinning [1] - 50:22
split [1] - 15:3
spot [2] - 20:9, 29:8
stake [5] - 6:3, 6:24, 47:6
stand [3] - 38:24, 43:1, 55:21
standard [3] - 8:19, 38:19, 63:5
standing [1] - 64:5
start [1] - 39:11
started [4] - 4:9, 19:7, 30:1, 34:14
starting [1] - 24:3
state [2] - 16:18, 18:15
State [1] - 34:3
STATE [1] - 1:1
statement [1] - 16:14
statements [1] - 16:6
status [5] - 7:2, 31:21, 45:16, 45:23, 62:20
stay [9] - 48:18, 49:25, 53:8, 67:20, 67:22, 68:1, 68:3, 68:5
step [3] - 29:18, 49:9, 60:19

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 81 of 82

11

**STEPHEN** [1] - 2:23
**Stephen** [1] - 4:21
**stepped** [1] - 19:6
**Steven** [1] - 4:11
**STEVEN** [1] - 2:11
**stick** [3] - 6:7, 29:25, 39:20
**still** [6] - 8:17, 13:16, 37:25, 48:22, 51:6, 57:10
**stop** [2] - 11:8, 28:14
**story** [5] - 28:22, 43:13, 43:14, 50:14, 65:20
**streak** [1] - 66:16
**Street** [5] - 2:2, 22:20, 22:24, 31:25, 63:10
**stress** [1] - 53:14
**strict** [1] - 4:4
**struggles** [1] - 18:13
**stuff** [2] - 7:23, 20:14
**stupidly** [1] - 32:25
**style** [1] - 20:12
**styled** [1] - 58:5
**sub** [2] - 35:19, 64:18
**Sub** [1] - 30:14
**sub-agreements** [1] -
35:19
**sub-issue** [1] - 64:18
**subentities** [1] - 40:16
**subject** [10] - 11:15,
24:18, 25:1, 25:2,
32:12, 39:16, 40:1,
40:21, 63:21, 64:24
**submit** [2] - 46:10,
53:6
**submitted** [6] - 9:7,
9:19, 10:25, 16:24,
18:5, 56:5
**subsidiary** [2] - 10:14,
21:18
**substantively** [1] -
7:20
**success** [4] - 8:20,
12:15, 27:6, 27:23
**successful** [1] - 32:9
**succession** [1] - 40:8
**sued** [1] - 5:10
**suffice** [1] - 27:4
**sufficient** [2] - 56:7,
66:25
**sufficiently** [1] - 39:11
**suggest** [5] - 16:2,
50:17, 64:4, 64:8,
64:15
**suggested** [1] - 6:18
**suggesting** [1] - 6:4
**suggests** [1] - 18:7
**sui** [1] - 36:22

**suing** [2] - 1:3, 1:9
**Suite** [1] - 2:14
**summarily** [1] - 47:7
**supported** [2] - 59:22,
67:4
**suppose** [2] - 30:9,
62:22
**supposed** [5] - 18:19,
39:15, 52:13, 54:17,
54:18
**SUPREME** [1] - 1:1
**surely** [1] - 26:13
**surprising** [1] - 48:7
**surrounding** [1] -
19:18
**suspenders** [1] - 41:9
**swallowed** [1] - 19:2
**switch** [3] - 23:19,
50:4, 59:18
**switching** [1] - 57:11
**sympathy** [1] - 19:4

**T**

**table** [4] - 24:5, 25:17,
26:3, 54:4
**tails** [2] - 43:15, 65:14
**tale** [1] - 26:10
**talks** [1] - 33:22
**Teams** [2] - 2:20, 3:2
**temporary** [7] - 8:1,
8:3, 8:4, 8:9, 39:25,
49:15, 62:20
**term** [1] - 30:19
**TERM** [1] - 1:1
**terminate** [6] - 20:25,
43:24, 46:4, 62:6,
62:13, 62:18
**terminated** [1] - 33:15
**terminates** [1] - 21:2
**terminating** [1] - 59:8
**termination** [1] -
13:11
**terminations** [1] -
62:15
**terms** [6] - 12:4, 12:5,
12:14, 20:16, 34:20,
55:8
**territory** [1] - 12:2
**testimony** [1] - 27:7
**text** [1] - 58:25
**THE** [133] - 1:1, 4:2,
4:19, 4:23, 5:3, 5:8,
5:20, 6:1, 6:17, 7:6,
7:23, 9:16, 10:3,
10:8, 10:10, 11:6,
11:10, 11:20, 12:21,
12:24, 13:16, 14:1,
14:3, 15:12, 15:15,
15:18, 15:23, 16:1,

