**WESTERMAN BALL EDERER**  **Hearing Date: _____**
**MILLER ZUCKER & SHARFSTEIN, LLP**  **Time: _____**
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
Jeffrey A. Miller, Esq.
*Attorney for the Movants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X   Chapter 11
In re:                                                          (Subchapter V)

    JJ ARCH LLC,                                           Case No. 24-10381-jpm

            Debtor.                                      Hon. John P. Mastando III
                                                                United States Bankruptcy Judge
------------------------------------------------------------X

## MOTION TO EXPAND POWERS OF THE SUBCHAPTER V TRUSTEE

    40 Neutral LLC ("**40 Neutral**") and Kay Properties LLC ("**Kay Properties**") (collectively, the "**Movants**"), by and through their undersigned counsel, respectfully submit this motion (the "**Motion**"), seeking to (i) remove the debtor from possession and empower the Subchapter V trustee appointed in this case ("**Trustee**") to take full control of the debtor pursuant to Sections 1185(a) and 1183(b)(5) of Title 11, United States Code, §§ 101 *et seq.* (the "**Bankruptcy Code**") or, in the alternative, (ii) expand the powers of the Trustee (similar to those of an examiner) pursuant to Section 1183(b)(2) of the Bankruptcy Code and, in support thereof, respectfully state as follows:

### PRELIMINARY STATEMENT

    1.    The debtor in this case, JJ Arch LLC ("**JJ Arch**" or the "**Debtor**"), is an indirect owner of the real property located at 146 East 89th Street, New York, New York 10003 (the "**Property**"). The Movants are also indirect owners of the Property (they are the largest investors), and each of the companies they own is managed by the Debtor. Thus, the Debtor has both an

1

ownership interest and a management interest in the Property. The Movants, in contrast, have ownership interests in the Property, but they do not have managerial rights.

2. JJ Arch is co-owned by two individuals, Jeffrey Simpson ("**Simpson**") and Jared Chassen ("**Chassen**"). Unfortunately, Simpson and Chassen are having disputes with each other relating to each one's authority on behalf of JJ Arch, and several other unrelated disputes. Those disputes gave rise to a lawsuit pending in New York County Supreme Court, captioned *Jeffrey Simpson, et al. v. Jared Chassen, et al.*, Index No. 158055/2023 (the "**State Court Action**").

3. Most of the disputes between Simpson and Chassen have nothing to do with the Property. The Property (and, therefore, the Movants), however, are caught in the middle, and the situation regarding the Property is dire.

4. Indeed, because of the dysfunction between Simpson and Chassen, the Property was allowed to go into foreclosure. A copy of the complaint in the foreclosure case, which is not being defended, is attached as **Exhibit "1"**. Prior to the loan default, the parties discussed restructuring the loan (and a proposal was available), which would have reduced the default interest rate. At that time, there was plenty of equity in the Property, but no restructuring occurred because of the disputes between Simpson and Chassen.

5. With each passing day, default interest continues to accrue, the equity in the Property is being eroded, and the Property is in danger of being lost at a courthouse-steps foreclosure sale. The outstanding principal amount of the mortgage debt is $3.8 million, and default interest has been accruing at the rate of $2,533.33 per day since October 1, 2023 (and continues to accrue at that rate every day). *See* **Exhibit "2"** (payoff letter from lender).[1]

---

[1] This payoff letter is dated June 26, 2023, and it is the most recent one the Movants currently have in their possession. This letter provides loan information, and a payoff figure, through December 31, 2023. The Movants estimate that the current amount of the debt is approximately $4 million,

2

6.  The Movants believe that the Property is worth between $6.5 million and $8.45 million. *See* **Exhibit "3"** (Appraisal Report, prepared for and addressed to the lender, appraising the Property at $8.45 million); **Exhibit "4"** (Broker Opinion of Market Value, estimating the value of the Property between $6.5 million and $7 million); and **Exhibit "5"** (proposed listing agreement that would have authorized the Property to be offered for a price of $6,995,000).[2]

7.  While a refinancing of the loan was recently considered, that is no longer an option (mainly because of the strife and disagreements between Simpson and Chassen). As a result, the only viable solution is for the Property to be sold right away, to stop the bleeding and pay off the lender. Again, however, Simpson and Chassen cannot agree. Their disputes, and the resulting paralysis, are causing severe harm to the Property and the Movants (and, of course, to the Debtor's estate and other creditors).

