# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X

146 89 Funding LLC,

                    Plaintiff,

      -against-

146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC, 146 E 89 Borrower 3 LLC, Jeffrey Simpson, Jared Chassen, Alba Carting & Demolition Inc., New York City Environmental Control Board,

John Doe #1 through John Doe #20 (Said names being fictitious, it being the intention of Plaintiff to designate any and all occupants of premises being foreclosed herein, including without limitation, tenants or other occupants who may have some interest in or lien upon the Premises subordinate to the lien of the Plaintiff's mortgage sought to be foreclosed herein),

                    Defendants.
------------------------------------------------------------X

Index No.

**FORECLOSURE
<u>SUMMONS</u>**

**(NON-RESIDENTIAL)**

Original filed with Clerk on:

<u>Mortgaged Premises</u>:
146 East 89th Street
New York, NY 10128
Block: 1517
Lots:  149
County of New York

**TO THE ABOVE NAMED DEFENDANTS:**

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this Summons, to serve a Notice of Appearance, on plaintiff's attorney within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York;

1

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 1
24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 3 of 111
RECEIVED NYSCEF: 01/11/2024

and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:     Whitestone, New York
           January 11, 2024

                         Borchert & LaSpina, P.C.


                         By: */s/ Jason Sackoor*
                              Jason Sackoor, Esq.
                         *Attorneys for Plaintiff*
                         19-02 Whitestone Expressway
                         Whitestone, NY 11357
                         (718)767-3333


Pursuant to the terms of a Federal Law entitled "The Fair Debt Collection Practices Act", we may be considered to be acting as a "debt collector" to collect amounts owing to the creditor.  Any information obtained by us from you or about you will be used for that purpose.

TO:   146 E 89 Borrower 1 LLC
       146 E 89 Borrower 2 LLC
       146 E 89 Borrower 3 LLC
       c/o Arch Companies
       88 University Place, 11th Floor
       New York, New York 10003

       Jeffrey Simpson
       c/o Arch Companies
       88 University Place, 11th Floor
       New York, New York 10003

       Jared Chassen
       c/o Arch Companies
       88 University Place, 11th Floor
       New York, New York 10003

2

Alba Carting & Demolition Inc.
240 West 52nd Street, 5th Floor
New York, New York 10019

New York City Environmental Control Board
59-17 Junction Boulevard
Corona, New York 11358

3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 2
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 5 of 111
RECEIVED NYSCEF: 01/11/2024

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
146 89 Funding LLC,

               Plaintiff,

        -against-

146 E 89 Borrower 1 LLC, 146 E 89 Borrower
2 LLC, 146 E 89 Borrower 3 LLC, Jeffrey
Simpson, Jared Chassen, Alba Carting &
Demolition Inc., New York City Environmental
Control Board,

John Doe #1 through John Doe #20 (Said
names being fictitious, it being the intention of
Plaintiff to designate any and all occupants of
premises being foreclosed herein, including
without limitation, tenants or other occupants
who may have some interest in or lien upon
the Premises subordinate to the lien of the
Plaintiff's mortgage sought to be foreclosed
herein),

               Defendants.
-------------------------------------------------------------X

Index No.

**VERIFIED COMPLAINT**

Original filed with
Clerk on:

Mortgaged Premises:
146 East 89th Street
New York, NY 10128
Block: 1517
Lots:  149
County of New York

Plaintiff, complaining of the defendants, alleges, upon information and belief, as follows:

## AS AND FOR A FIRST CAUSE OF ACTION

1.    That the plaintiff, 146 89 Funding LLC ("Plaintiff"), is a New York limited liability company with its principal place of business located at 1140 Broadway, Suite 304, New York, New York 10001.

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 2
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
RECEIVED NYSCEF: 01/11/2024
Pg 6 of 111

2.      On or about June 27, 2022, Jared Chassen, executed and delivered a mortgage note dated June 28, 2022 to Connectone Bank, a mortgage note in the principal sum of $3,800,000.00.   Jared Chassen executed said note three times, all in his capacity as an authorized signatory of JJ ARCH LLC.  JJ ARCH LLC is the managing member of 146 E 89 Borrower 1 LLC, manager of 146 E 89 Borrower 2 LLC, and manager of 146 E 89 Borrower 3 LLC, which are the three entities that collectively own the subject property being foreclosed herein.  Said note was to be repaid pursuant to the terms of the note therein.  A copy of the note is annexed hereto as Exhibit "A".

3.      As collateral security for said indebtedness, on or about June 27, 2022, Jared Chassen executed and delivered a mortgage dated June 28, 2022 in the principal sum of $3,800,000.00 to Connectone Bank.  Jared Chassen executed said mortgage three times, all in his capacity as an authorized signatory of JJ ARCH LLC.  JJ ARCH LLC is the managing member of 146 E 89 Borrower 1 LLC, manager of 146 E 89 Borrower 2 LLC, and manager of 146 E 89 Borrower 3 LLC, which are the three entities that collectively own the subject property being foreclosed herein. Said mortgage was recorded in the Office of the City Register of the City of

New York on July 7, 2022, at CRFN No. 2022000268625.  The mortgage tax was fully paid.    A copy of said mortgage is annexed hereto as Exhibit "B".

4.    Jared Chassen executed an assignment of leases and rents three times, all as an authorized signatory of JJ ARCH LLC.  JJ ARCH LLC is the managing member of 146 E 89 Borrower 1 LLC, manager of 146 E 89 Borrower 2 LLC, and manager of 146 E 89 Borrower 3 LLC, which are the three entities that collectively own the subject property being foreclosed herein.  The assignment of leases and rents was delivered to Connectone Bank, and was recorded in the Office of the City Register of the City of New York on July 7, 2022, at CRFN: 2022000268626. A copy of the assignment of leases and rents is annexed hereto as Exhibit "C".

5.    Defendants Jeffrey Simpson and Jared Chassen (collectively, "Guarantors") executed a Guaranty of Payment, whereby Guarantors personally guaranteed to repay the debt owed to Connectone Bank or any subsequent holder of the loan under the Note and Mortgage.  A copy of the Guaranty of Payment is annexed hereto as Exhibit "D".

6.    On or about November 17, 2023, Connectone Bank assigned the Note and Mortgage to Plaintiff by written assignment dated November

3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 2
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
RECEIVED NYSCEF: 01/11/2024
Pg 8 of 111

17, 2023.  Said assignment was recorded in the Office of the City Register of the City of New York on November 30, 2023, at CRFN: 2023000313768. A copy of the assignment of mortgage is annexed hereto as Exhibit "E".

7.      That 146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC and 146 E 89 Borrower 3 LLC, are the owners of the property herein being foreclosed by virtue of a deed made by New Century Gardens, LLC, dated June 28, 2022, and recorded in the Office of the City Register of the City of New York on July 7, 2022, in CRFN 2022000268624.

8.      That the basis for naming any political subdivision, governmental agency or similar body, or the holder of a security interest in either personal property or real property, if any, is set forth as Exhibit "F", annexed hereto.

9.      Defendant Alba Carting & Demolition Inc. is made a defendant herein by virtue of its status as a possible judgment creditor, and which lien, if any, is subordinate to the lien of the Plaintiff's mortgage sought to be foreclosed herein.

10.      Defendant New York City Environmental Control Board is made a defendant herein by virtue of its status as a possible judgment creditor,

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM

INDEX NO. 850010/2024

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 9 of 111

and which lien, if any, is subordinate to the lien of the Plaintiff's mortgage sought to be foreclosed herein.

11.    That at the time this proceeding is commenced, Plaintiff is the holder and owner of the subject mortgage and note and has complied with Banking Law Section 595-a and 6-l or 6-m, if applicable. **Furthermore, this loan is not subject to any legislation regarding "high cost" or "sub-prime" home loans as this is a mortgage made on commercial property for investment purposes.**

12.    RPAPL sections 1304 and 1306 are inapplicable to this foreclosure action because the subject loan is not a "home loan" pursuant to RPAPL section 1304.

13.    That the said mortgage provides that the whole of said principal sum and interest shall become due, at the option of the mortgagee, upon an Event of Default, as that term is defined in the mortgage.

14.    The defendants are in default pursuant to the Note and Mortgage, by failing or omitting to make the installment payment due on October 1, 2023, and for each month thereafter, and, as such, Plaintiff has accelerated the subject Note and Mortgage.

5

15.    Prior to the commencement of this action, Plaintiff's predecessor in interest sent a notice of default, acceleration, and reservation of rights letter to the defendants.   A copy of this letter is annexed hereto as Exhibit "G".

16.    That there is now justly due to plaintiff upon said mortgage note and mortgage, the principal sum of $3,800,000.00 with note rate interest, default rate interest, unpaid legal fees, and any additional fees and charges payable to plaintiff pursuant to the loan documents.

17.    That no other action or proceeding at law, in equity or otherwise has been had or taken for the recovery of the whole or any part of the principal sum, and interest, or either of them secured by said mortgage note and mortgage.

18.    That the defendants and each of them claim to have or may have some interest in or lien or claim upon the lands and premises covered by said mortgage, or some part thereof, but that said interest, lien, or claim, if any, have accrued subsequent to such mortgage and are and each of them is subject and subordinate thereto.

19.    That plaintiff may be required to make payments for taxes, insurance and possibly for securing and safeguarding the premises, after the commencement of this action, and accordingly asks that the sums expended by plaintiff for taxes, assessments, water rates, fire insurance premiums and other disbursements to protect the premises against vandalism or to protect plaintiff's equity or lien be allowed to plaintiff, as per the terms of the mortgage herein being foreclosed.

20.    That upon information and belief, any of the defendants who are corporations are authorized to do business in the State of New York.

21.    That the premises affected by and described in said mortgage is as follows:

See "Schedule A" annexed hereto as Exhibit "H"

22.    That the mortgaged premises herein being foreclosed are so situated that a sale thereof in one parcel would be advantageous to all interested persons; and that said mortgaged premises should be sold subject to any state of facts that an accurate survey may show; subject to covenants, restrictions, easements, rights of way and reservations and/or

7

instruments and agreements of record prior to the recording of said mortgage; to zoning regulations and restrictions and any amendments thereto; to orders and/or notices of violations, if any, filed in Municipal, State or U. S. Governmental Departments and to conditional bills of sale, contracts, and/or financing statements of record, if any; and also subject to rights, if any, of tenants, sub-tenants, co-tenants and persons in possession of the premises not barred by this action to the extent only that said rights may be controlling under provision of the local New York State Emergency Rent-Control Law; and subject to liens in favor of The City of New York pursuant to the Administrative Code of the City of New York, which may be attached, but not yet filed with the County Clerk.   Also subject to chattel mortgages; all physical conditions that the premises are in at the time of sale and/or closing; Uniform Commercial Code Financing Statements of Record; Unsafe Building Notices and Liens; Emergency Repair Notices and Liens; vault charges and pest control liens; sales tax notices and liens; sidewalk assessments, fire prevention inspection liens and fire prevention fees, real estate taxes, school taxes, town taxes, and any other municipal charges, if any, water meter charges, sewer meter charges and prior unpaid common charges or notice of liens for unpaid common charges, if any, and subject to the right of the UNITED STATES

8

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 2
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
RECEIVED NYSCEF: 01/11/2024
Pg 13 of 111

OF AMERICA to redeem within one year from the date of sale and/or the right of the INTERNAL REVENUE SERVICE to redeem within 120 days from the date of sale, where applicable; and subject to prior mortgages, if any, as reduced with the interest thereon.

**WHEREFORE**, plaintiff demands judgment that the defendants and each and all of them and all persons claiming under them or any of them be forever barred and foreclosed of all right, title, interest, claim lien and equity of redemption in the said premises, and that the said mortgaged premises be decreed to be sold according to law, and as one parcel, subject to the provisions of Paragraph "22" herein, and that out of the money arising from the sale thereof, the plaintiff may be paid the amount due on said mortgage note and mortgage, with  interest and default interest pursuant thereto, together with the legal fees, costs and disbursements of this action, plus the advance for taxes and insurance or other advances hereafter paid or incurred by the plaintiff for the protection of the buildings on said mortgaged premises, with interest from the date of any such payment, and that 146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC, 146 E 89 Borrower 3 LLC, Jeffrey Simpson and Jared Chassen,  and  may be adjudged to pay any deficiency remaining after the application of the moneys as aforesaid,

9

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 14 of 111

where applicable; and that the plaintiff may have such other or further relief,

or both, as to the Court may deem just and proper.

Dated:          Whitestone, New York
                January 11, 2024

                        Borchert & LaSpina, P.C.

                        By: */s/ Jason Sackoor*
                            Jason Sackoor, Esq.
                        *Attorneys for Plaintiff*
                        19-02 Whitestone Expressway, Suite 302
                        Whitestone, New York 11357
                        (718) 767-3333

10

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 2
24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 15 of 111
INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

## VERIFICATION

_Doris Shen_____, being duly sworn, deposes and says:

I am (a/an/the) ___Asset Manager___ of 146 89 Funding LLC, the plaintiff herein ("Plaintiff"). I am authorized to sign this affidavit on behalf of Plaintiff. I have personal knowledge of the matters set forth herein based on my review of the note, mortgage and other loan documents related to this action and of business records of Plaintiff related thereto, which records were made at or near the time of the event described therein by, or from information transmitted by, a person with knowledge of the event described therein. Such business records are kept in the ordinary course of the regularly conducted business activity of such person and/or Plaintiff, and it is the regular practice of Plaintiff to make and keep such business records.

I affirm this _10_ day of _January_, 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

By: _Doris Shen_

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 16 of 111

# EXHIBIT A

Loan Number ███████

## FIRST MORTGAGE NOTE

$3,800,000.00                                          East Meadow, New York
                                                       June 28, 2022

**FOR VALUE RECEIVED,** the undersigned, **146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC,** each a New York limited liability company and each having an office c/o Arch Companies at 88 University Place, 11th Floor, New York, New York 10003 (collectively, the "**Borrower**") hereby jointly and severally promise to pay to the order of **CONNECTONE BANK**, a New Jersey banking corporation, or to its successors or assigns (the "**Lender**"), at 301 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, or at such other place as Lender may designate to Borrower from time to time in writing, the principal amount of **THREE MILLION EIGHT HUNDRED THOUSAND AND 00/100 ($3,800,000.00) DOLLARS** (the "**Principal Amount**"), in legal tender of the United States, on July 1, 2025 (the "**Maturity Date**"), together with all accrued and unpaid interest thereon.

1.     **Interest Rate.**

       This Note shall bear interest at the rate equal to the greater of (i) **five and one-half (5.50%) percent per annum** or (ii) the WSJ Prime Rate plus seventy-five (75) basis points (the "**Interest Rate**"). "**WSJ Prime Rate**" shall mean the rate of interest published in The Wall Street Journal from time to time as the "Prime Rate". If more than one "Prime Rate" is published in The Wall Street Journal for a day, the average of such "Prime Rates" shall be used, and such average shall be rounded up to the nearest 1/100th of one percent (0.01%). If The Wall Street Journal ceases to publish the "Prime Rate," Lender shall select an equivalent publication that publishes such "Prime Rate," and if such "Prime Rates" are no longer generally published or are limited, regulated or administered by a governmental or quasigovernmental body, then Lender shall select a comparable interest rate index. Interest shall accrue on (i) the Initial Advance (as hereinafter defined), commencing on the date hereof and (ii) the Additional Advance (as hereinafter defined), commencing on the date the Additional Advance is made.

1.1.     **Advances.**

       A.     The Principal Amount of this Note shall be disbursed to Borrower in two (2) advances (each an "**Advance**" and collectively, the "**Advances**"). On the Date of this Note, Lender shall make an advance in the principal amount of $3,120,000.00 to Borrower (the "**Initial Advance**").

       B.     On the day that is thirty (30) days after the date of this Note, Lender shall make an advance of the balance of the Principal Amount in the amount of Six Hundred Eighty Thousand and 00/100 ($680,000.00) Dollars (the "**Additional Advance**"). Lender shall not be under any obligation to make the Additional Advance to Borrower until the Advance Conditions are satisfied.

       C.     The "**Advance Conditions**" shall mean:
              (i) No Event of Default (as defined in the **Mortgage** (as hereinafter defined)) shall have occurred and be continuing; and
              (ii) Lender has received (a) a continuation of title to the date of the disbursement of the Additional Advance, showing title to the **Mortgaged Property** (as hereinafter defined) vested in Borrower and no exception to the title or the lien of the Mortgage exists other than those contained in

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 3
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 18 of 111
INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

Loan Number: ▉▉▉▉▉▉

the title policy issued to Lender on the date hereof and such other matters as Lender has approved in its sole discretion and (b) a down-date endorsement to the title policy issued to Lender on the date hereof to the date of the Additional Advance. The cost of such continuation and down-date endorsement shall be paid by Borrower; and

(iii)  The Additional Advance shall be deposited into a deposit account in the name of Borrower, maintained at Lender; and

(iv)  Borrower may draw on the Additional Advance upon written notice to Lender from time to time at Buyer's discretion, subject to the terms and conditions of that certain Deposit Account Pledge Agreement between Borrower (as Pledgor thereunder) and Lender (as Bank thereunder) dated as of the date of the Additional Advance.

2.    **Monthly Payments.**

On the date hereof, Borrower shall make a single payment of interest only at the Interest Rate covering interest due hereunder from the date of this Note through June 30, 2022, inclusive. Commencing on August 1, 2022, and monthly thereafter on the first (1st) day of each month to and including the Maturity Date, Borrower shall make constant monthly payments (each a "**Monthly Payment**" and collectively, the "**Monthly Payments**") of interest only, in arrears, at the Interest Rate on the unpaid principal balance of the Principal Amount. The balance of principal then remaining unpaid shall become due and payable with any accrued interest remaining unpaid on the Maturity Date. All interest due hereunder shall be calculated and applied based upon the actual number of days elapsed over a 360-day year.

3.    **Automatic Debit.**

Time is of the essence as to all payment dates set forth herein. All Monthly Payments due hereunder shall first be drawn by Lender from Account #103819320 and, after Account #103819320 is depleted, shall be made directly to Lender by automatic debit from Borrower's designated account maintained at Lender and Borrower hereby unconditionally and irrevocably authorizes Lender to automatically debit the Monthly Payments from account #103229809 (the "**Auto-debit Account**"). The Monthly Payments are due on the first (1st) day of each month (the "**Auto-debit Date**"), provided, however, that whenever any payment (including, but not limited to the Monthly Payments) required to be made hereunder shall be stated to be due on a Saturday, Sunday, public holiday or the equivalent for banks generally under the laws of the State of New York (any other day being a "**Business Day**"), such payment may be made or shall be debited on the next succeeding Business Day.

4.    **Late Payment Charge.**

If any Monthly Payment is not paid in full within fifteen (15) days after the date on which it is due or is not able to be automatically debited on the Auto-debit Date ("**Monthly Payment Grace Period**"), Borrower shall pay to Lender, upon demand, a late payment charge ("**Late Payment Charge**") equal to five (5%) percent of such unpaid Monthly Payment to defray the expense incurred by Lender in handling and processing such delinquent payment and such amount shall be deemed to be secured by the Mortgage. The Late Payment Charge shall not apply to the payment of principal due on the Maturity Date.

If the balance of collected and available funds in the Auto-debit Account on the Auto-debit Date is less than the amount of the scheduled Monthly Payment, a Late Payment Charge shall be applied, notwithstanding any overdraft protection feature associated with the Auto-debit Account, which

Loan Number ▮▮▮▮▮▮

overdraft protection feature may not be used to make up for a shortfall to pay Monthly Payments. In such a case, the Auto-debit Account may not be charged for such Monthly Payment and Borrower shall remain responsible for same plus the Late Payment Charge and any overdraft fees that may apply.

5.    **Account Balance Requirement.**

At all times hereunder, Borrower, Jeffrey Simpson ("**Simpson**"), and Jared Chassen ("**Chassen**", together with Simpson, collectively, "**Guarantor**") shall collectively maintain an account with Lender ("**Required Account**") with a balance of at least five percent (5%) of the unpaid principal balance of the Principal Amount (the "**Minimum Balance**") on a quarterly average. Any balance in the Payment Reserve Account shall not be included in the calculation of the Minimum Balance. Borrower shall use best efforts to maintain the Minimum Balance in the Required Account, and the failure to do so within fifteen (15) days after written notice from Lender may result in the Interest Rate increasing by one hundred (100) basis points in the Lender's discretion during the period that Borrower fails to maintain the Minimum Balance in the Required Account.

6.    **Security for this Note.**

This Note is secured by, among other things, a First Mortgage and Security Agreement in the Principal Amount (hereinafter, the "**Mortgage**") encumbering certain real property located at 146 East 89th Street, New York, New York (the "**Mortgaged Property**"). The Mortgage specifies various defaults and Events of Default upon the happening of which all sums owing on this Note may, at the option of Lender, be declared immediately due and payable.

7.    **Events of Default; Default Rate.**

In the event of (i) an Event of Default under the Mortgage or any default by Borrower in its obligations under this Note and/or any of the documents securing payment of the Principal Amount which remains uncured after any applicable written notice, or (ii) if the principal indebtedness is declared immediately due and payable by Lender pursuant to the provisions of this Note or the Mortgage, or (iii) if the Principal Amount then remaining unpaid is not paid in full on the Maturity Date, THEN, in addition to any Late Payment Charge which may be due, Borrower shall thereafter pay interest at a rate equal to twenty-four (24.00%) percent per annum (the "**Default Rate**") on the Principal Amount then outstanding from the date of such default, Event of Default, or from the Maturity Date, until the date on which the Principal Amount then outstanding, together with all other amounts due under this Note and the Mortgage are paid in full; provided, however, that the Default Rate shall in no event exceed the maximum rate which Borrower may pay by law.

8.    **Maximum Rate.**

This Note is subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the Principal Amount due hereunder at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by law to contract or agree to pay. If by the terms of this Note Borrower is at any time required or obligated to pay interest on the Principal Amount or any other sums due hereunder at a rate in excess of such maximum rate, the rate of interest under this Note and/or the Mortgage shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the

Loan Number ▉▉▉▉▉▉

maximum rate shall be deemed to have been payments toward the reduction of principal and not to the interest due hereunder.

9. **Right of Set Off.**

Borrower hereby pledges and grants to Lender a continuing lien, security interest and right of setoff as security for all liabilities and obligations to Lender, whether now existing or hereafter arising upon and against all of Borrower's Accounts (as defined in the Mortgage) and the monies contained therein, certificates of deposit, credits and/or any other instruments or securities in the name of Borrower and in the possession, custody, safekeeping or control of Lender, its successors and/or assigns or in transit to any of them (collectively, the "**Set off Accounts**"). Lender shall have the right to set off, without notice to Borrower, against any liability or obligation of Borrower, including but not limited to interest, principal, tax and insurance escrows, fees or other charges due in connection with this Note or the Mortgage from the Set off Accounts. ANY AND ALL RIGHTS TO REQUIRE PAYEE TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE OBLIGATIONS, PRIOR TO EXERCISING ITS RIGHT OF SET OFF, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

10. **Joint and Several Obligations.**

This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns. If any payment under this Note is not made when due, Borrower agrees to pay all costs of collection when incurred, including reasonable attorneys' fees (which costs shall be added to the amount due under this Note and shall be receivable therewith).

11. **Costs of Collection.**

In the event the Principal Amount or any part thereof shall be collected at law or in equity, or in bankruptcy, receivership or any other court proceedings (whether at trial or at the appellate level) or in the event this Note shall be placed in the hands of attorneys for collection upon default, Borrower shall pay, in addition to other items provided hereunder, all reasonable actual costs of collection or attempting to collect the amount of this Note, including reasonable attorneys' fees and expenses.

12. **Acceleration; Incorporation by Reference.**

It is hereby expressly agreed that the Principal Amount shall become due at the option of the holder hereof on the happening of any Event of Default or any other event by which, under the terms of the Mortgage, said Principal Amount may or shall become due and payable; also, that all of the covenants, conditions and agreements contained in the Mortgage are hereby made part of this instrument.

13. **Waiver of Presentment.**

All parties to this Note, whether Borrower, principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, protest, notice of protest, notice of dishonor and all other notices in connection with this Note.

Loan Number ▮▮▮▮▮▮▮

14. **No Oral Modification.**

This Note may not be changed, extended or modified nor may any term or provision hereof be waived, except by an instrument in writing by Borrower and Lender.

15. **Right to Assign or Participate.**

Lender shall be entitled to assign (or permits others to participate in) all or any portion of its interest in this Note and/or the Mortgage at its sole discretion without notice to Borrower, provided that Borrower shall continue to make payments required hereunder to Lender until it has received notice of change of address for payments as provided herein.

16. **Judicial Waiver.**

Borrower hereby expressly and unconditionally waives, in connection with any suit, action or proceeding brought by Lender on this Note, any and every right it may have to (i) injunctive relief, (ii) a trial by jury, (iii) interpose any counterclaim therein (other than compulsory counterclaims) and (iv) have the same consolidated with any other or separate suit, action or proceeding. Nothing herein contained shall prevent or prohibit Borrower from instituting or maintaining a separate action against Lender with respect to any asserted claim.

