Hearing Date & Time: April 5, 2024 at 9:30 a.m. ET
Objection Deadline: April 1, 2024 at 5:00 p.m. ET

**GRIFFIN LLP**
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile: (646) 998-8284
Scott A. Griffin
Frank L. Eaton

-and-

**WIGGIN AND DANA LLP**
437 Madison Avenue, 35th Floor
New York, New York 10022
Telephone: (212) 490-1700
Facsimile: (212-551-2888
Nathan Denning
Andrew C. Ritter (*pro hac vice* pending)
Kate E. Cassidy

*Proposed Co-Counsel for the Debtor
and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                        :

In re:                          :       Chapter 11

                            :       (Subchapter V)

JJ ARCH LLC,               :

                            :       Case No. 24-10381 (JPM)

                            :

                   Debtor.[1]    :

                            :
------------------------------------------------------------X

## DEBTOR'S OMNIBUS OBJECTION TO MOTIONS FOR ENTRY OF ORDERS (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO CERTAIN CORPORATE GOVERNANCE DISPUTES AND/OR (II) MODIFYING THE AUTOMATIC STAY AS NECESSARY IN ORDER TO ADDRESS SUCH CORPORATE GOVERNANCE DISPUTES

JJ Arch LLC, the debtor and debtor in possession in the above-captioned case (the

"Debtor" and, such case, the "Chapter 11 Case"), by and through its undersigned counsel, files this

omnibus objection (the "Objection") to *Arch Real Estate Holdings LLC's Motion for Entry of an*

---

[1] The last four digits of the Debtor's federal tax identification number are 4251.

*Order (I) Confirming that the Automatic Stay Does Not Apply to Certain Corporate Governance Disputes, and/or (II) Modifying the Automatic Stay as Necessary in Order to Address Such Corporate Governance Disputes* [Dkt. 38] (the "AREH Motion") and the *Motion for Entry of an Order (I) Confirming that the Automatic Stay Does Not Apply to Certain Corporate Governance Disputes, and/or (II) Modifying the Automatic Stay as Necessary in Order to Address Such Corporate Governance Disputes* [Dkt. 40] (the "Chassen Motion" and, together with the AREH Motion, the "Stay Motions").  In support of this Objection, the Debtor submits the *Declaration of Andrew Ritter in Support of Debtor's Omnibus Objection to Stay Modification Motions* (the "Ritter Declaration"), filed contemporaneously herewith, and respectfully states as follows:

## **PRELIMINARY STATEMENT[2]**

1.      Chassen, AREH and Oak (acting by and through AREH) have repeatedly argued that this Chapter 11 Case is "nothing more than a forum shopping exercise with no legitimate bankruptcy purpose."  AREH Motion at 2.  These arguments ignore the troubling context in which this Chapter 11 Case arose and the urgent need for the transparency provided by this Chapter 11 Case that the Stay Motions themselves demonstrate.

2.      Like many other businesses in the real estate industry, the Debtor and the other Arch Companies began to experience financial distress by no later than mid-2022, at which time Simpson, as managing member of the Debtor, and the Debtor, as managing member of AREH, sought to address such distress as quickly as possible.  In connection with such efforts and driven by financial projections that reflected the need for additional capital, the Debtor caused AREH and certain other Arch Companies to make capital calls to their respective investors, including Oak, but many of such investors, including Oak, defaulted on their capital commitments.  As a result of

---

[2] Capitalized terms used in this Preliminary Statement but not yet defined have the meanings given to such terms in the remainder of this Objection.

Oak's and other investors' defaults, and in the face of Oak's opposition to any transparent, in-court restructuring process, in July 2023 the Debtor sought to reduce the amount of management payments made to the Debtor by AREH, and Simpson sought to make corresponding reductions in the compensation paid by the Debtor to Simpson and Chassen. Chassen refused any such compensation reductions, and Oak and Chassen, respectively angered by Simpson's efforts to call committed capital and reduce compensation to address unavoidable market challenges, instead conspired to remove Simpson as managing member of the Debtor.

3.      Oak and Chassen's coordinated efforts to remove Simpson led to Chassen's removal of Simpson, the then undisputed managing member of the Debtor, as an authorized signatory on the Debtor's and the other Arch Companies' bank accounts on August 4, 2023, together with additional efforts to eliminate Simpson's access to the Debtor's and AREH's information technology systems. Recognizing that Chassen, in coordination with Oak, was engaging in willful misconduct, breaches of fiduciary duty and gross negligence with respect to the Debtor, Simpson delivered a written notice to Chassen on August 5, 2023, notifying Chassen that a Cause Event had occurred with respect to Chassen, that as a result Chassen had been forcibly resigned from the Debtor and that therefore Chassen was no longer a member of the Debtor or entitled to any rights as a member.

