**GRIFFIN LLP**
420 Lexington Avenue, Suite 400
New York, New York 10170
Telephone: (646) 998-5580
Facsimile: (646) 998-8284
Scott A. Griffin
Frank L. Eaton

-and-

**WIGGIN AND DANA LLP**
437 Madison Avenue, 35th Floor
New York, New York 10022
Telephone: (212) 490-1700
Facsimile: (212-551-2888
Nathan Denning
Andrew C. Ritter (*pro hac vice* pending)
Kate E. Cassidy

*Proposed Co-Counsel for the Debtor*
*and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                              :
In re:                                                        :     Chapter 11
                                                              :     (Subchapter V)
JJ ARCH LLC,                                                  :
                                                              :     Case No. 24-10381 (JPM)
                                                              :
                                    Debtor.[1]                :
                                                              :
---------------------------------------------------------------X

## DECLARATION OF ANDREW RITTER IN SUPPORT OF DEBTOR'S OMNIBUS OBJECTION TO STAY MODIFICATION MOTIONS

        I, Andrew Ritter, hereby declare, under penalty of perjury, that the following is true

and correct to the best of my knowledge, information and belief:

---
[1]  The last four digits of the Debtor's federal tax identification number are 4251.

1.      I am a member of the law firm Wiggin and Dana LLP, which is proposed co-counsel to JJ Arch LLC, the debtor and debtor-in-possession in the above-captioned case (the "Debtor" and, such case, the "Chapter 11 Case").

2.      I submit this Declaration in support of the *Debtor's Omnibus Objection to Motions for Entry of Orders (I) Confirming that the Automatic Stay Does Not Apply to Certain Corporate Governance Disputes and/or (II) Modifying the Automatic Stay as Necessary in Order to Address such Corporate Governance Disputes* (the "Objection"), filed contemporaneously herewith.

3.      Capitalized terms used but not defined herein have the meanings given to such terms in the Objection.

4.      On information and belief, attached hereto as **Exhibit A** is a true and correct copy of that certain Amendment No. 1 to Limited Liability Company Agreement of JJ Arch LLC dated May 22, 2021.

5.      On information and belief, attached hereto as **Exhibit B** is a true and correct copy of the complaint filed by Simpson initiating the State Court Action (excluding the exhibits and attachments thereto).

6.      On information and belief, attached hereto as **Exhibit C** is a true and correct copy of a letter electronically delivered by or on behalf of Chassen to Simpson on August 6, 2023.

7.      On information and belief, attached hereto as **Exhibits D** and **E** are true and correct copies of certain orders entered by the State Court, Docket Numbers 418 and 419 in the State Court Action, each dated November 22, 2023.

Executed the 1st Day of April, 2024

_/s/ Andrew Ritter_
Andrew Ritter

<u>EXHIBIT A TO DECLARATION</u>

(Amendment No. 1 to Limited Liability Company Agreement of JJ Arch LLC)

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM       INDEX NO. 158055/2023

NYSCEF DOC. NO. 4       24-10381-jpm   Doc 61   Filed 04/01/24   Entered 04/01/24 17:10:04   Main Document       RECEIVED NYSCEF: 08/15/2023

Pg 4 of 63

# Exhibit 3

## AMENDMENT NO. 1 TO
## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## JJ ARCH LLC

THIS AMENDMENT NO. 1 TO LIMITED LIABILITY COMPANY AGREEMENT of JJ ARCH LLC (this "Amendment") is made and entered into and is effective as of May 22, 2021, by and between JARED CHASSEN ("Chassen"), and JEFFREY SIMPSON ("Simpson").

### WITNESSETH:

WHEREAS, Chassen and Simpson are parties to that certain Limited Liability Company Agreement of JJ Arch LLC, dated as of December 11, 2017 (the "Operating Agreement");

WHEREAS, Chassen and Simpson desire to amend the Operating Agreement as hereinafter provided;

NOW, THEREFORE, for good and valuable consideration, the Operating Agreement is hereby amended as follows:

1.    Capitalized Terms.  Initially capitalized terms used in this Amendment and not otherwise defined shall have the respective meanings assigned thereto in the Operating Agreement.

2.    Amendments to Operating Agreement.

a.    Section 1.1 of the Operating is hereby amended by deleting the definition of "Distribution Percentage" therefrom in its entirety and the following is inserted in lieu thereof:

"Distribution Percentages:  With respect to Simpson, 50.1% and with respect to Chassen 49.9%."

b.    Section 1.1 of the Operating is hereby amended by deleting the definition of "Redemption Amount" therefrom in its entirety and the following is inserted in lieu thereof:

"Redemption Amount:  An amount equal to the greater of (b) any life insurance maintained by the Company or the other Member, on the life of the deceased Member or (b) all Distributions that the Effected Member or Resigning Member, as applicable, would have been entitled received under Section 5.1(a) (i) if all Cash Flow of the Company (excluding Promote Distributions) were then distributed and (ii) if all Cash Flow consisting of Promote Distributions from all assets of each Subsidiary as of the date death, Disability or Resignation of the applicable Member were distributed to the Resigning Member or Effected Member, or his estate, as applicable, if such Resigning Member or Effected Member were still a Member of the Company; provided, that in the case of a

Resignation of a Member, the amount payable to the Resigning Member pursuant to clause (ii) of this definition shall be 50% of the amount so determined.

c.      Section 3.1 of the Operating Agreement is hereby deleted in its entirety and the following is inserted in lieu thereof:

"3.1    Management of the Company.  The business, affairs and assets of the Company shall be managed, arranged and caused to be coordinated by Simpson, who shall have, except as otherwise provided in this Agreement (including, but not limited to, in Section 3.2), full, exclusive and complete discretion with respect thereto.  Subject to and in accordance with the provisions of this Agreement, the Members shall have all necessary and appropriate powers to carry out the purposes of the Company set forth in Section 2.4.  Except as otherwise provided in this Agreement, prior to the fourth anniversary of the date hereof, Simpson shall have the unilateral power and authority acting in good faith to make and implement all decisions with respect to all matters which the Company has the authority to perform both directly and indirectly through an Investment Entity, including, without limitation, the power to:

(i)      conduct, manage and control the affairs and business of the Company, and to make such rules and regulations therefor consistent with the Company Law, with the Articles of Organization and this Agreement;

(ii)     open, maintain and close bank accounts and draw checks or other orders for the payment of monies;

(iii)    enter into any contract or endorsement in the name or for the account of the Company;

(iv)     employ, retain, or otherwise secure or enter into contracts, agreements and other undertakings with persons in connection with the management and operation of the Company's business, including, without limitation, any property managers, attorneys and accountants, all on such terms and for such consideration as Simpson deems advisable;

(v)      bring or defend, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the Company;

(vi)     deposit, withdraw, invest, pay, retain and distribute the Company's funds in a manner consistent with the provisions of this Agreement;

(vii)    cause the Company to carry such indemnification insurance as Simpson deems necessary to protect it and any other individual or entity entitled to indemnification by the Company; and

(viii)   take any of the foregoing actions on behalf of the Company in its capacity as a direct or indirect Controlling entity of an Investment Entity.

2

4854-0544-0262, v. 2

     d.    Section 3.2 of the Operating Agreement is hereby delete in its entirety and the following is inserted in lieu thereof:

     "3.2.  <u>Limitations on Simpson's Authority</u>.  Notwithstanding anything to the contrary contained in this Agreement, if prior to the fourth anniversary of the date hereof, Simpson desires to cause the Company or an Investment Entity to take any of the following decisions or actions (each a "<u>Company Major Decision</u>"), Simpson shall provide written notice thereof to Chassen with such additional information as Chassen may reasonably request.  Any Company Major Decision shall be undertaken only with the prior written consent of Chassen (and, for the avoidance of doubt, any action or decision that would constitute a Company Major Decision if made or taken by the Company shall be a Company Major Decision if made or taken by any Investment Entity, which consent shall be deemed granted by Chassen if Chassen fails to object to such action within fifteen (15) days of Simpson's written request therefor:

     (i)    acquire any direct or indirect interests in any Person other than AREH;

     (ii)    file, acquiesce to, consent to or take of any Bankruptcy Action;

     (iii)    sell any asset of the Company or any portion thereof other than any such asset that is no longer required for the operation of the Company or any other Company Asset or any obsolete personal property;

     (iv)    merge, consolidate or other reorganize the Company with another Person;

     (v)    borrow or raise monies, or utilize any other forms of leverage and issue, accept, endorse and execute promissory notes, drafts, lending agreements, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness;

     (vi)    possess, lend, transfer, mortgage, pledge or otherwise deal in, and secure the payment of obligations of the Company by mortgage upon, or hypothecation or pledge of, all or part of an asset of the Company, and to execute such pledge and security agreements in connection with such pledge, or participate in arrangements with creditors, institute and settle or compromise claims, suits and administrative proceedings and other similar matters;

     (vii)    enter into any lease for space;

     (viii)    hire any employee, consultant or other personnel;

     (ix)    engage in any business or activity not authorized by this Agreement;

4854-0544-0262, v. 2

(x)     enter into any agreement requiring the expenditure of more than $10,000 per annum;

(xi)    enter into any agreement with Simpson and/or any Affiliate thereof, on the one hand, and the Company on the other hand;

(xii)   enter into any amendment or modification to this Agreement except as otherwise expressly permitted in this Agreement;

(xiii)  maintain reserves in excess of $20,000;

(xiv)   admit new or substitute Members to the Company;

(xv)    modify any material terms of the AREH Operating Agreement;

(xvi)   cause AREH to take any Major Decision (as defined in the AREH Operating Agreement).

e.    Exhibit A is hereby deleted in its entirety.

3.    <u>Right to Participate in Investments</u>.  Notwithstanding anything in the Operating Agreement to the contrary, from and after the death of either Chassen or Simpson (the "Deceased Member")  to the date on which the non-Deceased Member dies, the Company shall permit, or cause its Affiliates to permit, the spouse and issue of the Deceased Member to invest in all transactions in which the Company would otherwise have been entitled to invest if the Deceased Member had not passed away on the terms and conditions set forth in this Section 3.  The Deceased Member's spouse and issue shall be entitled to invest an amount not greater than the amount being invested by the non-Deceased Member and its Affiliates in such transaction and at such time as the non-Deceased Member and its Affiliates make their investment in such transaction; provided that if the Deceased Member's spouse or issue elect to invest in a transaction, the rights of the Deceased Member's spouse and issue shall be no more or less favorable than those of the participants in such transaction other than the non-Deceased Member.

4.    <u>Miscellaneous</u>.  (a)  Except as modified hereby, the Operating Agreement remains in full force and effect and the provisions thereof are hereby ratified and confirmed.

(b)    All references in the Operating Agreement to "this Agreement", "hereunder", "hereto" or similar references, and all references in all other documents to the Agreement shall hereinafter be deemed references to the Operating Agreement as amended hereby.

