**OFFIT KURMAN, P.A.**
Jason A. Nagi
Kenneth Flickinger
590 Madison Avenue 6th Fl.
New York, New York 10022
Telephone: (212) 545-1900

*Attorneys for Jeffrey Simpson*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------

In re:

JJ ARCH LLC,

                      Debtor.

----------------------------------------------------------------

Chapter 11
(Subchapter V)

Case No. 24-10381 (JPM)

## OMNIBUS RESPONSE OF JEFFREY SIMPSON OPPOSING JARED CHASSEN'S MOTION TO LIFT THE AUTOMATIC STAY AND ARCH REAL ESTATE HOLDING LLC'S MOTION TO LIFT THE AUTOMATIC STAY

Jeffrey Simpson, by and through his counsel, Offit Kurman P.A., hereby submits this Omnibus Response Opposing Jared Chassen's Motion to Lift the Automatic Stay [ECF 40 & 41] and Arch Real Estate Holding LLC's Motion to Lift the Automatic Stay [ECF 38] (collectively the "**Lift Stay Motions**") and states as follows:

### PRELIMINARY STATEMENT

1. The Lift Stay Motions should be denied because the main issue in the state court action—who is in control of Debtor and Arch Real Estate Holdings LLC ("**AREH**," with Debtor, "**Arch**")—is essential to the administration and reorganization of the Debtor's estate in this bankruptcy case. The reason is simple: the individual controlling Debtor (and therefore, Debtor's control of AREH), has the keys to the Arch family of companies. Consequently, *this Court* must resolve the questions of who is in control of the Debtor and whether the Debtor is in

1

control of AREH, as these issues are fundamental to the administration of this Bankruptcy case. Therefore, the Lift Stay Motions must be denied.

## PROCEDURAL HISTORY

**A. Initiation of Litigation**

2. On August 15, 2023, Jeffrey Simpson, individually and derivatively, as managing member of Debtor, commenced an action in the New York State Supreme Court, New York County, against Jared Chassen, a junior, non-operational member of the Debtor (the "**State Court Action**").

3. Each of the causes of action in the Complaint, brought on behalf of Debtor and Simpson, are based on the same set of facts: Chassen's unauthorized actions which deprived Simpson of his ability to continue to manage Debtor and AREH. As such, the Complaint seeks the following relief against Chassen:

(a) breach of the JJ Arch Operating Agreement,

(b) breach of fiduciary duty,

(c) conversion,

(d) tortious interference with contractual relations,

(e) declaratory judgment concerning the removal of Chassen and then of Simpson

(f) declaratory judgment concerning the bank accounts,

(g) preliminary and permanent injunction lifting a hold on Arch bank accounts and restoring Simpson with control of those accounts, and

(h) preliminary and permanent injunction restoring Simpson's control of and access to Arch's computer system including his email account, Dropbox account, and Arch's IT vendor.

(A copy of the summons and complaint is annexed to the Declaration of Jason A. Nagi, dated April 1, 2024 (the "**Nagi Decl.**")as **Exhibit 1**.)

4. Tellingly, approximately 8 months have elapsed since the State Court Action was filed, no final orders have been entered, and no discovery has been had beyond a token amount of documents provided by Oak, a non-movant that has not filed any papers in relation to these motions, Mr. Chassen has not even provided a response to the discovery served on him on December 5, 2023—nearly four months ago—and the next hearing is not set until June 20, 2024.

B. **The Interim Order and Preliminary Injunction**

5. On August 21, 2023, the state court entered an interim order (the "**8/21 Interim Order**") maintaining the pre-August 5, 2023 status quo, directing that Debtor be managed in accordance with its operating agreement, allowing Simpson to manage Debtor in accordance with the Debtor's operating agreement, and directing Simpson and Chassen to cooperate under the terms of the operating agreement. (A true and correct copy of the interim order is attached to the Nagi Decl. as **Exhibit 2**.)

6. On September 29, 2023, the state court entered an order granting Simpson's motion for a preliminary injunction to the extent set forth in the 8/21 Interim Order.

