# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

JEFFREY SIMPSON, individually and derivatively, as managing member of JJ ARCH LLC, suing derivatively as managing member of ARCH REAL ESTATE HOLDINGS LLC, and JJ ARCH LLC,

*Plaintiffs-Counter-Claim Defendants*,

- against -

JARED CHASSEN, individually and derivatively on behalf of JJ ARCH LLC, as member, and derivatively on behalf of ARCH REAL ESTATE HOLDINGS LLC, as member of JJ ARCH,

*Defendant/Counter-Claim Plaintiffs*

FIRST REPUBLIC BANK,

*Defendant*

Index No. 158055/2023

---

## DEFENDANT JARED CHASSEN'S VERIFIED ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTER-CLAIMS

Defendant Jared Chassen ("Chassen" or "Defendant"), by and through his undersigned counsel, for his verified answer to Plaintiff Jeffrey Simpson's ("Simpson" or "Plaintiff") complaint answers and alleges to each of Plaintiff's allegations in the Complaint, quoted herein followed by Defendant's answer in bold font, as well as for his affirmative defenses, and counter-claims, as follows:

## NATURE OF THE ACTION

1.      This action is brought by Plaintiffs to undo a coup d'état executed by Defendant Jared Chassen ("Chassen") in an effort to seize, from Plaintiff Jeffrey Simpson ("Simpson"), control over Plaintiff entities Arch Real Estate Holdings LLC ("Arch") and JJ Arch LLC ("JJ

1

Arch") (collectively, Arch and JJ Arch are the "Arch Entities"). In addition, Plaintiffs seek to
redress one of Chassen's successes in his efforts to wrest control of the Arch Entities from
Simpson, *i.e.*, Chassen's inducement of a stalemate that has left Simpson unable to exercise
control over bank accounts maintained by Arch Entities and their affiliates and subsidiaries at
Defendant First Republic Bank ("First Republic"), which has left Arch Entities unable to use
such accounts to pay for such necessities as payroll, subcontractors, materialmen, and insurance.
Plaintiffs also seek to require Chassen to act to restore Simpson's access to his company email
account with Arch Entities, to the Dropbox account where Arch Entities' documents are stored,
and Simpsons' ability to communicate with the domain company that hosts Arch Entities' web
site.

**Answer: Defendant lacks information sufficient to form a belief as to the truth of the
allegations as to Plaintiff's motives in commencing the action, and otherwise denies the
allegations in paragraph 1.**

     2.     Plaintiff Simpson is a natural person who resides in the State of New York,
County of New York.

**Answer: Defendant admits the allegations in paragraph 2.**

     3.     Plaintiff Arch is a limited liability company formed under the laws of the State of
New York, with a principal place of business in the State of New York, County of New York.

**Answer: Defendant admits the allegations in paragraph 3.**

     4.     Arch is a real estate investment management, construction management, property
management, and development company.

**Answer: Defendant admits the allegations in paragraph 4.**

     5.     Plaintiff JJ Arch is a limited liability company formed under the laws of the State
of New York, with a principal place of business in the State of New York, County of New York.

**Answer: Defendant admits the allegations in paragraph 5.**

     6.     Defendant Chassen is a natural person who resides in the State of New York,
County of Kings.

**Answer: Defendant admits that he is a natural person who resides in the State of New
York, but denies that he resides in the County of Kings.**

     7.     Defendant First Republic is a nationally chartered bank that maintains offices for
the transaction of business in, among other places, the State of New York, County of New York.

**Answer: Defendant admits the allegations in paragraph 7.**

2

## FACTS APPLICABLE TO ALL CAUSES OF ACTION
## BACKGROUND

### Simpson's Tenure at Greystone

8.      Simpson grew up under modest economic circumstances in Lakewood, New Jersey. His father, who was a public planning, zoning, and construction official, passed away when Simpson was 22. For four consecutive generations including his own, Simpson's family has been in the construction business.

**Answer: Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 8.**

9.      Prior to 2017 and the start of Arch, Simpson worked for eleven (11) years at Greystone Development ("Greystone Development"), a property development company within a host of companies under the "Greystone" umbrella that performed functions related to real estate investment, capital raising, financing, development, construction, management, leasing, and sales. For the last five of those years, Simpson was the Chief Executive Officer of Greystone Development. By the time he left Greystone Development, he was supervising approximately thirty (30) employees at Greystone Development, with a total payroll of approximately $5 million. The total project volume was over $2 billion, and involved properties located in New York, Miami, and California. While he was there, he also was responsible for raising several large capital initiatives for real estate investing in multi-family housing in the southeastern United States with an institutional partner, individual loan origination on complex assignments, and capital raising for structured finance.

**Answer: Defendant admits that Plaintiff worked at Greystone, and held the role of Chief Executive Officer of Greystone Development, but lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 9.**

10.     One employee Simpson supervised at Greystone Development was Chassen. Simpson originally hired Chassen at Greystone Development to replace an administrative assistant at Greystone Development. Once hired, Chassen performed the same duties as that administrative assistant, for the same salary as she had earned. Over time, Chassen took on other responsibilities, including helping to source properties, equity, and debt. Throughout his time at Greystone Development, Chassen reported to Simpson.

**Answer: Defendant admits that he worked for Simpson at Greystone but otherwise denies the characterization of his role at Greystone as contained in paragraph 10.**

11.     Another employee Simpson supervised at Greystone was nonparty Tristan Last ("Last"). "). Last was formerly of Brookfield with a MBA from Cornell University. She was hired as an acquisitions associate and quickly was promoted to the Director of Investments.

3

**Answer: Defendant admits that Tristan Last was an employee at Greystone who Simpson supervised, and had the title of Director of Investments, and otherwise lacks information sufficient to form a belief as to the truth of the allegations in paragraph 11.**

12.   A third employee Simpson supervised at Greystone was nonparty Michelle Miller ("Miller"). She was also an analyst. Miller started at Greystone Development as an intern, as a career switcher to real estate following the completion of her MBA from Northwestern. She was eventually hired full time as an analyst and grew in her role over time.

**Answer: Defendant admits that Michelle Miller was an employee at Greystone who Simpson supervised and who started as intern, but otherwise lacks information sufficient to form a belief as the truth of the allegations in paragraph 12.**

<u>Simpson's Formation of Arch and JJ Arch</u>

13.   In 2017, Simpson left Greystone Development on amicable terms with that company, and formed a new company, Plaintiff Arch.

**Answer: Defendant denies the allegations in paragraph 13, except that he admits that Simpson formed JJ Arch together with Chassen.**

14.   The original business address for Arch was Simpson's personal residence address at the time.

**Answer: Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 14.**

15.   At all times since the formation of Arch, eighty percent (80%) of the membership interest in Arch has been held by Plaintiff JJ Arch, which is the managing member of Arch. (*See* Exhibit 1, Limited Liability Company Operating Agreement of Arch Real Estate Holdings LLC ["Arch Operating Agreement"], p. 17, §§ 6.1-6.2 [providing for distributions of cash flow and acquisition fees of 80% to "JJ Member" and 20% to "Investor Member"]; *id.* p. 1 preamble [defining JJ Arch LLC as "JJ Member"]; *id.* § 1.1, p. 7 [defining "Managing Member" as JJ Member].)

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 15.**

16.   At all times since the formation of Arch, the remaining twenty percent (20%) of the membership interest in Arch has been held by 608941 NJ Inc., a New Jersey corporation ("NJ Inc."), which is the investor member of Arch. (*See* Exhibit 1, Arch Operating Agreement, p. 17, §§ 6.1-6.2; *id.* p. 1 preamble [defining NJ Inc. as "Investor Member"].) NJ Inc. made an investment of approximately $50 million in Arch, but has no authority to control the operation of Arch's business.

4

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
NYSCEF DOC. NO. 212

24-10381-jpm   Doc 62-4   Filed 04/01/24   Entered 04/01/24 17:11:00   Exhibit 3 to
Declaration of Jason Nagi   Pg 6 of 63

INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 16.**

17.     Since the formation of JJ Arch, Simpson has been the managing member of JJ Arch and has held a majority of the membership interest in JJ Arch.

**Answer: Defendant admits that Simpson was the managing member at the time JJ Arch was formed, and held a majority of the membership interests, and for four years thereafter, but otherwise denies the allegations in paragraph 17.**

18.     From the formation of JJ Arch until his forced resignation from his membership therein effective August 5, 2023, as discussed below, Chassen was a member of JJ Arch and held a minority of the membership interest in JJ Arch, and his job started out as administrative in nature.

**Answer: Defendant denies the allegations in paragraph 18.**

19.     Simpson and Chassen are the only persons who have ever been members of JJ Arch.

**Answer: Defendant admits the allegations in paragraph 19.**

<u>The Arch Companies' Growth Under Simpson's Leadership</u>

20.     Through JJ Arch, the managing member of Arch, Simpson has run all of Arch's businesses since the inception.

**Answer: Defendant denies the allegations in paragraph 20.**

21.     By 2022, five years after Simpson formed Arch with no assets, Arch had owned and invested in over $1 billion in assets.

**Answer: Defendant denies the allegations in paragraph 21 insofar as it alleges that Arch was formed with no assets, or that Simpson formed Arch, but admits that Arch owned over $1 billion in assets in 2022.**

22.     Arch has several affiliated companies, including a property management company, advising company, construction company, and asset management company, each of which provides services relating to real properties that Arch controls.

**Answer: Defendant admits the allegations in paragraph 22.**

23.     Together, Arch and its affiliated companies have a total of approximately 100 employees. (Collectively, Arch Entities and Arch's affiliated companies are the "Arch Companies.")

5

**Answer: Defendant admits the allegations in paragraph 23.**

24.     The licenses and permits for each of the construction projects performed by the Arch Companies are in Simpson's name, as a licensed general contractor.

**Answer: Defendant denies the allegations in paragraph 24.**

25.     Simpson holds responsibility for managing Arch Companies' commercial real estate construction projects and coordinating licensing and permitting matters.

**Answer: Defendant denies the allegations in paragraph 25.**


Chassen's Role with the Arch Companies

26.     With Greystone's permission, Simpsons brought three Greystone Development employees with him to work at Arch, *i.e.*, Chassen, Last, and Miller.

**Answer: Defendant denies that Simpson brought Chassen to work with him at Arch, which he formed together with Simpson, but admits that Last and Miller were brought by Simpson and Chassen to work at JJ Arch.**

27.     From the formation of JJ Arch and Arch, Chassen has been a minority member in JJ Arch, and thus has not had the authority to exercise control over Arch as Arch's managing member.

**Answer: Defendant admits that Simpson was the majority or managing member at the formation of JJ Arch and Arch, but denies that Chassen has not had authority to exercise control over JJ Arch as JJ Arch's managing member since.**

28.     While the initial plan was for Chassen ultimately to become co-managing member, with Simpson, of JJ Arch, and thus share in Simpson's authority to control JJ Arch's exercise of its authority as managing member of Arch, Chassen's performance did not warrant this expansion of his authority, and Chassen consented to remain in his role as a minority member of JJ Arch on or about May 22, 2021.

**Answer: Defendant admits that Chassen was to become a co-managing member under the Operating Agreement, and otherwise denies the allegations in paragraph 28.**

29.     The original plan, at the time JJ Arch was formed, was that Simpson was to be its managing member, with the authority to manage, arrange, and cause to be coordinated the business, affairs, and assets of JJ Arch. (Exhibit 2, JJ Arch Limited Liability Company Operating Agreement ["JJ Arch Original Operating Agreement"], p. 7, ¶ 3.1(a).) This was to be the case prior to the fourth anniversary of JJ Arch's operating agreement, *i.e.*, December 11, 2021. (*Id.*)

6

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 29.**

30.     However, following the fourth anniversary of the operating agreement, both Simpson and Chassen were to act as managing members of JJ Arch, with each of them holding the authority to manage, arrange, and cause to be coordinated JJ Arch's business, affairs, and assets. (Exhibit 2, JJ Arch Original Operating Agreement, p. 9 § 3.2.)

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 30.**

31.     In addition, the JJ Arch Original Operating Agreement provided Chassen with a veto over certain decisions or actions with regard to JJ Arch even prior to the fourth anniversary of the JJ Arch Original Operating Agreement, such that Simpson could make certain decisions defined as "Company Major Decisions" only if he had Chassen's prior written consent. These actions included, among others, selling any asset of Arch Entities, borrowing or raising monies on behalf of Arch Entities, mortgaging Arch Entities' properties, Arch Entities' entering into any lease of space, and hiring any employee, consultant, or other personnel for Arch Entities. (*See* Exhibit 2, JJ Arch Original Operating Agreement, pp. 8-9, ¶¶ 3.1(b)(iii), (v)-(viii); *see also id.* p. 8 ¶ 3.1(b) [stating that "any action or decision that would constitute a Company Majority Decision shall be a Company Major Decision if made or taken by any Investment Entity"]; *id.* p. 4 [defining "Investment Entity" as including "AREH"]; *id.* p. 1 [defining "AREH" as Arch].)

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 31.**

32.     On the other hand, Simpson could take other actions without Chassen's consent, including but not limited to conducting, managing, and controlling the affairs and business of Arch Entities; opening, maintaining and closing bank accounts and drawing checks; bringing legal actions on claims of Arch Entities; and depositing, withdrawing, investing, paying, retaining, and distributing Arch Entities' funds in a manner consistent with the provisions of the JJ Arch Original Operating Agreement. (Exhibit 2, JJ Arch Original Operating Agreement, pp. 7-8 ¶¶ 3.1(a)(i)-(ii), (v)-(vi).)

