KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000
Sean C. Southard, Esq.
Brendan M. Scott, Esq.
ssouthard@klestadt.com
bscott@klestadt.com

-and -

SCHWARTZ LAW PLLC
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JJ ARCH LLC,<br><br>              Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 24-10381 (JPM) |

**OMNIBUS REPLY OF JARED CHASSEN TO CERTAIN OBJECTIONS AND
RESPONSES FILED IN RESPONSE TO CHASSEN'S MOTION FOR ENTRY OF AN
ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO
CERTAIN CORPORATE GOVERNANCE DISPUTES, AND/OR (II) MODIFYING
THE AUTOMATIC STAY AS NECESSARY IN ORDER TO ADDRESS
<u>SUCH CORPORATE GOVERNANCE DISPUTES</u>**

Jared Chassen ("<u>Mr. Chassen</u>"), by and through his respective undersigned counsel, submits this omnibus reply (the "<u>Reply</u>") to (a) the Omnibus Objection of JJ Arch LLC (the "<u>Debtor</u>" or "<u>JJ Arch</u>") [ECF No. 60] (the "<u>Debtor's Objection</u>") and (b) the Omnibus Response

of Jeffrey Simpson ("Mr. Simpson") [ECF No. 62] (the "Simpson Response"), to Mr. Chassen's motion [ECF No. 40] (the "Stay Relief Motion") for entry of an order (i) confirming that the automatic stay imposed in the above-captioned bankruptcy case (the "Chapter 11 Case") does not apply to certain corporate governance disputes and membership issues (as further described therein) (the "Governance Disputes") involving Mr. Chassen and Mr. Simpson, and relating to the Debtor and Arch Real Estate Holdings LLC ("AREH") and/or (ii) modifying the automatic stay as necessary in order to address such Governance Disputes before the New York County Supreme Court, Commercial Division (the "Commercial Division") in the event that this Court finds that the automatic stay may be implicated by the Governance Disputes. In support of the Reply, Mr. Chassen respectfully states as follows:

## PRELIMINARY STATEMENT

After grandstanding at the recent discovery conference before the Court and accusing Mr. Chassen of legal gamesmanship for his filing the Stay Relief Motion, Mr. Simpson caused the Debtor to file a notice of removal of the State Court Action[1] on April 1, 2024 in a not so veiled effort to further delay and frustrate determination of the Governance Disputes before the Commercial Division. Significantly, in light of the latest removal maneuver by Mr. Simpson (and ostensibly the Debtor) and at least until this Court considers a forthcoming motion to remand or abstain from hearing the matter, the Existing State Court Orders are now live and effective before this Court by operation of Federal Rule of Bankruptcy Procedure 9027(i). To the extent that the automatic stay might have once prevented parties in interest from acting in accordance with the terms of those Existing State Court Orders while the State Court Action remained before the Commercial Division, Mr. Simpson's removal of the State Court Action to this Court terminated

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Stay Relief Motion.

2

the applicability of the automatic stay and permits parties in interest to act in accordance with their terms.

There is no doubt that Mr. Simpson's efforts to usurp the Debtor's corporate authority without leave of the Commercial Division clearly violated the Existing State Court Orders. While Mr. Simpson has staked out a legal theory that Mr. Chassen voluntarily resigned from JJ Arch, Mr. Chassen vehemently disputes those allegations. Indeed, Mr. Simpson already tested this voluntarily resignation theory in arguments before the Commercial Division. After hearing the same, the Commercial Division determined to enjoin Mr. Simpson from attempting to resign Mr. Chassen.

## REPLY

1.  Shortly before filing the Debtor's Objection and the Simpson Response (collectively, the "Oppositions"), Mr. Simpson caused the Debtor to file a notice of removal before the Commercial Division pursuant to 28 U.S.C. §§1334 and 1452 and Federal Rule of Bankruptcy Procedure 9027 (the "Notice of Removal") seeking to remove the State Court Action to this Court.

2.  The Oppositions both seek to frame Chassen, AREH and Oak as greedy wrongdoers who conspired to harm the Debtor and its value prospects through "prejudicial restructuring transactions without transparency" until Mr. Simpson so boldly acted to place this Debtor in the Chapter 11 Case and shine light on these important Governance Disputes to help the Debtor's creditors and other parties in interest. Debtor's Objection, ¶ 6. Nothing could be further from the truth and the Existing State Court Orders make that clear.

