**OLSHAN FROME WOLOSKY LLP**
Adam H. Friedman
Jonathan T. Koevary
Katherine Mateo
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
afriedman@olshanlaw.com

*Attorneys for Arch Real Estate Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JJ ARCH LLC,<br><br>                       Debtor.[1] | Chapter 11<br>(Subchapter V)<br><br>Case No. 24-10381 (JPM) |

**REPLY IN FURTHER SUPPORT OF ARCH REAL ESTATE HOLDINGS LLC'S MOTION FOR ENTRY OF AN ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO CERTAIN CORPORATE GOVERNANCE DISPUTES, AND/OR (II) MODIFYING THE AUTOMATIC STAY AS NECESSARY IN ORDER TO ADDRESS SUCH CORPORATE GOVERNANCE DISPUTES**

---

[1] The last four digits of the Debtor's federal tax identification number is 4251.

12434460-1

Table of Contents

Page

Preliminary Statement ......................................................................................................................1

Reply ...............................................................................................................................................2

    I.    The Oppositions Do Not Rebut the Motion's Assertions Concerning the Debtor's Lack of an Economic Interest ....................................................................2

    II.   Removal Reinforces the Preliminary Inunction's Applicability .............................5

    III.  AREH Reserves on Responding to the Opposition's Removal, Remand, and Abstention Arguments. .....................................................................................6

    IV.  AREH Reserves on Replying to the Automatic Stay Arguments ...........................6

Conclusion ......................................................................................................................................6

i

Arch Real Estate Holdings LLC ("AREH"), by and through its undersigned counsel, respectfully submits this reply (the "Reply") in Response to (i) the Omnibus Objection of the above captioned debtor (the "Debtor") dated April 1, 2024 [Dkt. No. 60] (the "Debtor's Opp") and (ii) the Omnibus Response of Jeffrey Simpson ("Simpson" and together with the Debtor, the "Objectors") dated April 1, 2024 [Dkt. No. 62] (the "Simpson Opp." and together with the Debtor's Opp. the "Oppositions") to AREH *Motion (i) confirming that the automatic stay does not apply to certain corporate governance disputes and/or (ii) alternatively, modifying the automatic stay as necessary in order to address such governance disputes before the New York County Supreme Court, Commercial Division* dated March 25, 2024 [Dkt. No. 38] (the "Motion")[2] and in further support of the Motion and respectfully states as follows:

Preliminary Statement

1. At issue is the exercise of a consent right that is at the center of an essentially two-party partnership dispute, which up until the chapter 11 filing, was being dealt with in due course before the Commercial Division. With the Preliminary Injunction that unseated Simpson from his position of power at AREH as the most poignant example, the proceedings before the Commercial Division have decidedly not gone Simpson's way. So, in violation of the numerous orders entered in the Commercial Division and without regard to veracity in support of its chapter 11 filings, Simpson caused the Debtor to file for chapter 11 bankruptcy. Unfortunately, with the institution of this chapter 11 case, there are now many non-debtor parties and non-debtor assets, none of which the Debtor (or AREH) owns or will recover any value from, that are adversely impacted.

2. However, as the Debtor's most recent maneuver, the filing of a notice of removal, makes clear, Simpson will do whatever it takes not to return to the state trial court or appellate

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

12434460-1

courts, where he has lost at every turn. When AREH joined the motion to dismiss, Simpson caused the Debtor to respond with massive discovery requests. When AREH filed the instant motion for stay relief, after the Court raised it as a consideration and the Debtor agreed the issues were legal in nature, Simpson caused the Debtor to remove the State Court action. The removal is Simpson's latest scheme that seeks to delay and obfuscate.

3. Although AREH intends to seek remand or abstention of removal,[3] the Oppositions ignore that the primary relief sought in the Motion is acknowledgement that the stay ***does not*** apply on account of this being a case concerning ***governance of non-debtor assets*** and recognition of the Preliminary Injunction.

4. Moreover, and perhaps most significant to a quick resolution of the immediate issues, given the removal of the State Court action, the enforceability of the Preliminary Injunction is now beyond dispute because Bankruptcy Rule 9027(i) expressly provides all orders, including any injunctive orders, "remain in full force and effect" upon removal of a state court action to the Bankruptcy Court. AREH thus reserves its rights under, and will comply with, the Preliminary Injunction.

