**OLSHAN FROME WOLOSKY LLP**
Adam H. Friedman
Jonathan T. Koevary
Katherine Mateo
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
afriedman@olshanlaw.com

*Attorneys for Arch Real Estate Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JJ ARCH LLC,<br><br>            Debtor.[1] | Chapter 11<br>(Subchapter V)<br><br>Case No. 24-10381 (JPM) |

**ARCH REAL ESTATE HOLDINGS LLC'S OBJECTION TO
DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER PURSUANT
TO SECTIONS 327(a) AND 329 OF THE BANKRUPTCY CODE, BANKRUPTCY
RULES 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1
AUTHORIZING THE DEBTOR TO EMPLOY AND RETAIN GRIFFIN LLP, AS
<u>GENERAL BANKRUPTCY COUNSEL, NUNC PRO TUNC TO THE PETITION DATE</u>**

---

[1] The last four digits of the Debtor's federal tax identification number is 4251.

12451905-2

Table of Contents

Page

I.    PRELIMINARY STATEMENT ...................................................................1

II.   FACTUAL BACKGROUND .......................................................................4

      A.    Griffin's Representation of AREH and Its Role in the Bankruptcy TRO
            Action and State Court Action...................................................................4

      B.    Griffin LLP's Disregard of the State Court Orders .................................7

      C.    The Debtor Drains AREH's D&O Policy.................................................9

III.  ARGUMENT ...........................................................................................10

      A.    Griffin's Proposed Retention is Materially Adverse to the Interests of
            AREH, its Former Client, in Violation of the New York Rules of
            Professional Conduct Rule 1.9................................................................10

      B.    Griffin Has an Actual Conflict and a Materially Adverse Interest to the
            Estate, in Violation of the Bankruptcy Code .........................................13

            1.    Griffin Represented AREH, a Creditor and Key Party in Interest
                  from October 6, 2023 until November 8, 2023..........................16

            2.    Griffin Was Knowingly Complicit In Bringing an Unauthorized
                  Bankruptcy Petition ...................................................................18

            3.    Griffin Is Depleting AREH's—Its Former Client's—Insurance
                  Coverage .....................................................................................19

      C.    Griffin Should Be Disqualified under 11 U.S.C. § 327(c) Because It Has
            an Actual Conflict of Interest and Objections to the Representation Have
            Been Made ...............................................................................................20

      D.    Griffin's Proposed Ethical Screen and Waiver from the Debtor Does Not
            Remedy the Conflict ................................................................................21

IV.   CONCLUSION.........................................................................................24

V.    RESERVATION OF RIGHTS ..................................................................24

<u>Table of Authorities</u>

<u>Page</u>

CASES

*In re Am. Printers & Lithographers, Inc.*,
    148 B.R. 862 (Bankr. N.D. Ill. 1992) ...................................................................23

*In re Angelika Films 57th, Inc.*,
    227 B.R. 29 (Bankr. S.D.N.Y. 1998) ....................................................................14

*In re BH & P, Inc.*,
    103 B.R. 556 (Bankr. D.N.J. 1989), *aff'd*, 949 F.2d 1300 (3d Cir. 1991) .............14

*In re Black & White Stripes, LLC*,
    623 B.R. 34 (Bankr. S.D.N.Y. 2020) .................................................14, 16, 19, 20

*In re Bryant*,
    No. 11-02749-8, 2011 WL 5909552 (Bankr. E.D.N.C. June 15, 2011) ..................15

*In re Diva Jewelry Design, Inc.*,
    367 B.R. 463 (Bankr. S.D.N.Y. 2007) ..................................................................21

*In re Envirodyne Indus., Inc.*,
    150 B.R. 1008 (Bankr. N.D. Ill. 1993) ..................................................................23

*In re Granite Partners*,
    219 B.R. 22 (Bankr. S.D.N.Y. 1998) ...............................................................13, 21

*In re Jeep Eagle 17, Inc.*,
    No. 09-23708, 2009 WL 2132428 (Bankr. D.N.J. July 13, 2009)..........................23

*In re JMK Constr. Grp., Ltd.*,
    441 B.R. 222 (Bankr. S.D.N.Y. 2010) ..................................................................15

*In re Leslie Fay Cos.*,
    175 B.R. 525 (Bankr. S.D.N.Y. 1994) ..................................................................13

*In re Mercury*,
    280 B.R. 35 (Bankr. S.D.N.Y. 2002) .........................................................14, 15, 19

*In re Pillowtex, Inc.*,
    304 F.3d 246 (3d Cir. 2002)..................................................................................14

*In re Project Orange Assocs., LLC*,
    431 B.R. 363 (Bankr. S.D.N.Y. 2010).....................................................................23

Table of Authorities
(continued)

Page

*In re Relativity Media, LLC*,
No. 18-11358, 2018 WL 3769967 (Bankr. S.D.N.Y. July 6, 2018) .........................................12

*In re Roger J. Au & Son, Inc.*,
65 B.R. 322 (Bankr. N.D. Ohio 1984) ...................................................................................15

*In re WM Distrib., Inc.*,
571 B.R. 866 (Bankr. D.N.M. 2017) ....................................................................................24

*Rome v Braunstein*,
19 F.3d 54 (1st Cir. 1994) ......................................................................................................14

STATUTES

11 U.S.C.
§ 101.......................................................................................................................................13
§ 327................................................................................................................................ passim

OTHER AUTHORITIES

New York Rules of Professional Conduct
Rule 1.9 .......................................................................................................................... passim
Rule 1.10 ........................................................................................................................ passim
Rule 1.15 ..............................................................................................................................7, 8

iii

Arch Real Estate Holdings LLC ("AREH"), by and through the undersigned counsel, hereby files this objection (the "Objection") the *Debtor's Application for Entry of an Order Pursuant to Sections 327(A) and 329 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1 Authorizing the Debtor to Employ and Retain Griffin LLP, as General Bankruptcy Counsel, Nunc Pro Tunc to the Petition Date* (Dkt. No. 73, the "Application").  In support of this objection, AREH represents and states as follows:

## I.    PRELIMINARY STATEMENT

The Debtor's proposed retention of Griffin LLP ("Griffin") in connection with the above-captioned case (the "Chapter 11 Case") presents a classic conflict of interest that is expressly prohibited both by Rules 1.9 and 1.10 of the New York Rules of Professional Conduct and by section 327 of title 11 of the United States Code (the "Bankruptcy Code") because Griffin is not disinterested and maintains an interest adverse to the estate.  As explained in greater detail below, Griffin's prepetition representations of both AREH and Jeffrey Simpson ("Simpson")—which dual representation itself was conflicted—create an untenable and incurable conflict with regard to its independence and duties to these respective former and current clients.  That Griffin's fees are currently being funded by AREH's insurance policy—without its consent—demonstrates and exacerbates the ethical minefield occasioned by Griffin's proposed retention, which is not remotely cured by Wiggin and Dana's ("Wiggin") presence as proposed conflicts counsel.

