**OLSHAN FROME WOLOSKY LLP**
Adam H. Friedman
Jonathan T. Koevary
Katherine Mateo
1325 Avenue of the Americas
New York, NY 10019
212.451.2300
afriedman@olshanlaw.com

*Attorneys for Arch Real Estate Holdings LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JJ ARCH LLC,<br><br>      Debtor.[1] | Chapter 11<br>(Subchapter V)<br><br>Case No. 24-10381 (JPM) |

**ARCH REAL ESTATE HOLDINGS LLC'S OBJECTION TO**
**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS**
**327(a), 328 AND 329 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014**
**AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1 AUTHORIZING**
**THE DEBTOR TO EMPLOY AND RETAIN WIGGIN AND DANA LLP, AS**
**CONFLICTS AND LITIGATION COUNSEL,** *NUNC PRO TUNC* **TO THE**
<u>**DATE OF ENGAGEMENT**</u>

---

[1] The last four digits of the Debtor's federal tax identification number is 4251.

12513026-7

Table of Contents

Page

I.  PRELIMINARY STATEMENT ...................................................................................1

II. FACTUAL BACKGROUND ......................................................................................3

III. ARGUMENT ................................................................................................................4

    A.  Legal Standard ..................................................................................................4

    B.  Wiggin's Fee Arrangement Presents a Fatal Conflict of Interest. ....................7

    C.  To the Extent Wiggin is in Possession of AREH's Client Confidences, it is Conflicted From the Representation. .........................................................9

IV. CONCLUSION ...........................................................................................................10

V.  RESERVATION OF RIGHTS ...................................................................................10

i

12513026-7

<u>Table of Authorities</u>

Page

CASES

*In re Angelika Films 57th, Inc.*,
 227 B.R. 29 (Bankr. S.D.N.Y. 1998)..................................................................................5

*In re BH & P, Inc.*,
 103 B.R. 556 (Bankr. D.N.J. 1989), *aff'd*, 949 F.2d 1300 (3d Cir. 1991)..............................6

*In re Black & White Stripes, LLC*,
 623 B.R. 34 (Bankr. S.D.N.Y. 2020)............................................................................5, 6, 9

*In re Grabill Corp.*,
 113 B.R. 966 ........................................................................................................................4

*In re Granite Partners*,
 219 B.R. 22 (Bankr. S.D.N.Y. 1998)...................................................................................5

*In re Hathaway Ranch Partnership*,
 116 B.R. 208 (Bankr. C.D. Cal. 1990)..............................................................................6, 7

*In re Lee*,
 94 B.R. 172 (Bankr. C.D. Cal. 1988)...................................................................................6

*In re Leslie Fay Cos., Inc.*,
 175 B.R. ........................................................................................................................4, 5, 7

*In re Mercury*,
 280 B.R. 35 (Bankr. S.D.N.Y. 2002)...................................................................................6

*In re Nat'l Distributors Warehouse Co., Inc.*,
 148 B.R. 558 (Bankr. E.D. Ark. 1992) .............................................................................6, 7

*In re Pillowtex, Inc.*,
 304 F.3d 246 (3d Cir. 2002).................................................................................................6

*Rome v Braunstein*,
 19 F.3d 54 (1st Cir. 1994)....................................................................................................5

*Simpson v. Chassen*,
 Index No. 158055/2023 (N.Y. Co.) .....................................................................................3

Table of Authorities
(continued)

Page

STATUTES

11 U.S.C.
  § 101 .................................................................................................................5
  § 327 ........................................................................................................... passim

OTHER AUTHORITIES

New York Rules of Professional Conduct
  Rule 1.6 ..............................................................................................................9
  Rule 1.9 ..............................................................................................................9

Arch Real Estate Holdings LLC ("AREH"), by and through the undersigned counsel, hereby files this objection (the "Objection") to the *Debtor's Application for Entry of an Order Pursuant to Sections 327(A), 328 and 329 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1 Authorizing the Debtor to Employ and Retain Wiggin and Dana LLP, as Conflicts and Litigation Counsel, Nunc Pro Tunc to the Date of Engagement* (Dkt. No. 92, the "Application"). In support of this objection, AREH represents and states as follows:

## I. PRELIMINARY STATEMENT

The Debtor's proposed retention of Wiggin and Dana LLP ("Wiggin") as "conflicts and litigation counsel" is an oxymoron since its suspicious third-party payor fee arrangement confirms it is not disinterested and maintains an interest adverse to the estate. The law is clear that the payment of a debtor's professional's fees by a third-party gives rise to a presumption of a conflict of interest, absent a further showing that the third party's and the debtor's interests are aligned. Under that standard, Wiggin is conflicted.

