**Hearing Date: May 31, 2024 at 11:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: May 24, 2024, at 4:00 p.m. (Prevailing Eastern Time)**

David A. Herman
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500
Facsimile: (212) 698-3599
Email: david.herman@dechert.com

*Counsel to CREC 88 Tower LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JJ ARCH LLC,[1]<br><br>                Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 24-10381 (JPM) |

**NOTICE OF HEARING ON MOTION FOR AN ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE FORECLOSURE OF PROPERTY OWNED BY A NON-DEBTOR ENTITY AND/OR (II) MODIFYING THE AUTOMATIC STAY AS NECESSARY TO ALLOW FOR SUCH FORECLOSURE**

---

[1]    The last four digits of the Debtor's federal tax identification number are 4251.

**PLEASE TAKE NOTICE** that on May 10, 2024, CREC 88 Tower LLC ("CIM") filed the *Motion for an Order (I) Confirming that the Automatic Stay Does Not Apply to the Foreclosure of Property Owned by a Non-Debtor Entity and/or (II) Modifying the Automatic Stay as Necessary to Allow for Such Foreclosure* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested at the Hearing shall: (a) be in writing, stating in writing the reasons therefore; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; and (c) be filed electronically with the Court by **May 24, 2024 at 4:00 p.m. (prevailing Eastern Time)** with paper copies delivered to the chambers of Honorable John P. Mastando III, United States Bankruptcy Court, One Bowling Green, New York, New York 10004-1408, Courtroom 501 and served upon: (i) counsel for CREC 88 Tower LLC, (ii) proposed counsel for the Debtor, (iii) counsel for First Republic, (iv) the United States Trustee, (v) the Subchapter V Trustee, and (vi) any parties required to be served under Rule 9013-1(b) of the Local Bankruptcy Rules or any other applicable Bankruptcy Rule.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion (the "Hearing") will be held virtually before the Honorable John P. Mastando III, United States Bankruptcy Judge for the Southern District of New York, in the United States Bankruptcy Court for the Southern District of New York (the "Court"), located at One Bowling Green, New York, New York 10004, on **May 31, 2024 at 11:00 a.m. (Prevailing Eastern Time)** (the "Hearing Date").

**PLEASE TAKE FURTHER NOTICE** that that the Hearing shall be held via Zoom for Government. Parties wishing to appear at the Hearing, whether making a "live" or "listen only"

appearance before the Court, must make an electronic appearance utilizing the Electronic

Appearance portal located at the Court's website at:

https://ecf.nysb.uscourts.gov/cgibin/nysbAppearances.pl. Appearances must be entered no later

than **May 30, 2024 at 4:00 p.m. (Prevailing Eastern Time)** (the "Appearance Deadline"). After

the Appearance Deadline has passed, parties who have made their electronic appearance through

the Court's website to appear via Zoom for Government will receive an invitation from the Court

with a Zoom link that will allow them to attend the Hearing. Requests to receive a Zoom link

should not be emailed to the Court, and the Court will not respond to late requests that are

submitted on the day of the hearing. Further information on the use of Zoom for Government can

be found at the Court's website at https://www.nysb.uscourts.gov/zoom-video-hearing-guide").

     **PLEASE TAKE FURTHER NOTICE** that the Motion, as well as all other case related

filings can be viewed and/or obtained by (i) accessing the Court's Website for a fee, or (ii) by

contacting the Office of the Clerk of the United States Bankruptcy Court, Southern District of New

York. Please note that a PACER password is required to access documents on the Court's Website.

