**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X

In re:                                                    :    Chapter 11 (Subchapter V)

                                                          :

JJ ARCH LLC                                               :    Case No. 24-10381 (JPM)

                                                          :

    Debtor.                                           :    Jointly Administered

                                                          :

---------------------------------------------------------- X

<u>**DECLARATION OF SMITH DALEY**</u>

       I, Smith Daley, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

       1.     I am First Vice President and Director of CIM Group. I submit this Declaration in support of the *Motion for an Order (I) Confirming that the Automatic Stay Does Not Apply to the Foreclosure of Property Owned by a Non-Debtor Entity and/or (II) Modifying the Automatic Stay as Necessary to Allow for Such Foreclosure*, which is being filed contemporaneously herewith by CREC 88 Tower LLC (as successor-in-interest to CIM Real Estate Credit, LLC) ("<u>CIM</u>"), an affiliate of CIM Group. Except where otherwise noted, the statements in this Declaration are based upon my personal knowledge.

**I.**      <u>**CIM Enters into a Mortgage Loan and Mezzanine Loan Agreements**</u>

       2.     On May 23, 2022, CIM entered into a mortgage loan (the "<u>Mortgage Loan</u>") with three borrowers: 88 Tower LLC, 88 Tower 2 LLC, and 88 Tower 3 LLC, respectively (collectively, the "<u>Property Owners</u>"). The Mortgage Loan is secured by a mortgage on 88 University Place in New York City ("<u>88 University Place</u>" or the "<u>Property</u>"). The Property Owners are tenants in common and collectively own the Property. The mortgage and other loan documents entered into in connection with the Mortgage Loan are referred to as the "<u>Mortgage Loan Documents</u>."

3.      On the same day, CIM entered into a Mezzanine Loan Agreement (the "Mezzanine Loan Agreement") with three borrowers: 88 Tower Member LLC, 88 Tower Member 2 LLC, and 88 Tower Member 3 LLC (collectively, the "Borrowers").  Each individual Borrower under the Mezzanine Loan Agreement is the parent of the applicable Property Owner—for example, 88 Tower Member LLC is the parent of 88 Tower LLC. Under the Mezzanine Loan Agreement, CIM agreed to lend the Borrowers a maximum principal amount of up to $22,112,903.23 (the "Mezzanine Loan").

4.      The Mezzanine Loan is secured by a pledge of, among other things, the Borrowers' equity interests in the Property Owners (the "Equity Interests").  The Equity Interests are pledged as collateral for the benefit of CIM. The Mezzanine Loan Agreement, pledge agreement and other loan documents entered into in connection with the Mezzanine Loan are referred to as the "Mezzanine Loan Documents."

## II.      The Borrowers Default Under the Mezzanine Loan Agreement

5.      The Mortgage Loan and the Mezzanine Loan have been in default since July 2023. On July 7, 2023, CIM notified the Borrowers and the Property Owners that a "Projected Carry Cost Shortfall" was due in the amount of $1,655,330.  In accordance with the terms of the Mezzanine Loan Agreement and Mortgage Loan Agreement, CIM demanded that the outstanding amount be deposited into CIM's carry cost account within 10 days of such notice.  The Borrowers failed to make (or cause to be made) such deposit.  Accordingly, on July 21, 2023, CIM notified the Borrowers and Property Owners that an "Event of Default" had occurred under the Mezzanine Loan and the Mortgage Loan.  On October 3, 2023, CIM accelerated the Mezzanine Loan.  The Borrowers and Property Owners have failed to pay monthly debt service on the Mezzanine Loan and Mortgage Loan since September 2023.

6.      On October 16, 2023, CIM sent a notice of disposition to the Borrowers advising

them of CIM's intent to hold a sale pursuant to the Uniform Commercial Code (a "UCC Sale")

with respect to the Equity Interests. Under the Mortgage Loan Documents, the Mezzanine Loan

Documents and the applicable provisions of the UCC, CIM was not required to provide notice to

the Debtor and the Debtor's participation is not necessary to conduct the UCC Sale.

### III.    The Debtor Has No Direct or Indirect Ownership Interest in the Property

7.      In connection with the origination of the Mezzanine Loan and the Mortgage Loan,

the Borrowers and the Property Owners provided information on their corporate organization,

including organizational charts and organizational documents.  Based upon that documentation, I

am familiar with the corporate organizational structure of the Borrowers and the Property Owners.

8.      The Property is owned jointly by the three Property Owners, which are borrowers

under the Mortgage Loan: (a) 88 Tower LLC, which owns a 66.37% undivided interest in the

Property; (b) 88 Tower 2 LLC, which owns a 19.17% undivided interest in the Property; and (c)

88 Tower 3 LLC, which owns a 14.46% undivided interest in the Property.

9.      The Equity Interests are held by the three Borrowers under the Mezzanine Loan:

88 Tower Member LLC, 88 Tower Member 2 LLC, and 88 Tower Member 3 LLC.

10.      Each of the Borrowers under the Mezzanine Loan has a corporate relationship with

the Debtor through the Debtor's majority ownership of AREH.  Thus, for example:

- 100% of the membership interest in Borrower 88 Tower Member LLC is held by Tower Investors LLC.

- 64.9% of the membership interest in Tower Investors LLC is held by Tower Owner Two LLC.

- 43.8% of the membership interest in Tower Owner Two LLC is held by 88 Arch LLC.

- 20% of the membership interest in 88 Arch LLC is held by 88 Arch MM LLC.

11.    88 Arch MM LLC, which thus beneficially holds a minority interest in one of the
Borrowers, has AREH as its Managing Member. The same is true of the other two MM Entities—
Camelot MM JV LLC and NCSC MM JV LLC. Under the applicable LLC agreements, AREH
has a 0% ownership interest in each of the MM Entities. As the Managing Member, it is entitled
under the LLC Agreement to receive a portion of cash flow (if any) that each of the MM Entities
may receive. But AREH does not itself have any ownership interest in those Entities. Debtor JJ
Arch LLC, as an 80% owner of AREH, likewise has no ownership interest in the MM Entities, the
Borrowers, or the Property.

12.    The relationships among these entities and the Debtor are illustrated in further detail
in the organizational chart attached as **Exhibit A**.

13.    In addition, as set forth above, the Mortgage Loan and Mezzanine Loan have been
in default since July 2023. At this point, there is no reasonable prospect of excess cash flow being
available for distribution to the MM Entities.

I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge and belief.

Dated: May 10, 2024

Smith Daley