UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

In re: JJ Arch LLC,

                        Debtor.

--------------------------------------------------------------x

Chapter 11

Case No.: 24-10381 (JPM)

### MEMORANDUM OPINION AND ORDER

*A P P E A R A N C E S:*

**WIGGIN AND DANA LLP**
*Proposed Co-Counsel for JJ Arch LLC*
437 Madison Avenue, 35th Floor
New York, New York 10022
By:    Nathan Denning
        Andrew Ritter

**GRIFFIN LLP**
*Proposed Co-Counsel for JJ Arch LLC*
420 Lexington Avenue, Suite 400
New York, New York 10170
By:    Scott Anthony Griffin

**HAYNES AND BOONE, LLP**
*Counsel for 608941 NJ, Inc.*
30 Rockefeller Plaza
New York, New York 10112
By:    Leslie C. Thorne
        Richard Kanowitz
        Aishlinn Bottini
        Jordan Chavez

**KIRBY AISNER & CURLEY LLP**
*Co-Counsel for Jared Chassen*
700 Post Road, Suite 237
Scarsdale, New York 10583
By:    Dawn Kirby

**SCHWARTZ LAW PLLC**
*Co-Counsel for Jared Chassen*
150 Broadway, Suite 701
New York, New York 10038
By:     Allen Schwartz

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
*Co-Counsel for Jared Chassen*
200 West 41st Street, 17th Floor
New York, New York 10036
By:     Sean C. Southard
          Fred Stevens
          Brendan M. Scott

**OFFIT KURMAN, P.A.**
*Counsel for Jeffrey Simpson*
590 Madison Avenue, 6th Floor
New York, New York 10022
By:     Jason A. Nagi
          Kenneth J. Flickinger

**OLSHAN FROME WOLOSKY LLP**
*Counsel for Arch Real Estate Holdings LLC*
1325 Avenue of the Americas
New York, New York 10019
By:     Jonathan T. Koevary
          Adam H. Friedman
          Katherine Mateo

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**[1]

Pending before the Court are: (i) the *Motion for Entry of an Order (I) Confirming that the Automatic Stay Does Not Apply to Certain Corporate Governance Disputes, and/or (II) Modifying the Automatic Stay as Necessary In Order to Address Such Corporate Governance Disputes* filed by Arch Real Estate Holdings LLC ("AREH"); and (ii) the *Motion for Entry of an Order (I) Confirming that the Automatic Stay Does Not Apply to Certain Corporate Governance Disputes, and/or (II) Modifying the Automatic Stay as Necessary in Order to Address Such Corporate Governance Disputes* filed by Jared Chassen ("Mr. Chassen") (collectively, the "Lift Stay Motions"). *See* [Ch. 11 Dkt., Doc. 38]; [Ch. 11 Dkt., Doc. 40]. The Lift Stay Motions seek generally the lifting of the automatic stay that was effective upon the filing of the bankruptcy case *In re: JJ Arch LLC*, Case No. 24-10381 (March 7, 2024).

Filed in response to the Lift Stay Motions are: (i) *the Debtor's Omnibus Objection to Motions for Entry of Order (I) Confirming that the Automatic Stay Does Not Apply to Certain Corporate Governance Dispute and/of (II) Modifying the Automatic Stay as Necessary in Order to Address Such Corporate Governance Disputes*, [Ch. 11 Dkt., Doc. 60]; and (ii) the *Omnibus Response of Jeffrey Simpson Opposing Jared Chassen's Motion to Lift the Automatic Stay and Arch Real Estate Holding LLC's Motion to Lift the Automatic Stay*, [Ch. 11 Dkt., Doc. 62] (collectively, the "Lift Stay Objection").

---

[1]    Unless otherwise specified, references to "[Doc. __]" are to filings entered on the docket in *Jeffrey Simpson, et al., v. First Republic Bank, et al.*, Case No. 23-1334 (April 3, 2024). References to "[Ch. 11 Dkt., Doc. __]" are to filings entered in the bankruptcy case *In re: JJ Arch LLC*, Case No. 24-10381 (March 7, 2024).

References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York.

As set forth herein, the Court GRANTS the Lift Stay Motions, conditional upon the District Court's ruling on this Court's *Memorandum Opinion and Order, and Findings of Fact and Conclusions of Law, on Jared Chassen and Arch Real Estate Holding LLC's Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative, Principles of Abstention or Equity* (the "Remand Ruling") [Doc. 26].

## I.    FACTUAL BACKGROUND

The Debtor is a real estate holding company formed by Mr. Chassen and Mr. Simpson under the laws of New York in December of 2017.  [Ch. 11 Dkt., Doc. 16, p. 54] (the Debtor's Operating Agreement).  The relevant provisions of the Debtor's original operating agreement are as follows:

(i)    Mr. Simpson was given the "unilateral power and authority . . . to make and implement all decisions with respect to" the Debtor's day-to-day operation, including the power to "conduct, manage and control the affairs and business of the [Debtor and its subsidiaries]," *see* [Ch. 11 Dkt. 16, p. 55]; but

(ii)    the Debtor could not engage in certain actions—what the operating agreement calls "Major Decisions"—without Mr. Chassen's written consent, *see id.* at p. 56 (defining "Major Decisions" as, *inter alia*, the "tak[ing] of a Bankruptcy Action," the sale of "any asset of the [Debtor]," and the execution of "any agreement requiring the expenditure of more than $10,000 per annum"); and

(iii)    either member of the Debtor was deemed to "Resign" when that member either "fail[ed] to provide substantially all of his business time for the benefit of the [Debtor]," or that member engaged in a "Cause Event," e.g., willful misconduct, breach of fiduciary duty, or "gross negligence in relation to the business or affairs of [AREH] or a Subsidiary," *id*. at pp. 53, 77.

