DAVIDOFF HUTCHER & CITRON LLP
*Proposed Substitute Attorneys* for *JJ ARCH LLC*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Jonathan S. Pasternak

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

JJ ARCH LLC,                                          Case No. 24-10381 (JPM)


JEFFREY SIMPSON, individually and derivatively, as        Adv. Pro. No. 24-01335 (JPM)
managing member of JJ ARCH LLC, suing derivatively
as managing member of ARCH REAL ESTATE
HOLDINGS LLC and JJ ARCH LLC,
                                    Petitioner,           (Removed Proceeding)


                    -against-


JAROD CHASSEN, FIRST REPUBLIC BANK,


                        Respondents.

-------------------------------------------------------------------x
JARED CHASSEN, individually and derivatively, as managing
member of JJ ARCH LLC, suing derivatively as managing
member of ARCH REAL ESTATE HOLDINGS LLC and JJ
ARCH LLC

                                    Counterclaim Plaintiffs
                    -against -

JEFFREY SIMPSON and YJ SIMCO LLC

                                    Counterclaim Defendants

                    And

JJ ARCH LLC and ARCH REAL ESTATE HOLDINGS LLC

Nominal Defendants,

-----------------------------------------------------------------------------x

608941 NJ INC.

Intervenor-Plaintiff

Against

JEFFREY SIMPSON, JJ ARCH LLC, AND ARCH REAL
ESTATE HOLDINGS LLC,

Defendants

AND

ARCH REAL ESTATE HOLDINGS, LLC

Nominal Defendant.

-----------------------------------------------------------------------------x

**PRELIMINARY OBJECTION OF JJ ARCH LLC TO THE BANKRUPTCY COURT'S
<u>PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

**DAVIDOFF HUTCHER & CITRON LLP**
***Proposed Substitute Attorneys for JJ Arch LLC***
**605 Third Avenue**
**New York, New York 10158**
**(212) 557-7200**

## **TABLE OF CONTENTS**

Table of Contents
TABLE OF AUTHORITIES ................................................................................................. ii
PRELIMINARY STATEMENT ........................................................................................... 1
BACKGROUND ................................................................................................................... 6
CHAPTER 11 CASE ........................................................................................................... 15
   A.   Status of the Removed State Court Action................................................... 15
   B.   Debtor's Financial Interest in AREH and its Subsidiaries ........................... 18
   C.   Good Faith and Legitimate Purpose of this Chapter 11 Case ....................... 20
OBJECTION ....................................................................................................................... 21
   A.   The State Court Action Was Properly Removed Because This Court Has Jurisdiction Over Such Action...................................................................................................... 21
   B.   Mandatory Abstention Does Not Apply, And Even if it Did, its Requirements Are Not Met.  27
   C.   Neither Permissive Abstention nor Equitable Remand Are Warranted or Appropriate. 29
   D.   The Debtor Has Not Been Provided an Opportunity to Conduct Necessary Discovery in Connection with the Remand Filings...................................................................................... 36
RESERVATION OF RIGHTS ............................................................................................. 37
NOTICE ............................................................................................................................... 37
CONCLUSION .................................................................................................................... 38

## **TABLE OF AUTHORITIES**

**Cases**

*AYH Wind Down LLC v. Engelman (In re All Year Holdings Ltd.)*, 73 BCD 104, 2024 WL 1460157, at *5 (Bankr. S.D.N.Y. 2024) ................................................................ 28

*Bank of Am., NT&SA v. Nickele*, No. CIV.A. 98-1501, 1998 WL 181827, at *4 (E.D. Pa. Apr. 16, 1998) ...................................................................................................................... 21

*Bauer v. Planning Bd. of Vil. of Scarsdale*, 159 A.D.2d 532, 552 N.Y.S.2d 397 ...................... 14

*Bricker v. Martin*, 348 B.R. 28, 36 (W.D. Pa. 2006), aff'd, 265 F. App'x 141 (3d Cir. 2008). .... 31

*Cody, Inc. v. Cnty. of Orange*, 281 B.R. 182, 190 (S.D.N.Y. 2022) ........................................... 27

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 713 (S.D.N.Y. 2013).......... 27

*In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010)............................................................ 24

*In re Hal Luftig Co., Inc.*, 657 B.R. 704, 707 (S.D.N.Y. 2024)..................................................... 4

*In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008) .......................................................... 27

*In re Johns-Manville Corp.*, 801 F.2d 60 (2d Cir. 1986)....................................................... 21, 22

*In re Motors Liquidation Co.*, 457 B.R. 276, 290 (Bankr. S.D.N.Y. 2011) ............................... 30

*In re Ne. Indus. Dev. Corp.*, 513 B.R. 825, 839 (Bankr. S.D.N.Y. 2014), adopted, No. 14-CV-7056 NSR, 2015 WL 3776390 (S.D.N.Y. June 16, 2015)................................................. 31

*In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 153 (Bankr. S.D.N.Y. 2010) ....... 32

*In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002) ....................................................... 24

*In re Relativity Fashion, LLC*, 696 F. App'x 26, 28 (2d Cir. 2017) (quoting *In re U.S. Lines, Inc.*, 197 F.3d 631, 638 (2d Cir. 1999).................................................................................... 20

*In re Residential Cap., LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014) .................................. 27

*In re SCK Corp.*, 54 B.R. 165, 169 (Bankr. D.N.J. 1984) ........................................................... 29

*In re Tronox Inc.*, 855 F.3d 84, 99 (2d Cir. 2017)...................................................................... 19

*In re Warner*, 480 B.R. 641, 647-48 (Bankr. N.D.W. Va. 2012) ................................................ 19

*In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 317 (S.D.N.Y. 2003) ................................. 23, 28

*In re WP Realty Acquisition III, LLC*, 626 B.R. 154, 161 (Bankr.S.D.N.Y. 2021)............... passim

*Nemsa Establishment, S.A. v. Viral Testing Systems Corp.*, 1995 WL 489711 at *7 (S.D.N.Y.1995)........................................................................................................... 30

*Neuman v. Goldberg*, 159 B.R. 681, 688 (S.D.N.Y. 1993) ........................................................ 30

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011)................. 24

*Peterson v. Corbin* 275 A.D.2d 35, 40, 713 N.Y.S.2d 361, 365 (N.Y.A.D. 2 Dept.,2000) ........ 14

*Renaissance Cosmetics, Inc. v. Development Specialists Inc.*, 277 B.R. 5, 12-13 (Bankr. S.D.N.Y. 2002) .............................................................................................................. 24

*SecurityNational Mortg. Co. v. Lehman Bros. Holdings Inc.*, No. 20MC00027 (LAK) (DF), 2020 WL 9815257, at *16 (S.D.N.Y. July 10, 2020)................................................................... 5

*Shiboleth v. Yerushalmi*, 412 B.R. 113, 116-17 (S.D.N.Y. 2009) .............................................. 31

*Stern v. Marshall*, 564 U.S. 462, 471, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).......................... 5

*Taub v. Taub*, 413 B.R. 81, 92–93 (Bankr. E.D.N.Y. 2009) ...................................................... 27

*Vander Malle v. Ambach*, 667 F.Supp. 1015 (S.D.N.Y.,1987)................................................... 14

**Statutes**

11 U.S.C. § 1101..................................................................................................................... 2

11 U.S.C. § 1107.................................................................................................. 2
11 U.S.C. § 1108.................................................................................................. 2
28 U.S.C. § 1334.......................................................................................... passim
28 U.S.C. § 1334(c)....................................................................................... 2, 26
28 U.S.C. § 1452.................................................................................... 2, 19, 26
28 U.S.C. § 157(b)........................................................................................ 2, 20
28 U.S.C. § 157(c)(1)....................................................................................... 1, 4

**Rules**

CPLR §3217 (a)................................................................................................. 35
Fed.R.Civ.P. Rule 41(a)..................................................................................... 35
Fed.R.Civ.P. Rule 41(a)(1)(A)..................................................................... 12, 35
Fed.R.Civ.P. Rule 41(a)(1)(B)........................................................................... 35
Fed.R.Civ.P. Rule 43(c)..................................................................................... 11

JJ Arch LLC, the debtor and debtor-in-possession in the above-captioned Chapter 11 case

(the "**Debtor**" and, such case, the "**Chapter 11 Case**"),[1] by and through its undersigned counsel,

hereby submits this Preliminary Objection (the "**Objection**") to the *Memorandum Opinion and*

*Order, and Findings of Fact and Conclusions of Law, on Jared Chassen and Arch Real Estate*

*Holdings LLC's Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative,*

*Principles of Abstention or Equity* [Main Docket No. 131] and Adversary Docket No. 26, dated

June 10, 2024 (the "**Proposed Findings**"), a copy of which is annexed hereto as Exhibit "1"[2],

pursuant to 28 U.S.C. § 157(c)(1) and Rule 9033 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**") seeking, among other things, a *de novo* review of the Proposed

Findings and respectfully states as follows:[3]

## PRELIMINARY STATEMENT

1.        The Debtor objects[4] to the following Proposed Findings:

(i)        this Court only has "related to" jurisdiction over the State Court
Proceeding under 28 U.S.C. § 1334(b);

(ii)       the State Court Proceeding is a "non-core" proceeding within the meaning
of 28 U.S.C. § 157(b);

(iii)      the Commercial Division of the Supreme Court of the State of New York
cannot "timely adjudicate" the State Court Proceeding;

---

[1] References herein to "Main Docket" or "Main Dkt." refer to the main docket of this Chapter 11 Case, Case No. 24-10381 (JPM), and references to "Adversary Docket" or "Adversary Dkt." refer to the docket for the adversary proceeding commenced in this Chapter 11 Case, Adv. Pro. No. 24-01335 (JPM).