16:9, 16:12, 16:20,
17:2, 17:15, 17:21,
19:21, 20:18, 21:10,
21:12, 21:20, 23:17,
24:8, 24:15, 24:21,
25:1, 25:5, 25:9,
25:23, 26:14, 26:16,
27:10, 28:17, 28:24,
29:1, 29:13, 30:7,
30:20, 31:1, 31:6,
31:13, 32:10, 32:17,
32:23, 33:10, 33:17,
34:16, 35:16, 35:22,
36:2, 36:7, 36:11,
36:17, 36:25, 37:9,
37:23, 38:2, 38:12,
38:25, 42:16, 42:19,
42:23, 44:19, 44:23,
45:3, 45:5, 45:10,
45:16, 46:2, 46:19,
46:21, 46:23, 47:1,
47:21, 48:14, 48:20,
50:3, 50:9, 51:4,
51:18, 51:21, 53:11,
53:21, 54:10, 54:12,
54:16, 54:25, 55:13,
56:7, 56:10, 56:18,
56:22, 58:3, 58:10,
58:13, 59:4, 59:15,
59:25, 60:11, 61:8,
61:15, 62:11, 63:4,
63:16, 63:23, 64:4,
64:13, 65:4, 65:9,
65:11, 66:6, 67:5,
67:22, 67:25, 68:9
**theme** [1] - 46:8
**themselves** [2] -
35:24, 43:19
**thereof** [1] - 40:11
**thinking** [1] - 41:23
**thinks** [3] - 6:11, 31:7,
64:9
**Third** [1] - 3:4
**third** [6] - 5:13, 12:5,
29:2, 43:4, 43:9,
51:25
**third-party** [1] - 12:5
**THORNE** [18] - 2:18,
4:15, 53:12, 53:22,
54:11, 54:14, 54:20,
55:2, 55:15, 56:9,
56:12, 56:21, 57:15,
58:8, 59:2, 59:11,
59:20, 60:6
**Thorne** [1] - 4:15
**thousand** [2] - 28:21,
34:13
**thousands** [1] - 9:20
**threat** [1] - 8:22
**three** [3] - 6:20, 14:8,

64:16
**throughout** [1] - 66:23
**throw** [1] - 51:22
**throwing** [1] - 39:11
**thunderbolts** [1] -
39:12
**tie** [1] - 43:15
**tied** [3] - 65:13, 65:19,
65:21
**timeframe** [1] - 61:13
**today** [18] - 5:25, 6:6,
7:1, 7:21, 8:1, 23:24,
24:6, 26:13, 27:8,
28:20, 44:11, 47:11,
48:17, 49:24, 59:24,
61:2, 62:5, 67:13
**together** [7] - 43:15,
51:16, 64:17, 65:14,
65:19, 65:20, 65:21
**top** [2] - 23:14, 29:9
**totally** [1] - 49:23
**touchstone** [1] - 39:19
**touted** [1] - 9:2
**towards** [1] - 27:15
**transaction** [1] - 64:7
**transactions** [5] -
49:1, 51:15, 54:19,
56:11, 56:13
**transfer** [5] - 10:24,
25:23, 39:25, 40:2,
40:20
**transferring** [3] - 8:10,
27:14, 27:18
**transfers** [1] - 10:6
**tremendous** [1] - 67:1
**TRIAL** [1] - 1:1
**trial** [1] - 41:20
**TRO** [19] - 6:16, 7:13,
7:15, 7:21, 8:21,
25:5, 27:4, 27:10,
27:11, 27:14, 27:23,
33:7, 37:10, 39:3,
41:15, 42:25, 43:23,
44:16, 54:1
**trojan** [1] - 58:21
**true** [4] - 16:15, 17:21,
22:20, 63:6
**trust** [1] - 19:3
**truth** [2] - 16:14, 27:2
**try** [5] - 44:21, 53:2,
53:12, 55:19, 57:25
**trying** [1] - 12:2,
46:16, 48:8, 56:18,
57:20
**turmoil** [1] - 18:15
**twenty** [6] - 4:8, 7:11,
20:19, 23:17, 23:20,
44:20
**twenty-five** [1] - 23:20
**two** [23] - 4:5, 5:11,

5:16, 6:20, 6:24,
23:25, 25:8, 26:4,
28:1, 28:5, 29:22,
36:7, 43:14, 43:23,
60:16, 61:21, 61:22,
61:24, 64:5, 64:14,
67:13