8.  The disputes between Simpson and Chassen have now been brought to this Court, as is apparent from Chassen's 1,224 page motion to dismiss this chapter 11 case as "an unauthorized, bad-faith filing" (the "**Motion to Dismiss**"). *See* Dkt. No. 4. Chassen sought entry of an order seeking to have the Motion to Dismiss heard on shortened notice, and Simpson immediately opposed that request. There will be a battle between Simpson and Chassen on every point, on every motion, at every opportunity. But their eagerness to be combative with one another demonstrates that the interests of creditors are being given short shrift. Rather than demonstrate that this chapter 11 case should be dismissed, the Motion to Dismiss and the immediate-reaction

---

excluding fees and other lender expenses.

2 The proposed listing agreement and the Broker Opinion of Market Value were obtained months ago, when the parties were discussing a sale of the Property. Simpson, however, would not agree to a sale, so it never happened. It is also troubling that a sale was being considered for a price less than $7 million, when the Appraisal Report prepared for the lender valued the Property at $8.45 million. This is further evidence of JJ Arch's mismanagement.

3

litigation over whether that motion should be heard on shortened notice underscore why the relief sought herein – *removing the Debtor and empowering the Trustee to take control or have expanded powers (akin to an examiner)* – is the only way to protect the interests of creditors.

9. This Court is the only forum in which the interests of all creditors can be protected, and assets owned and managed by the Debtor can be sold. We respectfully request that the Debtor be displaced and that the Trustee take control of the Debtor to do what is necessary – *i.e.*, sell the Property. Alternatively, we respectfully request that the Trustee's powers be expanded, similar to the powers available to an examiner pursuant to Section 1104(c), to permit the Trustee to investigate the matter and report back to the Court with a recommended course of action. We are confident that, with such expanded powers, the Trustee would agree that a sale of the Property is the only viable plan.

## BACKGROUND

10. The Property is owned directly, as co-tenants, by three limited liability companies: (i) 146 E 89 Borrower 1 LLC ("**Borrower 1**"); (ii) 146 E 89 Borrower 2 LLC ("**Borrower 2**"); and (iii) 146 E 89 Borrower 3 LLC ("**Borrower 3**"). *See* **Exhibit "6"** (Co-Tenancy Ownership Agreement).

11. Borrower 1 is solely owned and managed by JJ Arch (the Debtor in this case). *See* **Exhibit "7"** (Limited Liability Company Operating Agreement for Borrower 1).

12. Borrower 2 is solely owned by Kay Properties, but JJ Arch is the non-member manager of Borrower 2. *See* **Exhibit "8"** (Limited Liability Company Operating Agreement for Borrower 2). Kay Properties is owned by Jonathan Peldman. *Id.*

13. Borrower 3 is solely owned by 40 Neutral, but JJ Arch is the non-member manager of Borrower 3. *See* **Exhibit "9"** (Limited Liability Company Operating Agreement for Borrower

4

3). 40 Neutral is owned by Adam Peldman (together with Jonathan Peldman, the "**Peldmans**"). *Id.*

14. The unanimous consent of all owners (Borrower 1, Borrower 2, and Borrower 3) is needed to, among other things, sell or mortgage the Property. Co-Tenancy Ownership Agreement at § 1(a)(ii), (iv).

15. The Peldmans have invested almost $2 million and are the largest investors in the Property, which was to be redeveloped into a single family townhouse. Construction started, but there were problems, including a failure to obtain all required permits and a failure to keep the Property in compliance with the New York City Building Code. Construction was stopped, and the Property remained vacant.

16. In order to complete the redevelopment of the Property and make it usable, an influx of money through refinancing would have been needed, but Simpson and Chassen could not agree on that, either. Simpson recently told Movants that a refinancing was being explored, but then he went silent and, instead, commenced this bankruptcy matter on behalf of JJ Arch. Again, even though the Peldmans are the largest investors, they do not have any managerial rights, so they cannot force a refinancing.

17. All of this has harmed the Property. Among other issues: the Property currently has no insurance in place (*see* **Exhibit "10"**, email from insurance broker confirming that the policy expired); there is a stop work order on the Property (*see* **Exhibit "11"**); there are multiple Department of Buildings violations on the Property (collectively attached as **Exhibit "12"**); there are multiple mechanic's liens on the Property (*see* **Exhibit "13"**, which includes a New York County Lien Information printout for the Property, listing each mechanic's lien, the date and amount of each lien, and the name of each lienor); and the January 2024 real estate taxes have

5

apparently not been paid (*see* **Exhibit "14"**, NYC Department of Finance printout showing the balance owed).

18.	Because a refinancing does not appear possible at this point, the only other way to salvage money from the Property is to sell it.