17. **Governing Law; Jurisdiction.**

This Note and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law). Borrower hereby irrevocably submits to the nonexclusive jurisdiction of any court within New York State sitting in New York County (and any county in New York State where any portion of the Mortgaged Property is situated) over any suit, action or proceeding arising out of or relating to this Note, and Borrower hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding brought in any such court in New York State having jurisdiction may be made by certified or registered mail, return receipt requested, directed to Borrower at the address indicated above, and service so made shall be complete five (5) Business Days after the same shall have been so mailed.

18. **Notices.**

All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by certified mail, return receipt requested or overnight mail by a nationally recognized courier, at each party's address above stated, or at such other address which a party shall have notified the other party in writing pursuant to the requirements herein. Any written notice sent by certified mail, return receipt requested shall be deemed to have been served five (5) days after the date the same is mailed in accordance with the foregoing provisions. Notice sent by overnight carrier shall be deemed to have been served one (1) Business Day after the date same is mailed.

[NO FURTHER TEXT ON THIS PAGE]

**[Signature Page to First Mortgage Note]**

**IN WITNESS WHEREOF**, Borrower has duly executed this Note as of the date first set forth above.

**146 E 89 BORROWER 1 LLC**
By:     **JJ ARCH LLC**
         **Its Managing Member**

By:     _____
         **JARED CHASSEN**
         **Authorized Signatory**

**146 E 89 BORROWER 2 LLC**
By:     **JJ ARCH LLC**
         **Its Manager**

By:     _____
         **JARED CHASSEN**
         **Authorized Signatory**

**146 E 89 BORROWER 3 LLC**
By:     **JJ ARCH LLC**
         **Its Manager**

By:     _____
         **JARED CHASSEN**
         **Authorized Signatory**

STATE OF NEW YORK    }
                     } ss:
COUNTY OF ___NY___   }

     On the 27th day of June , in the year 2022, before me, the undersigned, a Notary Public in and for said State,  personally appeared JARED CHASSEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

SCOTT STERNBERG
NOTARY
NO. 01ST6427070
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
12-20-2025
PUBLIC
STATE OF NEW YORK

## ALLONGE

THIS ALLONGE, dated November 17, 2023, is made to that certain First Mortgage Note dated as of June 28, 2022, in the original principal amount of $3,800,000.00 made by 146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC and 146 E 89 Borrower 3 LLC to ConnectOne Bank.

Pay to the order of 146 89 Funding LLC, a New York limited liability company, without recourse or representation or warranty, express, implied or by operation of law, of any kind and nature whatsoever.


[THE REMAINDER OF THIS PAGE WAS LEFT BLANK INTENTIONALLY]

**[SIGNATURE PAGE TO ALLONGE]**

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 3
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
RECEIVED NYSCEF: 01/11/2024
Pg 25 of 111

CONNECTONE BANK

By: _____
Name:  William Tierney
Title:  Senior Vice President

**[SIGNATURE PAGE TO ALLONGE]**

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM

NYSCEF DOC. NO: 4

INDEX NO. 850010/2024

RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 26 of 111

# EXHIBIT B

**FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM**
NYSCEF DOC. NO. 4

INDEX NO. 850010/2024

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 27 of 111

RECEIVED NYSCEF: 01/11/2024

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2022062900904002001E2E4B

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 46 |
|---|---|

| Document ID: 2022062900904002 | Document Date: 06-28-2022 | Preparation Date: 06-29-2022 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 44

**PRESENTER:**
GOTHAM ABSTRACT & SETTLEMENT, LLC
622 THIRD AVENUE, SUITE 3801
GA-2974-NY-22
NEW YORK, NY 10017
212-767-0707
RECORDINGS@GOTHAMABSTRACT.COM

**RETURN TO:**
GOTHAM ABSTRACT & SETTLEMENT, LLC
622 THIRD AVENUE, SUITE 3801
GA-2974-NY-22
NEW YORK, NY 10017
212-767-0707
RECORDINGS@GOTHAMABSTRACT.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1517 | 149 | Entire Lot | 146 EAST 89TH STREET |

Property Type: APARTMENT BUILDING

### CROSS REFERENCE DATA

CRFN_____ *or* DocumentID_____ *or* _____ Year_____ Reel_____ Page_____ *or* File Number_____

### PARTIES

**MORTGAGOR/BORROWER:**
146 E 89 BORROWER 1 LLC
146 EAST 89TH STREET
NEW YORK, NY 10128

**MORTGAGEE/LENDER:**
CONNECTONE BANK
301 SYLVAN AVENUE
ENGLEWOOD CLIFFS, NJ 07632

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 3,800,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 3,800,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 19,000.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 42,750.00 | | $ | 0.00 |
| Spec (Additional): | $ | 9,500.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 11,400.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 23,750.00 | Recorded/Filed | 07-07-2022 10:16 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 106,400.00 | | 2022000268625 | |
| Recording Fee: | $ | 257.00 | | | |
| Affidavit Fee: | $ | 0.00 | *Annette M Hill* | | |

*City Register Official Signature*

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 4

INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 28 of 111



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2022062900904002001C2CCB

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 46 |
|---|---|

**Document ID:** 2022062900904002    Document Date: 06-28-2022    Preparation Date: 06-29-2022
Document Type: MORTGAGE

---

**PARTIES**

**MORTGAGOR/BORROWER:**
146 E 89 BORROWER 2 LLC
146 EAST 89TH STREET
NEW YORK, NY 10128

**MORTGAGOR/BORROWER:**
146 E 89 BORROWER 3 LLC
146 EAST 89TH STREET
NEW YORK, NY 10128

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 29 of 111

Loan Number ▆▆▆▆▆

## FIRST MORTGAGE AND SECURITY AGREEMENT

Date: June 28, 2022

-given by -

### 146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC

- to -

### CONNECTONE BANK

TAX MAP DESIGNATION OF THE PREMISES ENCUMBERED HEREBY:

|  |  |
|---|---|
| Block: | 1517 |
| Lot: | 149 |
| County: | New York |

**Premises Address:** **146 East 89th Street, New York, New York**

**Record and Return to:**

CONNECTONE BANK
Attn: Takisha Allen
Loan Operations Specialist
2455 Morris Avenue
Union, NJ 07083

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 4

INDEX NO. 850010/2024

RECEIVED NYSCEF: 01/11/2024

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 30 of 111

Loan Number █████████

## INDEX

| | |
|---|---|
| **SECTION 1.01** | **Representations and Warranties of Mortgagor** |
| **SECTION 1.02.** | **(A) Debt;** |
| | **(B) Payment of the Debt** |
| **SECTION 1.03.** | **Warranty of Title** |
| **SECTION 1.04.** | **(A) Payment of Taxes** |
| | **(B) Tax and Insurance Reserve Escrow Deposit** |
| | **(C) Disbursement of Tax and Insurance Reserve; Reimbursement for Deficiency** |
| **SECTION 1.05.** | **(A) Insurance Coverage** |
| | **(B) Insurance Policies** |
| | **(C) Casualty** |
| **SECTION 1.06.** | **Reporting Requirements; Financial Statements** |
| **SECTION 1.07.** | **(A) Due on Sale; Restrictions on Further Encumbrances** |
| | **(B) Restrictions on Sales and Transfers of Interests in Mortgagor** |
| | **(C) Replacement Guarantor** |
| | **(D) Anti-Money Laundering and Economic Sanctions** |
| **SECTION 1.08.** | **Leases and Leasing of the Mortgaged Property** |
| **SECTION 1.09.** | **Statement Pursuant to §13 of the New York Lien Law** |
| **SECTION 1.10.** | **(A) Waste** |
| | **(B) Right of Entry; Inspection** |
| **SECTION 1.11.** | **Condemnation** |
| **SECTION 1.12.** | **Further Assurances; Compliance** |
| **SECTION 1.13.** | **(A) Evidence and Perfection of Lien** |
| | **(B) Payment of Fees** |
| **SECTION 1.14.** | **Protective Advances** |
| **SECTION 1.15.** | **Mechanic's Liens** |
| **SECTION 1.16** | **Obligation to Defend** |
| **SECTION 1.17.** | **Changes in Laws Regarding Taxation** |
| **SECTION 1.18.** | **Compliance with Laws** |
| **SECTION 1.19.** | **Environmental Compliance and Indemnity** |
| **SECTION 1.20.** | **Account Requirements** |

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 4
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 31 of 111
INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

Loan Number ▆▆▆▆▆

SECTION 1.21.  Indemnification

SECTION 1.22   Financial Covenants

        (A) Debt Service Coverage Ratio

        (B) Loan to Value

SECTION 1.23   Special Purpose Entity Requirements

SECTION 1.24   Beneficial Ownership

SECTION 2.01.  Events of Default

        (I) Interest Rate After Event of Default

        (II) Ability to Accelerate Due Date of Debt

        (III) Right of Entry; Receiver

        (IV) Foreclosure; Specific Performance

SECTION 2.02.  Foreclosure Sale; Adjournment; Execution of Instruments; Application of Proceeds

SECTION 2.03.  Payments upon Default; Enforcement; Recovery of Judgment

SECTION 2.04.  Appointment of Receiver

SECTION 2.05.  Retention of Possession and Control

SECTION 2.06.  Cumulative Remedies

SECTION 2.07.  Mortgagor's Waiver of Stay

SECTION 2.08.  Payment for Occupancy; Surrender of Possession

SECTION 2.09.  No Liability for Failure to Act or Loss to Mortgagor

SECTION 3.01.  Severability

SECTION 3.02.  Notices

SECTION 3.03.  Covenants Run with Land; Successors and Assigns

SECTION 3.04.  Usury

SECTION 3.05.  Counterparts

SECTION 3.06.  Statement Pursuant to §254 of New York Real Property Law

SECTION 3.07.  Mortgagee's Right to Sell, Participate

SECTION 3.08.  Modification in Writing

SECTION 3.09.  Security Agreement

SECTION 3.10.  Time of the Essence

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM        INDEX NO. 850010/2024
NYSCEF DOC. NO. 4        24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1        RECEIVED NYSCEF: 01/11/2024

Pg 32 of 111

Loan Number ▮▮▮▮

| SECTION 3.11. | Severance of Lien |
| SECTION 3.12. | Statement Pursuant to §253-1a of New York State Tax Law |
| SECTION 3.13. | Waiver of Jury Trial |
| SECTION 3.14. | Other Judicial Waivers |
| SECTION 3.15. | Governing Law; Venue |
| SECTION 3.16. | Nature of Relationship Limited |
| SECTION 3.17. | Right of Set Off |
| SECTION 3.18. | Future Assignment of this Agreement |
| SECTION 3.19. | Interpretation of Provisions |
| SECTION 3.20. | Paragraph Headings |
| SECTION 3.21. | Tenants in Common |
| SECTION 3.22. | Additional Suretyship Waivers |

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM    INDEX NO. 850010/2024
NYSCEF DOC. NO. 4    24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1    RECEIVED NYSCEF: 01/11/2024

Pg 33 of 111

Loan Number ▮▮▮▮▮▮

This FIRST MORTGAGE AND SECURITY AGREEMENT (the **"Mortgage"**) is made as of the 28th day of June, 2022, by **146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC, as tenants in common,** each a New York limited liability company and each having an office c/o Arch Companies at 88 University Place, 11th Floor, New York, New York 10003 (collectively, the **"Mortgagor"**), to **CONNECTONE BANK,** having an address at 301 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 (the "**Mortgagee**").

## W I T N E S S E T H :

**WHEREAS,** Mortgagor is the fee simple owner of the parcel of real property located at and known as 146 East 89th Street, New York, New York (the **"Land"**) and more particularly described by metes and bounds in Schedule A attached hereto; and

**WHEREAS,** Mortgagor is indebted to Mortgagee in the principal amount of **THREE MILLION EIGHT HUNDRED THOUSAND AND 00/100 ($3,800,000.00) DOLLARS** (as such sum may reduced from time to time, together with the interest due thereon, hereinafter collectively referred to as the **"Principal Amount"**), lawful money of the United States of America, with interest thereon; and

**WHEREAS,** as evidence of the Principal Amount, Mortgagor has executed a First Mortgage Note in the amount thereof of even date herewith (the "**Note**"), to evidence and obligate the Mortgagor to repay the Debt (as hereinafter defined); and

**WHEREAS,** to further secure repayment of the Note, Mortgagee requires that it receive from Mortgagor, *inter alia,* certain collateral, including but not limited to, a first mortgage encumbering the Mortgaged Property (as hereinafter defined).

**NOW, THEREFORE,** in consideration of the premises and other covenants herein contained, Mortgagor hereby gives, grants, bargains, sells, warrants, alienates, demises, releases, conveys, assigns, transfers, mortgages, hypothecates, deposits, pledges, sets over and confers unto Mortgagee, and grants Mortgagee a security interest in all of its estate, right, title and interest in, to and under any and all of the following property described in paragraphs (i) through (xii) below (collectively, the **"Mortgaged Property"**) whether now owned or held or hereafter acquired:

(i)      the Land plus any air rights, easements, privileges, royalties, rights and appurtenances hereunto belonging or in any way appertaining, and all of the estate, right, title, interest, claim or demand whatsoever of Mortgagor therein and in the streets and ways adjacent thereto, either at law or in equity, in possession or expectancy, now or hereafter acquired and including the land surface and the entire subsurface of soil, sand, gravel, stone and rock, all surface water and subsurface water, whether flowing or stagnant, and the ambient air (collectively, the **"Premises"**); and

(ii)      all improvements, structures or buildings and replacements thereof now or hereafter erected on the Premises including equipment and fixtures attached thereto and owned by Mortgagor (collectively, the **"Improvements"**); and

(iii)      all chattels at the Premises owned by Mortgagor including all fixtures, fittings, appliances, apparatus, equipment, computers, machinery and articles of personal property and

7756860.3

replacements thereof, other than those owned or leased by Lessees (as hereinafter defined), now or at any time hereafter affixed to, attached to, placed upon, or used in any way in connection with the complete and use, enjoyment, occupancy or operation of the Improvements (collectively, the "**Chattels**"); and

(iv)    all proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards and any unearned premiums accrued, accruing or to accrue under any and all insurance policies now or hereafter obtained by Mortgagor, and all rights of Mortgagor to refunds of real estate taxes and assessments; and

(v)    all leases, subleases, lettings, licenses, occupancy agreements, contracts or agreements of any kind pertaining to the Premises and the Improvements or any part thereof now or hereafter entered into (each a "**Lease**" and collectively, the "**Leases**") and all right, title and interest of Mortgagor thereunder, including, without limitation: (a) cash, letters of credit or other securities deposited thereunder to secure performance by the lessees, sub-lessees, licensees, occupants, users or contractors (each a "**Lessee**" and collectively, the "**Lessees**") thereof of their obligations thereunder, whether such cash, letters of credit or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms; (b) all guarantees of obligations of any Lessee; and (c) the right to receive and collect all income from any portion of the Mortgaged Property, including, but not limited to, all rents, issues, letters of credit and profits from the Leases (collectively, the "**Rents**"), all in accordance with the terms hereof and the terms of that certain Assignment of Leases and Rents of even date herewith from Mortgagor, as assignor, to Mortgagee, as assignee (the "**Assignment of Leases and Rents**"); and

(vi)    all awards heretofore made and hereafter to be made by any municipal, state or federal authorities to Mortgagor, including any awards for any changes of grade of streets affecting the Premises as the result of the exercise of the power of eminent domain (the "**Awards**"); and

(vii)    all judgments or settlement proceeds against any municipal, state or federal authorities in favor of Mortgagor, including any judgment or settlement proceeds for any government violations of the Fair Housing Amendment Act of 1988, 42 U.S.C.A.§§3601 et. al.; or the American With Disabilities Act, 42 U.S.C.A. §§ 12101 et al. involving Mortgagor and/or the Mortgaged Property; and

(viii)    all the other estate, right, title, interest, use, possession, property, claim and demand whatsoever, accounts receivable, contract rights, general intangibles, trade names, books, records and computer software related to operation of the Premises and the Improvements, actions and rights in action, relating thereto and proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing; and

(ix)    all plans, drawings, specifications, site plans, subdivision maps, sketches, contracts and agreements, however characterized from time to time prepared for use in connection with the development, redevelopment or renovation of the Premises and Improvements; and

(x)    all contracts, agreements and understandings now or hereafter entered into, relating to or involving the performance of any work, rendering of any services, and supply of any materials or the conduct of operations in and the management of the Mortgaged Property including, without limitation, construction contracts, brokerage agreements, architect agreements, management agreements, options

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM

NYSCEF DOC. NO. 4

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 35 of 111

INDEX NO. 850010/2024

RECEIVED NYSCEF: 01/11/2024

Loan Number [redacted]

and other agreements, however characterized, affecting the Premises and/or the Improvements or the public improvements required to be installed under the terms of governmental approvals relating to the Premises (collectively, the "**Contracts**"); and

(xi)    any and all permits, certificates, approvals and authorizations, however characterized, issued or in any way furnished whether necessary or not, for the operation and use of the Premises and/or the Improvements and/or any other portion thereof including, without limitation, certificates of occupancy, building permits, environmental certificates, certificates of operation, warranties and guarantees; and

(xii)    all bank accounts maintained by Mortgagor in connection with the Mortgaged Property (whether maintained with Mortgagee or any other financial or depository institution) and all the monies contained therein, including, but not limited to, the Auto-debit Account (as defined in the Note), Mortgagor's operating account (the "**Operating Account**"), all tenant security account(s) for the Mortgaged Property, subject to the rights of tenants therein (the "**Tenant Security Account**"), any interest or debt service reserve accounts and the Tax and Insurance Reserves (as hereinafter defined).

**TO HAVE AND TO HOLD** unto Mortgagee, its successors and assigns forever.

## ARTICLE I

## COVENANTS, WARRANTIES AND REPRESENTATIONS OF MORTGAGOR

SECTION 1.01.    Representations and Warranties of Mortgagor.

Mortgagor represents and warrants, that:

(a)    the information provided in the application for the **Loan** (as defined in the Note), including but not limited to contracts of sale, Contracts, Leases, schedule of Rents, credit statements, financial statements and in any other document presented to Mortgagee was true, accurate and complete in all material respects when made and remains true, accurate and complete on the date hereof in all material respects and to the best of Mortgagor's knowledge does not omit any material facts;

(b)    there has been no Material Adverse Change in the financial condition of Mortgagor or any person or entity that has executed as a guarantor that certain Guaranty of Recourse Obligations of Borrower of even date herewith (hereinafter collectively referred to as the "**Guarantor**" even if there are more than one and whether such guaranty was executed and delivered contemporaneously herewith or subsequent hereto) or in any other item therein considered by Mortgagee for the purposes of making the Loan. As used herein, "**Material Adverse Change**" shall mean a material adverse effect on (i) the Mortgaged Property; (ii) the business, profits, prospects, management, operations or condition (financial or otherwise) of Mortgagor, Guarantor or the Mortgaged Property; (iii) the enforceability, validity, perfection or priority of the lien of this Mortgage or the other Loan Documents or (iv) the ability of Mortgagor and/or Guarantor to perform its obligations under this Mortgage or the other Loan Documents;

(c)    no insolvency or bankruptcy proceedings are pending against (i) Mortgagor, (ii) any Guarantor, (iii) any shareholders of Mortgagor if Mortgagor is a corporation, (iv) any of the partners of

7756860.3

Loan Number

Mortgagor if Mortgagor is a general partnership or limited partnership, or (v) any members of Mortgagor if Mortgagor is a limited liability company;

(d)　　　Mortgagor is the record and beneficial owner and holder of marketable title to an indefeasible fee simple estate in the Premises and Improvements, subject to no lien, charge or encumbrance other than any permitted exceptions appearing in the policy of title insurance insuring the lien of this Mortgage on the date hereof;

(e)　　　Mortgagor is the owner of the Chattels free and clear of all liens;

(f)　　　to the best of Mortgagor's knowledge, there has been no material adverse change in the condition of the Mortgaged Property since the date of application for the Loan;

(g)　　　Mortgagor is duly organized, validly existing under the laws of the State of New York and has full power and lawful authority to carry on its business as currently conducted, to borrow the Debt and to encumber the Mortgaged Property to the full extent contemplated under this Mortgage;

(h)　　　the execution and delivery of this Mortgage has been duly authorized by all necessary action on the part of Mortgagor and does not require the consent of any other party;

(i)　　　the provisions of this Mortgage will not result in the default by Mortgagor of any of the terms, conditions or provisions of any law, regulation, order, writ, injunction or decree of any court or governmental authority having jurisdiction over the Mortgaged Property or any agreement or instrument to which Mortgagor is a party;

(j)　　　to the best of Mortgagor's knowledge and except as disclosed to Mortgagee in the certificate and report of title of First American Title Insurance Company, Mortgagor and the Mortgaged Property are in compliance with all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorization, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers which may, as of the date of this Mortgage or thereafter, affect the Mortgaged Property or any part thereof or its use or condition, or which may affect any adjoining sidewalks, curbs, vaults and vault space if any, or streets or ways in so far as Mortgagor is required to comply therewith;

(k)　　　the Mortgaged Property has all necessary licenses, authorities, permits and approvals, including certificates of occupancy, certificates of compliance or certificates of use to operate the Improvements, including, but not limited to, electricity, water drainage, and sewer in compliance with all applicable laws and regulations;

(l)　　　there are no actions, suits or proceedings (including, but not limited to, government or regulatory investigations or proceedings) pending or threatened against the Mortgaged Property, the result of which is likely to have a materially adverse effect upon the Mortgaged Property;

(m)　　　there are no actions, suits or proceedings (including, but not limited to, government or regulatory investigations or proceedings) pending or threatened against: (1) Mortgagor, or (2) any shareholders of Mortgagor, if Mortgagor is a corporation, or (3) any of the partners of Mortgagor, if Mortgagor is a general partnership or limited partnership, or (4) any members of Mortgagor, if Mortgagor is a limited liability company, the result of which is likely to have a materially adverse effect

4

Loan Number ▇▇▇▇

upon the Mortgaged Property or Mortgagor's ability to perform under the Note, this Mortgage or any other Loan Documents;

(n)     there are no actions, suits or proceedings pending or threatened against: (1) Guarantor, or (2) any shareholders of Guarantor, if Guarantor is a corporation, or (3) any of the partners of Guarantor, if Guarantor is a general partnership or limited partnership, or (4) any members of Guarantor, if Guarantor is a limited liability company, the result of which is likely to have a materially adverse effect upon the Mortgaged Property or Guarantor's ability to perform its obligations under any guaranty;

(o)     Mortgagor is the holder of the lessor's interest in the Leases and Rents, which Leases and Rents have not been transferred, pledged or encumbered in any manner;

(p)     the Leases are subordinate to the lien of this Mortgage;

(q)     Mortgagor is not in default of any of its material obligations under the Leases;

(r)     Mortgagor has not engaged any broker(s) in connection with the Loan unless such broker(s) has (have) been paid or will be paid simultaneously herewith in full pursuant to the terms of Mortgagor's contract or brokerage agreement with such broker(s); and

(s)     Mortgagor is not currently indebted to any of its shareholders or officers and any future loans made by its shareholders, officers or members to Mortgagor shall be subordinate to Mortgagor's obligations to Mortgagee.

In the event Mortgagor is purchasing the Mortgaged Property simultaneously herewith, then as to Sections 1.01(f), (j), (k), and (l), Mortgagor is making such representations (as same relate to the Mortgaged Property) to the best of its knowledge.

**SECTION 1.02.**     (A)     **The Debt.**     This Mortgage and the grants, assignments and transfers made pursuant to the terms hereof are given for the purpose of securing the payment of the following in such order of priority as Mortgagee may determine in its sole discretion (the **"Debt"**):

(1)     the Principal Amount evidenced by the Note in lawful money of the United States of America;

(2)     interest, interest at the Default Rate (as hereinafter defined), late charges and other sums, as provided in the Note, this Mortgage, or any other documents executed in connection herewith;

(3)     any prepayment charges due under the Note;

(4)     all other monies agreed or provided to be paid by Mortgagor pursuant to the Note, this Mortgage, or any other document executed in connection herewith, including, but not limited to, the Tax and Insurance Reserves;

(5)     all Protective Advances (as hereinafter defined); and

7756860.3

Loan Number ▮▮▮▮▮▮

(6)     all sums advanced, and costs and expenses incurred by Mortgagee in connection with the Debt or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Mortgagor or Mortgagee.

**(B)     Payment of the Debt.**     Mortgagor will punctually pay the Debt and all other sums due in connection herewith and therewith in accordance with the terms of the Note (as same may be extended, modified and/or restated) and this Mortgage.

**SECTION 1.03.     Warranty of Title.**     Mortgagor will preserve the state and condition of the fee title to the Mortgaged Property and will forever warrant and defend the same to Mortgagee, and Mortgagor will forever warrant and defend the validity and priority of the lien of this Mortgage against the claims of all persons and parties whomsoever.