4.      On August 6, 2023, in response to the Resignation notice delivered by Simpson to Chassen the day prior, (a) Chassen delivered a notice to Simpson, acknowledging receipt of Simpson's notice, disputing whether a Cause Event had occurred with respect to Chassen and purporting to forcibly resign Simpson from the Debtor as a result of Cause Events that had allegedly occurred with respect to Simpson, and (b) Oak delivered a notice to Simpson and the

Debtor, alleging that various Cause Events had occurred with respect to the Debtor that would permit Oak to remove the Debtor as managing member of AREH.

5.    The notices delivered by Simpson, Chassen and Oak in August 2023 led to significant litigation, although to date only limited discovery has occurred, no evidentiary hearings have occurred and no final orders have been entering determining which of such notices were valid or effective.  Instead, the State Court has entered a series of interim, non-final orders that prevented Simpson's or Chassen's notices from being deemed effective, maintained Simpson's status as managing member of the Debtor (subject to Chassen's consent rights) and made Oak managing member of AREH (subject to the Debtor's consent rights).

6.    Since the entry of such interim orders, Oak and Chassen have treated such non-final orders as *carte blanche* to restructure the Arch Companies over Simpson's objections and for Oak's benefit while the parties' various disputes languish in a state court process that has made virtually no progress answering the question of whether Simpson's August 2023 notice to Chassen was effective.  The need to prevent Oak and Chassen from continuing to engage in prejudicial restructuring transactions without transparency, and without the entire fairness likely required given their status as insiders in many of such transactions, necessitated the filing of this Chapter 11 Case.

7.    Oak and Chassen now seek not only to continue restructuring the Arch Companies over Simpson's objection, but also to allow Chassen to exercise the Debtor's consent rights in connection with such transactions ***without this Court's oversight or approval***.  If Oak and Chassen's efforts to avoid discovery in this Chapter 11 Case had not already clarified the purpose of their opposition to this Chapter 11 Case, the Stay Motions have removed any doubt—Oak and Chassen are opposed to the transparency and due process this Chapter 11 Case requires.

8.      As a result of the Debtor's removal of the State Court Action to this Court, however, Chassen's and Oak's attempts to lift or modify the automatic stay to enable the Stay Court Action to continue in State Court are now moot.  The Debtor respectfully requests that this Court impose an expedited discovery schedule and conduct an evidentiary hearing to determine, on a final basis, the validity of the parties' various Cause Event notices so that the restructuring of the Debtor, AREH and the other Arch Companies may proceed in an equitable manner.

## **BACKGROUND**

### A.    **General Background**

9.      On March 7, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under subchapter V of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code").

10.     The Debtor is a real estate holding company that was formed, together with Arch Real Estate Holdings LLC ("AREH"), on December 11, 2017.  The Debtor was formed for the primary purpose of managing AREH, AREH's various direct and indirect subsidiaries and investments and certain non-AREH investment vehicles.  Additional background on the Debtor, AREH and their various investments can be found in the *First Day Affidavit of Jeffrey Simpson Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* [Dkt. No. 16] (the "First Day Affidavit").

11.     The Debtor is managed pursuant to that certain Limited Liability Company Operating Agreement of the Debtor dated December 11, 2017 attached to the First Day Affidavit as Exhibit B, as amended by that certain Amendment No. 1 to Limited Liability Company Agreement of JJ Arch LLC dated May 22, 2021 attached to the Ritter Declaration as Exhibit A (the "JJ Arch Operating Agreement").  Pursuant to the JJ Arch Operating Agreement, the Debtor had two members:  (a) the Debtor's managing member, Jeffrey Simpson ("Simpson"), who had

5

full, exclusive and complete discretion to manage the Debtor, subject only to the Chassen Consent

Rights (as defined below); and (b) the Debtor's non-managing member, Jared Chassen ("Chassen"

and, together with Simpson, the "JJ Arch Members"), whose rights related to the management of

the Debtor were limited to certain "Company Major Decisions" described in Section 3.2 of the JJ

Arch Operating Agreement (the "Chassen Consent Rights"). *See* JJ Arch Operating Agreement at

Article III.