(c)    This Amendment may be executed in one or more counterparts, all of which together shall for all purposes constitute one amendment, binding on all parties hereto, notwithstanding that the parties have not signed the same counterparts.

[signature page follows]

4854-0544-0262, v. 2

       IN WITNESS WHEREOF, the undersigned has executed this Amendment as of the day and year first above written.



Jeffrey Simpson

24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
Pg 10 of 63

IN WITNESS WHEREOF, the undersigned has executed this Amendment as of the day and year first above written.

_____
Jeffrey Simpson

_____
Jared Chassen

## EXHIBIT B TO DECLARATION

(Complaint filed by Simpson)

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 08/15/2023
24-10381-jpm   Doc 61   Filed 04/01/24   Entered 04/01/24 17:10:04   Main Document
Pg 12 of 63

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFREY SIMPSON, individually and derivatively, as
managing member of JJ ARCH LLC, suing derivatively as
managing member of ARCH REAL ESTATE HOLDINGS
LLC, and JJ ARCH LLC,

*Plaintiffs,*

-against-

JARED CHASSEN and FIRST REPUBLIC BANK,

*Defendants.*

Index No. _____

Date Filed:

**SUMMONS**

Venue is placed in New
York County because a
substantial part of the
events or omissions
giving rise to the claims
occurred there

TO THE ABOVE-NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve
a copy of your answer, or, if the Complaint is not served with this Summons, to serve a Notice of
Appearance, on Plaintiffs' attorneys within twenty (20) days after service of this Summons,
exclusive of the day of service (or within thirty (30) days after service is complete if this Summons
is not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
Complaint.

Dated: New York, New York
       August 14, 2023

Yours, etc.

ADAM LEITMAN BAILEY, P.C.

By: _____
    Adam Leitman Bailey, Esq.
    Brandon M. Zlotnick, Esq.
    One Battery Park Plaza, 18th Floor
    New York, NY 10004
    Phone: (212) 825-0365
    *Attorneys for Plaintiffs*

**DEFENDANTS' ADDRESSES:**
Jared Chassen
47 Bridge Street, 6A

[938485/1]                                    1

Brooklyn, NY 11201

First Republic Bank
c/o New York State Secretary of State

[938485/1]                                2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JEFFREY SIMPSON, individually and derivatively, as
managing member of JJ ARCH LLC, suing derivatively as
managing member of ARCH REAL ESTATE HOLDINGS
LLC, and JJ ARCH LLC,

Index No. _____

**COMPLAINT**

*Plaintiffs,*

-against-

JARED CHASSEN and FIRST REPUBLIC BANK,

*Defendants.*

Plaintiffs JEFFREY SIMPSON, individually and derivatively, as managing member of JJ

ARCH LLC, suing derivatively as managing member of ARCH REAL ESTATE HOLDINGS

LLC, and JJ ARCH LLC, by their attorneys, ADAM LEITMAN BAILEY, P.C., complaining of

the defendants, allege as follows:

## NATURE OF THE ACTION

1.      This action is brought by Plaintiffs to undo a coup d'état executed by Defendant

Jared Chassen ("Chassen") in an effort to seize, from Plaintiff Jeffrey Simpson ("Simpson"),

control over Plaintiff entities Arch Real Estate Holdings LLC ("Arch") and JJ Arch LLC ("JJ

Arch") (collectively, Arch and JJ Arch are the "Arch Entities"). In addition, Plaintiffs seek to

redress one of Chassen's successes in his efforts to wrest control of the Arch Entities from

Simpson, *i.e.*, Chassen's inducement of a stalemate that has left Simpson unable to exercise control

over bank accounts maintained by Arch Entities and their affiliates and subsidiaries at Defendant

First Republic Bank ("First Republic"), which has left Arch Entities unable to use such accounts

to pay for such necessities as payroll, subcontractors, materialmen, and insurance. Plaintiffs also

seek to require Chassen to act to restore Simpson's access to his company email account with Arch

[938459/1]                                              1

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 08/15/2023

24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
Pg 15 of 63

Entities, to the Dropbox account where Arch Entities' documents are stored, and Simpsons' ability to communicate with the domain company that hosts Arch Entities' web site.

## PARTIES

2.      Plaintiff Simpson is a natural person who resides in the State of New York, County of New York.

3.      Plaintiff Arch is a limited liability company formed under the laws of the State of New York, with a principal place of business in the State of New York, County of New York.

4.      Arch is a real estate investment management, construction management, property management, and development company.

5.      Plaintiff JJ Arch is a limited liability company formed under the laws of the State of New York, with a principal place of business in the State of New York, County of New York.

6.      Defendant Chassen is a natural person who resides in the State of New York, County of Kings.

7.      Defendant First Republic is a nationally chartered bank that maintains offices for the transaction of business in, among other places, the State of New York, County of New York.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

## BACKGROUND

### Simpson's Tenure at Greystone

8.      Simpson grew up under modest economic circumstances in Lakewood, New Jersey. His father, who was a public planning, zoning, and construction official, passed away when Simpson was 22. For four consecutive generations including his own, Simpson's family has been in the construction business.

9.      Prior to 2017 and the start of Arch, Simpson worked for eleven (11) years at Greystone Development ("Greystone Development"), a property development company within a

host of companies under the "Greystone" umbrella that performed functions related to real estate investment, capital raising, financing, development, construction, management, leasing, and sales. For the last five of those years, Simpson was the Chief Executive Officer of Greystone Development. By the time he left Greystone Development, he was supervising approximately thirty (30) employees at Greystone Development, with a total payroll of approximately $5 million. The total project volume was over $2 billion, and involved properties located in New York, Miami, and California. While he was there, he also was responsible for raising several large capital initiatives for real estate investing in multi-family housing in the southeastern United States with an institutional partner, individual loan origination on complex assignments, and capital raising for structured finance.

10.    One employee Simpson supervised at Greystone Development was Chassen. Simpson originally hired Chassen at Greystone Development to replace an administrative assistant at Greystone Development. Once hired, Chassen performed the same duties as that administrative assistant, for the same salary as she had earned. Over time, Chassen took on other responsibilities, including helping to source properties, equity, and debt. Throughout his time at Greystone Development, Chassen reported to Simpson.

11.    Another employee Simpson supervised at Greystone was nonparty Tristan Last ("Last"). "). Last was formerly of Brookfield with a MBA from Cornell University.  She was hired as an acquisitions associate and quickly was promoted to the Director of Investments.

12.    A third employee Simpson supervised at Greystone was nonparty Michelle Miller ("Miller"). She was also an analyst. Miller started at Greystone Development as an intern, as a career switcher to real estate following the completion of her MBA from Northwestern. She was eventually hired full time as an analyst and grew in her role over time.

## Simpson's Formation of Arch and JJ Arch

13.    In 2017, Simpson left Greystone Development on amicable terms with that company, and formed a new company, Plaintiff Arch.

14.    The original business address for Arch was Simpson's personal residence address at the time.

15.    At all times since the formation of Arch, eighty percent (80%) of the membership interest in Arch has been held by Plaintiff JJ Arch, which is the managing member of Arch. (*See* Exhibit 1, Limited Liability Company Operating Agreement of Arch Real Estate Holdings LLC ["Arch Operating Agreement"], p. 17, §§ 6.1-6.2 [providing for distributions of cash flow and acquisition fees of 80% to "JJ Member" and 20% to "Investor Member"]; *id.* p. 1 preamble [defining JJ Arch LLC as "JJ Member"]; *id.* § 1.1, p. 7 [defining "Managing Member" as JJ Member].)

16.    At all times since the formation of Arch, the remaining twenty percent (20%) of the membership interest in Arch has been held by 608941 NJ Inc., a New Jersey corporation ("NJ Inc."), which is the investor member of Arch. (*See* Exhibit 1, Arch Operating Agreement, p. 17, §§ 6.1-6.2; *id.* p. 1 preamble [defining NJ Inc. as "Investor Member"].) NJ Inc. made an investment of approximately $50 million in Arch, but has no authority to control the operation of Arch's business.

17.    Since the formation of JJ Arch, Simpson has been the managing member of JJ Arch and has held a majority of the membership interest in JJ Arch.

18.    From the formation of JJ Arch until his forced resignation from his membership therein effective August 5, 2023, as discussed below, Chassen was a member of JJ Arch and held a minority of the membership interest in JJ Arch, and his job started out as administrative in nature.

19.    Simpson and Chassen are the only persons who have ever been members of JJ Arch.

[938459/1]                        4

## The Arch Companies' Growth Under Simpson's Leadership

20.     Through JJ Arch, the managing member of Arch, Simpson has run all of Arch's businesses since the inception.

21.     By 2022, five years after Simpson formed Arch with no assets, Arch had owned and invested in over $1 billion in assets.

22.     Arch has several affiliated companies, including a property management company, advising company, construction company, and asset management company, each of which provides services relating to real properties that Arch controls.

23.     Together, Arch and its affiliated companies have a total of approximately 100 employees. (Collectively, Arch Entities and Arch's affiliated companies are the "Arch Companies.")

24.     The licenses and permits for each of the construction projects performed by the Arch Companies are in Simpson's name, as a licensed general contractor.

25.     Simpson holds responsibility for managing Arch Companies' commercial real estate construction projects and coordinating licensing and permitting matters.

## Chassen's Role with the Arch Companies

26.     With Greystone's permission, Simpsons brought three Greystone Development employees with him to work at Arch, *i.e.*, Chassen, Last, and Miller.

27.     From the formation of JJ Arch and Arch, Chassen has been a minority member in JJ Arch, and thus has not had the authority to exercise control over Arch as Arch's managing member.

28.     While the initial plan was for Chassen ultimately to become co-managing member, with Simpson, of JJ Arch, and thus share in Simpson's authority to control JJ Arch's exercise of its authority as managing member of Arch, Chassen's performance did not warrant this expansion of

[938459/1]                                            5

his authority, and Chassen consented to remain in his role as a minority member of JJ Arch on or about May 22, 2021.

29.   The original plan, at the time JJ Arch was formed, was that Simpson was to be its managing member, with the authority to manage, arrange, and cause to be coordinated the business, affairs, and assets of JJ Arch. (Exhibit 2, JJ Arch Limited Liability Company Operating Agreement ["JJ Arch Original Operating Agreement"], p. 7, ¶ 3.1(a).) This was to be the case prior to the fourth anniversary of JJ Arch's operating agreement, *i.e.*, December 11, 2021. (*Id.*)

30.   However, following the fourth anniversary of the operating agreement, both Simpson and Chassen were to act as managing members of JJ Arch, with each of them holding the authority to manage, arrange, and cause to be coordinated JJ Arch's business, affairs, and assets. (Exhibit 2, JJ Arch Original Operating Agreement, p. 9 § 3.2.)