C. **Chassen's Counterclaims**

7. On October 13, 2023, Chassen filed an answer to the Complaint, with counterclaims. Chassen's counterclaims asserted causes of action against Simpson for alleged breach of fiduciary duty, declaratory and injunctive relief. (A true and correct copy of the Answer with counterclaims is attached to the Nagi Decl. as **Exhibit 3**.)

3

**D. Oak's Intervention**

8. On October 17, 2023, Oak intervened in the State Court Action by filing an order to show cause seeking the appointment of a receiver on behalf of AREH.

9. On October 27, 2023, the state court issued an interim (the "**10/27 Interim Order**") directing Debtor to include Oak in the management of AREH, provide Oak with access to construction sites, provide Oak with information relating to reorganization discussions with lenders, directing Debtor to observe Oak's rights under the AREH operating agreement to major decisions such as bankruptcy filings, and directing Oak be provided with certain business records and monthly reports. (A true and correct copy of the interim order is attached to the Nagi Decl. as **Exhibit 4**.)

10. On November 3, 2023, Oak filed another order to show cause seeking, in the alternative to the appointment of a receiver, preliminary injunctive relief removing JJ Arch as managing member of AREH during the pendency of the State Court Action. The same day, the state court signed Oak's order to show cause, temporarily restraining JJ Arch from acting as managing member of AREH, and inserting Oak as managing member of AREH. [NYSCEF 321].

11. On November 20, 2023, and November 22, 2023, the state court issued a preliminary injunction (collectively the "**November PI**") that during the pendency of the State Court Action:

> Oak shall continue to act in their [JJ Arch's] stead as AREH's sole managing member in accordance with Section 7.1 of the Limited Liability Operating Agreement of AREH (the "Operating Agreement"), owing all applicable duties to AREH and its member."
> …
> [Simpson and the Debtor are enjoined from] [d]enying prompt consent to any Major Decision proposed by Oak as Managing Member under Section 7.1.3 of the Operating Agreement unless both JJ Arch members (Jeffrey Simpson and Jared Chassen) jointly

4

> agree to deny such consent (or alternatively, either JJ Arch member may convey consent)….

(A true and correct copy of the November PI is attached to the Nagi Decl. as **Exhibit 5**.)

12. Oak has relied on the Interim PI and used Chassen as a willing pawn to wind down Arch in an unsupervised manner while removing all of Oak's significant guarantee liability to the detriment of Arch's many stakeholders. When Oak has asked for Simpson's consent on its attempts to restructure the special purpose entities Arch controls—which Oak has not always done—Oak has directly obtained the consent of Chassen first. Oak has not provided Simpson with any information about the contemplated restructures, and when Oak has requested Simpson's consent, Oak has made that request within an unreasonable time frame, depriving Simpson of his ability to actually review, analyze and respond to these secret restructures.

### E. Discovery Demands

13. On December 5, 2023, Simpson served subpoenas for non-party depositions and discovery requests including requests for documents and deposition notices on Chassen and Oak. To date, only Oak has responded to the requests, but has not made any meaningful production of discovery, has not produced a privilege log, and no depositions have been taken.

### F. Debtor and Simpson's Motion to Vacate/Modify the 11/22/23 Preliminary Injunction

14. On January 29, 2024, Debtor and Mr. Simpson filed a motion seeking, among other relief, to vacate and/or modify the November PI.

15. By order dated February 8, 2024 (the "**February Order**"), the state court denied the motion.

5

G. **Appeal**

16.  Simpson appealed the February 8, 2024 Order, and filed an order to show cause in the Appellate Division, First Department, on February 21, 2023, seeking to vacate or modify the November PI, and for a temporary restraining order pending determination of the motion.

17.  The Appellate Division, First Department, denied Simpson's request for a TRO, and referred the motion to vacate or modify the November PI to be heard by a full bench. The motion remains pending and undecided.