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 32.**

33.     However, prior to the fourth anniversary of the JJ Arch Original Operating Agreement, Simpson had a discussion with Chassen, and informed him that Simpson did not believe Chassen had sufficient acumen in the business to be a co-managing member of JJ Arch and, by virtue of JJ Arch's managing membership in Arch, a co-managing member of Arch. Chassen agreed with Simpson about this.

**Answer: Defendant denies the allegations in paragraph 33.**

7

34.     JJ Arch's operating agreement was thus amended, with Chassen's consent, on or about May 22, 2021. The amendment removed the authority that Chassen would have had, following the fourth anniversary of the JJ Arch Original Operating Agreement, to manage, arrange, and cause to be coordinated the business, affairs and assets of JJ Arch. (Exhibit 3, JJ Arch LLC Agreement Amendment No. 1, p. 3 ¶ 2(d) [deleting § 3.2 of the JJ Arch Original Operating Agreement].) (The JJ Arch Original Operating Agreement, as amended by JJ Arch LLC Agreement Amendment No. 1, shall be referred to as the "JJ Arch Amended Operating Agreement".) Thus, Chassen never had such authority. Because the list of actions and decisions for which Chassen's consent was required, *i.e.*, the "Company Major Decisions," remained effective only until the fourth anniversary of the JJ Arch Original Operating Agreement (*compare id.* p. 3 § 2(d) [new § 3.2] *with* Exhibit 2, JJ Arch Original Operating Agreement, p. 8 ¶ 3.1(b)), this meant that Chassen would lose, and ultimately did lose, his right to refuse consent to Company Major Decisions after that anniversary, which occurred in December 2021.

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 32.**

35.     In addition, JJ Arch's operating agreement was amended to bar Chassen from becoming an equal equity owner in JJ Arch. When JJ Arch was formed, it was agreed that my share of JJ Arch's distributions, which would initially be 66.6667%, would decrease, and Chassen's share of JJ Arch's distributions, which would initially be 33.3333%, would commensurately increase, on an annual basis, such that, by the fourth anniversary of the operating agreement, *i.e.*, December 11, 2021, each of them would receive equal 50% shares of the distributions. (Exhibit 2, JJ Arch Original Operating Agreement, p. 4 § 1.1, Definition of "Distribution Percentages"; *id.* p. 12 ¶ 5.1(a)(ii); *id.* Exhibit A.)

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 35.**

36.     However, JJ Arch's operating agreement was amended, with Chassen's consent and as part of JJ Arch LLC Agreement Amendment No. 1 (the same amendment as discussed above), to provide that, indefinitely, Simpson is to receive 50.1% of the distributions from JJ Arch, and Chassen is to receive 49.9% of the distributions from JJ Arch. (Exhibit 3, JJ Arch LLC Agreement Amendment No. 1, p. 1 ¶ 2(a).)

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 36.**

37.     In addition, Arch's operating agreement provides that "the business, affairs and assets of [Arch] shall be managed, arranged and caused to be coordinated by Managing Member, who shall have, except as otherwise provided in [the operating agreement] (including, but not limited to, in Section 7.1.3), full, exclusive and complete discretion with respect thereto." (Exhibit 1, Arch Operating Agreement, p. 17, ¶ 7.1.1.) The Managing Member, *i.e.*, JJ Arch, has "the unilateral power and authority acting in good faith to make and implement all decisions with respect to all matters which [Arch] has the authority to perform both directly and indirectly through one or more Subsidiaries" (*id.* p. 18 ¶ 7.1.1), including, *inter alia*, those to "conduct,

8

manage and control the affairs and business of [Arch]" (*id.* p. 18 ¶ 7.1.1(i)); "open, maintain and close bank accounts and drew checks or other orders for the payment of monies" (*id.* ¶ 7.1.1(ii)); "deposit, withdraw, invest, pay, retain and distribute [Arch's] funds in a manner consistent with the provisions of [the Arch Operating Agreement]) (*id.* ¶ 7.1.1(vi)); and "bring or defend . . . resort to legal action, or otherwise adjust claims . . . of [Arch]" (*id.* ¶ 7.1.1(v)).

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 37.**

38.     Thus, at all times Simpson has been, and remains, the managing member of JJ Arch, and Simpson has always had exclusive authority to, *inter alia*, open, maintain, and close bank accounts on behalf of Arch Entities; to draw checks on those accounts; to deposit, withdraw, pay, and distribute Arch Entities' funds; and to bring legal actions on behalf of the Arch Entities.

**Answer:      Defendant denies the allegations in paragraph 38.**

39.     Chassen worked for Arch, and reported to Simpson. Simpson had the authority to give Chassen work assignments to do for Arch, and to take Arch work assignments away from Chassen.

**Answer: Defendant admits that he is a member of JJ Arch and that he works for JJ Arch and otherwise denies the allegations in paragraph 39.**

40.     Until the events beginning August 4, 2023, as set forth below, Last had served as managing director of Arch.

**Answer: Defendant denies the allegations in paragraph 40.**

<u>Means of Removing Members of Arch and JJ Arch</u>

41.     Under both the Arch Operating Agreement and the JJ Arch Amended Operating Agreement, members may be removed, on certain enumerated grounds, through a process that is initiated by the occurrence of a "Cause Event." The Arch Operating Agreement provides an enumerated list of eight acts, the commission of which, by the managing member, serves as a "Cause Event." (*See* Exhibit 1, Arch Operating Agreement, pp. 4-5, § 1.1, definition of "Cause Event".) The JJ Arch Amended Operating Agreement extends this definition of "Cause Event" to any member of JJ Arch. (*See* Exhibit 2, JJ Arch Amended Operating Agreement, p. 3, § 1.1, definition of "Cause Event.")

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 41.**

42. The acts constituting "Cause Event[s]" include, but are not limited to, "willful misconduct in relation to the business or affairs of [Arch] or a Subsidiary," "breach of fiduciary duty in relation to the business or affairs of [Arch] or a Subsidiary," and "misappropriation of

9

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 11 of 63

[Arch] or Subsidiary funds or property." (Exhibit 1, Arch Operating Agreement, § 1.1, pp. 4-5, Definition of "Cause Event.").

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 42.**

43.     Under the JJ Arch Operating Agreement, a member in JJ Arch is required to resign if a Cause Event has occurred with respect to such member, and the other member has delivered written notice thereof to that member. (*See* Exhibit 2, JJ Arch Amended Operating Agreement, p. 5, § 1.1, definition of "Resignation.") Notably, only "the other Member" may deliver such notice (*id.*); accordingly, only a current member of JJ Arch could trigger a member's resignation through delivering notice of a Cause Event. Upon such Resignation, that member is no longer deemed a "member" of JJ Arch, and "shall not be entitled to any rights as a Member of the Company for any period from and after such Resignation." (*Id.*, p. 15, § 7.5(a).).

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 43.**

44.     Under the Arch Operating Agreement, in the event written notice of a Cause Event is delivered to JJ Arch, JJ Arch may be removed effective ten (10) business days after such delivery, or at such later date or as specified in such notice. (Exhibit 1, Arch Operating Agreement, p. 20, ¶ 7.1.4.)

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 44.**

CHASSEN'S MISCONDUCT

Chassen Placed His Interests, and Those of His Family and Friends, Above Those of JJ Arch

45.     In or about July 2023, Chassen acknowledged that his duties and role could not be compensated at the same level as previously, due to higher interest rates and a slowdown in business, and Arch would not be able to afford to pay Simpson, Chassen, and other key employees their full salaries, and Simpson asked Chassen whether he would be willing to accept a substantial reduction in his pay in order to enable Arch to remain in its status quo rather than building up debt.

**Answer: Defendant denies the allegations in paragraph 45.**

46.     Chassen initially indicated to Simpson that Chassen would be willing to take such a pay cut, although at the time he did not inform Simpson how large of a pay cut he would bewilling to take.

**Answer: Defendant denies the allegations in paragraph 46.**

10

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM INDEX NO. 158055/2023
NYSCEF DOC. NO. 212    24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to    RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi    Pg 12 of 63

47. In or about early July 2023, Simpson asked Chassen how large of a pay reduction Chassen would agree to. Chassen repeatedly avoided answering Simpson's requests on this point.

**Answer: Defendant denies the allegations in paragraph 47.**

48. Finally, on or about August 2, 2023, Chassen informed Simpson that, in fact, Chassen would not be willing to accept any pay reduction.

**Answer: Defendant denies the allegations in paragraph 48.**

<u>The Coup Begins</u>

49. Chassen, apparently working in concert with NJ Inc. and with several other employees of Arch, undertook a series of actions designed to steal control of Arch and JJ Arch from Simpson, in violation of Arch and JJ Arch's respective operating agreements. First, upon information and belief, at approximately 1:15 p.m. on Friday, August 4, 2023, Chassen contacted the bank at which Arch maintains its accounts, Defendant First Republic, and instructed First Republic to remove Simpson as an authorized signatory on all accounts he maintained with First Republic in either his corporate or individual capacity, including all bank accounts that the Arch Companies maintain with First Republic (the "Arch Accounts"), and also accounts Simpson maintained individually with no connection to the Arch Companies.

**Answer: Defendant denies the allegations in paragraph 49.**

50. Chassen was neither authorized to make this change, nor did he provide Simpson with any advance notice thereof.

**Answer: Defendant denies the allegations in paragraph 50.**

51. First Republic complied with Chassen's demand. First Republic informed Simpson that it no longer permits Simpson to make transactions from any of the accounts he maintains with First Republic in either his corporate or individual capacity, or, indeed, any other account on which Simpson was the signatory, including the Arch Accounts, accounts on which he was the signatory on behalf of entities other than the Arch Companies, and his own individual accounts.

**Answer: Defendant denies the allegations in paragraph 51.**

<u>The Forced Resignation of Chassen from Arch</u>

52. On August 5, 2023, Simpson sent Chassen an email wherein Simpson provided him written notice that he had committed a Cause Event, and that accordingly, under the JJ Arch

11

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
NYSCEF DOC. NO. 212

INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 13 of 63

Amended Operating Agreement, Chassen ceased to be a member of JJ Arch. (*See* Exhibit 4 ["Notice to Chassen of Cause Event"].)

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 52.**

53. Chassen had committed a Cause Event prior to the Notice to Chassen of Cause Event, in that Chassen had, without authority, acted to deprive Simpson of his ability to make transactions on the Arch Accounts and to seize that ability for himself.

**Answer: Defendant denies the allegations in paragraph 53.**

54. Chassen's acting, without authority, to deprive Simpson of his ability to make transactions on the Arch Accounts, and to seize that ability for himself, constituted willful misconduct in relation to the business or affairs of Arch and JJ Arch and their subsidiaries, and therefore constituted a Cause Event under the JJ Arch Amended Operating Agreement.

**Answer: Defendant denies the allegations in paragraph 54.**

55. Chassen's acting, without authority, to deprive Simpson of his ability to make transactions on the Arch Accounts, and to seize that ability for himself, constituted a breach of fiduciary duty in relation to the business or affairs of Arch and JJ Arch and their subsidiaries, and therefore constituted a Cause Event under the JJ Arch Amended Operating Agreement.

**Answer: Defendant denies the allegations in paragraph 55.**

56. Chassen's acting, without authority, to deprive Simpson of his ability to make transactions on the Arch Accounts, and to seize that ability for himself, constituted a misappropriation of funds of Arch, JJ Arch, and their subsidiaries, and therefore constituted a Cause Event under the JJ Arch Amended Operating Agreement.

**Answer: Defendant denies the allegations in paragraph 56.**

57. Accordingly, the Notice of Chassen Cause Event triggered immediately Chassen's removal as a member of JJ Arch.

**Answer: Defendant denies the allegations in paragraph 57.**

<u>The Coup Continues</u>

58. Notwithstanding, Chassen proceeded in disregard of the Notice to Chassen of Cause Event. Specifically, over the weekend of August 5-6, 2023, the administrator of Arch's email and information technology systems, acting upon Chassen's instructions, locked Simpson out of his Arch Companies email account and all other Arch IT systems. Beginning no later than 5 p.m. on Sunday, August 6, 2023, Simpson no longer had access to his Arch Companies email account. At or about 10-11 a.m. on Monday, August 7, 2023, Simpson could no longer log onto his Arch-

12

issued computer. As a result, Simpson could not obtain access to the business records of the Arch Companies, or the computer payroll program that Arch Companies use to pay their employees. Simpson was also locked out of the server hosting Arch Companies' web site, and Chassen made changes to such site, without Simpson's authorization, to remove references thereon to Simpson as a managing member.

**Answer: Defendant admits that he resigned Simpson from JJ Arch, and that Simpson was locked from accounts when he was removed and removed as a member on the company website but lacks information sufficient to form a belief as to the truth of the exact times Simpson could no longer access company systems and otherwise denies the allegations in paragraph 58.**

59. Chassen also retaliated for his removal as a member of JJ Arch by sending Simpson, by electronic mail, a signed letter on August 6, 2023, wherein he purported to inform Simpson that Simpson was required to resign pursuant to the JJ Arch Amended Operating Agreement ("Chassen 8/6/23 Letter"). The Chassen 8/6/23 Letter asserted that Simpson had committed multiple Cause Events, none of which had actually occurred, and asserted that, as a result, a resignation from JJ Arch had occurred on Simpson's part and Simpson was no longer a member of JJ Arch, nor did Simpson have any right to act on behalf of JJ Arch, Arch, or any subsidiary of JJ Arch.

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 59.**

60. However, by the time of the Chassen 8/6/23 Letter, Chassen had already been removed as a member of JJ Arch pursuant to the Notice to Chassen of Cause Event. Accordingly, as noted above, Chassen could not, under the JJ Arch Amended Operating Agreement, trigger Simpson's own resignation by delivering to him a purported notice of Cause Event.