3.  The Oppositions likewise attempt to justify the Chapter 11 Case as a vehicle "to conduct an evidentiary hearing to determine, on a final basis, the validity of the parties' various Cause Event notices so that the restructuring of the Debtor, AREH and other Arch Companies may

3

proceed in an equitable manner." Debtor's Objection, ¶ 8. By admitting that (a) Mr. Simpson is seeking a more favorable ear for the Governance Disputes which were so clearly being addressed by the Commercial Division prior to this Chapter 11 Case, and (b) the Debtor's only asset is its consent rights in relation to certain non-debtor assets that Mr. Simpson would like to exert leverage over, the Oppositions essentially concede the facts in favor of Mr. Chassen. There is no meaningful prospect of a reorganization for the Debtor here. Instead, it seems that Mr. Simpson's real objective is to use the Chapter 11 Case to inflict such economic pain on the parties to the Commercial Division proceeding that they relent, allowing him to escape the consequences for his misconduct and mismanagement of AREH and the Debtor. The stated purpose of this Chapter 11 Case—to halt certain transactions that the Debtor claims will negatively affect it—doesn't make much sense. The Debtor lacks any obvious economic interest in the properties that AREH manages, so if this Court were to intervene as requested, it would advance no legitimate economic interest of the Debtor, and only impair the rights and interests of non-debtor parties.

A. **The Debtor's Pre-Bankruptcy Governance Status Quo Exists Pursuant to the Existing State Court Orders**

4. Notwithstanding the present potential mootness of at least a portion of the Stay Relief Motion and with all rights reserved concerning the pending removal by Mr. Simpson and the Debtor, the Existing State Court Orders are binding on the Debtor, AREH, and other parties in interest. Rule 9027(i) of the Federal Rules of Bankruptcy Procedure provides that "[a]ll injunctions issued, orders entered and other proceedings had prior to removal shall remain in full force and effect until dissolved or modified by the court." *See also In re Briarpatch Film Corp.*, 281 B.R. 820, 830 (Bankr. S.D.N.Y. 2002) (stating "the fact that a State action may technically be removed at a late stage and even after judgment has been entered does not, in the bankruptcy

4

context, invalidate the principle that the bankruptcy court is bound to respect State court orders and judgments").

5. As set forth in the Stay Relief Motion and supporting declaration of Mr. Schwartz, the consistent theme of the Existing State Court Orders over the months of litigation between the parties is that neither of the Debtor's Members was permitted to take unilateral action to deprive the other of rights absent further relief from the Commercial Division.

6. Specifically, on November 22, 2023, the Commercial Division granted Mr. Chassen's motion for a preliminary injunction and affirmed that the August 21, 2023 Order Regarding Interim Operating Procedures (NYSCEF Doc. No. 36) remained in effect and ruled that:

(1) Simpson's September 1, 2023 purported termination letter to Chassen is void and shall not take effect;

(2) During the pendency of this litigation and subject to further order of the Court:

   a. **Simpson and Chassen are enjoined from unilaterally seeking to terminate or force the resignation of the other member without permission of the Court**;

   b. Simpson shall not deny Chassen online viewing access of any Arch Accounts;

   c. Neither Simpson nor Chassen shall review without permission, and neither Simpson nor Chassen shall authorize others to review without permission, each other's private e-mails unless they are produced during discovery;

   d. Simpson and Chassen shall cooperate in good faith to ensure that each of them have authorization from applicable banks to execute JJ Arch bank transactions, which transactions remain subject to the terms and restrictions of the applicable operating agreements;

Schwartz Decl. Ex. K, Nov. 22, 2023 Preliminary Injunction (emphasis added).

7. On October 27, 2023, the Commercial Division entered an interim order in connection with Oak's motion to intervene, and again affirmed that "[t]he Interim Order (NYSCEF Doc. No. 36), the TRO (NYSCEF Doc. No. 86), and the Preliminary Injunction (NYSCEF Doc. No. 159) . . . remains in full force and effect." Schwartz Decl. Ex. M, Oct. 27, 2023 Interim Order.

8. On November 3, 2023, the Commercial Division granted a TRO providing that "pending the hearing of this Order to Show Cause, Defendants [Mr. Simpson and the Debtor] be, and they hereby are, restrained and enjoined from acting as the managing member of AREH." Schwartz Decl. Ex. O, Nov. 3, 2023 Signed Order to Show Cause.