<u>Reply</u>

**I.    The Oppositions Do Not Rebut the Motion's Assertions Concerning the Debtor's Lack of an Economic Interest**

5. It is not disputed that the Debtor has certain membership interests in various LLCs that sit outside of the AREH structure. As it concerns AREH, however, the Debtor's role is the exercise of its consent rights over certain activities of AREH, as prescribed in the AREH Operating Agreement. Fundamentally, the Debtor is a holding company that exists to either manage or

---

[3] Because Simpson caused the removal on April 1, 2024 (four days before the scheduled hearing on this Motion) AREH has sought to convert the originally scheduled hearing date to a status conference to discuss scheduling a hearing date for a removal and abstention motion.

participate in decision-making for wholly separate AREH managed entities, in which neither AREH nor the Debtor itself holds any ownership or equity interest.[4]

6. The Debtor also incorrectly alleged in its First Day Affidavit an 80% interest in AREH (as Debtor and Mr. Simpson have repeatedly represented in their various filings),[5] but this ignores that: (a) AREH itself has no equity in any of the investment entities it controls, merely charging moderate fees to manage them, (b) as acting managing member of AREH, Oak is entitled to a substantial monthly guaranteed payment before AREH distributes any cash to its members, (c) Oak is entitled to a return of millions in unreturned capital from AREH, plus 4% interest, before the Debtor can receive any distributions, and (d) if Oak is successful in establishing its cause event claims against the Debtor, the Debtor forfeits any right to a residual 80-20 split and Oak would have the sole right to any distributions from AREH.

7. Regardless of the ownership of AREH, however, it is significant (and carefully avoided in the Oppositions) that AREH itself owns none of the properties it manages, as noted above.[6] Thus, even if Debtor "owned" 80% of AREH—which it does not—any supposed ownership of AREH does not mean that Debtor has an 80% stake in a multimillion dollar real estate portfolio, as Debtor wants this Court to believe.

8. The purpose of the Debtor's false premise that it is the majority owner of AREH is clear: to create a misimpression not only about the value of the Debtor's assets generally, but to mislead this Court to believe that AREH's decision-making or the disposition of the properties it

---

[4] In this sense, the Debtor's continued operation as a debtor in possession requires that it continue to exercise its decision-making rights. Indeed, from the perspective of a creditor, where such activity has no financial impact on the debtor in any case, there would be no logical opposition to continued operations.

[5] This purported 80% interest proceeds from a mischaracterization of Section 6.1 of the AREH Operating Agreement which, and as established in the Motion, provides that before any 80-20 split of *distributions of cash flow* from AREH may occur, Oak is first entitled to a 4% return on and complete return of all its capital contributions to AREH (which exceeds $3 million), which has not, and realistically cannot, occur.

[6] AREH manages, but does not own, certain real property in which Oak has invested in excess of $50 million.

3

12434460-1

manages have some direct impact on the Debtor's estate. There is no real factual dispute here, however, as even a cursory review of the AREH Operating Agreement dispels Debtor's assertions.

9. For these reasons, Debtor's assertion that this Court must intercede immediately to block certain transactions "which could unwind millions of dollars of value that would inure to the benefit of Debtor" lacks any basis in fact or reality. Debtor's Opp. at ¶ 34.

10. The Oppositions dispute none of the foregoing. They offer no explanation as to the importance of Debtor's restructuring outside of its role in a network of non-Debtor entities. They obscure the separateness of the Debtor from the non-debtor entities by repeatedly referring to the "Arch Companies." [7]

11. Instead, the singular focus on the Commercial Division dispute leaves no question that the entire purpose of Debtor's chapter 11 case—far from any legitimate reorganization—is to have this Court take over the Commercial Division dispute. *See, e.g.,* Debtor's Opp.¶ 8 (requesting "that this court impose an expedited discovery schedule and conduct an evidentiary hearing to determine, on a final basis, the validity of the parties' various Cause Event notices."). Of course, a final determination on the validity of the Cause Event notices—which the Commercial Division already nullified—would decide, as Simpson puts, who "has the keys to the Arch family of companies." Simpson Opp. ¶ 1. Just as the tail wags the dog, the Debtor filed this chapter 11 case articulating nothing to restructure, and is a bare attempt by Simpson (through the Debtor) to seek a do-over of the state court proceedings in this Court. It is through this lens that the Oppositions, and this chapter 11 case as a whole, must be viewed.