As this Court is aware, Simpson, the Debtor, and AREH have a fraught history, which has been the subject of contentious litigation in the Commercial Division for the Supreme Court of New York since August 2023 (the "State Court Action"),[2] and now before this Court. Significantly, and as disclosed in the Application, Griffin has previously represented all three of

---

[2] The State Court Action is *Simpson v. Chassen*, Index No. 158055/2023 (N.Y. Co.). Citations to that docket are contained herein as "St. Ct. Action."

the Debtor, AREH, and Simpson.    Apparently recognizing the conflicts inherent in the
simultaneous representation of these three parties—particularly in light of Simpson's misconduct
with respect to AREH—Griffin officially withdrew from his representation of Simpson and the
Debtor, while continuing to represent AREH.  *See* St. Ct. Action, NYSCEF No. 196.  Following
the Debtor's removal as AREH's managing member, as enforced by a November 3, 2023
temporary restraining order (St. Ct. Action, NYSCEF No. 321, the "TRO"), Griffin voluntarily
withdrew from representing AREH, presumably based upon its determination that a conflict of
interest prohibited Griffin from continuing that representation as well.  *See* Dkt. 73, April 5, 2024
Declaration of Scott A. Griffin ("Griffin Decl.") ¶¶ 24, 25; St. Ct. Action, NYSCEF 355.

Griffin now resurfaces in this Chapter 11 Case as proposed counsel for the Debtor, in
complete disregard of its central role in litigating the State Court Action, which involves claims
that Simpson (its former client), acting through the Debtor (its former, now once-again client),
breached fiduciary duties to and substantially harmed AREH (its former client) and AREH's other
member, 608941 NJ Inc. (Oak").  Particularly as the State Court Action has been removed to this
Court, Griffin's proposed retention by the Debtor amounts to switching sides in the middle of an
ongoing litigation.

The New York Rules of Professional Conduct prohibit exactly such a scenario—having
represented AREH through multiple hearings, Griffin cannot objectively counsel the Debtor while
maintaining client confidences to AREH. AREH, likewise, is unable to fairly litigate its claims
against the Debtor given Griffin's insider knowledge of AREH's attorney-client confidences
regarding its potential claims and defenses.  Ethical rules prohibit Griffin from being adverse to
its former client AREH in its disputes against Simpson. *See* Rules 1.9 and 1.10 of the New York
Rules of Professional Conduct.  Again, the retention of Wiggin in no way cures these issues, and

in fact exacerbates them, expanding the unauthorized use of AREH's confidential information to another law firm.

Lastly, the use of AREH's Director and Officer insurance policy (the "D&O Policy") with Great American Insurance Company ("Great American") to fund Griffin's fees on behalf of the Debtor, thereby advancing interests directly adverse to AREH, further compels rejection of the Application.  Besides drawing down the funds available for AREH, this use of the D&O Policy reinforces the conflicted situation Griffin has created.  The Debtor is not a covered person under the policy, while Simpson, as the once the *de facto* managing member of AREH could be personally covered, ***but only with respect to acts, errors, omissions or wrongful acts committed in his capacity as the de facto managing member of AREH***.  Thus, how the Debtor has secured Great American's commitment to fund the Debtor's fees incurred in connection with its restructuring, is a mystery, and the evasive and vague descriptions of the insurance funding in the Application raise serious questions about the basis on which Great American extended the coverage, which the U.S. Trustee likewise finds troubling.

Not only is Griffin's proposed retention prohibited by section 327 and the New York Rules of Professional Conduct Rule 1.9 and 1.10, but the failure to have truly independent, non-conflicted counsel poses a threat to the continued viability of the Debtor's business, as well as the integrity of this bankruptcy case (an issue that has been raised by AREH and other parties in connection with pending challenges to the Petition).  Accordingly, AREH respectfully requests that the Court sustain its Objection, deny the Application, and grant other relief as is just and proper.

## II.   FACTUAL BACKGROUND

**A.    Griffin's Representation of AREH and Its Role in the Bankruptcy TRO Action and State Court Action**

On or around October 6, 2023, AREH retained Griffin in conjunction with the potential preparation, commencement and prosecution of a chapter 11 case for the Arch Companies as part of a comprehensive restructuring for the business.   Griffin Decl., ¶ 20, Ex. 3 (the "AREH Engagement Letter").[3]  Subsequently, October 11, 2023, Griffin made its first official appearance in the State Court Action, entering an appearance for Simpson, the Debtor and AREH, in the State Court Action, notwithstanding that the AREH Engagement Letter made no reference at all to Griffin acting on AREH's behalf in the State Court Action.  Griffin Decl. ¶ 20.  The following day, October 12, 2023, Griffin withdrew its notice of appearance on behalf of Simpson and the Debtor, "recognizing a potential conflict."  *Id.* ¶ 21.  Also on that same day, AREH (then represented by Griffin) removed to Federal Court a separate state court proceeding Oak had filed against Simpson and AREH in which Oak sought (i) access to AREH's books and records, (ii) an equitable accounting, and (iii) injunctive relief enjoining Simpson following through on his threats to put AREH into bankruptcy without Oak's authorization, as required by AREH's Operating Agreement (the "Bankruptcy TRO Action").[4]  *See 608941 NJ Inc. v. Simpson et al.*, New York Supreme Court, New York County – Commercial Division, Index No. 654963/2023.  Griffin went on to represent AREH at various hearings in the State Court Action and Bankruptcy TRO Action, at times

---

[3] AREH received no prior notice that Griffin would exhibit the October 6, 2023 retention agreement between Griffin and AREH in a public filing, which was the first time AREH (under current management) obtained this agreement.
[4] Griffin apparently attributed the Bankruptcy TRO Action to the fact of AREH retaining it, given Griffin's specialty in bankruptcy.  *See* St. Ct. Action NYSCEF No. 281, Transcript of Hearing on October 19, 2023 ("Oct. 19 Tr.") at 29:20-23 (statement of Griffin that "When we got involved, there was an Order to Show Cause or temporary restraining order because I guess my appearance spooked people, right, from filing bankruptcy and for books and records[.]").