Through a highly unconventional fee arrangement not fully disclosed by the Debtor, AREH's Director and Officer insurance policy (the "D&O Policy") with Great American Insurance Company ("Great American") is being used, over AREH's objection, to fund Wiggin's fees and expenses on behalf of the Debtor. The Debtor is *not* an insured party or covered person under the policy, while Jeffrey Simpson, as the prior *de facto* managing member of AREH, could be personally covered, **but only with respect to acts, errors, omissions or wrongful acts committed in his <u>individual capacity.</u>** Thus, how the Debtor has secured Great American's commitment to fund the Debtor's fees incurred in connection with its restructuring is a mystery,[2] and the evasive

---

[2] AREH is bewildered how Simpson has managed to finagle payment from AREH's insurer to cover the Debtor's legal fees in this Chapter 11 Case when almost 95% of the Debtor's scheduled debt is attributable to legal bills incurred

12513026-7

and vague descriptions of the insurance funding in the Application raise serious questions about the basis on which Great American extended the coverage.

While the law is clear that the Debtor's counsel must owe its allegiance only to the Debtor, Wiggin's source of payment confirms its loyalties are divided and it must be disqualified as conflicted. The policy is *only* for services for Simpson in his individual capacity, which interests may diverge from the best interest of the Debtor and its estate.

For these reasons and those expressed below, Wiggin's retention, as proposed, is prohibited by section 327 of title 11 of the United States Code (the "Bankruptcy Code"). To cure the conflict, AREH proposes that, as a condition for approving its retention, Wiggin be prohibited from accepting payment of its fees and expenses from the D&O Policy and that it identify another source of funding for the bankruptcy case, provided that the alternative arrangement does not pose a conflict.

Additionally, Wiggin cannot serve such a role if it has ever had unauthorized possession of AREH's attorney-client confidences and legal strategies with regard to the Debtor and Simpson. As explained in detail in AREH's *Objections to Debtor's Application for Entry of an Order Pursuant to Sections 327(A) and 329 of the Bankruptcy Code, Bankruptcy Rules 2014 And 2016, and Local Bankruptcy Rules 2014-1 and 2016-1 Authorizing the Debtor to Employ and Retain Griffin LLP, as General Bankruptcy Counsel, Nunc Pro Tunc to the Petition Date* (Dkt. No. X, the "Griffin Objection") between at least October 11, 2023 and November 8, 2023, Griffin – the Debtor's proposed co-counsel to Wiggin – represented AREH in the parallel State Court Action

---

in connection with the State Court Action, and presumably would be covered under the same basis that Simpson secured funding for his other counsel in the State Court Action. *See* Dkt. 31, Debtor's Schedules and Statement of Financial Affairs (reflecting that $128,353.00 of the Debtor's total disclosed liabilities of $136,250.68 is owed to Adam Leitman Bailey, P.C., which entered an appearance on behalf of Simpson, the Debtor and AREH in the State Court Action).

2

12513026-7

(as defined below), had access to its confidential information, and made representations to the state and federal courts through court appearances and in filings on behalf of AREH. To address concerns that Wiggin is in possession of AREH's client confidences and confidential information, as a condition to approval as conflicts counsel, Wiggin should be required to confirm that it has not received AREH's confidential or privileged information from Griffin, Simpson, or otherwise, and should be required to disclose the specific measures it has adopted to avoid the receipt of this information.

## II. FACTUAL BACKGROUND

AREH maintains a director and officer insurance policy with Great American Insurance Company ("Great American"). On or about November 7, 2023, Simpson[3] made a claim against the policy. In a letter to AREH dated November 22, 2023, Great American responded that "***JJ Arch . . . is not the Named Insured and otherwise does not constitute an Operating Entity as defined in the Policy…Accordingly, JJ Arch is not an Insured under the Policy***." *See* Nov. 22, 2023 Letter (emphasis added). Yet incredibly, a few months later, AREH learned for the first time from the *Debtor's Application for Entry of an Order Pursuant to Sections 327(A) and 329 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1 Authorizing the Debtor to Employ and Retain Griffin LLP, as General Bankruptcy Counsel, Nunc Pro Tunc to the Petition Date* (Dkt. No. 73, the "Griffin Application") that its own insurance policy, intended to cover AREH (as the "Insured Organization") and its officers and directors, was financing this Chapter 11 case. The U.S. Trustee, likewise, recognized this circumstance as both

---

[3] As this Court is aware, Simpson, the Debtor, and AREH have a fraught history, which has been the subject of contentious litigation in the Commercial Division for the Supreme Court of New York since August 2023 (the "State Court Action"), and now before this Court. The State Court Action is *Simpson v. Chassen*, Index No. 158055/2023 (N.Y. Co.). While the claims and issues in dispute in the State Court Action are addressed at length in AREH's motion to remand the State Court Action, the critical issues to be decided in that matter can be summarized as revolving around Simpson's misconduct and abuse of his role managing AREH.