Dated: New York, New York
      May 10, 2024

Respectfully submitted,

By: */s/ David A. Herman*
   David A. Herman
   **DECHERT LLP**
   1095 Avenue of the Americas
   New York, NY  10036-6797
   david.herman@dechert.com
   Tel:  (212) 698-3500
   Fax: (212) 698-3599

   *Counsel to CREC 88 Tower LLC*

**DECHERT LLP**
David A. Herman
1095 Avenue of the Americas
New York, NY 10036-6797
david.herman@dechert.com
Tel: (212) 698-3500
Fax: (212) 698-3599

*Counsel for CREC 88 Tower LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>JJ ARCH LLC,<br><br>             Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 24-10381 (JPM) |

**MOTION FOR ENTRY OF AN ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE FORECLOSURE OF PROPERTY OWNED BY A NON-DEBTOR ENTITY AND/OR (II) MODIFYING THE AUTOMATIC STAY AS <u>NECESSARY TO ALLOW FOR SUCH FORECLOSURE</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

JURISDICTION AND VENUE ................................................................................... 3

BACKGROUND ......................................................................................................... 4

      A.    CIM Enters Into a Mortgage Loan and Mezzanine Loan Agreements. ................. 4

      B.    The Borrowers Default Under the Mezzanine Loan Agreement. .......................... 4

      C.    The Debtor Has No Direct or Indirect Ownership Interest in the Property. .......... 5

RELIEF REQUESTED .................................................................................................. 7

BASES FOR RELIEF ................................................................................................... 8

I.      The Automatic Stay Does Not Apply to Property Owned by Non-Debtor Entities. ......... 8

II.     In the Alternative, the Court Should Modify the Automatic Stay. .................................... 9

WAIVER OF BANKRUPTCY RULE 4001(A)(3) STAY ...................................... 12

NOTICE ....................................................................................................................... 12

CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: American Media Distributors, LLC*,
216 B.R. 486 (Bankr. E.D.N.Y 1998).......................................................................9

*In re Burrow*,
505 B.R. 838 (Bankr. E.D. Ark. 2013) .................................................................2, 8

*In re Chugach Forest Prod., Inc.*,
23 F.3d 241 (9th Cir. 1994) ....................................................................................8

*In re Containership Co. (TCC) A/S*,
466 B.R. 219 (Bankr. S.D.N.Y. 2012) ...................................................................10

*In re Harmony Holding Grp. LLC*,
655 B.R. 849 (E.D.N.Y. 2023) ...............................................................................9

*In re Hill*,
364 B.R. 826 (Bankr. M.D. Fla. 2007) ..................................................................7

*Matter of Kossoff PLLC*,
No. 21-10699 (DSJ), 2023 WL 3361053 (Bankr. S.D.N.Y. May 10, 2023) ...........10

*In re Neuman*,
92 B.R. 598 (Bankr. S.D.N.Y. 1988).......................................................................8

*Osuji v. Deutsche Bank, N.A.*,
589 B.R. 502 (E.D.N.Y. 2018) ................................................................................9

*Queenie, Ltd. v. Nygard Int'l*,
321 F.3d 282 (2d Cir.2003)......................................................................................9

*In re Sonnax Indus., Inc.*,
907 F.2d 1280 (2d Cir. 1990)................................................................................10

*Teachers Ins. & Annuity Ass'n v. Butler*,
803 F. 2d 61 (2d Cir. 1986)..............................................................................2, 8

*In re U.S. Brass Corp.*,
176 B.R. 11 (Bankr. E.D. Tex. 1994) ....................................................................10

# TABLE OF AUTHORITIES
(continued)

**Page**

**Statutes**

11 U.S.C. § 105..........................................................................................................7

11 U.S.C. § 362........................................................................................................1,9

28 U.S.C. § 157..........................................................................................................3

28 U.S.C. § 1334........................................................................................................3

28 U.S.C. § 1408........................................................................................................3

28 U.S.C. § 1409........................................................................................................3

CREC 88 Tower, LLC (as successor-in-interest to CIM Real Estate Credit, LLC) ("CIM"), an affiliate of CIM Group, submits this motion for entry of an order (i) confirming that the automatic stay does not apply to any steps CIM may take to exercise its rights with respect to the Equity Interests (as defined below) or the property located at 88 University Place, New York NY 10003, including but not limited to conducting a UCC Sale or a mortgage foreclosure; (ii) confirming that neither 88 University Place nor the Equity Interests are property of the estate of JJ Arch LLC (the "Debtor"), and/or (iii) modifying the automatic stay as necessary to permit CIM to conduct a UCC Sale or a mortgage foreclosure or otherwise to exercise its rights with respect to 88 University Place and the Equity Interests.  In support of the requested relief, CIM submits the accompanying declaration of Smith Daley (the "Daley Declaration").