The Debtor generates revenue largely as the managing member of AREH, a position that Mr. Simpson describes as the Debtor's "most valuable asset."  [Ch. 11 Dkt., Doc. 16, p. 5] (the First Day Affidavit of Mr. Simpson); *see also* [Doc. 20, p. 11] (claiming that the Debtor was formed

"for the primary purpose of managing AREH, AREH's various direct and indirect subsidiaries and investments and certain non-AREH investment vehicles").[2]

Oak is AREH's sole other member. *See* [Ch. 11 Dkt., Doc. 16, pp. 75–110] (AREH's operating agreement). The relevant details of AREH's corporate composition are as follows:

(i)     the Debtor holds an 80% interest in AREH and acts as AREH's "Managing Member," a role that allows the Debtor to exercise "exclusive and complete discretion" over the "business, affairs and assets of [AREH]," *see id.* at pp. 90–91; and

(ii)    Oak holds a 20% interest in AREH and acts as AREH's "Investor Member," a role that gives Oak the right to "remove [the Debtor] as 'managing member' [of AREH] upon a Cause Event," *see id.* at p. 93;[3] and

(iii)   notwithstanding the Debtor's operational control over AREH, the AREH operating agreement—much like the Debtor's—provides that Oak's consent is required for "Major Decisions," including, *inter alia*, the "tak[ing] of any Bankruptcy Action," the acquisition of "any direct or indirect interests in any real property," and the "enter[ing] into any agreement requiring the expenditure of more than $50,000 per annum," *see id.* at pp. 92–93.

The Debtor's business operated relatively smoothly in the years following its formation. Indeed, prior to this dispute, the Debtor—through AREH and various subsidiaries and affiliates (the "Arch Companies")—accumulated a real estate portfolio purportedly worth over $1 billion. *Id.* at p. 2.

---

[2]     According to Mr. Simpson, AREH generates revenue by managing various subsidiaries and affiliates (the "Arch Companies") that provide services relating to "low-cost [] asset management, property management, advisory, direct construction trades, and construction management . . . ." [Ch. 11 Dkt., Doc. 16, p. 5–7] (noting that AREH is "responsible for the Arch Companies' overall business direction, including investment decisions, executing corporate strategy and fostering and maintaining relationships with the Arch Companies' prospective and existing capital partners and investors").

[3]     The Debtor's operating agreement defines "Cause Event" using the same definition provided in the AREH operating agreement. [Ch. 11 Dkt., Doc. 16, pp. 51, 77–78].

The relationship between Mr. Chassen and Mr. Simpson became strained in mid-2023.[4] Sometime during the weekend of August 5, 2023, Mr. Chassen and Mr. Simpson exchanged emails (the "August Exchange") that attempted to "resign" the other from the Debtor on the basis of several Cause Events, ostensibly in accordance with the terms of the Debtor's operating agreement. *See* [Doc. 3, ¶ 5]; [Doc. 1-2, p. 24]. Following this exchange, on August 6, 2024, Oak apparently contacted Mr. Simpson and "advised [him] that he had committed multiple Cause Events . . . [as] identified in the JJ Arch Operating Agreement." *See* [Doc. 1, pp. 25, 200]; [Ch. 11 Dkt., Doc. 14-1, p. 12]; [Ch. 11 Dkt., Doc. 4-3, pp. 348–49] ("[The Debtor], through the actions of Jeffrey Simpson . . . has committed multiple Cause Events . . . [and] [w]e reserve all of our rights and remedies under the [AREH operating agreement], at law, or in equity . . . ."). The litigation described below followed.

## II.    PROCEDURAL HISTORY

### a.    The State Proceeding

On August 15, 2023, Mr. Simpson filed a derivative action on behalf of the Debtor and AREH in New York State Supreme Court before the Honorable Joel M. Cohen (the "State Court Proceeding"). *See generally* [Doc. 1-2, pp. 10–45] (the initial state court complaint). What followed was a complex, contentious series of pleadings and motions involving no less than five

---

[4]    The parties dispute the events precipitating this litigation. The accuracy of the allegations made in the course of the State Court Proceeding are, however, wholly irrelevant to the instant decision, the resolution of which requires only a review of the record developed before this Court and Justice Cohen. For this reason, this opinion should not be read to decide either a pending claim or a disputed fact.

parties and no less than 37 causes of action.[5]  Those causes of action included, *inter alia*, breach of fiduciary duty, conversion, breach of contract, defamation, fraud, and tortious interference with a prospective business advantage.  *See* [Doc. 2-1, pp. 1–5].

During the pendency of the State Court Proceeding, Justice Cohen issued a series of interim orders (the "Interim Orders") apparently intended to preserve the operational status quo of both AREH and the Debtor.  *See* [Doc. 3-8, pp. 22–23] (where, during a hearing held on September 11, 2023, Justice Cohen states that the governance of the Debtor is "clearly something that should go back to the status quo . . . [to] [g]et the business back on track"); [Ch. 11 Dkt., Doc. 14-1, p. 82] (where, at a hearing held on November 20, 2023, Justice Cohen indicates his desire to "do[] [his] level best to keep the ship afloat while the litigation proceeds").

Following oral argument, Justice Cohen issued an Interim Order on August 21, 2023, providing that:

> [t]he August 2023 instruments sent by Simpson and Chassen to the other purportedly resigning or terminating the other as a member or managing member of JJ Arch are *hereby void and of no force or effect* . . . [and] the business, affairs, and assets of JJ Arch shall be managed by Simpson, subject to the limitations set forth in . . . the JJ Arch Operating Agreement, which provides among other things that any Company Major Decision, as defined in the JJ Arch Operating Agreement, shall be undertaken only with the prior written consent of Chassen. Simpson and Chassen *shall cooperate with each other in good faith* to facilitate the effective exercise of their respective roles and responsibilities under the JJ Arch Operating Agreement . . . .