[2] Pursuant to the Proposed Findings, the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), recommended that the District Court grant *Jared Chassen and Arch Real Estate Holdings LLC's Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative, Principles of Abstention or Equity* [Adversary Docket No. 2] (the "**Remand Motion**")[2] and (ii) *Oak's Joinder to Motion to Remand* [Adversary Docket No. 4] (the "**Remand Joinder**" and, together with the Remand Motion, the "**Remand Filings**").

[3] Capitalized terms used in this Preliminary Statement but not yet defined have the meanings given to such terms in the remainder of this Objection.

[4] A designation of record accompanies this Objection.  This Objection will provide an overview of the issues for the Court's consideration.

(iv)    abstention is mandated under 28 U.S.C. § 1334(c)(2); and (v) alternatively, permissive abstention and equitable remand are warranted under 28 U.S.C. §§ 1334(c)(1) and 1452(b).

2.      Contrary to the Bankruptcy Court's findings of fact and conclusion of law, the identity of parties in this dispute is a "matter concerning the administration of the estate," and "other proceedings affecting the liquidation of the estate or the adjustment of the debtor-creditor or the **equity security holder relationship** and is thus within the Bankruptcy Court's core jurisdiction.  28 U.S.C. § 157(b)(2) (emphasis added).  Additionally, this litigation will determine the control and governance of a bankruptcy debtor, which, 28 U.S.C. § 157(b)(2)(A) designates as one of the core functions of the Bankruptcy Court.

3.      Furthermore, sections 1107 and 1108 of the United States Bankruptcy Code, as amended (the "**Bankruptcy Code**")[5] unambiguously assign the Bankruptcy Court, and not the Supreme Court of New York, Commercial Division (the "**State Court**") for the management of a Chapter 11 debtor-in-possession. 11 U.S.C. § 1101(1) ("debtor-in-possession means debtor"). Therefore, the Bankruptcy Court erroneously directed the State Court to determine who the identity of the "pilot of the ship."

4.      In this case, the Bankruptcy Court mistakenly identifies the Chapter 11 Case as a two-party dispute.  Here, the Debtor not only has more than one creditor, but also has many non-debtor affiliates whose interests are vital to the Debtor in the Chapter 11 Case.  As indicated in the organizational chart below, the Debtor's interests in property is owned by a separate single purpose entity (each, a "**Property Owner LLC**").  For that reason, *inter alia*, the outcome of this dispute has drastic outcomes for numerous other related entities and properties.

---

[5] 11 U.S.C. §§ 1101 and 1108 provide the debtor-in-possession shall operate the debtor's business, leaving to the Court, where necessary, to identify the management of the debtor.

The determination of control, then, is critical for reasons well beyond the four corners of this action and the Remand Filings. Below is a chart illustrating the ownership companies.



*This investment vehicle consists of Messrs. Simpson and Chassen, and certain AREH personnel, family and friends.

5.     In addition, the chart below illustrates the organization of the operating company. These charts and the relevant agreements, demonstrates that JJ Arch LLC (the Debtor), is a required and necessary party to transactions involving the various properties. Thus, that these matters belong in the bankruptcy courts.





6.      Under 28 U.S.C. § 157(c)(1) and Bankruptcy Rules 9033(b) and (d), this

Court must renew, *de novo*, proposed findings of fact and conclusions of law in matters where

the bankruptcy court does not believe it has core authority.

7.      28 U.S.C. § 157(c)(1) provides, in relevant part:

(1) A bankruptcy judge may hear a proceeding that is not a core
proceeding but that is otherwise related to a case under title 11. In
such proceeding, the bankruptcy judge shall submit proposed
findings of fact and conclusions of law to the district court, and
any final order or judgment shall be entered by the district judge
after considering the bankruptcy judge's proposed findings and
conclusions and after reviewing *de novo* those matters to which
any party has timely and specifically objected.

8.      Bankruptcy Rule 9033(b) and(d) provide, in relevant part:

(b) Objections: Time for Filing. Within 14 days after being served

4

with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objections within 14 days after being served with a copy thereof. A party objecting to the bankruptcy judge's proposed findings or conclusions shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs.

(d) Standard of Review. The district judge shall make a *de novo* review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions.

9.      As set forth in the statute and Bankruptcy Rules above, unlike appellate review where there are differing standards of review for factual determinations, legal determinations and exercises of discretion, the standard for all review of the Proposed Findings is *de novo*. The bankruptcy court's determination is entitled to no deference. *See, e.g., In re Hal Luftig Co., Inc.*, 657 B.R. 704, 707 (S.D.N.Y. 2024), *certificate of appealability denied*, No. 24CV166(DLC), 2024 WL 1892256 (S.D.N.Y. Apr. 30, 2024) ("To the extent claims encompassed by the third-party releases are non-core, the bankruptcy court is required to submit "proposed findings of fact and conclusions of law to the district court, for that court's [*de novo*] review and issuance of final judgment." (citing *Stern v. Marshall*, 564 U.S. 462, 471 (2011))."; *SecurityNational Mortg. Co. v. Lehman Bros. Holdings Inc.*, No. 20MC00027 (LAK) (DF), 2020 WL 9815257, at *16 (S.D.N.Y. July 10, 2020) ("[U]ltimately, the District Court will review the Bankruptcy Court's findings *de novo* after the Bankruptcy Court fully hears the proceeding and submits proposed findings of fact and conclusions of law.").

10.    The Removed Proceeding involves a dispute between Jeffrey Simpson ("**Simpson**"), as the Managing Member of the Debtor and Jared Chassen ("**Chassen**"), Arch Real Estate Holdings LLC ("**AREH**") and 608941 NJ, Inc. ("**Oak**").    Thus, the Proposed Findings misallocate the Bankruptcy Court functions.  The District Court, charged with *de novo* review of the Proposed Findings, must restore this function, *inter alia*, to the Bankruptcy Court by retaining, rather than remanding, the Removed Proceeding.

## **BACKGROUND**

11.    Both the Bankruptcy Court and the State Court from which this matter is removed ignore Amendment No. 1 to the Limited Liability Company Agreement of JJ Arch (the "**Amendment**" and the "**Operating Agreement**" respectively) which designates, subject to certain notice provisions, sole management authority to Simpson.[6]   A copy of the Operating Agreement is annexed hereto as Exhibit "2."  A copy of the Amendment is annexed hereto as Exhibit "3."

12.    The Amendment allocates control of the Debtor to Simpson, stating, in relevant part, as follows:

> (2[e]) Section 3.1 of the Operating Agreement is hereby deleted in its entirety and the following is inserted in lieu thereof:
>
> "3.1 Management of the Company. The business, affairs and assets of the Company shall be managed, arranged and caused to be coordinated by Simpson, who shall have, except as otherwise provided in this Agreement (including, but not limited to, in Section 3.2), full, exclusive and complete discretion with respect thereto. Subject to and in accordance with the provisions of this Agreement, the Members shall have all necessary and appropriate powers to carry out the purposes of the Company set forth in Section 2.4. **Except as otherwise provided in this Agreement,**

---

[6] Prior to Amendment, the Operating Agreement, with some ambiguity, designated Simpson as the principal operator.

**prior to the fourth anniversary of the date hereof[7], Simpson shall have the unilateral power and authority acting in good faith to make and implement all decisions with respect to all matters which the Company has the authority to perform both directly and indirectly through an Investment Entity**, including, without limitation, the power to:

(i) conduct, manage and control the affairs and business of the Company, and to make such rules and regulations therefor consistent with the Company Law, with the Articles of Organization and this Agreement;

(ii) open, maintain and close bank accounts and draw checks or other orders for the payment of monies;

(iii) enter into any contract or endorsement in the name or for the account of the Company;

(iv) employ, retain, or otherwise secure or enter into contracts, agreements and other undertakings with persons in connection with the management and operation of the Company's business, including, without limitation, any property managers, attorneys and accountants, all on such terms and for such consideration as Simpson deems advisable;

(v) bring or defend, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the Company;

(vi) deposit, withdraw, invest, pay, retain and distribute the Company's funds in a manner consistent with the provisions of this Agreement;

(vii) cause the Company to carry such indemnification insurance as Simpson deems necessary to protect it and any other individual or entity entitled to indemnification by the Company; and

(viii) take any of the foregoing actions on behalf of the Company in its capacity as a direct or indirect Controlling entity of an Investment Entity.

d. Section 3.2 of the Operating Agreement is hereby delete (sic) in its entirety and the following is inserted in lieu thereof: "3.2.