**U**

**ultimate** [3] - 45:1,
62:2, 62:8
**ultimately** [4] - 29:15,
39:8, 49:16, 62:8
**ultra** [1] - 13:9
**unbelievable** [1] -
57:24
**uncertainty** [1] - 58:4
**unconditionally** [1] -
36:21
**undecided** [1] - 29:14
**under** [36] - 8:21, 9:14,
11:11, 11:13, 11:17,
12:7, 14:7, 21:12,
21:21, 22:25, 23:12,
25:14, 27:20, 28:4,
28:6, 29:5, 33:14,
34:19, 35:15, 35:18,
36:4, 37:14, 38:20,
39:10, 40:4, 40:8,
40:22, 41:13, 45:9,
46:5, 56:23, 57:12,
59:14, 59:21, 59:23,
66:2
**understood** [1] - 24:5
**undertaking** [3] -
9:23, 9:25, 11:2
**unequivocally** [1] -
63:16
**unfettered** [1] - 31:5
**unilateral** [1] - 62:15
**unilaterally** [2] -
32:18, 34:25
**Uniondale** [1] - 3:9
**unique** [2] - 28:5,
28:13
**University** [1] - 55:9
**unless** [8] - 6:2, 7:9,
29:6, 36:2, 39:20,
58:25, 60:24, 62:16
**unreasonable** [1] -
66:11
**unreasonably** [2] -
40:5, 40:23
**unreturned** [1] - 34:22
**unsecured** [1] - 17:11
**up** [4] - 5:7, 16:22,
43:18, 49:9
**upset** [2] - 18:3, 18:17
**upshot** [1] - 66:21

24-10381-jpm    Doc 14-2    Filed 03/18/24    Entered 03/18/24 19:17:58    Exhibit 2 -
02-02-2024 - Transcript of Proceedings in Simpson v Chassen    Pg 82 of 82

12

**urge** [1] - 43:12
**urgent** [1] - 32:4
**urging** [1] - 43:3
**useful** [1] - 61:20
**uses** [2] - 21:18, 23:14
**usual** [1] - 29:8

## V

**vacate** [1] - 45:7
**valid** [1] - 32:16
**value** [1] - 18:20
**various** [4] - 12:12, 18:8, 21:17, 39:17
**vehicle** [4] - 9:13, 9:14, 37:11, 51:14
**vehicles** [2] - 14:8, 28:5
**verifiable** [1] - 10:23
**via** [1] - 2:20
**viciously** [1] - 43:17
**view** [3] - 39:12, 44:8, 50:5
**viewed** [1] - 43:8
**viewing** [3] - 8:18, 37:23, 41:7
**vintage** [1] - 28:5
**violation** [1] - 37:20
**vires** [1] - 13:9
**void** [1] - 13:8

## W

**wagging** [1] - 26:10
**waiting** [1] - 61:9
**walk** [4] - 13:5, 20:23, 22:1, 30:18
**wants** [2] - 24:14, 54:2
**Watermill** [1] - 13:25
**ways** [2] - 12:19, 20:16
**week** [5] - 28:1, 48:5, 54:5, 65:13
**well-fought** [1] - 67:15
**Westerman** [1] - 5:1
**wESTERMAN** [1] - 3:7
**whatsoever** [4] - 11:3, 49:9, 51:2, 51:14
**whole** [2] - 21:7, 28:21
**Wiener** [2] - 47:12, 55:10
**wife** [1] - 13:23
**willing** [1] - 42:24
**win** [1] - 28:11
**window** [1] - 34:2
**winning** [1] - 66:16
**wipe** [1] - 59:7
**wiping** [1] - 45:8
**wire** [2] - 10:6, 25:23
**withheld** [2] - 40:5,

40:23
**witnesses** [1] - 42:6
**word** [1] - 54:23
**words** [1] - 19:2
**works** [2] - 34:10, 59:16
**worried** [1] - 59:3
**write** [2] - 6:9, 40:17
**writes** [1] - 18:18
**writing** [2] - 29:11, 42:21
**written** [4] - 23:24, 33:10, 40:3, 46:9
**wrote** [1] - 66:7

## Y

**year** [2] - 9:17, 18:20
**years** [1] - 47:14
**yesterday** [4] - 5:2, 38:5, 47:12, 51:1
**YJ** [2] - 1:13, 13:22
**YORK** [2] - 1:1, 1:1
**York** [15] - 2:2, 2:11, 2:14, 2:18, 2:22, 3:4, 3:9, 13:25, 22:4, 34:3

## Z

**zero** [1] - 34:23
**ZERYKIER** [3] - 3:5, 4:17, 4:20
**Zerykier** [1] - 4:17
**ZUCKER** [1] - 3:7