19.	Since JJ Arch, the Debtor here, is the manager of the Property (and has been since its purchase), JJ Arch has a fiduciary obligation to protect the Property and its investors, including the Movants (Kay Properties and 40 Neutral).  JJ Arch is breaching that obligation.  Not only have the disputes between JJ Arch's owners (Simpson and Chassen) caused the Property to incur violations, a stop work order, mechanic's liens, a lapse in insurance coverage, and unpaid taxes, but, as mentioned, the Property's mortgage loan went into default, and the lender accelerated the debt and commenced a foreclosure proceeding, which is not being defended.

20.	In light of the loan default and the foreclosure, the matter is urgent.  Every day, default interest continues to accrue, the remaining equity in the Property (the majority of which belongs to the Movants here) is being lost, and the Property gets closer to being lost at a foreclosure sale.  A valuable estate asset is being harmed.

21.	To pay off the lender and preserve the Property's equity, the Property needs to be sold immediately.  Such a sale will benefit everyone – including the Debtor, which, as noted, indirectly co-owns the Property.  But because the Debtor's owners, Simpson and Chassen, cannot agree on anything, the Movants need this Court's help.

## **ARGUMENT**

22.	Section 1185(a) of the Bankruptcy Code permits the Court, upon request from a party in interest, to "order that the debtor shall not be a debtor in possession for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before

or after the date of commencement of the case[.]" The Section 1185(a) grounds for removing a debtor and empowering a Subchapter V Trustee to take control are closely aligned with those set out in Section 1104(a) of the Bankruptcy Code, which provides for the appointment of a Trustee in a non-Subchapter V chapter 11 case after notice and a hearing, "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor . . ." or "if such appointment is in the interests of creditors[.]" *See* 8 COLLIER ON BANKRUPTCY ¶ 1185.01 (16th ed. Resnick & Sommer). Upon removal of a Subchapter V debtor, Section 1183(b)(5) permits the Court to empower a Subchapter V Trustee to take control of the debtor's business.

23. Removing the Debtor and empowering the Trustee to take control of the Debtor is warranted under these standards.

24. First, the mismanagement, incompetence, and disregard of fiduciary duty in this matter constitute "cause" to remove the Debtor and empower the Trustee to take control.

25. In addition, removing the Debtor and empowering the Trustee to take control of the Debtor is clearly in the best interests of the creditors, including the Movants here, and it will also benefit the Debtor itself.

26. Simpson and Chassen can continue fighting in the State Court Action. The Movants have no stake in that fight. <u>The Movants' sole interest is in the Property, and the relief the Movants seek here relates only to the Property</u>.

27. Inaction – failing to sell the Property and pay off the lender – benefits no one and would only result in more default interest, more wasting of the Property's equity, and eventually, losing the Property in a foreclosure sale. Given control, the Trustee will have the power to do what must be done – sell the Property.

7

28. In the alternative, if the Debtor is not removed and the Trustee is not empowered to take control of the Debtor's business, the Movants respectfully request that the Trustee be given expanded powers (consistent with those granted to a chapter 11 examiner pursuant to Section 1104(c)) pursuant to Section 1183(b)(2) of the Bankruptcy Code. Section 1183(b)(2) permits the Court to expand the powers of the Trustee, upon a showing of "cause". The showing required pursuant to Section 1183(b)(2) is less onerous than the showing required pursuant to Section 1185(a). *See* 8 COLLIER ON BANKRUPTCY ¶ 1183.03[3]. Movants respectfully submit that a Section 1183(b)(2) analysis properly focuses upon the same considerations as are at issue on a motion seeking the appointment of an examiner pursuant to Section 1104(c).

29. Given expanded powers pursuant to Section 1183(b)(2), the Trustee will almost certainly come to the same conclusion – that the Property should be sold immediately so the lender can be paid off as quickly as possible. Accordingly, it is respectfully submitted that the Trustee's powers should be expanded to empower the Trustee to investigate all matters relating to the current status of the Property, and to market and sell the Property subject to further order of this Court.

## **CONCLUSION**

**WHEREFORE**, it is respectfully requested that the Court grant this Motion and grant such other and different relief as the Court may deem just and proper.

Dated: Uniondale, New York
       March 20, 2024

        WESTERMAN BALL EDERER MILLER
        ZUCKER & SHARFSTEIN LLP

By: */s/ Jeffrey A. Miller*
    Jeffrey A. Miller, Esq.
    William C. Heuer, Esq.
    1201 RXR Plaza
    Uniondale, New York 11556
    (516) 622-9200
    (516) 622-9212 – facsimile
    jmiller@westermanllp.com
    wheuer@westermanllp.com
    *Attorneys for the Movants*

2980514