**SECTION 1.04.     (A)     Payment of Taxes.**     Mortgagor will timely pay and discharge all taxes of every kind and nature (including but not limited to real estate taxes, water and sewer taxes, Business Improvement District (BID) taxes, and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and charges, and all other public charges whether of a like or different nature, imposed upon or assessed against it or the Mortgaged Property or any part thereof or upon the revenues, rents, issues, income and profits of the Mortgaged Property or arising in respect of the occupancy, use or possession thereof (collectively, the "**Taxes**"). Upon Mortgagee's request, Mortgagor will, within thirty (30) days after the due date of any installment of any imposition, deliver to Mortgagee, receipts evidencing the payment of all Taxes.

(B)     **Tax and Insurance Reserve Escrow Deposit.**     Mortgagor     shall     deposit     with Mortgagee such amounts as Mortgagee shall determine to be necessary to establish a reserve only for payment of real estate taxes and the insurance premiums payable under Section 1.05(A) below. The deposits shall collectively be referred to as the "**Tax and Insurance Reserves.**" In connection therewith, Mortgagee shall require the deposit by Mortgagor, at the time of each payment of any installment of interest and/or principal under the Note (and/or periodically during the term of this Mortgage), of an additional amount sufficient to discharge such obligations thirty (30) days before same become due. The determination of the amounts payable and of the amount to be deposited with Mortgagee, so that the aggregate of such deposits shall be sufficient for this purpose, shall be made by Mortgagee in its reasonable discretion and may include additional amounts to be held and future adjustments to be made according to projected tax rate increases and inflation factors. On the date hereof, Mortgagee has waived the requirement for an insurance escrow and shall permit Mortgagor to pay its own casualty and liability insurance during the term of this Mortgage. Notwithstanding Mortgagee's waiver of the insurance escrow requirement as set forth above, it hereby reserves the right to reinstitute same at any time during the term of this Mortgage if (1) it reasonably believes it is prudent to do so in order to protect its interests or (2) after the occurrence of any Event of Default (as hereinafter defined). Notwithstanding the foregoing, flood insurance, if required, must be escrowed with Mortgagee.

(C)     **Disbursement of Tax and Insurance Reserve; Reimbursement of Deficiency.**     The Tax and Insurance Reserves shall be held by Mortgagee without interest and may be co-mingled with Mortgagee's general funds and shall be disbursed by Mortgagee for the payment of the obligations of Mortgagor in subparagraph 1.04(B) above (the "**Obligations**") on or before their respective due dates.

7756860.3

Loan Number

If thirty (30) days prior to the due date of any of the Obligations the amounts then on deposit with Mortgagee therefor shall be insufficient for the payment thereof, within ten (10) days after demand, Mortgagor shall deposit the amount of any deficiency in the Tax and Insurance Reserves with Mortgagee. Notwithstanding the provisions of this subparagraph 1.04(C), after an Event of Default hereunder Mortgagee may elect to apply the Tax and Insurance Reserves to any amounts which may be due and owing under the Note and/or this Mortgage.

**SECTION 1.05.**     **Insurance Coverage; Insurance Policies and Casualty**

(A) **Insurance Coverage**. Mortgagor, at its sole cost, for the mutual benefit of Mortgagor and Mortgagee, shall obtain and maintain during the term of this Mortgage the following policies of insurance:

(1)     Property insurance insuring against loss or damage customarily included under so called "special causes of loss" form policies on an open perils basis including fire, lightning, vandalism, and malicious mischief, boiler and machinery and, if required by Mortgagee, flood and/or earthquake coverage and such other insurable hazards as, under good insurance practices, from time to time are insured against for other property and buildings similar to the Mortgaged Property in nature, use, location, height, and type of construction (but in any such case without exclusion for damage caused by acts of terrorism). Such insurance policy shall also insure for ordinance of law coverage, costs of demolition, costs to rebuild any undamaged portion that needs to be destroyed, then rebuilt to law and federal, state and local code, and increased cost of construction in amounts satisfactory to Mortgagee. Each such insurance policy shall (a) be in an amount equal to 100% of the then replacement cost (and insurable value) of the Improvements without deduction for physical depreciation or obsolescence, (b) be paid annually in advance, and (c) be on a replacement cost basis and contain no coinsurance and an agreed amount endorsement, and shall cover, without limitation, all tenant improvements and betterments that Mortgagor is required to insure on a replacement cost basis and shall include provisions for adjustment inflation. Mortgagee shall be named "First Mortgagee" on a standard mortgagee endorsement and "Loss Payee" under a lender loss payable clause. Loss payment should be adjusted and made based on replacement cost valuation and should include provisions for adjustment inflation and additional costs associated with the enforcement of federal, state, and local building codes and ordinance to the Mortgaged Property. All policies shall contain such provisions as Mortgagee deems necessary or desirable to protect its interest, including, without limitation, a provision that such policy shall not be cancelled, altered or in any way limited in coverage or reduced in amount unless the Mortgagee is given at least thirty (30) days prior written notice and/or at least ten (10) days prior written notice of non-payment of premium. Mortgagee shall be listed, where applicable, as follows: ConnectOne Bank, its successors and/or assigns, ATIMA, 2455 Morris Avenue, Union, New Jersey 07083.

(2)     Rental loss and/or business interruption insurance at such time that the Mortgagor has re-leased the Mortgaged Property following the buyout of the two existing tenants as of the date hereof (a) with Mortgagee being named as "Mortgagee" and "Loss Payee", (b) in an amount equal to one hundred percent (100%) of the projected gross Rents from the Mortgaged Property during the event that caused the loss of income for at least twelve (12) months continuing business operations; and (c) which amount of such insurance shall be increased from time to time during the term of this Mortgage as and when the estimated or actual Rents increase.

(3)     Flood insurance if any part of the Mortgaged Property is located in an area now or hereafter designated by the Federal Emergency Management Agency as a Zone "A" & "V" Special Hazard Area, or such other Special Hazard Area, in amounts not less than the outstanding principal

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 4

INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 40 of 111

Loan Number ███████

balance of the Loan or the maximum limit of coverage available, whichever is less. Such policy shall name Mortgagee as "First Mortgagee" under a standard mortgagee clause with respect to the improvements and "Lender Loss Payable" with respect to personal property or other assets securing the Loan.

(4)     Liability insurance, including coverage for personal injury, bodily injury, death, accident and property damage, such insurance providing in combination no less than containing minimum limits per occurrence of $1,000,000.00 and $2,000,000.00 in the aggregate for any policy year. Mortgagee shall be named as an additional insured on such policy. If the liability insurance is provided by a policy providing coverage for more than one location, the policy must include an endorsement amending the general aggregate to apply on a "per location basis."

(5)     Workers' Compensation/Employer Liability Coverage as required by applicable law.

(6)     Such other insurance (including, but not limited to, environmental liability insurance, earthquake insurance, sinkhole insurance, mine subsidence insurance and windstorm insurance) as may from time to time be reasonably required by Mortgagee in order to protect its interests, provided that Mortgagee has a reasonable basis to request same.

(B)     **Insurance Policies**. All policies of insurance (the "**Policies**") required pursuant to this Section 1.05 shall (1) be issued by companies approved by Mortgagee and licensed to do business in the State of New York, with a claims paying ability rating of A or better by A.M. Best Rating Guide Stability Rating and a Financial Rating of VI or better; (2) name Mortgagee and its successors and/or assigns as their interest may appear as the "Mortgagee" (in the case of property insurance), "Loss Payee" (in the case of property insurance and business interruption/loss of rents coverage) and as an "Additional Insured" (in the case of liability insurance); (3) contain (in the case of property insurance) a Non-Contributory Standard Mortgagee Clause and a Lender's Loss Payable Endorsement, or their equivalents, naming Mortgagee as the person to which all payments made by such insurance company shall be paid; (4) contain a waiver of subrogation against Mortgagee; (5) be assigned and the originals thereof delivered to Mortgagee (or certificates of insurance in lieu thereof, provided the form and content is acceptable to Mortgagee); and (6) contain such provisions as Mortgagee deems reasonably necessary or desirable to protect its interest and be reasonably satisfactory in form and substance to Mortgagee as to amounts, form, risk coverage, deductibles, loss payees and insureds. Mortgagor shall pay, or cause to be paid, the premiums for such Policies (the "**Insurance Premiums**") as the same become due and payable and furnish to Mortgagee evidence of the renewal of each of the Policies together with (unless such Insurance Premiums have been paid by Mortgagee pursuant to Section 1.05) receipts for or other evidence of the payment of the Insurance Premiums reasonably satisfactory to Mortgagee. If Mortgagor does not furnish such evidence and receipts at least thirty (30) days prior to the expiration of any expiring Policy or at any such time as Mortgagee receives notice that the insurance coverage required hereby is not in effect, then Mortgagee may, but shall not be obligated to, procure such insurance and pay the Insurance Premiums therefor (which payment shall be considered a Protective Advance), and Mortgagor shall reimburse Mortgagee for the cost of such Insurance Premiums promptly upon written demand, with interest accruing at the Default Rate from the date of demand. Mortgagor shall deliver to Mortgagee a certified copy of each Policy (or certificates of insurance in lieu thereof, provided the form and content is acceptable to Mortgagee) within thirty (30) days after its effective date. Within thirty (30) days after request by Mortgagee, Mortgagor shall obtain such increases in the amounts of coverage required hereunder as may be reasonably requested by

8

Loan Number ▮▮▮▮▮

Mortgagee, taking into consideration changes in the value of money over time, changes in liability laws, changes in prudent customs and practices, and the like.

(C)    **Casualty**.

(1)    **Notice; Restoration**.  If the Mortgaged Property is damaged or destroyed, in whole or in part, by fire or other casualty (a **"Casualty"**), Mortgagor shall give notice thereof to Mortgagee within two (2) Business Days (as defined in the Note) of said Casualty.  Following the occurrence of a Casualty, Mortgagor, regardless of whether insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the Mortgaged Property in accordance with all legal requirements to be of at least equal value and of substantially the same character as prior to such damage or destruction.

(2)    **Settlement of Proceeds**.  The following provisions shall apply in connection with the Restoration of the Mortgaged Property:

(i)    The (i) the net amount of all insurance proceeds payable as a result of a Casualty to the Mortgaged Property, after deduction of reasonable costs and expenses (including, but not limited to, reasonable attorneys' fees), if any, in collecting such insurance proceeds or (ii) the net amount of the Taking, after deduction of reasonable costs and expenses (including, but not limited to, reasonable attorneys' fees), if any, in collecting such Taking (**"Net Proceeds"**) shall be made available for Restoration provided that each of the following conditions are met:

(A)    no Event of Default shall have occurred and be continuing;

(B)    (1) in the event the Net Proceeds are insurance proceeds, less than fifty percent (50%) of each of (i) fair market value of the Mortgaged Property as determined by Mortgagee and (ii) rentable area of the Mortgaged Property has been damaged, destroyed or rendered unusable as a result of a Casualty or (2) in the event the Net Proceeds are condemnation proceeds, less than ten percent (10%) of each of (i) the fair market value of the Mortgaged Property as determined by Mortgagee and (ii) rentable area of the Mortgaged Property is taken, such land is located along the perimeter or periphery of the Mortgaged Property, no portion of the Improvements is located on such land and such taking does not materially impair the existing access to the Mortgaged Property;

(C)    Leases demising in the aggregate a percentage amount equal to or greater than sixty percent (60%) of the total rentable space in the Mortgaged Property which has been demised under executed and delivered Leases in effect as of the date of the occurrence of such Casualty or Taking, whichever the case may be, shall remain in full force and effect during and after the completion of the Restoration, notwithstanding the occurrence of any such Casualty or Taking, whichever the case may be, and Mortgagor furnishes to Mortgagee evidence satisfactory to Mortgagee that all Tenants under Leases shall continue to operate their respective space at the Mortgaged Property after the completion of the Restoration;

(D)    Mortgagor shall commence (or shall cause the commencement of) the Restoration as soon as reasonably practicable (but in no event later than thirty (30) days after the issuance of a building permit with respect thereto) and shall diligently pursue the same to satisfactory completion in compliance with all applicable Legal Requirements as

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 4
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 42 of 111
RECEIVED NYSCEF: 01/11/2024

Loan Number ▊▊▊▊▊

defined below), including, without limitation, all applicable Environmental Laws, and the applicable requirements of any reciprocal easement or similar agreement affecting the Mortgaged Property (if any), any amendment, restatement, replacement or other modification thereof, any future reciprocal easement or similar agreement affecting the Mortgaged Property entered into in accordance with the applicable terms and conditions hereof and any amendment, restatement, replacement or other modification thereof ("**REA**"). "**Legal Requirements**" shall mean all federal, state, county, municipal and other governmental statutes, laws, rules, orders, regulations, ordinances, judgments, decrees and injunctions of Governmental Authorities affecting Mortgagor or the Mortgaged Property or any part thereof, or the construction, use, alteration or operation thereof, or any part thereof, whether now or hereafter enacted and in force, including, without limitation, the Americans with Disabilities Act of 1990, and all Permits, authorizations and regulations relating thereto, and all covenants, agreements, restrictions and encumbrances contained in any instruments, either of record or known to Mortgagor, at any time in force affecting Mortgagor or the Mortgaged Property or any part thereof, including, without limitation, any which may (i) require repairs, modifications or alterations in or to the Mortgaged Property or any part thereof or (ii) in any way limit the use and enjoyment thereof;

(E)  Mortgagee shall be satisfied that any operating deficits which will be incurred with respect to the Mortgaged Property as a result of the occurrence of any such Casualty or Taking will be covered out of (1) the Net Proceeds; (2) the insurance coverage referred to in this Section 1.05 or (3) by other funds of Mortgagor;

(F)  Mortgagee shall be satisfied that the Net Proceeds together with any cash or cash equivalent deposited by Mortgagor with Mortgagee are sufficient to cover the cost of the Restoration;

(G)  Mortgagee shall be satisfied that, upon the completion of the Restoration, the fair market value and cash flow of the Mortgaged Property will not be less than the fair market value and cash flow of the Mortgaged Property as the same existed immediately prior to the applicable Casualty or Taking;

(H)  Mortgagee shall be reasonably satisfied that the Restoration will be completed on or before the earliest to occur of (1) twelve (12) months prior to the Maturity Date; (2) six (6) months after the occurrence of such Casualty or Taking; (3) the earliest date required for such completion under the terms of any Leases and any REA; (4) such time as may be required under applicable Legal Requirements or (5) the expiration of the insurance coverage referred to in this Section 1.05 above;

(I)  Mortgagor and Guarantor shall execute and deliver to Mortgagee a completion guaranty in form and substance satisfactory to Mortgagee and its counsel pursuant to the provisions of which Mortgagor and Guarantor shall jointly and severally guaranty to Mortgagee the lien-free completion by Mortgagor of the Restoration in accordance with the provisions of this Section 1.05.

(J)  the Mortgaged Property and the use thereof after the Restoration will be in compliance with and permitted under all applicable Legal Requirements and any REA;

10

7756860.3

Loan Number ▬▬▬▬

(K)    the Restoration shall be done and completed in an expeditious and diligent fashion and in compliance with all applicable Legal Requirements and any REA; and

(L)    any REA will remain in full force and effect during and after the Restoration and a REA Event shall not occur as a result of the applicable Casualty, Taking and/or Restoration.

(ii)    The Net Proceeds shall be held by Mortgagee and, until disbursed in accordance with the provisions of this Section 1.05, shall constitute additional security for the Debt and other obligations under this Mortgage, the Note and the other Loan Documents. The Net Proceeds (other than rent loss proceeds which shall be used to pay debt service requirements) shall be disbursed by Mortgagee to, or as directed by, Mortgagor from time to time during the course of the Restoration, upon receipt of evidence satisfactory to Mortgagee that (A) all materials installed and work and labor performed (except to the extent that they are to be paid for out of the requested disbursement) in connection with the related Restoration item have been paid for in full and (B) there exist no notices of pendency, stop orders, mechanic's or materialman's liens or notices of intention to file same, or any other liens or encumbrances of any nature whatsoever on the Mortgaged Property which have not either been bonded to the satisfaction of Mortgagee and discharged of record or in the alternative fully insured to the satisfaction of Mortgagee by the title company issuing the title insurance polity insuring the Mortgagee's lien against the Mortgaged Property.

(iii)    All plans and specifications required in connection with the Restoration shall be subject to prior review and acceptance in all respects by Mortgagee and by an independent consulting engineer selected by Mortgagee (the "**Casualty Consultant**"). Mortgagee shall have the use of the plans and specifications and all permits, licenses and approvals required or obtained in connection with the Restoration. The identity of the contractors, subcontractors and materialmen engaged in the Restoration shall be subject to prior review and acceptance by Mortgagee and the Casualty Consultant. All costs and expenses incurred by Mortgagee in connection with making the Net Proceeds available for the Restoration including, without limitation, counsel fees and disbursements and the Casualty Consultant's fees, shall be paid by Mortgagor. Mortgagor shall have the right to settle all claims under the Policies jointly with Mortgagee, provided that (a) no Event of Default exists; (b) Mortgagor promptly and with commercially reasonable diligence negotiates a settlement of any such claims and (c) the insurer with respect to the Policy under which such claim is brought has not raised any act of the insured as a defense to the payment of such claim. If an Event of Default exists, Mortgagee shall, at its election, have the exclusive right to settle or adjust any claims made under the Policies in the event of a Casualty.

(iv)    In no event shall Mortgagee be obligated to make disbursements of the Net Proceeds in excess of an amount equal to the costs actually incurred from time to time for work in place as part of the Restoration, as certified by the Casualty Consultant, minus the Restoration Retainage (as defined below). The Restoration Retainage shall in no event, and notwithstanding anything to the contrary set forth above in this Section 1.05, be less than the amount actually held back by Mortgagor from contractors, subcontractors and materialmen engaged in the Restoration. The Restoration Retainage shall not be released until the Casualty Consultant certifies to Mortgagee that the Restoration has been completed in accordance with the provisions of this Section 1.05 and that all approvals necessary for the re-occupancy and use of the Mortgaged Property have been obtained from all appropriate governmental and quasi-

11

Loan Number �－▂▂▂

governmental authorities, and Mortgagee receives evidence satisfactory to Mortgagee that the costs of the Restoration have been paid in full or will be paid in full out of the Restoration Retainage, provided, however, that Mortgagee will release the portion of the Restoration Retainage being held with respect to any contractor, subcontractor or materialman engaged in the Restoration as of the date upon which the Casualty Consultant certifies to Mortgagee that the contractor, subcontractor or materialman has satisfactorily completed all work and has supplied all materials in accordance with the provisions of the contractor's, subcontractor's or materialman's contract, and the contractor, subcontractor or materialman delivers the lien waivers and evidence of payment in full of all sums due to the contractor, subcontractor or materialman as may be requested by Mortgagee or by the title company insuring the lien of the Mortgage. If required by Mortgagee, the release of any such portion of the Restoration Retainage shall be approved by the surety company, if any, which has issued a payment or performance bond with respect to the contractor, subcontractor or materialman.

(v)     Mortgagee shall not be obligated to make disbursements of the Net Proceeds more frequently than once every calendar month.

(vi)     If at any time the Net Proceeds or the undisbursed balance thereof shall not, in the opinion of Mortgagee in consultation with the Casualty Consultant, be sufficient to pay in full the balance of the costs which are estimated by the Casualty Consultant to be incurred in connection with the completion of the Restoration, Mortgagor shall deposit the deficiency (the "**Net Proceeds Deficiency**") with Mortgagee before any further disbursement of the Net Proceeds shall be made. The Net Proceeds Deficiency deposited with Mortgagee shall be held by Mortgagee and shall be disbursed for costs actually incurred in connection with the Restoration on the same conditions applicable to the disbursement of the Net Proceeds, and until so disbursed pursuant to this Section 1.05 shall constitute additional security for the Debt and other obligations under this Mortgage, the Note and the other Loan Documents.

(vii)     The excess, if any, of the Net Proceeds and the remaining balance, if any, of the Net Proceeds Deficiency deposited with Mortgagee after the Casualty Consultant certifies to Mortgagee that the Restoration has been completed in accordance with the provisions of this Section 1.05, and the receipt by Mortgagee of evidence satisfactory to Mortgagee that all costs incurred in connection with the Restoration have been paid in full, shall be remitted by Mortgagee to Mortgagor, provided no Event of Default shall have occurred and shall be continuing under this Mortgage, the Note or any of the other Loan Documents.

(viii)     "**Restoration**" shall mean, following the occurrence of a Casualty or a Taking which is of a type necessitating the repair of the Mortgaged Property (or any portion thereof), the completion of the repair and restoration of the Mortgaged Property (or applicable portion thereof) as nearly as possible to the condition the Mortgaged Property (or applicable portion thereof) was in immediately prior to such Casualty or Taking, with such alterations as may be approved by Lender. "**Restoration Retainage**" shall mean an amount equal to 10% of the costs actually incurred for work in place as part of the Restoration, as certified by the Casualty Consultant, until the Restoration has been completed.

Loan Number ▓▓▓▓▓▓▓

**SECTION 1.06.**   **Reporting Requirements; Financial Statements.**

(A)   Mortgagor will keep adequate records and books of accounts in accordance with generally accepted accounting principles or other sound accounting principles, consistently applied. Mortgagor will permit Mortgagee, by its agents, accountants and/or attorneys, to visit and inspect the Mortgaged Property and examine its records and books of account and to discuss its affairs, finances and accounts with Mortgagor, at such reasonable times and upon reasonable notice as may be requested by Mortgagee.

(B)   Mortgagor and Guarantor will deliver to Mortgagee (i) within ninety (90) days after the close of their respective fiscal years and/or within thirty (30) days of written request by Mortgagee, financial statements (including, without limitation, a balance sheet, statements of income and retained earnings and cash flows, rent roll (as applicable) and expenses); (ii) within thirty (30) days after the close of their respective fiscal years and/or within thirty (30) days of written request by Mortgagee, Guarantor shall provide updated personal financial statements and statement of liquidity for each Guarantor certified by its respective Guarantor; (iii) within thirty (30) days of filing, Mortgagor shall provide the Mortgagee with signed copies of the federal tax returns (including all schedules thereto) of the Mortgagor and Guarantor for the prior calendar year; provided, that if the federal tax return is on extension, such tax return shall be delivered to the Mortgagee no later than the last date of the month in which such tax return is due. Mortgagor and Guarantor will deliver to Mortgagee such other information with respect to Mortgagor and Guarantor as Mortgagee may reasonably request from time to time, including but not limited to, periodic updates in connection with the renovation of the Mortgaged Property including approvals, construction and leasing. All financial statements of Mortgagor and Guarantor shall be prepared in accordance with generally accepted accounting principles or other sound accounting principles, consistently applied. In the case of Mortgagor, such financial statements shall be accompanied by the certificate of a principal financial or accounting officer of Mortgagor stating (1) that they are true and correct, and (2) that to the best of Mortgagor's knowledge, there is no Event of Default or any event which after notice or lapse of time or both would constitute an Event of Default, which has occurred and is continuing. If any such event or Event of Default has occurred and is continuing, Mortgagor shall specify the nature and period of existence thereof and what action Mortgagor has taken or proposes to take with respect thereto, and, except as otherwise specified, stating that Mortgagor has fulfilled all of its obligations under this Agreement which are required to be fulfilled on or prior to the date of such certificate. In addition to but not in lieu of any other remedies available to Mortgagee, upon Mortgagor's failure to supply to Mortgagee the records and/or other information required by this Section 1.06(B) within fifteen (15) days after Mortgagee's written request for same, and until such records and/or information are furnished, interest payable hereunder shall be at the rate of twenty-four percent (24%) or the maximum allowed by law for the longer of (i) thirty (30) days, or (ii) until such date as such records and/or other information is delivered to Mortgagee.

(C)   Mortgagor and Guarantor will do all things necessary to preserve and keep in full force and effect its existence, franchises, rights and privileges as a business or stock corporation, limited liability company, partnership, trust or other entity, as the case may be, under the laws of the state of its formation and will comply with all regulations, rules, statutes, orders and decrees of any governmental authority or court applicable to it or to the Mortgaged Property or any part thereof.

(D)   Not more than once per year, unless an Event of Default shall have occurred and be continuing, Mortgagor will execute and deliver to Mortgagee within five (5) Business Days upon request a written statement, duly acknowledged, of the amount due for principal or interest on this Mortgage and whether any offsets, counterclaims or defenses exist against the Debt. The nature of each

7756860.3

Loan Number ▓▓▓▓▓▓

such offset, defense or counterclaim shall be set forth in full detail. Upon Mortgagor's written request, Mortgagee will execute and deliver to Mortgagor within five (5) Business Days upon request a written statement, of the amount due for principal and interest on this Mortgage.