12.    Section 7.5(a) of the JJ Arch Operating Agreement provided that, upon the

"Resignation" of a JJ Arch Member, such JJ Arch Member's "[i]nterest shall be deemed

automatically redeemed by the [Debtor]" and "such [JJ Arch] Member shall no longer be deemed

a 'Member' of the [Debtor] and shall not be entitled to any rights as a Member of the [Debtor] for

any period from and after such Resignation[.]" *Id.* at § 7.5(a). "Resignation" was in turn defined

to include (a) "the resignation of a Member from the [Debtor] or such [JJ Arch] Member's failure

to provide substantially all of his business time for the benefit of the [Debtor] other than as a result

of death of such [JJ Arch] Member" (a "Self-Executing Resignation") and (b) if "a Cause Event

[(as defined below)] has occurred with respect to a [JJ Arch] Member and the other [JJ Arch]

Member has delivered written notice thereof to such [JJ Arch Member] requiring such [JJ Arch]

Member to resign" (a "Notice Resignation" and, together with a Self-Executing Resignation, a

"Resignation"). *Id.* at § 1.1. Notably, although a Notice Resignation allowed a JJ Arch Member

to force the Resignation of the other member in the event of a Cause Event, both a Self-Executing

Resignation and the ramifications of any Resignation provided in Section 7.5 of the JJ Arch

Operating Agreement were self-executing, occurring automatically without any further action by

any person or entity.

13.    AREH, in turn, is managed pursuant to that certain Limited Liability Company Operating Agreement of AREH dated December 11, 2017 attached to the First Day Affidavit as Exhibit C (the "AREH Operating Agreement").  AREH also has two members:  (a) AREH's managing member, the Debtor, who was entitled to "full, exclusive and complete discretion" to manage AREH, "the unilateral power and authority acting in good faith to make and implement all decisions with respect to all matters," and the ability to "conduct, manage and control the affairs and business" of AREH, in each case subject only to the AREH Consent Rights (as defined below); and (b) AREH's non-managing investor member, 608941 NJ, Inc. ("608941" and, together with the Debtor, the "AREH Members"), whose rights related to the management of AREH were limited to certain "Major Decisions" described in Section 7.1.3 of the JJ Arch Operating Agreement (the "AREH Consent Rights").  *See* AREH Operating Agreement at Article VII.[3]  As "Investor Member," Oak agreed to make additional capital contributions to, among other things, permit AREH to "meet its general and administrative expenses in connection with [AREH's] Approved Budget," subject to the limitation that Oak was not obligated to make any such additional capital contributions at any time its "Unreturned Capital Contributions" exceeded $3 million.  *See* AREH Operating Agreement at § 3.2.  Oak also agreed to cover funding shortfalls for AREH's indirect portfolio projects and serve as a guarantor for such projects.  *See* First Day Affidavit at ¶ 22.

14.    Notwithstanding the management structure described in Paragraph 6 above, upon a Cause Event, the Debtor could be removed as "managing member" by Oak, effective ten (10) business days after the delivery of written notice thereof to the Debtor or at such later date as is

---

[3] 35 Oak Holdings, Ltd. ("35 Oak," together with 608941, "Oak"), a company organized under the laws of Canada, is understood to be the sole owner of, and to control, 608941.  Oak is understood to be owned and controlled by William Wiener, Michael Wiener and Kevin Wiener.

specified in such notice (an "<u>AREH Cause Removal</u>").[4]  *See* AREH Operating Agreement at § 7.1.4.  In the event the Debtor was removed as managing member of AREH in connection with any such AREH Cause Removal, the Debtor remained entitled to "all voting and consent rights provided to [Oak] in [the AREH Operating Agreement]," including the AREH Consent Rights. *Id.*

15.    For purposes of both a Notice Resignation and an AREH Cause Removal, a "<u>Cause Event</u>" was defined in the AREH Operating Agreement as, with respect to the applicable member of the Debtor or AREH:

> (i) willful misconduct in relation to the business or affairs of the Company or a Subsidiary, (ii) breach of fiduciary duty in relation to the business or affairs of the Company or a Subsidiary, (iii) gross negligence in relation to the business or affairs of the Company or a Subsidiary which results in a material loss to the Company or a Subsidiary or its Members as such, (iv) a final non-appealable finding of fraud by a court of competent jurisdiction in any relation to any business of its affairs, (v) misappropriation of Company or Subsidiary funds or property, (vi) conviction, or a plea of nolo contendre, of Jeffrey Simpson any felony, (vii) any wrongful act or omission which results in an acceleration of any loan encumbering the Property, or (viii) any breach of a material provision of this Agreement which is not cured within 30 days of notice of such breach.

*See* AREH Operating Agreement at § 1.1; JJ Arch Operating Agreement at § 1.1.