31.   In addition, the JJ Arch Original Operating Agreement provided Chassen with a veto over certain decisions or actions with regard to JJ Arch even prior to the fourth anniversary of the JJ Arch Original Operating Agreement, such that Simpson could make certain decisions defined as "Company Major Decisions" only if he had Chassen's prior written consent. These actions included, among others, selling any asset of Arch Entities, borrowing or raising monies on behalf of Arch Entities, mortgaging Arch Entities' properties, Arch Entities' entering into any lease of space, and hiring any employee, consultant, or other personnel for Arch Entities. (*See* Exhibit 2, JJ Arch Original Operating Agreement, pp. 8-9, ¶¶ 3.1(b)(iii), (v)-(viii); *see also id.* p. 8 ¶ 3.1(b) [stating that "any action or decision that would constitute a Company Majority Decision shall be a Company Major Decision if made or taken by any Investment Entity"]; *id.* p. 4 [defining "Investment Entity" as including "AREH"]; *id.* p. 1 [defining "AREH" as Arch].)

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 08/15/2023

24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
Pg 20 of 63

32.     On the other hand, Simpson could take other actions without Chassen's consent, including but not limited to conducting, managing, and controlling the affairs and business of Arch Entities; opening, maintaining and closing bank accounts and drawing checks; bringing  legal actions on claims of Arch Entities; and depositing, withdrawing, investing, paying, retaining, and distributing Arch Entities' funds in a manner consistent with the provisions of the JJ Arch Original Operating Agreement. (Exhibit 2, JJ Arch Original Operating Agreement, pp. 7-8 ¶¶ 3.1(a)(i)-(ii), (v)-(vi).)

33.     However, prior to the fourth anniversary of the JJ Arch Original Operating Agreement, Simpson had a discussion with Chassen, and informed him that Simpson did not believe Chassen had sufficient acumen in the business to be a co-managing member of JJ Arch and, by virtue of JJ Arch's managing membership in Arch, a co-managing member of Arch. Chassen agreed with Simpson about this.

34.     JJ Arch's operating agreement was thus amended, with Chassen's consent, on or about May 22, 2021. The amendment removed the authority that Chassen would have had, following the fourth anniversary of the JJ Arch Original Operating Agreement, to manage, arrange, and cause to be coordinated the business, affairs and assets of JJ Arch. (Exhibit 3, JJ Arch LLC Agreement Amendment No. 1, p. 3 ¶ 2(d) [deleting § 3.2 of the JJ Arch Original Operating Agreement].) (The JJ Arch Original Operating Agreement, as amended by JJ Arch LLC Agreement Amendment No. 1, shall be referred to as the "JJ Arch Amended Operating Agreement".) Thus, Chassen never had such authority. Because the list of actions and decisions for which Chassen's consent was required, *i.e.*, the "Company Major Decisions," remained effective only until the fourth anniversary of the JJ Arch Original Operating Agreement (*compare id.* p. 3 § 2(d) [new § 3.2] *with* Exhibit 2, JJ Arch Original Operating Agreement, p. 8 ¶ 3.1(b)), this meant that Chassen

would lose, and ultimately did lose, his right to refuse consent to Company Major Decisions after that anniversary, which occurred in December 2021.

35.    In addition, JJ Arch's operating agreement was amended to bar Chassen from becoming an equal equity owner in JJ Arch.  When JJ Arch was formed, it was agreed that my share of JJ Arch's distributions, which would initially be 66.6667%, would decrease, and Chassen's share of JJ Arch's distributions, which would initially be 33.3333%, would commensurately increase, on an annual basis, such that, by the fourth anniversary of the operating agreement, *i.e.*, December 11, 2021, each of them would receive equal 50% shares of the distributions. (Exhibit 2, JJ Arch Original Operating Agreement, p. 4 § 1.1, Definition of "Distribution Percentages"; *id.* p. 12 ¶ 5.1(a)(ii); *id.* Exhibit A.)

36.    However, JJ Arch's operating agreement was amended, with Chassen's consent and as part of JJ Arch LLC Agreement Amendment No. 1 (the same amendment as discussed above), to provide that, indefinitely, Simpson is to receive 50.1% of the distributions from JJ Arch, and Chassen is to receive 49.9% of the distributions from JJ Arch. (Exhibit 3, JJ Arch LLC Agreement Amendment No. 1, p. 1 ¶ 2(a).)

37.    In addition, Arch's operating agreement provides that "the business, affairs and assets of [Arch] shall be managed, arranged and caused to be coordinated by Managing Member, who shall have, except as otherwise provided in [the operating agreement] (including, but not limited to, in Section 7.1.3), full, exclusive and complete discretion with respect thereto." (Exhibit 1, Arch Operating Agreement, p. 17, ¶ 7.1.1.) The Managing Member, *i.e.*, JJ Arch, has "the unilateral power and authority acting in good faith to make and implement all decisions with respect to all matters which [Arch] has the authority to perform both directly and indirectly through one or more Subsidiaries" (*id.* p. 18 ¶ 7.1.1), including, *inter alia*, those to "conduct, manage and

24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document

control the affairs and business of [Arch]" (*id.* p. 18 ¶ 7.1.1(i)); "open, maintain and close bank accounts and drew checks or other orders for the payment of monies" (*id.* ¶ 7.1.1(ii)); "deposit, withdraw, invest, pay, retain and distribute [Arch's] funds in a manner consistent with the provisions of [the Arch Operating Agreement]) (*id.* ¶ 7.1.1(vi)); and "bring or defend . . . resort to legal action, or otherwise adjust claims . . . of [Arch]" (*id.* ¶ 7.1.1(v)).

38.     Thus, at all times Simpson has been, and remains, the managing member of JJ Arch, and Simpson has always had exclusive authority to, *inter alia*, open, maintain, and close bank accounts on behalf of Arch Entities; to draw checks on those accounts; to deposit, withdraw, pay, and distribute Arch Entities' funds; and to bring legal actions on behalf of the Arch Entities.

39.     Chassen worked for Arch, and reported to Simpson. Simpson had the authority to give Chassen work assignments to do for Arch, and to take Arch work assignments away from Chassen.

40.     Until the events beginning August 4, 2023, as set forth below, Last had served as managing director of Arch.

**Means of Removing Members of Arch and JJ Arch**

41.     Under both the Arch Operating Agreement and the JJ Arch Amended Operating Agreement, members may be removed, on certain enumerated grounds, through a process that is initiated by the occurrence of a "Cause Event." The Arch Operating Agreement provides an enumerated list of eight acts, the commission of which, by the managing member, serves as a "Cause Event." (*See* Exhibit 1, Arch Operating Agreement, pp. 4-5, § 1.1, definition of "Cause Event".) The JJ Arch Amended Operating Agreement extends this definition of "Cause Event" to any member of JJ Arch. (*See* Exhibit 2, JJ Arch Amended Operating Agreement, p. 3, § 1.1, definition of "Cause Event.")

[938459/1]                          9

42.     The acts constituting "Cause Event[s]" include, but are not limited to, "willful misconduct in relation to the business or affairs of [Arch] or a Subsidiary," "breach of fiduciary duty in relation to the business or affairs of [Arch] or a Subsidiary," and "misappropriation of [Arch] or Subsidiary funds or property." (Exhibit 1, Arch Operating Agreement, § 1.1, pp. 4-5, Definition of "Cause Event.")

43.     Under the JJ Arch Operating Agreement, a member in JJ Arch is required to resign if a Cause Event has occurred with respect to such member, and the other member has delivered written notice thereof to that member. (*See* Exhibit 2, JJ Arch Amended Operating Agreement, p. 5, § 1.1, definition of "Resignation.") Notably, only "the other Member" may deliver such notice (*id.*); accordingly, only a current member of JJ Arch could trigger a member's resignation through delivering notice of a Cause Event. Upon such Resignation, that member is no longer deemed a "member" of JJ Arch, and "shall not be entitled to any rights as a Member of the Company for any period from and after such Resignation." (*Id.*, p. 15, § 7.5(a).)

44.     Under the Arch Operating Agreement, in the event written notice of a Cause Event is delivered to JJ Arch, JJ Arch may be removed effective ten (10) business days after such delivery, or at such later date or as specified in such notice. (Exhibit 1, Arch Operating Agreement, p. 20, ¶ 7.1.4.)

## CHASSEN'S MISCONDUCT

### Chassen Placed His Interests, and Those of His Family and Friends, Above Those of JJ Arch

45.     In or about July 2023, Chassen acknowledged that his duties and role could not be compensated at the same level as previously, due to higher interest rates and a slowdown in business, and Arch would not be able to afford to pay Simpson, Chassen, and other key employees

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 1
24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
RECEIVED NYSCEF: 08/15/2023
Pg 24 of 63

their full salaries, and Simpson asked Chassen whether he would be willing to accept a substantial reduction in his pay in order to enable Arch to remain in its status quo rather than building up debt.

46.     Chassen initially indicated to Simpson that Chassen would be willing to take such a pay cut, although at the time he did not inform Simpson how large of a pay cut he would be willing to take.

47.     In or about early July 2023, Simpson asked Chassen how large of a pay reduction Chassen would agree to. Chassen repeatedly avoided answering Simpson's requests on this point.

48.     Finally, on or about August 2, 2023, Chassen informed Simpson that, in fact, Chassen would not be willing to accept any pay reduction.

### The Coup Begins

49.     Chassen, apparently working in concert with NJ Inc. and with several other employees of Arch, undertook a series of actions designed to steal control of Arch and JJ Arch from Simpson, in violation of Arch and JJ Arch's respective operating agreements. First, upon information and belief, at approximately 1:15 p.m. on Friday, August 4, 2023, Chassen contacted the bank at which Arch maintains its accounts, Defendant First Republic, and instructed First Republic to remove Simpson as an authorized signatory on all accounts he maintained with First Republic in either his corporate or individual capacity, including all bank accounts that the Arch Companies maintain with First Republic (the "Arch Accounts"), and also accounts Simpson maintained individually with no connection to the Arch Companies.

50.     Chassen was neither authorized to make this change, nor did he provide Simpson with any advance notice thereof.

51.     First Republic complied with Chassen's demand. First Republic informed Simpson that it no longer permits Simpson to make transactions from any of the accounts he maintains with First Republic in either his corporate or individual capacity, or, indeed, any other account on which

[938459/1]                                    11

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM    INDEX NO. 158055/2023

NYSCEF DOC. NO. 1    24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document    RECEIVED NYSCEF: 08/15/2023

Pg 25 of 63

Simpson was the signatory, including the Arch Accounts, accounts on which he was the signatory

on behalf of entities other than the Arch Companies, and his own individual accounts.

### The Forced Resignation of Chassen from Arch

52.    On August 5, 2023, Simpson sent Chassen an email wherein Simpson provided him

written notice that he had committed a Cause Event, and that accordingly, under the JJ Arch

Amended Operating Agreement, Chassen ceased to be a member of JJ Arch. (*See* Exhibit 4

["Notice to Chassen of Cause Event"].)

53.    Chassen had committed a Cause Event prior to the Notice to Chassen of Cause

Event, in that Chassen had, without authority, acted to deprive Simpson of his ability to make

transactions on the Arch Accounts and to seize that ability for himself.