## ARGUMENT

### Point I

### THE AUTOMATIC STAY APPLIES TO THE STATE COURT ACTION

18.  The Complaint in the State Court Action was brought derivatively on behalf of the Debtor as plaintiff. The counterclaim was also brought derivatively on behalf of Debtor as plaintiff. Finally, the Debtor is a defendant in a complaint which is part of the State Court Action pursuant to New York CPLR 6401(a). As such, the automatic stay is applicable to the State Court Action through 11 U.S.C. § 362(a) (1) and (3) which state, in pertinent part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of--
>
> (1) the commencement or *continuation*, including the issuance or employment of process, *of a judicial*, administrative, or other *action or proceeding against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> …
>
> (3) *any act to obtain possession of property of the estate* or of property from the estate *or to exercise control over property of the estate*;

6

11 U.S.C. § 362(a) (emphasis added).

19. Thus, §362(a)(1) applies to Oak's suit against the Debtor, and §362(a)(3) applies to the suits in which Simpson and Chassen are plaintiff (individually and derivatively), all of which are captioned under the State Court Action.

20. Nonetheless, Movants argue, that the automatic stay is inapplicable because the State Court Action relates to what Movants' characterize as, "Governance Disputes." Movants' argument that the stay does not operate against non-debtor parties or involve corporate governance disputes is a red herring. It is predicated on case law involving whether shareholders of a public-company-debtor can exercise their rights to hold a shareholder meeting, which is not before this Court. The issue before this Court is whether the stay applies to a debtor limited liability company to: (a) protect its own internal management pursuant to its operating agreement, *see* 11 U.S.C. § 541(a) (1) ("Such estate is comprised of all the following property …(1) … all legal or equitable interests of the debtor in property as of the commencement of the case."); (b) preserve its management rights in other entities; and (c) preclude acts by non-debtors to wrest control of the Debtor's management rights, which are estate property protected by the automatic stay. *See, e.g., In re Warner*, 480 B.R. 641, 647 (2012) ("the right to participate in a LLC—a non-economic right—is property of the estate under 11 U.S.C. § 541(a).") (collecting cases).

21. Rather, *In re Johns-Manville Corp.*, 801 F.2d 60 (2d Cir. 1986), cited by Movants in support of the Lift Stay Motion, in fact supports the Lift Stay Motion's denial. In *Johns-Manville*, a Chapter 11 debtor filed an adversary complaint against an equity security holders committee and its members seeking to enjoin their state court action to compel the debtor to hold a shareholders' meeting. On appeal, the Second Circuit remanded the case to the bankruptcy

7

court for a determination as to whether conducting the shareholder meeting would have an adverse impact on the reorganization effort. On remand, the bankruptcy court upheld the injunction finding that "[t]he evidence adduced at that hearing, relied upon herein, clearly established the serious threat and real jeopardy that will be posed to this reorganization if the shareholders are permitted to call for that meeting." *In re Johns-Manville Corp.*, 66 B.R. 517, 534 (Bankr. S.D.N.Y. 1986).

22. We agree with the reasoning of the Second Circuit, as applied by the bankruptcy court on remand, that a state court action which interferes with the management and administration of the Debtor's bankruptcy case—a core function—should be properly enjoined. Hence, the *Johns-Manville* case and its progeny, support the conclusion that this Court is the appropriate forum to determine who controls the Debtor and who the Debtor controls, and warrants denial of the Lift Stay Motions. (*See* Point II *infra* on application of *Sonnax* Factors supporting Denial of Lift Stay Motion.)[1]

---

[1] The remaining cases cited by Movants are similarly irrelevant. They (a) relate to conventional garden-variety contract and voting rights rather than the direct managerial control of a Debtor while in bankruptcy, (b) reflect district court decisions outside of the Second Circuit that are inconsistent with *Manville,* or (c) are otherwise irrelevant. For example, in *In re Marvel Ent. Grp., Inc.*, 209 B.R. 832, 836 (D. Del. 1997), Debtor sought to enjoin bondholders and indenture trustee from voting shares to replace Debtor's board of directors. *In re Laurel Highlands Found., Inc.*, 473 B.R. 641 (Bankr. W.D. Pa. 2012), involved a motion to dismiss, not motion to modify stay, and the court's invocation of mandatory abstention doctrine was inconsistent with *Manville* which determined that bankruptcy court had jurisdiction); In *Pesmen v. Bannockburn Lake Off. Plaza Assocs. Ltd.* 1999 WL 356307 at *4 (N.D. Ill. May 24, 1999), though the court cited to *Manville*, it was only to hold that the filing of tax returns did not violate the automatic stay). Finally, in *Matter of Am. Media Distributors, LLC*, 216 B.R. 486 (Bankr. E.D.N.Y. 1998), the parties opposing the motion to lift the stay offered no basis in opposition other than to claim that the state arbitration would distract Debtor's management.