**Answer: Defendant denies the allegations in paragraph 60.**

61. Moreover, even if the Chassen 8/6/23 Letter had been effective as a notice of Cause Event, it was not sent to Simpson until after Chassen's instruction on August 4, 2023 to First Republic to strip Simpson of his signatory authority, so as of the time Chassen provided such instruction Simpson remained JJ Arch's managing member with exclusive authority over the Arch Companies' bank accounts, and Chassen's instruction was in violation of Arch's and JJ Arch's operating agreements.

**Answer: Defendant denies the allegations in paragraph 61.**

62. In addition, on August 6, 2023, NJ Inc., sent Simpson a letter (the "8/6/23 NJ Inc. Letter"), wherein NJ Inc. asserted that JJ Arch, through Simpson's actions, had committed multiple Cause Events under the Arch Operating Agreement, again none of which had actually occurred, and asserted that NJ Inc. reserved the right to remove JJ Arch as the managing member of Arch.

13

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 62.**

63. In addition, Chassen arranged for the deactivation of the device Simpson uses to gain access to Arch's physical office located at 88 University Place, New York, New York 10003, such that when Simpson attempted to enter his office there at 9:00 a.m. on Monday, August 7, 2023, he was unable to do so.

**Answer: Defendant denies the allegations in paragraph 63.**

64. Upon information and belief, on or about August 7, 2023, after he had already been duly removed as a member of JJ Arch, Chassen sent an email to employees of Arch Companies in which he instructed them not to come into the office to work that day, and falsely informed them that Simpson was deemed to have resigned from his managerial roles with Arch Companies. He further instructed employees to not respond to any outreach from Simpson. Even before his removal as a member of JJ Arch, Chassen had no authority to do so.

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 64.**

65. Simpson has since been able to regain access to his physical office at Arch. However, he still has only limited access to Arch's computer system, and is still unable to gain access to Arch's bank accounts. Through counsel, he demanded that First Republic restore him as a signatory on such accounts, and remove Chassen as a signatory. First Republic has refused to do so, and has advised Simpson that because it has "received conflicting instructions regarding the ownership and control" of such accounts, First Republic has placed a hold on those accounts, and will not permit any deposits or withdrawals from such accounts. (Exhibit 5, Letter from Christy Santoro, Preferred Banker at First Republic, to Jeffrey Simpson, dated Aug. 6, 2023, first page.) One hundred and fifty (150) accounts are subject to this hold. (*See id.*, second through fifth pages.) (Collectively, these are the "Arch Accounts.") These include accounts for Arch Companies, as well as accounts maintained for the purpose of holding monies held in trust for subcontractors, materialmen, and other persons involved in Arch Companies' construction projects who are beneficiaries under Article 3-A of the New York State Lien Law. First Republic has advised that it will not release the hold until it "receive[s] evidence satisfactory to us that there is no longer a dispute as to who has authority over the accounts" (*id.*, first page), or there is a court order requiring its release (*see* Exhibit 6, email from First Republic's in-house counsel to Plaintiffs' counsel).

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 65.**

66. Continuation of First Republic's hold on the Arch Companies' bank accounts would wreak havoc on the Arch Companies. Arch Companies would be unable to meet their payroll, inflicting hardship both on Arch Companies' employees, who number approximately 100, and on Arch Companies themselves when such employees ultimately leave their positions for

14

employment with companies whose minority members are not sabotaging company finances in order to extract concessions.

**Answer: Defendant denies the allegations in paragraph 66.**

67. With the hold on those bank accounts, Arch will also stand unable to pay its bills to vendors, such as insurance premiums (*see* Exhibit 7 hereto). Indeed, Arch Companies are now in default on many obligations as a result of their inability to make payments due to the hold. Arch Companies would also be unable to pay rent and other bills, and to make payments on construction loans and to investors in Arch Companies.

**Answer: Defendant denies the allegations in paragraph 67.**

68. The bank accounts that are subject to First Republic's hold also include trust accounts under Article 3-A of the New York State Lien Law, which hold funds in trust for, among others, subcontractors and materialmen on construction projects being performed for Arch Company entities. Thus, the existing account hold prevents Arch Company entities from being able to pay their subcontractors and materialmen. This is doubly harmful to the Arch Companies, in that they now cannot pay those subcontractors and materialmen, which may cause them to cease performing their present construction work, and it also may dissuade them from performing projects for the Arch Companies in the future, out of fear that another, future frivolous dispute over company control may lead to another hold on Arch Companies' bank accounts and a recurrence of delays in paying them.

**Answer: Defendant denies the allegations in paragraph 68.**

69. With both Arch Companies' employees and their subcontractors leaving active job sites, there is a further risk that such sites will not be adequately staffed or supervised, or machinery there adequately maintained, creating a public safety risk that will result in injury to those remaining employees or subcontractors, and nearby members of the public.

**Answer: Defendant denies the allegations in paragraph 69.**

70. The aforesaid effects also endanger the general reputation of Arch Companies going forward, tarnishing it with the appearance that it cannot be trusted to fulfill its obligations.

**Answer: Defendant denies the allegations in paragraph 70.**

71. Another consequence of the coup perpetrated by Chassen is that Last, Arch's managing director, has resigned from her position with Arch on or about August 7, 2023, in response to said coup. Consequently, Arch has lost the benefit of Last's performance.

**Answer: Defendant admits that the Last resigned but otherwise denies the allegations in paragraph 71.**

72. In addition, Chassen and Computero Inc. ("Computero"), the outside company acting as Arch's information technology consultant, have colluded to deny Simpson access to his Arch company email account. Computero first disregarded his instructions to remove Chassen's access to Arch's computer network and his Arch email account beginning shortly before the time Simpson provided the Notice to Chassen of Cause Event, then cut off Simpson's access to the Arch computer network and his Arch email account. Then, after Simpson made repeated requests to regain access to his email account, Computero restored his email access on the evening of Wednesday, August 9. However, approximately one hour after his email access was reinstated, it was again cut off, this time ostensibly by Microsoft. However, Chassen was Microsoft's only contact person at Arch Companies, and thus the only person who could have instructed Microsoft to cut off Simpson's email access. Simpson remains unable to gain access to his Arch email account, and thus unable to receive or respond to email communications from Arch's many employees.

**Answer: Defendant denies the allegations in paragraph 72.**

73. In addition, Simpson's access to Dropbox has not been restored, thus making it impossible for him to view the Arch Companies' internal documents, which are stored in Dropbox. Also, Chassen has engineered a situation in which he is the only contact person for the domain company that hosts Arch Companies' web site. Thus, Simpson cannot communicate with the domain company in order to update the web site, including restoring references to himself as the managing member and removing those to Chassen as a continuing employee and member of the Arch Companies following his resignation.

**Answer: Defendant denies the allegations in paragraph 73.**

74. The combined loss of email and Dropbox access have left Simpson, as the chief managerial figure at Arch Companies, effectively blind (unable to view documents) and deaf and mute (unable to communicate with the Arch Companies' employees, or with the public through Arch Companies' web site). This has rendered him unable to exercise his authority as managing member of JJ Arch, and left the Arch Companies as a rudderless ship.

**Answer: Defendant denies the allegations in paragraph 74.**

AS AND FOR A FIRST CAUSE OF ACTION
(Breach of the Amended JJ Arch Operating Agreement, Brought by Arch and by Simpson, Against Defendant Chassen)

75. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

**Answer: Paragraph 75 does not require a responsive pleading, but to the extent it does, the allegations are denied.**

76. The Amended JJ Arch Operating Agreement is a valid and binding agreement between Simpson and Chassen.

16

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM INDEX NO. 158055/2023
NYSCEF DOC. NO. 212          24-10381-jpm   Doc 62-4   Filed 04/01/24   Entered 04/01/24 17:11:00   Exhibit 3 to          RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi      Pg 18 of 63

**Answer: Paragraph 76 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

77. The Amended JJ Arch Operating Agreement is supported by valuable consideration.

**Answer: Paragraph 77 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

78. Arch is expressly mentioned in the Amended JJ Arch Operating Agreement and defined therein as an "Investment Entity".

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 78.**

79. Paragraph 3.1 of the Amended JJ Arch Operating Agreement sets forth powers that Simpson has with regard to matters which JJ Arch has the authority to perform "indirectly through an Investment Entity," *i.e.*, through Arch.

**Answer: Defendant refers the Court to the original documents for their true contents and otherwise denies the allegations in paragraph 79.**

80. The Amended JJ Arch Operating Agreement was intended for Arch's benefit.

**Answer: Defendant denies the allegations in paragraph 80.**

81. The benefit to Arch from the Amended JJ Arch Operating Agreement is sufficiently to indicate the assumption by the contracting parties of a duty to compensate Arch if is lost.

**Answer: Defendant denies the allegations in paragraph 81.**

82. Arch is a third-party beneficiary of the Amended JJ Arch Operating Agreement.

**Answer: Paragraph 77 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

83. Chassen materially breached the Amended JJ Arch Operating Agreement by conducting, managing, and controlling the affairs and business of JJ Arch, when, under ¶ 3.1(i) of the Amended JJ Arch Operating Agreement, only Simpson had the authority to do so.

**Answer: Paragraph 83 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegations are denied.**

84. Simpson has been injured by this breach of the Amended JJ Arch Operating Agreement, in that it has caused him to lose the ability to conduct, manage, and control the affairs of Arch Entities, and, so long as a hold remains on the Arch Companies' bank accounts,

17

he will continue to suffer a diminished ability to conduct, manage, and control the affairs of JJ Arch and of Arch.

**Answer: Defendant denies the allegations in paragraph 84.**

85. Arch has been injured by this breach of the Amended JJ Arch Operating Agreement, in that such breach has resulted in the resignation of Last and the loss of the value of her work to Arch; so long as a hold remains on the Arch Companies' bank accounts, it will be unable to meet its financial obligations, including but not limited to paying its employees and vendors, including but not limited to its insurers; and Arch is likely to suffer reputational harm in the future.

**Answer: Defendant denies the allegations in paragraph 85.**

86. Chassen materially breached ¶ 3.1(ii) of the Amended JJ Arch Operating Agreement by stripping Simpson of the authority to control the Arch Companies' bank accounts and draw checks thereon, and transferring such authority to himself.

**Answer: Paragraph 86 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

87. Simpson has been injured by this breach of the Amended JJ Arch Operating Agreement, in that it has caused him to lose the ability to control the Arch Companies' bank accounts and draw checks thereon, and such injury will continue into the future so long as a hold remains on the Arch Companies' bank accounts.

**Answer: Defendant denies the allegations in paragraph 87.**

88. Arch has been injured by this breach of the Amended JJ Arch Operating Agreement, in that Arch has lost the ability to meet its financial obligations, including but not limited to paying its employees and vendors, including but not limited to its insurers. Arch will continue to suffer such injury so long as a hold remains on the Arch Companies' bank accounts, and Arch is likely to suffer reputational harm in the future.

**Answer: Defendant denies the allegations in paragraph 88.**

89. Chassen materially breached ¶ 3.1(vi) of the Amended JJ Arch Operating Agreement by stripping Simpson of the authority to withdraw, pay, and distribute the funds of Arch Companies, and transferring such authority to himself.

**Answer: Paragraph 89 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

90. Simpson has been injured by this breach of the Amended JJ Arch Operating Agreement, in that it has caused him to lose the ability to withdraw, pay, and distribute the funds of Arch Companies, and such injury will continue into the future so long as a hold remains on the Arch Companies' bank accounts.

18

**Answer: Defendant denies the allegations in paragraph 90.**

91. Arch has been injured by this breach of the Amended JJ Arch Operating Agreement, in that Arch has lost the ability to meet its financial obligations, including but not limited to paying its employees and vendors, including but not limited to its insurers. Arch will continue to suffer such injury so long as a hold remains on the Arch Companies' bank accounts, and Arch is likely to suffer reputational harm in the future.

**Answer: Defendant denies the allegations in paragraph 91.**

92. Chassen materially breached the "Resignation" provision of § 1.1 of the Amended JJ Arch Operating Agreement by purporting to deliver a notice of Cause Event to Simpson, when, by the time he had done so, Chassen had been removed as a member of JJ Arch, and thus had no authority to do so, and when the purported Cause Events set forth in such notice had not occurred.

**Answer: Paragraph 92 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegations are denied.**

93. Simpson has been injured by this breach of the Amended JJ Arch Operating Agreement, in that Chassen has used it as a pretext to continue to conduct, manage, and control the affairs of Arch Entities, to the exclusion of Simpson.

**Answer: Defendant denies the allegations in paragraph 93.**

94. Arch has been injured by this breach of the Amended JJ Arch Operating Agreement, in that, with Chassen having using it as a pretext to dispute, to First Republic, Simpson's authority to control Arch Companies' bank accounts with First Republic, a hold has been placed on such accounts, and Arch has lost the ability to meet its financial obligations, including but not limited to paying its employees and vendors, including but not limited to its insurers. Arch will continue to suffer such injury so long as a hold remains on the Arch Companies' bank accounts, and Arch is likely to suffer reputational harm in the future.

**Answer: Defendant denies the allegations in paragraph 94.**

95. By law, the Amended JJ Arch Operating Agreement contains an implied covenant of good faith and fair dealing, pursuant to which Chassen had an obligation not to act in such a manner as to injure Simpson's rights to receive the fruits of said agreement or to prevent Simpson from performing his duties under said agreement.