9. On November 22, 2023, the state court granted a preliminary injunction (the "November PI") that provided among other things "that, during the pendency of this action and subject to further order of the Court, Jeffrey Simpson and JJ Arch LLC are enjoined from:

   a. Acting as (or holding themselves out to third parties to be) managing members of Arch Real Estate Holdings LLC ("AREH"), and Oak shall continue to act in their stead as AREH's sole managing member in accordance with Section 7.1 of the Limited Liability Operating Agreement of AREH (the "Operating Agreement"), owing all applicable duties to AREH and its members;

   b. Denying prompt consent to any Major Decision proposed by Oak as Managing Member under Section 7.1.3 of the Operating Agreement unless *both* JJ Arch members (Jeffrey Simpson and Jared Chassen) jointly agree to deny such consent (or alternatively, either JJ Arch member may convey consent);

   c. Making any filings with the New York City Department of Buildings or any other similar regulatory authorities in any jurisdictions on behalf of AREH or any of its subsidiary entities; and

   d. Otherwise interfering with Oak's ability to exercise its responsibilities as Managing Member of AREH.

Schwartz Decl. Ex. Q, Nov. 22, 2023 Preliminary Injunction. Thus, under the November PI, Mr. Chassen could exercise the Debtor's consent rights to major decisions at AREH if Mr. Simpson refused to consent.

6

10. On February 7, 2024, the Commercial Division issued a TRO that barred Mr. Simpson and those acting in concert with him "from selling, transferring or encumbering JJ Arch assets, or assets owned or controlled by the JJ Arch Controlled Entities, without Chassen's written consent under Section 3.2 of the JJ Arch Operating Agreement (as amended), which consent shall not be unreasonably withheld; (2) making distributions to themselves from JJ Arch or the JJ Arch Controlled Entities' accounts in a way that contravenes Article 5 of the JJ Arch Operating Agreement (as amended); and (3) using JJ Arch's or the JJ Arch Controlled Entities' funds, or other money drawn directly from JJ Arch or JJ Arch Controlled Entities' accounts to make payments to counsel representing Simpson in a personal capacity." Schwartz Decl. Ex. R, Feb. 7, 2024 Signed Order to Show Cause.

11. Further, the Commercial Division ordered that Simpson "shall (1) ensure and continue to ensure that Chassen is provided with online viewing access for all bank accounts of JJ Arch and the JJ Arch Controlled Entities, and (2) provide and continue to provide Chassen with the JJ Arch and the JJ Arch Controlled Entities' books and records under the process detailed in Section 6 of the JJ Arch Operating Agreement." *Id.* The Commercial Division again affirmed its preliminary injunctions dated November 22, 2023. *Id.* The motion is scheduled for an evidentiary hearing to commence on June 6, 2024. *Id.*

12. On February 7, 2024, the Commercial Division entered an order denying Mr. Simpson's motion to vacate or modify the injunction removing the Debtor as managing member of AREH and declined Mr. Simpson's request to modify the November PI ruling which allowed Mr. Chassen to consent to AREH's major decision on behalf of the Debtor. The Commercial Division then set a June 6, 2024 evidentiary hearing for the Member Termination Disputes. Schwartz Decl. Ex. S, Feb. 7, 2024 Signed Order to Show Cause.

7

13. On February 22, 2024, Mr. Simpson sought an emergency stay from the Appellate Division, First Department of that part of the November PI removing the Debtor as managing member of AREH which allowed Mr. Chassen to consent to major decisions on behalf of the Debtor even if Mr. Simpson refused to consent. Schwartz Decl. at ¶ 35. The emergency stay request was denied by the Appellate Division, First Department, and the motion referred to a panel. Schwartz Decl. Ex. R, Feb. 22, 2024 Appellate Division, First Department Order.

14. On March 7, 2024, Mr. Simpson put the Debtor into this Chapter 11 Case without seeking or obtaining Mr. Chassen's consent, claiming that Mr. Simpson was the sole member of the Debtor despite their ongoing internal corporate governance dispute and the numerous Existing State Court Orders.

15. As set forth in the Stay Relief Motion, it was clear to Mr. Chassen and all of the parties in interest prior to the Chapter 11 Filing that neither he nor Mr. Simpson could take unilateral action with the effect of disrupting governance rights, altering membership status or otherwise disrupting the operational status quo of the Debtor and AREH without first obtaining relief from the Commercial Division. To whatever extent Mr. Simpson's prior conduct proceeded from the premise the Existing State Court Orders need not be obeyed, Mr. Simpson and the Debtor have now undisputedly (and perhaps unwittingly) returned the parties to the prepetition corporate governance status quo through the removal and operation of Bankruptcy Rule 9027(i).