---

[7] Nearly all references to restructuring in the Oppositions are qualified in that they refer to the entire enterprise (i.e., "Arch Companies") and not just the Debtor.

4

**II.     Removal Reinforces the Preliminary Inunction's Applicability**

12.     The crux of AREH's argument is that corporate governance issues ***are not*** subject to the automatic stay and neither are non-debtor assets. Motion at 9-11. The Motion seeks an order confirming those rights so that AREH can continue to run ***its*** business and so third parties, such as owners, lenders and title insurers, are confident that they can continue to transact with ***non-debtor owners and non-debtor assets***, which AREH manages and in which the Debtor has no interest.

13.     But now that the case has been removed, the Bankruptcy Rules control. Bankruptcy Rule 9027(i) provides that "[a]ll injunctions issued, orders entered and other proceedings had prior to removal <u>shall remain in full force and effect</u> until dissolved or modified by the court." Fed. R. Bankr. P. 9027(i)(emphasis added). *See, e.g., In re Briarpatch Film Corp.*, 281 B.R. 820, 830 (Bankr. S.D.N.Y. 2002) ("However, the fact that a State action may technically be removed at a late stage and even after judgment has been entered does not, in the bankruptcy context, invalidate the principle that the bankruptcy court is bound to respect State court orders and judgments.").

14.     The Oppositions suggest that nothing can be decided until this Court rules on their assertion that Chassen has resigned (*see, e.g.,* Debtor's Opp. ¶ 28) but those assertions are merely that: assertions. The Debtor's and Simpson's claims will proceed in one forum or another, but, in accordance with Bankruptcy Rule 9027(i), absent a modification of the Preliminary Injunction, the status quo of the Preliminary Injunction—including its very clear provisions concerning consent rights—controls.

15.     Accordingly, and consistent with Bankruptcy Rule 9027(i), AREH will operate in accordance with all orders entered in the Commercial Division, including the Preliminary Injunction that entitles it to undertake Major Decisions with the consent of either Chassen or Simpson.

**III.   AREH Reserves on Responding to the Opposition's Removal, Remand, and Abstention Arguments.**

16.    The Oppositions devote much to in support of their argument that no remand or abstention may be had. AREH submits that it need not herein respond to those arguments as they are not before the Court in the context of the Motion. However, AREH reserves all rights to seek remand, mandatory abstention, permissive abstention, and any other equitable relief. AREH further reserves its rights to argue that this Court does not have subject matter jurisdiction over the litigation or that the litigation is not a core matter.

**IV.   AREH Reserves on Replying to the Automatic Stay Arguments**

17.    AREH reserves all rights to reply to the Opposition's arguments against the lifting of the automatic stay.

## Conclusion

WHEREFORE, AREH respectfully requests that this Court grant AHEH such relief as is just and proper.

Dated: April 4, 2024

**OLSHAN FROME WOLOSKY LLP**
*Attorneys for Arch Real Estate Holdings LLC*

By:  /s/ *Adam H. Friedman*
Adam H. Friedman
Jonathan T. Koevary
Katherine Mateo
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
afriedman@olshanlaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 4, 2024, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case as noted below.

**VIA CM/ECF:**

**Brian S. Masumoto brian.masumoto@usdoj.gov**

**Eric Huebscher ehuebscher@huebscherconsulting.com**

**Scott Griffin sgriffin@grifflegal.com**

**Frank Eaton featon@grifflegal.com**

**Nagi, Jason Jason.Nagi@offitkurman.com**

**Dawn Kirby dkirby@kacllp.com**

**Allen Schwartz allen@allenschwartzlaw.com**

**Leslie Thorne leslie.thorne@haynesboone.com**

**Richard Kanowitz Richard.Kanowitz@haynesboone.com**

**Aishlinn Bottini Aishlinn.Bottini@haynesboone.com**

**Nathan E. Denning, NDenning@wiggin.com**

**Kate Cassidy kcassidy@wiggin.com**

**Nestor Rodriguez Smyt nrodriguezsmyt@wiggin.com**

**Andrew Ritter ARitter@wiggin.com**

**William C. Heuer wheuer@westermanllp.com**

**Sean Southard SSouthard@Klestadt.com**

**Brendan Scott BScott@Klestadt.com**

                                                  */s/ Adam H. Friedman*
                                                  Adam H. Friedman

12434460-1