apparently speaking for the Debtor and Simpson,[5] even leading the Commercial Division to remind Griffin as to where its loyalties must sit.[6]

On November 3, 2023, based on the misconduct of Simpson and the Debtor, the Judge in the State Court Action entered a TRO enforcing Oak's removal of the Debtor as AREH's managing member pursuant to the AREH Operating Agreement, and installing Oak as AREH's acting managing member.  *Id.* ¶ 22.  Apparently confused as to who its client was after AREH's new management attempted to speak with Griffin, Griffin sought guidance from the Commercial Division as to whether it was required to take direction from AREH still.  *See* Griffin Decl., Ex. 7. The Commercial Division promptly advised that "Counsel for AREH represents the entity, not the former (or current) Managing Member.  Thus, there is no reason why counsel should treat Oak any differently than it treated JJ Member – that is, as the Managing Member of its client.  If that is not workable (ethically or practically) given counsel's relationship with JJ Member or its members, counsel may withdraw or AREH can change counsel."  *Id.*  Griffin elected to withdraw from its representation of AREH on November 8, 2023.  *Id.* ¶¶ 23-24.  Accordingly, between at least October 11, 2023 and November 8, 2023, Griffin represented AREH in the State Court Action, had access to its confidential information, and made representations to the state and federal courts through court appearances and in filings on behalf of AREH.  Nevertheless, and as apparent from Griffin's inquiry to the Commercial Division following the TRO, Griffin's true allegiance was to AREH's managing member and its principal, and not the entity itself.

---

[5] *See* St. Ct. Action NYSCEF No. 374, Transcript of Hearing on November 3, 2023 at 28:6-14 (statement of Griffin representing that Simpson and JJ Arch's conditions for agreeing to JJ Arch's removal as AREH's managing member).
[6] Following Griffin's representations about the negotiations it was facilitating, the Court interjected, "When you say 'we,' you're counsel for the entity. . . And the target right now is the managing member of the entity. I recognize your role sort of straddles both, and you owe -- your obligation is to the entity." Oct. 19 Tr. at 32:5-8.

12451905-2

Given the nature of the allegations in the State Court Action, Griffin's representation of Simpson, the Debtor, and AREH creates a series of conflicts.  While the claims and issues in dispute in the State Court Action are addressed at length in AREH's motion to remand the State Court Action, the critical issues to be decided in that matter can be summarized as revolving around Simpson's misconduct and abuse of his role managing AREH.  Although AREH has not directly pleaded any cause of action against Simpson or the Debtor, by the very nature of the claims—i.e., that AREH was mismanaged—AREH sits adverse to Simpson and the Debtor.  In turn, Simpson and the Debtor have adverse interests to one another (notwithstanding that Simpson is directing counsel for the Debtor), given that Simpson's misconduct also entails breaches of duty owed to the Debtor, as pleaded in Jared Chassen's ("Chassen") Amended Counterclaims. *See* St. Ct. Dkt. NYSCEF No. 392.

While the removal of the State Court Action to this Court amplifies the issue of Griffin's conflicts due to its prepetition involvement in that matter, Simpson and the Debtor have made clear that the purpose of bringing this Chapter 11 Case is to relitigate the State Court Action in a new forum in any case.  *See*, *e.g.*, Dkt. 16, First Day Affidavit of J. Simpson at ¶¶ 34-38 (describing the purpose the Chapter 11 Case as halting the disposition of assets managed by AREH, as permitted by the orders in the State Court Action); Dkt. 60, Debtor's Omnibus Objection to Lift Stay Motions at ¶¶ 8, 35 (asking the Court to "to determine, on a final basis, the validity of the parties' various Cause Event notices" at issue in the State Court Action and arguing the "State Court Action is a core proceeding"); Dkt. 62, Simpson's Omnibus Objection of to Lift Stay Motions at ¶ 1 (urging that "this Court must resolve the questions of who is in control of the Debtor and whether the Debtor is in control of AREH," despite orders in the State Court Action addressing

6

12451905-2

precisely these issues).[7]  Given Simpson and the Debtor's goal of intertwining the State Court

Action into the Chapter 11 Case, even if the State Court Action were remanded back to the

Commercial Division, Griffin's conflict does not resolve.

AREH continues to be prejudiced by Griffin's role in the State Court Action, and now this

Chapter 11 Case.  To this day, AREH lacks insight into the full scope of Griffin's representation

of AREH outside of what can be gleaned from public filings in the State Court Action and

Bankruptcy TRO Action.  AREH has attempted to obtain its file from Griffin pursuant to Rule

1.15 of the Rules of Professional Conduct, which Griffin construed as a request for discovery and

declined to simply comply, inviting a stipulation and an evidentiary hearing.  Moreover, in

rebuffing AREH's request, Griffin inexplicably included Wiggin—supposed "conflict counsel"

for the Debtor—which can have no legitimate voice in a discussion between a client and its former

counsel, and indeed, further demonstrates Griffin's inability to distinguish its obligations between

its former and current clients.

## B.    Griffin LLP's Disregard of the State Court Orders

As has been addressed in previous filings in this matter, namely, Chassen's motion to

dismiss, to which AREH filed a joinder, this Chapter 11 Case was initiated without authorization,

in derogation of clear and express orders entered in the State Court Action.  Given Griffin's active

role in the State Court Action and obvious awareness of the existence and import of the orders,

Griffin's complicity in the authorized filing is all the more shocking.

For instance, the statements in the Petition stating that "Mr. Chassen [] was deemed to have

resigned as a member of JJ Arch, as of August 5, 2023" is flatly contradicted by numerous orders

---

[7] As addressed in the Motion to Remand, Simpson and the Debtor's desire to use this Chapter 11 Case as a vehicle to undo the orders in the State Court Action is improper, and simply highlights Debtor's lack of any restructuring purpose.