3

irregular and concerning. *See* Dkt. No. 88, U.S. Trustee's Objection and Reservation of Rights to Debtor's Application for an Order Authorizing the Retention of Griffin LLP, as General Bankruptcy Counsel ("U.S. Trustee Objection"). In the Application, Wiggin confirms that its fees are to be paid from AREH's D&O Policy as well.

In connection with this Application, Great American's Senior Claims Attorney, Mr. Thomas Mundt, provided a *Lar Dan* declaration, dated April 19, 2024, that Great American "determined to provide chapter 11 funding to the Debtor in order to mitigate against any claims against the Policy. In addition, the Debtor lacks the funding to pay for the prosecution of the Chapter 11 Case." *See* Dkt. No. 92-2 (Mundt Declaration). The peculiar way in which the Debtor is funding this Chapter 11 Case presents a serious issue, and the hazy facts surrounding how it came to be that Simpson convinced the carrier to pay for a non-insured party's bankruptcy costs, against the interests of the primary insured party, and without its knowledge or consent, must be disclosed.

Upon learning that Great American was funding this bankruptcy case, AREH's counsel promptly notified Great American by letter dated April 26, 2024 that its decision to pay uncovered amounts incurred by what it had already deemed an uncovered entity prejudiced its named insured (and other insureds) and defied all logic. In the same letter, AREH demanded that Great American discontinue depleting the policy and allowing payments of the Debtor's costs associated in the bankruptcy case.

### III.    ARGUMENT

#### A.    Legal Standard

The Debtor's counsel owes allegiance to the debtor, not its stockholders, officers or directors. *In re Leslie Fay Cos., Inc.*, 175 B.R. at 532 (citing *In re Grabill Corp.*, 113 B.R. 966,

4

970(Bankr.N.D.Ill.1990)). To that end, under section 327(a) of the Bankruptcy Code, a chapter 11 debtor may employ "one or more attorneys . . ., *that do not hold or represent an interest adverse to the estate, and that are disinterested persons*[.]" 11 U.S.C. § 327(a) (emphasis added). Disinterestedness is defined in 11 U.S.C. § 101(14) which provides in part that:

> The term "disinterested person" means a person that (A) is not a creditor, an equity security holder, or an insider; . . . (C) does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). "The 'materially adverse' standard of section 101(14) incorporated in the disinterestedness test and the 'interest adverse to the estate language in section 327(a) overlap . . . and form a single test to judge conflicts of interest." *In re Granite Partners*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (citations omitted); *see also In re Leslie Fay Cos.*, 175 B.R. 525, 531-32 (Bankr. S.D.N.Y. 1994) ("Thus, ... 'the twin requirements of disinterestedness and lack of adversity telescope into a single hallmark'" -- the attorney to be employed by the estate may not hold nor represent any "adverse interest."). "These statutory requirements—disinterestedness and no interest adverse to the estate—serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994); *In re Black & White Stripes, LLC*, 623 B.R. 34, 50 (Bankr. S.D.N.Y. 2020) ("the adverse interest test is objective and precludes 'any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'"); *In re Angelika Films 57th, Inc.*, 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998) ("The determination of adverse interest is objective and is concerned with the appearance of impropriety."). The Second Circuit has defined "hold or represent an adverse interest" as:

5

12513026-7

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Black & White Stripes, LLC*, 623 B.R. at 49 (internal citations omitted).

Accordingly, in consideration of section 327(a) and the broader framework of ethical obligations, "Bankruptcy courts do not have the authority to allow employment of a professional who has a conflict of interest." *In re Mercury*, 280 B.R. 35, 55 (Bankr. S.D.N.Y. 2002). A conflict is actual and "per se disqualifying, if it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002); *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J. 1989), *aff'd*, 949 F.2d 1300 (3d Cir. 1991) (holding that a conflict of interest is "actual" if there is "active competition between two interests, in which one interest can only be served at the expense of the other"). "Conflicting loyalties produce inadequate representation, which threatens the interests of both the debtor and the creditors, and compromises the ability of the court to mete out justice in the case." *In re Lee*, 94 B.R. 172, 178 (Bankr. C.D. Cal. 1988).