## INTRODUCTION

1.      CIM is the provider of a Mezzanine Loan secured by the Equity Interests in three Delaware limited liability companies that, collectively, own a Property located at 88 University Place in New York City.[1]  The Property is managed by non-debtor Arch Real Estate Holdings LLC ("AREH").  The Mezzanine Loan is in default, and CIM intends to conduct a foreclosure sale of the Equity Interests in accordance with the Uniform Commercial Code.

2.      The Borrowers under the Mezzanine Loan are not debtors in this Chapter 11 Case or, to CIM's knowledge, in any other bankruptcy case.  Accordingly, the Equity Interests that those Borrowers hold are not property of the Debtor's estate, and neither is the Property at 88 University Place.  Therefore, CIM's rights to exercise remedies with respect to the Equity Interests and the Property are not affected by the automatic stay imposed under § 362 of the Bankruptcy Code.  The

---

[1] Capitalized terms used in this introduction are defined below.

stay protects only "property of the estate," and property owned by a non-debtor is not estate property.

3.      CIM files this motion, however, in an abundance of caution. Although the Debtor does not own the Equity Interests or the Property at issue, it does have an ownership interest in AREH, which manages the Borrowers and the Property (although AREH is not currently providing services for the Property). Importantly, the Debtor does not directly, indirectly, or beneficially hold any equity in the Borrowers or in the Property. Rather, in its capacity as managing member under applicable LLC agreements, AREH is entitled to receive under certain circumstances a portion of excess cash flow (if any) from three entities: 88 Arch MM LLC, Camelot MM JV LLC and NCSC MM JV LLC (collectively, the "MM Entities"). Each of the MM Entities, through multiple steps in a corporate chain, beneficially owns a fractional percentage of the equity in each Borrower. The relationships among the Debtor, AREH, the MM Entities, the Borrowers, and the Property are illustrated in a chart attached as Exhibit A to the accompanying Daley Declaration. The same information, formatted differently, appears in organizational charts attached to the Debtor's first day affidavit.[2] *See* ECF 16 (First Day Aff.) Ex. A.

4.      It is well-settled that the automatic stay does not apply to property of non-debtor affiliates, such as an LLC in which the debtor is a member. *See, e.g.*, *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *In re Burrow*, 505 B.R. 838, 845-46 (Bankr. E.D. Ark. 2013) (postpetition foreclosure of property held by non-debtor LLC did not violate the stay despite the debtor's membership interest in LLC); 3 Collier on Bankruptcy ¶ 362.03 (2024) (the

---

[2] CIM's understanding of the Borrowers' ownership structure is based on representations made by the Borrowers in the underwriting process, which were consistent with those in the organizational charts attached to the first day affidavit. For purposes of this motion, CIM accepts those representations.

automatic stay "does not protect separate legal entities"). Here, the Debtor's relationship to the property at issue (*i.e.*, the Equity Interests) is even more attenuated because the Debtor has no direct, indirect, or beneficial ownership interest in the property at all. Rather, the Debtor has an interest in an entity—AREH—that has a contractual right to receive excess cash flow under certain circumstances, and even that right is with respect to entities that have only a small minority beneficial interest in the property at issue. Accordingly, CIM is entitled to conduct a UCC Sale of the Equity Interests in accordance with applicable law and to otherwise exercise remedies with respect to the Equity Interests and the Property.