---

[5]     Though the claims asserted in the State Court Proceeding are numerous, a fair reading of that record suggests that—at their core—those claims seek to identify the party that is properly in control of the Debtor (and, relatedly, AREH).  *See* [Doc. 1. at p. 12] (where Mr. Simpson describes the lawsuit as a means of "undo[ing] a coup d'état executed by [Mr.] Chassen . . . ."); *but see id.* at p. 81 (where Mr. Chassen asserts counterclaims seeking to "recover for [Mr.] Simpson's breach of fiduciary duty and other corporate wrongdoing, to declare that [Mr.] Chassen is the sole managing member of [the Debtor], and to declare [Mr.] Simpson resigned as a member of [the Debtor]").

The Court notes that a full accounting of the claims and parties involved in the State Court Proceeding is attached as Exhibit A to the Remand Motion.  *See* [Doc. 2-1, pp. 1–5].

[Ch. 11 Dkt., Doc. 41-6, p. 3] (emphasis added).  Thereafter, on November 28, 2023, Justice Cohen

issued two Interim Orders addressing the provisional governance of both the Debtor and AREH.

The first of those Interim Orders (the "AREH Interim Order") appointed Oak as AREH's "sole

managing member" and enjoined Mr. Simpson and the Debtor from:

> [a]cting as (or holding themselves out to third parties to be) managing members of
> Arch Real Estate Holdings LLC ("AREH"), and . . . [d]enying prompt consent to
> any Major Decision proposed by Oak as Managing Member . . . unless *both* JJ Arch
> members (Jeffrey Simpson and Jared Chassen) jointly agree to deny such consent .
> . . . [and] [o]therwise interfering with Oak's ability to exercise its responsibility as
> Managing Member of AREH.

[Ch. 11 Dkt., Doc. 38-3, pp. 2–3] (emphasis added).  The second Interim Order issued November

28, 2023, provided that:

> [d]uring the pendency of this litigation and subject to further order of the Court[,]
> Simpson and Chassen are enjoined from unilaterally seeking to terminate or force
> the resignation of the other member without permission of the Court . . . [and]
> [e]xcept as limited by the Court's preliminary injunction orders granting Oak the
> status of Acting Managing Member in [AREH] . . . the Court's prior Order [issued
> August 21, 2023] remains in full force and effect . . . .

[Ch. 11 Dkt., Doc. 38-3, pp. 3–4].  Justice Cohen indicated that the Interim Orders remained in

place at a hearing held February 2, 2024, and thereafter set an evidentiary hearing for June 7, 2024,

to decide the "ultimate issue" of Mr. Simpson and Mr. Chassen's respective rights vis-à-vis the

Debtor.  *See* [Doc. 20-2, pp. 63–64]; [Ch. 11 Dkt., Doc. 4-5, pp. 42, 63]; [Ch. 11 Dkt., Doc. 41-

19].

### b.  <u>The Bankruptcy</u>

Mr. Simpson unilaterally filed a petition for chapter 11 relief on behalf of the Debtor on

March 7, 2024.  *See generally* [Ch. 11 Dkt., Doc. 1] (designating this case as one arising under

subchapter V).  The Debtor's petition—which lists Mr. Simpson as its sole equity holder—includes

the following footnote:

24-10381-jpm    Doc 132    Filed 06/10/24    Entered 06/10/24 15:17:18    Main Document
Pg 9 of 22

Jared Chassen of [] Irvington, NY 10533, previously owned a 49.9% membership interest in the Debtor JJ Arch LLC []. Mr. Chassen, however, was deemed to have resigned as a member of JJ Arch, as of August 5, 2023, pursuant to the definition of "Resignation" as set forth in the Limited Liability Operating Agreement of JJ Arch LLC . . . Accordingly, Mr. Simpson currently owns 100% of the equity interests in the Debtor.[6]

*Id.* at p. 12, n.1. One week later, on March 14, 2024, Mr. Chassen filed a *Motion for an Order Dismissing the Debtor's Bankruptcy Case* (Mr. Chassen's "Motion to Dismiss"). *See* [Ch. 11 Dkt., Doc. 4]. That Motion argued that the Debtor's petition should be dismissed because "[t]he [Debtor's] Operating Agreement, together with the orders in the [State Court] Proceeding, leave no doubt that Mr. Simpson not only lacked authority to bring the Petition, but that this filing is in bad faith and in contempt of court." *Id.* at p. 4. AREH—making a functionally identical

---

[6]    Local Rule 1007-2 provides that "[a] debtor in a chapter 11 case must file an affidavit setting forth[] the nature of the debtor's business and a concise statement of the circumstances leading to the debtor's filing under chapter 11. . . [as well as] the names of the individuals who comprise the debtor's existing senior management, their tenure with the debtor, and a brief summary of their relevant responsibilities and experience."

Curiously, Mr. Simpson's 1007-2 affidavit contains the following narrative:

I have been involved in litigation in New York State court with Jared Chassen [], the former minority member of the Debtor regarding, *inter alia*, the management of the Debtor. Mr. Chassen *voluntarily* decided to cease providing substantially all of his business time for the benefit of the Debtor no later than January 2024 and, as a result, was deemed to have resigned from the Debtor under the under [sic] the terms of the [Debtor's] Operating Agreement. As a result of such resignation, Mr. Chassen's interest in the Debtor was "deemed automatically redeemed by the [Debtor]," Mr. Chassen was "no longer . . . deemed a 'Member' of the [Debtor]" and Mr. Chassen was no longer "entitled to any rights as a Member of the [Debtor] for any period from and after such Resignation[]" . . . [A]lthough certain of the New York state court orders did enjoin the Debtor's members from unilaterally seeking to terminate or force the resignation of the other without permission of the court, such orders did not prohibit Mr. Chassen from *voluntarily* resigning from the Debtor in the manner in which he chose to do so.