---

[7] "The date hereof" means December 17, 2017. An amendment, by its terms, rewrites the operative document as of the date of its original execution.

Limitations on Simpson's Authority. Notwithstanding anything to the contrary contained in this Agreement, if prior to the fourth anniversary of the date hereof, Simpson desires to cause the Company or an Investment Entity to take any of the following decisions or actions (each a "Company Major Decision"), Simpson shall provide written notice thereof to Chassen with such additional information as Chassen may reasonably request. Any Company Major Decision shall be undertaken only with the prior written consent of Chassen (and, for the avoidance of doubt, any action or decision that would constitute a Company Major Decision if made or taken by the Company shall be a Company Major Decision if made or taken by any Investment Entity, which consent shall be deemed granted by Chassen if Chassen fails to object to such action within fifteen (15) days of Simpson's written request therefor:

(i) acquire any direct or indirect interests in any Person other than AREH;

(ii) file, acquiesce to, consent to or take of any Bankruptcy Action;

(iii) sell any asset of the Company or any portion thereof other than any such asset that is no longer required for the operation of the Company or any other Company Asset or any obsolete personal property;

(iv) merge, consolidate or other reorganize the Company with another Person;

(v) borrow or raise monies, or utilize any other forms of leverage and issue, accept, endorse and execute promissory notes, drafts, lending agreements, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness;

(vi) possess, lend, transfer, mortgage, pledge or otherwise deal in, and secure the payment of obligations of the Company by mortgage upon, or hypothecation or pledge of, all or part of an asset of the Company, and to execute such pledge and security agreements in connection with such pledge, or participate in arrangements with creditors, institute and settle or compromise claims, suits and administrative proceedings and other similar matters;

(vii) enter into any lease for space;

(viii) hire any employee, consultant or other personnel;

(ix) engage in any business or activity not authorized by this Agreement;

(x) enter into any agreement requiring the expenditure of more than $10,000 per annum;
(xi) enter into any agreement with Simpson and/or any Affiliate thereof, on the one hand, and the Company on the other hand;

(xii) enter into any amendment or modification to this Agreement except as otherwise expressly permitted in this Agreement;

(xiii) maintain reserves in excess of $20,000;

(xiv) admit new or substitute Members to the Company;

(xv) modify any material terms of the AREH Operating Agreement;

(xvi) cause AREH to take any Major Decision (as defined in the AREH Operating Agreement).

e. Exhibit A is hereby deleted in its entirety.

13.    The language of the Operating Agreement, as modified by the Amendment, unambiguously vests full control of the Debtor in Simpson making the Chapter 11 Case a core function of the Bankruptcy Court.  Therefore, the Proposed Findings are erroneous.

14.    On or about May 22, 2021, the Debtor's Operating Agreement was amended with Chassen's consent. The Amendment removed the authority that Chassen would have had, following the fourth anniversary of the Debtor's original operating agreement, to manage, arrange, and cause to be coordinated the business, affairs and assets of the Debtor. (attached as Exhibit "3", JJ Arch LLC Agreement Amendment No. 1, p. 3 ¶ 2(d) [deleting § 3.2 of the JJ Arch Original Operating Agreement].) (The JJ Arch Original Operating Agreement, as amended by JJ Arch LLC Agreement Amendment No. 1, shall be referred to as the "JJ Arch Amended Operating Agreement".) Thus, Chassen never had such authority. Because the list of

9

actions and decisions for which Chassen's consent was required, i.e., the "Company Major Decisions," remained effective only until the fourth anniversary of the JJ Arch Original Operating Agreement with Exhibit 2, JJ Arch Original Operating Agreement, p. 8 ¶ 3.1(b)), this meant that Chassen would lose, and ultimately did lose, his right to refuse consent to Company Major Decisions after that anniversary, which occurred in December 2021.

15.    Chassen, AREH and Oak argue that there is no good faith, legitimate purpose for this Chapter 11 Case. To the contrary, the issues involved in the litigation make the stable, long-term governance of the Debtor and the entities which it controls impossible. These issues go to the heart of this Chapter 11 Case – namely the identity of the debtor in possession, control over the debtor, the debtor's rights with respect to its most valuable asset and who controls such rights –not only are core proceedings but are vital and central. Thus, AREH and Oak's arguments that these proceedings could have no conceivable effect on this Chapter 11 Case and are therefore not even "related to" this Chapter 11 Case are totally misplaced.  These arguments willfully ignore the plain need for this Chapter 11 Case in light of the numerous claims asserted against the Debtor and the clear and inseparable relationship between the removed State Court Action and the administration of this Chapter 11 Case.

16.    That AREH and Oak (which, given Oak's current control over AREH, are effectively one and the same for purposes of the various contested matters in this Chapter 11 Case and this adversary proceeding) take that position is not surprising.  Their primary goal in this Chapter 11 Case is to maintain control over AREH, with Chassen acting as their proxy in connection with the Debtor's consent rights.  The benefits to the Debtor and other interested parties of a confirmed plan under chapter 11 of the Bankruptcy Code are directly adverse to Oak's claims against the Debtor.

17.    Since Simpson first sought depositions of Oak and its representatives in December 2023, Oak has successfully rebuffed Simpson's and the Debtor's efforts to obtain discovery.  Oak now wishes to return to the State Court so that it can, as it did for seven months prior to the filing of this Chapter 11 Case, continue to avoid discovery until after Oak has successfully achieved—through the benefit of preliminary state-court orders temporarily permitting Oak, via Chassen, to unilaterally exercise AREH's consent rights—the release of all of Oak's guarantee obligations related to AREH.  Such actions, if permitted to take place outside the supervision of the bankruptcy process, will, as Oak surely knows, result in irreversible harm to the Debtor and other interested parties, with Oak being the only beneficiary.  Thus, as the Debtor has previously explained, this Chapter 11 Case was and is necessary during the pendency of the removed State Court Action to prevent Chassen, AREH and Oak from continuing to engage in prejudicial restructuring transactions without transparency or the entireness fairness their conflicted relationships require and which, indeed, the State Court has recognized.  *See, e.g.*, State Court Action Dkt. 603, Feb. 6 Tr. at 54:16-19 ("Mr. Chassen in making those decisions is supposed to be exercising his fiduciary duties to [the Debtor] and the like [and isn't] supposed to be just a proxy for Oak consenting to its own transactions.").

18.    Indeed, if the Court cannot determine the rights of the parties to manage the Debtor based upon an examination of the Operating Agreement and the Amendment, the Court should consider directing the taking of testimony under Fed.R.Civ.P. Rule 43(c)[8] in order to make such a determination. Chassen and Oak have been desperate to avoid exposure to the sunshine of discovery and cross-examination, and this Court should not be forced to rely on the pronouncements of counsel alone.

---

[8] Fed.R.Civ.P. Rule 43(c) states: "Evidence on a Motion. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions."

19.    The avoidance of discovery has been a continuing theme of these matters. Oak commenced two prior cases in the District Court; <u>608941 NJ INC. v. Jeffrey Simpson</u>, Case No. 1:23-cv-07089 (MMG) and <u>608941 NJ INC. v. Jeffrey Simpson</u>, et. al., Case No. 23-cv-8966 (ALC) (the "Oak District Court Actions")[9]. Judge Carter extensively conferenced this case prior to Oak's voluntary dismissal of the case. Judge Garnet did not conference the case. Oak discontinued both prior to the commencement of discovery.   In this Chapter 11 case, Oak and AREH made an "emergency" Motion to Dismiss the Chapter 11 case (the "Dismissal Motion," ECF Docket No. 4 & 5). Oak and AREH did not pursue the Dismissal motion when the Debtor sought discovery as contemplated by Fed.R.Bankr.P. Rule 9014 as incorporating Fed.R.Bankr.P. Rules 7026-7037. The Debtor needs to conduct discovery on AREH's failure to appear and defend litigation brought by suppliers such as Feldman Lumber in state court. Oak and AREH have not submitted to discovery concerning their placing in peril of foreclosure on assets under their control in which JJ Arch has an interest, such as 88 Tower LLC, 88 Tower 2 LLC, and 88 Tower 3 LLC, which own 88 University Place. The Arch Realty Estate holdings entity was rendered materially insolvent Oak's actions and inactions during late 2023, to the extent, at that time, of approximately $33,000,000. The motion to remand is a further action in their continuing effort to make allegations and then refuse to allow discovery into the truth of those allegations.

---

[9] Judge Carter extensively conferenced this matter. The remaining action, assigned to Judge Garnet, was also dismissed by Oak pursuant to Fed.R.Civ.P. Rule 41(a)(1)(A) prior to any judicial involvement. For that reason, the Civil Cover Sheet filed with the filed with the Notice of Appeal from the Memorandum Opinion and Order signed on June 10, 2024 and docketed on June 10, 2024 in the Chapter 11 case as Bankruptcy Court ECF Docket No. 132 (the "Stay Order") refers to prior proceedings before Judge Carter.