**SECTION 1.07.**    (A)    **Due on Sale; Restrictions on Further Encumbrances.** Mortgagor shall not (1) permit the Mortgaged Property or any part thereof or any interest therein to be sold, transferred, conveyed, pledged, mortgaged, assigned or hypothecated to any other person or entity, or (2) convert the property to condominium or cooperative ownership without Mortgagee's prior written consent, or (3) sell, transfer, convey, pledge, mortgage, assign or hypothecate the Mortgaged Property or any part thereof or any interest therein, which shall include but not be limited to (a) where Mortgagor is a corporation, the transfer of any of the outstanding shares of the corporation or the dilution of the present stockholding or corporate control by issuance of new or treasury stock or by conversion of any non-voting stock or other securities to voting stock, or (b) where Mortgagor is a partnership, the transfer of any of the interests in Mortgagor, or the withdrawal, resignation or retirement of the general partner, or (c) where Mortgagor is a limited liability company, by a transfer of any of the membership interests in Mortgagor. The acts referred to in (1), (2) and (3) above are hereinafter collectively referred to as **"Transfer"** when used as a verb or **"a Transfer"** when used as a noun.

(B)    **Restrictions on Sales and Transfers of Interests in Mortgagor.** Notwithstanding anything to the contrary contained herein:
    (1)    Upon prior written notice to Mortgagee, provided (a) the management of Mortgagor and of the Mortgaged Property do not change, and (b) the transfer will not result in a change of controlling interest in Mortgagor, the following transfers are permitted without Mortgagee's consent: (i) transfers of interest in and among the existing members/partners/shareholders of Mortgagor, (ii) transfers of interest to the existing members' immediate family members or to other entities owned solely by said immediate family members or to trusts for the benefit of same, and (iii) transfers to Affiliates, provided that a Key Principal maintains control of the Affiliates. Mortgagor shall promptly provide Mortgagee with all documentation evidencing such transfers. "Affiliate" shall be defined as to any Person, any other Person that, directly or indirectly, is in Control of, is Controlled by or is under common Control with such Person or is a director or officer of such Person or of an Affiliate of such Person. "Control" shall be defined as, with respect to any Person, either (i) ownership directly or indirectly of more than 50% of all equity interests in such Person or (ii) the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, through the ownership of voting securities, by contract or otherwise. "Immediate family members" shall be defined as any of mother, father, son, daughter, brother, sister, grandchildren, son-in-law, daughter-in-law, spouse, first cousin, uncle, aunt, niece and nephew. "Key Principal(s)" shall be defined as, collectively, Jeffrey Simpson and Jared Chassen. "Person" shall be defined as an individual, partnership, limited partnership, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture or other entity of whatever nature. Mortgagor agrees and acknowledges that, at Mortgagee's request, any proposed transferee hereunder shall be subject to Office of Foreign Assets Control and Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (**"Patriot Act"**) compliance review, and Mortgagor shall provide Mortgagee the necessary information to comply with such requirements at Mortgagee's request prior to any such transfer.
    (2)    Transfers of interest of Mortgagor made by bequest, devise or operation of law shall not be deemed an Event of Default hereunder.

14

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM

NYSCEF DOC. NO. 4

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1

INDEX NO. 850010/2024

RECEIVED NYSCEF: 01/11/2024

Pg 47 of 111

Loan Number ▆▆▆▆▆▆

    (C)    **Replacement Guarantor.** In the event of the death of any Guarantor, Mortgagor shall, within one hundred eighty (180) days of the death of such Guarantor: (1) provide Mortgagee with one or more replacement guarantors (individually or collectively, a **"Replacement Guarantor"**) who shall be reasonably acceptable to Mortgagee, and (2) provide Mortgagee with all financial and other information reasonably requested for the proposed Replacement Guarantor necessary for Mortgagee to make a determination that such proposed Replacement Guarantor is acceptable to Mortgagee, and (3) such Replacement Guarantor executes and delivers a replacement Guaranty to Mortgagee in a form materially equivalent to that signed by the deceased Guarantor and such Replacement Guarantor joins as a party to any other document executed by the deceased Guarantor.

    (D)    **Anti-Money Laundering and Economic Sanctions.**    Mortgagor hereby represents and warrants that Mortgagor and each Guarantor, each and every Person affiliated with Mortgagor or Guarantor and, to Mortgagor's knowledge, their directors, officers, employees or agents and any Person that has an economic interest in Mortgagor or Guarantor, in each case, has not, and at all times throughout the term of the Loan, including after giving effect to any transfers of interests permitted pursuant to the Loan Documents, shall not: (a) itself be (or have been), be (or have been) owned or controlled by, or act for or on behalf of a Person or government that is the subject of, in each case, economic sanctions administered or enforced by the Office of Foreign Assets Control (**"OFAC"**) of the Department of the Treasury, the Department of State, or other relevant sanctions authority (**"Sanctions"**); (b) fail to be (or have been) in full compliance with the requirements of the USA PATRIOT Act or other applicable anti-money laundering laws and regulations and all Sanctions; (c) fail to operate (or have operated) under policies, procedures and practices, if any, that are (i) in compliance with applicable anti-money laundering laws and regulations and Sanctions and (ii) available to Mortgagee for Mortgagee's review and inspection during normal business hours and upon reasonable prior notice; (d) be (or have been) in receipt of any notice from OFAC, the Secretary of State or the Attorney General of the United States or any other department, agency or office of the United States, in each case, claiming a violation or possible violation of applicable anti-money laundering laws and regulations and/or Sanctions; (e) be (or have been) the subject of Sanctions, including those listed as a Specially Designated National or as a "blocked" Person on any lists issued by OFAC and those owned or controlled by or acting for or on behalf of such Specially Designated National or "blocked" Person; (f) be (or have been) a Person who has been determined by competent authority to be subject to any of the prohibitions contained in the USA PATRIOT Act; or (g) be (or have been) owned or controlled by or be (or have been) acting for or on behalf of, in each case, any Person who has been determined to be subject to the prohibitions contained in the USA PATRIOT Act. Mortgagor covenants and agrees that in the event Mortgagor receives any notice that Mortgagor or Guarantor (or any of their respective beneficial owners or Affiliates) became the subject of Sanctions or is indicted, arraigned, or custodially detained on charges involving Sanctions, money laundering or predicate crimes to money laundering, Mortgagor shall immediately notify Lender. It shall be an Event of Default hereunder if Mortgagor or Guarantor or any other party to any Loan Document becomes the subject of Sanctions or is indicted, arraigned or custodially detained on charges involving Sanctions, money laundering or predicate crimes to money laundering. All capitalized words and phrases and all defined terms used in the USA PATRIOT Act of 2001, 107 Public Law 56 (October 26, 2001) and in other statutes and all orders, rules and regulations of the United States government and its various executive departments, agencies and offices related to applicable anti-money laundering laws and regulations (collectively referred as the **"Patriot Act"**) are incorporated into this Section 1.07.

    **SECTION 1.08.**    **Leases and Leasing of the Mortgaged Property.**

7756860.3

Loan Number ▮▮▮▮▮▮

    (A)    Mortgagor will not (1) execute an assignment of the rents, or any part thereof, from the Mortgaged Property, or (2) except where the lessee is in default thereunder, terminate or consent to the cancellation or surrender of any lease of the Mortgaged Property, or any part thereof, now existing or hereafter to be made, having an unexpired term of two (2) years or more, except that any lease may be canceled provided that promptly after the cancellation or surrender thereof a new lease is entered into with a new lessee having a credit standing, in the reasonable judgment of the Mortgagee, at least equivalent to that of the lessee whose Lease was canceled, on substantially the same or better terms as the terminated or canceled Lease, or (3) modify any such Lease so as to shorten the unexpired term thereof or so as to decrease the amount of the Rents payable thereunder, or (4) accept prepayments of any installments of Rents to become due under such Leases, except prepayments in the nature of security for the performance of the lessees thereunder or collect any of the Rents more than one (1) month in advance (other than security deposits); or (5) in any other manner materially impair the value of the Mortgaged Property or the security of this Mortgage in the reasonable judgment of the Mortgagee; or (7) enter into any new Leases in the ordinary course of business without providing copies of said leases to the Mortgagee, or (8) in any other manner impair the value of the Mortgaged Property or the security of this Mortgage; or (9) without Mortgagee's prior written consent, alter, modify or change any Lease to the extent the same would, individually or in the aggregate, cause any such Lease to have a Material Adverse Change. Upon request, Mortgagor shall furnish Mortgagee with executed copies of all Leases.

    Notwithstanding the foregoing, Mortgagor may take the following actions without Mortgagee's prior consent with respect to any lease for <u>residential space</u> at the Mortgaged Property having a term of two (2) years or less: (i) terminate or consent to the cancellation or surrender of any Lease or of any part thereof, now existing or hereafter to be made, where the lessee is in default thereunder or in connection with a tenant buyout with respect to an under-market rent, or (ii) enter into a new Lease or extend, modify, or renew any Lease or of any part thereof, now existing or hereafter to be made.

    (B)    The Mortgagor will not execute any lease of all or a substantial portion of the Mortgaged Property except for actual occupancy by the lessee thereunder as a single family residence, and will at all times promptly and faithfully perform, or cause to be performed promptly, all of the covenants, conditions and agreements contained in all Leases of the Mortgaged Property, or any part thereof, now or hereafter existing, on the part of the lessor thereunder to be kept and performed and will at all times do all things reasonably necessary to compel performance by the lessee under each lease of all obligations, covenants and agreements by such lessee to be performed thereunder. If any of such leases provide for the giving by the lessee of certificates with respect to the status of such leases, the Mortgagor shall exercise its right to request such certificates within five (5) days of any demand therefor by the Mortgagee.

    (C)    Mortgagor will at all times promptly and faithfully perform, or cause to be performed, all of the covenants, conditions and agreements contained in all Leases on the part of the lessor thereunder to be kept and performed and will at all times do all things necessary subject to the prudent course of business, to compel performance by the Lessee under each Lease of all obligations, covenants and agreements by such Lessee to be performed thereunder. If any Lease provides for the giving by the Lessee of certificates with respect to the status of the Leases, Mortgagor shall exercise its right to request such certificates within five (5) days after any demand therefor by Mortgagee.

    (D)    All Leases and all renewals of Leases executed after the date hereof shall (i) provide for rental rates comparable to existing local market rates for similar properties; (ii) be on commercially

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM

INDEX NO. 850010/2024

NYSCEF DOC. NO. 4

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1

RECEIVED NYSCEF: 01/11/2024

Pg 49 of 111

Loan Number ▬▬▬▬

reasonable terms with unaffiliated, third parties (unless otherwise consented to by Mortgagee); (iii) provide that such Lease is subordinate to the Mortgage and that the lessee will attorn to Mortgagee and any purchaser at a foreclosure sale and (iv) not contain any terms which would have a Material Adverse Change. Mortgagor shall not, without the prior written approval of Mortgagee (such consent not to be unreasonably withheld, conditioned or delayed), enter into, renew, extend, amend, modify, permit any assignment of or subletting under, waive any provisions of, release any party to, terminate, reduce rents under, accept a surrender of space under, or shorten the term of, in each case, any Lease, except in accordance with this Section 1.08.

(i)    Notwithstanding anything contained herein to the contrary, Mortgagor shall not willfully withhold from Mortgagee any information regarding renewal, extension, amendment, modification, waiver of provisions of, termination, rental reduction of, surrender of space of, or shortening of the term of, any Lease during the term of the Loan.

(ii)    Mortgagor shall notify Mortgagee in writing, within two (2) Business Days following receipt thereof, of Mortgagor's receipt of any early termination fee or payment or other termination fee or payment paid by any Tenant under any Lease, and Mortgagor further covenants and agrees that Mortgagor shall hold any such termination fee or payment in trust for the benefit of Mortgagee and that any use of such termination fee or payment shall be subject in all respects to Mortgagee's prior written consent in Mortgagee's sole discretion (which consent may include, without limitation, a requirement by Mortgagee that such termination fee or payment be placed in reserve with Mortgagee to be disbursed by Mortgagee for tenant improvement and leasing commission costs with respect to the Mortgaged Property and/or for payment of the Debt or otherwise in connection with the Loan evidenced by the Note and/or the Property, as so determined by Mortgagee).

(E)    Reference is hereby made to Section 291-f of the Real Property Law of the State of New York for the purpose of obtaining for Mortgagee the benefits provided thereunder.

(F)    Mortgagor shall furnish to Mortgagee, within fifteen (15) days after a written request by Mortgagee, but no more than two (2) times per year, a written statement containing the names of all Lessees, copies of their respective Leases, description of the space occupied and the Rents payable thereunder.

(G)    Notwithstanding the above, upon stabilization of the Mortgaged Property, Mortgagor shall deliver to Mortgagee fully executed Leases to Mortgagee, with base rents sufficient to meet a minimum Debt Service Coverage Ratio (as hereinafter defined) of 1.30 to 1, as calculated by Mortgagee, and otherwise acceptable to Mortgagee in its discretion.

**SECTION 1.09.    Statement Pursuant to §13 of the New York Lien Law.**    Mortgagor will, in compliance with Section 13 of the New York Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the Improvements and will apply the same first to the payment of the cost of the Improvements before using any part of the total of the same for any other purpose.

**SECTION 1.10.    (A)    Waste.**    Mortgagor will not threaten, commit or permit any waste to the Mortgaged Property or make any change in the use of the Mortgaged Property which will in any way materially increase the risk of ordinary fire or other hazard arising out of construction or operation. Mortgagor will, at all times, maintain the Mortgaged Property in good operating order and safe

17

Loan Number ▆▆▆▆

condition and will promptly make or cause to be made, from time to time, all repairs, renewals, replacements, additions and improvements thereto. The Improvements shall not be demolished, substantially altered (if such alterations would have a material adverse effect on value) or permitted to deteriorate, nor shall any Chattels be removed except where appropriate replacements are promptly made of value at least equal to the value of the removed Chattels. Any replacement Chattels shall be owned by Mortgagor free and clear of any liens.

(B) **Right of Entry; Inspection.** During the term of this Mortgage, Mortgagee shall have the right to enter and inspect the Mortgaged Property at reasonable times, upon reasonable notice.

**SECTION 1.11.** **Condemnation.** Mortgagor shall promptly notify Mortgagee of the commencement of any proceedings for the condemnation of the Mortgaged Property (a "**Taking**") or any portion thereof. Mortgagee may participate in any such proceeding and may be represented therein by counsel of its selection at the expense of Mortgagor. Mortgagor from time to time will deliver to Mortgagee all instruments requested by it to permit or facilitate such participation. In the event of such condemnation proceedings, the award or compensation payable is hereby assigned to and shall be paid to Mortgagee. The proceeds of any award or compensation so received shall, at the option of Mortgagee, either be applied to the prepayment of the Debt (and such prepayment shall be subject to any applicable Prepayment Charge defined in the Note), or be paid over to Mortgagor for restoration of the Mortgaged Property in Mortgagee's sole discretion.

**SECTION 1.12.** **Further Assurances; Compliance.** Mortgagor will, at its sole cost and expense, and without expense to Mortgagee, do, execute, acknowledge and deliver all additional acts, deeds, conveyances, mortgages, assignments, notices of assignment, transfers and assurances as Mortgagee shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee a security interest in the Mortgaged Property, or for carrying out the intention or facilitating the performance of the terms of this Mortgage, and/or for filing, registering or recording this Mortgage and, within ten (10) days after demand therefor, will execute and deliver, and hereby authorizes Mortgagee to execute and file in Mortgagor's name to the extent it may lawfully do so, one or more financing statements, chattel mortgages or security instruments and renewals thereof, to evidence more effectively the lien hereof upon the Chattels. Within ten (10) days of written request by or on behalf of Mortgagee, Mortgagor will execute any document or instrument that ought to have been signed at or before the date hereof or will re-execute any document or instrument incorrectly completed and/or signed in connection herewith including, but not limited to, any amendments, corrections, deletions, or additions to the Loan Documents executed in connection herewith, provided such amendments, corrections, deletions or additions are in conformity with the terms of the commitment between Mortgagee and Mortgagor for the Loan. In the event Mortgagor fails to comply with the terms hereof in the time provided, Mortgagor hereby grants Mortgagee or Mortgagee's attorney a power-of-attorney for the sole purpose of executing or re-executing said document or instrument on Mortgagor's behalf, without additional notice.

**SECTION 1.13.** (A) **Evidence and Perfection of Lien.** Mortgagor shall from time to time, cause this Mortgage, and any security instrument creating a lien or evidencing the lien hereof upon the Chattels and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully protect the lien created hereby.

18

7756860.3

Loan Number �_▅▅▅▅▅

(B)   **Payment of Fees.**   Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the execution, delivery, recording and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Chattels, and any instrument of further assurance, and all federal, state, county and municipal mortgage taxes, stamp taxes and other taxes, duties, imposts, assessments and charges arising out of or in connection thereof or any instrument of further assurance.

SECTION 1.14.   **Protective Advances.**   All sums paid by Mortgagee as advances to protect and preserve the lien of this Mortgage and the interests of Mortgagee (collectively, "**Protective Advances**") shall be a lien upon the Mortgaged Property and shall be secured hereby.   Protective Advances shall include, but shall not be limited to, any and all additional advances made by Mortgagee to complete Improvements or to preserve or protect the Mortgaged Property, or for any taxes, assessments or insurance premiums, or for the performance of any of Mortgagor's obligations hereunder or under any other document executed in connection with the Loan.   Mortgagor will repay on demand all Protective Advances together with interest thereon at the Default Rate running from the date of written demand for repayment of same by Mortgagee, unless said Protective Advance is made in connection with an Event of Default by Mortgagor, in which case from the earlier of the date of written demand for the repayment of the Protective Advance or the date of the occurrence of such Event of Default.

SECTION 1.15.   **Mechanic's Liens.**   Mortgagor will pay or bond, from time to time when the same shall become due, or bond all lawful claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part thereof, or on the revenues, Rents, issues, income and profits arising therefrom.

SECTION 1.16   **Obligation to Defend.**   If any action or proceeding be commenced, excepting an action to foreclose this Mortgage or to collect the indebtedness hereby secured, to which action or proceeding Mortgagee is made a party by reason of the execution of this Mortgage or the Note which it secures, or in which it becomes necessary to defend or uphold the lien of this Mortgage, all reasonable sums paid by Mortgagee for the expense of any litigation to prosecute or defend the transactions and the rights and lien created hereby (including reasonable attorneys' fees and disbursements) shall be paid by Mortgagor together with interest thereon from the date of payment by Mortgagee at the Default Rate.   All such sums paid, and the interest thereon, shall be immediately due and payable, shall be a lien upon the Mortgaged Property, and shall be secured hereby.

SECTION 1.17.   **Changes in Laws Regarding Taxation.**   In the event of the passage after the date of this Mortgage of any law deducting any lien from the value of the Land for the purpose of taxation, or changing in any way the laws now enforced for the taxation of mortgages or debts secured by mortgages, or the manner of the collection of any such taxes, so as to affect and materially lessen the net income on the indebtedness secured by this Mortgage, the Debt secured by this Mortgage, together with interest due thereon, shall, at the option of Mortgagee, become due and payable, without prepayment charge or premium, within ninety (90) days after notice from Mortgagee of the effective date of any such legislation, but in no event sooner than ninety (90) days after the effective date of any such legislation.

SECTION 1.18.   **Compliance with Laws.**   Mortgagor shall comply with, or cause to be complied with, all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorization, directions and requirements of all governments,

19

7756860.3

Loan Number ▇▇▇▇▇▇

departments, commissions, boards, courts, authorities, agencies, officials and officers which may, as at the date of this Mortgage or thereafter, affect the Mortgaged Property or any part thereof or its use or condition, or which may affect any adjoining sidewalks, curbs, vaults and vault space if any, or streets or ways insofar as Mortgagor is required to comply therewith.

### SECTION 1.19.   Environmental Compliance and Indemnity.

(A)    As used herein, the following terms shall have the following meanings:

"**Environmental Law**" means all present and future federal state and local statutes, laws, ordinances, rules, regulations, requirements, directives and common law doctrines that govern or apply or pertain to the protection of the environment and human health including, but not limited to, the federal Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §101 et seq.; Articles 1 through 72 of the New York State Environmental Conservation Law, and Article 12 of the New York State Navigation Law.

"**Environmental Condition**" means (i) the presence or Release (as hereinafter defined) or threatened Release of any Hazardous Substance (as hereinafter defined); (ii) the actual or threatened violation of any Environmental Law; (iii) grounds for or the commencement of any Regulatory Action (as hereinafter defined) or Third-Party Action (as hereinafter defined); and (iv) any other condition, event or circumstance that could subject Mortgagor or Mortgagee to potential liability under any Environmental Law.

"**Hazardous Substance**" means any substance, material or waste which is or may be governed by any Environmental Law, and any substance, material or waste that may pose a threat to human health or the environment.  As used herein, the term Hazardous Substance includes, but is not limited to, petroleum and petroleum products and asbestos.

"**Regulatory Action**" means any claim, demand, judgment, consent order, consent decree, notice of violation, uniform appearance ticket, action or proceeding brought by or at the direction of any federal, state or local governmental authority pursuant to any Environmental Law including, but not limited to, any administrative, civil or criminal proceeding.

"**Release**" means any spilling, leaking, pumping, pouring, emitting, emptying, injecting, escaping, leaching, dumping or disposal of any Hazardous Substance.  As used herein, the term Release includes, but is not limited to, a "discharge" as that term is defined in Article 12, §172(8) of the New York State Navigation Law.

"**Third-Party Action**" means any claim, notice of claim, action, proceeding or demand brought by any party alleging the violation of any Environmental Law or negligence, nuisance, trespass, strict liability, bodily injury or property damage in connection with, either directly or indirectly, an Environmental Condition.

(B)    Mortgagor represents and warrants that to its knowledge (and except as set forth on any environmental reports provided or delivered to Mortgagee):

(1)    Mortgagor is not aware of any Environmental Condition at, on or affecting the Mortgaged Property;

20

7756880.3

Loan Number ▓▓▓▓▓▓

(2)    Neither Mortgagor nor any existing or prior owner or tenant of the Mortgaged Property is the subject of any Regulatory Action or Third-Party Action pertaining in any way to an Environmental Condition at, on or affecting the Mortgaged Property;

(3)    The Mortgaged Property is not currently used, nor has it been used in the past, by Mortgagor, prior owners, tenants or any other persons in a manner which violates any Environmental Law, or which could create an Environmental Condition at, on or affecting the Mortgaged Property which could violate any such law or give rise to such liability; and

(4)    Mortgagor and all tenants of the Mortgaged Property are in compliance with all Environmental Laws pertaining to the Mortgaged Property.

(C)    Mortgagor covenants that:

(1)    Mortgagor shall not use or permit the use of the Mortgaged Property in a manner which creates an Environmental Condition;

(2)    Mortgagor shall not permit any federal, state or local environmental lien to be levied against the Mortgaged Property, even if such lien is subordinate to the lien of this Mortgage;

(3)    Mortgagor shall provide Mortgagee with copies of any and all communications (including emails) received from or submitted to any federal, state or local governmental authority pertaining to any Environmental Condition at, on or affecting the Mortgaged Property within (5) days of Mortgagor's receipt or submission thereof.

(4)    Mortgagor and all Lessees of the Mortgaged Property shall possess and remain in strict compliance with all permits, licenses, registrations and authorizations pertaining to the Mortgaged Property and required under any Environmental Law;

(5)    Mortgagor shall not cause or permit a Release at, on or from the Mortgaged Property, except as authorized pursuant to an Environmental Law.

(6)    Mortgagor shall comply, and shall cause all Lessees to comply, with all Environmental Laws pertaining to any asbestos or asbestos-containing materials that are present at the Mortgaged Property, including any and all requirements pertaining to the renovation or demolition of the Mortgaged Property and the management of the asbestos-containing materials.

(7)    Mortgagor shall and shall cause all Lessees to comply with any obligations they may have under any Environmental Law affecting the Mortgaged Property, including but not limited to reporting requirements.

(8)    Mortgagor shall provide Mortgagee with a copy of any environmental assessment of the Mortgaged Property which Mortgagor may obtain, within ten (10) days of the date when Mortgagor receives the assessment.

(D)    Any misrepresentation or a breach of any warranty or covenant contained in this Section 1.19 shall be an Event of Default hereunder.