**B.    <u>Oak's Default; Financial Distress</u>**

16.    In November 2022, as a result of financial turmoil in the global real estate investment and lending markets due to inflation and interest rate growth, the Debtor provided Oak with projections reflecting the need for additional capital, specifically noting that AREH's portfolio projects would require capital calls from investors to service such projects' debt obligations.  *See* First Day Affidavit at ¶ 24.  The Debtor then contacted Oak and other investors

---

[4] An AREH Cause Removal differed significantly from a Notice Resignation at the Debtor as an AREH Cause Removal required 10 business days' notice of the Cause Event to remove the Debtor as managing member of AREH. In contrast, pursuant to the JJ Arch Operating Agreement, which was simultaneously prepared with the AREH Operating Agreement, a Notice Resignation was effective immediately upon notice.

regarding such capital calls, but many of AREH's investors (including Oak) refused to fund, and Oak further refused to honor its guarantee obligations (such refusal, the "Oak Default").  *See id.*

17.     As a result of such financial distress, exacerbated by the continuing Oak Default, the Debtor raised the possibility of an in-court restructuring with AREH's executive team.  *See id.* at ¶ 25.  Oak, however, vehemently opposed an in-court restructuring.  *See id.*  Given Oak's opposition to an in-court restructuring and its stated Oak Consent Right with respect to any such restructuring,[5] the Debtor instead pursued a series of out-of-court financial and operational measures aimed at preserving capital.  *See id.* at ¶ 26.

18.     In connection with such out-of-court measures and as the Oak Default continued, in July 2023 Simpson attempted to reduce payments made by AREH to the Debtor and compensation paid by the Debtor to the JJ Arch Members.  *See id.* at ¶ 26; *Complaint* attached to Ritter Declaration as Exhibit B (the "Simpson Complaint") at ¶ 45.  Simultaneous with Simpson's cost cutting efforts, Oak instead proposed that Simpson resign as the managing member of the Debtor and be replaced by Chassen, which Simpson refused.  *See* First Day Affidavit at ¶ 27.  Although Chassen initially acknowledged the need to reduce Simpson's and Chassen's compensation during such discussions, and was asked repeatedly throughout July 2023 to indicate how large of a reduction Chassen was willing to accept, ultimately on or about August 2, 2023, Chassen informed Simpson that he was not in fact willing to accept any compensation reduction.  *See* Simpson Complaint at ¶¶ 45-48.  Shortly thereafter, Oak and Chassen launched a coordinated effort to improperly remove Simpson from the Debtor and the other Arch Companies (as defined in the First Day Affidavit).  *See* First Day Affidavit at ¶ 27.

---

[5] The Debtor reserves all rights with respect to such Oak Consent Right, including the right to challenge the enforceability of such Oak Consent Right and the right to bring claims related to breaches of fiduciary duty in connection with Oak's exercise of such Oak Consent Right.

C.    **Resignation Notices**

19.    Following the Oak Default, Simpson's efforts to cut costs by reducing his and

Chassen's compensation and Oak's attempts to intervene in the governance of the Debtor, on

August 4, 2023 and in coordination with Oak, Chassen contacted the Debtor's bank and instructed

the bank to remove Simpson, the managing member of the Debtor, as an authorized signatory on

all of the Debtor's and the other Arch Companies' bank accounts (as well as Simpson's personal

accounts at such bank). *See* Simpson Complaint at ¶ 49. Chassen simultaneously contacted the

Debtor's information technology provider and directed such provider not to follow any directions

received from the Debtor's managing member, Simpson. *See Resignation Notice Email dated*

*August 5, 2023*, attached as Exhibit 4 to Simpson Complaint (the "Resignation Notice to

Chassen"). These actions were willfully taken without appropriate authority and were two of the

many steps understood to have been taken by Chassen and Oak around this time, and either of such

events were sufficient to constitute a Cause Event with respect to Chassen.

20.    On August 5, 2023, realizing that Chassen was engaging in behaviors that

constituted a Cause Event, Simpson delivered written notice of a Cause Event and resulting

Resignation to Chassen, which read as follows:

> Please be advised that pursuant to the Cause and Resignation section of the Arch
> Real Estate Holding LLC, JJ Arch LLC, and associated amendments, you have been
> hereby forced to resign as a Member. Your duties as it relates to the business are
> diminished to 0% as you are no longer a Member pursuant to section 7.5 (a) of the
> II Arch LLC Agreement. This e mail shall be construed as notice pursuant to the
> Agreement.
>
> You are hereby guided that you are not affiliated with the business (and affiliates)
> effective immediately. All communications or inquiries that you receive shall be
> directed to me or my designee. It is my understanding that you have reached out to
> Computero (our IT people) and told them to not do anything with your e mail should
> I call. This is unacceptable and you do not have the authority to make those
> decisions. Also, they shared with me that you are the administrator of the accounts,
> you will need to turn that over to me immediately. Any moves of this type will be
> construed as further events for Cause and will require full legal intervention.

Resignation Notice to Chassen.