54.    Chassen's acting, without authority, to deprive Simpson of his ability to make

transactions on the Arch Accounts, and to seize that ability for himself, constituted willful

misconduct in relation to the business or affairs of Arch and JJ Arch and their subsidiaries, and

therefore constituted a Cause Event under the JJ Arch Amended Operating Agreement.

55.    Chassen's acting, without authority, to deprive Simpson of his ability to make

transactions on the Arch Accounts, and to seize that ability for himself, constituted a breach of

fiduciary duty in relation to the business or affairs of Arch and JJ Arch and their subsidiaries, and

therefore constituted a Cause Event under the JJ Arch Amended Operating Agreement.

56.    Chassen's acting, without authority, to deprive Simpson of his ability to make

transactions on the Arch Accounts, and to seize that ability for himself, constituted a

misappropriation of funds of Arch, JJ Arch, and their subsidiaries, and therefore constituted a

Cause Event under the JJ Arch Amended Operating Agreement.

57.    Accordingly, the Notice of Chassen Cause Event triggered immediately Chassen's

removal as a member of JJ Arch.

[938459/1]                                12

### The Coup Continues

58.    Notwithstanding, Chassen proceeded in disregard of the Notice to Chassen of Cause Event. Specifically, over the weekend of August 5-6, 2023, the administrator of Arch's email and information technology systems, acting upon Chassen's instructions, locked Simpson out of his Arch Companies email account and all other Arch IT systems. Beginning no later than 5 p.m. on Sunday, August 6, 2023, Simpson no longer had access to his Arch Companies email account. At or about 10-11 a.m. on Monday, August 7, 2023, Simpson could no longer log onto his Arch-issued computer. As a result, Simpson could not obtain access to the business records of the Arch Companies, or the computer payroll program that Arch Companies use to pay their employees. Simpson was also locked out of the server hosting Arch Companies' web site, and Chassen made changes to such site, without Simpson's authorization, to remove references thereon to Simpson as a managing member.

59.    Chassen also retaliated for his removal as a member of JJ Arch by sending Simpson, by electronic mail, a signed letter on August 6, 2023, wherein he purported to inform Simpson that Simpson was required to resign pursuant to the JJ Arch Amended Operating Agreement ("Chassen 8/6/23 Letter"). The Chassen 8/6/23 Letter asserted that Simpson had committed multiple Cause Events, none of which had actually occurred, and asserted that, as a result, a resignation from JJ Arch had occurred on Simpson's part and Simpson was no longer a member of JJ Arch, nor did Simpson have any right to act on behalf of JJ Arch, Arch, or any subsidiary of JJ Arch.

60.    However, by the time of the Chassen 8/6/23 Letter, Chassen had already been removed as a member of JJ Arch pursuant to the Notice to Chassen of Cause Event. Accordingly, as noted above, Chassen could not, under the JJ Arch Amended Operating Agreement, trigger Simpson's own resignation by delivering to him a purported notice of Cause Event.

61.     Moreover, even if the Chassen 8/6/23 Letter had been effective as a notice of Cause Event, it was not sent to Simpson until after Chassen's instruction on August 4, 2023 to First Republic to strip Simpson of his signatory authority, so as of the time Chassen provided such instruction Simpson remained JJ Arch's managing member with exclusive authority over the Arch Companies' bank accounts, and Chassen's instruction was in violation of Arch's and JJ Arch's operating agreements.

62.     In addition, on August 6, 2023, NJ Inc., sent Simpson a letter (the "8/6/23 NJ Inc. Letter"), wherein NJ Inc. asserted that JJ Arch, through Simpson's actions, had committed multiple Cause Events under the Arch Operating Agreement, again none of which had actually occurred, and asserted that NJ Inc. reserved the right to remove JJ Arch as the managing member of Arch.

63.     In addition, Chassen arranged for the deactivation of the device Simpson uses to gain access to Arch's physical office located at 88 University Place, New York, New York 10003, such that when Simpson attempted to enter his office there at 9:00 a.m. on Monday, August 7, 2023, he was unable to do so.

64.     Upon information and belief, on or about August 7, 2023, after he had already been duly removed as a member of JJ Arch, Chassen sent an email to employees of Arch Companies in which he instructed them not to come into the office to work that day, and falsely informed them that Simpson was deemed to have resigned from his managerial roles with Arch Companies.  He further instructed employees to not respond to any outreach from Simpson. Even before his removal as a member of JJ Arch, Chassen had no authority to do so.

65.     Simpson has since been able to regain access to his physical office at Arch. However, he still has only limited access to Arch's computer system, and is still unable to gain access to Arch's bank accounts. Through counsel, he demanded that First Republic restore him as

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM                INDEX NO. 158055/2023
NYSCEF DOC. NO. 1      24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document    RECEIVED NYSCEF: 08/15/2023

Pg 28 of 63

a signatory on such accounts, and remove Chassen as a signatory. First Republic has refused to do so, and has advised Simpson that because it has "received conflicting instructions regarding the ownership and control" of such accounts, First Republic has placed a hold on those accounts, and will not permit any deposits or withdrawals from such accounts. (Exhibit 5, Letter from Christy Santoro, Preferred Banker at First Republic, to Jeffrey Simpson, dated Aug. 6, 2023, first page.) One hundred and fifty (150) accounts are subject to this hold. (*See id.*, second through fifth pages.) (Collectively, these are the "Arch Accounts.") These include accounts for Arch Companies, as well as accounts maintained for the purpose of holding monies held in trust for subcontractors, materialmen, and other persons involved in Arch Companies' construction projects who are beneficiaries under Article 3-A of the New York State Lien Law. First Republic has advised that it will not release the hold until it "receive[s] evidence satisfactory to us that there is no longer a dispute as to who has authority over the accounts" (*id.*, first page), or there is a court order requiring its release (*see* Exhibit 6, email from First Republic's in-house counsel to Plaintiffs' counsel).

66.    Continuation of First Republic's hold on the Arch Companies' bank accounts would wreak havoc on the Arch Companies. Arch Companies would be unable to meet their payroll, inflicting hardship both on Arch Companies' employees, who number approximately 100, and on Arch Companies themselves when such employees ultimately leave their positions for employment with companies whose minority members are not sabotaging company finances in order to extract concessions.

67.    With the hold on those bank accounts, Arch will also stand unable to pay its bills to vendors, such as insurance premiums (*see* Exhibit 7 hereto). Indeed, Arch Companies are now in default on many obligations as a result of their inability to make payments due to the hold. Arch

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 08/15/2023

24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
Pg 29 of 63

Companies would also be unable to pay rent and other bills, and to make payments on construction loans and to investors in Arch Companies.

68. The bank accounts that are subject to First Republic's hold also include trust accounts under Article 3-A of the New York State Lien Law, which hold funds in trust for, among others, subcontractors and materialmen on construction projects being performed for Arch Company entities. Thus, the existing account hold prevents Arch Company entities from being able to pay their subcontractors and materialmen. This is doubly harmful to the Arch Companies, in that they now cannot pay those subcontractors and materialmen, which may cause them to cease performing their present construction work, and it also may dissuade them from performing projects for the Arch Companies in the future, out of fear that another, future frivolous dispute over company control may lead to another hold on Arch Companies' bank accounts and a recurrence of delays in paying them.

69. With both Arch Companies' employees and their subcontractors leaving active job sites, there is a further risk that such sites will not be adequately staffed or supervised, or machinery there adequately maintained, creating a public safety risk that will result in injury to those remaining employees or subcontractors, and nearby members of the public.

70. The aforesaid effects also endanger the general reputation of Arch Companies going forward, tarnishing it with the appearance that it cannot be trusted to fulfill its obligations.

71. Another consequence of the coup perpetrated by Chassen is that Last, Arch's managing director, has resigned from her position with Arch on or about August 7, 2023, in response to said coup. Consequently, Arch has lost the benefit of Last's performance.

72. In addition, Chassen and Computero Inc. ("Computero"), the outside company acting as Arch's information technology consultant, have colluded to deny Simpson access to his

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM    INDEX NO. 158055/2023
NYSCEF DOC. NO. 1    24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document    RECEIVED NYSCEF: 08/15/2023

Pg 30 of 63

Arch company email account. Computero first disregarded his instructions to remove Chassen's access to Arch's computer network and his Arch email account beginning shortly before the time Simpson provided the Notice to Chassen of Cause Event, then cut off Simpson's access to the Arch computer network and his Arch email account. Then, after Simpson made repeated requests to regain access to his email account, Computero restored his email access on the evening of Wednesday, August 9. However, approximately one hour after his email access was reinstated, it was again cut off, this time ostensibly by Microsoft. However, Chassen was Microsoft's only contact person at Arch Companies, and thus the only person who could have instructed Microsoft to cut off Simpson's email access. Simpson remains unable to gain access to his Arch email account, and thus unable to receive or respond to email communications from Arch's many employees.

73.    In addition, Simpson's access to Dropbox has not been restored, thus making it impossible for him to view the Arch Companies' internal documents, which are stored in Dropbox. Also, Chassen has engineered a situation in which he is the only contact person for the domain company that hosts Arch Companies' web site. Thus, Simpson cannot communicate with the domain company in order to update the web site, including restoring references to himself as the managing member and removing those to Chassen as a continuing employee and member of the Arch Companies following his resignation.

74.    The combined loss of email and Dropbox access have left Simpson, as the chief managerial figure at Arch Companies, effectively blind (unable to view documents) and deaf and mute (unable to communicate with the Arch Companies' employees, or with the public through Arch Companies' web site). This has rendered him unable to exercise his authority as managing member of JJ Arch, and left the Arch Companies as a rudderless ship.

[938459/1]                            17

24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
Pg 31 of 63

## AS AND FOR A FIRST CAUSE OF ACTION

**(Breach of the Amended JJ Arch Operating Agreement, Brought by Arch and by Simpson, Against Defendant Chassen)**

75.     Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

76.     The Amended JJ Arch Operating Agreement is a valid and binding agreement between Simpson and Chassen.

77.     The Amended JJ Arch Operating Agreement is supported by valuable consideration.

78.     Arch is expressly mentioned in the Amended JJ Arch Operating Agreement and defined therein as an "Investment Entity".

79.     Paragraph 3.1 of the Amended JJ Arch Operating Agreement sets forth powers that Simpson has with regard to matters which JJ Arch has the authority to perform "indirectly through an Investment Entity," *i.e.*, through Arch.

80.     The Amended JJ Arch Operating Agreement was intended for Arch's benefit.

81.     The benefit to Arch from the Amended JJ Arch Operating Agreement is sufficiently immediate to indicate the assumption by the contracting parties of a duty to compensate Arch if the benefit is lost.