8

**Point II**

**<u>CAUSE DOES NOT EXIST TO LIFT THE AUTOMATIC STAY</u>**

23. Movants cite to *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990), arguing that cause exists the automatic stay. The *Sonnax* Court listed 12 factors ("*Sonnax* factors") that may be relevant in deciding whether a court should grant a motion to lift the automatic stay in order to permit litigation to continue in another forum. The Sonnax factors, identified below, also fail to support a finding of cause:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*Id.*

24. "Not all of the *Sonnax* factors are relevant in every case. The Court need not assign equal weight to each factor. Courts have recognized what constitutes 'cause' to be 'a broad and flexible concept that must be determined on a case by case basis.'" *In re Celsius Network, LLC*, 642 B.R. 497, 502 (Bankr. S.D.N.Y. 2022).

(1) <u>Whether Relief Would Result in a Partial or Complete Resolution of the Issues</u>

25. Relief from the stay would not result in partial or complete resolution of all issues. In fact, relief from the stay would effectively eliminate a significant asset of the Debtor's estate, the 80% equity interest in AREH, and JJ Arch's right to manage AREH and JJ Arch. As things currently stand in the State Court Action, resolution of the most important issue, control of JJ Arch, will not happen for months. With the unfettered control the state court temporarily gave Oak, and Oak's collusion with Chassen to effectuate an unsupervised restructuring of the Arch family of companies, the assets of the Debtor's estate will be nothing but an empty husk and no issues will have been finally resolved.

(2) <u>Lack of any connection with or interference with the chapter 11 case</u>

26. The issues to be litigated in the state court are inextricably intertwined with the administration of the Debtor's chapter 11 case and will delay the Debtor's restructuring efforts and the contemplated restructuring for the overall corporate enterprise. A hearing on the dueling termination issue is scheduled approximately three months from now, tentatively set for late June 2024.

(3) <u>Whether the other proceeding involves the debtor as a fiduciary</u> –

27. The issues Movants seek to have resolved in the State Court Action involve the Debtor's ability to act as a fiduciary to protect its own internal management pursuant to its operating agreement and to preserve its management rights as a fiduciary in other entities of the Arch family of companies, including AREH, which are core functions of the Debtor as debtor in possession.

(4) <u>Whether a specialized tribunal with necessary expertise has been established to hear the action</u>

28.     A specialized tribunal has not been established to hear the dispute raised in the Stay Relief Motions, nor do any of the issues require specialized judicial expertise. In addition, a specialized tribunal is not necessary as the issues raised in the State Court Action are focused on contractual interpretation and can be adjudicated expeditiously by this Court. This Court is well-versed in interpreting operating agreements and ruling on governance issues.

(5) <u>Whether the debtor's insurer has assumed full responsibility for the defense</u>

29.     The Debtor's insurer has not assumed full responsibility for the defense.

(6) <u>Whether the action primarily involves third parties</u>

30.     The State Court Action primarily concerns management and operation of the Debtor. While there are third parties involved, third parties are not the primary focus of the State Court Action. By contrast, the bankruptcy forum will permit all interested parties to participate and be heard. *See* 11 U.S.C. §1109(b).

(7) <u>Whether litigation in another forum will prejudice interests of other creditors</u>

31.     Litigation in the State Court Action will prejudice the ability of interested parties and creditors in the Arch family of companies from being heard. *See* factor (6), *supra*.