**Answer: Paragraph 95 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

96. Chassen prevented Simpson from performing his duties under the Amended JJ Arch Operating Agreement by acting so as to deny Simpson:

19

(a) the ability to manage the Arch Companies' finances, by depriving Simpson of his ability to make transactions using the Arch Accounts;

(b) physical access to his office;

(c) the use of Simpson's email account to communicate with employees of the Arch Companies;

(d) the use of Dropbox to obtain access to the Arch Companies' corporate documents; and

(e) the ability to manage Arch Companies' web site by communicating with the domain company that hosts such web site.

**Answer: Defendant denies the allegations in paragraph 96.**

97. Chassen prevented Simpson from receiving the fruits of the Amended JJ Arch Operating Agreement by purporting to terminate, upon false pretenses and without authority to do so, Simpson's role as managing member of JJ Arch by sending the Chassen 8/6/23 Letter.

**Answer: Defendant denies the allegations in paragraph 97.**

98. By his aforesaid conduct, Chassen has injured Simpson's rights to receive the fruits of the Amended JJ Arch Operating Agreement and prevented Simpson from performing his duties under said agreement.

**Answer: Defendant denies the allegations in paragraph 98.**

99. By his aforesaid conduct, Chassen has breached the implied covenant of good faith and fair dealing in the Amended JJ Arch Operating Agreement.

**Answer: Paragraph 99 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

100. For the reasons set forth above, Simpson and JJ Arch have been injured by Chassen's breach of the implied covenant of good faith and fair dealing in the Amended JJ Arch Operating Agreement.

**Answer: Defendant denies the allegations in paragraph 100.**

101. Simpson has complied with the Amended JJ Arch Operating Agreement in all respects.

**Answer: Defendant denies the allegations in paragraph 101.**

102. As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

20

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 212
RECEIVED NYSCEF: 10/13/2023

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 22 of 63

**Answer: Paragraph 102 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

103. In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

**Answer: Paragraph 103 states a legal conclusion for which no responsive pleading is required, but to the extent such a response is required, the allegation is denied.**

104. Simpson and Arch have suffered damages, and in the future will continue to suffer damages, in an amount to be determined at trial.

**Answer: Defendant denies the allegations in paragraph 104.**

AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Fiduciary Duty, Brought by JJ Arch and by Simpson, Against Defendant Chassen)

105. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

**Answer: Paragraph 105 does not require a responsive pleading, but to the extent it does, the allegations are denied.**

106. Chassen, as a member of JJ Arch, had a fiduciary duty to JJ Arch and to the other member of JJ Arch, Simpson.

**Answer: Paragraph 106 states a conclusion of law for which no responsive pleading is required, but to the extent one is required the allegations are denied.**

107.    Chassen had a duty of loyalty to JJ Arch and to Simpson.

**Answer: Paragraph 107 states a conclusion of law for which no responsive pleading is required, but to the extent one is required the allegations are denied.**

108. This duty of loyalty obligated Chassen to act in the best interests of JJ Arch and Simpson, and not to pursue Chassen's own personal interest at the expense of the well-being of JJ Arch and Simpson.

**Answer: Paragraph 108 states a conclusion of law for which no responsive pleading is required, but to the extent one is required the allegations are denied.**

109. Chassen engaged in misconduct by numerous means, including but not limited to by acting so as to deny Simpson:

(a)  the ability to manage the Arch Companies' finances, by depriving Simpson of his ability to make transactions using the Arch Accounts;

21

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 23 of 63

(b)  physical access to his office;
(c)  the use of Simpson's email account to communicate with employees of the Arch Companies;
(d)  the use of Dropbox to obtain access to the Arch Companies' corporate documents; and
(e)  the ability to manage Arch Companies' web site by communicating with the domain company that hosts such web site.

**Answer: Defendant denies the allegations in paragraph 109.**

110. Chassen's misconduct resulted directly in damages to Simpson, in that it deprived Simpson of the ability to manage the Arch Companies' finances, gain access to his office, communicate with the Arch Companies' employees, gain access to Arch Companies' corporate documents, and manage the Arch Companies' web site.

**Answer: Defendant denies the allegations in paragraph 110.**

111. Chassen's misconduct resulted directly in damages to JJ Arch, in that it made it impossible for Simpson to pay financial obligations of JJ Arch, communicate with the Arch Companies' employees through email, and gain access to Arch Companies' corporate documents, and it made it impossible for anyone at Arch Companies, other than Chassen, who had already been duly removed from JJ Arch, to manage the Arch Companies' web site.

**Answer: Defendant denies the allegations in paragraph 111.**

112. By seizing control of JJ Arch in violation of the JJ Arch Amended Operating Agreement, and by conducting himself, as a member of JJ Arch, in a manner that placed his own interests and those of his personal associates above those of JJ Arch and Simpson, Chassen breached his duty of loyalty.

**Answer: Defendant denies the allegations in paragraph 112.**

113. Simpson has been damaged, and continues to be damaged, by Chassen's conduct in violation of his duty of loyalty, as set forth above.

**Answer: Defendant denies the allegations in paragraph 113.**

114. JJ Arch has been damaged, and continues to be damaged, by Chassen's conduct in violation of his duty of loyalty, in that such conduct has caused economic harm to Arch as set forth above, and is expected to continue to cause such harm in the future, by virtue of present and expected future decreases in the value of JJ Arch's equity interest in Arch and decreases in the distributions JJ Arch is to receive from Arch.

**Answer: Defendant denies the allegations in paragraph 114.**

22

115. As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

**Answer: Paragraph 115 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant refers the Court to the original document for its true contents and otherwise denies the allegations.**

116. In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

**Answer: Paragraph 116 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

117. Simpson and JJ Arch have suffered damages, and in the future will continue to suffer damages, in an amount to be determined at trial.

**Answer: Defendant denies the allegations in paragraph 117.**

AS AND FOR A THIRD CAUSE OF ACTION
(Conversion, Brought by All Plaintiffs Against Defendant Chassen)

118. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

**Answer: Paragraph 105 does not require a responsive pleading, but to the extent it does, the allegations are denied.**

119. The funds Arch Companies have on deposit in the Arch Accounts ("Arch Companies Funds") belong to Arch Companies.

**Answer: Defendant lacks information sufficient to form a belief as to the truth of the allegations in paragraph 119.**

120. Simpson, Arch, and JJ Arch have an immediate superior right of possession, relative to Chassen, to the Arch Companies Funds.

**Answer: Defendant denies the allegations in paragraph 120.**

121. The Arch Companies Funds are personal property.

23

**Answer: The allegations in paragraph 121 state a conclusion of law for which nor responsive pleading is required, but to the extent a responsive pleading is required, the allegations are denied.**

122. The Arch Companies Funds are specific, identifiable funds.

**Answer: The allegations in paragraph 121 state a conclusion of law for which nor responsive pleading is required, but to the extent a responsive pleading is required, the allegations are denied.**

123. Chassen, intentionally and without authority, acted to deprive Simpson of Simpson's authority, under the JJ Arch Amended Operating Agreement and the Arch Operating Agreement, to possess and control the Arch Companies Funds.

**Answer: Defendant denies the allegations in paragraph 123.**

124. Chassen has exercised unauthorized dominion over the Arch Companies Funds to the exclusion of the rights of Simpson, Arch, and JJ Arch.

**Answer: Defendant denies the allegations in paragraph 124.**

125. Chassen has an obligation to return control over the Arch Companies Funds to Simpson, Arch, and JJ Arch, but has not done so.

**Answer: Defendant denies the allegations in paragraph 125.**

126. As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

**Answer: Paragraph 126 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant refers the Court to the original document for its true contents and otherwise denies the allegations.**

127. In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

**Answer: Paragraph 127 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

128. As managing member of JJ Arch, which in turn is the managing member of Arch, Simpson has standing to bring this claim derivatively on behalf of Arch.

**Answer: Paragraph 128 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

24

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 212
24-10381-jpm   Doc 62-4   Filed 04/01/24   Entered 04/01/24 17:11:00   Exhibit 3 to
RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi   Pg 26 of 63

129. Simpson, Arch, and JJ Arch have been injured, and continue to be injured, by Chassen's conversion of the Arch Companies Funds, in an amount to be determined at trial.

**Answer: Defendant denies the allegations in paragraph 129.**

AS AND FOR A FOURTH CAUSE OF ACTION
(Tortious Interference with Contractual Relations, Brought by Arch and JJ Arch Against Chassen)

130. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

**Answer: Paragraph 130 does not require a responsive pleading, but to the extent it does, the allegations are denied.**

131. Arch and JJ Arch have a valid and binding contract with a third party, *i.e.*, First Republic, pursuant to which JJ Arch, Arch, and the other Arch Companies deposit funds in bank accounts maintained by First Republic (the Arch Companies Funds), and First Republic holds such funds for the benefit of JJ Arch, Arch, and the other Arch Companies (the "First Republic Agreement").

**Answer: Defendant admits that Arch and JJ Arch have a banking relationship with First Republic, and have bank accounts there, but otherwise denies the allegations in paragraph 131.**

132. Pursuant to the First Republic Agreement, the Arch Companies Funds may be spent and distributed by a person duly authorized by JJ Arch.

**Answer: Defendant refers the court to the original documents and otherwise denies the allegations in paragraph 132.**

133. The sole person duly authorized by JJ Arch to spend and distribute monies from the Arch Companies Funds is Simpson**.**

**Answer: Defendant denies the allegations in paragraph 133.**

134.    At all relevant times, Chassen knew of the First Republic Agreement, and that Simpson was the sole person duly authorized by JJ Arch to spend and distribute monies from the Arch Companies Funds.

**Answer: Defendant denies the allegations in paragraph 134.**

135.    Chassen is a non-party to the First Republic Agreement.

25

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
NYSCEF DOC. NO. 212

INDEX NO. 158055/2023

RECEIVED NYSCEF: 10/13/2023

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 27 of 63

**Answer: Defendant denies the allegations in paragraph 134.**

136.    Chassen intentionally procured the breach, by First Republic, of the First Republic Agreement, by misrepresenting to First Republic that Chassen, and not Simpson, is the person duly authorized by JJ Arch to spend and distribute monies from the Arch Companies Funds.

**Answer: Defendant denies the allegations in paragraph 136.**

137.    Arch and JJ Arch have been damaged by Chassen's procurement of First Republic's breach of the First Republic Agreement, in that as a result Simpson has been unable to spend, distribute, or otherwise control the Arch Companies Funds, on behalf of Arch and JJ Arch, as the duly authorized person pursuant to the First Republic Agreement, and pursuant to his authority under the Arch Operating Agreement and the JJ Arch Amended Operating Agreement.

**Answer: Defendant denies the allegations in paragraph 137.**

138. JJ Arch and Arch have been damaged by Chassen's procurement of First Republic's breach of the First Republic Agreement, in that as a result, as set forth above, they have been, and remain, unable to fulfill their obligations to others, including but not limited to their employees, vendors, subcontractors, and materialmen, and as a result, those persons may cease performing services for JJ Arch and Arch, and JJ Arch and Arch may incur further obligations to those persons or to other persons in the future, or having difficulty in the future finding other persons who will be willing to work for or contract with them.

**Answer: Defendant denies the allegations in paragraph 138.**

139. Chassen's actions constitute tortious interference with the First Republic Agreement.

**Answer: Paragraph 139 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

140. As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

**Answer: Paragraph 140 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant refers the Court to the original document for its true contents and otherwise denies the allegations.**

141. In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

26

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 28 of 63

**Answer: Paragraph 126 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

142. As managing member of JJ Arch, which in turn is the managing member of Arch, Simpson has standing to bring this claim derivatively on behalf of Arch.

**Answer: Paragraph 126 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

143. Arch and JJ Arch have been injured, and continue to be injured, by Chassen's tortious interference with the Arch Contracts, in an amount to be determined at trial.

**Answer: Defendant denies the allegations in paragraph 143.**

AS AND FOR A FIFTH CAUSE OF ACTION
(Declaratory Judgment, Brought by All Plaintiffs, Against Chassen)

144. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

**Answer: Paragraph 144 does not require a responsive pleading, but to the extent it does, the allegations are denied.**

145. There is a justiciable controversy between Plaintiffs on the one hand, and Chassen on the other, as to whether
(a) the Notice to Chassen of Cause Event removed Chassen as a member of JJ Arch; and
(b) the Chassen 8/6/23 Letter removed Simpson as a member of JJ Arch.

**Answer: Paragraph 145 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

146. Plaintiffs have taken the position that the Notice of Chassen of Cause Event removed Chassen as a member of JJ Arch, and the Chassen 8/6/23 Letter did not remove Simpson as a member of JJ Arch.

**Answer: Defendant admits the allegations in paragraph 146.**

147. Chassen has taken the position that the Notice of Chassen of Cause Event did not remove Chassen as a member of JJ Arch, and the Chassen 8/6/23 Letter removed Simpson as a member of JJ Arch. However, both positions taken by Chassen are incorrect.

**Answer: Defendant admits that he has taken those positions but denies that they are incorrect.**

27

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 212
RECEIVED NYSCEF: 10/13/2023

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 29 of 63

148. The aforesaid dispute between the parties represents a genuine, concrete dispute involving substantial legal interests.

**Answer: Defendant denies the allegations in paragraph 148 because both letters were declared nullities by order of the Court.**

149. As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

**Answer: Paragraph 140 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant refers the Court to the original document for its true contents and otherwise denies the allegations.**

150. In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

**Answer: Paragraph 140 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

151. As managing member of JJ Arch, which in turn is the managing member of Arch, Simpson has standing to bring this claim derivatively on behalf of Arch.

**Answer: Paragraph 140 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

152. Plaintiffs are therefore entitled to a declaration of the legal rights of the parties to resolve the aforesaid dispute.