B. **The Governance Disputes Between the Debtors' Members Do Not Directly Affect Property of the Estate.**

16. The Oppositions both attempt to bolster the propriety of Mr. Simpson's latest strategy causing the Notice of Removal by arguing that the "identity of the managing member in control of the Debtor-in-possession and the Debtor's assets and the Debtor's AREH Consent Rights" are interests of the Debtor in property affected by a determination of the Governance

8

Disputes between the Debtor's Members. Debtor's Objection, ¶34. The Oppositions also make various arguments about the "core" nature of the Governance Disputes and then attempt to defend what they presume will be a forthcoming motion by Mr. Chassen asking this Court to remand or abstain from hearing the Governance Disputes.

17. With all rights reserved by Mr. Chassen to bring such a motion in the coming days, the Governance Disputes are clearly non-core matters involving disputes between the Debtor's Members. The Debtor is not a party to the Debtor's Operating Agreement and therefore not a party to the dispute between its members regarding which of Mr. Simpson and Mr. Chassen, if not both, remain as a member of the Debtor. Neither of the Debtor's Members are in bankruptcy and the Debtor is only in bankruptcy because one of the Debtor's Members violated the Existing State Court Orders and declared himself to have the sole authority to file this Chapter 11 Case.

18. Moreover, there is nothing here for this Debtor to restructure. There is only a lengthy and continuing dispute over who are the Debtor's Members and who should therefore be in control. The Simpson Response admits as much when it says: "the individual controlling Debtor (and therefore, Debtor's control of AREH), has the keys to the Arch family of companies." Simpson Response, ¶ 1. Again, this statement just highlights the position asserted by Mr. Chassen that there is no actual property of this Debtor to reorganize or restructure. Rather, the entire Chapter 11 Case is about Mr. Simpson attempting to forum shop for a potentially more sympathetic ear on the Governance Disputes he was so clearly losing and which were otherwise scheduled to be decided by the Commercial Division in June of this year.

**C.  The Debtor's Creditors Are Actually Harmed by the Consumption of Limited Estate Resources**

19. Setting aside that there appears to be no real prospect of a reorganization for this Debtor, the creditors of this estate are actually being harmed by Mr. Simpson's use of the Debtor

to fight his battle over control. Mr. Chassen believes that the costs to litigate the Governance Disputes should be borne by the Debtor's Members (as was the case prepetition), not the creditors of the Debtor.

20. Per Mr. Simpson's sworn statement in the Debtor's schedules of assets and liabilities, the Debtor's creditor body is comprised of just six (6) creditors with approximately $136,000 in total unsecured debt.[2] No doubt, the potential administrative claims occasioned by the filing of this Chapter 11 Case will soon dwarf the total debt owed to the creditors that Mr. Simpson and the Debtor purport to be concerned with protecting.

## CONCLUSION

**WHEREFORE**, Mr. Chassen respectfully requests that this Court enter an order consistent with the relief requested herein.

Dated: April 4, 2024

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

*/s/ Sean C. Southard*
Sean C. Southard
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
ssouthard@klestadt.com
bscott@klestadt.com

-and-

**SCHWARTZ LAW PLLC**
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

---

[2] Notably, Mr. Simpson's former state court counsel Adam Leitman Bailey, P.C. is a purported creditor of the Debtor and that single claim represents approximately 94% of the total debt in this Chapter 11 Case. Mr. Chassen questions whether and to what extent this claim is even a valid debt against the Debtor, as opposed to an obligation of Mr. Simpson.

10

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2024, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case as noted below.

**VIA CM/ECF:**

**Brian S. Masumoto brian.masumoto@usdoj.gov**

**Eric Huebscher ehuebscher@huebscherconsulting.com**

**Scott Griffin sgriffin@grifflegal.com**

**Frank Eaton featon@grifflegal.com**

**Nagi, Jason Jason.Nagi@offitkurman.com**

**Dawn Kirby dkirby@kacllp.com**

**Allen Schwartz allen@allenschwartzlaw.com**

**Adam Friedman AFriedman@olshanlaw.com**

**Jonathan T. Koevary JKoevary@olshanlaw.com**

**Katherine E. Mateo, KMateo@olshanlaw.com**

**Leslie Thorne leslie.thorne@haynesboone.com**

**Richard Kanowitz Richard.Kanowitz@haynesboone.com**

**Aishlinn Bottini Aishlinn.Bottini@haynesboone.com**

**Nathan E. Denning, NDenning@wiggin.com**

**Kate Cassidy kcassidy@wiggin.com**

**Nestor Rodriguez Smyt nrodriguezsmyt@wiggin.com**

**Andrew Ritter ARitter@wiggin.com**

**William C. Heuer wheuer@westermanllp.com**

**Jacob Fromkin jfrumkin@coleschotz.com**

                                              */s/ Sean C. Southard*
                                              Sean C. Southard