12451905-2

in the State Court Action, including the August 21, 2023 Order Regarding Interim Operating Procedures, which deemed "void and of no force or effect" the "August 2023 instruments sent by Simpson and Chassen to the other purportedly resigning or terminating the other as a member or managing member of JJ Arch." St. Ct. Action NYSCEF No. 36. This same order further required that "any Company Major Decision, as defined in the JJ Arch Operating Agreement," which includes filing a voluntary petition for bankruptcy, "shall be undertaken only with the prior written consent of Chassen." *Id.* Likewise, the Commercial Division's November 22, 2023 Amended Decision and Order (the "Preliminary Injunction"), which extended the TRO, was perfectly clear that Chassen remained a member of the Debtor, providing that Simpson and the Debtor are enjoined from, inter alia, "[d]enying prompt consent to any Major Decision proposed by Oak as Managing Member under Section 7.1.3 of the Operating Agreement unless *both* JJ Arch members (Jeffrey Simpson and Jared Chassen) jointly agree to deny such consent (or alternatively, either JJ Arch member may convey consent)[.]" *Id.* (emphasis in original). *See* St. Ct. Action NYSCEF No. 418.

Indeed, when Simpson purported to terminate Chassen a second time, despite the August 21, 2023 Order Regarding Interim Operating Procedures, the Commercial Division reinstated him in separate November 22, 2023 order (the "JJ Arch Member PI"), ordering as follows:

(1) Simpson's September 1, 2023 purported termination letter to Chassen is void and shall not take effect:

(2) **During the pendency of this litigation and subject to further order of the Court:**

**a. <u>Simpson and Chassen are enjoined from unilaterally seeking to terminate or force the resignation of the other member without permission of the Court</u>**;"…

(emphasis added)

St. Ct. Action NYSCEF No. 419.

Nevertheless, assisted by Griffin, on March 7, 2024, Simpson filed its bankruptcy petition on behalf of JJ Arch without seeking or obtaining Chassen's consent in violation of (i) the Debtor's Operating Agreement (*see* Section 3.2), (ii) August 21, 2023 Order Regarding Interim Operating Procedures, (iii) the Preliminary Injunction, and the (iv) the JJ Arch Member PI, among other orders in the State Court Action.  While reasonable diligence by counsel with no prior relationship with the parties should have identified as perjurious statements in the Petition that Chassen is not a member of the Debtor since August 5, 2023, Griffin's actual involvement in the underlying matter leaves no excuse at all.  The filing, and the representations made in in the petition and first day filings contained information Griffin knew was both false and in direct disobedience of the Commercial Division's above-cited orders.

**C.      The Debtor Drains AREH's D&O Policy**

AREH learned for the first time from the Application that its own insurance policy, intended to cover its officers and directors, is somehow financing this Chapter 11 Case, a circumstance the U.S. Trustee likewise recognized as both irregular and concerning.  *See* Dkt. No. 88, U.S. Trustee's Objection and Reservation of Rights to Debtor's Application for an Order Authorizing the Retention of Griffin LLP, as General Bankruptcy Counsel ("U.S. Trustee Objection").  While the peculiar way in which the Debtor is funding this Chapter 11 Case presents an issue regardless of who its counsel is, this unusual circumstance and the fact that Griffin has apparently already received the proceeds of the policy (if only indirectly, after Simpson was reimbursed under the policy after he advanced payment to Griffin).

9

### III.    ARGUMENT

**A.    Griffin's Proposed Retention is Materially Adverse to the Interests of AREH, its Former Client, in Violation of the New York Rules of Professional Conduct Rule 1.9**

Griffin's proposed representation of the Debtor is prohibited by the New York Rules of Professional Conduct Rule 1.9 and 1.10, which govern a lawyer's duties to former clients.  In relevant part, Rule 1.9(a) dictates that:

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

NY ST RPC Rule 1.9(a) (McKinney).  Rule 1.9(c) also makes clear that a lawyer who "formerly represented a client in a matter shall not thereafter: (1) use confidential information of the former client…to the disadvantage of the former client…; or (2) reveal confidential information of the former client protected by Rule 1.6 …." NY ST RPC Rule 1.9 (McKinney).  The New York Rules of Professional Conduct impute conflicts of interest to the entire firm.  Specifically, Rule 1.10(a) confirms that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9…." NY ST RPC Rule 1.10 (McKinney).

AREH's concerns about the existence of a conflict are not merely hypothetical.  In bringing this Application and exhibiting the AREH Retention Letter on a public docket, Griffin has undisputedly breached both prongs of Rule 1.9(c) by disclosing AREH's non-public, confidential strategy of considering potential restructuring.  Griffin Decl. ¶ 15 ("prior to the commencement of the Chapter 11 Case, Griffin LLP was retained by Arch Real Estate Holdings, LLC ('AREH'), the Debtor's majority owned subsidiary, in conjunction with the potential preparation, commencement and prosecution of a chapter 11 case for AREH and certain of its affiliates (together, with the

10

Debtor, the "Arch Companies") as part of a comprehensive restructuring for the overall business enterprise."). The Application includes the AREH Engagement Letter as an exhibit, which details the scope of the retention. *See* Griffin Decl., Ex. 2. Griffin has **never** sought, and AREH has **never** provided, its consent to Griffin or the Debtor to disclose the contents of its attorney-client privileged information, and Griffin included this information for its own advantage. Such disclosure is expressly prohibited by Rule 1.9. NY ST RPC Rule 1.9 (McKinney).

AREH's status as a former client—even without Griffin's breach of its duty in disclosing the AREH Engagement Letter—likewise prohibits Griffin's proposed representation of the Debtor, because such a representation places Griffin directly and materially adverse to the interests of its former client, AREH. The proposed retention thereby violates the New York Rules of Professional Conduct in several ways. First, Griffin previously represented the Debtor, Simpson, and AREH, each of which has seriously adverse interests to the other. Specifically, these Parties have previously litigated (and continue to in this Chapter 11 Case) the consequences of Simpson's misconduct with respect to AREH and the Debtor. Second, this bankruptcy proceeding now encompasses the very proceeding in which Griffin previously represented Simpson and AREH, as the Debtor removed the State Court Action to this Court. Third, Griffin's representations of these parties presented actual conflicts of interest in the State Court Action, which already necessitated Griffin from withdrawing from *each* retention. No explanation has been provided why these conflicts that previously required Griffin's withdrawal in the State Court Action do not require the same result here, especially now that the State Court Action is fully incorporated into the bankruptcy proceeding.