As some bankruptcy courts have ruled, *any* fee payment by a third party to debtor's counsel is an actual conflict of interest, absent a showing that the interests of the third party and the bankruptcy estate are identical, and upon notice to all parties in interest. *See, e.g., In re Nat'l Distributors Warehouse Co., Inc.*, 148 B.R. 558, 561 (Bankr. E.D. Ark. 1992) ("As a general rule, an attorney representing a debtor should not receive compensation from any of the creditors, directly or indirectly.") (internal citations omitted); *In re Hathaway Ranch Partnership*, 116 B.R. 208 (Bankr. C.D. Cal. 1990) (disqualifying debtor's proposed counsel where fees were to be paid

by debtor-limited partnership's non-debtor limited partner for lack of adequate disclosure concerning alignment of interests).

In finding counsel had an actual conflict of interest after accepting payment from a third-party, the *Hathaway Ranch Partnership* court observed that:

> Third parties do not transfer property or funds to an attorney to represent a debtor in possession unless that representation is in the best interest of the third party. It is often the case that the interests of the third party are not identical to the interests of the debtor in possession in its role as fiduciary of the bankruptcy estate. Thus by accepting payment from a third party, the proposed counsel for the debtor in possession necessarily has a conflict of interest in that counsel is serving two masters—the one who paid counsel and the one counsel is paid to represent. I find that this is an actual conflict of interest that disqualifies a professional from being employed pursuant to 11 U.S.C. § 327 **absent a showing that the interests of the third party and the bankruptcy estate are identical** upon notice to all creditors, equity security holders and other parties in interest.

*In re Hathaway Ranch P'ship*, 116 B.R. 208, 219 (Bankr. C.D. Cal. 1990) (emphasis added).

Pursuant to these standards, bankruptcy courts have routinely denied the retention of conflicted attorneys, such as is proposed here. *See id.*; *In re Nat'l Distributors Warehouse Co., Inc.*, 148 B.R. at 564. Here, the interests and fees that the policy covers – for Simpson, in his individual capacity for wrongful acts – are not only not "identical" to the Debtor's, but rather diametrically opposed. *See In re Leslie Fay Cos., Inc.*, 175 B.R. at 532 (Debtor's counsel owes allegiance to the debtor, not its stockholders, officers or directors).

**B.    Wiggin's Fee Arrangement Presents a Fatal Conflict of Interest.**

Wiggin must be disqualified from representing the Debtor because it is conflicted, as made clear by its dubious fee arrangement. Importantly, under AREH's policy, the Debtor is ***not*** an Insured Organization. Rather, the D&O Policy covers AREH as well as AREH's directors and officers, i.e., its people. After Simpson submitted a claim under the D&O Policy, Great American

7

12513026-7

confirmed that even though Simpson could be personally covered, the coverage only extended to ***acts, errors, omissions or wrongful acts committed in his capacity as the de facto managing member of AREH.*** Thus, the only plausible basis on which coverage might extend to the Debtor's legal fees in this Chapter 11 case is if the issues in this case concern Simpson's liability for alleged misconduct while acting on behalf of AREH. The lack of any information about how else counsel could be paid except from the D&O Policy, coupled with the assertion by Great American's counsel that it understands the D&O Policy is the ***only*** source of funding, creates a substantial risk that Wiggin will cater its work to interests the D&O Policy is likely to cover – for Simpson in his individual capacity – contrary to its obligation to be disinterested.

Indeed, this is precisely what appears to be happening. Nothing about this Chapter 11 Case appears to be driven by the Debtor's and its creditors' interests, where the only apparent goal seems to be for Simpson to regain the authorities he was stripped of in the State Court Action, and where the administrative costs almost certainly have exceeded the scheduled debt.

The possibility that Simpson's and the Debtor's interest may diverge in the future (and likely already have), raises serious questions as to how Wiggin (and Griffin) may dedicate its loyalties at that juncture. If the Debtor were to determine it has claims against Simpson, then Great American would ostensibly be funding both the prosecution and defense. That Chassen has brought derivative claims on behalf of the Debtor against Simpson in the State Court Action makes more than just a mere hypothetical. Of course, the present funding arrangement renders it highly unlikely that the Debtor would pursue any such claims against Simpson – despite the evidence that that is exactly what it should be doing – illustrating the problem.

The vague and unexplained nature of this fee arrangement calls into question the very independence and allegiance a debtor's counsel must have. While the exact circumstances of the

8

12513026-7

payments between Great American, Simpson, the Debtor, Griffin, and Wiggin are yet to be disclosed, the information disclosed to date indicates that Wiggin is beholden to Simpson's interests, and not those of the Debtor. That AREH is effectively financing Wiggin's retention renders this brazen violation of the Bankruptcy Code all the more egregious. *See In re Black & White Stripes, LLC*, 623 B.R. at 49.