5.      Even if the Court were to conclude that the automatic stay applies, the Court should grant CIM relief from the stay. As set forth in the accompanying Daley Declaration, the Mezzanine Loan has been in default since July 2023, and there is no reasonable prospect of excess cash flow being available for distribution from the MM Entities. A UCC Sale of the Equity Interests would involve only third-parties and would have no effect on the Debtor's estate or on this bankruptcy case. As set forth below, all of the relevant factors that courts consider weigh in favor of granting CIM relief from the automatic stay.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G). The statutory predicates for the relief sought herein are sections 105, 362, and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and Rule 4001-1 of the Bankruptcy Local Rules for the Southern District of New York. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.    CIM Enters Into a Mortgage Loan and Mezzanine Loan Agreements.**

7.    On May 23, 2022, CIM entered into a mortgage loan (the "Mortgage Loan") with three borrowers: 88 Tower LLC, 88 Tower 2 LLC, and 88 Tower 3 LLC (collectively, the "Property Owners").  (*See* Daley Decl. ¶ 2.)  The Mortgage Loan is secured by a mortgage on 88 University Place in New York City ("88 University Place" or the "Property").  (*Id*.)  The Property Owners are tenants in common and collectively own the Property.  (*Id*.)  The mortgage and other loan documents entered into in connection with the Mortgage Loan are referred to as the "Mortgage Loan Documents."

8.    On the same day, CIM entered into a Mezzanine Loan Agreement (the "Mezzanine Loan Agreement") with three borrowers: 88 Tower Member LLC, 88 Tower Member 2 LLC, and 88 Tower Member 3 LLC (collectively, the "Borrowers").  (*See* Daley Decl. ¶ 3.)  Each individual Borrower under the Mezzanine Loan Agreement is the parent of the applicable Property Owner identified above—for example, 88 Tower Member LLC is the parent of 88 Tower LLC.  (*Id*.)  Under the Mezzanine Loan Agreement, CIM agreed to lend the Borrowers a maximum principal amount of up to $22,112,903.23 (the "Mezzanine Loan" or the "Loan").  (*Id*.)

9.    The Mezzanine Loan is secured by a pledge of, among other things, the Borrowers' equity interests in the Property Owners (the "Equity Interests").  (*Id*. ¶ 4.)  The Equity Interests are pledged as collateral for the benefit of CIM.  (*Id*. ¶ 4.)  The Mezzanine Loan Agreement, pledge agreement and other loan documents entered into in connection with respect the Mezzanine Loan are referred to as the "Mezzanine Loan Documents."

**B.    The Borrowers Default Under the Mezzanine Loan Agreement.**

10.    The Mortgage Loan and the Mezzanine Loan have been in default since July 2023.

11.     On July 7, 2023, CIM notified the Borrowers and the Property Owners that a "Projected Carry Cost Shortfall" was due in the amount of $1,655,330.  (*Id.* ¶ 5.)  In accordance with the terms of the Mezzanine Loan Agreement and Mortgage Loan Agreement, CIM demanded that the outstanding amount be deposited into CIM's carry cost account within 10 days of such notice.  (*Id.*)  The Borrowers failed to make (or cause to be made) such deposit.  (*Id.*)  Accordingly, on July 21, 2023, CIM notified the Borrowers and Property Owners that an "Event of Default" had occurred under the Mezzanine Loan and the Mortgage Loan.  (*Id.*)  On October 3, 2023, CIM accelerated the Mezzanine Loan.  (*Id.*)  The Borrowers and Property Owners have failed to pay monthly debt service on the Mezzanine Loan and Mortgage Loan since September 2023.  (*Id.*)

12.     Under the Uniform Commercial Code (the "UCC") and the terms of the Mezzanine Loan Documents, CIM is entitled to foreclose on the Equity Interests through a public sale process conducted in a commercially reasonable manner (a "UCC Sale").  (*Id.* ¶ 6.)  On October 16, 2023, CIM sent a notice of disposition to the Borrowers advising them of CIM's intent to hold a UCC Sale with respect to the Equity Interests.  (*Id.*)  Under to the Mortgage Loan Documents, the Mezzanine Loan Documents, and the applicable provisions of the UCC, CIM was not required to provide notice to the Debtor, and the Debtor's participation is not necessary to conduct the UCC Sale.  (*Id.*)

**C.     The Debtor Has No Direct or Indirect Ownership Interest in the Property.**

13.     The Property at 88 University Place is not owned by the Debtor.  Rather, the Property is owned jointly by the three Property Owners, which are borrowers under the Mortgage Loan: (a) 88 Tower LLC, which owns a 66.37% undivided interest in the Property; (b) 88 Tower 2 LLC, which owns a 19.17% undivided interest in the Property; and (c) 88 Tower 3 LLC, which owns a 14.46% undivided interest in the Property.  (*Id.* ¶ 7.)