[Ch. 11 Dkt., Doc. 16, p. 11, n. 14] (emphasis added); *see also* [Ch. 11 Dkt., Doc. 6, p. 4] (arguing that Mr. Chassen resigned under the Debtor's operating agreement when "counsel for [Oak], the ultimate 20% owner of AREH, confirmed in writing that Mr. Chassen was not devoting substantially all of his business time for the benefit of [the Debtor] . . . [and] [s]uch resignation was voluntary and not forced by Mr. Simpson"); [Ch. 11 Dkt., Doc. 56, pp. 16–17] ("We absolutely have an argument that we don't believe has been addressed by the state court, which is the -- you know, what we referred to as the voluntary resignation in our objection to the motion to shorten notice, which is whether or not Mr. Chassen's been devoting substantially all of his business time for the benefit of [the Debtor].").

argument—joined Mr. Chassen's Motion to Dismiss on March 18, 2024. [7]  *See* [Ch. 11 Dkt., Doc. 13] (collectively with Mr. Chassen's Motion to Dismiss, the "Motions to Dismiss").

    **c.**  **The Lift Stay Motions and the Remand Motion**

    Mr. Chassen and AREH filed the Lift Stay Motions on March 25, 2024. Both Motions argue that, in the Second Circuit, "[t]he automatic stay generally only applies to the debtor and its property and does not extend to third parties, such as third party guarantors, co-debtors, officers and members of a debtor."  [Ch. 11 Dkt., Doc. 38, pp. 7–8, 13] (describing this bankruptcy as "an attempt to use the automatic stay as [both] a sword and a shield"); [Ch. 11 Dkt., Doc. 40, pp. 22–31]. Those Motions request an order confirming that the automatic stay does not apply to the State Court Proceeding or, alternatively, modifying the automatic stay as necessary such that the State Court Proceeding can go forward.  [Ch. 11 Dkt., Doc. 40, p. 7]; [Ch. 11 Dkt., Doc. 38, pp. 7–8].

    The Debtor removed the State Proceeding to the District Court on April 1, 2024, ostensibly pursuant to 28 U.S.C. §§ 1334 and 1452 and Bankruptcy Rule 9027.  *See generally* [Doc. 1].  Mr. Simpson and the Debtor filed their Lift Stay Objections that same day.  [Ch. 11 Dkt., Doc. 60] (where, among other things, the Debtor argues the Lift Stay Motions are moot because "the State [Court Proceeding] has been removed to this Court and is no longer pending in the State Court");

---

[7]    The Bankruptcy Code provides certain time limits applicable to the resolution of a motion to dismiss a bankruptcy.  *See* 11 § U.S.C. 1112(b)(3) (following the filing of a motion to dismiss, a court must "commence the hearing on [the] motion [to dismiss] not later than 30 days after filing . . . and shall decide the motion not later than 15 days after commencement of such hearing . . . .").  The Bankruptcy Code, however, makes those time periods inapplicable where "the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting th[ose] time limits . . . ."  *Id.*

A hearing on the Motion to Dismiss was initially set for April 5, 2024.  [Ch. 11 Dkt., Doc. 50, p. 2].  However, on March 27, 2024, counsel for Mr. Chassen wrote a letter to this Court indicating that Mr. Chassen, AREH and the Debtor "have agreed to adjourn the Motion to Dismiss pending the Court's determination of the Stay Relief Motions, so that the Court and all parties may collectively preserve resources that would otherwise be expended in a contention discovery process . . . ."  *See id.* at p. 1.  The Court therefore finds the time periods set by Section 1112(b)(3) inapplicable.

[Ch. 11 Dkt., Doc. 62, p. 1–2] (where Mr. Simpson argues that "*this Court* must resolve the questions of who is in control of the Debtor and whether the Debtor is in control of AREH, as these issues are fundamental to the administration of th[e] Bankruptcy") (emphasis in original).   The District Court referred the case to this Court on April 3, 2024, in accordance with the Amended Standing Order of Reference, M-431 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).  *See* [Doc. 1-3].

Mr. Chassen and AREH filed the Remand Motion on April 10, 2024.  [Doc. 2].  That Motion makes, in essence, two arguments:

(i)     Mr. Chassen and AREH first argue that "[r]emoval of this action to federal court was improper because [any basis for] federal jurisdiction is lacking . . . [a]nd even if there were a basis for federal bankruptcy court jurisdiction, remand would nevertheless be required on principles of mandatory abstention," *see* [Doc. 2, pp. 8–25] (discussing 11 U.S.C § 1334(c)(2)); and

(ii)    in the alternative, Mr. Chassen and AREH argue that this adversary proceeding should be dismissed on the grounds of either permissive abstention under 28 U.S.C. § 1334(c)(1), or equitable remand in accordance with *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405 (S.D.N.Y. 1991) and its progeny, *see id.* [Doc. 2, pp. 26–39].