20.    **While the Court, in making a _de novo_ determination of a motion to remand cannot address the merits of these allegations, the outcome is vital to the preservation of value of the Debtor's assets.**

21.    That Chassen shares in taking Oak's position is more concerning and speaks to the conflicted nature of his current relationship with the Debtor and the likelihood of material direct and indirect relationships between Chassen and Oak that have not yet been fully disclosed.  To the extent Chassen prevails in the argument that he did not voluntarily resign from the Debtor and is successful in his various claims against Simpson, Chassen would then remain as the sole member of the Debtor and the primary beneficiary of the protections this Chapter 11 Case affords the Debtor's estate from the various AREH-related claims that have been asserted against the Debtor (which, to the extent Chassen prevails in his litigation with Simpson, will likely succeed).  Notwithstanding that Chassen's own disclosed interests **support** the need for this Chapter 11 Case, he has adamantly opposed it, all while actively supporting Oak in its claims against the Debtor (and, indirectly, against Chassen's own non-AREH investment interests held by the Debtor).  Although this Chapter 11 Case was commenced for a legitimate and good faith purpose, Chassen's actions make clear that his opposition to this Chapter 11 Case is not equally legitimate.[10]

---

[10] To the extent that Chassen argues that he opposes this Chapter 11 Case because it is interfering with restructuring transactions at AREH that he believes are necessary, the Debtor similarly challenges the legitimacy of this position. As the Debtor acknowledged at the status conference on April 5, 2024, the Interim November Orders currently permit Chassen to exercise the Debtor's consent rights, provided that he complies with the restrictions and requirements of the bankruptcy code (including section 363's requirements related to the use of such asset of the Debtor outside the ordinary course) that also currently apply to the exercise of such rights during this Chapter 11 Case.  Although AREH requested consent from Simpson and Chassen on April 12, 2023, with respect to certain restructuring transactions involving the property located at 9 Vandam Street, to date Chassen has elected not to seek this Court's approval to grant consent on behalf of the Debtor in connection with such transaction.  Instead, AREH has indicated an apparent willingness to proceed with the transaction if the Debtor fails to respond (which is prohibited by the automatic stay) or Chassen if provides consent, regardless of whether Chassen complies with the requirements of the bankruptcy code while doing so.

22.     Despite the positions taken by Chassen, AREH and Oak, this Chapter 11 Case is critical to protect the Debtor's estate, and the issues raised by the removed State Court Action are central to the administration of this Chapter 11 Case.  In fact, to date this Chapter 11 Case has been largely frozen by uncertainty surrounding the disputes driving the State Court, with both JPMorgan Chase Bank, N.A. and the United States Trustee taking the position in connection with separate contested matters that they should not move forward until certain of the governance disputes involved in the State Court Action are resolved.  Chassen, AREH and Oak have similarly taken   the position that the State Court Action will effectively determine whether this Chapter 11 Case should—at some date in the future after the completion of the State Court Action, including any appeals—be dismissed.  Aside from the clear impact such disputes have on the administration of this case, the removed State Court Action also involves numerous claims brought derivatively on behalf of the Debtor, which claims are subject to this Court's exclusive jurisdiction.  Unquestionably, the State Court Action involves core matters that must be addressed to advance this Chapter 11 Case.

23.     Because the removed State Court Action is a core proceeding, mandatory abstention is not applicable, meaning that any remand could only be on the basis of equitable remand or permissive abstention.  But the exercise of either equitable remand or permissive abstention of a core proceeding is appropriate in only a few extraordinary and narrow contexts, and it is the movants' burden to show that this Chapter 11 Case is one of such few extraordinary and narrow contexts.  Chassen, AREH and Oak have failed to meet that burden, as any such discretionary remand would only result in simultaneous and duplicative processes involving substantially the same facts proceeding at the State Court and before this Court.  Any such remand would, during the months-long process likely required at the State Court to resolve the

disputed factual questions relevant to this Chapter 11 Case, leave this Court and this Chapter 11 Case with a nightmarish level of uncertainty, to the detriment of the Debtor and all parties in interest.

24.     As a result of the core nature of the removed State Court Action and the materially adverse effect remand would have on the administration of this Chapter 11 Case, the Debtor, and other interested parties, the Court should deny the relief sought in the Remand Filings.

<u>**CHAPTER 11 CASE**</u>

25.     On March 7, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition under Subchapter V of the Bankruptcy Code.

26.     The Debtor is a real estate holding company that was formed, together with AREH, on December 11, 2017 for the primary purpose of managing AREH, AREH's various direct and indirect subsidiaries and investments and certain non-AREH investment vehicles.  Additional background on the Debtor, AREH and their various investments can be found in the *First Day Affidavit of Jeffrey Simpson Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* [Main Dkt. No. 16] (the "**First Day Affidavit**") and *Debtor's Omnibus Objection to Motions for Entry of Orders (I) Confirming that the Automatic Stay Does Not Apply to Certain Corporate Governance Disputes and/or (II) Modifying the Automatic Stay as Necessary in Order to Address Such Corporate Governance Disputes* [Main Dkt. No. 60] (the "**Stay Relief Objection**").  Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the Stay Relief Objection.

A.     **Status of the Removed State Court Action**

27.     On April 3, 2024 the Debtor removed the action entitled JEFFREY SIMPSON, individually and derivatively, as managing member of JJ ARCH LLC, suing

15

derivatively as managing member of ARCH REAL ESTATE HOLDINGS LLC et al v. JARED CHASSEN et. al.[11] (Supreme Court, New York County, Index No. 158055/2023 (the "State Court" and the "State Court Proceeding" to this court. This court referred the action to the bankruptcy court under the Amended Standing Order of reference, M-10-468 (Preska, J.) dated January 31, 2012.

28.     On April 10, 2024 Jared Chassen and Arch Real Estate Holdings LLC jointly moved to remand this action to the State Court by filing the Remand Motion.

29.     On April 10, 2024 Oak joined the Remand Motion (Adv. Proc. Docket No. 4).

30.     By Proposed Findings dated June 10, 2024 the bankruptcy court recommended the remand of this proceeding to the State Court.

31.     Chassen, AREH and Oak portray the removed State Court Action as one in which the State Court had "already preliminarily ruled upon [the ultimate issues] based on substantial evidence," Remand Joinder at ¶ 5, and had "resolved the impasse among the Debtor's feuding partners," Remand Motion at 2.  This is not an accurate portrayal.

32.     It bears emphasis that a State Court's determination in entering a temporary restraining order is entitled to no deference as "law of the case" or otherwise. See, e.g. *Bauer v. Planning Bd. of Vil. of Scarsdale*, 159 A.D.2d 532, 552 N.Y.S.2d 397; *Peterson v. Corbin* 275 A.D.2d 35, 40, 713 N.Y.S.2d 361, 365 (N.Y.A.D. 2 Dept. 2000); *Vander Malle v. Ambach*, 667 F.Supp. 1015 (S.D.N.Y. 1987).

33.     The Court, in *Peterson, Id*. stated:

> …(A) preliminary injunction is a provisional remedy and a
> decision concerning a preliminary injunction does <u>not</u> become the

---

[11] Only a summary of the caption is provided herein.

law of the case, nor would it constitute an adjudication on the merits so as to preclude reconsideration of that issue at a trial on the merits (*see, J.A. Preston Corp. v. Fabrication Enters., Inc.,* 68 N.Y.2d 397, 509 N.Y.S.2d 520, 502 N.E.2d 197; *Bauer v. Planning Bd. of Vil. of Scarsdale,* 159 A.D.2d 532, 552 N.Y.S.2d 397; *Ratner v. Fountains Clove Rd. Apts.,* 118 A.D.2d 843, 500 N.Y.S.2d 329. *Peterson v. Corbin* 275 A.D.2d 35, 40, 713 N.Y.S.2d 361, 365 (N.Y.A.D. 2 Dept.,2000).

34.     Similarly, in *Vander Malle*, the Court stated:

Accordingly, the Court's preliminary determination of the exhaustion question no more binds it in this instance than a decision on a temporary restraining order or preliminary injunction would have determined the outcome of the proceedings on the merits.

667 F.Supp. 1015, 1030 (S.D.N.Y. 1987).  Thus, this Court need give no deference to prior state

court preliminary injunctions.

35.     As the State Court noted on February 6, 2024, with respect to the disputes

between Simpson and Chassen relating to the Debtor, "[n]one of that has been decided."  State

Court Action  Dkt. 603, Feb. 6 Tr. at 29:13.  The State Court further elaborated, in response to

an effort to minimize additional arguments made by Simpson with respect to Chassen's behavior

in connection with the Debtor that the Court was not "prepared to just wipe away without some

additional process to get rid of a new argument about 'terminating' Mr. Chassen based on,

frankly, a record that's a little murky to [the State Court]."  *Id.* at 59:7-10.