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 4
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
RECEIVED NYSCEF: 01/11/2024
Pg 54 of 111

Loan Number ▇▇▇▇▇▇

(E)    Until all sums due hereunder shall be repaid in full, Mortgagee may, provided it has reasonable cause to do so, conduct environmental assessments or tests to determine if an Environmental Condition exists at the Mortgaged Property.    Such audits and tests shall be performed by an environmental consultant chosen by Mortgagee.    Mortgagor shall pay to Mortgagee upon written demand the reasonable costs of such audits or tests.  Any such environmental assessments shall be considered the property of Mortgagee, but Mortgagee shall provide a copy of such assessment(s) to Mortgagor.  Mortgagee shall owe no duty of confidentiality to Mortgagor with respect to the contents of the assessments.  It is hereby acknowledged by Mortgagor that Mortgagee shall not vouch for or assume any responsibility for the scope of detail, contents or accuracy of any such environmental assessment, and that neither Mortgagor nor any other party shall have any recourse to or claim against Mortgagee for any act of omission or commission of the environmental consultant, excepting therefrom any claims against the environmental consultant for its negligence.  Mortgagor shall fully cooperate with the environmental consultant in its preparation of the assessment, including, but not limited to responding to questions of the consultant, providing the consultant with all necessary access at reasonable times and upon reasonable notice to the Mortgaged Property, the books and records of Mortgagor, and employees of Mortgagor, and Mortgagor shall use commercially reasonable efforts to cause all tenants of the Mortgaged Property to do the same.  Mortgagee may also from time to time at the reasonable expense of Mortgagor procure the opinion of an attorney competent in environmental law when it believes such an opinion to be reasonably necessary, respecting the presence or possible presence of an Environmental Condition at, on or affecting the Mortgaged Property.

(F)    Mortgagee shall have the right to require, from time to time, a certification by Mortgagor and any commercial, retail or industrial tenants of the Mortgaged Property that there is no Environmental Condition at, on or affecting the Mortgaged Property.  If an asbestos monitoring plan has been prepared in connection with the Mortgaged Property, Mortgagor must, from time to time and at the request of Mortgagee, show evidence of its compliance therewith.

(G)    To the fullest extent authorized by law and without regard to whether Mortgagor would have ultimate responsibility, Mortgagor shall fully defend, indemnify and hold harmless Mortgagee, its successors and assigns from and against any claim, action or proceeding pertaining in any way to an Environmental Condition at, on or affecting the Mortgaged Property, including any Regulatory Action or Third-Party Action, and including any claim, action or proceeding that seeks fines, penalties, recovery of investigation or clean-up costs, or recovery for bodily injury and property damage.  The foregoing indemnity shall survive payment of the Note and satisfaction of this Mortgage.  Any amounts which Mortgagor must pay to Mortgagee under this paragraph are payable upon written demand and, if unpaid, shall bear interest per annum at the Default Rate from the date of demand and such amounts, with interest, shall be added to the indebtedness secured hereby and shall be secured by this Mortgage.

**SECTION 1.20.    Account Requirements.**    During the term of the Note and this Mortgage, Mortgagor shall maintain the following accounts with Mortgagee: (1) the Auto-debit Account, (2) its Operating Account, (3) any other "deposit accounts" (as such term is defined in the Uniform Commercial Code) maintained in connection with the Mortgaged Property, and (4) its Tenant Security Account. (1), (2) and (3) above are collectively referred to herein as the "**Mortgagor Accounts.**" The Mortgagor Accounts and the Tenant Security Accounts are collectively referred herein to as the "**Accounts.**"

22

Loan Number ▨▨▨▨▨

**SECTION 1.21.**    **Indemnification.**    Mortgagor covenants and agrees that no liability shall be asserted or enforced against Mortgagee, its officers, directors, employees or agents in connection with the Loan, the Note or this Mortgage and Mortgagor shall indemnify and save Mortgagee harmless from and against any and all liabilities, obligations, losses, damages (including indirect, special, consequential and punitive damages awarded to third parties), claims, costs, lost profits and expenses (including reasonable attorneys' fees and court costs) (collectively, **"Claims"**) of whatever kind or nature which may be imposed on, incurred by or asserted against Mortgagee, its officers, directors, employees or agents at any time by any third party which relate to or arise from, *inter alia*: (a) any suit or proceeding (including probate and bankruptcy proceedings), or the written threat thereof, in or to which Mortgagee its officers, directors, employees or agents may or do become a party, either as plaintiff or as a defendant, by reason of the Loan, the Note or this Mortgage or for the purpose of protecting the lien of this Mortgage; (b) the offer for sale or sale of all or any portion of the Mortgaged Property; (c) the ownership, leasing, use, operation or maintenance of the Mortgaged Property, if such Claims relate to or arise from actions taken prior to the surrender of possession of the Mortgaged Property to Mortgagee in accordance with the terms of this Mortgage; and (d) the claims of any brokers engaged by Mortgagor in connection with the Loan; provided, however, that Mortgagor shall not be obligated to indemnify or hold Mortgagee, its officers, directors, employees or agents harmless from and against any Claims directly arising from the gross negligence or willful misconduct of Mortgagee, its officers, directors, employees or agents. All costs provided for herein and paid for by Mortgagee shall be added to the Debt and shall become immediately due and payable upon demand by Mortgagee and with interest thereon from the date of demand by Mortgagee until paid in full at the Default Rate.

**SECTION 1.22.**    **Financial Covenants.**

(A)    **Debt Service Coverage Ratio.**    To the extent that cash flow from the Mortgaged Property is sufficient, the Mortgagor shall maintain, beginning on the date that occurs eighteen (18) months after the effective date of this Mortgage and at all times thereafter during the term of the Loan, a minimum Debt Service Coverage Ratio (on an amortizing basis) of 1.25 to 1.0 during the term of the Loan. **"Debt Service Coverage Ratio"** shall mean the ratio of (a) the Net Operating Income estimated by Mortgagee to be generated by the Mortgaged Property for the preceding 12-month period to (b) twelve (12) times the amount of the monthly payments made or schedule to be made pursuant to the Note. "Net Operating Income" is the revenue estimated by the Mortgagee to be generated from the use and operation of the Mortgaged Property less (a) the estimated operating income expenses (such as utilities, general administrative expenses, management fees, advertising, repairs and maintenance), and (b) the estimated fixed expenses (such as insurance and real estate taxes), all calculated in accordance with standard business practices. The Debt Service Coverage Ratio shall be calculated using an interest rate of five and one-half (5.50%) percent per annum and principal amortization based upon a twenty-five (25) year amortization schedule and shall be tested by Mortgagee on an annual basis, commencing on the one (1) year anniversary from the date of this Mortgage, and on the same day of each year thereafter until the Debt has been paid in full.

Provided, however, Mortgagor may cure such Event of Default by, within thirty (30) days after written notice to Mortgagor, (1) paying down the balance of the Debt (without a prepayment premium or charge) to the extent necessary to increase the Debt Service Coverage Ratio to 1.25 to 1, or (2) by funding a debt service reserve account in an amount satisfactory to Mortgagee and executing a debt service reserve account in form and substance satisfactory to Mortgagee. At such time that the Mortgaged Property achieves a Debt Service Coverage Ratio of at least 1.25 to 1 for two (2) consecutive quarters, Mortgagee shall release the funds in the debt service reserve account to Mortgagor. The funds

Loan Number ▆▆▆▆▆

pledged to the Mortgagee by Mortgagor for debt service payments under the Note and this Mortgage as of the date hereof pursuant to that certain Reserve Account Pledge Agreement between Mortgagor and Mortgagee shall be credited towards any deposits required hereunder to cure an Event of Default under Section 1.22(A), provided that the replenishment requirements under said agreement are met.

(B) **Loan to Value.** The Mortgagor shall maintain, at all times during the term of the Loan a Loan to Value no greater than 70%. **"Loan to Value"** shall mean the Principal Amount remaining unpaid under the Note divided by the value of the Mortgaged Property as determined by Mortgagee using its standard formulations.

Provided, however, Mortgagor may cure such Event of Default by paying down the balance of the Debt (without a prepayment premium or charge) within ten (10) days after written notice to Mortgagor to the extent necessary to decrease the Loan to Value to 70%.

SECTION 1.23. **Special Purpose Entity Requirements.** The Mortgagor represents and warrants that it is, and shall remain, a specifically-formed single-purpose entity and that it does not, and shall not:

(a) engage in any business or activity other than the ownership, sale, operation and maintenance of the Mortgaged Property and activities incidental thereto;

(b) acquire or own any material assets other than (i) the Mortgaged Property, and (ii) such incidental personal property as may be necessary for the operation of the Mortgaged Property;

(c) merge into or consolidate with any Person or dissolve, terminate or liquidate in whole or in part, transfer or otherwise dispose of all or substantially all of its assets or change its legal structure. As used herein, the term "Person" shall mean an individual, partnership, limited partnership, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture or other entity of whatever nature;

(d) fail to preserve its existence as an entity duly organized and validly existing under the laws of the jurisdiction of its organization or formation, or, without the prior consent of the Mortgagee, amend, modify or terminate any provisions of its organizational documents which relate to separateness or which may hereafter be required by this Mortgage;

(e) own any subsidiary or make any investment in any person or entity;

(f) commingle its assets with the assets of any of its general partners, managing members, affiliates or principals, or of any other person or entity;

(g) incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than (i) the Debt, and (ii) indebtedness in the ordinary course of its business of owning and operating the Mortgaged Property, provided that such indebtedness is not evidenced by a note and is paid when due (but in any event, within sixty (60) days of the date incurred);

(h) become insolvent or fail to pay its debts and liabilities from its assets as the same shall

24

7756860.3

Loan Number ▊▊▊▊▊

become due;

(i)     fail to maintain its records, books of account and bank accounts (if any) separate and apart from those of any other Person;

(j)     partition, or seek to partition, the Mortgaged Property, or seek the dissolution or winding up, in whole or in part, of the Mortgagor;

(k)     make any loans or advances to any third party, including any affiliate of the Mortgagor or entity in which any guarantor of the Loan owns a direct or indirect beneficial interest;

(l)     fail to file its own tax returns, if required, unless part of the consolidated returns of another Person;

(m)     agree to, enter into or consummate any transaction which would render the Mortgagor insolvent; or

(n)     file or consent to the filing of any bankruptcy or insolvency petition or otherwise institute insolvency proceedings with respect to itself or any entity in which it has a direct or indirect ownership interest.

**SECTION 1.24.     Beneficial Ownership.**     Mortgagor shall notify Mortgagee of any changes to the certified beneficial ownership information submitted to Mortgagee at or prior to the date hereof. Notice shall be made to Mortgagee as soon as practical upon a change to the beneficial ownership information, which change must be acceptable to Mortgagee.

## ARTICLE II

### EVENTS OF DEFAULT AND REMEDIES

**SECTION 2.01.     Events of Default.**     If any of the following occur, each shall be an "**Event of Default**" and collectively, "**Events of Default**":

(a)     if (1) default shall be made in the Monthly Payment or any other payment of principal, interest or other sums under the Note or this Mortgage, when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any payment or prepayment or otherwise, in each case, as in the Note and this Mortgage provide, and such default shall have continued beyond the Monthly Payment Grace Period, or (2) default shall be made in the payment of any Taxes required hereunder to be paid by Mortgagor and said default shall have continued for a period of twenty (20) days or more after the applicable due date for said Taxes, without regard to any grace period provided by the applicable taxing authority (except with respect to real estate taxes for which Mortgagee is collecting escrow and for which sufficient funds exist to pay same in the Tax and Insurance Reserve); or

(b)     if any warranty, representation or certification made by Mortgagor or Guarantor herein or in connection with the Loan shall be materially false at the time it was made; or

(c)     if Mortgagor or any Guarantor shall: (1) call a meeting of or make an assignment for the benefit of creditors; (2) file a petition in bankruptcy, under Title 11 of the U.S. Code, as amended (the "**Bankruptcy Code**"), or be adjudicated insolvent or bankrupt; (3) be the subject of an order for

7756860.3

Loan Number ▮▮▮▮▮

relief under the Bankruptcy Code, or petition or apply to any tribunal for the appointment of a receiver or a trustee for it or a substantial part of its assets; (4) file any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, whether now or hereafter in effect; (5) have filed against it a petition, application or proceeding described above in subsection (4) above and if such a petition, application or proceeding shall have been commenced against it, which remains un-dismissed or un-stayed for a period of ninety (90) days or more [any of Section 2.01 (c)(1), (2), (3), (4) or (5) above a **"Bankruptcy Event"**]; (6) by any act or omission indicate its consent to, approval of or acquiescence in any petition, application or proceeding described above or in the appointment of a custodian, receiver or any trustee for it or any substantial part of any of its property; (7) suffer any such custodianship, receivership or trusteeship to continue un-discharged for a period of ninety (90) days or more; (8) conceal, remove or permit to be concealed or removed, any part of its property, with intent to hinder, delay or defraud its creditors or any of them; (9) make or suffer a transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law; (10) make any transfer of its property to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid; (11) shall suffer or permit, while insolvent, any creditor to obtain a lien upon any of its property through legal proceedings or distraint which is not vacated within ninety (90) days from the date thereof, or (12) generally not pay its debts as such debts become due; or

(d)    if Mortgagor shall not maintain insurance coverage for the Mortgaged Property as required by Section 1.05 above; or

(e)    if default shall be made in the due observance or performance of any covenant or agreement on the part of Mortgagor or Guarantor hereunder or in the Note, or in any other document executed or delivered by Mortgagor in connection with the Debt; or

(f)    if, by order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of Mortgagor shall be appointed or if any municipality having jurisdiction over the Mortgaged Property commences an action related to uncured violations and such trustee, receiver or liquidator shall not be discharged or dismissed within thirty (30) days after such appointment or such violation action shall not be dismissed within thirty (30) days after the return date specified on the complaint; or

(g)    in the event of any Material Adverse Change in the financial conditions of Mortgagor; or

(h)    if there should occur a default which is not cured within the applicable notice and cure period, if any, under any other mortgage or deed of trust of all or part of the Mortgaged Property, regardless of whether any such other mortgage or deed of trust is prior or subordinate to this Mortgage; it being further agreed by Mortgagor that an Event of Default hereunder shall constitute an Event of Default under any such other mortgage or deed of trust held by Mortgagee. (This subsection (h) shall not be construed to imply that Mortgagee consents to any junior or senior lien or encumbrance); or

(i)    except as permitted pursuant to Section 1.07(B), if Mortgagor shall Transfer or agree to Transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein (including any air or development rights), or any Transfer of an interest in Mortgagor; or

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM    INDEX NO. 850010/2024
NYSCEF DOC. NO. 4    24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1    RECEIVED NYSCEF: 01/11/2024

Pg 59 of 111

Loan Number ▮▮▮▮▮▮

    (j)    if Mortgagor shall encumber, or agree to encumber, all or any portion of the Mortgaged Property, or any interest therein (including any air or development rights) without, in any such case, the prior written consent of Mortgagee. Consent to one such encumbrance shall not be deemed to be a waiver of the right to require consent to future or successive encumbrances; or

    (k)    Mortgagor (or any other party) occupies or uses the Mortgaged Property (1) without first obtaining at least a temporary certificate of occupancy therefor or its equivalent and delivering a copy thereof to Mortgagee and/or (2) Mortgagor (or any other party) thereafter occupies in violation of such certificate of occupancy; or

    (l)    in the event Mortgagor shall become in default, beyond the expiration of any applicable notice or cure periods, under the terms of any other loan or agreement with Mortgagee; or

    (m)    if any judgment for $50,000.00 or more shall be rendered against Mortgagor or any Guarantor which shall not be discharged or bonded pending appeal within thirty (30) days from and after the date of entry thereof; or

    (n)    if Mortgagor or any Guarantor fails to furnish to Mortgagee within the time periods set forth herein and after notice, financial statements and other financial information regarding Mortgagor or Guarantor required hereunder and/or any other documents executed in connection herewith; or if the Accounts are not maintained with Mortgagee pursuant to <u>Section 1.20</u> above; or

    (o)    if Mortgagor shall fail to meet the covenants in Sections 1.22 and 1.23 hereof; or

    (p)    if Mortgagor shall fail to cure properly any violations affecting all or any portion of the Mortgaged Property within thirty (30) days after Mortgagor first receives written notice of any such violations; <u>provided, however</u>, if any such violation is reasonably susceptible of cure, but not within a thirty (30) day period, then Mortgagor shall be permitted up to an additional thirty (30) days to cure such violation, provided that Mortgagor commences a cure within such initial thirty (30) day period and thereafter diligently and continuously pursues such cure.

    Then and in every such case:

    I.    **Interest Rate After Event of Default.**    After any Event of Default, interest shall accrue at the rate of twenty-four (24%) percent per annum (the **"Default Rate"**). Notwithstanding the foregoing, except for an Event of Default under Section 2.01(a), (b), (c), (d), (i), (j), (k) or (o) above, Mortgagee will provide Mortgagor with notice of an Event of Default hereunder and provide thirty (30) days to cure same before accelerating the due date of the Debt and/or charging interest at the Default Rate. In such a case, Mortgagee shall also provide a reasonable extension to the period of time to cure such Event of Default before accelerating the due date of the Debt and/or charging interest at the Default Rate provided that: (i) Mortgagor is diligently pursuing said cure to the satisfaction of Mortgagee, and (ii) the failure to cure said Event of Default has not jeopardized the priority of Mortgagee's lien or had a material adverse impact on the value of the Mortgaged Property. Whenever the Default Rate provided for herein shall apply, it shall continue to accrue and shall be paid on any amounts to which the Default Rate is applied until said amounts are paid in full. In addition, in the event that Mortgagor fails to cure any Event of Default (regardless of whether or not a cure period is provided) and the due date of the Debt is subsequently accelerated as a result of such Event of Default, interest due hereunder shall be payable at the Default Rate <u>from the date of such Event of Default</u>.

7756860.3

Loan Number ████████

    II.    **Ability to Accelerate Due Date of Debt.** During the continuance of any such Event of Default, Mortgagee, by notice given to Mortgagor, may declare the entire Debt then outstanding (if not then due and payable), and all accrued and unpaid interest thereon, to be due and payable immediately, and upon any such declaration the Debt outstanding and any accrued and unpaid interest shall become and be immediately due and payable, anything in the Note or in this Mortgage to the contrary notwithstanding.

    III.    **Right of Entry; Receiver.** During the continuance of any such Event of Default, Mortgagee, or by its agents or attorneys, may enter into and upon all or any part of the Mortgaged Property, and each and every part thereof, and is hereby given a right and license and appointed Mortgagor's attorney in fact to do so, and may exclude Mortgagor, its agents and servants wholly therefrom; and having and holding the same, may use, operate, manage and control the Mortgaged Property and conduct the business thereof, either personally or by its superintendents, managers, agents, servants, attorneys or receivers; and upon every such entry, Mortgagee, at the expense of Mortgagor, from time to time, either by purchase, repairs or construction, may maintain and restore the Mortgaged Property, whereof it shall become possessed as aforesaid, and may insure the same, and likewise, from time to time, at the expense of Mortgagor, Mortgagee may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as to it may seem advisable; and in every such case Mortgagee shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of Mortgagor with respect thereto either in the name of Mortgagor or otherwise as it shall deem best; and Mortgagee shall be entitled to collect and receive all earnings, revenues, Rents, issues, profits and income of the Mortgaged Property and every part thereof, all of which shall for all purposes constitute property of Mortgagee, and in furtherance of such right, Mortgagee may collect the Rents payable under all Leases of the Mortgaged Property directly from the Lessees thereunder upon notice to each Lessee that an Event of Default exists hereunder accompanied by a demand on each Lessee for the payment to Mortgagee of all Rents due and to become due under its respective Lease. Mortgagor, for the benefit of Mortgagee and each Lessee hereby covenants and agrees that the Lessee shall be under no duty to question the accuracy of Mortgagee's statement of default and shall unequivocally be authorized to pay said Rents to Mortgagee without regard to the truth of Mortgagee's statement of the existence of an Event of Default such that the payment of Rent by the Lessee to Mortgagee pursuant to such a demand shall constitute performance in full of the Lessee's obligation under the Lease for the payment of Rents by the Lessee to Mortgagor; and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the services of all attorneys, independent contractors and agents, clerks, servants and other employees engaged and employed by Mortgagee, Mortgagee shall apply the moneys arising as aforesaid, first, to the payment of the Debt outstanding and the interest thereon, when and as the same shall become payable and second, to the payment of any other sums required to be paid by Mortgagor under the Note and/or this Mortgage and then to such other parties that may be so entitled and, if any remain, to Mortgagor.

    Under no circumstances shall Mortgagee have any duty to produce Rents from the Mortgaged Property. Regardless of whether or not Mortgagee, in person or by agent, takes actual possession of the Mortgaged Property, Mortgagee is not and shall not be deemed to be: (a) a "mortgagee in possession" for any purpose; (b) responsible for performing any of the obligations of the lessor under any Lease;

7756860.3

Loan Number █████████

(c) responsible for any waste, including, but not limited to waste committed by Lessees or any other parties, any dangerous or defective condition of the Mortgaged Property, or any negligence in the management, upkeep, repair or control of the Mortgaged Property; or (d) liable in any manner for the Mortgaged Property or the use, occupancy, enjoyment or operation of all or any part of it, except for such matters as may arise from the gross negligence or willful misconduct of Mortgagee.

    IV.    **Foreclosure; Specific Performance.** Mortgagee, with or without entry, personally or by its agents or attorneys, insofar as applicable, may:

    (1)    institute proceedings for the complete or partial foreclosure of this Mortgage; or

    (2)    take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Mortgage, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee shall elect.

    **SECTION 2.02.**    **Foreclosure Sale; Adjournment; Execution of Instruments; Application of Proceeds.**

    (A)    Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

    (B)    Upon the completion of any sale or sales made by an officer of any court empowered to do so, Mortgagor shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument or instruments conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. Mortgagee is hereby irrevocably appointed the true and lawful attorney of Mortgagor in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold, and for that purpose, Mortgagee may execute all necessary instruments of conveyance, assignment and transfer and may substitute one or more persons with like power. Mortgagee hereby ratifies and confirms all acts that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, Mortgagor, if requested by Mortgagee, shall ratify and confirm any such sale or sales by executing and delivering to Mortgagee or to such purchaser or purchasers, all said instruments as may be advisable in the reasonable judgment of Mortgagee, for the purpose and as may be designated in such request. Any such sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the Mortgaged Property and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

    (C)    In the event of any sale or sales made under or by virtue of this Article II (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale), the entire principal of, and interest on, the Note, if not previously due

7756860.3

Loan Number ███████

and payable, and all other sums required to be paid by Mortgagor pursuant to this Mortgage, immediately thereupon shall become due and payable, anything in the Note or in this Mortgage to the contrary notwithstanding.

(D)    The purchase money proceeds or avails of any sale or sales made under or by virtue of this Article II, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this Article II or otherwise, shall be applied as follows:

**FIRST:**    To the payment of the reasonable costs and expenses of such sale, including reasonable compensation to Mortgagee, its agents and counsel, and of any judicial proceedings wherein the same may be made, and of all expenses, liabilities and advances made or incurred by Mortgagee under this Mortgage, together with interest at the Default Rate on all advances made by Mortgagee, and of all or other charges, except any taxes, assessments or other charges subject to which the Mortgaged Property shall have been sold.

**SECOND:**    To the payment of the amount then due, owing or unpaid upon the Note for principal and interest, with interest on the unpaid principal at the Default Rate from and after the happening of any Event of Default described in Section 2.01 hereof from the due date of any such payment until the same is paid.

**THIRD:**    To the payment of any other sums required to be paid by Mortgagor pursuant to any provision of this Mortgage or of the Note (including but not limited to any prepayment charge or premium), all with interest at the Default Rate, from the date such sums were or are required to be paid under this Mortgage or the Note.

**FOURTH:**    To the payment of the surplus, if any, to Mortgagor or to whomsoever may be lawfully entitled to receive the same.

(E)    Upon any sale or sales made under or by virtue of this Article II, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the indebtedness secured by this Mortgage the net sales price after deducting therefrom the expenses of the sale and the costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage.

**SECTION 2.03.    Payments Upon Default; Enforcement; Recovery of Judgment.**    (A) In the case when an Event of Default described in Section 2.01 hereof shall have occurred and be continuing beyond any applicable notice and cure period, upon Mortgagee's acceleration of the due date of the Debt, Mortgagor will pay to Mortgagee all amounts which then shall have become due and payable under the Note (including but not limited to principal, all accrued interest and any prepayment charge or premium), and after the happening of said Event of Default will also pay to Mortgagee interest at the Default Rate on the then unpaid principal of the Note, and the sums required to be paid by Mortgagor pursuant to any provision of this Mortgage, and in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including reasonable compensation to Mortgagee, its agents and counsel and any expenses incurred by Mortgagee hereunder. In the event Mortgagor shall fail forthwith to pay such amounts upon such demand, Mortgagee shall be entitled and empowered to institute such action or proceedings at law or in equity as may be advised by its counsel

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 4

INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 63 of 111

Loan Number ▮▮▮▮▮▮

for the collection of the sums so due and unpaid, and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against Mortgagor and collect, out of the property of Mortgagor wherever situated as well as out of the Mortgaged Property, in any manner provided by law, monies adjudged or decreed to be payable with interest thereon at the Default Rate.