21.     Because a Cause Event had occurred with respect to Chassen, and as a result of the delivery of the Resignation Notice to Chassen, a Notice Resignation was deemed to occur with respect to Chassen and he was deemed automatically redeemed and no longer a JJ Arch Member. *See* JJ Arch Operating Agreement at § 7.5(a).

22.     On August 6, 2023, in apparent response to the Resignation Notice to Chassen, Chassen purported to terminate Simpson by electronically-delivered notice.   In such notice, Chassen acknowledged receipt of the Resignation Notice to Chassen but disputed whether a Cause Event had occurred with respect to Chassen.  *See Letter Dated August 6, 2023* attached to Ritter Declaration as Exhibit C (the "Resignation Notice to Simpson").   In addition, Chassen asserted that Cause Events had occurred with respect to Simpson and that, as a result of the Resignation Notice to Simpson, a Notice Resignation had occurred with respect to Simpson.  *Id*.  On the same day, Oak sent the Debtor a notice (the "Cause Notice to the Debtor") that a Cause Event had occurred with respect to the Debtor.  *See* Simpson Complaint at ¶ 62.

**D.    State and Federal Court Actions**

23.     On August 10, 2023, Oak commenced an action against Simpson in the United States District Court for the Southern District of New York.  *See* First Day Affidavit at ¶ 29. Simpson was never served with a summons or the complaint in such action, and the action was voluntarily dismissed by Oak on February 23, 2024.  *Id.*

24.     On August 15, 2023, Simpson commenced a direct and derivative action on behalf of the Debtor and AREH against Chassen in New York Supreme Court, Index No. 158055/2023 (N.Y. County) (together with all intervening actions and counterclaims filed in such case, the "State Court Action" and, such court, the "State Court").  *See* Simpson Complaint.

25.     On October 10, 2023, Oak brought another complaint against Simpson, the Debtor and AREH in a separate proceeding in New York Supreme Court.  *See* First Day Affidavit at ¶ 31. Simpson, the Debtor and AREH removed that case to the United States District Court for the Southern District of New York, and the action was subsequently voluntarily dismissed by Oak on October 28, 2023.

26.     On October 13, 2023, Chassen filed his answer and various direct and derivative counterclaims on behalf of the Debtor and AREH against Simpson in the State Court Action.

27.     On October 17, 2023, Oak separately intervened in the State Court Action, initially moving to appoint a temporary receiver for the Debtor with support from Chassen, and subsequently on November 3, 2023, seeking to remove the Debtor as managing member of AREH and have Oak appointed as managing member.  *See* First Day Affidavit at ¶¶ 33-34.

28.     The State Court Action proceeded in a contentious manner for months in advance of this Chapter 11 Case, but to date the State Court has not entered a single final order, including with respect to the Resignation Notice to Chassen, the Resignation Notice to Simpson or the Cause Notice to the Debtor.  Instead, the State Court has issued a number of interim, non-final orders, including two orders each dated November 22, 2023, copies of which are attached as Exhibits D and E to the Ritter Declaration (the "Interim November Orders"), that together provided, among other things, that:

- Simpson and Chassen were enjoined from unilaterally seeking to terminate or force the resignation of the other member without permission of the State Court;

- the Debtor and Simpson were enjoined from acting as (or holding themselves out to third parties to be) managing members of AREH, and that Oak would act in their stead as AREH's sole managing member in accordance with Section 7.1 of the AREH Operating Agreement, owing all applicable duties to AREH and its members; and

- the Debtor and Simpson were enjoined from denying prompt consent to any act subject to the AREH Consent Rights proposed by Oak as managing member of

AREH unless both Simpson and Chassen jointly agreed to deny such consent (or alternatively, either Simpson or Chassen could convey consent).

*See* Interim November Orders.

29.    The Interim November Orders did not act to prevent a Self-Executing Resignation by either Simpson or Chassen or the automatic effects of any such Self-Executing Resignation. Following entry of the Interim November Orders, Chassen voluntarily decided to cease providing substantially all of his business time for the benefit of the Debtor and, as a result, a Self-Executing Resignation was deemed to occur.[6]  *See* First Day Affidavit at ¶ 20.

30.    On the date hereof, the Debtor filed the *Notice of Removal* with respect to the State Court Action (the "Notice of Removal"), removing the State Court Action to this Court.

## OBJECTION

31.    The relief requested by the Stay Motions is either moot as a result of the Notice of Removal or is otherwise inappropriate and should be denied.

### A.    Request to Return Disputes to State Court is Moot

32.    As a result of the Notice of Removal, the State Court Action has been removed to this Court and is no longer pending in the State Court.  As a result, any request to lift or modify the automatic stay to return any of the State Court Action to the State Court is moot.