82.     Arch is a third-party beneficiary of the Amended JJ Arch Operating Agreement.

83.     Chassen materially breached the Amended JJ Arch Operating Agreement by conducting, managing, and controlling the affairs and business of JJ Arch, when, under ¶ 3.1(i) of the Amended JJ Arch Operating Agreement, only Simpson had the authority to do so.

84.     Simpson has been injured by this breach of the Amended JJ Arch Operating Agreement, in that it has caused him to lose the ability to conduct, manage, and control the affairs

[938459/1]                          18

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM        INDEX NO. 158055/2023
NYSCEF DOC. NO. 1        24-10381-jpm   Doc 61   Filed 04/01/24   Entered 04/01/24 17:10:04   Main Document        RECEIVED NYSCEF: 08/15/2023

Pg 32 of 63

of Arch Entities, and, so long as a hold remains on the Arch Companies' bank accounts, he will continue to suffer a diminished ability to conduct, manage, and control the affairs of JJ Arch and of Arch.

85.     Arch has been injured by this breach of the Amended JJ Arch Operating Agreement, in that such breach has resulted in the resignation of Last and the loss of the value of her work to Arch; so long as a hold remains on the Arch Companies' bank accounts, it will be unable to meet its financial obligations, including but not limited to paying its employees and vendors, including but not limited to its insurers; and Arch is likely to suffer reputational harm in the future.

86.     Chassen materially breached ¶ 3.1(ii) of the Amended JJ Arch Operating Agreement by stripping Simpson of the authority to control the Arch Companies' bank accounts and draw checks thereon, and transferring such authority to himself.

87.     Simpson has been injured by this breach of the Amended JJ Arch Operating Agreement, in that it has caused him to lose the ability to control the Arch Companies' bank accounts and draw checks thereon, and such injury will continue into the future so long as a hold remains on the Arch Companies' bank accounts.

88.     Arch has been injured by this breach of the Amended JJ Arch Operating Agreement, in that Arch has lost the ability to meet its financial obligations, including but not limited to paying its employees and vendors, including but not limited to its insurers. Arch will continue to suffer such injury so long as a hold remains on the Arch Companies' bank accounts, and Arch is likely to suffer reputational harm in the future.

89.     Chassen materially breached ¶ 3.1(vi) of the Amended JJ Arch Operating Agreement by stripping Simpson of the authority to withdraw, pay, and distribute the funds of Arch Companies, and transferring such authority to himself.

[938459/1]                                19

90.     Simpson has been injured by this breach of the Amended JJ Arch Operating Agreement, in that it has caused him to lose the ability to withdraw, pay, and distribute the funds of Arch Companies, and such injury will continue into the future so long as a hold remains on the Arch Companies' bank accounts.

91.     Arch has been injured by this breach of the Amended JJ Arch Operating Agreement, in that Arch has lost the ability to meet its financial obligations, including but not limited to paying its employees and vendors, including but not limited to its insurers. Arch will continue to suffer such injury so long as a hold remains on the Arch Companies' bank accounts, and Arch is likely to suffer reputational harm in the future.

92.     Chassen materially breached the "Resignation" provision of § 1.1 of the Amended JJ Arch Operating Agreement by purporting to deliver a notice of Cause Event to Simpson, when, by the time he had done so, Chassen had been removed as a member of JJ Arch, and thus had no authority to do so, and when the purported Cause Events set forth in such notice had not occurred.

93.     Simpson has been injured by this breach of the Amended JJ Arch Operating Agreement, in that Chassen has used it as a pretext to continue to conduct, manage, and control the affairs of Arch Entities, to the exclusion of Simpson.

94.     Arch has been injured by this breach of the Amended JJ Arch Operating Agreement, in that, with Chassen having using it as a pretext to dispute, to First Republic, Simpson's authority to control Arch Companies' bank accounts with First Republic, a hold has been placed on such accounts, and Arch has lost the ability to meet its financial obligations, including but not limited to paying its employees and vendors, including but not limited to its insurers. Arch will continue to suffer such injury so long as a hold remains on the Arch Companies' bank accounts, and Arch is likely to suffer reputational harm in the future.

95.     By law, the Amended JJ Arch Operating Agreement contains an implied covenant of good faith and fair dealing, pursuant to which Chassen had an obligation not to act in such a manner as to injure Simpson's rights to receive the fruits of said agreement or to prevent Simpson from performing his duties under said agreement.

96.     Chassen prevented Simpson from performing his duties under the Amended JJ Arch Operating Agreement by acting so as to deny Simpson:

    (a)     the ability to manage the Arch Companies' finances, by depriving Simpson of his ability to make transactions using the Arch Accounts;

    (b)     physical access to his office;

    (c)     the use of Simpson's email account to communicate with employees of the Arch Companies;

    (d)     the use of Dropbox to obtain access to the Arch Companies' corporate documents; and

    (e)     the ability to manage Arch Companies' web site by communicating with the domain company that hosts such web site.

97.     Chassen prevented Simpson from receiving the fruits of the Amended JJ Arch Operating Agreement by purporting to terminate, upon false pretenses and without authority to do so, Simpson's role as managing member of JJ Arch by sending the Chassen 8/6/23 Letter.

98.     By his aforesaid conduct, Chassen has injured Simpson's rights to receive the fruits of the Amended JJ Arch Operating Agreement and prevented Simpson from performing his duties under said agreement.

99.     By his aforesaid conduct, Chassen has breached the implied covenant of good faith and fair dealing in the Amended JJ Arch Operating Agreement.

[938459/1]                              21

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM INDEX NO. 158055/2023
NYSCEF DOC. NO. 1   24-10381-jpm   Doc 61   Filed 04/01/24   Entered 04/01/24 17:10:04   Main Document   RECEIVED NYSCEF: 08/15/2023

Pg 35 of 63

100. For the reasons set forth above, Simpson and JJ Arch have been injured by Chassen's breach of the implied covenant of good faith and fair dealing in the Amended JJ Arch Operating Agreement.

101. Simpson has complied with the Amended JJ Arch Operating Agreement in all respects.

102. As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

103. In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

104. Simpson and Arch have suffered damages, and in the future will continue to suffer damages, in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty, Brought by JJ Arch and by Simpson, Against Defendant Chassen)

105. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

106. Chassen, as a member of JJ Arch, had a fiduciary duty to JJ Arch and to the other member of JJ Arch, Simpson.

107. Chassen had a duty of loyalty to JJ Arch and to Simpson.

108. This duty of loyalty obligated Chassen to act in the best interests of JJ Arch and Simpson, and not to pursue Chassen's own personal interest at the expense of the well-being of JJ Arch and Simpson.

[938459/1]                     22

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
INDEX NO. 158055/2023

NYSCEF DOC. NO. 1

24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document

RECEIVED NYSCEF: 08/15/2023

Pg 36 of 63

109.    Chassen engaged in misconduct by numerous means, including but not limited to by acting so as to deny Simpson:

(a)    the ability to manage the Arch Companies' finances, by depriving Simpson of his ability to make transactions using the Arch Accounts;

(b)    physical access to his office;

(c)    the use of Simpson's email account to communicate with employees of the Arch Companies;

(d)    the use of Dropbox to obtain access to the Arch Companies' corporate documents; and

(e)    the ability to manage Arch Companies' web site by communicating with the domain company that hosts such web site.

110.    Chassen's misconduct resulted directly in damages to Simpson, in that it deprived Simpson of the ability to manage the Arch Companies' finances, gain access to his office, communicate with the Arch Companies' employees, gain access to Arch Companies' corporate documents, and manage the Arch Companies' web site.

111.    Chassen's misconduct resulted directly in damages to JJ Arch, in that it made it impossible for Simpson to pay financial obligations of JJ Arch, communicate with the Arch Companies' employees through email, and gain access to Arch Companies' corporate documents, and it made it impossible for anyone at Arch Companies, other than Chassen, who had already been duly removed from JJ Arch, to manage the Arch Companies' web site.

112.    By seizing control of JJ Arch in violation of the JJ Arch Amended Operating Agreement, and by conducting himself, as a member of JJ Arch, in a manner that placed his own

[938459/1]                                    23

interests and those of his personal associates above those of JJ Arch and Simpson, Chassen breached his duty of loyalty.

113.    Simpson has been damaged, and continues to be damaged, by Chassen's conduct in violation of his duty of loyalty, as set forth above.

114.    JJ Arch has been damaged, and continues to be damaged, by Chassen's conduct in violation of his duty of loyalty, in that such conduct has caused economic harm to Arch as set forth above, and is expected to continue to cause such harm in the future, by virtue of present and expected future decreases in the value of JJ Arch's equity interest in Arch and decreases in the distributions JJ Arch is to receive from Arch.

115.    As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

116.    In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

117.    Simpson and JJ Arch have suffered damages, and in the future will continue to suffer damages, in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Conversion, Brought by All Plaintiffs Against Defendant Chassen)

118.    Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

119.    The funds Arch Companies have on deposit in the Arch Accounts ("Arch Companies Funds") belong to Arch Companies.

[938459/1]                                    24

120.    Simpson, Arch, and JJ Arch have an immediate superior right of possession, relative to Chassen, to the Arch Companies Funds.

121.    The Arch Companies Funds are personal property.

122.    The Arch Companies Funds are specific, identifiable funds.

123.    Chassen, intentionally and without authority, acted to deprive Simpson of Simpson's authority, under the JJ Arch Amended Operating Agreement and the Arch Operating Agreement, to possess and control the Arch Companies Funds.

124.    Chassen has exercised unauthorized dominion over the Arch Companies Funds to the exclusion of the rights of Simpson, Arch, and JJ Arch.

125.    Chassen has an obligation to return control over the Arch Companies Funds to Simpson, Arch, and JJ Arch, but has not done so.

126.    As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

127.    In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

128.    As managing member of JJ Arch, which in turn is the managing member of Arch, Simpson has standing to bring this claim derivatively on behalf of Arch.

129.    Simpson, Arch, and JJ Arch have been injured, and continue to be injured, by Chassen's conversion of the Arch Companies Funds, in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Tortious Interference with Contractual Relations, Brought by Arch and JJ Arch Against Chassen)

130. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

131. Arch and JJ Arch have a valid and binding contract with a third party, *i.e.*, First Republic, pursuant to which JJ Arch, Arch, and the other Arch Companies deposit funds in bank accounts maintained by First Republic (the Arch Companies Funds), and First Republic holds such funds for the benefit of JJ Arch, Arch, and the other Arch Companies (the "First Republic Agreement").

132. Pursuant to the First Republic Agreement, the Arch Companies Funds may be spent and distributed by a person duly authorized by JJ Arch.

133. The sole person duly authorized by JJ Arch to spend and distribute monies from the Arch Companies Funds is Simpson.

134. At all relevant times, Chassen knew of the First Republic Agreement, and that Simpson was the sole person duly authorized by JJ Arch to spend and distribute monies from the Arch Companies Funds.

135. Chassen is a non-party to the First Republic Agreement.

136. Chassen intentionally procured the breach, by First Republic, of the First Republic Agreement, by misrepresenting to First Republic that Chassen, and not Simpson, is the person duly authorized by JJ Arch to spend and distribute monies from the Arch Companies Funds.