(8) <u>Whether judgment claim arising from the other action is subject to equitable subordination</u>
This factor is inapplicable.

(9) <u>Whether movant's success in other proceeding will result in judicial lien avoidable by the debtor</u>

32.     This factor is inapplicable.

(10) <u>Interest of judicial economy</u>

33. Judicial economy strongly favors litigating before this Court. Denial of the Lift Stay Motions will permit the efficient and expedited resolution of the intertwined issues in one forum, thus promoting the prompt and efficient administration and resolution of the Debtor's chapter 11 case. This Court has shown its willingness to quickly and efficiently resolve primary issues, preserve the assets of the Debtor's estate, and provide a mechanism for approval of decisions in managing the business and assets of the Debtor in the best interests of the larger creditor body and related parties.

(11) <u>Whether the parties are ready for trial in other proceeding</u>

34. The parties are not ready for trial in the State Court Action, where little to no discovery has occurred. As has been the case before this Court, Mr. Chassen has refused to respond to discovery requests, and has not produced documents in both the State Court Action and this bankruptcy case. In the State Court Action, only Oak, a non-party to this contested matter, has provided minimal documents, without a privilege log, and without providing any of the key agreements and communications between Oak and Chassen. In addition, briefing for the evidentiary hearing in the State Court Action has not been completed. As a result, granting the Stay Relief Motions would likely delay the prosecution and resolution of this bankruptcy case, without expediting resolution of the State Court Action.

(12) <u>Impact of the stay on the parties and balance of harms</u>

35. Neither Chassen nor AREH are prejudiced by having this Court decide the issues to be adjudicated in the State Court Action. Indeed, all the parties will actually receive a more timely resolution before this Court than they would in the State Court Action. Moreover, the delay associated with State Court Action will delay the Debtor's restructuring and allow for the

12

continued, unsupervised restructuring of Arch for the exclusive benefit of Oak, one of the very events this bankruptcy case seeks to stop.

## POINT III

### THE DEBTOR'S RIGHTS TO MANAGE OTHER ENTITIES ARE PROPERTY OF THE ESTATE

36. AREH's Lift Stay Motion argues that the automatic stay does not extend to assets of a non-debtor entity, citing *Manson v. Friedberg*. But Debtor's rights under the operating agreements to manage AREH are property of the estate. Debtor seeks to enforce the Debtor's right to manage AREH pursuant to the operating agreements, which management interest is property of the Debtor's estate pursuant to Section 541(a). *See, e.g. In re Warner*, 480 B.R. at 657 ("the right to participate in a LLC—a non-economic right—is property of the estate under 11 U.S.C. § 541(a).")

37. As similarly reasoned by the bankruptcy court in *In re Garrison–Ashburn,* 253 B.R. 700, 708 (Bankr.E.D.Va.2000) "[Debtor's] interest in Garrison–Woods, both his membership interest and his non-economic rights and privileges as a member, became property of the bankruptcy estate. All the rights and privileges [Debtor] had immediately prior to filing became property of his bankruptcy estate." As a result, the *Garrison-Ashburn* Court inquired and found as follows: "what of Chapman's non-economic rights and privileges as a member, that is, his right to participate in management? Section 541 was intentionally broadly drafted. … Section 541(a) clearly encompasses all of Chapman's interest in Garrison–Woods, whatever that interest may be, *whether economic or non-economic*." *Id.* (emphasis added).

38. As such, Debtor's management rights in AREH and any other entity are property of the Debtor's estate.

13

## WAIVER OF SEPARATE MEMORANDUM OF LAW

39. In lieu of submitting a separate memorandum in support of this Motion, Simpson will rely solely upon the grounds and authorities set forth herein.

## CONCLUSION

40. For the foregoing reasons, the Lift Stay Motions should be denied in their entirety.

**OFFIT KURMAN, P.A.**

*/s/ Jason A. Nagi*
Jason A. Nagi
Kenneth Flickinger
590 Madison Avenue 6th Fl.
New York, New York 10022
Telephone: (212) 545-1900

*Attorneys for Jeffrey Simpson*

4856-8581-5987