**Answer: Paragraph 152 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

153. There is no adequate remedy at law.

**Answer: Paragraph 153 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

AS AND FOR A SIXTH CAUSE OF ACTION
(Declaratory Judgment, Brought by All Plaintiffs, Against Chassen and First Republic)

28

154. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

**Answer: Paragraph 154 does not require a responsive pleading, but to the extent it does, the allegations are denied.**

155. There is a justiciable controversy between Plaintiffs on the one hand, and Defendants on the other, as to whether Simpson or Chassen is the individual at JJ Arch and Arch entitled to exercise control over the Arch Accounts, and whether the hold on the Arch Accounts should be removed.

**Answer: Paragraph 155 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

156. Plaintiffs have taken the position that Simpson is the individual at JJ Arch and Arch entitled to exercise control over the Arch Accounts, and the hold on the Arch Accounts must be released.

**Answer: Defendant admits the allegations in paragraph 156.**

157. Chassen has taken the position that Chassen is the individual at JJ Arch and Arch entitled to exercise control over the Arch Accounts. However, the position taken by Chassen is incorrect.

**Answer: Defendant admits that he has taken the position but denies the position is incorrect.**

158. First Republic has taken the position that it cannot determine whether Simpson or Chassen is the individual at JJ Arch and Arch entitled to exercise control over the Arch Accounts, and that the hold should remain on the Arch Accounts. However, the position taken by First Republic is incorrect.

**Answer: Defendant admits that First Republic has taken the position, but denies the position is incorrect.**

159. The aforesaid dispute among the parties represents a genuine, concrete dispute involving substantial legal interests.

**Answer: Paragraph 159 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

160. As the managing member of JJ Arch expressly empowered to bring suit on behalf of JJ Arch pursuant to JJ Arch Amended Operating Agreement (Exhibit 3, JJ Arch Amended Operating Agreement, ¶ 3.1(a)(v)), Simpson may assert this claim of JJ Arch's under JJ Arch's name.

**Answer: Paragraph 160 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant refers the Court to the original document for its true contents and otherwise denies the allegations.**

161. In the alternative, as a member of JJ Arch, Simpson has standing to assert this claim derivatively on behalf of JJ Arch.

**Answer: Paragraph 161 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

162. As managing member of JJ Arch, which in turn is the managing member of Arch, Simpson has standing to bring this claim derivatively on behalf of Arch.

**Answer: Paragraph 162 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

163. Plaintiffs are therefore entitled to a declaration of the legal rights of the parties to resolve the aforesaid dispute.

**Answer: Paragraph 163 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

164. There is no adequate remedy at law.

**Answer: Paragraph 164 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

AS AND FOR A SEVENTH CAUSE OF ACTION
(Preliminary and Permanent Injunction, Brought by All Plaintiffs Against Chassen and First Republic)

165. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

**Answer: Paragraph 165 does not require a responsive pleading, but to the extent it does, the allegations are denied.**

166. Plaintiffs have a likelihood of success on the merits on their claim that Simpson has the right to control, on the behalf of JJ Arch and Arch, the Arch Accounts.

**Answer: Paragraph 166 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

30

24-10381-jpm   Doc 62-4   Filed 04/01/24   Entered 04/01/24 17:11:00   Exhibit 3 to
Declaration of Jason Nagi   Pg 32 of 63

167. In the event that the hold First Republic has placed on the Arch Accounts is not lifted immediately, and the right to control the Arch Accounts is not restored to Simpson, Plaintiffs, and third parties, will experience imminent and irreparable injury.

**Answer: Paragraph 167 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

168. Such injury will be in the form of Arch Companies being unable to pay their employees, resulting in economic harm to such employees, and at least some of such employees imminently leaving employment with the Arch Companies and seeking work elsewhere; lack of supervision on construction projects supervised by the Arch Companies, imminently resulting in physical injury to members of the public at the construction sites; Arch Companies being unable to pay subcontractors and materialmen on projects, imminently resulting in such subcontractors and materialmen ceasing work on the projects, again imminently resulting in physical injury to members of the public at unsupervised construction sites, as well as economic injury to the Arch Companies owning the project sites, due to delayed completion of projects; and long-term economic damage to Arch Companies, as future efforts at recruiting employees and contracting with third parties are hindered due to damage to Arch Companies' reputation due to a sustained inability to fulfill their obligations.

**Answer: Defendant denies the allegations in paragraph 168.**

169. The only way forward, therefore, to protect Arch Companies, their employees, subcontractors, materialmen, and vendors, and members of the public at large, is for the Court to order that First Republic release its hold on Arch Companies' bank accounts, and restore to Simpson his contractually guaranteed exclusive right to control the finances, and the checkbooks, of Arch Companies.

**Answer: Defendant denies the allegations in paragraph 169.**

170.   The balance of the equities favors Plaintiffs.

**Answer: Defendant denies the allegations in paragraph 170.**

171.   Plaintiffs are entitled to a preliminary and permanent injunction requiring First Republic, immediately, to lift the hold it has placed on the Arch Accounts, and to restore to Simpson the exclusive right to control the Arch Accounts on behalf of JJ Arch and Arch.

**Answer: Paragraph 171 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

172.   There is no adequate remedy at law.

**Answer: Paragraph 172 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

31

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 212
24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi    Pg 33 of 63

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(Preliminary and Permanent Injunction, Brought by All Plaintiffs Against Chassen)

173. Plaintiffs repeat and reiterate each and every allegation in the foregoing paragraphs as if fully set forth herein.

**Answer: Paragraph 173 does not require a responsive pleading, but to the extent it does, the allegations are denied.**

174. Plaintiffs have a likelihood of success on the merits of their claim that Simpson is entitled to have access to his email account with Arch Companies, have access to Arch Companies' Dropbox file, and communicate with the company hosting the Arch Companies' web site.

**Answer: Paragraph 174 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

175. In the event that Simpson is unable to gain access to his email account with Arch Companies, have access to Arch Companies' Dropbox file, and communicate with the company hosting the Arch Companies' web site, and Plaintiffs will suffer irreparable injury.

**Answer: Paragraph 175 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

176.    The balance of the equities favors Plaintiffs.

**Answer: Paragraph 176 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

177.    Plaintiffs are entitled to a preliminary and permanent injunction requiring Chassen to take, immediately, all actions necessary to enable Simpson to gain access to his email account with Arch Companies, have access to Arch Companies' Dropbox file, and communicate with the company hosting the Arch Companies' web site.

**Answer: Paragraph 177 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

178.    There is no adequate remedy at law.

32

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
INDEX NO. 158055/2023

NYSCEF DOC. NO. 212

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
RECEIVED NYSCEF: 10/13/2023

Declaration of Jason Nagi    Pg 34 of 63

**Answer: Paragraph 178 states conclusions of law for which no responsive pleading is required, but to the extent such a response is required, Defendant denies the allegations.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs fail to state a claim as a matter of law.

### Second Affirmative Defense

Plaintiffs' claims fail based on documentary evidence.

### Third Affirmative Defense

Plaintiffs improperly intermingle their direct and derivative claims, which mandates the

dismissal of the entire complaint.

### Fourth Affirmative Defense

Plaintiffs' claims should be dismissed as duplicative.

### Fifth Affirmative Defense

Plaintiffs' claims fail under the doctrine of in pari delicto.

### Sixth Affirmative Defense

Plaintiffs' claims fail because of Plaintiff's unclean hands.

### Seventh Affirmative Defense

Plaintiffs' claims fail under the doctrines of waiver and estoppel.

### Eighth Affirmative Defense

Plaintiffs' derivative claims fail because under Section 10.2 of the JJ Arch Operating

Agreement, JJ Arch is obligated to indemnify Defendant for any claim "for any loss, damage, or

claim  incurred" by Defendant "by reason of any act or omission performed or omitted . . . in

good faith  on behalf of the Company and in a manner reasonably believed to be within the scope

33

of authority conferred . . . by this Agreement." Defendant's conduct has been entirely in good

faith, on behalf of the company, and in a manner reasonably believed to be within the scope of

the authority conferred by the Operating Agreement.

### Ninth Affirmative Defense

Plaintiffs' claims fail because the Amended JJ Arch Operating Agreement by which

Simpson purported to retain sole managerial authority after December 11, 2021 is

unconscionable. Despite Chassen vocalizing his disagreement, Simpson presented him with the

Amendment on a take-it-or-leave-it basis, threatening him that he would remove him from the

business entirely if he did not sign the Amendment. Chassen signed the Amendment under undue

pressure and threats. Simpson pressured Chassen not to hire his own counsel review the

Amendment and limited his involvement in calls Simpson took with the shared Arch Entities'

counsel David Heymann who Simpson had draft the amendment in his favor, while Heymann

purported to represent both of them. Chassen was never disclosed Hyemann's actual conflicts,

and Chassen did not execute any conflict waiver. Simpson was also in a relationship of

confidence and trust with Defendant, who had been his mentor in the industry. Simpson took

advantage of that relationship of trust.

Because of their unequal bargaining power, prior relationship, Simpson's threats, and

deceptive and coercive tactics, and the parties' confidential relationship, Chassen lacked

meaningful choice in entering into the Amendment.

And the Amendment itself was substantively unconscionable as it contained only

favorable terms to Simpson and gave away Chassen's managerial rights as well as his

membership percentage under the Operating Agreement for nothing.

34

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 212
RECEIVED NYSCEF: 10/13/2023

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 36 of 63

### Tenth Affirmative Defense

Plaintiffs' claims fail because the Amended JJ Arch Operating Agreement by which Simpson purported to retain sole managerial authority fails for lack of consideration. The Amendment contained only favorable terms to Simpson for nothing of real value.

### Eleventh Affirmative Defense

Plaintiffs' claims fail because the Amended JJ Arch Operating Agreement by which Simpson purported to retain sole managerial authority was the product of duress and undue influence and breaches of fiduciary duty.

### Twelfth Affirmative Defense

Plaintiffs' claims fail because Simpson was in a relationship of trust and confidence at the time of the drafting and execution of the Amended JJ Arch Operating Agreement by which Simpson purported to retain sole managerial authority, and a special burden should be shifted to the party in whom the trust is reposed, Simpson, to disprove fraud or overreaching. *In re Estate of Greiff*, 92 N.Y.2d 341, 345 (1998). Given Chassen relationship of trust and confidence with Simpson, the burden is on Simpson to establish that he did not enter the Amended JJ Arch Operating Agreement by undue influence or coercion, which burden he cannot meet.

### Thirteenth Affirmative Defense

Plaintiffs' claims fail because Simpson breached his fiduciary duties to Chassen, JJ Arch, Arch Real Estate, 35 Oak, and Arch's investors.

### Fourteenth Affirmative Defense

Plaintiffs' claims fail because Simpson was lawfully resigned from JJ Arch.

### Fifteenth Affirmative Defense

Plaintiffs' claims fail because he failed to properly serve Chassen.

35

### Sixteenth Affirmative Defense

Defendant reserves his right to assert additional affirmative defenses as additional information is learned during the course of this action.

WHEREFORE, the Court should award and enter judgment in Defendant's favor, dismiss the Complaint in its entirety, and award Defendant his legal fees and costs.

### VERIFIED COUNTER-CLAIMS

Jared Chassen ("Chassen"), individually and derivatively on behalf of JJ Arch, LLC ("JJ Arch") and Arch Real Estate Holdings, LLC ("Arch Real Estate"), for his counterclaims against Jeffrey Simpson ("Simpson"), alleges as follows:

1.      This is an action for breach of fiduciary duty, breach of contract, recission, and declaratory relief and a permanent injunction brought by Chassen in his own individual capacity, and derivatively on behalf of JJ Arch and Arch Real Estate against Simpson. Chassen seeks, among other things, to recover for Simpson's breaches of fiduciary duty and other corporate wrongdoing, to declare that Chassen is the sole managing member of JJ Arch, and to declare Simpson resigned as a member of JJ Arch.

### Parties

2.      Plaintiff Chassen is an individual residing in the State of New York. He is a member of JJ Arch, which in turn is the managing member of Arch Real Estate. Chassen has over 15 years of experience in the real estate industry. Among other work, before forming JJ Arch, he worked at Greystone Development ("Greystone") an affiliate of Greystone & Co., Inc. a firm that provides real estate services.

36

3.      Defendant Jeffery Simpson is an individual residing in the State of New York. He is a member of JJ Arch, which in turn is the managing member of Arch Real Estate. Before forming JJ Arch with Chassen, Simpson worked with Chassen at Greystone.

4.      Nominal Defendant JJ Arch is a New York limited liability corporation. It was formed by Chassen and Simpson on or about December 11, 2017.

5.      Nominal Defendant Arch Real Estate is a New York limited liability corporation. It was formed by JJ Arch and non-party 608941 NJ Inc. ("35 Oak") on or about December 11, 2017. JJ Arch and 35 Oak are the Members of Arch Real Estate.

### The JJ Arch Operating Agreement

6.      On December 11, 2017, Chassen and Simpson entered into the JJ Arch Operating Agreement. A true and correct copy of the JJ Arch Operating Agreement is annexed hereto as **Exhibit A**. The JJ Arch Operating Agreement identifies both Simpson and Chassen as the two Members. *See* Ex. A § 1.1. Section 3.1(a) of the JJ Arch Operating Agreement provides that, prior to the fourth anniversary of the Agreement, the business and affairs of JJ Arch shall be managed by Simpson subject to the limitations set forth in subsection (b), which provides that any Company Major Decision, as defined in the Agreement, shall only be undertaken with Chassen's prior written consent. *See* Ex. A § 3.1(a)-(b).

7.      Section 3.2 of the JJ Arch Operating Agreement provides that, after the fourth anniversary of the Agreement, that is, December 12, 2021, Simpson and Chassen were to both have managerial authority over JJ Arch, with consent by both required for Company Major Decisions. *See id*. § 3.2. Further, Chassen and Simpson were to be entitled to 50% of all distributions from December 12, 2021.