As further evidence that an actual conflict exists, Griffin is withholding from AREH its own client file, with no discernible basis. When AREH sought to obtain its client file—which any

former client is undoubtedly entitled to receive—Griffin treated the request as seeking discovery in this Chapter 11 Case—which it is not—and refused to explain its rationale for not complying. Moreover, despite AREH's request consisting of one from former-client to former-counsel, concerning a prior representation, Griffin included Wiggin in its response, the Debtor's so-called "conflicts counsel," thereby inviting Wiggin into the very conflict it should be steering clear of, and exhibiting a startling lack of awareness of its ethical obligations.[8]  Indeed, Griffin's immediately (and unexplained) adversarial response to its former client's request, in addition to its insertion of the Debtor's co-counsel into the matter, overwhelmingly reflects that when Griffin rejected AREH's request, it was speaking for the Debtor.  This is precisely why Griffin's representation of the Debtor is untenable, perfectly illustrating Griffin's inability to handle its divided loyalty between the Debtor and AREH, and the adverse effects on AREH as a result.

The fact that Griffin withdrew from its representation of AREH does not cure any conflicts, and rather, under the "hot potato" rule, is a conflict itself.  *See In re Relativity Media, LLC*, No. 18-11358, 2018 WL 3769967, at *2 (Bankr. S.D.N.Y. July 6, 2018) ("The theory of the hot potato rule is that the law firm owes a duty of loyalty to its client, and dropping the client so that the law firm can be adverse to the client is just as much a breach of that duty of loyalty as if the law firm were to be adverse to a current client.").

Rather, the *only* way Griffin could even *consider* such a conflicted representation is by first obtaining informed consent, confirmed in writing, from each of these parties.  NY ST RPC Rule

---

[8] AREH reserves all rights to seek the disqualification of Wiggin and object to its retention in any forthcoming application by Debtor to retain Wiggin, including based on its receipt of AREH's confidential and/or privileged information through Griffin or other means.  Moreover, AREH has yet to see the terms or scope of Wiggin's retention. No disclosure of any pre-petition or post-petition payment by the Debtor, insurance or other third-party source was made in relation to that firm.  If Wiggin has received payment from another source, AREH, the U.S Trustee, and certainly the Court should be informed.

12451905-2

1.9(a) (McKinney).  However, Griffin has **not** attempted to obtain such consent from AREH and, even if it did, AREH would refuse to provide such consent.

Accordingly, Griffin cannot proceed with such retention, as per the express requirements of the New York Rules of Professional Conduct Rules 1.9 and 1.10.

## B. Griffin Has an Actual Conflict and a Materially Adverse Interest to the Estate, in Violation of the Bankruptcy Code

Under section 327(a) of the Bankruptcy Code, a chapter 11 debtor may employ "one or more attorneys . . ., *that do not hold or represent an interest adverse to the estate, and that are disinterested persons*[.]"  11 U.S.C. § 327(a) (emphasis added).  Disinterestedness is defined in 11 U.S.C. § 101(14) which provides in part that:

> The term "disinterested person" means a person that (A) is not a creditor, an equity security holder, or an insider;  . . . (C) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).  "The 'materially adverse' standard of section 101(14) incorporated in the disinterestedness test and the 'interest adverse to the estate language in section 327(a) overlap . . . and form a single test to judge conflicts of interest."  *In re Granite Partners*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (citations omitted); *see also In re Leslie Fay Cos.*, 175 B.R. 525, 531-32 (Bankr. S.D.N.Y. 1994) ("Thus, ... 'the twin requirements of disinterestedness and lack of adversity telescope into a single hallmark'" -- the attorney to be employed by the estate may not hold nor represent any "adverse interest.").  "These statutory requirements—disinterestedness and no interest adverse to the estate—serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities."  *Rome v Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994); *In re Black & White Stripes, LLC*, 623 B.R. 34, 50 (Bankr. S.D.N.Y. 2020) ("the

adverse interest test is objective and precludes 'any interest or relationship, however slight, that

would even faintly color the independence and impartial attitude required by the Code and

Bankruptcy Rules.'"); *In re Angelika Films 57th, Inc.*, 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998)

("The determination of adverse interest is objective and is concerned with the appearance of

impropriety.").  The Second Circuit has defined "hold or represent an adverse interest" as:

> (1) to possess or assert any economic interest that would tend to
> lessen the value of the bankruptcy estate or that would create either
> an actual or potential dispute in which the estate is a rival claimant;
> or (2) to possess a predisposition under circumstances that render
> such a bias against the estate.

*In re Black & White Stripes, LLC*, 623 B.R. at 49 (internal citations omitted).

Accordingly, in consideration of section 327(a) and the broader framework of ethical

obligations, "Bankruptcy courts do not have the authority to allow employment of a professional

who has a conflict of interest."  *In re Mercury*, 280 B.R. 35, 55 (Bankr. S.D.N.Y. 2002).  A conflict

is actual and "per se disqualifying, if it is likely that a professional will be placed in a position

permitting it to favor one interest over an impermissibly conflicting interest."  *In re Pillowtex, Inc.*,

304 F.3d 246, 251 (3d Cir. 2002); *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989),

*aff'd*, 949 F.2d 1300 (3d Cir. 1991) (holding that a conflict of interest is "actual" if there is "active

competition between two interests, in which one interest can only be served at the expense of the

other").

Pursuant to these standards, Bankruptcy courts have routinely denied the retention of

conflicted attorneys, such as is proposed here.  *See In re Bryant*, No. 11-02749-8, 2011 WL

5909552, at *3, 7-8 (Bankr. E.D.N.C. June 15, 2011), (holding that counsel may not be retained

under section 327(a) as counsel to both a corporate and an individual debtor simultaneously, where

the individual debtor is "a creditor of the corporate debtor, and is a co-debtor or guarantor (and,

thus, jointly liable) on the majority of the [corporate debtor's] obligations."); *In re JMK Constr. Grp., Ltd.*, 441 B.R. 222 (Bankr. S.D.N.Y. 2010) (holding that law firm and other professionals were disqualified, on adverse interest theory, from simultaneously representing a construction company, its principal, and other individuals associated therewith in their separate chapter 11 cases, based not only upon debtors' continuing right to seek contribution from each other on damages award entered in state court fraud action, but on existence of inter-debtor claims for repayment of prepetition loans.);[9] *In re Mercury*, 280 B.R. 35 (Bankr. S.D.N.Y. 2002), *subsequently aff'd*, 122 F. App'x 528 (2d Cir. 2004) (denying law firm's petition for fees because there was an actual conflict of interest between debtors and the chapter 7 trustee with respect to the settlement of their personal injury action, where it was found to have advised both sides); *In re Roger J. Au & Son, Inc.*, 65 B.R. 322, 326 (Bankr. N.D. Ohio 1984) (disqualifying debtor's counsel who represented the debtor's principal, who owed funds to the bankrupt corporation, in pre-petition matters).