For these reasons, Wiggin's proposed retention is barred by section 327(a). To cure the conflict, AREH proposes that, as a condition for approving its retention, Wiggin be prohibited from accepting payment of its fees and expenses from the D&O Policy and that it provide another source of funding for the bankruptcy case.

**C.    To the Extent Wiggin is in Possession of AREH's Client Confidences, it is Conflicted From the Representation.**

As AREH covered in painstaking detail in the Griffin Objection, Wiggin's co-counsel, Griffin, is fatally conflicted, in part, due to its prior representation of AREH in the parallel State Court Action involving the same parties from this bankruptcy case. Griffin, thereby, possesses AREH's client confidences and legal strategies with regard to the Debtor and Simpson, among others. Rule 1.9(c) makes clear that a lawyer who "formerly represented a client in a matter shall not thereafter: (1) use confidential information of the former client…to the disadvantage of the former client…; or (2) reveal confidential information of the former client protected by Rule 1.6 …." NY ST RPC Rule 1.9 (McKinney). Because Wiggin's retention is supposed to remedy conflicts in connection with matters adverse to AREH, the alleged conflicts wall is merely a smoke screen if Wiggin has ever had unauthorized possession of AREH's attorney-client confidences and legal strategies with regard to the Debtor, Simpson, or others involved in this bankruptcy case.

In light of these legitimate concerns over Griffin's use of AREH's confidential information, AREH respectfully requests that, as a condition to its retention, Wiggin make a representation to

9

12513026-7

the Court that it has not received any of AREH's attorney-client confidences and legal strategies with regard to the Debtor and Simpson from Griffin, Simpson, or any other source. In addition, AREH requests that Wiggin be required to disclose the specific measures it has adopted to avoid receipt of this information.

## IV.    CONCLUSION

For the reasons set forth in this Objection, before the Court authorizes Wiggin's retention, AREH respectfully requests that the Court 1) prohibit Wiggin from accepting payment from the D&O Policy; 2) order Wiggin to make a representation to the Court that it has not received any of AREH's attorney-client confidences and legal strategies with regard to the Debtor and Simpson from Griffin, Simpson, or any other source; and 3) order Wiggin to disclose the specific measures it has adopted to avoid the receipt of this information.

## V.    RESERVATION OF RIGHTS

This objection is submitted without prejudice to, and with a full reservation of AREH's rights, claims, defenses, and remedies, including the right to amend, modify, or supplement this objection, to raise additional objections, serve and take discovery in advance of any hearing on the Application, and to introduce evidence at any hearing related to the Application and this objection, and without in any way limiting any other rights of AREH to further object to the Application, the retention of any other professional in this action, or any applications for allowance of fees and expenses or to seek disqualification of any professional retained in this case, on any grounds, as may be appropriate.

Dated: New York, New York
      May 7, 2024

OLSHAN FROME WOLOSKY LLP

By: */s/ Adam H. Friedman*
    Adam H. Friedman
    Jonathan T. Koevary
    Katherine E. Mateo
    1325 Avenue of the Americas
    New York, New York 10019
    (212) 451-2300
    *Attorneys for Arch Real Estate Holdings LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2024, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case as noted below.

**VIA CM/ECF:**

**Brian S. Masumoto brian.masumoto@usdoj.gov**

**Eric Huebscher ehuebscher@huebscherconsulting.com**

**Scott Griffin sgriffin@grifflegal.com**

**Frank Eaton featon@grifflegal.com**

**Nagi, Jason Jason.Nagi@offitkurman.com**

**Kenneith Flickinger Kenneth.flickinger@offitkurman.com**

**Dawn Kirby dkirby@kacllp.com**

**Allen Schwartz allen@allenschwartzlaw.com**

**Leslie Thorne leslie.thorne@haynesboone.com**

**Richard Kanowitz Richard.Kanowitz@haynesboone.com**

**Aishlinn Bottini Aishlinn.Bottini@haynesboone.com**

**Nathan E. Denning, NDenning@wiggin.com**

**Kate Cassidy kcassidy@wiggin.com**

**Nestor Rodriguez Smyt nrodriguezsmyt@wiggin.com**

**Andrew Ritter ARitter@wiggin.com**

**William C. Heuer wheuer@westermanllp.com**

**Jacob Frumkin jfrumkin@coleschotz.com**

**Sean C. Southard ssouthard@klestadt.com**

**Brendan M. Scott bscott@klestadt.com**

/s/ *Katherine E. Mateo*
Katherine E. Mateo

12513026-7