14.     Similarly, the Equity Interests in the Property Owners are not held by the Debtor. Rather, the Equity Interests are held by the three Borrowers under the Mezzanine Loan: 88 Tower Member LLC, 88 Tower Member 2 LLC, and 88 Tower Member 3 LLC.  (*Id.* ¶ 8.)

15.     The relationships among the Property Owners, the Borrowers, and the Debtor are illustrated in Exhibit A to the Daley Declaration.  They are also illustrated in a consistent manner in Exhibit A to the Debtor's first day affidavit.  *See* ECF 16 Ex. A.  As those exhibits show, each of the Borrowers under the Mezzanine Loan has a corporate relationship with the Debtor through the Debtor's membership interest in AREH.  Thus, for example:

- 100% of the membership interest in Borrower 88 Tower Member LLC is held by Tower Investors LLC.

- 64.9% of the membership interest in Tower Investors LLC is held by Tower Owner Two LLC.

- 43.8% of the membership interest in Tower Owner Two LLC is held by 88 Arch LLC.

- 20% of the membership interest in 88 Arch LLC is held by 88 Arch MM LLC.

88 Arch MM LLC, which thus beneficially holds a minority interest in one of the Borrowers, has AREH as its Managing Member.  The same is true of the other two MM Entities—Camelot MM JV LLC and NCSC MM JV LLC.  Under the applicable LLC agreements, AREH has a 0% ownership interest in each of the MM Entities.  (Daley Decl. ¶ 11.)  As the Managing Member, it is entitled under the LLC Agreement to receive a portion of cash flow (if any) that each of the MM Entities may receive.  (*Id.*)  But AREH does not itself have any ownership interest in those Entities. (*Id.*)  Debtor JJ Arch LLC, as a member of AREH, likewise has no ownership interest in the MM Entities, the Borrowers, or the Property.  *See id.*; ECF 16 ¶ 11 (explaining that "JJ Arch holds an

80% membership interest in Arch Real Estate Holdings LLC" and that "AREH is a vertically integrated real estate operating company that does not own physical assets").[3]

16.     In addition, as set forth above, the Mortgage Loan and Mezzanine Loan have been in default since July 2023.  (*See* Daley Decl. ¶ 13.)  At this point, there is no reasonable prospect of excess cash flow being available for distribution from the MM Entities.  (*Id.*)

## **RELIEF REQUESTED**

17.     CIM seeks entry of an order, substantially in the form attached hereto, (i) confirming that the automatic stay that went into effect upon the commencement of this Chapter 11 Case does not apply to any steps CIM may take to foreclose on or otherwise exercise its rights with respect to the Equity Interests or the Property located at 88 University Place, including but not limited to conducting a UCC Sale or a mortgage foreclosure; (ii) confirming that neither the Equity Interests nor the Property located at 88 University Place constitutes property of the Debtor's estate; and/or (iii) modifying the automatic stay to the extent necessary to permit CIM to exercise its rights with respect to the Equity Interests and the Property, including but not limited to conducting a UCC Sale or a mortgage foreclosure

18.     CIM has had preliminary discussions with counsel to the Debtor and to other parties-in-interest concerning the relief sought herein. If possible, CIM will present an agreed form of order to the Court.

---

[3] Furthermore, the AREH LLC agreement provides that cash flow (if any) received by AREH will be applied first to the payment of interest on amounts invested by other non-debtor parties, second to the return of actual amounts invested by JJ Arch and such other non-debtor parties, and only after the full repayment of such amounts is the Debtor entitled to 80% of revenues – effectively subordinating the Debtor's interest.