The Remand Objection contests both arguments.  With respect to subject matter jurisdiction, Mr. Simpson and the Debtor maintain that the State Court Proceeding is "core" under 28 U.S.C. § 157(b)(2)) because it "involves and directly affects the property of the estate."  [Doc. 20, p. 16]. As to the Remand Motion's second argument, Mr. Simpson and the Debtor claim that "the exercise of either equitable remand or permissive abstention of a core proceeding is appropriate in only a few extraordinary and narrow contexts," and, given these restraints, "Chassen, AREH and Oak have failed to . . . establish[] that permissive abstention or equitable remand is warranted . . . ." *Id.* at pp. 10, 24.  Mr. Chassen and AREH filed a reply to the Remand Objection on April 30, 2024. *See* [Doc. 23].

This Court issued its Remand Ruling on June 10, 2024. *See generally* [Doc. 26]. In accordance with 11 U.S.C § 157(c)(1), the Remand Ruling submitted the following proposed findings of fact and conclusions of the law to the District Court:

(i)    with respect to the State Court Proceeding, only "related to" jurisdiction exists under 28 U.S.C. § 1334(b);

(ii)    the State Court Proceeding is a "non-core" proceeding within the meaning of 28 U.S.C. § 157(b);

(iii)    the Commercial Division can "timely adjudicate" the State Court Proceeding;

(iv)    with respect to the State Court Proceeding, abstention is mandated under 28 U.S.C. § 1334(c)(2); and

(v)    alternatively, permissive abstention and equitable remand are warranted under 28 U.S.C. §§ 1334(c)(1) and 1452(b).

*See id.* p. 36. The following ruling is conditional upon the District Court's ruling on the proposed findings of fact and conclusions of law contained within the Remand Ruling.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). *See In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1297 (2d Cir. 1990) ("As one might anticipate from the unstructured nature of the issue, existing caselaw indicates that the 'decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge' . . . .").

## ANALYSIS

### III.    THE AUTOMATIC STAY

Section 362 of the Bankruptcy provides that the filing of a bankruptcy petition:

operates as a stay, applicable to all entities, of [] the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . .

> . . or to recover a claim against the debtor . . . [as well as a stay of] any act to obtain
> possession of property of the estate . . . .

11 U.S.C. § 362(a).  The automatic stay is a "fundamental protection [of] the Bankruptcy Code"

that "allow[s] [a] bankruptcy court to centralize all disputes concerning the [estate] so that

reorganization can proceed efficiently." *In re St. Vincents Catholic Med. Centers of New York*,

2012 WL 4462030, at *3 (S.D.N.Y. Sept. 27, 2012); *see also MBNA Am. Bank, N.A. v. Hill,* 436

F.3d 104, 109 (2d Cir. 2006) (describing that "important purposes" served by the automatic stay,

including "providing debtors with a fresh start [and] protecting the assets of the estate"); *In re 48th*

*St. Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987) (noting that "actions taken in violation of

the stay are void and without effect") (citing 2 L. King, *Collier on Bankruptcy* § 362.11 (15th ed.

1987)); *S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) ("The general policy behind [Section

362(a)] is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and

also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be

effected.").

Though "[t]he automatic stay [typically] remains until the case is closed, dismissed, or a

discharge is decided," the protections of the automatic stay are not absolute.  *In re Nuovo Ciao-Di*

*LLC*, 2023 WL 6202467, at *4 (Bankr. S.D.N.Y. Sept. 22, 2023).  As relevant here, Section 362

provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant

relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay []

for cause . . . ." 11 U.S.C. § 362(d)(1).  Though the term "cause" is not defined by the Bankruptcy

Code, when a party seeks to "continue pre-petition litigation," the Second Circuit has enumerated

12 factors relevant to the question of whether cause exists to lift the stay:

> (1) whether relief would result in a partial or complete resolution of the issues;  (2)
> lack of any connection with or interference with the bankruptcy case;  (3) whether
> the other proceeding involves the debtor as a fiduciary;  (4) whether a specialized
> tribunal with the necessary expertise has been established to hear the cause of

action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984)).  Not every factor is always relevant, and each factor's weight depends upon the facts and circumstances of a given case.  *In re Ditech Holding Corp*., 2022 WL 16952443, at *13 (Bankr. S.D.N.Y. Nov. 15, 2022); *see also Osuji v. Deutsche Bank, N.A.,* 589 B.R. 502, 508 (E.D.N.Y. 2018) ("Courts consider the term 'for cause' to be 'a broad and flexible concept that must be determined on a case-by-case basis.'").  The movant bears the burden of establishing the existence of cause.  *In re Ditech Holding Corp.,* 2022 WL 16952443, at *13.

In this case, AREH and Mr. Chassen argue that the claims litigated in the State Court Proceeding fall outside the purview of the automatic stay because "the automatic stay does <u>not</u> extend to third parties, such a debtor's guarantors, affiliates, co-debtors, officers and members." [Ch. 11 Dkt., Doc. 40, p. 22] (emphasis in original); *see also* [Ch. 11 Dkt., Doc. 38, pp. 8, 14–15]. Alternatively, AREH and Mr. Chassen maintain that the factors enumerated by *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990) indicate that "cause [exists] to modify the automatic stay for the limited and immediate purpose of adjudicating the [State Court Proceeding] before the Commercial Division."  [Ch. 11 Dkt., Doc. 38, p. 2] (internal quotations omitted); *see also* [Ch. 11 Dkt., Doc. 40, p. 27] ("In the instant matter, the *Sonnax* factors are implicated and weigh in favor of lifting the stay.").  The Court addresses each argument in turn.

a.  **Applicability to the State Court Proceeding**

As noted above, the automatic stay halts, *inter alia*, suits "to recover a claim against the debtor that arose before the commencement of the [bankruptcy] . . . ." 11 U.S.C. 362(a).  Broadly speaking, the State Court Proceeding implicates three categories of claims.[8]  The first of these are