36.     That the record was somewhat murky to the State Court was unsurprising

given that, to date, no depositions or cross-examinations have occurred in the State Court

Action.  Instead, the interim orders entered by the State Court prior to the Petition Date were

entered purely on the basis of affidavits, which the State Court noted "aren't that useful . . .

especially with [Simpson and Chassen] . . . . [because Simpson and Chassen] are diametrically

opposed on almost anything."  *Id.* at 61:20-22.  Notwithstanding that the State Court had acted

on an interim basis in reliance on such not very useful affidavits, the State Court "[didn't] get a

lot of comfort just from hearing the dueling affidavits between [Simpson and Chassen]."  Even

where the State Court found the affidavits more reliable, in connection with the disputes over

control of AREH, the State Court still acknowledged that neither Simpson nor the Debtor had

been given an opportunity to "crossexamine[] the affidavits and neither [had the State Court]

heard any cross-examination of [them]."

      37.     As a result of the relative infancy of the discovery process in the removed

State Court Action and the minimal evidentiary record, at that same hearing on February 6,

2024, the State Court cautioned Chassen's counsel that:

> [Simpson's counsel] wrote I thought some persuasive papers that
> sounded fairly reasonable in the other direction that, you know –
> look, the fact that I have come out on numerous occasions finding
> that Mr. Simpson's actions were unreasonable doesn't mean that
> he's wrong on everything; and there's some things that I read in
> [Simpson's papers] about the back and forth which doesn't put
> [Chassen] in the best light either.  So I wouldn't get too over
> confident by the fact that there's been a bit of a winning streak
> because ***I haven't gotten to the bottom of these intra-JJ Arch
> disputes yet, and I will***.

*Id.* at 66:7-18 (emphasis added).

**B.**     **Debtor's Financial Interest in AREH and its Subsidiaries**

      38.     In the Remand Filings, Chassen, AREH and Oak take the position that

"AREH only manages and [] does not own" the property with respect to which the Debtor has

consent rights, Remand Motion at ¶ 24, and that the Debtor "lack[s] [] any monetary interest in

AREH or the properties it manages," Remand Joinder at ¶ 39.  This is also not accurate.

      39.     AREH does in fact have an indirect ownership interest in the properties it

manages, with such ownership interest in almost every case flowing through an "MM" (i.e.,

managing member) limited liability company such as 9 Vandam MM JV LLC (such "MM"

entities, the "**Managing Member Entities**"). *See* First Day Affidavit at Exhibit A. Although the Debtor's organizational charts refer to AREH's interest in such Managing Member Entities as a 0% interest as a "Non-Member Manager," this is not an accurate description of AREH's relationship with the Managing Member Entities, each of which is governed by an operating agreement in substantially the form attached to the AREH Operating Agreement as Exhibit D (the "**MM Operating Agreements**"). *See id.* at Exhibit "4". Pursuant to the MM Operating Agreements, AREH is the "Managing Member" of the Managing Member Entities, is included in the definition of "Members," is entitled to distributions, including 20% of "Cash Flow" and to certain "Promote Distributions," and is subject to the allocation of the Managing Member Entities' income and loss for tax purposes. *Id.* Those Managing Member Entities in turn then have indirect ownership interests and distribution rights as members at the ultimate investment property entities. *See id.* at Exhibit A (showing that 9 Vandam MM JV LLC has a 30% interest and is the managing member of 9 Vandam LP JV LLC, which in turn has a 25% interest and is the managing member of 9 Vandam JV LLC, which in turn has a 32.83% interest and is the managing member of 9 Vandam Owner LLC, which 100% owns 9 Vandam Borrower 2 LLC, which 100% owns the investment property at 9 Vandam Street).

40.     The Debtor has a financial interest in any such distributions that are ultimately made to AREH, in addition to any fees paid to AREH by the Arch Service Providers (as defined in the First Day Affidavit), not only as a result of the general distribution rights where the Debtor is entitled to 80% of distributions following completion of Oak's and the Debtor's respective liquidation preferences (which liquidation preferences are pro rata following Oak's receipt of distributions equal to 4% simple interest on its unreturned capital

contributions), but also as a result of the Debtor's right to receive preferential distributions from any "promote distributions" made to AREH.  *See* AREH Operating Agreement.

**C.      Good Faith and Legitimate Purpose of this Chapter 11 Case**

41.     This Chapter 11 Case was commenced for a good faith, legitimate purpose to, protect the Debtor's direct and indirect interests, including those interests wholly unrelated to AREH or its investments. As discussed above, Oak and AREH made an "emergency" Motion to Dismiss the Chapter 11 case (the "Dismissal Motion," ECF Docket No. 4 & 5). Oak and AREH did not pursue the Dismissal motion when the Debtor sought discovery as contemplated by Fed.R.Bankr.P. Rule 9014 as incorporating Fed.R.Bankr.P. Rules 7026-7037.

42.     First, as the State Court noted with respect to Chassen's interim right to exercise the Debtor's consent rights at AREH, "Mr. Chassen in making those decisions is supposed to be exercising his fiduciary duties to [the Debtor] and the like [and isn't] supposed to be just a proxy for Oak consenting to its own transactions."  State Court Action Dkt. 603, Feb. 6 Tr. at 54:16-19.  Unfortunately, the Debtor believed that significant direct and indirect financial relationships between Oak and Chassen and other conflicts of interest were causing Chassen to do exactly what he was not supposed to do, act as a proxy for Oak consent to its own transactions.  The Debtor also believed that Oak, in pursuing various restructuring transactions facilitated by Chassen's proxy consent, was prioritizing the release of Oak's guarantee obligations over the financial interests of numerous other parties in the AREH-managed properties, including the financial interests of the Debtor.  As a result, the Debtor believed that fairness to all interested parties required the protections afforded by the Chapter 11 Case, including the transparent process this Chapter 11 Case imposes of the exercise of the Debtor's

20

consent rights, to ensure that the Debtor's (and, by extension, other interested parties') interests are protected pending resolution of the removed State Court Action.

43.    Second, and notwithstanding the limited nature of the noncontingent, liquidated claims against the Debtor, the numerous claims brought against the Debtor by Chassen and Oak reflect that the Debtor currently faces a significant number of contingent, disputed claims related to the Debtor's service as managing member of AREH that, if not defended successfully, would far exceed the value of the Debtor's assets. To the extent that the removed State Court Action is ultimately determined adversely to the Debtor, especially if similar claims are pursued by any of AREH's other investors, this Chapter 11 Case is critical in order to protect the Debtor's non-AREH-related assets from such AREH-related claims. Notably, to the extent Chassen is found not to have voluntarily resigned and is successful on his claims against Simpson, Chassen would potentially be the only remaining member of the Debtor and the primary beneficiary of such protection.

## OBJECTION

44.    The relief requested by the Remand Filings is inappropriate and should have been denied.

### A.    The State Court Action Was Properly Removed Because This Court Has Jurisdiction Over Such Action

45.    The State Court Action was removable pursuant to 28 U.S.C. §§ 1334 and 1452 because "[a] party may remove any claim or cause of action . . . to the district court where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a); *see also* Bankruptcy Rule 9027. Section 1334, in turn, provides that "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located,

of the debtor as of the commencement of such case, and of property of the estate," 28 U.S.C. § 1334(e)(1), and "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

46.    The District Court—and the Bankruptcy Court—have exclusive jurisdiction over the State Court Action because it involves and directly affects the property of the estate.  The removed State Court Action seeks to effectively determine control over the Debtor and the identity of the debtor-in-possession, to determine the nature of and the control over one of the Debtor's most valuable assets—its rights in and with respect to AREH—and involves numerous derivative actions that themselves constitute property of the Debtor's estate. *See, e.g., In re Warner*, 480 B.R. 641, 647–48 (Bankr. N.D.W. Va. 2012) ("[T]he right to participate in a LLC— a non-economic right—is property of the estate under 11 U.S.C. § 541(a) . . . ."); *In re WP Realty Acquisition III, LLC*, 626 B.R. 154, 161 (Bankr. S.D.N.Y. 2021) ("Even in single asset real estate cases such as this one, control of the debtor can be key to the vision for and use of the property, which is how value is created."); *In re Tronox Inc.*, 855 F.3d 84, 99 (2d Cir. 2017) ("'[D]erivative claims'—i.e., claims 'based on rights 'derivative' of, or 'derived' from, the debtor's'—typically constitute 'property of the estate . . . .'") (citing *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 88 (2d Cir. 2014)).