(B)    Mortgagee shall be entitled to recover judgment as aforesaid either before, after or during the pendency of any proceedings for the enforcement of the provisions of this Mortgage; and the right of Mortgagee to recover such judgment shall not be affected by any entry of sale hereunder, or by the exercise of any other right, power or remedy for the enforcement of the provisions of this Mortgage, or the foreclosure of the lien hereof, and in the event of a sale of the Mortgaged Property, and of the application of the proceeds of sale as in this Mortgage provided, to the payment of the Debt hereby secured, Mortgagee shall be entitled to enforce payment of, and to receive all amounts then remaining due and unpaid upon, the Note, and to enforce payment of all other charges, payments and costs due under this Mortgage, and shall be entitled to recover judgment for any portion of the Debt remaining unpaid, with interest at the Default Rate. In case of proceedings against Mortgagor in insolvency or bankruptcy or any proceedings for its reorganization or involving the liquidation of its assets, then Mortgagee shall be entitled to prove the whole amount of principal and interest due upon the Note to the full amount thereof, and all other payments, charges and costs due under this Mortgage, without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Mortgaged Property, provided, however, that in no case shall Mortgagee receive a greater amount than such principal and interest and such other payments, charges and costs due hereunder from the aggregate amount of the proceeds of the sale of the Mortgaged Property and the distribution from the estate of Mortgagor.

(C)    No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent, the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before until the lien is satisfied.

(D)    Any monies collected by Mortgagee under this <u>Section 2.03</u> shall be applied by Mortgagee in accordance with the provisions of clause (D) of <u>Section 2.02</u> hereof.

SECTION 2.04.    <u>Appointment of Receiver.</u>  After the happening of any Event of Default and immediately upon the commencement of any action, suit or other legal proceedings by Mortgagee to obtain judgment for the principal of, or interest on, the Note and other sums required to be paid by Mortgagor pursuant to any provision of the Note and/or this Mortgage, or of any other nature in aid of the enforcement of the Note or of this Mortgage, Mortgagor will if required by Mortgagee, consent to the appointment of a receiver or receivers of the Mortgaged Property and of all the earnings, revenues, Rents, issues, profits and income thereof. After the happening of any Event of Default and during its continuance, and upon the commencement of any proceedings to foreclose this Mortgage or to enforce the specific performance hereof, or in aid thereof, or upon the commencement of any other judicial proceeding to enforce any right of Mortgagee, Mortgagee shall be entitled, as a matter of right, if it shall so elect, without the giving of notice to any other party and without regard to the adequacy or inadequacy of any security for the indebtedness secured hereby, forthwith either before or after declaring the unpaid principal of the Note to be due and payable, to the appointment of such a receiver or receivers.

7756860.3

Loan Number ████████

**SECTION 2.05.** **Retention of Possession and Control.** Notwithstanding the appointment of any receiver, liquidator or trustee of Mortgagor, or of any of its property, or of the Mortgaged Property or any part thereof, Mortgagee shall be entitled to retain possession and control of all property now or hereafter held under this Mortgage.

**SECTION 2.06.** **Cumulative Remedies.** No remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity, or by statute. No delay or omission of Mortgagee to exercise any right or power accruing upon any Event of Default shall impair any such right or power or shall be construed to be a waiver of any such Event of Default or any acquiescence therein; and every power and remedy given by this Mortgage to Mortgagee may be exercised from time to time as often as may be deemed expedient by Mortgagee. Nothing in this Mortgage or in the Note shall affect the obligation of Mortgagor to repay the Debt.

**SECTION 2.07.** **Mortgagor's Waiver of Stay.** Mortgagor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Mortgaged Property, or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Mortgage, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force, providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; nor, after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted, or redeem the property so sold or any part thereof, and Mortgagor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted. Mortgagor, for itself and all who may claim under it, waives, to the extent that it lawfully may, all right to have the Mortgaged Property marshaled upon any foreclosure hereof. Mortgagor hereby agrees and consents that should it or any Guarantor be the subject of a Bankruptcy Event, Mortgagee shall thereupon be entitled, and Mortgagor irrevocably consents, to relief from any automatic stay imposed by Section 362 of the United States Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Mortgagee as provided herein or with respect to any other Loan Documents or as otherwise provided by law.

**SECTION 2.08.** **Payment for Occupancy; Surrender of Possession.** During the continuance of any Event of Default and pending the exercise by Mortgagee of its right to exclude Mortgagor from all or any part of the Mortgaged Property, if Mortgagor is using and occupying the Mortgaged Property, Mortgagor agrees to pay the fair and reasonable rental value for the use and occupancy of the Mortgaged Property, or any portion thereof, which is in its possession for such period and, upon default of any such payment, will vacate and surrender possession of the Mortgaged Property to Mortgagee or to a receiver, if any, and in default thereof may be evicted by any summary action or proceeding for the recovery of possession of Mortgaged Property for non-payment of rent, however designated.

**SECTION 2.09.** **No Liability for Failure to Act or Loss to Mortgagor.** Mortgagee shall not be directly or indirectly liable to Mortgagor or any other person as a consequence of:

7756860.3

Loan Number ▆▆▆▆▆▆

(i) Mortgagee's exercise of or failure to exercise any rights, remedies, or powers granted to it in this Mortgage or to perform or discharge any obligation or liability of Mortgagor under any agreement executed in connection with this Mortgage; or (ii) any loss sustained by Mortgagor or any third party resulting from any act or omission of Mortgagee in managing the Mortgaged Property, unless the loss is caused by the gross negligence or willful misconduct of Mortgagee. Mortgagor hereby expressly waives and releases all liability of the types described above and agrees that no such liability shall be asserted against or imposed upon Mortgagee.

## ARTICLE III

## MISCELLANEOUS

**SECTION 3.01.** **Severability.** In the event any one or more of the provisions contained in this Mortgage or in the Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Mortgage, but this Mortgage shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

**SECTION 3.02.** **Notices.** All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by certified mail, return receipt requested or overnight mail by a nationally recognized courier, at each party's address above stated, or at such other address which a party shall have notified the other party in writing pursuant to the requirements herein. Any written notice sent by certified mail, return receipt requested shall be deemed to have been served five (5) days after the date the same is mailed in accordance with the foregoing provisions. Notice sent by overnight carrier shall be deemed to have been served one (1) Business Day after the date same is mailed. Whenever in this Mortgage the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person(s) entitled to receive such notice.

**SECTION 3.03.** **Covenants Run With Land; Successors and Assigns.** All of the grants, covenants, terms, provisions and conditions herein shall run with the land and shall apply to, bind and inure to the benefit of, the successors and permitted assigns of Mortgagor and the successors and assigns of Mortgagee. If there is more than one mortgagor, the covenants and warranties hereof shall be joint and several. As used herein, the singular shall include the plural as the context requires.

**SECTION 3.04.** **Usury.** No provision in this Mortgage or in the Note shall require the payment, or permit the collection of, interest in excess of the maximum amount permitted by law. Mortgagor shall not be obligated to pay any interest in excess of such maximum amount. Any interest paid by Mortgagor in excess of the maximum legal rate of interest shall be retained by Mortgagee as additional cash collateral for repayment of the Debt.

**SECTION 3.05.** **Counterparts.** This Mortgage may be executed in any number of counterparts and each of such counterparts shall for all purposes deemed to be an original; and all such counterparts shall together constitute but one and the same mortgage.

**SECTION 3.06.** **Statement Pursuant to §254 of New York Real Property Law.** The covenants and conditions contained herein shall be construed as affording to Mortgagee rights additional

7756860.3

Loan Number ▉▉▉▉▉

to, and not exclusive of, the rights conferred under the provisions of Section 254 of the Real Property Law of the State of New York.

**SECTION 3.07.** **Mortgagee's Right to Sell, Participate.** Mortgagee may sell and transfer interests in the Loan to one or more participants with or without notice to Mortgagor and all documentation, financial statements, appraisals and other data, or copies thereof, relevant to Mortgagor, may be exhibited to, and retained by, any such participant or prospective participant.

**SECTION 3.08.** **Modification in Writing.** This Mortgage may not be changed, waived, discharged or terminated, except by an instrument in writing signed by Mortgagee and Mortgagor.

**SECTION 3.09.** **Security Agreement.** This Mortgage shall be deemed to be a security agreement pursuant to the Uniform Commercial Code of the State of New York. Mortgagor shall be the debtor, Mortgagee shall be the secured party and the collateral shall be the Mortgaged Property to the extent same may be secured by a Uniform Commercial Code security agreement and/or a UCC-1 Financing statement.

**SECTION 3.10.** **Time of the Essence.** All time periods provided herein shall be deemed to be of the essence.

**SECTION 3.11.** **Severance of Lien.** At the sole election of Mortgagee, this Mortgage and the Note may be split or divided into two or more notes and mortgages constituting liens on the Mortgaged Property or portions thereof in such principal amounts as Mortgagee shall designate but in no event to exceed the aggregate principal amount evidenced by the Note and secured, or which may under any contingency be secured, by this Mortgage. Mortgagor, upon the request of Mortgagee, shall execute, acknowledge and deliver to Mortgagee and/or its designee or designees such documents as may be necessary to effectuate the foregoing, including, without limitation, such supplemental or substitute mortgages, assignments of rents and leases, security agreements, supplemental or replacement notes and other documents as Mortgagee may require. Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact, coupled with an interest, to execute any documents and take any other steps, in Mortgagor's name or otherwise, and at Mortgagor's expense in order to effectuate any or all of the foregoing.

**SECTION 3.12.** **Statement Pursuant to §253-1a of New York State Tax Law.** This Mortgage covers property improved by one or more structures containing in the aggregate more than six (6) residential dwelling units, each having their own separate cooking facilities.

**SECTION 3.13.** **Waiver of Jury Trial.** MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MORTGAGOR.

7756860.3

Loan Number ▮▮▮▮▮

    **SECTION 3.14.**    **Other Judicial Waivers.** Mortgagor hereby expressly and unconditionally waives, in connection with any suit, action or proceeding brought by or on behalf of Mortgagee on this Mortgage, any and every right Mortgagor may have to (i) interpose any defense based upon any statute of limitations or any claims of laches, (ii) injunctive relief, (iii) interpose any counterclaim therein (other than compulsory counterclaims), and (iv) have the same consolidated with any other or separate suit, action or proceeding. Nothing herein contained shall prevent or prohibit Mortgagor from instituting or maintaining a separate action against Mortgagee with respect to any asserted claim.

    **SECTION 3.15.**    **Governing Law; Venue.** This Mortgage, and the rights and obligations of the parties hereunder, shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law). Mortgagor hereby irrevocably: (a) agrees that any legal action or proceeding arising out of or relating to this Mortgage may be brought in the courts of the State of New York in any county or of the United States of America for the Eastern or Southern Districts of New York, as Mortgagee may elect, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding, and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. Any such suit, action or proceeding shall be initiated by any methods of service provided for under applicable law. Nothing contained herein shall affect the right of Mortgagee to bring any suit, action or proceeding against Mortgagor or its property in the courts of any other jurisdiction.

    **SECTION 3.16.**    **Nature of Relationship Limited.** Nothing contained in this Mortgage or the Note or any other document executed and/or delivered in connection herewith shall be deemed or construed to create a partnership or joint venture or any other relationship between Mortgagor and Mortgagee other than that of borrower and lender, respectively.

    **SECTION 3.17.**    **Right of Set Off.** Mortgagor hereby pledges and grants to Mortgagee a continuing lien, security interest and right of set off as security for all liabilities and obligations to Mortgagee, whether now existing or hereafter arising upon and against all Mortgagor Accounts (as defined in Section 1.20 above), and the monies contained therein, certificates of deposit, credits and/or any other instruments or securities in the possession, custody, safekeeping or control of Mortgagee, its successors and/or assigns or in transit to any of them (collectively, the **"Secured Accounts"**). Mortgagee shall have the right to set off, without notice to Mortgagor, against any liability or obligation of Mortgagor, including but not limited to interest, principal, Tax and Insurance Reserves, fees or other charges due in connection with the Note or this Mortgage from the Secured Accounts. ANY AND ALL RIGHTS TO REQUIRE MORTGAGEE TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE OBLIGATIONS, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF MORTGAGOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.

    **SECTION 3.18.**    **Future Assignment of this Mortgage.** Upon payment in full of all sums due under the Note and this Mortgage, at the request of Mortgagor, Mortgagee will assign the Mortgage to a new lender upon payment of an assignment fee not to exceed $1,125.00 to Mortgagee and upon the payment of Mortgagee's attorney's fees for the preparation and delivery of the assignment of mortgage. Nothing herein contained shall impose any liability on Mortgagee for the loss of any documents,

Loan Number ▮▮▮▮▮▮

including but not limited to the Note or the recorded Mortgage. In connection with any lost notes, Mortgagee shall execute a lost note affidavit on a form Mortgagee deems acceptable.

**SECTION 3.19.** **Interpretation of Provisions.** The parties hereto acknowledge that each has been represented by counsel in connection with the Loan. Accordingly, any rule or law or any legal decision that would require the interpretation of any claimed ambiguities in the Note, this Mortgage or any of the other Loan Documents against the party that drafted it has no application and is expressly waived by the other parties hereto. The provisions of the Note, this Mortgage and the other Loan Documents shall be interpreted in a reasonable manner to give effect to the intent of the parties hereto.

**SECTION 3.20.** **Paragraph Headings.** The paragraph headings are for reference only and shall not affect the interpretation or meaning of any provisions of this Mortgage and shall not limit the rights of Mortgagee with respect to any of the subject matter set forth therein.

**SECTION 3.21.** **Tenants in Common.**

As of the date hereof, the Mortgagor consists of three co-owner limited liability companies that own the Mortgaged Property as tenants in common (each existing co-owner tenant in common and any successor co-owner tenant in common are referred to herein individually as a "**Co-Owner TIC**" and collectively as "**Co-Owner TICs**"). For so long as the Mortgagor consists of two or more Co-Owner TICs, the following covenants shall apply:

(a)     The Mortgaged Property, the Mortgagor and all Co-Owner TICs are subject to a co-tenancy agreement dated as of June __, 2022. Mortgagor certifies and warrants to Mortgagee that there are no other co-tenancy agreements in existence. (Such co-tenancy agreement so approved by Mortgagee and any other co-tenancy agreement(s) now or hereafter in existence between or among any or all Co-Owner TICs are collectively referred to herein as a "**Co-Tenancy Agreement**".) If recorded, the Co-Tenancy Agreement shall be recorded following the recording hereof and, in any event, the Co-Tenancy Agreement shall be deemed to have been recorded after the date and time of recording of this Mortgage regardless of the actual recording dates and times of any Co-Tenancy Agreement and this Instrument. No termination, modifications or waivers of any Co-Tenancy Agreement may be made without Mortgagee's prior written consent in its reasonable discretion. Mortgagee shall be named in any Co-Tenancy Agreement (and is hereby designated, notwithstanding any omission in any Co-Tenancy Agreement) as a third-party beneficiary of any Co-Tenancy Agreement and may enforce the provisions thereof against any party to any Co-Tenancy Agreement. Any Co-Tenancy Agreement shall be deemed to include all the provisions of this Section 3.21 and the provisions of the following Section 3.22 to the same extent as if fully set forth in any Co-Tenancy Agreement. Any conflicts between such Sections and any Co-Tenancy Agreement shall be resolved in favor of such Sections which shall be deemed to supersede and prevail. Any Co-Tenancy Agreement shall not and shall not be deemed to amend the provisions of such Sections, any other provisions of this Instrument or any Loan Document.

(b)     Any Co-Tenancy Agreement will be and remain subject and subordinate to, and hereby is subjected and subordinated to, the lien of this Instrument, to all provisions hereof and to all of the terms, conditions, agreements, requirements and restrictions set forth in this Instrument and the other Loan Documents. Without limitation, all payments required under the Loan Documents have priority over all distributions to the Co-Owner TICs as provided for in any Co-Tenancy Agreement or any other agreement.

7756860.3

Loan Number ▬▬▬

(c)    The transfer of any interest in the Mortgage Property between Co-Owner TICs shall constitute a Transfer under Section 1.07 of this Instrument.

(d)    Each Co-Owner TIC agrees that the party charged with managing the tenancy in common or receiving notices on behalf of the tenancy in common is the Co-Owner TIC designated in the current Co-Tenancy Agreement so approved by Mortgagee as described in paragraph "(a)", immediately above, and Mortgagor shall cause such Co-Owner TIC to deliver to Mortgagee, within ten (10) days after such party's receipt, a true and correct copy of each material notice, demand, complaint or request made or given with respect to such co-tenancy agreement or with respect to any other Co-Tenancy Agreement.

(e)    Notwithstanding anything to the contrary herein, in the other Loan Documents or in any Co-Tenancy Agreement, each Co-Owner TIC hereby waives its right to bring a partition action with respect to the Mortgaged Property, whether such right arises under statute or other applicable law, and agrees that by doing so each Co-Owner TIC has waived its right to apply to a court to (i) have the Mortgaged Property physically divided so that its tenancy in common interest in the Mortgaged Property can be sold separately from the whole of the Mortgaged Property, (ii) cause the whole or any part of the Mortgaged Property to be sold and the proceeds of such sale distributed to any of the Co-Owner TICs or (iii) to have the Mortgaged Property otherwise divided or partitioned.

(f)    If one or more Co-Owner TICs were to file for relief under the United States Bankruptcy Code, 11 U.S.C. Section 101 et seq., as amended from time to time (the "Bankruptcy Code"), then each Co-Owner TIC hereby agrees as follows:

(1)    Each Co-Owner TIC assigns to Mortgagee, as additional security for the Debt, Co-Owner TIC's right to reject any Co-Tenancy Agreement under Section 365 of the Bankruptcy Code after the occurrence of a Bankruptcy Event involving any Co-Owner TIC.

(2)    Each Co-Owner TIC agrees not to seek sale of the tenancy in common interest separate and apart from the whole of the Mortgaged Property. Each Co-Owner TIC acknowledges and agrees that the detriment to the interest of the other Co-Owner TICs outweighs the benefit to the Co-Owner TIC. In any event, Co-Owner TIC shall give Mortgagee written notice, at least ten (10) business days in advance, of the date on which such Co-Owner TIC intends to apply to the Bankruptcy Court for authority and permission to sell its tenancy in common interest.

### 3.22.  Additional Suretyship Waivers.

Each Co-Owner TIC comprising Mortgagor, with respect to the other Co-Owner TIC, hereby agrees as follows:

(a)    Mortgagor hereby waives the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of the Note, this Instrument or any other Loan Document and agrees that Mortgagor's obligations shall not be affected by any circumstances, whether or not referred to in this Instrument, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor. Mortgagor hereby waives the benefits of any right of discharge under any and all statutes or other Laws relating to guarantors or sureties and any other rights of sureties and guarantors thereunder. Mortgagor also waives, to the fullest extent permitted by law, all rights to require Mortgagee to (a) proceed against a Co-Owner TIC or any Guarantor or Indemnitor, (b) if a Co-

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 4

INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 70 of 111

Owner TIC is a partnership, proceed against any general-partner (direct or indirect, limited or general) of such Co-Owner TIC, (c) if a Co-Owner TIC is another type of entity, proceed against any owner or principal (direct or indirect) of such Co-Owner, or (d) pursue any other remedy it may now or hereafter have against any Co-Owner TIC or any principal or owner thereof (direct or indirect).

(b)     At any time or from time to time and any number of times, without notice to Mortgagor and without affecting the liability of Mortgagor, (i) the time for a Co-Owner TIC's performance of or compliance with any covenant or agreement contained in this Instrument or any other Loan Document affecting the Mortgaged Property owned by Co-Owner TIC, whether presently existing or hereinafter entered into, may be extended by Mortgagee or such performance or compliance may be waived by Mortgagee; and (ii) any security for the Debt may be modified, exchanged, surrendered or otherwise dealt with or additional security may be pledged or mortgaged for the Debt as Mortgagee may agree to.

(c)     Any indebtedness of s Co-Owner TIC held by Mortgagor now or in the future is and shall be subordinated (and is hereby subordinated) to the Debt and any such indebtedness of a Co-Owner TIC shall be collected, enforced and received by Mortgagor, as trustee for Mortgagee, but without reducing or affecting in any manner the liability of Mortgagor under the other provisions of the Note, this Mortgage or the other Loan Documents.

(d)     Mortgagor shall have no right of, and hereby waives any claim for, subrogation or reimbursement against a Co-Owner TIC or any partner, member or other principal or owner (direct or indirect) of a Co-Owner TIC by reason of any payment by Mortgagor of the Debt, whether such right or claim arises at law or in equity or under any contract or statute, until the Debt has been paid in full and there has expired the maximum possible period thereafter during which any payment made by a Co-Owner TIC to Mortgagee with respect to the Debt could be deemed a preference under the United States Bankruptcy Code.

(e)     If any payment by any Co-Owner TIC is held to constitute a preference under any applicable bankruptcy, insolvency, or similar Laws, or if for any other reason Mortgagee is required to refund any sums to any Co-Owner TIC, such refund shall not constitute a release of any liability of Mortgagor under the Note, the Security Instrument or any other Loan Documents. It is the intention of Mortgagee and Mortgagor that Mortgagor's obligations under the Note, the Mortgage and any other Loan Documents shall not be discharged except by Mortgagor's performance of such obligations and then only to the extent of such performance.

[no further text on this page]

**[Signature Page to First Mortgage and Security Agreement]**

    **IN WITNESS WHEREOF**, this Agreement has been duly executed by Mortgagor and Mortgagee as of the date first set forth above.

          **146 E 89 BORROWER 1 LLC**
          **By:**   **JJ ARCH LLC**
                **Its Managing Member**

          **By:** _____
              **JARED CHASSEN**
              **Authorized Signatory**

          **146 E 89 BORROWER 2 LLC**
          **By:**   **JJ ARCH LLC**
                **Its Manager**

          **By:** _____
              **JARED CHASSEN**
              **Authorized Signatory**

          **146 E 89 BORROWER 3 LLC**
          **By:**   **JJ ARCH LLC**
                **Its Manager**

          **By:** _____
              **JARED CHASSEN**
              **Authorized Signatory**

STATE OF NEW YORK   }
                  } ss:
COUNTY OF _NY_     }

    On the 27th day of June , in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared JARED CHASSEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

                        _____
                        Notary Public

SCOTT STERNBERG
NOTARY
NO. 01ST6427070
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
12-20-2025
PUBLIC
STATE OF NEW YORK

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 4
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 72 of 111
RECEIVED NYSCEF: 01/11/2024

*First American Title Insurance Company*

Title Number: **GA-2974-NY-22**
Page **1**

### SCHEDULE A DESCRIPTION

ALL that certain plot piece or parcel of land, situate, lying and being in the Borough of Manhattan City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 89th Street, distant 91 feet 7 inches easterly from the corner formed by the intersection of the southerly side of East 89th Street and the easterly side of Lexington Avenue;

RUNNING THENCE southerly, parallel with Lexington Avenue 100 feet 81/2 inches to the center line of the block, 20 feet 11 inches;

THENCE northerly parallel with Lexington Avenue through a party wall, 100 feet 81/2 inches to the southerly side of East 89th Street;

THENCE westerly along the southerly side of East 89th Street, 20 feet 11 inches to the point or place of BEGINNING.

1

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM

NYSCEF DOC. NO. 9

INDEX NO. 850010/2024

RECEIVED NYSCEF: 01/11/2024

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 73 of 111

# EXHIBIT C

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2022062900904003001EEE76

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 9 |
|---|---|

**Document ID:** 2022062900904003  **Document Date:** 06-28-2022  **Preparation Date:** 06-29-2022
**Document Type:** ASSIGNMENT OF LEASES AND RENTS
**Document Page Count:** 7

| PRESENTER: | RETURN TO: |
|---|---|
| GOTHAM ABSTRACT & SETTLEMENT, LLC<br>622 THIRD AVENUE, SUITE 3801<br>GA-2974-NY-22<br>NEW YORK, NY 10017<br>212-767-0707<br>RECORDINGS@GOTHAMABSTRACT.COM | GOTHAM ABSTRACT & SETTLEMENT, LLC<br>622 THIRD AVENUE, SUITE 3801<br>GA-2974-NY-22<br>NEW YORK, NY 10017<br>212-767-0707<br>RECORDINGS@GOTHAMABSTRACT.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1517 | 149 | Entire Lot | 146 EAST 89TH STREET |

**Property Type:** APARTMENT BUILDING

### CROSS REFERENCE DATA

**Document ID:** 2022062900904002

### PARTIES

| ASSIGNOR: | ASSIGNEE: |
|---|---|
| 146 E 89 BORROWER 1 LLC<br>146 EAST 89TH STREET<br>NEW YORK, NY 10128 | CONNECTONE BANK<br>301 SYLVAN AVENUE<br>ENGLEWOOD CLIFFS, NJ 07632 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 3,800,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 3,800,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed | | 07-07-2022 10:16 |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | | | **2022000268626** |
| Recording Fee: | $ | 72.00 | | | |
| Affidavit Fee: | $ | 8.00 | *Annette M Hill* | | |

*City Register Official Signature*

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM INDEX NO. 850010/2024
NYSCEF DOC. NO. 9 24-10381-jpm Doc 23-1 Filed 03/20/24 Entered 03/20/24 17:37:25 Exhibit 1
Pg 75 of 111 RECEIVED NYSCEF: 01/11/2024

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2022062900904003001CECF6

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 9 |
|---|---|

**Document ID:** 2022062900904003      Document Date: 06-28-2022      Preparation Date: 06-29-2022
Document Type: ASSIGNMENT OF LEASES AND RENTS

**PARTIES**

**ASSIGNOR:**
146 E 89 BORROWER 2 LLC
146 EAST 89TH STREET
NEW YORK, NY 10128

**ASSIGNOR:**
146 E 89 BORROWER 3 LLC
146 EAST 89TH STREET
NEW YORK, NY 10128

Loan Number ███████

## ASSIGNMENT OF LEASES AND RENTS

-by-

## 146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC

-to-

## CONNECTONE BANK

TAX MAP DESIGNATION OF THE PREMISES ENCUMBERED HEREBY:

Block:      1517
Lot:        149
County:     New York

**Premises Address:   146 East 89th Street, New York, New York**

Record and Return to:

CONNECTONE BANK
Attn: Takisha Allen
Loan Operations Specialist
2455 Morris Avenue
Union, NJ 07083

7756860.3

Loan Number ▮▮▮▮▮▮

## ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT, made as of the 28th day of June, 2022, by **146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC,** as tenants in common, each a New York limited liability company and each having an office c/o Arch Companies at 88 University Place, 11th Floor, New York, New York 10003 (collectively, the **"Assignor"**) to **CONNECTONE BANK,** having an office at 301 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 (**"Assignee"**).