33.    The State Court Action was removable pursuant to 28 U.S.C. §§ 1334 and 1452. Pursuant to 28 U.S.C. §1452, "[a] party may remove any claim or cause of action . . . to the district court where such civil action is pending, if such district court has jurisdiction of such claim or

---

[6] Chassen's statements that Simpson raised Chassen's Self-Executing Resignation in the State Court Action are not accurate and mischaracterize certain arguments made by Simpson in such action.  The referenced statements made by Simpson's counsel in the State Court Action were with respect to Chassen's obligation to devote substantially all of his business time and effort to the Debtor's business and not engage in business ventures that are competitive with the Debtor or its or the Arch Companies' investments pursuant to Section 3.3 of the JJ Arch Operating Agreement, which Simpson has alleged Chassen violated by working for Oak.  Chassen's Self-Executing Resignation was not raised in the State Court Action and the State Court has not ruled on such argument.

cause of action under section 1334 of this title." 11 U.S.C. §1452(a); *see also* F.R.B.P. § 9027.

Section 1334, in turn, provides that "[t]he district court in which a case under title 11 is commenced

or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor

as of the commencement of such case, and of property of the estate," 28 U.S.C. § 1334(e)(1), and

"shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or

arising in or related to cases under title 11," 28 U.S.C. § 1334(b).

34.     The District Court – and the Bankruptcy Court – have exclusive jurisdiction over

the State Court Action because it directly affects the property of the estate—most notably, but not

exclusively, the identity of the managing member in control of the Debtor-in-possession and the

Debtor's assets and the Debtor's AREH Consent Rights. *See, e.g., In re Warner*, 480 B.R. 641,

647-48 (Bankr. N.D.W. Va. 2012) ("the right to participate in a LLC—a non-economic right—is

property of the estate under 11 U.S.C. § 541(a)"). Furthermore, the ultimate disposition regarding

the identity of the managing member in control of the Debtor-in-possession and of the Debtor's

AREH Consent Rights will also have a significant impact on the remainder of the Debtor's estate,

as the consent rights are the most important safeguard preventing the harm the Debtor's estate

would suffer from Oak and Chassen's use of the Interim November Orders to effect an out-of-

court restructuring free from the guardrails and procedures imposed by the bankruptcy process. In

particular: (1) the Debtor is the 80% member of AREH, which is now effectively being run solely

by Oak and Chassen by virtue of the Interim November Orders; (2) the Debtor is entitled by written

agreement to manage AREH; and (3) Oak is taking actions for the benefit of Oak, to limit Oak's

exposure to hundreds of millions of dollars in guarantee liability, and to the detriment of the Debtor

and a host of investors in the Arch family of companies, which could unwind millions of dollars

of value that would inure to the benefit of Debtor, but for Oak's actions. Ultimately, therefore, the

question of whether Oak and Chassen should be permitted to unilaterally effect a transfer of value from the Debtor's estate to Oak is one that will have a dramatic impact on the property of the estate, and the Bankruptcy Court has exclusive jurisdiction over that question. *See In re WP Realty Acquisition III, LLC*, 626 B.R. 154, 161 (2021) ("Even in single asset real estate cases such as this one, control of the debtor can be key to the vision for and use of the property, which is how value is created.").

35.     Furthermore, even if the Bankruptcy Court did not have exclusive jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1334(e)(1) (which it does), then the Bankruptcy Court would, under 28 U.S.C. § 1334(b), nevertheless have original but not exclusive jurisdiction over the State Court Action as a core proceeding.  In particular, the State Court Action is a core proceeding because it (i) "concern[s] the administration of the estate," 28 U.S.C. § 157(b)(2)(A); and (ii) "affect[s] the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," 28 U.S.C. § 157(b)(2)(O).

36.     *First*, where there is "a dispute over the management of the Debtor," and that dispute would "impact [the] reorganization," such a dispute is a core proceeding.  *In re WP Realty Acquisition III, LLC*, 626 B.R. at 159-160.  There can be no dispute that the State Court Action is a dispute over the management of the Debtor.  Nor can there be any dispute that resolution of that dispute will dramatically impact the course of this reorganization.  Indeed, Chassen and others have moved to dismiss the Bankruptcy Case—and have even threatened Simpson with criminal contempt for filing it—on the grounds that, ***by virtue of orders entered in the State Court Action***, Simpson no longer controls the Debtor.  It is difficult to imagine a question more fundamental to "the administration of the estate" than whether the filing of the petition was authorized in the first

place.  Accordingly, the State Court Action is a core proceeding over which the Bankruptcy Court

has original jurisdiction.