137. Arch and JJ Arch have been damaged by Chassen's procurement of First Republic's breach of the First Republic Agreement, in that as a result Simpson has been unable to spend, distribute, or otherwise control the Arch Companies Funds, on behalf of Arch and JJ Arch, as the

duly authorized person pursuant to the First Republic Agreement, and pursuant to his authority under the Arch Operating Agreement and the JJ Arch Amended Operating Agreement.

138.    JJ Arch and Arch have been damaged by Chassen's procurement of First Republic's breach of the First Republic Agreement, in that as a result, as set forth above, they have been, and remain, unable to fulfill their obligations to others, including but not limited to their employees, vendors, subcontractors, and materialmen, and as a result, those persons may cease performing services for JJ Arch and Arch, and JJ Arch and Arch may incur further obligations to those persons or to other persons in the future, or having difficulty in the future finding other persons who will be willing to work for or contract with them.

139.    Chassen's actions constitute tortious interference with the First Republic Agreement.

140.    As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

141.    In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

142.    As managing member of JJ Arch, which in turn is the managing member of Arch, Simpson has standing to bring this claim derivatively on behalf of Arch.

143.    Arch and JJ Arch have been injured, and continue to be injured, by Chassen's tortious interference with the Arch Contracts, in an amount to be determined at trial.

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 1
24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
RECEIVED NYSCEF: 08/15/2023
Pg 41 of 63

## AS AND FOR A FIFTH CAUSE OF ACTION

### (Declaratory Judgment, Brought by All Plaintiffs, Against Chassen)

144.    Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

145.    There is a justiciable controversy between Plaintiffs on the one hand, and Chassen on the other, as to whether

(a)    the Notice to Chassen of Cause Event removed Chassen as a member of JJ Arch; and

(b)    the Chassen 8/6/23 Letter removed Simpson as a member of JJ Arch.

146.    Plaintiffs have taken the position that the Notice of Chassen of Cause Event removed Chassen as a member of JJ Arch, and the Chassen 8/6/23 Letter did not remove Simpson as a member of JJ Arch.

147.    Chassen has taken the position that the Notice of Chassen of Cause Event did not remove Chassen as a member of JJ Arch, and the Chassen 8/6/23 Letter removed Simpson as a member of JJ Arch. However, both positions taken by Chassen are incorrect.

148.    The aforesaid dispute between the parties represents a genuine, concrete dispute involving substantial legal interests.

149.    As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

150.    In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

151.     As managing member of JJ Arch, which in turn is the managing member of Arch,

Simpson has standing to bring this claim derivatively on behalf of Arch.

152.     Plaintiffs are therefore entitled to a declaration of the legal rights of the parties to

resolve the aforesaid dispute.

153.     There is no adequate remedy at law.

### AS AND FOR A SIXTH CAUSE OF ACTION

**(Declaratory Judgment, Brought by All Plaintiffs, Against Chassen and First Republic)**

154.     Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs

as if fully set forth herein.

155.     There is a justiciable controversy between Plaintiffs on the one hand, and

Defendants on the other, as to whether Simpson or Chassen is the individual at JJ Arch and Arch

entitled to exercise control over the Arch Accounts, and whether the hold on the Arch Accounts

should be removed.

156.     Plaintiffs have taken the position that Simpson is the individual at JJ Arch and Arch

entitled to exercise control over the Arch Accounts, and the hold on the Arch Accounts must be

released.

157.     Chassen has taken the position that Chassen is the individual at JJ Arch and Arch

entitled to exercise control over the Arch Accounts. However, the position taken by Chassen is

incorrect.

158.     First Republic has taken the position that it cannot determine whether Simpson or

Chassen is the individual at JJ Arch and Arch entitled to exercise control over the Arch Accounts,

and that the hold should remain on the Arch Accounts. However, the position taken by First

Republic is incorrect.

159. The aforesaid dispute among the parties represents a genuine, concrete dispute involving substantial legal interests.

160. As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

161. In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

162. As managing member of JJ Arch, which in turn is the managing member of Arch, Simpson has standing to bring this claim derivatively on behalf of Arch.

163. Plaintiffs are therefore entitled to a declaration of the legal rights of the parties to resolve the aforesaid dispute.

164. There is no adequate remedy at law.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Preliminary and Permanent Injunction, Brought by All Plaintiffs Against Chassen and First Republic)

165. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

166. Plaintiffs have a likelihood of success on the merits on their claim that Simpson has the right to control, on the behalf of JJ Arch and Arch, the Arch Accounts.

167. In the event that the hold First Republic has placed on the Arch Accounts is not lifted immediately, and the right to control the Arch Accounts is not restored to Simpson, Plaintiffs, and third parties, will experience imminent and irreparable injury.

[938459/1]    30

168.     Such injury will be in the form of Arch Companies being unable to pay their employees, resulting in economic harm to such employees, and at least some of such employees imminently leaving employment with the Arch Companies and seeking work elsewhere; lack of supervision on construction projects supervised by the Arch Companies, imminently resulting in physical injury to members of the public at the construction sites; Arch Companies being unable to pay subcontractors and materialmen on projects, imminently resulting in such subcontractors and materialmen ceasing work on the projects, again imminently resulting in physical injury to members of the public at unsupervised construction sites, as well as economic injury to the Arch Companies owning the project sites, due to delayed completion of projects; and long-term economic damage to Arch Companies, as future efforts at recruiting employees and contracting with third parties are hindered due to damage to Arch Companies' reputation due to a sustained inability to fulfill their obligations.

169.     The only way forward, therefore, to protect Arch Companies, their employees, subcontractors, materialmen, and vendors, and members of the public at large, is for the Court to order that First Republic release its hold on Arch Companies' bank accounts, and restore to Simpson his contractually guaranteed exclusive right to control the finances, and the checkbooks, of Arch Companies.

170.     The balance of the equities favors Plaintiffs.

171.     Plaintiffs are entitled to a preliminary and permanent injunction requiring First Republic, immediately, to lift the hold it has placed on the Arch Accounts, and to restore to Simpson the exclusive right to control the Arch Accounts on behalf of JJ Arch and Arch.

172.     There is no adequate remedy at law.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

**(Preliminary and Permanent Injunction, Brought by All Plaintiffs Against Chassen)**

173.    Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

174.    Plaintiffs have a likelihood of success on the merits of their claim that Simpson is entitled to have access to his email account with Arch Companies, have access to Arch Companies' Dropbox file, and communicate with the company hosting the Arch Companies' web site.

175.    In the event that Simpson is unable to gain access to his email account with Arch Companies, have access to Arch Companies' Dropbox file, and communicate with the company hosting the Arch Companies' web site, and Plaintiffs will suffer irreparable injury.

176.    The balance of the equities favors Plaintiffs.

177.    Plaintiffs are entitled to a preliminary and permanent injunction requiring Chassen to take, immediately, all actions necessary to enable Simpson to gain access to his email account with Arch Companies, have access to Arch Companies' Dropbox file, and communicate with the company hosting the Arch Companies' web site.

178.    There is no adequate remedy at law.

**WHEREFORE**, Plaintiffs demand judgment as follows:

(a)    On the First Cause of Action, awarding damages to Arch and Simpson against Chassen in an amount to be determined at trial;

(b)    On the Second Cause of Action, awarding damages to JJ Arch and Simpson against Chassen in an amount to be determined at trial;

(c)    On the Third Cause of Action, awarding damages to all Plaintiffs against Chassen in an amount to be determined at trial;

[938459/1]                                              32

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
INDEX NO. 158055/2023

NYSCEF DOC. NO. 1
24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
RECEIVED NYSCEF: 08/15/2023
Pg 46 of 63

(d)    On the Fourth Cause of Action, awarding damages to Arch and JJ Arch against Chassen in an amount to be determined at trial;

(e)    On the Fifth Cause of Action, declaring that Simpson remains the managing member of JJ Arch, and Chassen is no longer a member of JJ Arch;

(f)    On the Sixth Cause of Action, declaring that Simpson is the individual at JJ Arch and Arch entitled to exercise control over the Arch Accounts, and the hold on the Arch Accounts must be released;

(g)    On the Seventh Cause of Action, issuing a preliminary and permanent injunction First Republic, immediately, to lift the hold it has placed on the Arch Accounts, and to restore to Simpson the exclusive right to control the Arch Accounts on behalf of JJ Arch and Arch; and

(h)    On the Eighth Cause of Action, issuing a preliminary and permanent injunction requiring Chassen to take, immediately, all actions necessary to enable Simpson to gain access to his email account with Arch Companies, have access to Arch Companies' Dropbox file, and communicate with the company hosting the Arch Companies' web site;

(i)    Together with interest, costs, disbursements, and attorneys' fees, and such other and further relief as to the Court may seem just.

Dated: New York, New York
      August 14, 2023

Yours, etc.

ADAM LEITMAN BAILEY, P.C.

By: _____
      Adam Leitman Bailey, Esq.

[938459/1]                    33

Brandon M. Zlotnick, Esq.
One Battery Park Plaza, 18th Floor
New York, NY 10004
Phone: (212) 825-0365
*Attorneys for Plaintiffs*

<u>EXHIBIT C TO DECLARATION</u>

(Letter from Chassen Dated August 6, 2023)

FILED: NEW YORK COUNTY CLERK 09/14/2023 02:52 PM
NYSCEF DOC. NO. 68

24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
Pg 49 of 63

INDEX NO. 158055/2023
RECEIVED NYSCEF: 09/14/2023

August 6, 2023

<u>By Electronic Mail</u>

Mr. Jeffrey Simpson

Re:     Limited Liability Company Agreement of JJ Arch LLC, dated as of December 11, 2017
        (as amended, the "**<u>LLC Agreement</u>**")

Dear Jeff:

Reference is made to the LLC Agreement. Capitalized terms used but not defined herein have the meanings given to them in the LLC Agreement.

I am in receipt of your email from yesterday. I reject in total (1) all the assertions in your email and (2) your purported forced resignation of me as a Member. You allege no conduct on my part that would constitute a Cause Event, and no such conduct occurred. As such, I remain a Member with all of my rights and remedies under the LLC Agreement, at law and in equity.

In fact, you are the one who has committed multiple Cause Events, including, without limitation, willful misconduct and breach of fiduciary duty in relation to the business and affairs of the Company, AREH and other Subsidiaries (as defined in the limited liability company agreement of AREH), such as, without limitation, (a) directing lawyers for one or more Subsidiaries to stop work on extremely time sensitive matters for your own personal leverage, (b) making various misrepresentations to 608941 NJ INC. ("<u>35 Oak</u>") and other investors to induce them to invest in deals and contribute additional capital to Subsidiaries, (c) misapplying Company resources for your personal use, (d) breaching your fiduciary duty under the LLC Agreement by *inter alia* failing to obtain my consent required for certain decisions as required under the LLC Agreement, (e) engaging in willful misconduct as to the business and affairs of the Company, including but not limited engaging in conduct resulting issuance by 35 Oak, the Investor Member, of the attached notice removing the Company as Managing Member of AREH ("Investor Removal Notice"), (f) engaging in gross negligence, which will result in material loss as to the business and affairs of the Company, as a result of the Investor Member's issuance of the Investor Removal Notice and (g) the other Cause Events listed in the Investor Removal Notice. The foregoing items are not intended to be an exclusive itemization of your misconduct providing grounds for removal but are sufficient alone to require your Resignation.