### The Arch Real Estate Operating Agreement

37

8.      On December 11, 2017, the same day that Chassen and Simpson entered into the JJ

Arch Operating Agreement, JJ Arch and 35 Oak entered into the Arch Real Estate Operating

Agreement. A true and correct copy of the Arch Real Estate Operating Agreement is annexed

hereto as **Exhibit B**. Under the Arch Real Estate Operating Agreement, JJ Arch is the Managing

Member, while 35 Oak is the Investor Member. While JJ Arch has managerial rights over Arch

Real Estate, 35 Oak has consent rights to certain major decisions.

### Before Becoming Partners, Simpson Had a Prior Relationship of Confidence and Trust With Chassen

9.      Chassen first met Simpson when he worked with him at Greystone, a firm that

provides real estate services.  Greystone Development is a New York based full-service developer

of commercial and residential real estate that provides investment, development, construction,

marketing, operations, and asset management services.

10.      Simpson joined Greystone in 2007 and became the Chief Executive Officer of its

development subsidiary in 2013. At the time, Dough Benach, the head of the division hired

Chassen and placed him in the Development and Acquisitions team in 2012 to work with Benach

and Simpson. Simpson and Benach taught him essential skills for acquiring, financing debt and

equity, developing and running real estate projects, and he was promoted as the Director of

Acquisitions in 2014.

11.      During his tenure at Greystone, Simpson had a reputation of being an aggressive

businessperson who would pursue opportunities that others would view as unfeasible but would

never yield to opposition and often caused internal conflict.

12.      Chassen viewed Simpson as his mentor and developed a close relationship with

him. He reposed the utmost confidence and trust in him and even put his financial well-being in

his hands.

38

13.     In 2017, Simpson left Greystone under less than favorable circumstances.

14.     Despite the public perception that the separation between Simpson and Greystone was amicable, the separation came after internal dissensions caused by numerous failed and over budget projects led by Simpson.  As a result, the Greystone Development brand downsized from 30 people to currently 3 persons and Simpson was forced to leave Greystone, and Chassen left alongside many others as the brand downsized and the jobs disappeared.

### Chassen Brings Simpson 35 Oak as an Investor and they Form JJ Arch

15.     After departing Greystone, Simpson struggled to find investors for a new business. While still employed by Greystone, he held many meetings by himself to launch a new business which yielded no success. Through Chassen's own connections, Chassen introduced 35 Oak to Simpson while still at Greystone. Chassen and Simspon planned a new company together relying on Chassen's capital connections to make the company feasible.

16.     35 Oak is an active investor in many industries, and its principal place of business is in Toronto, Canada. After a few meetings, 35 Oak decided to invest in a joint venture with Chassen and Simpson, and on December 11, 2017, established Arch Real Estate, which is governed by the Arch Real Estate Operating Agreement. On the same day, Simpson and Chassen signed the operating agreement for JJ Arch.

17.     The real estate portfolio owned and controlled by the Arch Entities ultimately grew to more than $1Bn in assets under management, held in various single purpose companies that are affiliates of and/or controlled by the Arch Entities. The Arch Entities also have other affiliated companies, including a property management company, brokerage company, construction company, each of which provides services relating to real properties that the Arch Entities control.

### Simpson Uses His Relationship of Trust with Chassen to Coerce Chassen to Sign an Unconscionable Amended JJ Arch Operating Agreement

39

18.    On May 22, 2021, the JJ Arch Operating Agreement was amended forcibly without Chassen's input or drafting (the "Amendment"). A true and correct copy of the Amendment is annexed hereto as **Exhibit C**. The Amendment eliminated the language in Section 3.2 of the original Agreement providing Simpson and Chassen equal rights and authority to manage the company beginning on December 11, 2021. Under the Amendment, Chassen purported to give away his managerial rights to Simpson for another four years, though Chassen retains consent right to limit Simpson's authority with respect to any Company Major Decision. *See* Ex. C § 3.1-3.2. Instead of becoming entitled to 50% of the distributions, as he was to be as of December 11, 2021, under the Amendment, Chassen was to be entitled to 49.9% of all distributions, with Simpson entitled to 50.1%.

19.    Because of their unequal bargaining power, Simpson's threats, and deceptive and coercive tactics, and the parties' confidential relationship, Chassen lacked meaningful choice in entering into the Amendment.

20.    Simpson took advantage of his confidential relationship with Chassen, as his mentor, to push a one-sided agreement. He heaped abuse on him in pressuring him to sign, repeatedly telling him he was incapable and inept. Simpson pressured Chassen to not have his own counsel review the Amendment and limited his involvement in calls Simpson took with JJ Arch's counsel David Heymann, who purported to also represent both of them, and who Simpson had draft the amendment in his favor. Heymann did not even disclose his actual conflicts in representing both JJ Arch, Simpson, and Chassen, and no conflict waiver was ever presented or agreed-to. Simpson presented Chassen with the Amendment on a take-it-or-leave-it basis, threatening him that he would just remove him from JJ Arch if he did not sign the Amendment. Chassen signed the Amendment under undue pressure and threats.

40

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
NYSCEF DOC. NO. 212
INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

24-10381-jpm   Doc 62-4   Filed 04/01/24   Entered 04/01/24 17:11:00   Exhibit 3 to
Declaration of Jason Nagi   Pg 42 of 63

21.     The Amendment itself was substantively unconscionable as it contained only favorable terms to Simpson and gave away Chassen's rights under the Operating Agreement for nothing of value.

**Simpson Takes Various Unlawful and Improper Actions**

22.     When they first started their new business, Simpson promised Chassen, Michelle Miller, and Tristan Last, employees/junior partners of the Arch Entities, that he would learn lessons from Greystone and change his aggressive behaviors. The operation of the Arch Entities did well initially, but it went downhill over the past two years.

23.     Simpson's aggressive business demeanor increasingly turned menacing inside the company, with partners, lenders and lawyers. He repeatedly acted in an intimidating manner towards employees and others. Simpson not only overloaded employees, but also regularly yelled and threatened to fire them causing a huge turnover of employees and tarnishing the Arch Entities' brand in the hiring markets. He regularly called people stupid, inept and other demeaning names, to the point of bringing them to tears. Simpson created a toxic work environment that forced many employees to leave, leading to understaffing and mismanagement of the company's real estate projects. Simpson would send messages to key employees such as "So now everyone is going to have to come to me every time they go to the bathroom to get my yes or no."

24.     Putting the companies' and investors' interests first, Chassen was willing to work to mitigate the damage caused in his wake and endure the harsh and abusive workplace that Simpson created, even to Chassen's personal detriment. Yet Simpson committed a series of misconducts that crossed the line of breaching his fiduciary duties, which the company could not withstand, and Chassen had to step up eventually.

41

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 43 of 63

25.    First, Simpson forced the team to make various misrepresentations about real estate projects to induce investments. Simpson and team members including Chassen were forced to pitch grossly under budgeted projects and promised unrealistic returns on investment to induce investors, such as 35 Oak and many others to contribute additional capital without ever disclosing risks.

26.    Disregarding the opposition of the other Arch Entities' partners and employees, including Chassen, Simpson pushed numbers aggressively and used unachievable assumptions to amplify financial outcomes. Over the years, several internal investment meetings occurred where Chassen and many team members aggressively pushed backed on his financial assumptions, but he would aggressively fight us and ultimately tell everyone to follow his path or be sidelined or fired.  Simpson also provided minimal reporting to investors, leaving them in the dark and keeping the staff overworked and understaffed and unable to do simple tasks like reporting or reconciliation. 35 Oak, the Arch Real Estate funding partner, kept funding the business and projects without proper capital calls, reporting or communication from JJ Arch, and if they ever questioned Simpson, he would threaten retribution if they did not continue to fund. He would tell them they were only good for capital and guarantees, and nothing else.

27.    Second, Simpson prioritized his personal gains over the success of the Arch Entities' projects.  For instance, the Myrtle Point development in Ridgewood, Queens, was grossly under budgeted and experienced significant delays from lack of supervision. Simpson didn't even visit the project for weeks at a time.  Recently, the project relied on one time-sensitive forbearance to move forward, yet Simpson instructed his lawyer for the Arch Entities to put pencils down and not turn over the necessary documents to 35 Oak, the guarantor.  He was planning to hold documents as leverage to cut a deal with one major lender and force 35 Oak to take certain actions

42

that would favor his personal interests. As a result of the delay, the Myrtle Point development has been stalled for months, causing the Arch Entities to lose more than fifty percent of its necessary revenue and putting additional strain on the business and putting over $45 million of equity at risk for full loss.

28.    Third, Simpson failed to properly supervise and manage projects. Across various projects, Simpson was not involved for months and in many instances disappeared to focus on his other businesses or personal ventures.

29.    Fourth, as cash flow started to become limited at Arch, at the extreme detriment of our managed investments and to increase income streams for the company, Simpson started a plan forcing the team leaders to take on even heavier workloads amongst senior employees, and shedding necessary employees such as project managers, construction managers, accountants, and other crucial roles to run projects. Simpson's attempt to cut expenses to generate additional income deprived many projects of proper supervision, which led to numerous failures. Despite desperate pleas from many senior Arch Entities' employees to properly staff the properties, Simpson pushed to continue to cut staff, and increase fees to JJ Arch. Investors were never made aware of these issues.

30.    Fifth, days before Chassen was forced as a fiduciary to remove Simpson, Simpson in text messages and in verbal communications to Chassen and Michelle Miller, a junior partner/employee, threatened to put all the Arch Entities into bankruptcy in order to leverage to us and 35 Oak to follow his orders without resistance or he would crash the business. Knowing it was against the Arch and JJ Arch Operating Agreements to file such bankruptcy, Simpson openly declared his plan to blow up the business and warned others that he would do so if they disobeyed

43

him saying, "[a]nybody that chooses to do anything without my permission or my consent is no longer going to be a part of this organization."

31.     Simpson also misappropriated Arch Real Estate's funds and employees for an independent auto business owned by JJ Arch—Rêver Motors ("Rêver). Rêver is a vintage car dealership and repair shop located in Southampton, New York. For the last two years, Simpson often dedicated two to three days per week on running the Rêver business while shirking his other responsibilities. Simpson directed Arch Entities' employees to manage accounting, logistics, and facility of the Rêver business. Simpson even hired one of the Arch Real Estate's employees to work exclusively for the Rêver business and transferred funds from Arch Real Estate's construction projects to pay for their wages. In connection with the Rêver business to which he devoted much of his time, Simpson engaged in illegality such as switching a VIN number on a car. This was done without Chasen's consent.

32.     From the very beginning of the Rêver business, Chassen was very clear to Simpson that if JJ Arch purchased this business, it had to be a weekend side-business that would need full third-party management and should never at the expense of Arch Real Estate's investments. Repeatedly, Chassen asked Simpson to stop directing Arch Real Estate's employees to work for the business, but he always disregarded Chassen's pleas. Simpson also never obtained Chassen's consent before doing this despite being obligated to do so. *See* Ex. C § 3.1(b)(viii).

33.     Simpson also began devoting much of his time to other business at the expense of JJ Arch such as purchasing a farm and several unaffiliated investment properties, many with large construction components that he oversaw. Because of these other businesses, he was devoting at most 65% of his business time to JJ Arch, when the JJ Arch Operating Agreement requires that he devote substantially all his business time to JJ Arch.

44

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM INDEX NO. 158055/2023
NYSCEF DOC. NO. 212     24-10381-jpm   Doc 62-4   Filed 04/01/24   Entered 04/01/24 17:11:00   Exhibit 3 to   RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi     Pg 46 of 63

### The Company Enters Dire Financial Circumstances Because of Simpson and Simpson Proposes that 35 Oak Take-Over JJ Arch

34.     In July 2023, Chassen asked JJ Arch's accountant about Simpson's diversion of money. Chassen had just seen a Paylocity report, a payroll document, that showed payments from Arch Real Estate to a worker at Rever, a business not associated with Arch Real Estate.

35.     The accountant confirmed that Simpson was using company funds from Arch Real Estate to pay JJ Arch expenses. She confirmed that he took Arch Real Estate money to pay auto employees and that he owed Arch Real Estate money. She also confirmed that due to extreme lack of staff there was minimal accounting of funds.

36.     JJ Arch earned its operating income from a flow of acquisitions of new properties and property management fees. For example, it earned income from finance fees from brokering loans on new acquisitions and new deals, property management fees for overseeing the properties that were owned by Arch, and construction fees on its development of properties acquired by Arch.

37.     Before 2022, Arch owned approximately 5500 units around the country, but in 2022 it sold approximately 2000 of the units, thus lessening its base for property management fees. The rise in interest rates also made Arch unable to acquire new properties to be able to earn income from finance and construction fees. Without this income, Arch was forced to lay-off employees, but without these employees, it could not properly manage the properties spread-out in different states, thus causing the properties to start failing from mismanagement.

38.     In other words, the investors were being harmed by Arch remaining as the property manager because Arch could not maintain the economies of scale required to properly run the properties once it sold many of the units in 2022. And with the real estate markets faltering, Arch also no longer had the regular income from financing fees on acquisitions by which it otherwise obtained income, or construction fees from developing newly acquired properties.