*In re Black & White Stripes, LLC* is instructive. There, the bankruptcy court found a law firm's prior representation of the bankrupt LLC's members, in jointly administered chapter 11 cases in which one of the estate's most significant assets was its avoidance claims against these same members, was a disqualifying conflict that prevented the law firm's employment as general bankruptcy counsel to the debtors. *In re Black & White Stripes, LLC*, 623 B.R. at 51. The law firm attempted to argue that its representation of the members was brief and its scope was adequately limited by the retainer agreement. *Id.* The court rejected that argument, holding that the firm's position was undercut by the plain terms of the state-court retainer, which provided for

---

[9] The JMK court additionally held that "a waiver of conflicts by one party does not trump the requirement that a professional not represent an interest adverse to the estate" under section 327(a). *Id.* at 237. Thus, even if AREH had waived the conflict—which it has not—section 327(a) would still prohibit Griffin's retention.

12451905-2

"review of the entire litigation file and services as may, in [the firm's] opinion, be necessary or proper in connection with that matter." *Id*. The court explained that despite the prior retention being brief, the representation undermined the firm's ability to perform faithfully as bankruptcy counsel. *Id.* at 52. The court found that the prior representation created, at the very least, a potential conflict and it was "worrying that proposed counsel would be so dismissive of such claims." *Id*.

Here, Griffin's conflict exceeds a potential conflict – it has an *actual* conflict of interest for three reasons: 1) its prior attorney-client relationship with AREH; 2) its prior attorney-client relationship with Simpson; and 3) Griffin's materially adversity with AREH due to Griffin receiving the proceeds of AREH's D&O Policy, diminishing AREH's coverage, and using the funds for purposes directly adverse to AREH's interests.

1.    <u>Griffin Represented AREH, a Creditor and Key Party in Interest from October 6, 2023 until November 8, 2023</u>

*First*, the presence of actual conflicts of interest cannot be disputed given that the purpose of this Chapter 11 Case (by Simpson's and the Debtor's own statements) is to relitigate matters already decided in the State Court Action. Thus, if this improper purpose is to be fulfilled, then three parties to this Chapter 11 Case with adverse interests (AREH, Simpson and the Debtor), each a former client of Griffin in the State Court Action, will be litigating these matters through the Chapter 11 Case. That the State Court Action has been removed to this Court likewise forces the issue that Griffin, if retained by the Debtor, has literally switched sides in the middle of a pending lawsuit.

The client relationship with AREH was created no later than October 6, 2023. Griffin's representation of AREH has not been insignificant.

16

The firm represented and counseled AREH in the State Court Action that involved significant (and substantiated) claims of misconduct by Griffin's other clients, Simpson and the Debtor.[10]   Griffin also represented AREH in the Bankruptcy TRO Action.   Together, these representations entailed numerous court appearances and filings, and Griffin made representations about the significant work it was performing to negotiate with lenders on behalf of AREH.  *See* Oct. 19 Tr. at 30:20-32:8.  Given Simpson's substantial misconduct while the Debtor managed AREH (which continued after the Debtor's removal) AREH may have claims as a creditor in the bankruptcy case if it is not dismissed.

Griffin's current position that there is no disqualifying conflict in its representation of the Debtor, despite its prior representations of AREH and Simpson, is completely inconsistent with the firm's position in the State Court Action.   There, Griffin voluntarily withdrew from its representations of Simpson and the Debtor (though it maintained its representation of AREH) due to the glaring conflicts of interest among those parties.  App. ¶ 23 ("On October 12, 2023, recognizing a potential conflict… [Griffin] withdrew its notice of appearance on behalf of Mr. Simpson and JJ Arch….").  After the state court entered a TRO enjoining Simpson and the Debtor from acting as AREH's managing member (following substantial evidence of misconduct by them) and appointed AREH's other member, Oak, (St. Ct. Action, NYSCEF No. 321), Griffin also withdrew from its representation of AREH due to additional conflicts of interest, App. ¶ 26.

---

[10] As reference, the relationship between AREH, the Debtor and Simpson are as follows:  Simpson is the acting managing member of the Debtor pursuant to the Commercial Division's August 21, 2023 Order Regarding Interim Operating Procedures.  *See* St. Ct. Action NYSCEF No. 36.  Debtor, in turn, was the managing member of AREH until the November 3, 2023 TRO, which enforced Oak's removal of the Debtor pursuant to the AREH Operating Agreement.  As noted throughout this Objection, the central issue in the State Court Action concerns Simpson's gross misconduct in managing AREH.  Given the inherent adversity of interests based on these claims, Griffin's former representation of each of these parties in the State Court Action must preclude his acting on behalf of any party in this Chapter 11 Case.

Bizarrely, despite the fact that this bankruptcy case involves **all** of the same parties from the State Court Action (which necessitated Griffin's multiple withdrawals of representation <u>due to actual conflicts</u> of interest), Griffin now maintains that it has **no** conflict representing the Debtor. App. ¶ 16 ("The Debtor, however, does not believe that a cognizable legal or ethical conflict of interest exists in connection with Griffin LLP's representation of the Debtor."). AREH's counsel wrote a letter to Griffin on March 12, 2024 – almost one month before the filing of the Application – expressing serious concerns over the impropriety of the filing of the bankruptcy petition and Griffin's conflicted representation. In this correspondence, AREH's counsel made clear that it does not consent, nor did it ever consent, to this chapter 11 case or any action by Griffin adverse to AREH. Yet, Griffin improperly proceeded on behalf of the Debtor in clear violation of section 327.