## BASES FOR RELIEF

### I.    The Automatic Stay Does Not Apply to Property Owned by Non-Debtor Entities.

19.    The Court is empowered to issue comfort orders under Section 105 of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); *see In re Hill,* 364 B.R. 826, 828 (Bankr. M.D. Fla. 2007) (explaining that "[t]he power to issue comfort orders is encompassed within Section 105" and that "[c]omfort orders serve a valuable purpose. The orders are entered primarily for a third party's benefit, often to help a sister state court attempting to determine whether it can proceed with a pending action, such as a foreclosure."). CIM therefore seeks an order from this Court holding that the automatic stay does not prohibit it from conducting a UCC Sale of property (the Equity Interests) that is owned by non-debtors.

20.    The automatic stay applies only to the Debtor and to property of the Debtor's estate. It does not stay actions against third parties, such as non-debtor corporate affiliates. *See In re Chugach Forest Prod., Inc*., 23 F.3d 241, 246 (9th Cir. 1994); *Teachers. Ins.*, 803 F.2d at 65 ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants."); 3 Collier on Bankruptcy ¶ 362.03 (2024) ("Although the stay protects the debtor against a broad range of actions and activities, it does not protect separate legal entities, such as corporate directors, officers or affiliates, partners in debtor partnerships or codefendants in pending litigation.").  More specifically, foreclosure on property held by a non-debtor entity— such as the Equity Interests and the Property here—does not implicate the automatic stay. *See In re Neuman*, 92 B.R. 598, 599 (Bankr. S.D.N.Y. 1988) ("a foreclosure action by [a mortgagee] in which the [debtor] is not named as a party will not affect the estate and no permission is required from this court before it can be commenced."); *see also In re Burrow*, 505 B.R. at 845-46 (property owned by a non-debtor LLC of which debtor had a membership interest in is not property of the

estate, and a postpetition foreclosure of property held by the non-debtor LLC did not violate the stay).

21.    Additionally, the exception the Second Circuit recognized in *Queenie* does not apply.  There, the court articulated a very limited exception to this general rule when an action against a non-debtor would have "an immediate adverse economic consequence for the debtor's estate."  *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir.2003); *see also In re: American Media Distributors, LLC*, 216 B.R. 486, 489 (Bankr. E.D.N.Y 1998).  Here, there are multiple degrees of separation between the property at issue and the Debtor.  In addition, the Debtor holds no direct or indirect interests in the property; rather, it holds an interest in an entity that has contractual rights to a fraction of the excess cash flow (if any) received by the MM Entities, and those MM Entities themselves have only indirect, minority interests in the Borrowers and their Equity Interests.  Accordingly, the automatic stay does not apply to a UCC Sale of the Equity Interests or any other exercise of remedies with respect to the Property or the Equity Interests.

## II.    In the Alternative, the Court Should Modify the Automatic Stay.

22.    In the alternative, the Court should modify the automatic stay to permit CIM to exercise its rights.  The Court may grant a party relief from the automatic stay under Section 362(d) of the Bankruptcy Code, which, in pertinent part, provides:

> On request of a party in interest and after notice and a hearing, the court shall[4] grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d).

---

[4] "Section 362(d) is mandatory, not permissive." *In re Harmony Holding Grp. LLC*, 655 B.R. 849, 854 (E.D.N.Y. 2023) (citing *In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000)).

23.     "[T]he term 'for cause' [is] 'a broad and flexible concept that must be determined on a case-by-case basis.'" *Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 508 (E.D.N.Y. 2018) (*quoting U.S. Bank Tr. Nat'l Assoc. v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013)).   The Second Circuit has articulated twelve factors in determining whether "cause" exists, including:

1.    whether relief would result in a partial or complete resolution of the issues;

2.    lack of any connection with or interference with the bankruptcy case;

3.    whether the other proceeding involves the debtor as a fiduciary;

4.    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5.    whether the debtor's insurer has assumed full responsibility for defending it;

6.    whether the action primarily involves third parties;

7.    whether litigation in another forum would prejudice the interests of other creditors;

8.    whether the judgment claim arising from the other action is subject to equitable subordination;

9.    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10.   the interests of judicial economy and the expeditious and economical resolution of litigation;

11.   whether the parties are ready for trial in the other proceeding; and

12.   impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citation omitted).