---

[8]     The automatic stay does not apply wholesale to a given proceeding, but instead protects only the continuation of a suit "to recover a claim *against the debtor*" arising pre-petition.  *See* 11 U.S.C. 362(a); *see also Anderson v. Greyhound Lines, Inc.,* 2008 WL 11517815, at *2 n.1 (S.D.N.Y. Nov. 5, 2008) ("[G]enerally the automatic stay will not extend to non-debtor defendants unless 'specific circumstances' suggest that the automatic stay would help the debtor's efforts of rehabilitation . . . or that proceeding with the pending litigation would harm the debtor party."); *Hatteras Enterprises Inc. v. Forsythe Cosmetic Group, Ltd.*, 2024 WL 1908593, at *3 (E.D.N.Y. May 1, 2024) ("The plain language of Section 362(a)(1) of the bankruptcy code limits the extension of an automatic stay to a proceeding against the debtor . . . [but in] 'unusual situations[,] a court may extend the automatic stay to non-bankrupt co-defendants of the debtor.") (internal quotations and citations omitted).

14

claims brought *against* the Debtor by Oak.[9]  *See e.g.*, [Doc. 2-1, p. 3] (listing claims including,

*inter alia*, breach of fiduciary duty, equitable accounting, and breach of contract).  These claims

are plainly implicated by the automatic stay.  *See* 11 U.S.C. 362(a) (staying "proceeding *against*

the debtor . . . or to recover a claim *against the debtor . . . .*").

The second of these are derivative actions brought on behalf of the Debtor against Mr.

Chassen, Mr. Simpson and Oak.  *See generally* [Doc. 2-1].  These claims are properly considered

property of the Debtor's estate.  *See In re: Culligan Ltd.*, 2023 WL 5942498, at *11 (Bankr.

S.D.N.Y. Sept. 12, 2023) ("The automatic stay [is] applicable with respect to the debtor's property

---

[9]      Though some of the claims brought by Oak are derivative claims asserted on behalf of AREH against the Debtor, Oak has also brought claims seeking a finding that, because the Debtor has allegedly committed a "cause event" in violation of the AREH operating agreement, Oak is the sole remaining member of the AREH.  *See* [Doc. 2-1]; [Doc. 1-2, p. 145] ("Oak desires a declaration that as of no later than 12:01am on November 17, 2023, (1) [the Debtor] is no longer AREH's Managing Member, and (2) Oak is AREH's Managing Member.").  AREH and Mr. Chassen thus argue that the automatic stay does not implicate "corporate governance rights at AREH . . . as it is generally accepted in this Circuit (and most others) that the automatic stay does not impact governance rights of a debtor and most certainy [sic] the corporate governance rights of non-debtor third parties . . . ." [Ch. 11 Dkt., doc. 38, p. 8]; *see also* [Ch. 11 Dkt., Doc. 40, p. 23] ("At a high level, the [State Court Proceeding] involve[s] differing views as to which of the Debtors' Members should be in control over any managed entities and/or properties that are still under its control.").

This position is misguided.  As noted above, Section 362 of the Bankruptcy Code provides that a petition acts a stay of "*any act* to obtain possession of property of the estate . . . ." 11 U.S.C. § 362(a) (emphasis added).  Section 541 of the Bankruptcy Code, in turn, provides that a bankruptcy estate comprises "all legal or equitable interests of the debtor in property as of the commencement of the case," including "[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, within the debtor's reach . . . ." *See* 11 U.S.C. § 541(a)(1); *In re Vernon 4540 Realty LLC*, 2022 WL 2118414, at *4 (S.D.N.Y. June 13, 2022) (citing *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)).

A debtor's direct membership interest in a subsidiary constitutes "property of the estate" within the meaning of Section 541 of the Bankruptcy Code.  *See In re Garcia*, 494 B.R. 799 (Bankr. E.D.N.Y. 2013) ("Accordingly, when a member of an LLC files a bankruptcy petition, his interest in the LLC, and any rights he has under the LLC's operating agreement, becomes property of the estate."); *see also In re McCaffrey*, 2023 WL 5612742, at *6 (Bankr. N.D.N.Y. Aug. 30, 2023) ("There is no dispute that Debtor's 100% membership interests in the limited liability companies are property of the estate under section 541."); *Manson v. Friedberg*, 2013 WL 2896971, at *3 (S.D.N.Y. June 13, 2013) ("Whatever legal or equitable interest an individual has in an LLC [under state law] is personal property within the meaning of the bankruptcy estate under § 541.").  Reduced to their most basic form, Oak's claims against the Debtor seek to divest the Debtor of its interest in AREH—the Debtor's primary subsidiary.  *See* [Ch. 11 Dkt., Doc. 16, p. 5] (the First Day Affidavit of Mr. Simpson, which describes the Debtor's position as the managing member of AREH as the Debtor's "most valuable asset"); [Doc. 20, p. 11] (claiming that the Debtor was, *from the first,* formed to "manag[e] AREH, AREH's various direct and indirect subsidiaries and investments and certain non-AREH investment vehicles").  The Court thus finds that, contrary to the position taken by the Lift Stay Motions, AREH's so-called "corporate disputes" fall within the purview of the automatic stay.

within the territorial jurisdiction of the United States . . . [and] [d]erivative claims, including those

brought by shareholders, become property of the debtor's estate upon the filing of a bankruptcy.")