47.    Furthermore, the removed State Court Action is a core proceeding because it, among other things: (i) "concern[s] the administration of the estate," 28 U.S.C. § 157(b)(2)(A); (ii) ultimately will determine the "allowance or disallowance of [certain] claims against the estate," 28 U.S.C. § 157(b)(2)(B); (iii) involves "counterclaims by the estate against persons filing claims against the estate," 28 U.S.C. § 157(b)(2)(C); (iv) may require "orders to turn over property of the estate," 28 U.S.C. § 157(b)(2)(E); and (v) "affect[s] the liquidation of

22

the assets of the estate or the adjustment of the debtor-creditor **or the equity security holder**

**relationship**," 28 U.S.C. § 157(b)(2)(O) (emphasis supplied).  Although Chassen, AREH and

Oak argue that the Debtor invokes 28 U.S.C. § 157(b)(2) "in a manner that eviscerates any

distinction between 'related to' and 'core' based on an impermissibly broad 'catch-all' reading,"

Remand Motion at ¶ 20, the Second Circuit has opined that "core proceedings should be given a

broad interpretation that is close to or congruent with constitutional limits."  *In re Relativity*

*Fashion, LLC*, 696 F. App'x 26, 28 (2d Cir. 2017) (quoting *In re U.S. Lines, Inc.*, 197 F.3d 631,

638 (2d Cir. 1999)).  In fact, core proceedings have been deemed to include disputes over pre-

petition contracts when such a dispute is "bound to have a significant impact on the

administration of the estate."  *In re Relativity Fashion, LLC*, 696 F. App'x 26, 29 (2d Cir. 2017)

(quoting *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999)).  This Court "may hear and

determine all core proceedings and may enter appropriate orders and judgments with respect to

such matters," including the removed State Court Action.  *In re Charter Commc'ns*, 409 B.R.

649, 653 (Bankr. S.D.N.Y. 2009) (quotations omitted).  Therefore, the removed State Court

Action fits squarely within this understanding of a core proceeding.

> 48.    Courts in this district have previously held that proceedings dealing with

control of a debtor are core because of the significant impact such decisions have on the

administration of the debtor's estate.  *See, e.g., In re WP Realty Acquisition*, 626 B.R. at 161

("[A]s changes in control of the Debtor would have a direct impact on the bankruptcy case here,

the Court finds that this action is a core proceeding and that abstention is not mandatory."); *In re*

*Johns-Manville Corp.*, 801 F.2d 60 (2d Cir. 1986) (wherein the bankruptcy exercised core

jurisdiction to enjoin a state court from compelling a debtor to hold a shareholders meeting

where there were two competing shareholder groups vying for control over debtor); *In re SCK*

*Corp.*, 54 B.R. 165, 169 (Bankr. D.N.J. 1984) ("A matter concerning the administration of the debtor's estate is a core proceeding. Since control of a debtor in possession goes to the very heart of the administration of the debtor's estate, it necessarily follows that the bankruptcy court may properly determine where such control resides."); *Bank of Am., NT&SA v. Nickele*, No. CIV.A. 98-1501, 1998 WL 181827, at *4 (E.D. Pa. Apr. 16, 1998) ("Bank of America […] took control of the debtor pursuant to rights created in several loan documents. Commencing the instant take-over action in state court, Bank of America successfully obtained an injunction which ordered the defendants not to take 'any action on behalf of Liberty House, Inc.' As shown, actions to obtain control of a debtor-in-possession '[go] to the very heart of the administration of the debtor's estate ...' and, therefore, are core proceedings."). *WP Realty* and *Johns-Manville Corp.* do not compel contrary conclusion.

49.     Notwithstanding the Chassen's, AREH's and Oak's efforts to distinguish two of these cases from the present dispute, none of the distinctions proffered meaningfully address the underlying reasoning applied by the courts in each case.  In *WP Realty*, the court considered whether it was required to remand a removed state court action that involved a dispute over management of a debtor.  The Plaintiff in that case "insist[ed] that [the state court action] would have no impact on the Debtor because single asset companies like the Debtor are simply looking for investors, make no real management decisions, and a change in management would not impede Debtor's ability to pay its creditors."  *In re WP Realty*, 626 B.R. at 160. Similarly, here Chassen, AREH and Oak consistently attempt to downplay the role of the removed proceedings in the ultimate administration of the estate, arguing that "the Debtor merely has consent rights over nondebtor property, which AREH only manages and likewise does not own." Remand Motion at ¶ 24.  But, as discussed above, this materially misrepresents

the Debtor's structure and its interests in its holdings, including AREH.  Just as *WP Realty*, the Chapter 11 Case affects "management rights and control over decisions of the Debtor," *id.* at 160, which will be exercised in relation to the restructuring of the Debtor and its various interests in other entities, including various non-AREH-related investments that, absent the protections of this Chapter 11 Case, fully subject to the various AREH-related claims that have been asserted against the Debtor.

50.    In *Johns-Manville Corp.*, the state action stemmed from "a dispute between shareholders of the debtor as to how to compensate asbestos victims[.]" *In re WP Realty*, 626 B.R. at 160.  Chassen, AREH and Oak make much of the fact that the case concerned control in a circumstance where two different plans had been proposed by each committee vying for control of   the debtor, while in this case, the Debtor has not made any proposals with respect to reorganization.  This position ignores that Chassen's, AREH's and Oak's efforts to dismiss this Chapter 11 Case, but refusal to proceed with related discovery and a hearing on Chassen's and AREH's related motions to dismiss, have undermined the protections of the automatic stay and hamstrung the Debtor's ability to proceed with its reorganization. Chassen, AREH and Oak should not be permitted to use the quagmire that they themselves have caused as evidence of bad faith forum shopping where, as explained above, clear and legitimate rationales exist for the filing of this Chapter 11 Case.  This court should apply the correct rationale of *Johns-Manville Corp.* – that decisions related to control over the process of administering a debtor's estate (*i.e.*, the ultimate goal of Chassen, AREH and Oak in seeking remand) fall squarely within the definition of a core proceeding.  *See In re Johns-Manville Corp.*, 801 F.2d at 64.

51.    Notwithstanding the arguments set forth above, removal would still have been proper, and this Court would still have jurisdiction because the removed State Court Action unequivocally "relate[s] to" this Chapter 11 Case.  28 U.S.C. § 1334(b).  A civil proceeding is "related to bankruptcy" if "the outcome of that proceeding could *conceivably have any effect* on the estate being administered in bankruptcy."  *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 317 (S.D.N.Y. 2003) (citing *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir.1984)) (emphasis included); *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 115 (2d Cir.1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any "conceivable effect" on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the "related to" jurisdiction of the bankruptcy court.").   In other words, "related to" jurisdiction encompasses "more than simply proceedings involving the property of the debtor or the estate."  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 115 (1995).   Instead, actions are deemed to be "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *Id* at 308 n. 6.  The State Court Action concerns the central question of control of the Debtor.  Control of the Debtor goes beyond impact upon the handling and administration of the bankruptcy estate; as outlined above, "control of a debtor in possession goes to the very heart of the administration of the debtor's estate."  *In re SCK Corp.*, 54 B.R. at 169.  Therefore, in the remarkable scenario where the removed State Court Action was found not to be a core proceeding, this Court would still have at least "related to" jurisdiction over these proceedings.

**B.      Mandatory Abstention Does Not Apply, And Even if it Did, its
Requirements Are Not Met.**

52.    As an initial matter, mandatory abstention is inapplicable here because the

removed State Court Action constitutes a core proceeding.  *See In re Petrie Retail, Inc.*, 304

F.3d 223, 232 (2d Cir. 2002) ("[W]here a matter constitutes a core proceeding, the mandatory

abstention provisions of section 1334(c)(2) are inapplicable."); *In re WP Realty Acquisition III,

LLC*, 626 B.R. 154, 161 (Bankr. S.D.N.Y. 2021) ("[T]his action is a core proceeding and

[therefore] abstention is not mandatory."); *In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y.

2010) ("[M]andatory abstention does not apply to core proceedings"); *In re S.G. Phillips

Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995) ("[w]hen a district court  abstains from

hearing cases involving "core" proceedings, the abstention decision can only be made pursuant

to § 1334(c)(1)").

53.    Even if mandatory abstention was applicable here, it would still not be

appropriate because it requires that "the [removed] action can be timely adjudicated in state

court," a "necessary element[] required for mandatory abstention." *Renaissance Cosmetics, Inc.

v. Development Specialists Inc.*, 277 B.R. 5, 12–13 (Bankr. S.D.N.Y. 2002).  Timeliness is a

"case and situation-specific inquiry that requires a comparison of the time in which the

respective state and federal forums can reasonably be expected to adjudicate the matter."

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).  "Whether

an action can be timely adjudicated in state court is a mixed question of law and fact." *Id.*  "The

factual inquiry focuses on how quickly a case can be adjudicated in state court; the legal inquiry

asks if this pace is sufficiently swift." *Id.*  "Four factors come into play in evaluating [such

inquiry]: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2)

the complexity of the issues presented and the respective expertise of each forum; (3) the status

27

of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Id.*

54.    Here, the second, third and fourth factors in particular heavily, and indeed overwhelmingly, weigh against finding that the removed State Court Action can be timely adjudicated by the State Court.

55.    The status of the State Court Action after more than seven months of litigation, the nascent stage of discovery in such action and the fact that the first evidentiary hearing in such action is currently scheduled for June 2024 (a date that has almost passed as a result of Chassen's, AREH's and Oak's continuing efforts to frustrate the discovery process), evidences that the State Court will be unable to timely adjudicate the removed State Court Action in manner that is not incredibly disruptive to this Chapter 11 Case.