## RECITALS

WHEREAS, Assignor is the fee owner of that certain real property located at and known as 146 East 89th Street, New York, New York and the improvements thereon, as more particularly described by metes and bounds on Schedule A attached hereto (the **"Mortgaged Property"**); and,

WHEREAS, Assignee agreed to lend Assignor, the aggregate sum of **THREE MILLION EIGHT HUNDRED THOUSAND AND 00/100 ($3,800,000.00) DOLLARS** (the **"Loan"**) subject to the terms of the Loan Documents (as hereinafter defined); and,

WHEREAS, Assignor has executed a certain note (the **"Note"**) this date in the principal amount of **THREE MILLION EIGHT HUNDRED THOUSAND AND 00/100 ($3,800,000.00) DOLLARS** to evidence the Loan, and Assignor has also executed a certain First Mortgage and Security Agreement (the **"Mortgage"**) in the principal amount thereof as security for the Loan, which Mortgage shall encumber the Mortgaged Property; and

WHEREAS, the Assignee has refused to loan the Assignor such sum unless the Assignor, in addition to executing the Note, the Mortgage and other documents evidencing its obligation to the Assignee in the sum of $3,800,000.00 (all of the above documents together with this Assignment are hereinafter collectively referred to as the **"Loan Documents"**), also executes and delivers this Assignment of Leases and Rents as additional collateral for the repayment of the Loan in the amount of $3,800,000.00.

NOW, THEREFORE, in order to better secure the payment of the Debt (as defined in the Mortgage) to the Assignee and payment of all taxes, assessments, water rates and meter charges which may now be due and unpaid or which may hereafter become due and a charge against or a lien upon the Mortgaged Property, with interest and penalties thereon, the Assignor hereby assigns to the Assignee all of the rents, issues and profits due and to become due from the Mortgaged Property including, but not limited to, the Rents (as defined in the Mortgage - hereinafter, collectively, the **"Rents"**), together with all Contracts and Leases (each as defined in the Mortgage and hereinafter collectively referred to as the **"Leases"**) affecting the Mortgaged Property.

1.    **Present Assignment and License Back - Collection of Rents**
This Assignment is a present assignment of all the Rents and Leases from the Assignor to the Assignee. However, as of the date hereof, the Assignor is granted a license to all the Rents and Leases, which license shall be immediately revoked upon the occurrence of an Event of Default (as defined in the Mortgage) which continues beyond the expiration of any applicable notice and cure periods, but without any requirement that notice be provided that any such cure period has expired. At such time, the Assignee shall have the power and authority to enter upon and take possession of the Mortgaged Property and to demand, collect and receive from the tenants, lessees or other occupants now

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM          INDEX NO. 850010/2024
NYSCEF DOC. NO. 9     24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1   RECEIVED NYSCEF: 01/11/2024

Pg 78 of 111

Loan Number ▓▓▓▓▓▓

or at any time hereafter in possession of the Mortgaged Property or from any part thereof, Rents now due or to become due, to endorse the name of the Assignor or any subsequent owner of the Mortgaged Property on any checks, notes, or other instruments for the payment of money, to deposit the same in bank accounts, to give any and all acquittances or any other instruments in relation thereto in the name of the Assignor or in the name of the Assignee and, either in its own name or in the name of the Assignor, to institute, prosecute, settle or compromise any summary or legal proceedings for the recovery of such Rents or to recover the whole or any part of the Mortgaged Property, and to institute, prosecute, settle or compromise any other proceedings for the protection of the Mortgaged Property, for the recovery of any damages done to the Mortgaged Property, or for the abatement of any nuisance thereon. The Assignor shall also have the power to defend any legal proceedings brought against the Assignor or against any subsequent owner arising out of the operation of the Mortgaged Property.

2. **Authority of Assignee**

Upon the occurrence of an Event of Default (beyond the expiration of any applicable notice and cure periods provided in the Mortgage) the Assignee shall have the power to do any of the following:

(a)     to lease or rent the Mortgaged Property or any part thereof;

(b)     to employ an agent to rent and manage the Mortgaged Property;

(c)     to make any changes or improvements deemed by it, in its sole discretion, to be necessary or expedient for the leasing or renting of the Mortgaged Property;

(d)     to keep and maintain the Mortgaged Property in tenantable and rentable condition, as well as in a good state of repair;

(e)     to purchase all equipment or supplies necessary or desirable in the operation and maintenance of the Mortgaged Property;

(f)     to pay for all gas, electricity, power, painting, repairs, wages of employees and other items for maintenance of the Mortgaged Property;

(g)     to pay taxes, assessments, water and sewerage rates and meter charges now due and unpaid or which may hereafter become due and a charge or lien against the Mortgaged Property;

(h)     to pay the principal and/or interest required to be paid under the Loan Documents now due or hereafter to become due;

(i)     to pay the premiums on all policies of insurance now or hereafter effected by the Assignee;

(j)     to comply with orders of any governmental departments having jurisdiction against the Mortgaged Property;

(k)     to remove or bond any mechanic's liens, security interests or other liens against the Mortgaged Property; and

(l)     to generally pay all charges and expenses incurred in the operation of the Mortgaged Property.

3. **Payment of Expenses**

The Assignee shall have the authority to pay the cost of all of the matters herein mentioned out of the Rents and other revenues received from the Mortgaged Property. The cost of any such expenditures and of any payments which may be made by the Assignee under the provisions of this Assignment, including expenses and reasonable charges for counsel fees, shall be charged to the Assignor and for all purposes shall be deemed to be secured hereby and such costs may be retained by the Assignee out of the Rents and any other revenues received from the Mortgaged Property.

4. **Liability of Assignee**

2

7756860.3

Loan Number ▆▆▆▆▆

Except for its acts or failure to act due to its gross negligence or willful malfeasance, the Assignee shall in no way be liable for any act done or anything omitted by it but shall be liable only to account for all moneys that it may actually receive hereunder and nothing herein contained shall be construed so as to prejudice its right to institute or to prosecute any proceedings to foreclose the Mortgage or to enforce any lien on any other collateral which the Assignee may have or to prejudice any right which the Assignee may have by reason of any default, present or future, under the terms of the Loan Documents.

5.    **Transfer of Leases**
Effective upon the occurrence of an Event of Default (beyond the expiration of any applicable notice and cure periods), the Assignor shall physically assign, deliver, transfer and set over to the Assignee all Leases and the Assignor authorizes and empowers the Assignee to continue present leases or to demise any one or more apartments or spaces therein upon such terms and conditions as the Assignee may, in its sole discretion, deem just and proper and, if necessary, to execute, acknowledge and deliver any and all instruments in writing necessary to effectuate this Assignment. The Assignee shall have full power and authority to do and perform all acts or things necessary and requisite to be done in and about the Mortgaged Property as fully, and to all intents and purposes, as the Assignor might or could do if present, with full power of substitution and revocation. The Assignor hereby ratifies and confirms all that the Assignee shall lawfully do or cause to be done by virtue hereof.

6.    **Modification of Leases**
Except as permitted by the terms of the Mortgage, the Assignor will not, without the prior written consent of the Assignee: (i) cancel, modify or surrender any lease now existing with respect to any portion of the Mortgaged Property; (ii) reduce any Rents or change, modify or waive any provision of any existing Lease; nor (iii) enter into any Lease on any portion of the Mortgaged Property.

7.    **Failure to Account**
Except for its acts or failure to act due to its gross negligence or willful misconduct, the Assignee shall in no way be responsible or liable for any defalcation or failure to account for any Rents collected by any agent or collector of the Mortgaged Property whom it may designate or appoint to collect or manage the Mortgaged Property, nor shall the Assignee be in any way liable for the failure or refusal on its part to make repairs to the Mortgaged Property. The Assignee shall in no way be personally responsible for any debt incurred with respect to the Mortgaged Property.

8.    **Events of Default**
Anything in this Assignment to the contrary notwithstanding, the amount due to the Assignee under the Loan Documents shall, at the option of the Assignee, become immediately due and payable in the event of any Event of Default which continues beyond the expiration of any applicable notice and cure periods.

9.    **Rights of Assignee in Collateral**
This Assignment of Leases and Rents is intended for use in connection with the Loan. It is understood and agreed by the parties that this Assignment shall in no manner prejudice the Assignee or estop the Assignee in any way in the exercise of its rights as a mortgagee or as the plaintiff in any foreclosure action which may be instituted or in connection with the enforcement of the Mortgage or any other lien which the Assignee may have upon any interest of or in the Assignor and upon any other collateral which may be held by the Assignee and this Assignment shall at all times be subject to the exercise of any such rights which the Assignee may be entitled to take in connection therewith.

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 9     24-10381-jpm     Doc 23-1     Filed 03/20/24     Entered 03/20/24 17:37:25     Exhibit 1
Pg 80 of 111

INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

Loan Number ▮▮▮▮▮▮

10.  **Further Assignment**

The Assignee is given the privilege of assigning all of its right, title and interest in and to this Assignment to any person, firm or corporation to whom the Loan Documents are assigned and in such manner so that the holder of the Loan Documents shall have all of the rights and privileges given herein to the Assignee as if such assignee were originally named herein as the Assignee.

11.  **Sanction for Assignment**

If the Assignor is a corporation, the Assignor certifies and represents that this Assignment was authorized by the board of directors of the Assignor and there is no requirement under its certificate of incorporation or its by-laws for consent of shareholders to this transaction. If the Assignor is a partnership, the execution and delivery of this Assignment has been duly authorized by the general partner(s) of the Assignor pursuant to its partnership agreement. If the Assignor is a limited liability company, the execution and delivery of this Assignment has been duly authorized pursuant to its operating agreement or pursuant to a resolution of the members of the Assignor.

12.  **Notices**

All notices hereunder shall be in writing and delivered in accordance with the notice requirements set forth in the Mortgage.

[NO FURTHER TEXT ON THIS PAGE]

4

7756860.3

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 9

INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 81 of 111

**[Signature Page to Assignment of Leases and Rents]**

IN WITNESS WHEREOF, the Assignor has executed this Assignment as of the date first above written.

146 E 89 BORROWER 1 LLC
By:    JJ ARCH LLC
       Its Managing Member

By: _____
    JARED CHASSEN
    Authorized Signatory

146 E 89 BORROWER 2 LLC
By:    JJ ARCH LLC
       Its Manager

By: _____
    JARED CHASSEN
    Authorized Signatory

146 E 89 BORROWER 3 LLC
By:    JJ ARCH LLC
       Its Manager

By: _____
    JARED CHASSEN
    Authorized Signatory

STATE OF NEW YORK    }
                     } ss:
COUNTY OF  NY        }

On the 27th day of June , in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared JARED CHASSEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

SCOTT STERNBERG
NOTARY
NO. 01ST6427070
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
12-20-2025
PUBLIC
STATE OF NEW YORK

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 82 of 111

*First American Title Insurance Company*

Title Number: **GA-2974-NY-22**
Page **1**

### SCHEDULE A DESCRIPTION

ALL that certain plot piece or parcel of land, situate, lying and being in the Borough of Manhattan City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 89th Street, distant 91 feet 7 inches easterly from the corner formed by the intersection of the southerly side of East 89th Street and the easterly side of Lexington Avenue;

RUNNING THENCE southerly, parallel with Lexington Avenue 100 feet 81/2 inches to the center line of the block, 20 feet 11 inches;

THENCE northerly parallel with Lexington Avenue through a party wall, 100 feet 81/2 inches to the southerly side of East 89th Street;

THENCE westerly along the southerly side of East 89th Street, 20 feet 11 inches to the point or place of BEGINNING.

1

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 9
INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 83 of 111



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2022062900904003001S20F7

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2022062900904003     Document Date: 06-28-2022     Preparation Date: 06-29-2022
Document Type: ASSIGNMENT OF LEASES AND RENTS

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                          1

Loan Number ▓▓▓▓▓▓

## SECTION 255 AFFIDAVIT (L/R)

STATE OF NEW YORK  }
                   } ss:
COUNTY OF _New York_  }

JARED CHASSEN, being duly sworn, deposes and says:

I am the Authorized Signatory of JJ ARCH LLC, the Manager of each of 146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC, the owner of the property encumbered by the mortgages hereinafter described and, as such, I am familiar with the facts set forth herein:

First Mortgage and Security Agreement dated June 28, 2022 made by 146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC to CONNECTONE BANK in the principal sum of $3,800,000.00, which mortgage is intended to be recorded simultaneously herewith tendering mortgage tax in the amount of $106,400.00.

The mortgage tax due on the aforesaid mortgages was paid in full at the time of recording.

There is offered for recording simultaneously herewith an Assignment of Leases and Rents dated June 28, 2022 made by 146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC to CONNECTONE BANK.

After the maximum amount became secured thereby no reloans or readvances have become secured thereunder to the date of execution of the said supplemental instrument.

The said Assignment of Leases and Rents offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the above-mentioned mortgages.

**WHEREFORE**, deponent respectfully requests that said Assignment of Leases and Rents be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law.

[signature page to follow]

6

7756860.3

[Signature Page to 255 Affidavit – ALR]

**JARED CHASSEN**

Sworn to before me this
27th day of June, 2022

Notary Public

SCOTT STERNBERG
NOTARY
NO. 01ST6427070
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
12-20-2025
PUBLIC
STATE OF NEW YORK

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 6
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 86 of 111

# EXHIBIT D

Loan Number [REDACTED]

## GUARANTY

**GUARANTY** made as of the 28th day of June, 2022 by **JEFFREY SIMPSON and JARED CHASSEN,** each an individual and each having an address c/o Arch Companies at 88 University Place, 11th Floor, New York, New York 10003 (together with their respective heirs, legal representatives, successors and assigns hereinafter collectively called the **"Guarantor"**) to **CONNECTONE BANK,** 301 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 (hereinafter called the **"Lender"**).

## W I T N E S S E T H:

**WHEREAS**, 146 E 89 BORROWER 1 LLC, 146 E 89 BORROWER 2 LLC and 146 E 89 BORROWER 3 LLC, each a New York limited liability company (collectively, the **"Borrower"**) has requested Lender lend to Borrower the sum of THREE MILLION EIGHT HUNDRED THOUSAND AND 00/100 ($3,800,000.00) DOLLARS (the **"Loan"**) to assist Borrower in the acquisition of the premises located at 146 East 89th Street, New York, New York (the **"Premises"**), as more particularly described in the First Mortgage and Security Agreement (the **"Mortgage"**) given by Borrower and which Loan is evidenced by the First Mortgage Note of even date herewith in the amount of the Loan (the **"Note"**) made by Borrower and secured by the Mortgage; and

**WHEREAS**, Guarantor is desirous of having Lender make the Loan to Borrower; and

**WHEREAS,** Lender is unwilling to make the Loan, unless Guarantor guarantees the full performance by Borrower of all the terms and conditions of the Note, the Mortgage and all other documents executed in connection with the Loan (collectively, the **"Loan Documents"**).

**NOW, THEREFORE**, in consideration of these premises and in order to induce Lender to make the Loan, Guarantor hereby agrees as follows:

1.       Guarantor hereby jointly and severally and unconditionally guarantees the full, prompt, complete and faithful performance, payment, observance and fulfillment by Borrower of all of the obligations, covenants and conditions contained in the Loan Documents (including any and all amendments, modifications and supplements thereto which may be hereafter executed), and by this Guaranty Guarantor does hereby promise, in the event Borrower defaults on any payment due Lender under the Loan Documents, after written notice and beyond any applicable notice and/or cure period, to promptly make such payment to Lender upon Lender's written request so to do, notwithstanding any non-recourse or other provisions in the Loan Documents to the contrary. If Lender shall declare the Note to be immediately due and payable, then Guarantor shall, within five (5) days after demand in writing therefor, pay to Lender all amounts remaining unpaid under the Note and the other Loan Documents. If Guarantor fails to make, when due, any payment required to be made hereunder, then such payment shall bear interest from such due date until paid at the Default Rate (as defined in the Note), but only to the extent permitted by law.

2.       This Guaranty shall not be limited to any particular period of time, but rather shall continue and shall be irrevocable until all of the terms, covenants and conditions of the Loan Documents (including any and all amendments, extensions, modifications or supplements to the Loan Documents that may be hereafter agreed to by and between Borrower and Lender) have been fully and completely performed by Borrower, or otherwise discharged and released by Lender, and Guarantor shall not be released from any duty, obligation or liability hereunder so long as there is any claim of Lender against

1

Loan Number

Borrower arising out of the Loan Documents (including any and all amendments, modifications or supplements to the Loan Documents that may be hereafter agreed to by and between Borrower and Lender) which have not been performed, settled or discharged in full. Further, Guarantor shall not be released, nor shall Guarantor's obligation hereunder be in any way diminished by (a) any extension of time for payment granted Borrower by Lender, or any change in the place or terms of payment or other modification of the Loan Documents agreed upon between Borrower and Lender, or (b) any action taken under the Loan Documents by Lender in the exercise of any right thereby conferred, or (c) any delay, failure or omission on the part of Lender to enforce any such right, or (d) any act or event which might, but for this provision of this instrument be deemed a legal or equitable discharge of a surety, or (e) any failure by Lender to properly file, record or otherwise perfect any lien on or security interest in, or any failure properly to insure or otherwise deal with any security for, the Loan, or (f) the lack of genuineness, validity, regularity, or enforceability of the Note or any of the other Loan Documents, or (g) any release of any other guarantor or any other party who may be liable in any manner for payment of all or any portion of the Loan; and Lender shall have the full power and authority, without notice to Guarantor, to grant any extensions of time for the payment of any indebtedness or the performance of any obligations under the Loan Documents as it may seem proper, but shall be under no obligation to do so.

3.     Guarantor does hereby waive (a) notice of acceptance of this Guaranty by Lender, (b) notice of any liability to which it may apply, notice of presentment, diligence, demand or payment and notice of protest, (c) notice of any and all extensions, modifications and/or waivers in the obligations of Borrower to Lender under the Loan Documents, (d) notice of any default by or on the part of Borrower under the Loan Documents, and (e) the right to insist upon, plead, or in any manner whatsoever claim the benefit or advantage of, any and all appraisal, valuation, stay, extension, marshalling-of-assets, redemption, homestead and all other provisions of law which are or might be in conflict with the terms of this Guaranty. The foregoing waivers and other waivers herein are of the essence of this transaction and Guarantor understands Lender would not have made the Loan but for this Guaranty and such waivers.

4.     Guarantor's liability hereunder shall not (a) be affected in any manner by the fact Lender may receive or accept additional or other security for the performance and payment of Borrower's obligations under the Loan Documents and/or (b) impair the obligations of Borrower under the Loan Documents, and/or (c) be limited by any other guaranty or indemnity agreements executed by Guarantor.

5.     This Guaranty is a guaranty of payment and not of collection and Guarantor's liability hereunder shall be primary, direct and immediate, and shall not be conditional or contingent upon Lender's pursuit of whatever remedies it may have against Borrower for the performance of any obligation of Borrower under the Loan Documents. Suit may be brought, instituted or maintained against Guarantor in the first instance and without the necessity of the joinder of Borrower or of any other party or parties. Further, all remedies afforded to Lender by reason of this Guaranty and/or otherwise by law are separate and cumulative remedies and it is agreed that no one of such remedies, whether exercised by Lender or not, shall be deemed to be an exclusion of any of the other remedies available to Lender and shall not limit or prejudice any other legal or equitable remedy which Lender may have.

6.     Any and all payments made pursuant to the provisions of this Guaranty shall be regarded as payments in gross, and consequently Guarantor shall not have the right of subrogation to any rights or remedies that Lender may now or hereafter have against Borrower, its successors and

2

7756860.3

Loan Number ▇▇▇▇▇▇

assigns, unless and until Lender's claim against Borrower, its successors and assigns shall have been satisfied in full. If any payment shall be made by or on behalf of Borrower to Guarantor after the occurrence of an Event of Default under the Loan Documents and prior to the unconditional full payment and discharge of the Loan, each and every amount so paid will forthwith be paid to Lender to be credited and applied against the Loan, whether matured or unmatured.

7.    All property of Guarantor held by Lender shall be subject to a lien and as security for any and all liabilities of Guarantor. The term "property of Guarantor" shall include all property of every description, now or hereafter in the possession or custody of or in transit to Lender for any purpose, including safekeeping, collection or pledge, for account of Guarantor, or as to which Guarantor may have any right or power. The balance of every account of Guarantor with, and each claim of Guarantor against, Lender existing from time to time, shall be subject to a lien and subject to be set off against any and all liabilities of Guarantor, and Lender may at any time or from time to time at its option and without notice appropriate and apply toward the payment of any of the liabilities of Guarantor the balance of each such account of Guarantor with, and each such claim of Guarantor against Lender. The term "property of Guarantor" shall also include any and all book entry U.S. Treasury bills and other book entry securities purchased on behalf of Guarantor and maintained in an account(s) at Lender.

8.    Upon nonpayment when due of any of the liabilities of Borrower or Guarantor to Lender, Lender may immediately or at any time or times thereafter without demand or notice to Borrower or Guarantor and without advertisement, all of which are hereby expressly waived, sell, resell, assign and deliver all or part of said "property of Guarantor" at public or private sale, for cash, upon credit or for future delivery. Upon each such sale Lender may purchase the whole or any part of such property, free from any right of redemption, which is hereby waived and released. In the event Lender shall bid at any foreclosure or trustee's sale or at any private sale permitted by law or by the Loan Documents, Lender may bid all or less than the amount of the indebtedness.

9.    (a)    In order to induce Lender to make the Loan, Guarantor hereby represents and warrants that as of the date hereof and at all times hereafter during the term of the Loan: (i) Guarantor has full power and authority to enter into this Guaranty and perform its obligations hereunder, (ii) the execution, delivery and performance by it of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene any provision of any existing law, rule or regulation or any judgment, injunction, order, decree, franchise or permit applicable to it, or any agreement or instrument to which it or any of its assets is a party or is subject, (iii) this Guaranty has been duly executed and delivered by Guarantor and is the legal, valid and binding obligation of Guarantor, (iv) the financial statements heretofore delivered by Guarantor to Lender, if any, are true and complete in all material respects, and are prepared on a consistent basis in a form acceptable to Lender and fairly and accurately present the financial condition of Guarantor as at the end of (or for) the reporting period covered thereby, (v) no authorization, consent, approval, exception, permit or license of, or filing with, any governmental or public body or authority is required to authorize, or is otherwise required in connection with, the valid execution or delivery by Guarantor of this Guaranty, or the performance of Guarantor's obligations hereunder, and all conditions required to the execution and delivery hereof and performance hereunder have been satisfied as of the date hereof, (vi) there has been no material adverse change in the financial condition of Guarantor since the date of such financial statements, except as previously disclosed to Lender, (vii) there are no actions, suits or proceedings pending, or, to its knowledge, threatened against or adversely affecting it, and no defaults after expiration of cure periods by it with respect to any agreement or instrument to which it is a party or to which it or its assets is subject, which might (individually or in the aggregate) result in a material

3

Loan Number

adverse change, and (viii) Guarantor is fully familiar with all of the terms, conditions and covenants of this Guaranty.

      (b)    Guarantor hereby covenants and agrees that Guarantor will not, without the prior written consent of Lender, either directly or indirectly, convey, transfer, lease, or assign any property of any nature whether real, personal, or mixed, tangible or intangible, or any interest therein now or hereafter owned by Guarantor for less than the fair market value of such property.