37.     *Second*, the State Court Action is a core proceeding because, as explained above, it

has a significant impact on the assets of the estate and the adjustment of the relationship between

the Debtor, on the one hand, and Oak, AREH, Chassen, and Simpson, on the other.  Depending on

the resolution of the State Court Action, both the estate's assets and the estate's relationships with

other relevant stakeholders will be significantly impacted.  Accordingly, for this independent

reason, the State Court Action is a core proceeding over which the Bankruptcy Court has original

jurisdiction.

38.     This Court should also not abstain from hearing the State Court Action or remand

it back to the State Court.  Instead, this Court should make a final determination with respect to

the validity of the Resignation Notice to Chassen, the Resignation Notice to Simpson and the

Cause Notice to the Debtor following an appropriate, expedited discovery process.

39.     As discussed above, the State Court Action is a core proceeding over which this

Court (on referral from the District Court) has exclusive jurisdiction, and as a result mandatory

abstention under 28 U.S.C. § 1334(c)(2) is inapplicable.  *See In re Petrie Retail, Inc.*, 304 F.3d

223, 232 (2d Cir. 2002) ("[W]here a matter constitutes a core proceeding, the mandatory abstention

provisions of section 1334(c)(2) are inapplicable.").  Even were that not the case, given the status

of the State Court Action after over 7 months' of litigation, the nascent stage of discovery in such

action and the fact that the first evidentiary hearing in such action is currently scheduled for June

2024 (an aspirational schedule likely to be delayed as a result of Chassen's, AREH's and Oak's

continuing efforts to frustrate the discovery process), Chassen and AREH would be unable to

demonstrate that the State Court Action "is capable of being 'timely adjudicated' in state court,"

especially in light of the Debtor's 90-day time period to propose a chapter 11 plan in this Chapter

11 Case, a "necessary element[] required for mandatory abstention." *Renaissance Cosmetics, Inc.*

*v. Development Specialists Inc.*, 277 B.R. 5, 12-13 (Bankr. S.D.N.Y. 2002); *see* 11 U.S.C. §

1189(b).

40.     Equitable remand, under 28 U.S.C. § 1452(b), and discretionary abstention, under

28 U.S.C. § 1334(c)(1), are also inappropriate here, even continuing to set aside this Court's

exclusive jurisdiction over the proceeding, as courts generally consider the following factors when

deciding whether to remand a case based on such discretionary authority to abstain:  "(1) the effect

on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law

predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the

degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the

existence of the right to a jury trial; and (7) prejudice to the involuntary removed defendants."

*Renaissance Cosmetics*, 277 B.R. at 14, 17.  These factors do not favor remanding the State Court

Action back to the State Court, as the first, third, fourth, fifth and seventh factors in particular

weigh heavily against remand.  This Court is the most efficient forum to adjudicate the State Court

Action, which must be quickly adjudicated on a final basis to in order for progress to be made in

the administration of this Chapter 11 Case.

41.     Finally, to the extent the State Court Action had not been removed to this Court,

lifting or modifying the automatic stay to enable the State Court Action to continue would still not

be appropriate.  As the Stay Motions note, the Second Circuit considers twelve factors in

determining whether cause exists to lift the stay, *see In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286

(2d Cir. 1990) (citation omitted) (such factors, the "Sonnax Factors"), however the Sonnax Factors

weigh against lifting or modifying the automatic stay in connection with the State Court Action:

17

- <u>Whether Relief Will Result in Partial or Complete Resolution of the Issues</u>. Although relief from the automatic stay to allow the State Court Action to proceed in State Court could eventually result in resolution of the various outstanding issues among the parties, such result would not be timely obtained. As the early weeks of this Chapter 11 Case have demonstrated, in the interim various significant and related contested matters in this Chapter 11 Case would arise that would be dependent on the resolution of the issues that the State Court would be unable to timely resolve.

- <u>Lack of Any Connection with or Interference with the Chapter 11 Case</u>. The State Court Action goes to the heart of who controls the Debtor and the Debtor's assets, including the Debtor's interest in AREH as either its managing member or the holder of significant consent rights with respect various transactions and other activities at AREH and other Arch Companies. As discussed above, these are core proceedings over which this Court and the United States District Court for the Southern District of New York have exclusive jurisdiction. *See* 28 U.S.C. 157(b)(2); 28 U.S.C. 1334(e)(1).

- <u>Whether the Other Proceeding Involves the Debtor as a Fiduciary</u>. The State Court Action involves the control over the Debtor and its assets, including the Debtor's role as managing member of AREH and, in the alternative, the Debtor's consent rights with respect to activities at AREH and other Arch Companies, involvement that goes well beyond mere participation as a fiduciary.