As a result of your commission of multiple Cause Events, (1) a Resignation occurred on your part, (2) your Company Interest has been deemed automatically redeemed by the Company for the Redemption Amount in accordance with Section 7.5 of the LLC Agreement, and (3) you are no longer a Member of the Company and have no right to act on behalf of the Company, any Investment Entity, or any other Subsidiary in any capacity or in any respect.

FILED: NEW YORK COUNTY CLERK 09/14/2023 02:52 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 68
RECEIVED NYSCEF: 09/14/2023
24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
Pg 50 of 63

As such, I hereby direct you to immediately refrain from taking (or purporting to take), whether directly or through any other person or entity, any action on behalf of the Company, any Investment Entity, or any other Subsidiary in any capacity or in any respect, including, without limitation, having any contact with any employee, contractor or counterparty of the Company, any Investment Entity, or any other Subsidiary. If you take, or purport to take, any such action (whether directly or through any other person or entity), then I reserve the right to exercise, and intend to exercise, all rights and remedies on account thereof, including the right to pursue damages or seek injunctive relief. For the avoidance of doubt, although this correspondence is being sent in a good faith effort to avoid litigation, any attempt by you to exercise any unauthorized rights in the membership interest by continuing your frivolous, bad faith, and legally untenable positions will constitute a further material breach of the LLC Agreement and will result in the immediate initiation of legal proceedings. Lastly, in addition to contractual damages, I will seek prejudgment interest and reimbursement of my legal fees and expenses in accordance with New York law.

For all of the forgoing reasons, please consider this correspondence as formal notice that you have Resigned as a Member by operation of the express provisions of the LLC Agreement and demand that you immediately retract, in writing, your notices to 35 Oak, employees and other third parties. Failure to do so will result in taking all legal actions necessary to enforce my rights.

This notice is not intended to set forth the full scope of my rights, remedies and claims against you (particularly in light of your bad faith actions towards me over the past forty-eight (48) hours). Accordingly, this notice should not be seen as a limitation of any additional rights I may have under related documents, and/or New York law. I reserve all rights to assert additional rights, remedies and claims against you.

In any event, foregoing is without prejudice to or waiver of any of my rights and/or remedies under the LLC Agreement, all of which are expressly reserved.

Very truly yours,

*Jared Chassen*
Jared Chassen

EXHIBIT D TO DECLARATION

(November 22, 2023 Interim State Court Order [Dkt. No. 418])

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 03M

------------------------------------------------------------------------------X

JEFFREY SIMPSON, JJ ARCH LLC,

|  |  |
|---|---|
| **INDEX NO.** | 158055/2023 |

                            Plaintiffs,

|  |  |
|---|---|
| **MOTION DATE** | 11/03/2023 |

                 - v -

JARED CHASSEN, FIRST REPUBLIC BANK,

|  |  |
|---|---|
| **MOTION SEQ. NO.** | 005 |

                            Defendants.

**AMENDED DECISION +
ORDER ON MOTION**

------------------------------------------------------------------------------X

608941 NJ INC

                            Plaintiff,

                 - v -

JEFFREY SIMPSON, JJ ARCH LLC, AND ARCH REAL
ESTATE HOLDINGS LLC,

                            Defendants.


------------------------------------------------------------------------------X

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 005) 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 321, 322, 323, 324, 325, 329, 330, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 356, 357, 358, 359, 360, 361, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 412, 413, 414, 415, 416

were read on this motion for _____PRELIMINARY INJUNCTION/RESTRAINING ORDER_____.

The Court's November 20, 2023 Interim Decision and Order (NYSCEF 412) granting

Plaintiff 608941 NJ Inc.'s ("Oak") motion for a preliminary injunction is hereby amended to

provide the following details with respect to the terms and scope of the injunction.  It is now

further:

**ORDERED** that, during the pendency of this action and subject to further order of the

Court, Jeffrey Simpson and JJ Arch LLC are enjoined from:

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL                     Page 1 of 8
Motion No.  005

1 of 8

1. Acting as (or holding themselves out to third parties to be) managing members of Arch Real Estate Holdings LLC ("AREH"), and Oak shall continue to act in their stead as AREH's sole managing member in accordance with Section 7.1 of the Limited Liability Operating Agreement of AREH (the "Operating Agreement"), owing all applicable duties to AREH and its members;

2. Denying prompt consent to any Major Decision proposed by Oak as Managing Member under Section 7.1.3 of the Operating Agreement unless *both* JJ Arch members (Jeffrey Simpson and Jared Chassen) jointly agree to deny such consent (or alternatively, either JJ Arch member may convey consent);

3. Making any filings with the New York City Department of Buildings or any other similar regulatory authorities in any jurisdictions on behalf of AREH or any of its subsidiary entities; and

4. Otherwise interfering with Oak's ability to exercise its responsibilities as Managing Member of AREH.

**ORDERED** that, during the pendency of this action and subject to further order of the Court, Jeffery Simpson is enjoined from entering the offices of AREH except with and upon the terms stated in an advance written consent provided by Oak[1]; it is further

---

[1] Oak proposed adding a provision enjoining Mr. Simpson from contacting employees of AREH or its subsidiaries except through counsel or with the advance written permission of Oak. The Court has not included that proposed language, which seems an excessively broad restriction on what could be legitimate and inoffensive conduct and speech. That said, the Court notes that contacting individuals who are represented by counsel (as current and former employees of AREH may be) during the course of a litigation can raise significant issues. In addition, it should go without saying any actions that could constitute threats to actual or potential witnesses could raise even graver concerns, as Mr. Simpson's counsel acknowledged during the argument of this motion. For now, the Court will rely on counsel to advise Mr. Simpson on these issues

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL          Page 2 of 8
Motion No. 005

2 of 8

**ORDERED** that, during the pendency of this action and subject to further order of the Court, Oak representatives Michael Wiener, Kevin Wiener, and Frank van Biesen shall each be permitted to have online viewing access to the Arch Accounts listed on Exhibit A, attached hereto, and shall each be given authorized signer access to make transactions in the Arch Accounts; and Jeffrey Simpson and Jared Chassen, shall cease to have authorized signer access but shall retain viewing access to the Arch Accounts; and all parties must promptly provide any information or documentation requested by First Republic Bank (or its successor in interest) to implement this Order; and it is further

**ORDERED** that, pursuant to CPLR 6312(b), Oak shall be required, within 15 days of the filing of notice of entry of this Order, to cause a duly licensed surety to file an undertaking for costs and damages that may be suffered by Jeffrey Simpson and/or JJ Arch should the preliminary injunction herein ordered be found to have been improvidently granted, in the fixed sum of $250,000.00, failing which the preliminary injunction herein ordered shall dissolve.[2]

---

rather than attempting to incorporate these restrictions – which are imposed by law and carry their own independent consequences – in this Order. However, the Court reserves judgment on a future motion for injunctive relief if subsequent events give rise to such a motion.

[2] The Court considered the competing proposals for an undertaking and believes $250,000.00 is a reasonable amount in the circumstances. To be clear, however, the undertaking is solely to protect against injury flowing from the preliminary injunction itself (if later found to have been improvidently granted). To the extent harm is claimed to result instead from Managing Member conduct that constitutes an independent breach of contract, fiduciary duty, or other viable claim, the harmed parties are not limited to making claims against the undertaking ordered herein.

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL                Page 3 of 8
Motion No. 005

3 of 8

This constitutes the Decision and Order of the Court.

2023112122544MCOHEDDB9A08D04674B61AA2028F1F7FD7A45

| 11/22/2023 | | JOEL M. COHEN, J.S.C. |
|---|---|---|
| **DATE** | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL    Page 4 of 8
Motion No. 005

4 of 8

## EXHIBIT A

CHECKING XXXXXXX5334 5952 BENNER MANAGER LLC
CHECKING XXXXXXX5342 ARCH REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX5367 5952 BENNER INVESTOR LLC
CHECKING XXXXXXX1395 ARCH 11 GREENE ST MM LLC
CHECKING XXXXXXX1577 ARCH BUILDERS LLC A DISREGARDED ENTITY OF
ARCH REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX1809 ARCH 11 GREENE ST BUILDERS LLC A DISREGARDED
ENTITY OF ARCH REAL ESTATE
HOLDINGS LLC
CHECKING XXXXXXX8449 5401 CALIFORNIA ASSOCIATES LLC
CHECKING XXXXXXX1160 TDRT 11 GREENE STREET LLC
CHECKING XXXXXXX2013 ARCH REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX1825 ARCH 45 SAVINGS INVESTORS LLC
CHECKING XXXXXXX1874 ARCH 45 SAVINGS LLC
CHECKING XXXXXXX1924 ARCH 45 SAVINGS MM LLC
CHECKING XXXXXXX1932 45 SAVINGS STREET JV LLC
CHECKING XXXXXXX1973 45 SAVINGS STREET MM LLC
CHECKING XXXXXXX5952 CAMBRIDGE ACQUISITIONS LLC
CHECKING XXXXXXX6075 CAMBRIDGE MEZZ LLC
CHECKING XXXXXXX4165 CAMBRIDGE ACQUISITIONS LLC
CHECKING XXXXXXX4181 CAMBRIDGE ACQUISITIONS LLC
MONEY MARKET CHECKING XXXXXXX3763 CAMBRIDGE ACQUISITIONS LLC
CHECKING XXXXXXX4013 ARCH CAMBRIDGE INVESTORS LLC
CHECKING XXXXXXX4154 ARCH ADVISORS LLC
CHECKING XXXXXXX5160 ARCH ASSET MANAGEMENT LLC
CHECKING XXXXXXX7952 ARCH ADVISORS LLC
CHECKING XXXXXXX6568 MIDTOWN OAKS JV LLC
CHECKING XXXXXXX6626 MIDTOWN OAKS MM JV LLC
CHECKING XXXXXXX9491 CAMELOT CLASS B JV LLC
CHECKING XXXXXXX9509 CAMELOT JV LLC
CHECKING XXXXXXX9525 CAMELOT MM JV LLC
CHECKING XXXXXXX0673 ARCH PROPERTY MANAGEMENT LLC
CHECKING XXXXXXX0764 MMSS LLC
CHECKING XXXXXXX7456 NCSC JV LLC
CHECKING XXXXXXX7464 NCSC MM JV LLC
MONEY MARKET CHECKING XXXXXXX9197 FRANCISCAN PROPERTY OWNER LLC
MONEY MARKET CHECKING XXXXXXX9346 ABNER PROPERTY OWNER LLC
MONEY MARKET CHECKING XXXXXXX8508 OAK GROVE PROPERTY OWNER LLC
CHECKING XXXXXXX5724 LAKESTAR CAMBRIDGE LLC
CHECKING XXXXXXX5799 ARCH SLOPE CAMBRIDGE LLC
CHECKING XXXXXXX5823 ARCH SLOPE CAMBRIDGE MM LLC
CHECKING XXXXXXX5872 ARCH CAMBRIDGE MM LLC
CHECKING XXXXXXX5948 102-02 PARTNERS CAMBRIDGE LLC