45

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM   INDEX NO. 158055/2023
NYSCEF DOC. NO. 212                                              RECEIVED NYSCEF: 10/13/2023
24-10381-jpm   Doc 62-4   Filed 04/01/24   Entered 04/01/24 17:11:00   Exhibit 3 to
Declaration of Jason Nagi   Pg 47 of 63

39.     And into these dire circumstances, Simpson's erratic, volatile, and abusive behavior only made the situation worse. For example, Arch's construction entity, Arch Builders, LLC, had a staff of seven people on the ground, plus people in the office, including project managers and executives. Beginning in the summer of 2022, these people were either abused and quit or were fired by Simpson. That left no one track budgets and no one to oversee or handle Arch's ongoing construction projects, leading to the projects to fail.

40.     Chassen, and others at JJ Arch, including Jason Paul and Michelle Miller, JJ Arch employees/junior partners, regularly suggested to Simpson that Arch outsource property management to independent third-party property managers who had the necessary economies of scale to oversee the properties and ensure that the investor's assets were adequately managed and protected. But JJ Arch would have less revenue by doing so, and would become a mere investment holding company, something that Simpson's ego and self-interestedness could not tolerate, even at the expense of the investors whose interests he was supposed to protect.

41.     With properties failing, funds running out, and investors unprotected, in July 2023, even Simpson appeared to recognize that he should walk away and give control to Arch Real Estate's investor member, 35 Oak, who had the funds to right the ship but were not willing to continue funding a black hole where their money just disappeared into Simpson's mismanagement. On July 13, 2023, he sent a proposal through Michelle Miller, a JJ Arch employee/junior partner, to 35 Oak to "unwind" Arch. In the proposal, among other things, 35 Oak would take over ownership of JJ Arch after 60 days, and Simpson would execute a separation agreement. A true and correct copy of the July 13, 2023 email chain is annexed hereto as **Exhibit D**.

42.     Later that day, Simpson responded to the email to say, among other things, "[w]e sent this email this AM seeking feedback on a path forward for everyone . . . I urge you to reply

46

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM INDEX NO. 158055/2023
NYSCEF DOC. NO. 212 24-10381-jpm Doc 62-4 Filed 04/01/24 Entered 04/01/24 17:11:00 Exhibit 3 to RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi Pg 48 of 63

and get to a conclusive agreement below by tomorrow, as we set up timeframes in the proposal for

a particular reason. *If not, we will have to take more extreme measures to exercise Dissolution via*

*the Agreement.*" *Id.* (emphasis added). Simpson recognized, expressed of course as a threat, that

his remaining at the company would lead to the destruction of the company.

### 35 Oak's Response Enrages Simpson

43.     For its own reasons, 35 Oak responded via its counsel, Haynes and Boone, LLP, on

July 19, 2023 that they would agree to a proposal whereby, among other things, "Jeff immediately

steps away from active day-to-day management of Arch and its subsidiaries and relinquishes

authority to act on behalf of Arch and its subsidiaries . . . [and] [t]he JJ Operating Agreement is

amended such that Jared has sole control over JJ." A true and correct copy of this email is annexed

hereto as **Exhibit E**.

44.     Chassen had no knowledge of 35 Oak's deliberations, or that it was going to make

this proposal to Simpson, but now understands that 35 Oak made this proposal that Chassen have

sole control of JJ Arch, rather than 35 Oak itself as suggested by Simpson, because 35 Oak was

concerned it might face financial liability on its Arch loan agreements if neither Simpson nor

Chassen were in control of JJ Arch. The proposal that Chassen be placed in charge, however,

enraged, Simpson, and he appears to have believed that, though he himself made the proposal to

35 Oak to walk away in their stead, that Chassen somehow was behind their counterproposal that

Chassen be placed in charge of JJ Arch instead. Chassen was not.

45.     Rather, 35 Oak recognized that unlike Simpson, Chassen was and is a thoughtful,

careful, diligent and stable person who acted with his fiduciary duties foremost in his mind and

who could be trusted as a steward and fiduciary.

47

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
NYSCEF DOC. NO. 212

INDEX NO. 158055/2023

RECEIVED NYSCEF: 10/13/2023

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 49 of 63

### Simpson Becomes Fixated on His Battle with 35 Oak, Which He Escalates, and Chassen Acts to Protect Arch

46.     Simpson's relationship with 35 Oak then deteriorated even more and he engaged in a campaign of extortion, abuse, and threats that led 35 Oak to file an action in federal court against him. *See 608941 NJ Inc. v. Jeffrey Simpson*, 1:23-cv-07089-AT (S.D.N.Y.). A true and correct copy of the Complaint is annexed hereto as **Exhibit F**.

47.     In the beginning of August, Chassen again told Simpson, the company should transition to third-party management. He responded that he would not do that because he did not want to have to rely on 35 Oak's money with whom he was fighting.

48.     As detailed in 35 Oak's Complaint, as well the emails and documents attached to it showing the extensive deterioration of Simpson's relationship with Arch Real Estate's investing partner, Simpson's breached his fiduciary duties to 35 Oak and Arch Real Estate by: (1) threatening to stop work on time sensitive matters in order to blackmail 35 Oak; (2) directing counsel for Arch Real Estate not to speak to 35 Oak; (3) making misrepresentations to 35 Oak, and entering agreements at 35 Oak's expense without consent; (4) falsely advising 35 Oak that it had made capital calls to other investors to induce 35 Oak to make capital contributions; (5) threatening to fire Arch Real Estate employees and cease operations if 35 Oak did not provide money; (6) refusing to execute documents unless terms were included that would only benefit him; (7) entering into major decisions without 35 Oak's consent; (8) creating a hostile business atmosphere damaging critical relationships with lenders, contractors, tenants, etc.; and (9) making defamatory statements.

49.     Simpson's battle with 35 Oak continued escalating. On or about August 3, 2023, Simpson told Chassen that if 35 Oak "didn't stop messing" with him, he was going to file for bankruptcy on all the properties and "blow the company up." This, of course, was prohibited by

the operating agreements, and further demonstrated to Chassen that Simpson was entirely focused

on himself and his petty battle with 35 Oak.

50.     After 35 Oak's counterproposal, Simpson wanted Chassen to take a pay-cut,

apparently on the delusional purported belief that such a pay-cut would make him not have to rely

on 35 Oak or would demonstrate his loyalty to Simpson. When Chassen suggested that he might

accede to such a pay-cut if both were to do so, Simpson refused and grew further enraged.

51.     Chassen learned on August 4, 2023 that Simpson was going to terminate Chassen

and free himself to destroy the company and misappropriate company assets at will. Chassen then

acted to protect the company.

52.     On August 5, 2023, Simpson sent Chassen an email with the subject line "Jared

Chassen - Resignation of JJ Arch LLC." In this email, he "advised" Chassen that he had been

"forced to resign as a Member" of the Arch Entities and would no longer be affiliated with the

Arch Entities or any of its affiliates "effective immediately."

53.     Simpson's email to remove Chassen as a Member of JJ Arch did not comply with

the JJ Arch Operating Agreement. Under the Agreement, the resignation of a Member occurs when

"a Cause Event has occurred with respect to a Member and the other Member has delivered written

notice thereof to such Member requiring such Member to resign." Ex. A at § 1.1 ("Resignation").

A Cause Event, as defined in the Arch Operating Agreement, includes, but is not limited to, "(i)

willful misconduct in relation to the business or affairs of [the Arch Entities]," "(ii) breach of

fiduciary duty in relation to the business or affairs of [the Arch Entities]," "(iii) gross negligence

in relation to the business or affairs of [the Arch Entities] which results in a material loss to [the

Arch Entities] or its Members," and "(v) misappropriation of [the Arch Entities' funds or

property]." Ex. A at § 1.1 ("Cause Event").

49

54.     Simpson made no allegation that would constitute a Cause Event warranting Chassen's resignation. In fact, all Chassen's actions have been to protect the company and its assets. Simpson's purported notice removing Chassen as a Member of the Arch Entities was nothing more than a blatant attempt to wrest sole control and management of the Arch Entities to insulate himself from his bad acts and render himself a dictator, without any checks or balances.

55.     To protect the Arch Entities from further damage, on August 6, 2023, Chassen sent Simpson an email with the subject line "Limited Liability Company Operating Agreement of JJ Arch LLC/Cause Event Notice" and an attachment titled "Notice JJ Arch." In the Notice, Chassen rejected all of Simpson's assertions in the August 5, 2023 resignation email, and his purported forced resignation of Chassen as a Member of JJ Arch, noting that that he had not done any conduct that would constitute a Cause Event because "no such conduct occurred." A true and correct copy of the termination letter is annexed hereto as **Exhibit G**.

56.     Chassen then informed Simpson, as required by the JJ Arch Operating Agreement, that Simpson had committed multiple Cause Events that fall into the willful misconduct and breach of fiduciary duty categories identified in the JJ Arch Operating Agreement, including "(a) directing lawyers for one or more Subsidiaries to stop work on extremely time sensitive matters for [his] own personal leverage, (b) making various misrepresentations to [35 Oak] and other investors to induce them to invest in deals and contribute additional capital to Subsidiaries, (c) misapplying Company resources for [his] personal use, (d) breaching [his] fiduciary duty under the LLC Agreement by *inter alia* failing to obtain [my] consent required for certain decisions as required under the LLC Agreement, (e) engaging in willful misconduct as to the business and affairs of the Company . . . [and] (f) engaging in gross negligence, which [would] result in material loss as to the business and affairs of the Company …" *Id*.

50

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
NYSCEF DOC. NO. 212

INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 52 of 63

57.     Chassen advised Simpson that, as a result of these Cause Events, he had to resign, and no longer had the right to act on behalf of the Arch Entities.

58.     Further, Simpson's resignation was independently mandated by the JJ Arch Operating Agreement's provision that makes it a resignation event if the member fails to devote "substantially all business time for JJ Arch." Ex. A at 5. Notice is not a prerequisite to resignation for a failure to provide "substantially all" business time to JJ Arch, *id.*, as notice is only required for Cause Event.

59.     On August 6, 2023, 35 Oak also sent Simpson an email with the subject line "Limited Liability Company Operating Agreement of Arch Real Estate Holdings LLC/Cause Event Notice" and an attachment titled "Notice from 35 Oak to JJ Member (Final)." 35 Oak advised Simpson that he had committed multiple Cause Events that fall into the willful misconduct and breach of fiduciary duty categories identified in the JJ Arch Operating Agreement.

### Simpson Files this Action and is Restored to His Managerial Position by an Injunction

60.     In response to his resignation from JJ Arch, on August 14, 2023, Simpson, individually and derivatively, as managing member of JJ Arch, sued derivatively as managing member of Arch and JJ Arch, Chassen and First Republic Bank.

61.     On August 21, 2023, the Court entered an Interim Order which restored Simpson to his managerial position but required that "[b]oth Simpson and Chassen shall maintain access to view the Arch Accounts online, and such access shall not be terminated without further order of the Court." A true and correct copy of the Interim Order is annexed hereto as **Exhibit H**. The Interim Order further provided that the "JJ Arch shall be managed in accordance with Section 3.1 of the Limited Liability Company Operating Agreement of JJ Arch LLC, dated December 11, 2017, as amended by Amendment No. 1 dated May 22, 2021." *Id.* That is, the Court ruled that "the

51

business, affairs, and assets of JJ Arch shall be managed by Simpson, subject to the limitations set

forth in Section 3.2 of the JJ Arch Operating Agreement, which provides among other things that

any Company Major Decision, as defined in the JJ Arch Operating Agreement, shall be undertaken

only with the prior written consent of Chassen." *Id.* The Court expressly ruled that "The August

2023 instruments sent by Simpson and Chassen to the other purportedly resigning or terminating

the other as a member or managing member of JJ Arch are hereby void and of no force or effect .

. ." *Id.* Importantly, the Interim Order provided that "Simpson and Chassen shall cooperate with

each other in good faith to facilitate the effective exercise of their respective roles and

responsibilities under the JJ Arch Operating Agreement and related agreements. . ." *Id.*

### Simpson Further Breaches His Fiduciary Obligations and Violates the Court's Orders, Including by Purporting to Again Terminate Chassen

62.     Simpson began violating the Interim Order right from the get-go. He immediately

rehired Tristan Last, an employee who had resigned the day after Chassen removed Simpson for

cause and increased her salary without seeking my consent even though Chassen's consent was

required. He hired a new IT company without Chassen's consent at an expense that required

Chassen's consent.

63.     He then moved all employees away from Chassen's desk, leaving Chassen on the

outskirts of the office space, and clearly intending to show staff that Chassen was no longer a co-

member of the company. While Chassen complied with the Interim Order and gave him access to

Office.com, Dropbox, Go daddy, he then used that access to read all of Chassen's emails, including

those with Chassen's counsel, and deleted Chassen's emails.

64.     Simpson also stopped paying JJ Arch bills that are connected to Chassen's credit.

For example, JJ Arch has 3 Arch trucks that are used for Arch builder entities, and Chassen

received a call from each credit company this week that payments are not being made and they are

in collections. Likewise, JJ Arch's company Visa card, Divvy, is under Chassen's credit, and Simpson removed Chassen from these accounts even though these accounts are tied to Chassen's credit. Chassen also received calls that payments are not being made on these accounts.

65.    Simpson then shut off Chassen's access to his emails, Dropbox, all company systems, and bank accounts.

66.    He demanded that Chassen consent to switch banks from First Republic, without explanation or reason, something that especially frightening considering his repeated misappropriation of company assets and the fact that Chassen would then be unable to view the accounts as required by the Interim Order.

67.    He began telling employees and third-party partners that Chassen was no longer a member of JJ Arch and started defaming him to them.

68.    On September 1, 2023, he sent another formal forced resignation letter even though the Court has just nullified both August letters and directed the parties to cooperate. This September 1, 2023 letter was predicated on false claims and was a contempt of court. It was the product of Simpson's vindictiveness and scorched earth campaign to salvage his bruised ego at the price of the Arch Entities.