2.    <u>Griffin Was Knowingly Complicit In Bringing an Unauthorized Bankruptcy Petition</u>

*Second*, Griffin represented Simpson, in his individual capacity, in connection with the State Court Action. The Debtor has *two* members – the same two members at the core of the litigation. Despite the fact that Simpson is not a 100% owner of the Debtor, Griffin filed a false bankruptcy petition alleging Simpson's 100% ownership, undermining the State Court Orders in a blatant attempt to exaggerate Simpson's power over the Debtor. *See* Petition, Schedule 1; Corporate Ownership Statement ("Mr. Simpson currently owns 100% of the equity interests"). This divided loyalty is ***exactly*** the type of conducted prohibited by section 327 of the Bankruptcy Code. *See e.g., In re Black & White Stripes, LLC*, 623 B.R. at 51 (finding that a law firm's prior representation of the bankrupt LLC's members, in jointly administered chapter 11 cases in which one of the estate's most significant assets was its avoidance claims against these same members, was a disqualifying conflict that prevented the law firm's employment as general bankruptcy

12451905-2

counsel to the debtors.); *In re Mercury*, 280 B.R. at 60 (finding that there was an inherent adversity of interest between the debtor and the Chapter 7 trustee, explaining that "while the differing interests of trustee and debtor may never blossom into open controversy in a particular case, actual conflict may arise on any of a host of matters, such as what is and is not property of the debtor's estate, fraudulent conveyances or other conduct of the debtor before or after filing the petition, challenge to discharge under Section 727(a), the trustee's conduct in pursuing or not pursuing potential assets of the debtor's estate, adversarial discovery proceedings and many other potential sources of conflict.").   Such misconduct by Griffin at the outset of this wrongful bankruptcy proceeding is a mere example of the unavoidable conflicts that will cloud the case if Griffin were retained.

       3.    <u>Griffin Is Depleting AREH's—Its Former Client's—Insurance Coverage</u>

*Third*, Griffin is adverse to AREH because it benefited significantly from drawing down AREH's Directors and Officers insurance policy for work it did for Simpson, in his individual capacity.  This situation is incredible:  Griffin is assisting draws on AREH's insurance policy for payment *in matters where the firm is adverse to its former client, AREH*.  While AREH is still evaluating potential causes of actions and claims against Griffin, Simpson, and the insurer in connection with this highly unusual arrangement, these circumstances clearly establish that Griffin has taken action adverse to his former client, AREH.  Importantly, under AREH's policy, the Debtor is ***not*** an Insured Organization.  Rather, the D&O Policy covers AREH's directors and officers, i.e., its people.  Thus, the only plausible basis on which coverage might extend to the Debtor's legal fees in this Chapter 11 Case is if the issues in this case concern Simpson's liability for alleged misconduct while acting on behalf of AREH.  This as much proves the adversity of interests between AREH and Griffin:  if Griffin is receiving payment from a policy that by its

nature only covers costs reasonably related to the defense of Simpson in the State Court Action, then Griffin must be doing work that is adverse to AREH, given the claims at issue in that matter.

Moreover, and as set forth in the Application, Griffin has received significant payments from AREH's policy, notwithstanding the Application's purposefully evasive language in describing the basis of these payments and even the total amounts. *See* App. ¶ 29. The vague and unexplained nature of these transactions and coverage arrangement caught the U.S. Trustee's attention, who similarly opposes Griffin's retention. *See* U.S. Trustee Objection, Dkt. 88. While the exact circumstances of the payments between Great American, Simpson, the Debtor and Griffin are yet to be disclosed, to whatever extent AREH is effectively financing Griffin's retention, it is a brazen violation of the Bankruptcy Code. *See In re Black & White Stripes, LLC*, 623 B.R. at 49.[11]

For all these reasons, Griffin's proposed retention is barred by section 327(a) and AREH respectfully requests that the Court deny the Application in its entirety.

**C.    Griffin Should Be Disqualified under 11 U.S.C. § 327(c) Because It Has an Actual Conflict of Interest and Objections to the Representation Have Been Made**

Section 327(c) of the Bankruptcy Code provides that "in a case under chapter…11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." 11 U.S.C. § 327(c). Courts in the Second Circuit have defined "actual conflict of interest" in various ways. *See In re Diva Jewelry Design, Inc.*, 367 B.R. 463, 472

---

[11] The lack of any information about how else counsel could be paid except from the D&O Policy, coupled with the assertion by Great American's counsel that it understands the D&O Policy is the only source of funding, creates a substantial risk that Griffin will cater its work to matters the D&O Policy is likely to cover, contrary to its obligation to be disinterested. *See* Declaration of Thomas Mundt, ¶ 6, indicating that "the Debtor lacks the funding to pay for the commencement and prosecution of the Chapter 11 Case."

(Bankr. S.D.N.Y. 2007) ("An actual conflict of interest is an active competition between two interests, in which one interest can only be served at the expense of the other."); *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) ("An actual conflict involves the representation of two presently competing and adverse interests, while a potential conflict occurs where the competition may become active if certain contingencies arise."). Both the U.S. Trustee and a creditor have now objected to the representation of the Debtor by Griffin.

Here, there can be little doubt that AREH and Simpson (acting through the Debtor in this bankruptcy case), are engaged in active competition with each other such that an actual conflict exists. Griffin represented AREH for approximately a month in the State Court Action that forms the impetus for Simpson's bringing this Chapter 11 Case, and now seeks to represent the Debtor, who has adopted material and substantive positions that directly contradict and affect the positions taken by Griffin's former client, AREH. Griffin does so having had access to confidential information of AREH (which Griffin now refuses to return to AREH), without attempting to seek or obtain AREH's consent, and in violation of section 362(a) and (c).

**D.    Griffin's Proposed Ethical Screen and Waiver from the Debtor Does Not Remedy the Conflict**

Conceding that there is an actual conflict with its proposed representation of the Debtor, the Debtor notes that "out of an abundance of caution, the Debtor has proposed to retain Wiggin and Dana LLP ("Wiggin") as co-counsel to the Debtor to address any matters involving AREH and the Debtor in this Chapter 11 Case." App. ¶ 11. "Additionally, the Debtor proposes to have Wiggin address all litigation matters in the Chapter 11 Case on the Debtor's behalf." *Id.* Yet, in the next sentence, it is made clear Griffin and Wiggin will work hand-in-hand, "Griffin LLP and Wiggin will coordinate in connection with all services to be rendered by each firm on behalf of the Debtor to avoid any duplication of efforts." *Id.* This proposed ethical screen—if it can even