24.     Not every factor is relevant to any particular case.   Thus, as courts have explained, "the Court need only consider the relevant factors in making its determination."   *In re Containership Co. (TCC) A/S*, 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012); *see also Sonnax*, 907

F.2d at 1286 (utilizing only four of the factors). "Further, the Court may apportion weight among

the factors as it sees fit." *Matter of Kossoff PLLC*, No. 21-10699 (DSJ), 2023 WL 3361053, at *4

(Bankr. S.D.N.Y. May 10, 2023). Indeed, courts have found cause to lift the stay based on one

factor alone. *See, e.g., In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) ("The

factor of judicial economy may be considered in deciding whether to lift the automatic stay; in

fact, a decision to lift the stay may be upheld on this ground alone.") (citation omitted).

25.     Here, the relevant *Sonnax* factors weigh in favor of lifting the stay.

1.     Relief would result in a complete resolution of the issues.  A UCC sale of the Equity Interests would resolve all borrower obligations under the Mezzanine Loan. CIM would still have guaranty claims under the Mezzanine Loan, but the Debtor is not a guarantor.

2.     Lack of any connection or interference with the bankruptcy case.  A UCC Sale of the Equity Interests would have no impact on this Chapter 11 Case or on any of the Debtor's property.  The Debtor would continue to enjoy the protections of the automatic stay as it relates to property of the estate.

3.     A UCC Sale of the Equity Interests would not involve the Debtor as a fiduciary. The Debtor would not be party to the UCC Sale at all.

4.     A UCC Sale is a specialized proceeding that is conducted under well-established procedures in accordance with the Uniform Commercial Code.

5.     (Not applicable.)

6.     A UCC Sale would entirely involve third parties. The Borrowers and the Property Owners are non-debtors in which the Debtor holds no direct or indirect ownership interest.

7.     Creditors would not be prejudiced.  The Equity Interests are not assets of the Debtor from which the Debtor's creditors could recover.  In addition, given the distress at 88 University Place, there is no reasonable prospect of AREH receiving cash from the MM Entities.

8.     (Not applicable.)

9.     (Not applicable.)

10.     The interests of judicial economy and the expeditious and economical resolution of litigation would be best served by relief from the automatic stay.  If the stay is found

to apply and CIM is not granted relief, efforts to address the non-debtor Borrowers' defaults under the Mezzanine Loan would stall.

11.     (Not applicable.)

12.     <u>The impact of the stay on the parties and the balance of harms.</u>  Modifying the stay to permit the UCC Sale would have no impact on creditors in this Chapter 11 Case. Imposition of the stay against CIM would create an outsized harm against it and would offer no benefit to the Debtor.

26.     The foregoing constitutes "cause" to modify the automatic stay for the purpose of conducting a UCC Sale of the Property owned by non-debtor entities.  A limited modification to the automatic stay would have no prejudicial effects on the Chapter 11 Case, but rather would allow CIM to enforce its rights under the Mezzanine Loan and swiftly resolve this matter without impacting the Debtor's estate.

## **WAIVER OF BANKRUPTCY RULE 4001(A)(3) STAY**

27.     Pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), CIM requests that the Court direct that any order modifying the stay is immediately enforceable and not subject to the 14-day stay under Rule 4001(a)(3). *See* Fed. R. Bankr. P. 4001 Advisory Committee Notes ("The court may, in its discretion, order that Rule 4001(a)(3) is not applicable so that the prevailing party may immediately enforce and implement the order granting relief from the automatic stay. Alternatively, the court may order that the stay under Rule 4001(a)(3) is for a fixed period less than 10 days.").