(citing *Pub. Sch. Teachers' Pension & Ret. Fund v. Ambac Fin. Grp., Inc. (In re Ambac Fin. Grp.,*

*Inc.*), 487 F. App'x 663, 665 (2d Cir. 2012)).   However, because Section 362(a) does not, by its

own terms, stay proceedings where a debtor appears as a party-plaintiff, these claims are not

automatically subject to the automatic stay.[10]  *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2024

WL 1724592, at *36 (S.D.N.Y. Apr. 19, 2024); *see also Assoc. of St. Croix Condo. Owners v. St.*

*Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982) ("Section 362 by its terms only stays

proceedings against the debtor."); *accord, Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994)

("This Court has recognized that the automatic stay is applicable only to proceedings 'against' the

debtor . . . .") (internal citations omitted).

---

[10]    The Court nonetheless notes that, because these derivative actions are property of the estate, they are assertable exclusively by the Debtor.  As the Second Circuit has observed:

> [W]hile normally the fiduciary obligation of officers, directors and shareholders "is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee."  Under section 70(a) of the Bankruptcy Act of 1898, 11 U.S.C. § 110(a) (repealed 1978), the trustee succeeded to any right of action that the debtor corporation may have had to recover damages—either directly or by means of a derivative action—for the violation of fiduciary duty by officers or directors.  The Bankruptcy Reform Act of 1978 did not change this structure in significant ways.  Under 11 U.S.C. § 541, the rights of action of the debtor pass to the estate created by the commencement of the bankruptcy proceeding, not directly to the trustee.  Those rights, however, are still normally vindicated by the trustee.  Moreover, the section 541 estate "includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act." H.R.Rep. No. 595, 95th Cong., 2d Sess. 367, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6323 . . . Thus, appellant's argument has no more merit under the 1978 Act than it had under the 1898 Act.  It is true, of course, that under certain circumstances a shareholder may assert a cause of action of the debtor even after the commencement of a bankruptcy proceeding . . . [b]ut in these cases, some proceeding in the bankruptcy court must take place before a shareholder can assert the right directly.

*Mitchell Excavators, Inc. by Mitchell v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984) (internal citations omitted); *see also* 11 U.S.C. § 1107(a) (providing that, in a Chapter 11 case, "a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under [Chapter 11]").

The final category of claims involves those between non-Debtor third parties. This category encompasses, for example, claims asserted by Oak directly against Mr. Simpson, or by Mr. Simpson against Mr. Chassen. *See, e.g.*, [Doc. 2-1, p. 3] (listing claims asserted by Mr. Chassen against Mr. Simpson for, *inter alia*, specific performance, breach of contract, and a "[d]eclaratory [j]udgment that [the] JJ Arch Amended Operating Agreement is void); *id.* at p. 4 (listing claims asserted by Oak against Mr. Simpson for, *inter alia*, defamation, fraud, and tortious interference with contract). It is axiomatic that "[a] suit against a [non-debtor] is not automatically stayed by the debtor's bankruptcy" unless that suit involves "a claim against [a] non-debtor [that] will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Intern.*, 321 F.3d 282, 287 (2d Cir. 2003); *accord, Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014). The Second Circuit has identified three such claims:

(i)     claims that seek to "establish an obligation of which the debtor is a guarantor," *Queenie*, 321 F.3d at 287 (citing *McCartney v. Integra National Bank North*, 106 F.3d 506, 510–11 (3d Cir.1997));

(ii)    claims against the debtor's insurer, *see id.* (citing *Johns–Manville Corp. v. Asbestos Litigation Group (In re Johns–Manville Corp.)*, 26 B.R. 420, 435–36 (Bankr.S.D.N.Y.1983) (on rehearing)); and

(iii)   claims where "there is such identity between the debtor and the third-party [] that the debtor may be said to be the real party defendant," *id.* at 288 (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986)).

Neither the Debtor nor Mr. Simpson has argued that the claims brought against non-Debtor third parties fall within the three categories listed above.[11] *See generally* [Ch. 11 Dkt., Doc. 60]; [Ch. 11 Dkt., Doc. 62]. Accordingly, the Court agrees with AREH and Mr. Chassen in that the automatic

---

[11]     The Debtor's operating agreement does indicate that, in certain instances, the Debtor may be obligated to indemnify either Mr. Simpson or Mr. Chassen. *See* [Doc. 1-2, pp. 206, 227, 231]. It is, however, well-established that "[t]he mere possibility of a future indemnification claim will not support application of the automatic stay . . . ." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 564 B.R. 192, 195 (S.D.N.Y. 2016) (collecting cases).

stay does not apply to the claims pending between non-Debtor third parties.[12]  [Ch. 11 Dkt., Doc.
40, p. 22]; [Ch. 11 Dkt., Doc. 38, pp. 8, 14–15].  The Court thus finds the automatic stay applies
to one category of claims: those where the Debtor appears as a party-defendant.

### b. Lifting the Stay

The Court must next address whether and which factors enumerated by *In re Sonnax
Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990) support a finding of "cause" such that the claims
asserted against the Debtor may proceed.[13]  As noted above, not every *Sonnax* factor is always
relevant, and each factor's weight depends upon the facts and circumstances of a given case.  *In re
Ditech Holding Corp.*, 2022 WL 16952443, at *13 (Bankr. S.D.N.Y. Nov. 15, 2022); *see also Osuji
v. Deutsche Bank, N.A.,* 589 B.R. 502, 508 (E.D.N.Y. 2018) ("Courts consider the term 'for cause'
to be 'a broad and flexible concept that must be determined on a case-by-case basis.'").

---

[12]    To the extent the Debtor and Mr. Simpson believe that their removal of the State Court Proceeding renders
"any request to lift or modify the automatic stay to return any of the State Court Action to the State Court [] moot,"
*see* [Ch. 11 Dkt., Doc. 60, p. 13], the Court disagrees in light of the Remand Ruling.  *See* [Doc. 26].

[13]    For reference, there are five claims presently pending against the Debtor:

    (i)     claims asserted by Oak against the Debtor, AREH and Mr. Simpson for breach of fiduciary duty,
          breach of contract, and equitable accounting, *see* [Doc. 2-1, p. 4];
    (ii)    a claim asserted by Oak against the Debtor and Mr. Simpson seeking a declaratory judgment, *see id.*;
          and
    (iii)   a derivative claim asserted by Oak on behalf of AREH against the Debtor and Mr. Simpson, *id*.

The Court finds that the first, second, sixth, tenth, and eleventh factors support lifting the stay with respect to the claims asserted directly against the Debtor.[14]  The Court further finds that the remaining *Sonnax* factors are either irrelevant to or do not, on balance, support the preservation of the stay.  *See In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1297 (2d Cir. 1990) ("[The] decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge . . . .").

The first, tenth, and eleventh factors—whether and to what extent relief could resolve unsettled issues, judicial economy, and the parties' readiness for trial—clearly favor the lifting of the stay.  Because the automatic stay applies to only a fraction of the claims asserted in the State Court Proceeding, the wholesale continuation of the State Court Proceeding would result in the resolution of the issues outstanding at the time of removal.  Judicial economy would therefore be served by the lifting of the stay, particularly in light of: (i) Justice Cohen's familiarity with the issues raised by both parties; (ii) the interrelated nature of their respective claims; and (iii) the fact that, prior to this bankruptcy, Justice Cohen was poised to answer an "ultimate issue" in this case: the party properly in control of the Debtor.  *See* [Doc. 1-2, pp. 334–363] (the docket from the

---

[14]    As mentioned *supra*, the *Sonnax* factors are:

(1) whether relief would result in a partial or complete resolution of the issues;  (2) lack of any connection with or interference with the bankruptcy case;  (3) whether the other proceeding involves the debtor as a fiduciary;  (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;  (5) whether the debtor's insurer has assumed full responsibility for defending it;  (6) whether the action primarily involves third parties;  (7) whether litigation in another forum would prejudice the interests of other creditors;  (8) whether the judgment claim arising from the other action is subject to equitable subordination;  (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;  (10) the interests of judicial economy and the expeditious and economical resolution of litigation;  (11) whether the parties are ready for trial in the other proceeding; and  (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984)).

Commercial Division, which contains over 600 docket entries logged between August and the date of removal); *see also* [Ch. 11 Dkt., Doc. 41-19]; [Ch. 11 Dkt., Doc. 4-5, pp. 42, 63].

Relatedly, the twelfth factor—impact of the stay and the balance of harms—favors lifting the stay.  Prior to this bankruptcy, the parties spent seven months litigating their rights before Justice Cohen.  That litigation resulted in a robust record, as well as the issuance of Interim Orders designed to, in the words of Justice Cohen, "keep the ship afloat while the litigation proceeds . . . ." [Ch. 11 Dkt., Doc. 14-1, p. 82].  This bankruptcy (and its resulting automatic stay) has therefore: (i) deprived the parties to the State Court Proceeding of the benefit of a court familiar with the issues presented in this case; and (ii) cast doubt on the applicability of provisional orders intended to benefit *all* parties by maintaining the Debtor's ability to operate AREH.[15]

Finally, with respect to the second and sixth factor—lack of connection with the bankruptcy and the degree of third-party involvement—and as discussed at length in the Remand Ruling, *see* [Doc. 26, pp. 12–18], because the State Court Proceeding is a non-core proceeding involving almost exclusively third parties, the relationship between this bankruptcy and the issues raised in the State Court Proceeding is attenuated.  That relationship is, standing alone, insufficient to

---

[15]    The Court notes that third parties to the State Court Proceeding have filed several motions that question the continued applicability of the Interim Orders following the filing of this bankruptcy.  *See* [Ch. 11 Dkt., Doc. 110, p. 8] (where an investor in an AREH subsidiary seeks an order "modify[ing] the automatic stay for the purpose of conducting a UCC Sale of the [investment] [p]roperty" because "[i]mposition of the stay against [the investor] would create an outsized harm"); *see also* [Ch. 11 Dkt., Doc. 23, pp. 3, 6–7) (where another investor in an AREH subsidiary seeks an order "[r]emoving the Debtor and empowering the [Subchapter V] Trustee to take control of the Debtor" given the Debtor's "mismanagement, incompetence, and disregard of fiduciary duty in this [bankruptcy]").

warrant the continued stay of the claims asserted directly against the Debtor. The stay should therefore be lifted with respect to those claims.[16]

### CONCLUSION

For the foregoing reasons, the Lift Stay Motions [Ch. 11 Dkt., Docs. 38 and 40] are GRANTED, conditional upon the District Court's ruling on this Court's Remand Ruling.

**IT IS SO ORDERED.**

Dated: <u>June 10, 2024</u>
New York, New York

<u>/S/ John P. Mastando III</u>
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

---

[16] The Court also notes that this decision is supported by the fact that Mr. Simpson—the principal of the Debtor who initiated this bankruptcy—was also the party who initiated the State Court Proceeding. *See Matter of Kossoff PLLC*, 2023 WL 3361053, at *4 (Bankr. S.D.N.Y. May 10, 2023) ("Congress intended that one of the factors to consider when determining whether to modify the stay is whether . . . it w[ould] [] be more appropriate to permit proceedings to *continue in their place of origin*, when no great prejudice to the bankruptcy estate would result, in order to leave the parties *to their chosen forum* and to relieve the bankruptcy court from duties that may be handled elsewhere . . . .") (emphasis added) (citing S.Rep. 95-989, 50, 1978 U.S.C.C.A.N. 5787, 5836).