56.    As recent filings in this Chapter 11 Case have indicated, almost every issue that would arise in this Chapter 11 Case would involve issues that overlap with the issues to be addressed by the removed State Court Action.  Waiting for these issues to be resolved in slow-moving State Court Action, the only purpose of which would be to port the state-court determinations back to this Court for its use here, *see* Remand Motion at ¶ 28 ("After the Commercial Division determines whether the commencement of this Chapter 11 Case violated the Existing State Court Orders, the parties can return to this Court for further proceedings on the Motion to Dismiss[.]"), would not only be wasteful and duplicative, but would paralyze this Chapter 11 Case and the Debtor's ability to proceed with proposing and confirming its Chapter 11 plan.  As a result, the State Court cannot be expected to timely adjudicate the removed State Court Action, precluding the application of mandatory abstention.[12]

---

[12] The condition this Chapter 11 Case would be left in were the State Court Action remanded itself demonstrates the core nature of the State Court Action.

**C.      Neither Permissive Abstention nor Equitable Remand Are Warranted or Appropriate.**

57.      Equitable remand, under 28 U.S.C. § 1452(b), and discretionary or permissive abstention, under 28 U.S.C. § 1334(c)(1), are also inappropriate here, as courts generally consider the following factors when deciding whether to remand a case based on such discretionary authority:  (1) the effect or lack thereof on the efficient administration of the bankruptcy estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C.S. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden on the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties. *See In re WorldCom Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003); *see also Renaissance Cosmetics*, 277 B.R. at 17–18 ("The factors that courts consider when deciding whether to abstain pursuant to section 1334(c) are virtually the same as those considered in connection with a motion to remand pursuant to section 1452(b).").  These factors heavily weigh against remand of the State Court Action and the core questions the State Court Action addresses.

58.      The burden is on the party seeking permissive abstention, and the bar is high. *See, e.g., In re Residential Cap., LLC*, 519 B.R. 890, 903 (Bankr. S.D.N.Y. 2014) ("The

movant bears the burden of establishing that permissive abstention is warranted. *Id.* A federal court must be "sparing" in its exercise of permissive abstention "because [it] possess[es] a 'virtual unflagging obligation ... to exercise the jurisdiction given [to it].'" *Kirschner,* 628 F.Supp.2d at 446 (citations and internal quotation marks omitted).").

59.    In considering whether permissive abstention and equitable remand are appropriate, courts have "considered one or more (not necessarily all) of [the] twelve factors." *Taub v. Taub*, 413 B.R. 81, 92–93 (Bankr. E.D.N.Y. 2009) (internal citations and quotation marks omitted); *see also Cody, Inc. v. Cnty. of Orange*, 281 B.R. 182, 190 (S.D.N.Y. 2022). Accordingly, the Court "need not plod through a discussion of each factor in the laundry lists developed in prior decisions," nor should analysis be "mechanical or a mathematical exercise." *In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008). Rather, "[t]he factors largely ask the Court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts." *Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 496 B.R. 706, 713 (S.D.N.Y. 2013).

60.    "The movant bears the burden of establishing that permissive abstention is warranted in the face of the 'virtually unflagging obligation' of federal courts to exercise their jurisdiction." *AYH Wind Down LLC v. Engelman (In re All Year Holdings Ltd.)*, 73 BCD 104, 2024 WL 1460157, at *5 (Bankr. S.D.N.Y. 2024) (citing *Residential Funding Co. LLC v. UBS Real Estate Sec., Inc. (In re Residential Cap., LLC)*, 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014)). "There is a presumption against abstention and courts should be 'sparing in their exercise of discretionary abstention.'" *Id.* "Federal courts . . . may abstain only for a few extraordinary and narrow exceptions." *Residential Funding*, 515 B.R. at 67 (citations and quotations omitted).

61.    Here, Chassen, AREH and Oak have failed to satisfy their burden of establishing that permissive abstention or equitable remand is warranted, as they clearly are not. Were "this Court to abstain . . . and remand the [State Court Action] originally filed in state court, motion practice and discovery would proceed separately in [at least two] jurisdictions." *In re WorldCom Inc. Sec. Litig.*, 293 B.R. at 333.  "The litigation that would ensue in the various fora would be entirely duplicative and wasteful." *Id.* at 334.  Given the relatively ordinary nature of the underlying disputes and absence of complex state law issues, the federal interest in efficient bankruptcy administration heavily weights against any minimal interests in comity presented by the State Court Action.

62.    A factor-by-factor analysis does not lead to a different result, but in fact further demonstrates that the removed State Court Action should not be permissively or equitably remanded.  Factors one and two weigh against abstention.  Although most of the claims fall under state law, one of the main drivers of the Remand Filings is to have the state court adjudicate whether this Chapter 11 Case was properly commenced.  Indeed, movants *concede* that a primary purpose of remand would be to obtain a roundabout adjudication of whether **this bankruptcy case** should be dismissed.  *See* Remand Motion at ¶ 28 ("***After*** the Commercial Division determines whether the commencement of this Chapter 11 Case violated the Existing State Court Orders, ***the parties can return to this Court for further proceedings on the Motion to Dismiss[.]***") (emphases added).  This proposed order of operations gets things exactly backwards, particularly where  movants have also conceded that the state court has ***not*** adjudicated—and the state court's orders therefore cannot possibly address, even as a preliminary matter—the critical question of whether Chassen voluntarily resigned.  *See* Hr'g Tr. 22:16-20, March 25, 2024 ("The Court: . . . [T]he issue of whether that [voluntary resignation]

occurred has not been addressed. Is that correct? ***Mr. Southard: That particular argument that they are now making has not been addressed, I believe, by the state court.***") (emphasis added).

63.    Moreover, the final disposition of the State Court Action will determine which party controls the Debtor.  Not only will such a determination significantly impact the efficient administration of the estate, but it would amount to adjudication of core bankruptcy proceedings.  *In re SCK Corp.*, 54 B.R. 165, 169 (Bankr. D.N.J. 1984) **("[C]ontrol of a debtor in possession goes to the very heart of the administration of the debtor's estate")**; *Bank of Am., NT&SA v. Nickele*, No. CIV.A. 98-1501, 1998 WL 181827, at *4 (E.D. Pa. Apr. 16, 1998) ("[A]ctions to obtain control of a debtor-in-possession […] are core proceedings.") (emphasis added).  Further, it is less material that the State Court Action is predominated by state law questions of contract, breach of fiduciary duty and conversion, as the outcome will have substantial effects on the administration of the Debtor's estate.

64.    Relatedly, factor three also weighs against abstention. Although the State Court Action involves state law, the applicable law is neither difficult nor unsettled.  The underlying claims concern, among other things, breach of the Debtor's and AREH's operating agreement, breaches of fiduciary duty, willful misconduct, gross negligence and conversion. The law of contract in New York is well-settled, as are the laws on fiduciary duty, willful misconduct, gross negligence and conversion.  Therefore, there is no material difference in the ability of the state and federal courts to decide those issues, and this factor does not weigh in favor of remand.  *See Nemsa Establishment, S.A. v. Viral Testing Systems Corp.*, 1995 WL 489711 at *7 (S.D.N.Y.1995) (failure to explain how New York law issues are either unsettled or complicated "significantly undercuts the degree to which the state law factor weighs in favor of remand to New York courts"); *Neuman v. Goldberg*, 159 B.R. 681, 688 (S.D.N.Y. 1993)

("[t]he fact that a complaint is based on state law causes of action does not mandate equitable abstention or remand, particularly where the state law claims are not novel or complex"); *AYH Wind Down LLC v. Engelman (In re All Year Holdings Ltd.)*, 73 BCD 104, 2024 WL 1460157, at *7 (Bankr. S.D.N.Y. 2024) ("the [legal] issues are not difficult or unsettled, and are the type of issues that this Court regularly adjudicates."). **Corporate control and governance issues are not novel or unsettled.**

65.    Factor five alone is not determinative where either court is empowered to decide the issues in dispute. *See In re Motors Liquidation Co.*, 457 B.R. 276, 290 (Bankr. S.D.N.Y. 2011) (where the bankruptcy court's jurisdiction arose under 28 U.S.C. § 1334 alone, stating that "once it is clear that either court can decide the issues that need to be decided, the jurisdiction factor becomes unimportant").

66.    Factor six, the degree of relatedness or remoteness of the proceeding to the main bankruptcy case also weighs heavily in favor of denying permissive abstention. The issues presented by the State Court Action are "inextricably intertwined" with this Chapter 11 Case; the feasibility of any plan to reorganize, as well as that plan's ultimate success, will depend on which party controls the debtor. *In re Ne. Indus. Dev. Corp.*, 513 B.R. 825, 839 (Bankr. S.D.N.Y. 2014), adopted, No. 14-CV-7056 NSR, 2015 WL 3776390 (S.D.N.Y. June 16, 2015) ("[T]he resolution of the adversary proceeding directly impacts the feasibility of the Plan, such that the issues in this proceeding are inextricably intertwined with the main bankruptcy case (Factor 6)."). Moreover, the removed State Court Action is temporally proximal to the bankruptcy proceeding, arising less than a year prior to the bankruptcy dispute. *See Shiboleth v. Yerushalmi*, 412 B.R. 113, 116-17 (S.D.N.Y. 2009) (finding that the degree of relatedness or

remoteness of the state court proceeding to the bankruptcy proceeding was minimal where prior proceeding had arisen two years before the Factor seven also weighs heavily against abstention.

67.    Factor seven focuses on ensuring that parties do not clothe an issue of pure state law as a core bankruptcy proceeding. *Bricker v. Martin*, 348 B.R. 28, 36 (W.D. Pa. 2006), aff'd, 265 F. App'x 141 (3d Cir. 2008).  As outlined above, these are proceedings that are core in substance, more than mere form; as proceedings going to control of the debtor-in-possession, these proceedings go "to the very heart of the administration of the debtor's estate." *In re SCK Corp*, 54 B.R. 165 at 169 (Bankr. D.N.J. 1984).  Similarly, factor eight weighs against abstention, as allowing the state court to decide upon the state law issues will enable the state court to determine a core bankruptcy proceeding.  In other words, if the court was to abstain from hearing the claims related to control of the Debtor, "resolution of this chapter 11 case would depend on the prompt and efficient adjudication of this proceeding in a forum outside this Court's control." *In re Ne. Indus. Dev. Corp.*, 513 B.R., at 839.[13]

68.    Factor nine also weighs against abstention, given abstention or remand will place a greater burden on this Court's docket.  There are a wide range of contested matters in this Chapter 11 Case that will require discovery and where resolution is being materially frustrated by ongoing uncertainty about dismissal.  Instead of allowing the State Court Action to linger in State Court and cause chaos and uncertainty in this Chapter 11 Case, this Court should "promptly decide the matters properly before it." *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 153 (Bankr. S.D.N.Y. 2010).

---

[13] Given the intertwined factual nature of the various causes of action comprising the State Court Action, it is also not feasible to sever any of such causes of action from the core bankruptcy matters addressed by the State Court Action.

69.     Factor ten also weighs against abstention.   The bankruptcy court relied heavily on this "factor."   However, no evidence has been presented to show the commencement of this proceeding involved forum shopping. The Court should note that Oak and AREH are themselves engaged in forum shopping. The cases <u>608941 NJ INC. v. Jeffrey Simpson</u>,   Case No. 1:23-cv-07089 (MMG) and <u>608941 NJ INC. v. Jeffrey Simpson</u>, et. al.,   Case No. 23-cv-8966 (ALC) (previously defined as the "Oak District Court Actions") were previously commenced by Oak. Judge Carter extensively conferenced this case prior to Oak's voluntary dismissal of the case. Judge Garnet did not conference the case.   These actions were previously pending in U.S. District Court, Southern District of New York. The latter action was removed from the State Court by Simpson. Both were discontinued by Oak under Fed.R.Civ.P. Rule 41(a). Thus, Oak has been engaged in forum shopping.[14] "Circumstances indicative of forum shopping ... include '[1] attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, [2] the habitual generosity of juries in the United States or in the forum district, [3] the plaintiff's popularity or the defendant's unpopularity in the region, or [4] the inconvenience and expense to the defendant resulting from litigation in that forum.'"   *In re Hellas Telecommunications (Luxembourg) II SCA*, 535 B.R. 543, 591 (Bankr. S.D.N.Y. 2015) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)).   But here, the facts of the case do not point to forum shopping by the Debtor.  As discussed above, this Chapter 11

---

[14] An action can be dismissed once without prejudice by the plaintiff under Fed.R.Civ.P. Rule 41(a)(1)(A). A second such dismissal is with prejudice. See Fed.R.Civ.P. Rule 41(a)(1)(B).  Oak voluntarily dismissed the second of the Oak District Court Actions on October 28, 2023. Nevertheless Oak commenced its intervenor pleading in State Court on April 3, 2024 (Notice of Removal, Adv. Proc. 24-01335, Docket No. 1, Designated Record, Page 115 of PDF). New York State practice is very similar. See CPLR §3217 (a). While not the subject of the Objection to Proposed Findings, the Court should note Oak's blatant forum shopping.

Case has multiple good faith, legitimate purposes, including the desire to protect the Debtor's non-AREH assets from being consumed by any AREH-related claims against the Debtor. And only the bankruptcy process, and the protections provided by the Bankruptcy Code, can protect the Debtor and other parties in interest from the restructuring transactions Oak seeks to achieve under cover of night. Discovery brings these matters into the daylight.

70.    Factor eleven, similar to factor five, typically weighs in favor of remand where a litigant otherwise has a right to a jury trial. This factor is, however, heavily outweighed by the factors weighing against remand in this case. *See Renaissance Cosmetics*, 277 B.R. at 17 ("[T]he jury factor alone does not tip the balance in favor of remand."); *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 147 (Bankr. S.D.N.Y. 2002) ("The right to jury trial […] tilts in favor of remand, but to only a very minor extent.").

71.    Lastly, factor twelve is neutral. While there are nondebtor parties involved in the State Court Action, the same nondebtor parties are and will continue to be actively involved in this Chapter 11 Case regardless of whether the removed State Court Action is remanded or not. Further, the Debtor is also present in both proceedings. Courts have determined that this factor does not "weigh heavily in favor of one side or the other" in similar circumstances. *AYH Wind Down LLC*, 2024 WL 1460157, at *8; *see also In re Welded Constr., L.P.*, 609 B.R. 101, 118 (Bankr. D. Del. 2019) (When "there are three non-debtor Defendants and one debtor Plaintiff… [t]his factor is neutral and neither favors nor disfavors abstention"). Further, some of the non-debtor parties are entities that are property of the estate.

### D.    The Debtor Has Not Been Provided an Opportunity to Conduct Necessary Discovery in Connection with the Remand Filings.

72.    As discussed in Debtor's Motion for an Order (I) Compelling Expedited Discovery in Connection with Motions to Dismiss and Remand Filings, (II) Adjourning Hearing

on Remand Filings Until Dismissal Issues Have Been Resolved and (III) Setting a Briefing and Hearing Schedule to Resolve Dismissal Issues [Adversary Dkt. No. 16] (the "**Motion to Compel**"), to the extent the Court finds that the Debtor has failed to meet any evidentiary burden (or that movants have met any such burden) in connection with the Remand Filings (which, for the reasons set forth above, it should not), the Debtor respectfully objects to the granting of any relief requested in the Remand Filings, and to the Proposed Findings.

## <u>RESERVATION OF RIGHTS</u>

73.    The Debtor hereby reserves its right to amend, modify or supplement this Objection and to file additional objections in connection with the Proposed Findings and any related motions (including any attempt to sever any of the State Court Action's claims or causes of action).   In view of the time constraints imposed by Bankruptcy Rule 9033, the Debtor intends to make such revisions.

## <u>NOTICE</u>

74.    Notice has been provided either by facsimile, electronic transmission, overnight delivery or hand delivery to:  (i) counsel for Chassen; (ii) counsel for AREH; (iii) counsel to Oak; (iv) the United States Trustee; (v) the Subchapter V Trustee; and (vi) each of the parties that have filed a notice of appearance in the Chapter 11 Case.  The Debtor submits that, under the circumstances, no other or further notice is necessary.

[REMAINDER OF PAGE IS BLANK]

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter orders: (i) rejecting

or modifying the Proposed Findings; and (ii) granting such other and further relief as the Court

may deem just and proper.

Dated: New York, New York
June 24, 2024

DAVIDOFF HUTCHER & CITRON LLP

By: /s/ Jonathan S. Pasternak
    Jonathan S. Pasternak
605 Third Avenue
New York, New York 10158
(212) 557-7200
jsp@dhclegal.com
*Proposed Substitute Attorneys for the Debtor*

JJ ARCH, INC. BY:

Jeffrey Simpson
_____
JEFFREY SIMPSON

JEFFREY SIMPSON declares, under 28 U.S.C. § 1746 under penalty of perjury, that the
foregoing recitations of fact are true and correct to the best of his knowledge, information and
belief. This explicitly does not apply to the legal assertions.

Jeffrey Simpson
_____
JEFFREY SIMPSON

**Signature:** _____
                Jeffrey Simpson (Jun 24, 2024 02:14 EDT)
**Email:** jsimpson001@icloud.com

38

# Signature Page for client

Final Audit Report                                                     2024-06-24

| | |
|---|---|
| Created: | 2024-06-23 |
| By: | James Glucksman (jbg@dhclegal.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAs56evyae5TODdoAyj9O2hykwfN0i9eyG |

## "Signature Page for client" History

📄 Document created by James Glucksman (jbg@dhclegal.com)
   2024-06-23 - 4:02:37 PM GMT

📤 Document emailed to Jeffrey Simpson (jsimpson001@icloud.com) for signature
   2024-06-23 - 4:03:29 PM GMT

📄 Email viewed by Jeffrey Simpson (jsimpson001@icloud.com)
   2024-06-24 - 6:12:33 AM GMT

✍ Document e-signed by Jeffrey Simpson (jsimpson001@icloud.com)
   Signature Date: 2024-06-24 - 6:14:29 AM GMT - Time Source: server

✅ Agreement completed.
   2024-06-24 - 6:14:29 AM GMT

📕 **Adobe Acrobat Sign**