      10.    Notwithstanding anything to the contrary contained herein, this Guaranty shall remain in full force and effect and continue to be effective should any petition be filed by or against Borrower under the Bankruptcy Reform Act of 1978, as at any time amended, for liquidation or reorganization or should Borrower become insolvent or make an assignment for the benefit of creditors or a receiver or trustee be appointed for all or any significant part of Borrower's assets, and shall continue to be effective or be reinstated, as the case may be, if at any time payment of the Loan, or any part thereof, is, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by Lender whether as a "preferential transfer", "voidable preference", "fraudulent conveyance", or otherwise, all as though such reduction, repayment or restoration by Lender had not been made. Furthermore, if claim is ever made upon Lender or any subsequent holder of the Loan for repayment or recovery of any amount or amounts received in payment or on account of the Loan and any of the aforesaid payees repays all or part of said amount by reason of any final and non-appealable judgment, decree or order of any court or administrative body having jurisdiction over such payee or any of its property, then and in such event Guarantor agrees that any such judgment, decree or order, shall be binding upon Guarantor, notwithstanding any revocation hereof or the cancellation of the Note or other instrument evidencing any liability of Borrower, and Guarantor shall be and remain liable as if such amount had never originally been received by any such payee. This Section shall survive repayment of the Loan.

      11.    Guarantor will furnish to Lender, upon written request, such information regarding its business, affairs and financial condition as are required by the Mortgage.

      12.    GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE LOAN, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY GUARANTOR.

      13.    Guarantor hereby expressly and unconditionally waives, in connection with any suit, action or proceeding brought by or on behalf of Lender on this Guaranty, any and every right Guarantor may have to (i) interpose any defense based upon any statute of limitations or any claims of laches, (ii) injunctive relief, (iii) interpose any counterclaim therein (other than compulsory counterclaims), and (iv) have the same consolidated with any other or separate suit, action or proceeding. Nothing herein contained shall prevent or prohibit Guarantor from instituting or maintaining a separate action against Lender with respect to any asserted claim.

Loan Number ███████████

14.     This Guaranty, and the rights and obligations of the parties hereunder, shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law).    Guarantor hereby irrevocably: (a) agrees that any legal action or proceeding arising out of or relating to this Guaranty may be brought in the courts of the State of New York in any county or of the United States of America for the Eastern or Southern Districts of New York, as Lender may elect, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding, and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.    Any such suit, action or proceeding shall be initiated by any methods of service provided for under applicable law.    Nothing contained herein shall affect the right of Lender to bring any suit, action or proceeding against Guarantor or its property in the courts of any other jurisdiction.

15.     This Guaranty shall be operative only for the benefit of Lender and its successors and assigns and no third parties shall have any relationship with or in trust created therefrom.

16.     If Guarantor shall request Lender's consent or approval pursuant to any of the provisions of this Guaranty or otherwise, and Lender shall fail or refuse to give, or shall delay in giving, such consent or approval, Guarantor shall in no event make, or be entitled to make, any claim for damages (nor shall Guarantor assert, or be entitled to assert, any such claim by way of defense, setoff, or counterclaim) based upon any claim or assertion by Guarantor that Lender unreasonably or improperly withheld or delayed its consent or approval, and Guarantor hereby waives any and all rights that it may have from whatever source derived, to make or assert any such claim.    Guarantor's sole remedy for any such failure, refusal, or delay shall be an action for a declaratory judgment, specific performance, or injunction, and such remedies shall be available only in those instances where Lender has expressly agreed in writing not to unreasonably withhold or delay its consent or approval or where, as a matter of law, Lender may not unreasonably withhold or delay the same.

17.     Guarantor shall pay to Lender all reasonable sums as and for attorneys' fees and disbursements and such costs and expenses as may be incurred by Lender in the successful enforcement of this Guaranty, including, without limitation, any bankruptcy or insolvency proceeding brought by or against Borrower and/or Guarantor to the extent that Guarantor's liability under, or the enforceability of, this Guaranty shall be an issue or otherwise litigated.    This paragraph shall survive the repayment of the Loan and/or later reinstatement of this Guaranty.

18.     Upon the happening of any of the following events:    (a) the insolvency of Borrower or any Guarantor, or (b) the suspension of business of Borrower or any Guarantor, or (c) the making by Borrower or any Guarantor of an assignment for the benefit of creditors, or (d) a trustee or receiver being appointed for Borrower or any Guarantor or for any property of either of them, or (e) any proceeding being commenced by or against Borrower or any Guarantor under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute which remains undismissed or undischarged for ninety (90) days, then and in any such event, and at any time thereafter, Lender may declare the Loan, whether or not then due, to be immediately due and payable hereunder as to Guarantor, and Lender shall be entitled to enforce the obligations of this Guaranty as against Guarantor.    In addition, Guarantor hereby agrees and consents that should it or Borrower be the subject of a Bankruptcy Event (as defined in the Mortgage), Lender shall thereupon be entitled, and Guarantor irrevocably consents, to relief from any automatic stay imposed by Section 362 of the United Stated Bankruptcy Code, or otherwise, on or against the exercise

Loan Number ▇▇▇▇▇

of the rights and remedies otherwise available to Lender as provided herein, as provided in the Mortgage, or with respect to any other Loan document or as otherwise provided by law.

19. Guarantor hereby agrees and consents that should it or Borrower be the subject of a Bankruptcy Event (as defined in the Mortgage), Lender shall thereupon be entitled, and Guarantor irrevocably consents, to relief from any automatic stay imposed by Section 362 of the United Stated Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided herein, as provided in the Mortgage, or with respect to any other Loan document or as otherwise provided by law.

20. This Guaranty may not be changed, modified or waived orally, shall be construed in accordance with the laws of the State of New York and shall inure to the benefit of Lender, its successors and assigns and shall be binding upon Guarantor, its heirs, legal representatives and assigns.

21. All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by certified mail, return receipt requested or overnight mail by a nationally recognized courier, at each party's address above stated, or at such other address which a party shall have notified the other party in writing. Any written notice sent by certified mail, return receipt requested shall be deemed to have been served five (5) days after the date the same is mailed in accordance with the foregoing provisions. Notice sent by overnight carrier shall be deemed to have been served one (1) Business Day (as defined in the Note) after the date same is mailed.

22. If there is more than one Guarantor hereunder and/or other guaranties in respect of the obligations of Borrower set forth herein, the obligations of Guarantors shall be joint and several. This Guaranty may be executed in counterparts, each of which shall constitute an original, and when taken together shall constitute one and the same Guaranty.

23. If any provision or portion thereof of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken, and severed from this Guaranty, and the remaining provisions and portions thereof shall continue in full force and effect. Guarantor agrees, upon Lender's request, to execute and deliver to Lender any additional instruments or documents reasonably considered by Lender to be necessary to cause this Guaranty, to be, become or remain valid and effective.

24. Guarantors hereby acknowledge their reporting requirements pursuant to Section 1.06 of the Mortgage.

25. This Guaranty may be executed in any number of counterparts and all of such counterparts shall together constitute one and the same agreement. The execution and delivery of an executed counterpart of this Guaranty and any other Loan Document by facsimile transmission, electronic mail in pdf form or other electronic signature shall be as effective as execution and delivery of a manually executed counterpart hereof; provided, however, that upon request by Lender the parties agree to promptly provide wet ink signatures hereto.

[NO FURTHER TEXT ON THIS PAGE]

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 6

INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 93 of 111

[Signature Page to Guaranty]

       **IN WITNESS WHEREOF**, Guarantor has executed and delivered this Guaranty as of the day and year first above written.

JEFFREY SIMPSON, Individually

JARED CHASSEN, Individually

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 6
INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 94 of 111

**[Signature Page to Guaranty]**

**IN WITNESS WHEREOF**, Guarantor has executed and delivered this Guaranty as of the day and year first above written.

_____
**JEFFREY SIMPSON, Individually**

_____
**JARED CHASSEN, Individually**

**[Acknowledgment Page to Guaranty]**

STATE OF NEW YORK    }
                          }    ss:
COUNTY OF _NY_    }

        On the _1st_ day of _July_, in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared JEFFREY SIMPSON, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

                                         Notary Public

SCOTT STERNBERG
NOTARY
NO. 01ST6427070
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
12-20-2025
PUBLIC
STATE OF NEW YORK

STATE OF NEW YORK    }
                          }    ss:
COUNTY OF _NY_    }

        On the _1st_ day of _July_, in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared JARED CHASSEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

                                         Notary Public

SCOTT STERNBERG
NOTARY
NO. 01ST6427070
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
12-20-2025
PUBLIC
STATE OF NEW YORK

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 9
INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 96 of 111

**[Acknowledgment Page to Guaranty]**

STATE OF NEW YORK    }
                     }    ss:
COUNTY OF _____ }

On the _____ day of _____, in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared JEFFREY SIMPSON, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

STATE OF NEW YORK    }
                     }    ss:
COUNTY OF _NY_       }

On the _27th_ day of _June_, in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared JARED CHASSEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

_____
Notary Public

SCOTT STERNBERG
NOTARY
NO. 01ST6427070
QUALIFIED IN
NEW YORK COUNTY
COMM. EXP.
12-20-2025
PUBLIC
STATE OF NEW YORK

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 7

INDEX NO. 850010/2024

RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 97 of 111

EXHIBIT E

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2023113000092001001E71FF

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2023113000092001    **Document Date:** 11-17-2023    **Preparation Date:** 11-30-2023
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| APPELLATE LAND SERVICES<br>6851 JERICHO TPK, SUITE 110<br>CR-146EAST<br>SYOSSET, NY 11791<br>516-801-6366<br>RECORDINGS@APPELLATELAND.COM | VALLELY LAW PLLC<br>6851 JERICHO TPK.<br>SUITE 165<br>SYOSSET, NY 11791<br>Attn: Erick R. Vallely , Esq. |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1517 | 149 | Entire Lot | 146 EAST 89TH STREET |

Property Type: APARTMENT BUILDING

### CROSS REFERENCE DATA

**CRFN:** 2022000268625

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| CONNECTONE BANK<br>301 SYLVAN AVENUE<br>ENGLEWOOD CLIFFS, NJ 07632 | 146 89 FUNDING LLC<br>1140 BROADWAY, SUITE 302<br>NEW YORK, NY 10001 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed    11-30-2023 10:56 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | **2023000313768** | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | |

*(Space above is for Recorder's use)*

Recorded By:

Vallely Law PLLC
6851 Jericho Tpke, Suite 165
Syosset, NY 11791
Attention: Erick R. Vallely, Esq.

## ASSIGNMENT OF MORTGAGE

CONNECTONE BANK ("**Assignor**"), whose address is 301 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby assigns, transfers, sets over and conveys to 146 89 Funding LLC, whose address is 1140 Broadway, Suite 302, New York, New York 10001, all of Assignor's right, title and interest in and to the First Mortgage and Security Agreement dated June 28, 2022, executed by 146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC and 146 E 89 Borrower 3 LLC in favor of ConnectOne Bank, recorded in the Office of the City Register of the City of New York (the "**Records**") on July 7, 2022, as CRFN 2022000268625 (the "**Security Instrument**"), all as the same may have been assigned, amended, supplemented, restated or modified.

The Security Instrument relates to the real property described in **Schedule A** attached hereto.

[THE REMAINDER OF THIS PAGE WAS LEFT BLANK INTENTIONALLY]

48256/0120-46519756v1

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an Assignment within the Secondary Mortgage Market.

**IN WITNESS WHEREOF,** Assignor has caused this Assignment of Mortgage to be executed to be effective as of November 17, 2023.

CONNECTONE BANK

By:

Name: William Tierney
Title: Senior Vice President

STATE OF NEW JERSEY    )
                       ) SS.:
COUNTY OF BERGEN       )

On the 17th day of November in the year 2023, before me, the undersigned, a Notary Public in and for said state, personally appeared William Tierney, in his capacity as a Senior Vice President of the Assignor, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the entity upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the County of Bergen, State of New Jersey.

Notary Public

My commission expires: August 10, 2026

GIAN F. CALAUTTI
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires August 10, 2026

48256/0120-46519756v1

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 7
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 101 of 111

## SCHEDULE A

### SCHEDULE A DESCRIPTION

ALL that certain plot piece or parcel of land, situate, lying and being in the Borough of Manhattan City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 89th Street, distant 91 feet 7 inches easterly from the corner formed by the intersection of the southerly side of East 89th Street and the easterly side of Lexington Avenue;

RUNNING THENCE southerly, parallel with Lexington Avenue 100 feet 81/2 inches to the center line of the block, 20 feet 11 inches;

THENCE northerly parallel with Lexington Avenue through a party wall, 100 feet 81/2 inches to the southerly side of East 89th Street;

THENCE westerly along the southerly side of East 89th Street, 20 feet 11 inches to the point or place of BEGINNING.

48256/0120-46519756v1

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM

NYSCEF DOC. NO. 8

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 102 of 111

INDEX NO. 850010/2024

Exhibit 1

RECEIVED NYSCEF: 01/11/2024

# EXHIBIT F

**ADVANTAGE FORECLOSURE SERVICES, INC.**

**Title No. FCL-178090-24 (File No. N/A)**

**SCHEDULE C**
**NECESSARY PARTIES DEFENDANT**

This certification is made on the assumption that all parties are to be personally served in the proposed action. If any of the persons below named be dead, their legal representatives and successors in interest should be made parties defendant after the search has been amended. If investigation discloses that there are other persons having an interest in the property whose rights are subordinate to the mortgage to be foreclosed, such persons should also be made parties defendant after search has been amended. If any leases, mortgages or other liens recorded prior to the period covered by this search, but which, by reason or subordinate clauses contained thereon or otherwise, are in fact subordinate to the lien of the mortgage to be foreclosed, all persons interested in said leases, mortgages or other liens should also be made parties defendant after search has been amended.

If the United States of America, State of New York or City of New York, or any of its agencies, are made parties, the complaint must set forth the reason therefore in detail. (See R.P.A. and P.L. Sec. 202A and 28 U.S.C.A. 2410).

The addresses of the parties herein given, were obtained from the record and are not represented to be the present addresses of the parties.

Consideration should be given to the desirability of naming as defendants the obligor named in the bond or in any extension, assumption or guaranty agreement.

All occupants of the premises herein described should be made parties defendant.

The Company should be requested to continue searches to the date of filing of the lis pendens.

| **PARTIES DEFENDANT** | **INTEREST IN PREMISES** |
|---|---|
| 1.    146 E 89 Borrower 1 LLC<br>146 East 89th Street<br>New York, New York 10128<br>and/or<br>c/o Arch Companies<br>88 University Place, 11th Floor<br>New York, New York 10003 | record owner and obligor on note/mortgage to be foreclosed |
| 2.    146 E 89 Borrower 2 LLC<br>146 East 89th Street<br>New York, New York 10128<br>and/or<br>c/o Arch Companies<br>88 University Place, 11th Floor<br>New York, New York 10003 | record owner and obligor on note/mortgage to be foreclosed |

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 8
24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
RECEIVED NYSCEF: 01/11/2024
Pg 104 of 111

**ADVANTAGE FORECLOSURE SERVICES, INC.**

**Title No. FCL-178090-24 (File No. N/A)**

**SCHEDULE C**
**NECESSARY PARTIES DEFENDANT**

3.     146 E 89 Borrower 3 LLC                    record owner and obligor on note/mortgage
       146 East 89th Street                       to be foreclosed
       New York, New York 10128
       and/or
       c/o Arch Companies
       88 University Place, 11th Floor
       New York, New York 10003

4.     ConnectOne Bank                            u.c.c.-1 lienor
       310 Sylvan Avenue
       Englewood Cliffs, New Jersey 07632

5.     Alba Carting & Demolition Inc.             mechanics lienor
       240 West 52nd Street, 5th Floor
       New York, New York 10019

6.     New York City Environmental Control Board  judgment creditor
       59-17 Junction Boulevard
       Corona, New York 11358

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 8
1/8/24, 11:04 AM 24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 105 of 111
RECEIVED NYSCEF: 01/11/2024

# DataTrace

# Documents related to: ECB's; Address: 146 EAST 89 ST

## ECB's vs Premises as of 12/2023

**This search for ECB's against 146 EAST 89 ST has returned** 6 results (4 selected for print/export). Run on 1/09/2024

| Name | Violation # | Order Date | Notice Date | Docket Date | Balance | Satisfaction |
|------|-------------|------------|-------------|-------------|---------|--------------|
| 146 E 89 ST ASSOC | 014031870L | 10/19/22 | | 2/2023 | $1,000.00 | |
| **Address:** 146 EAST 89 STREET NEW YORK 10128 | | | | | | |
| 146 E 89 ST ASSOC LLC | 014056723M | 9/14/23 | | 12/2023 | $600.00 | |
| **Address:** 146 EAST 89 STREET NEW YORK 10128 | | | | | | |
| 146 EAST BORROWER 1 LLC | 035646889Y | 7/27/23 | 9/11/23 | 10/2023 | $12,500.00 | |
| **Address:** 146 EAST 89 STREET NEW YORK 10128 | | | | | | |
| 146 EAST BORROWER 1 LLC | 035646890L | 7/27/23 | 9/11/23 | 10/2023 | $6,250.00 | |
| **Address:** 146 EAST 89 STREET NEW YORK 10128 | | | | | | |

Data Loaded: 12/29/2023

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 9
INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024
1/9/24, 1:02 AM
24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 106 of 111

# DataTrace

# Documents related to: Liens; Block: 1517, Lot: 149 in New York County

### Lien Information (from 1/01/1987 to 1/01/2024)

**This search for Liens against Block: 1517, Lot: 149 in New York County has returned** 9 results (1 selected for print/export) for All Book Type. Run on 1/09/2024

### #1 Mechanics Lien Index – Control Number 004207209 01

| Docketing Data: | | Source Document: | |
|---|---|---|---|
| **Docketing Date:** | 10/10/2023 | **Type:** | MLB - MECHANICS LIEN |
| **Docketing Time:** | 10:38 AM | **County:** | NEW YORK |
| **Effective Date:** | 10/10/2023 | **Court:** | |
| **Effective Time:** | 10:38 AM | **Index #:** | 90 |
| **Clerk / Seq #:** | NDENARDO 023 | **Total Blocks & Lots:** | 01 |
| | | **Doc #:** | 0000 |

**Premises:**

**Block:** 01517      **Lot:** 00149

**Lienor:**

| **Name:** | ALBA CARTING & DEMOLITION INC |
|---|---|
| **Address:** | 240 W 52ND STREET FL 5 |
| **City ID:** | NY NY |
| **ZipCode:** | 10019 |
| **Type:** | C |

### Owner / Corporation

**Name:** 146 E 89 BORROWER 1 LLC   **Type:** C

**Disposition Data:**

**Disposition:**

**Date:**                                           **Operator ID:**

### Against Whom Claimed:

| **Name:** | ARCH BUILDERS LLC |
|---|---|
| **Address:** | |
| **City:** | |
| **Zip code:** | |
| **Type:** | C |

**Amount:** $3,356.26

### Remarks:

| Date | Remarks |
|---|---|
| 10/10/2023 | AFFIDAVIT OF SERVICE DOC #1175 |

**Download Date:** 10/11/2023

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024
NYSCEF DOC. NO. 9
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 107 of 111

EXHIBIT G

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
NYSCEF DOC. NO. 9
24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 108 of 111

INDEX NO. 850010/2024
RECEIVED NYSCEF: 01/11/2024



1325 Avenue of the Americas, 19th Floor
New York, NY 10019
212-752-8000   212-752-8393  fax

New Jersey
—
Delaware
—
Maryland
—
Texas
—
Florida

James T. Kim
Member
Admitted in NY and NJ

Reply to New York Office
Writer's Direct Line: 201.525.6210
Writer's Direct Fax: 201.678.6210
Writer's E-Mail: jkim@coleschotz.com

October 31, 2023

**Via FEDEX and Email**

146 E 89 Borrower 1 LL
146 E 89 Borrower 2 LLC
146 E 89 Borrower 3 LLC
c/o Arch Companies
88 University Place, 11th Floor
New York, New York 10003
Attn:  Jared Chassen
Email:  jchassen@archcre.com

     Re:    **Notice of Default, Acceleration, and Reservation of Rights**

Dear Mr. Chassen:

    This Firm is counsel to ConnectOne Bank ("Lender").  Reference is made to that certain loan in the original principal amount of $3,800,000.00 (the "Loan"), issued by Lender to 146 E 89 Borrower 1 LLC, 146 E 89 Borrower 2 LLC and 146 E 89 Borrower 3 LLC (collectively, the "Borrower").  The Loan is memorialized by that certain First Mortgage Note (the "Note") dated June 28, 2022, executed by Borrower in favor of Lender; the First Mortgage and Security Agreement (the "Mortgage") dated June 28, 2022, pursuant to which Borrower granted Lender a first mortgage against certain real property and improvements thereon located at 146 East 89th Street, New York, New York (the "Property"); the Assignment of Leases and Rents (the "ALR") dated June 28, 2022, executed by Borrower in favor of Lender; the Guaranty (the "Guaranty") dated June 28, 2022, executed by Jeffrey Simpson and Jared Chassen (collectively, the "Guarantors") in favor of Lender; and the Environmental Indemnity Agreement (the "Indemnity") dated June 28, 2022, executed by the Guarantors in favor of Lender.  The Note, Mortgage, ALR, Guaranty, Indemnity and all other instruments and documents evidencing, referencing, and securing the Loan are collectively referred to herein as the "Loan Documents".  Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to said terms in the Note and Mortgage.

    Several Events of Default exist and are continuing under the Loan Documents.  Specifically, and without limitation, Borrower has failed to make the Monthly Payment due on October 1, 2023, pursuant to Section 2 of the Note.  Borrower's failure to pay to Lender the

Cole Schotz P.C.

October 31, 2023
Page 2

Monthly Payment due on October 1, 2023, constitutes an Event of Default pursuant to Section 2.01(a) of the Mortgage.

As a result of Borrower's defaults under the Loan Documents, Lender hereby exercises its right to declare the outstanding principal balance of the Loan, together with all accrued and unpaid interest thereon and all other sums due under the Loan Documents, to be immediately due and payable in full, and demand is hereby made for payment in full of the Loan.  Lender hereby elects to immediately accelerate the entire outstanding amount due and owing to it under the Loan Documents such that all sums due and owing under the Loan Documents are now immediately due and payable to Lender in full.  Please contact the undersigned or Lender if you request an updated pay-off statement.

If Borrower fails to immediately pay to Lender the outstanding indebtedness due pursuant to the Loan Documents, Lender will proceed with enforcement of its rights and remedies under the Loan Documents including, without limitation, the commencement of a foreclosure action and other related proceedings against the Borrower and Guarantors.  Lender's acceptance of any payments due under the Loan Documents including, without limitation, outstanding principal, accrued interest, default interest, late fees, attorneys' fees or other reimbursable expenses, should not be construed as, nor constitute, a waiver by Lender of any Event of Default, other breaches or any of Lender's rights, claims and remedies, all of which are expressly reserved.

This Notice should not be construed as an admission that: (i) any written notices are otherwise due under the Loan Documents; or (ii) other defaults or Events of Default do not exist under the Loan Documents.  All rights and remedies available to Lender are cumulative and may be exercised separately, successively or concurrently at the sole discretion of Lender.

Lender reserves all rights and remedies available under the Loan Documents and applicable law.  Please be guided accordingly.

Very truly yours,

COLE SCHOTZ P.C.

*/s/ James T. Kim*

James T. Kim

JK:jk

cc:    Jeffrey Simpson (Via Email, jsimpson@archcre.com)
       Meltzer Lippe Goldstein & Breitstone, LLP (Attn: Gary Meltzer, Esq., Via Email)
       ConnectOne Bank (Via Email)

24-10381-jpm   Doc 23-1   Filed 03/20/24   Entered 03/20/24 17:37:25   Exhibit 1
Pg 110 of 111

# EXHIBIT H

FILED: NEW YORK COUNTY CLERK 01/11/2024 12:55 PM
INDEX NO. 850010/2024

NYSCEF DOC. NO: 10
RECEIVED NYSCEF: 01/11/2024

24-10381-jpm    Doc 23-1    Filed 03/20/24    Entered 03/20/24 17:37:25    Exhibit 1
Pg 111 of 111

**ADVANTAGE FORECLOSURE SERVICES, INC.**

**Title No.  FCL-178090-24 (File No. N/A)**

**SCHEDULE A**
**DESCRIPTION**

**Block 1517 and Lot 149**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected,, situate, lying and being in the Borough of Manhattan City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the Southerly side of East 89th Street, distant 91 feet 7 inches Easterly from the corner formed by the intersection of the Southerly side of East 89th Street and the Easterly side of Lexington Avenue;

RUNNING THENCE Southerly, parallel with Lexington Avenue 100 feet 8 ½ inches to the center line of the block;

THENCE Easterly along the center line of the block, 20 feet 11 inches;

THENCE Northerly parallel with Lexington Avenue through a party wall, 100 feet 8 ½ inches to the Southerly side of East 89th Street;

THENCE Westerly along the Southerly side of East 89th Street, 20 feet 11 inches to the point or place of BEGINNING.

**Premises known as 146 East 89th Street, New York, New York 10128**