- <u>Whether a Specialized Tribunal with Necessary Expertise has been Established</u>. Although the Commercial Division is arguably a specialized court, it is well known that it does not act quickly. *See Renaissance Coesmetics*, 277 B.R. at 13-14 (citing evidence that the average contract dispute in the New York County Commercial Division was taking over 550 days). This Court, in contrast, is well positioned to efficiently resolve such issues and determine the parties' rights with respect to the Debtor and the Debtor's rights with respect to AREH.

- <u>Whether the Action Primarily Involves Third Parties</u>. The State Court Action primarily involves control over the Debtor and its assets, and the Debtor's interest in and control over AREH, and so clearly does not primarily involve third parties.

- <u>Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors</u>. Given the importance of the issues raised by the State Court Action and the effect such issues have on the continuing restructuring efforts at the Debtor, AREH and the other Arch Companies, allowing the State Court Action to remain unresolved at the State Court for a prolonged period of time would prejudice the interests of the numerous creditors and other parties-in-interest involved in such restructuring efforts.

- <u>The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation</u>. As noted above, and as evidenced by the fact that after more than 7 months of litigation in State Court, discovery related to the State Court Action has

only barely begun, the State Court is unlikely to proceed in the expeditious manner that this Chapter 11 Case requires. The lack of significant progress resolving the underlying claims, in connection with discovery or otherwise, at the State Court and the purgatory that would result in this Chapter 11 Case if the State Court were permitted to continue at its current pace evidence that expeditious and economical resolution of the parties' litigation will only occur in this Court.

- <u>Whether the Parties are Ready for Trial in the Other Proceeding</u>. The parties are not ready for trial at the State Court, and in fact have only just begun discovery. Expedited discovery conducted in this Chapter 11 Case will be the most efficient way to ensure that the parties are ready for an evidentiary hearing on the underlying issues as quickly as is practicably possible.

- <u>The Impact of the Stay on the Parties and the Balance of Harms</u>. Given that no evidentiary hearings have occurred at the State Court in connection with the State Court Action, staying further proceedings at the State Court and allowing matters to be resolved in this Court will not prejudice any of the parties.

42.     In short, even were the continuation of the State Court Action in the State Court permissible (it is not), it would still not be appropriate and cause to lift or modify the automatic stay to allow for that does not exist.

**B.      Request to Allow Chassen to Exercise the Debtor's Consent Rights at AREH Without Court Supervision is Inappropriate**

43.     The Stay Motions also remarkably appear to argue that Oak and Chassen should be able to proceed with the restructurings of AREH and other various Arch Companies with Chassen unilaterally exercising the Debtor's AREH Consent Rights (pending this Court's final determination of whether the Debtor was rightfully removed as managing member of AREH). The Debtor's AREH Consent Rights are unquestionably assets of the Debtor's estate that involve the giving or withholding of consent outside of the ordinary course of business, and exercise of such rights requires this Court's approval pursuant to section 363 of the Bankruptcy Code. Neither of the Stay Motions, which seek to circumvent the requirements of section 363 under the guise of seeking relief from the automatic stay, provide any basis or support for why use of the Debtor's AREH Consent Rights should be permissible without compliance with section 363's requirements.

The Stay Motions also fail to explain why, to the extent Chassen is no longer a member of the Debtor as the result of a Self-Executing Resignation, Chassen should be permitted to act on behalf of the Debtor.  For these reasons, the relief requested in the Stay Motions with respect to matters requiring the Debtor's affirmative consent in connection with the AREH Consent Rights should be denied, and any such consent should only be given with this Court's express approval in accordance with section 363(b) of the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

44.    The Debtor hereby reserves its right to amend, modify or supplement this Objection and to file additional objections in connection with the Stay Motions and any motions to abstain or otherwise remand the State Court Action.

## **NOTICE**

45.    Notice has been provided either by facsimile, electronic transmission, overnight delivery or hand delivery to:  (i) counsel for Chassen; (ii) counsel for AREH; (iii) the United States Trustee; and (iv) the Subchapter V Trustee; and (v) each of the parties that have filed a notice of appearance in the Chapter 11 Case.  The Debtor submits that, under the circumstances, no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter orders:  (i) denying the Stay Motions; and (ii) grant such other and further relief as the Court may deem just and proper.

Dated: April 1, 2024
New York, New York

Respectfully,


/s/  *Nathan Denning*
WIGGIN AND DANA LLP
Nathan E. Denning, Esq.
Andrew Ritter, Esq. (*pro hac vice* pending)
Kate E. Cassidy
437 Madison Avenue 35th Floor
New York, New York 10022
Tel: (212) 551-2600
Email: ndenning@wiggin.com
aritter@wiggin.com
kcassidy@wiggin.com

*Proposed Co-Counsel for the Debtor and
Debtor in Possession*