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL              Page 5 of 8
Motion No. 005

5 of 8

FILED: NEW YORK COUNTY CLERK 11/28/2023 08:57 AM    INDEX NO. 158055/2023
NYSCEF DOC. NO. 416    24-10381-jpm    Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document    RECEIVED NYSCEF: 11/22/2023

Pg 57 of 63

CHECKING XXXXXXX6003 4690 ORACLE INVESTORS LLC
CHECKING XXXXXXX0122 ARCH BUILDERS LLC A DISREGARDED ENTITY OF
ARCH REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX6194 ARCH PROPERTY MANAGEMENT LLC
CHECKING XXXXXXX2411 ONE BROWN JV LLC
CHECKING XXXXXXX2429 ONE BROWN MM JV LLC
CHECKING XXXXXXX6016 1 BROWN STREET ASSOCIATES LP AND 1 BROWN
STREET OWNER LLC (DACA)
CHECKING XXXXXXX6024 1 BROWN STREET ASSOCIATES LP
CHECKING XXXXXXX6032 1 BROWN STREET ASSOCIATES LP
CHECKING XXXXXXX4607 RIDGEWOOD TOWER LLC
CHECKING XXXXXXX4110 MYRTLE POINT CM LLC
CHECKING XXXXXXX4243 MYRTLE POINT JV LLC
CHECKING XXXXXXX4458 MYRTLE POINT MM JV LLC
CHECKING XXXXXXX5413 DRAKE ARCH BIRMINGHAM 1 LLC
CHECKING XXXXXXX5470 PEBBLE CREEK BORROWER LLC
CHECKING XXXXXXX5553 PEBBLE CREEK MM JV LLC
CHECKING XXXXXXX0862 PEBBLE CREEK BORROWER LLC
CHECKING XXXXXXX0896 PEBBLE CREEK BORROWER LLC
CHECKING XXXXXXX4826 2501 VENTURES OP CO I LLC
CHECKING XXXXXXX1846 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0744 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0785 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0793 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0801 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0843 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0884 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0918 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0942 HAMR BORROWER 3 LLC (DEPOSIT ACCOUNT
CONTROL AGREEMENT)
CHECKING XXXXXXX2326 ARCH DEVELOPERS LLC
CHECKING XXXXXXX3294 2501 ARCH LLC
CHECKING XXXXXXX3351 2501 JV LLC
CHECKING XXXXXXX1005 3820 1ST OWNER LLC
CHECKING XXXXXXX1044 3820 1ST OWNER LLC
CHECKING XXXXXXX1336 3504 12TH OWNER LLC
CHECKING XXXXXXX5987 3504 12TH OWNER LLC (DEPOSIT ACCOUNT CONTROL
AGREEMENT)
CHECKING XXXXXXX5995 3504 12TH OWNER LLC
CHECKING XXXXXXX1203 235 JAMES OWNER LLC
CHECKING XXXXXXX1810 235 JAMES OWNER LLC
CHECKING XXXXXXX1054 DRAKE ARCH TUSCALOOSA 1 LLC
CHECKING XXXXXXX0019 ARCH TUSCALOOSA MM LLC
CHECKING XXXXXXX7278 2501 BISCAYNE PROPERTY OWNER LLC
CHECKING XXXXXXX2373 ARCH PROPERTY HOLDINGS 2 LLC

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL         Page 6 of 8
Motion No. 005

6 of 8

CHECKING XXXXXXX2418 DRAKE ARCH COLUMBIA 1 LLC
CHECKING XXXXXXX2475 COLUMBIA MM JV LLC
CHECKING XXXXXXX8438 9 VANDAM JV LLC
CHECKING XXXXXXX8776 9 VANDAM OWNER LLC
CHECKING XXXXXXX6402 HAMR BORROWER 3 LLC
CHECKING XXXXXXX0347 3504 12TH OWNER LLC
CHECKING XXXXXXX8537 9 VANDAM MM JV LLC
CHECKING XXXXXXX2060 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2102 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2128 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2151 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2169 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2177 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2185 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2201 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2219 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2235 ARCH BUILDERS LLC DISREGARDED ENTITY OF ARCH
REAL ESTATE HOLDINGS LLC
CHECKING XXXXXXX2045 1700 ARCH LLC
CHECKING XXXXXXX9537 CENTER POINT BORROWER 1 LLC
CHECKING XXXXXXX1409 CENTER POINT BORROWER 1 LLC (OPERATING -
CAPEX)
CHECKING XXXXXXX1417 CENTER POINT BORROWER 1 LLC (OPERATING - RENT)
CHECKING XXXXXXX1540 CENTER POINT BORROWER 1 LLC (SECURITY DEPOSIT)
CHECKING XXXXXXX9636 CENTER POINT BORROWER 2 LLC
CHECKING XXXXXXX0154 CENTER POINT BORROWER 2 LLC (SECURITY DEPOSIT
ACCOUNT)
CHECKING XXXXXXX0188 CENTER POINT BORROWER 2 LLC (OPERATING - RENT)
CHECKING XXXXXXX0220 CENTER POINT BORROWER 3 LLC
CHECKING XXXXXXX6215 CENTER POINT BORROWER 3 LLC (OPERATING
ACCOUNT - RENT)
CHECKING XXXXXXX6223 CENTER POINT BORROWER 3 LLC (SECURITY DEPOSIT
ACCOUNT)
CHECKING XXXXXXX5922 CAMELOT 3 LLC
CHECKING XXXXXXX5930 CAMELOT HOLDINGS JV 2 LLC
CHECKING XXXXXXX5948 CAMELOT JV 2 LLC

CHECKING XXXXXXX5963 CAMELOT MM JV 2 LLC
CHECKING XXXXXXX5971 CAMELOT MM JV 3 LLC
CHECKING XXXXXXX5989 NCSC JV 2 LLC
CHECKING XXXXXXX5997 NCSC MM JV 2 LLC
CHECKING XXXXXXX6003 MIDTOWN OAKS MM JV 2 LLC
CHECKING XXXXXXX6011 MIDTOWN OAKS JV 2 LLC
CHECKING XXXXXXX4703 9 VANDAM BORROWER 2 LLC
CHECKING XXXXXXX6583 88 ARCH LLC
CHECKING XXXXXXX2053 9 VANDAM LP JV LLC
CHECKING XXXXXXX2460 1580 NOSTRAND LLC
CHECKING XXXXXXX1303 ARCH NOSTRAND MM LLC
CHECKING XXXXXXX8400 88 TOWER LLC
CHECKING XXXXXXX0767 88 TOWER LLC
CHECKING XXXXXXX0495 CONSTRUCTION SERVICES AND SOLUTIONS LLC
CHECKING XXXXXXX5316 88 TOWER LLC (DACA ACCOUNT)
CHECKING XXXXXXX0751 TOWER OWNER TWO LLC
CHECKING XXXXXXX7223 ORE LIVING II LLC
CHECKING XXXXXXX6075 ARCH NOSTRAND LLC
CHECKING XXXXXXX6688 3200 N HAVERHILL BORROWER LLC
CHECKING XXXXXXX3516 3200 N HAVERHILL BORROWER LLC

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL          Page 8 of 8
Motion No.  005

8 of 8

<u>EXHIBIT E TO DECLARATION</u>

(November 22, 2023 Interim State Court Order [Dkt. No. 419])

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 03M

-------------------------------------------------------------------------------X

JEFFREY SIMPSON, JJ ARCH LLC,

                                 Plaintiff,

                - v -

JARED CHASSEN, FIRST REPUBLIC BANK,

                             Defendants.

| INDEX NO. | 158055/2023 |
|---|---|
| MOTION DATE | 09/14/2023 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON
MOTION**

-------------------------------------------------------------------------------X

680941 NJ INC,

                                 Plaintiff,

                - V -

JEFFREY SIMPSON, JJ ARCH LLC, and ARCH REAL
ESTATE HOLDINGS LLC,

                                 Defendants.

-------------------------------------------------------------------------------X

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 003) 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 128, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 222, 223

were read on this motion for                CONTEMPT; PRELIMINARY INJUNCTION    .

       Upon the foregoing documents, and for the reasons stated on the record after oral

argument on November 20, 2023, it is hereby

       **ORDERED** that Defendant Chassen's motion for contempt is **denied**; it is further

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL       Page 1 of 3
Motion No.  003

1 of 3

24-10381, Doc 61    Filed 04/01/24    Entered 04/01/24 17:10:04    Main Document
Pg 62 of 63

**ORDERED** that defendant Chassen's motion for a preliminary injunction is **granted** in the following respects:

(1) Simpson's September 1, 2023 purported termination letter to Chassen is void and shall not take effect;

(2) During the pendency of this litigation and subject to further order of the Court:

    a. Simpson and Chassen are enjoined from unilaterally seeking to terminate or force the resignation of the other member without permission of the Court;

    b. Simpson shall not deny Chassen online viewing access of any Arch Accounts;

    c. Neither Simpson nor Chassen shall review without permission, and neither Simpson nor Chassen shall authorize others to review without permission, each other's private e-mails unless they are produced during discovery;

    d. Simpson and Chassen shall cooperate in good faith to ensure that each of them have authorization from applicable banks to execute JJ Arch bank transactions, which transactions remain subject to the terms and restrictions of the applicable operating agreements; and

(3) Except as limited by the Court's preliminary injunction orders granting Oak the status of Acting Managing Member in Arch Real Estate Holdings LLC (NYSCEF Doc. Nos. 412 (interim); 418 (amended)), the Court's prior Order Regarding Interim Operating Procedures (NYSCEF Doc. No. 36) ("First Interim Order") remains in full force and effect. In the event of a conflict between the First Interim Order and this Order, this Order shall control; and it is further

**ORDERED** that counsel upload a copy of the oral argument transcript to NYSCEF upon receipt.

158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL                    Page 2 of 3
Motion No.  003

2 of 3

This constitutes the decision and order of the Court.

2023112223218DKMCOHEADB6A53047B674E5280225B0393EB5D9C

_____
11/22/2023
**DATE**

_____
**JOEL M. COHEN, J.S.C.**

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**158055/2023   SIMPSON, JEFFREY ET AL vs. CHASSEN, JARED ET AL**
**Motion No.  003**

Page 3 of 3

3 of 3