### Simpson Continues to Breach his Fiduciary Obligations and Ignores Additional Court Orders Even After Chassen Files A Contempt Motion

69.    On September 14, 2023, Chassen moved to hold Simpson in contempt of Court and to direct Simpson to restore him to JJ Arch and company systems. On September 15, 2023, the Court issued a temporary restraining order, restored Chassen, and barred any further unilateral terminations. A copy of the Court's order is annexed hereto as **Exhibit I**.

70.    Even then, Simpson continued to disobey the courts orders by (1) hiring three new employees without obtaining Chassen's consent, and actually firing employees he perceives as

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM INDEX NO. 158055/2023
NYSCEF DOC. NO. 212 24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to    RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi    Pg 55 of 63

allied with Chassen; (2) opening new bank accounts at Citizens Bank without giving Chassen full access to those accounts; (3) refusing to give Chassen signing authority on bank accounts, taking the position that the orders do not require him to do so; and (4) refusing to give Chassen's full access to Juniper Square, JJ Arch's investor portal. Simpson also directed employees at Arch not to talk to Chassen and has refused to share information with Chassen.

71.     Simpson's defiance of the Operating Agreement and the Supreme Court's orders constitute independent breaches of fiduciary duty.

### Chassen Discovers that Simpson Failed to Disclose Huge Tax and Investment Losses to Investors

72.     On or about September 29, 2023, Chassen discovered that Simpson had completely breached his fiduciary obligations with respect to recent IRC Section 1031 tax exchange vehicles that Simpson advocated investors join. Chassen has just been personally hit with hundreds of thousands of dollars in unexpected tax liability that he learned of in the past few days and must pay by October 15, 2023—as have dozens of other investors—because of Simpson's complete dereliction of his managerial role, as well as his failures to adequately disclose risks to investors or adverse information.

73.     As stated above, in 2022, Arch sold approximately 2000 units and after these units were sold, Arch reached out to investors asking if they wanted to reinvest the money from the sale into other potential properties into IRC Section 1031 tax exchange vehicles, without adequately disclosing the risks that such tax benefit might not be obtained. Chassen along with numerous others did so, though Simpson put only minimal proceeds from the sale into these new vehicles.

74.     Rather than inform investors that the IRC Section 1031 tax exchanges had failed, and that investors would face huge tax liabilities, Simpson hid the information, it only coming to Chassen's attention, and other investors' attention, as investors began to get hit with massive tax

bills from the sale. Many investors have yet to learn of their tax liability, as their gains from the 2022 sale is reported as ordinary income, though their K-1s are not being sent out before their tax filing deadlines. Simpson has attempted to cover-up his failures through misleading communications to investors.

75.    And to top it off, Simpson put the funds into properties he is causing to fail by his insistence on mismanaging them, thus not only foisting on investors unexpected and hidden tax liability now, but the imminent complete loss of their investments.

## **Demand Futility**

76.    Chassen did not make a pre-suit demand because such demand would be futile. Simpson is the acting as the sole managing member and is himself accused of the wrongdoing alleged herein. He is interested in the transactions alleged herein, and has, as alleged herein, completely abdicated his fiduciary responsibilities. Simpson is incapable of making an impartial decision as to whether to bring this suit against himself. Accordingly, any demand requirement is futile and excused.

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**
**(Breach of fiduciary duty against Simpson-derivative claim on behalf of JJ Arch)**

77.    Chassen repeats each of the proceeding allegations as if fully set forth herein.

78.    Chassen has standing to bring a derivative claim on behalf of JJ Arch because he is a member.

79.    Simpson, as the managing member of JJ Arch, owes JJ Arch fiduciary duties, including the duty of loyalty and good faith.

80.    Simpson breached his fiduciary duties to JJ Arch, by among other things, (1) misappropriating JJ Arch's assets; (2) engaging in abusive behavior towards JJ Arch employees

55

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 212
24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi    Pg 57 of 63

and personal and investors; (3) knowingly and utterly mismanaging JJ Arch and its properties for his own self-interest, (4) failing to maintain internal controls, (5) failing to devote his business time to JJ Arch; (6) issuing misleading disclosures; (6) refusing to provide books and records to investors even though obligated to do so, and otherwise knowingly taking decision that breached JJ Arch's fiduciary obligations and expose it to liability; (7) making decisions that were harmful to JJ Arch and investors for self-interested reasons; (5) failing to make adequate disclosures to investors; (6) unlawfully attempting to terminate Chassen; (7) failing to obtain Chassen's consent prior to taking major decisions; and (8) refusing to take necessary steps to prevent JJ Arch's properties from failing and going into default.

81.    Simpson's breaches of fiduciary duty have damaged JJ Arch.

82.    Plaintiff is entitled to recover its damages, in an amount to be determined a trial, but estimated to exceed the Commercial Division minimum.

### SECOND CAUSE OF ACTION
### (Breach of fiduciary duty against Simpson-derivative claim on behalf of Arch Real Estate)

83.    Chassen repeats each of the proceeding allegations as if fully set forth herein.

84.    Chassen has standing to bring a derivative claim on behalf of JJ Arch because he is a member of JJ Arch, which in turn is the managing member of Arch Real Estate.

85.    Simpson, as the managing member of JJ Arch, owes Arch Real Estate fiduciary duties, including the duty of loyalty and good faith.

86.    Simpson breached his fiduciary duties to Arch Real Estate, by among other things, (1) misappropriating Arch Real Estate's assets; (2) engaging in abusive behavior towards Arch Real Estate employees and personal and investors; (3) knowingly and utterly mismanaging Arch Real Estate and its properties for his own self-interest, (4) failing to maintain internal controls, (5) failing to devote his business time to Arch Real Estate; (6) issuing misleading disclosures; (6)

refusing to provide books and records to investors even though obligated to do so, and otherwise

knowingly taking decision that breached his fiduciary obligations and exposed Arch Real Estate

to liability; (7) making decisions that were harmful to Arch Real Estate and investors for self-

interested reasons; (5) failing to make adequate disclosures to investors; (6) unlawfully attempting

to terminate Chassen; (7) failing to obtain Chassen's consent prior to taking major decisions; and

(8) refusing to take necessary steps to prevent Arch Real Estate's properties from failing and going

into default.

87.      Simpson's breaches of fiduciary duty have damaged Arch Real Estate.

88.      Plaintiff is entitled to recover its damages, in an amount to be determined a trial,

but estimated to exceed the Commercial Division minimum.

### THIRD CAUSE OF ACTION
### (Breach of fiduciary duty against Simpson-direct claim)

89.      Chassen repeats each of the proceeding allegations as if fully set forth herein.

90.      Simpson, as the managing member of JJ Arch, owes Chassen fiduciary duties,

including the duty of loyalty and good faith.

91.      Simpson breached his fiduciary duties to Simpson, by among other things, (1)

entering into the Amended JJ Arch Operating Agreement by coercion, duress, and undue influence;

(2) unlawfully attempting to terminate Chassen, (3) denying Chassen access to books and records,

(4) failing to make adequate disclosures to Chassen, (5) knowingly making decisions that were

harmful to Chassen for self-interested reasons; (6) failing to obtain Chassen's consent prior to

taking major decisions; and (7) refusing to take necessary steps to prevent Chassen's investments

from failing and going into default.

92.      Simpson's breaches of fiduciary duty have damaged Chassen.

93. Plaintiff is entitled to recover its damages, in an amount to be determined a trial, but estimated to exceed the Commercial Division minimum.

## FOURTH CAUSE OF ACTION
**(Declaratory Judgment that JJ Arch Amended Operating Agreement is void on grounds of unconscionability, lack of consideration, and undue influence-direct claim)**

94. Chassen repeats each of the proceeding allegations as if fully set forth herein.

95. There is a justiciable controversy between Simpson and Chassen whether the JJ Arch Amended Operating Agreement is a valid and binding agreement or is void as the result of unconscionability, lack of consideration, and undue influence.

96. The Amended JJ Arch Operating Agreement by which Simpson purported to retain sole managerial authority after December 11, 2021 is void because it is unconscionable, was not supported by consideration, and is the product of undue influence.

97. Simpson was in a confidential relationship with Chassen, was Chassen's mentor, and held enormous power over him. Simpson took advantage of his relationship of trust with Chassen.

98. Despite Chassen vocalizing his disagreement, Simpson presented him with the Amendment on a take-it-or-leave-it basis, threatening him that he would remove him from the business entirely if he did not sign the Amendment.

99. Chassen signed the Amendment under undue pressure and threats. Simpson pressured Chassen not to hire his own counsel to review the Amendment and limited his involvement in calls Simpson took with the shared Arch Entities' counsel David Heymann who Simpson had draft the amendment in his favor, while Heymann purported to represent both of them. Chassen was not disclosed Hyemann's actual conflicts, and he did not execute any conflict waiver.

58

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 60 of 63

100.     Because of their unequal bargaining power, prior relationship, Simpson's threats, and deceptive and coercive tactics, and the parties' confidential relationship, Chassen lacked meaningful choice in entering into the Amendment, and it was procedurally unconscionable. And the Amendment itself was substantively unconscionable as it contained only favorable terms to Simpson.

101.     The Amendment and gave away Chassen's managerial rights as well as his membership percentage under the Operating Agreement for nothing of value and was unsupported by consideration. It is therefore void for lack of consideration.

102.     The Amendment was the product of undue influence, including abuse and deception and is therefore void as the product of undue influence.

103.     Further, given Chassen relationship of trust and confidence with Simpson, the burden is on Simpson to establish that he did not enter the Amended JJ Arch Operating Agreement by undue influence or coercion, which burden he cannot meet.

104.     Chassen lacks an adequate remedy at law.

105.     The Court should enter a judgment declaring that the Amendment is void and that under the Operating Agreement, Chassen is a managing member of JJ Arch.

### FIFTH CAUSE OF ACTION
### (Declaratory judgment against Simpson-direct claim)

106.     Chassen repeats each of the proceeding allegations as if fully set forth herein.

107.     There is a justiciable controversy between Simpson and Chassen whether Chassen properly terminated Simpson because of his misconduct, breaches of fiduciary duty, and failure to devote substantially all his business time to JJ Arch.

59

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:50 PM    INDEX NO. 158055/2023
NYSCEF DOC. NO. 212    24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to    RECEIVED NYSCEF: 10/13/2023
Declaration of Jason Nagi    Pg 61 of 63

108.     As alleged herein, Simpson has breached his fiduciary duties to Chassen, JJ Arch, Arch Real Estate, and investors, and these breaches constitute Cause Events under the JJ Arch Operating Agreement, each warranting Simpson's resignation.

109.     Chassen lacks an adequate remedy at law.

110.     The Court should enter a judgment declaring that Chassen lawfully terminated Simpson, that Simpson may be terminated, and that Simpson is no longer a member of JJ Arch.

### SIXTH CAUSE OF ACTION
### (Permanent Injunction against Simpson-Direct Claim)

111.     Chassen repeats each of the proceeding allegations as if fully set forth herein.

112.     Simpson has breached his fiduciary duties to Chassen, JJ Arch, Arch Real Estate, and investors.

113.     These breaches constitute Cause Events under the JJ Arch Operating Agreement, each warranting Simpson's resignation.

114.     Absent injunctive relief, Simpson is liable to continue to purport to act as the managing member, or member, of JJ Arch.

115.     Chassen faces irreparable injury if Simpson continues to act as managing member or member of JJ Arch.

116.     Chassen lacks an adequate remedy at law.

117.     The Court should enter a judgment permanently enjoining Simpson from acting as a member or managing member of JJ Arch.

### <u>CLAIMS FOR RELIEF</u>

**WHEREFORE**, plaintiff demands judgment as follows:

(a) On the First Cause of Action, awarding compensatory damages in an amount to be determined at trial, plus pre-judgment interest.

60

24-10381-jpm    Doc 62-4    Filed 04/01/24    Entered 04/01/24 17:11:00    Exhibit 3 to
Declaration of Jason Nagi    Pg 62 of 63

(b) On the Second Cause of Action, awarding compensatory damages in an amount to be determined at trial, plus pre-judgment interest.

(c)  On the Third Cause of Action, awarding compensatory damages in an amount to be determined at trial, plus pre-judgment interest.

(d)  On the Fourth Cause of Action, declaring that the Amendment is void and that under the Operating Agreement, Chassen is a managing member of JJ Arch.

(e)  On the Fifth Cause of Action, declaring Chassen lawfully terminated Simpson, that Simpson may be terminated, and that Simpson is no longer a member of JJ Arch.

(f) On the Sixth Cause of Action, permanently enjoining Simpson from acting as a member or managing member of JJ Arch.

(g) Awarding Plaintiff all costs and expenses incurred in this action, including, but not limited to, its reasonable attorneys' fees; and

(h) Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 13, 2023

AIDALA, BERTUNA & KAMINS, P.C.

By: *John M. Leventhal*

John M. Leventhal, Esq.
546 Fifth Avenue - Sixth Floor
New York, New York 10036
(212) 486-0011 / (212) 750-9700
judgeleventhal@aidalalaw.com

*Counsel for Defendant Chassen*

Allen Schwartz, Esq. (of-counsel to Aidala, Bertuna & Kamins, P.C.)

61

## VERIFICATION

State of New York

County of Westchester

    Jared Chassen, duly deposed, swears under penalty of perjury that I have reviewed the annexed answer and affirm that the contents are true to the best of my knowledge, unless stated on information and belief, and those allegations I believe to be true.

By: _____
         Jared Chassen

Sworn and subscribed before me

On this 13th day of _____, 2023

_____
Notary Public

STACY FRENCH
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01FR6187456
Qualified in WESTCHESTER County
Commission Expires May 19, 20__

62