21

be called that—does *not* ameliorate Griffin's obligations to comply with Rule 1.9 and section 327, regardless of whether the Debtor consents to the conflicted representation. For one, Rule 1.9 is clear that AREH must provide informed, written consent to Griffin before it can accept an engagement in the same or a substantially related matter in which the interests are materially adverse to the interests of AREH. NY ST RPC Rule 1.9(a) (McKinney). The Debtor cannot unilaterally provide such consent on behalf of AREH. And, as explained above, while its consent has never been requested, AREH has not provided and will not provide such consent. Moreover, absolutely no explanation is provided as to how Wiggin has been guarded from the taint of Griffin's conflicts, or how the concept of conflict counsel was intended to operate under the circumstances. To the contrary, while Wiggin's presence initially appeared as mere window-dressing, Griffin's conduct, including the decision to make Wiggin a party to communications between Griffin and its former client regarding AREH's client file—which has nothing to do with Wiggin—make clear that Wiggin is very much caught up in Griffin's conflicts, and AREH's information is being indiscriminately shared with supposed conflicts counsel.[12]

Even if the representation were allowed under the applicable state professional rules, bankruptcy retention standards are more stringent than general retention standards because, upon commencement of a chapter 11 case, the debtor's counsel represents a fiduciary that owes duties to parties who did not grant the counsel a waiver. *See, e.g., In re Jeep Eagle 17, Inc.*, No. 09-23708 DHS, 2009 WL 2132428, *14 (Bankr. D.N.J. July 13, 2009) ("Consent by a Chapter 11 debtor to waive conflicts is insufficient because the ultimate parties in interest are the bankruptcy estate's creditors."); *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1018 (Bankr. N.D. Ill. 1993)

---

[12] Similarly, Griffin's decision to include the AREH Engagement Letter in the Application—revealing to the world AREH's confidential and privileged information—raises grave doubts about Griffin's judgment and handling of client confidences.

("Multiple representations which may be tolerable in a commercial setting after full disclosure are

not permissible in the bankruptcy setting. Upon the commencement of a chapter 11 proceeding, a

debtor . . . assumes fiduciary duties and obligations to all parties in interest without fear or favor.");

*In re Am. Printers & Lithographers, Inc.*, 148 B.R. 862, 867 (Bankr. N.D. Ill. 1992) ("A firm that

is not disinterested may not represent a debtor even if that debtor has consented to such

representation and waived the conflict.").

Moreover, bankruptcy courts have expressly held that conflicts counsel are no cure all,

especially when the conflict is central to the bankruptcy case and an actual conflict exists, as here.

For instance, in *In re Project Orange Assocs., LLC*, the court distinguished the use of conflicts

counsel in instances of hypothetical and actual conflicts, reasoning, "the use of conflicts counsel

could insulate proposed counsel from hypothetical and speculative conflicts that may arise in the

course of a bankruptcy case with entities that are not central to the debtor's reorganization efforts."

431 B.R. 363, 375 (Bankr. S.D.N.Y. 2010).  In contrast, "where the proposed general bankruptcy

counsel has a conflict of interest with a creditor that is central to the debtor's reorganization . . . .

the use of conflicts counsel does not allow the retention of the Debtor's chosen counsel under

section 327(a)." *Id.*  Similarly, *In re WM Distribution, Inc.*, the court held that the "use of conflicts

counsel is not appropriate where the adverse interests . . . are central to the reorganization efforts

of either debtor or to other resolutions of the chapter 11 case or where the adverse interests are so

extensive that each debtor should have its own independent general bankruptcy counsel."  571

B.R. 866, 873 (Bankr. D.N.M. 2017).  That is precisely the situation here: Simpson and the

Debtor's avowed purpose in this Chapter 11 Case is to avoid the orders issued in the State Court

Action, in essence, seeking to make the State Court Action the central issue in this Chapter 11

Case.  Now, the Debtor has gone a step further and even removed the State Court Action to this

12451905-2

Court.  Given these circumstances, and Griffin's actual conflicts arising from its representation of multiple parties to the State Court Action, the use of conflicts counsel is totally insufficient.

Here, because Griffin has an actual conflict of interest, in violation of professional rules of conduct and section 327, the Debtor's proposed ethical screen and provision of consent from the Debtor does not cure the conflict.  To do so would inherently taint the bankruptcy process and harm the interests of creditors, particularly those with which Griffin has actual conflicts, including AREH.  Accordingly, the Court should prohibit Griffin's retention.

## IV.    CONCLUSION

For the reasons set forth in this Objection, AREH respectfully requests that the Court sustain its objection, deny the Application, and grant other relief as is just and proper.

## V.    RESERVATION OF RIGHTS

This objection is submitted without prejudice to, and with a full reservation of AREH's rights, claims, defenses, and remedies, including the right to amend, modify, or supplement this objection, to raise additional objections, serve and take discovery in advance of any hearing on the Application, and to introduce evidence at any hearing related to the Application and this objection, and without in any way limiting any other rights of AREH to further object to the Application, the retention of any other professional in this action, or any applications for allowance of fees and expenses or to seek disqualification of any professional retained in this case, on any grounds, as may be appropriate.

12451905-2

Dated: New York, New York
      April 19, 2024

                        OLSHAN FROME WOLOSKY LLP

                By:   */s/ Adam H. Friedman*
                      Adam H. Friedman
                      Jonathan T. Koevary
                      Katherine E. Mateo
                      1325 Avenue of the Americas
                      New York, New York 10019
                      (212) 451-2300
                      *Attorneys for Arch Real Estate*
                      *Holdings LLC*

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2024, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case as noted below.

**VIA CM/ECF:**

**Brian S. Masumoto brian.masumoto@usdoj.gov**

**Eric Huebscher ehuebscher@huebscherconsulting.com**

**Scott Griffin sgriffin@grifflegal.com**

**Frank Eaton featon@grifflegal.com**

**Nagi, Jason Jason.Nagi@offitkurman.com**

**Kenneith Flickinger Kenneth.flickinger@offitkurman.com**

**Dawn Kirby dkirby@kacllp.com**

**Allen Schwartz allen@allenschwartzlaw.com**

**Leslie Thorne leslie.thorne@haynesboone.com**

**Richard Kanowitz Richard.Kanowitz@haynesboone.com**

**Aishlinn Bottini Aishlinn.Bottini@haynesboone.com**

**Nathan E. Denning, NDenning@wiggin.com**

**Kate Cassidy kcassidy@wiggin.com**

**Nestor Rodriguez Smyt nrodriguezsmyt@wiggin.com**

**Andrew Ritter ARitter@wiggin.com**

**William C. Heuer wheuer@westermanllp.com**

**Jacob Frumkin jfrumkin@coleschotz.com**

**Sean C. Southard ssouthard@klestadt.com**

**Brendan M. Scott bscott@klestadt.com**

/s/ *Katherine E. Mateo*
Katherine E. Mateo

12451905-2