## **NOTICE**

28.     Notice of this Motion will be given to: (i) the Debtor and its counsel; (ii) the United States Trustee for the Southern District of New York; and (iii) all parties that have requested or that are required to receive notice under Bankruptcy Rule 4001(a)(1) and 9013.  In light of the nature of the relief requested, CIM submits that no other or further notice is required under the circumstances.

## CONCLUSION

**WHEREFORE**, CIM respectfully requests that this Court enter an order, substantially in the form submitted herewith, (i) confirming that the automatic stay that went into effect upon the commencement of this Chapter 11 Case does not apply to any steps CIM may take to foreclose on or otherwise exercise its rights with respect to the Equity Interests or the Property located at 88 University Place, including but not limited to conducting a UCC Sale or a mortgage foreclosure; (ii) confirming that neither the Equity Interests nor the Property located at 88 University Place constitutes property of the Debtor's estate; and/or (iii) modifying the automatic stay to the extent necessary to permit CIM to exercise its rights with respect to the Equity Interests and the Property, including but not limited to conducting a UCC Sale or a mortgage foreclosure.

Dated: May 10, 2024                           Respectfully submitted,

*/s/ David A. Herman*
David A. Herman
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036-6797
david.herman@dechert.com
Tel: (212) 698-3500
Fax: (212) 698-3599

*Counsel for CREC 88 Tower LLC*

13

## **Exhibit 1**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| JJ ARCH LLC, | |
| Debtor. | Case No. 24-10381 (JPM) |

### ORDER (I) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE FORECLOSURE OF PROPERTY OWNED BY A NON-DEBTOR ENTITY AND/OR (II) MODIFYING THE AUTOMATIC STAY AS NECESSARY TO ALLOW FOR SUCH FORECLOSURE

**WHEREAS**, on May 10, 2024, CREC 88 Tower, LLC ("CIM"), moved this Court (the "Motion") for entry of an order (i) confirming that the automatic stay that went into effect upon the commencement of this Chapter 11 Case does not apply to any steps CIM may take to foreclose on or otherwise exercise its rights with respect to the Equity Interests or the Property located at 88 University Place, including but not limited to conducting a UCC Sale or a mortgage foreclosure; (ii) confirming that neither the Equity Interests nor the Property located at 88 University Place constitutes property of the Debtor's estate; and/or (iii) modifying the automatic stay to the extent necessary to permit CIM to exercise its rights with respect to the Equity Interests and the Property, including but not limited to conducting a UCC Sale or a mortgage foreclosure;

**WHEREAS**, having reviewed the Motion and the accompanying declaration and exhibits thereto, and the Court having held a hearing on the Motion on ___, 2024, and the Court having concluded that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, and all objections to the Motion having been withdrawn or overruled;

**WHEREAS**, the Court has concluded that neither the Equity Interests nor the Property located at 88 University Place constitutes property of the Debtors' estate; and

**WHEREAS**, upon all the proceedings before this Court; and after due deliberation and sufficient cause appearing, the Court is of the opinion that the relief sought in the Motion should be granted;

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED.

2.     The automatic stay imposed by the filing of the Chapter 11 Case does not apply to any steps CIM may take to foreclose on or otherwise exercises its rights with respect to the Equity Interests or the Property located at 88 University Place, including conducting a UCC Sale (as defined in the Motion) of the Equity Interests or a mortgage foreclosure on the Property.

3.     To the extent necessary, the automatic stay is hereby modified to permit CIM to conduct a UCC Sale of the Equity Interests and to otherwise exercise its rights with respect to the Equity Interests and the Property.

4.     The fourteen (14) day stay provided under Federal Rule of Bankruptcy Procedure 4001(a)(3) shall not apply.

5.     This Order shall be binding, regardless of the dismissal, withdrawal, conversion, or re-filing of this case.

6.     The relief granted in this Order is without prejudice to CIM's right to seek additional relief.  Nothing in this order shall be construed as a waiver of CIM's rights under applicable law.

7.     This Court retains jurisdiction with respect to the interpretation and enforcement of this Order.

DATED:_____, 2024.

_____
THE HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE