DAVIDOFF HUTCHER & CITRON LLP
*Proposed Substitute Attorneys for the Debtor*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
| | |
|---|---|
| In re: | Chapter 11 |
| JJ ARCH LLC, | Case No.: 24-10381 (JPM) |
| Debtor. | |

----------------------------------------------------------X

**DEBTOR'S MOTION FOR ENTRY OF
AN ORDER (I) EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS
WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT
ACCEPTANCES THEREOF AND (II) GRANTING RELATED RELIEF**

**TO:    THE HONORABLE JOHN P. MASTANDO III,
UNITED STATES BANKRUPTCY JUDGE:**

JJ Arch LLC, as debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case (the "Chapter 11 Case") files this motion (the "Motion") for entry of an order extending the periods during which the Debtor has the exclusive right to file a Chapter 11 plan (the "Exclusive Filing Period") and to solicit acceptances thereof (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods") by six months through and including January 3, 2025 and March 3, 2025, respectively.  In support of this Motion, the Debtor respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.    The Court should extend the Exclusive Periods by six months to allow the Debtor to either litigate or resolve the underlying disputes over control of the Debtor's assets including litigating or resolving the Court's *Memorandum Opinion and Order, and Findings of*

1

*Fact and Conclusions of Law, on Jared Chassen and Arch Real Estate Holdings LLC's Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative, Principles of Abstention or Equity* that was entered on June 10, 2024 (the "Remand Ruling") and *Memorandum Opinion and Order* entered on June 10, 2024 (the "Lift Stay Ruling" and, together with the Remand Ruling, the "Rulings"). Until the Rulings are finally determined by the District Court and/or resolved by the subject parties, the Debtor will have trouble formulating a plan that governs the disposition of the remaining Arch real estate portfolio.

2. As a show if good faith, the Debtor's undersigned counsel has started a dialogue with both Jared Chassen ("Chassen") and Arch Real Estate Holdings LLC ("AREH") and 608941 NJ, Inc. ("Oak") regarding the overall resolution of the *inter se* party disputes and the Chapter 11 case, respectively. Acknowledging the resolution of these matters will be difficult and require effective yet sensitive negotiations , the Debtor is, at the same time, contesting the Rulings and, if necessary, intends to commence additional litigation against AREH and Oak absent global resolution. These litigations and settlement negotiations will obviously take time.

3. Absent immediate resolution between the parties, the Debtor needs to conduct discovery of Chassen, AREH and Oak in order to ascertain the current state and condition of JJ Arch's membership and other equity interests in the Arch real estate portfolio which is currently under the exclusive and unfettered control of Arch and Oak. Without understand what assets remain, what assets have been disposed of, diminished or possibly even dissipated it I impossible for the Debtor to formulate a meaningful plan.

4. It is unfortunate that Debtor's prior counsel was unable to make any considerable progress in the first 120 days of the Chapter 11 case, leading to, inter alia, an exhaustion of the initial 120 day Exclusive Period. However, the Debtor believes it now has

2

competent, m experienced counsel who has already taken multiple steps to put this case back on track for a meaningful chapter 11 proceeding, including to (a) filing a motion to set a bar date, (b) attended and completed both the IDI and 341A meetings, (c) filed the delinquent April 20024 operating report, (d) commenced negotiations with Chassen and AREH/Oak, (e) commenced negotiations to resolve the investor dispute and motion to expand trustee powers regarding the 89th Street investment property and, most recently, (f) filed objections to the Rulings in the District Court so that the Rulings could be either overturned or made final.

5.     Moreover, until a bar date can be set (the order is subject to objections by Chassen, AREH and Oak) it is entirely unclear what the universe of claims against the Debtor are, and until such claims are known, the Debtor cannot promulgate a meaningful plan.

6.     Therefore, as a result of all of the foregoing, it is in the best interests of all parties to maintain the status quo of the Chapter 11 case while the Debtor and its new proactive counsel attempt to resolve and/or effectively investigate and if necessary adjudicate the disputes that underly the Arch investment portfolio and its members and managers, including the Debtor, Chassen, AREH and Oak.

7.     Importantly, this is the Debtor's first request for an exclusivity extension. The Debtor's stakeholders will benefit from, and will certainly not be prejudiced by, the requested extension because plan formulation and negotiations will be far more productive and fruitful when the Debtor is able to either resolve the parties' disputes, seek finality of the Rulings, set a bar date and most importantly investigate, through discovery, the state of management and assets of the Arch real estate portfolio, which the Debtor has been effectively shut out of all meaningful information or exercise of its (or other affiliated members) approval rights. Allowing other stakeholders, whose interests are adverse to and potentially harmful to the Debtor's estate, to

propose competing Chapter 11 plans at this juncture, before the Debtor has had a reasonable opportunity to resolve or adjudicate the issues regarding the Arch real estate portfolio will be chaotic and detrimental to the restructuring process.

8.      The importance of extending the Exclusive Periods is clear, and, as set forth herein, "cause" exists for the Court to do so. Accordingly, for the reasons set forth herein, the Debtor requests that the Court extend the Exclusive Periods by six months, without prejudice to the Debtor's rights to seek further extension.[1]

## JURISDICTION

9.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

10.     On March 7, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 Subchapter V of the Bankruptcy Code (the "Chapter 11 Case"). On June 5, 2024, the Debtor retained substitute counsel that filed an *Amended Voluntary Petition to Reflect Withdrawal of Subchapter V Election* [Docket No. 124] (the "Amended Petition Date") thereby removing the Subchapter V designation from the Chapter 11 Case.

11.     On March 8, 2024, Eric Huebscher was appointed as the Chapter 11 Subchapter V trustee. Mr. Huebscher recently filed a final fee application in the Chapter 11 case. No examiner or statutory committee has been heretofore appointed.

---

[1] Although the Debtor has not filed an accompanying declaration with this Motion, to the extent the Motion is contested, or the Court otherwise deems it appropriate, the Debtor will file an accompanying declaration(s) and make such parties available for cross examination.

4

12. The Debtor has continued in possession of its property and the management of its business affairs as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtor is operating its businesses and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. The Debtor is a limited liability corporation organized under the laws of the State of New York. The Debtor is a real estate holding company with no operations. The Debtor and its non-debtor affiliates, collectively constitute a vertically integrated real estate owner, operator and developer – with a general focus on real estate investment, development, construction, and asset management across primary and secondary markets in the United States.

14. For a detailed description of the Debtor and its operations, the Debtor respectfully refer the Court and parties in interest to the *First Day Affidavit of Jeffrey Simpson Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* [Docket No. 16] (**the "First Day Declaration"),** which is incorporated herein by reference.

### RELIEF REQUESTED SHOULD BE GRANTED

15. By this Motion, the Debtor seeks entry of an order, pursuant to section 1121(d) of the Bankruptcy Code and without prejudice to the Debtor's right to seek additional extensions of time, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), (i) extending the time during which the Debtor shall have the exclusive right to file a plan of reorganization and accompanying disclosure statement from July 5, 2024, to and including January 3, 2025; and (ii) extending the time during which the Debtor have the exclusive right to solicit acceptances to said plan from September 3, 2024, to and including March 3, 2025.

5

16.  The Motion is being made prior to the expiration of the Debtor's exclusive period under Section 1121(e) of the Bankruptcy Code, and by virtue of such filing the exclusive period is extended to no earlier the hearing date held to consider this Motion.

## BASIS FOR REQUESTED RELIEF

17.  Section 1121(b) of the Bankruptcy Code provides for an initial period of 120-days after the commencement of a Chapter 11 case during which a debtor has the exclusive right to file a Chapter 11 plan. Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the 120-day Exclusive Filing Period, it has an exclusive period of 180-days after the commencement of the Chapter 11 case to obtain acceptances of its plan. The Debtor's Exclusive Filing Period and Exclusive Solicitation Period are currently set to expire on July 5, 2024 and September 3, 2024, respectively.

18.  Under Section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Periods for cause. 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").

19.  The Bankruptcy Code neither defines the term "cause" for purposes of section 1121(d) nor establishes formal criteria for an extension. The legislative history of section 1121 of the Bankruptcy Code indicates, however, that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95–595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 (noting that Congress intended to give Bankruptcy Courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in

6

interest); *see also In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[Section] 1121(d) provides a 'for cause' standard in determining exclusivity extension requests. As might be inferred from such a general standard, the legislative intent has been construed to leave the question to the reorganization court in the exercise of its discretion and to promote maximum flexibility . . . ."). Simply put, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and nonfinancial information concerning the ramifications of any proposed plan for disclosure to creditors. *See In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

20. The broad discretion conferred on the court in these circumstances enables the court to consider a variety of factors to assess the totality of circumstances in each case. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying factors courts consider in determining whether to extend exclusivity).

21. Courts within the Second Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See, e.g., In re Excel Mar. Carriers Ltd.*, No. 13-23060 (RDD), 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (Bankr. D. Del. 1986). In general, as long as debtors give the court "no reason to believe that they are abusing its exclusivity rights . . . [a] requested extension of exclusivity . . . should be granted." *In re Global Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (noting the debtors' "substantial efforts . . . to stabilize its business and develop a viable exit strategy"). In

particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods. *See In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *McLean Indus.*, 87 B.R. at 834; *see also Dow Corning*, 208 B.R. at 664 (identifying the below factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).

22. Courts in this district and others have identified the *Adelphia* factors as factors to consider in determining whether cause exists to extend exclusivity. *See, e.g.*, *See In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005) (citations omitted); *see also In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (evaluating the factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity). These non-exclusive factors include:

(i) the size and complexity of the debtor's case;
(ii) the necessity for sufficient time to permit the debtor to negotiate a Chapter 11 plan and prepare adequate information;
(iii) the existence of good faith progress toward reorganization;
(iv) the fact that the debtor is paying bills as they become due;
(v) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
(vi) whether the debtor has made progress in negotiations with its creditors;
(vii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
(viii) whether an unresolved contingency exists.

*See In re Friedman's Inc.*, 336 B.R. at 888 (citations omitted); *see also In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (noting that the factors listed above are "objective factors which courts historically have considered in making determinations of this character").

8

23. Not all factors are relevant to every case, and courts tend to use a relevant subset of the above factors in determining whether cause exists to grant an exclusivity extension in a particular Chapter 11 case. *See, e.g.*, *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003) ("It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each."); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of factors.").

## CAUSE EXISTS TO EXTEND EXCLUSIVE PERIODS

24. As set forth below, an extension of the Exclusive Periods by six months is appropriate, in the best interest of the Debtor's stakeholders, and consistent with the intent and purpose of Chapter 11 of the Bankruptcy Code. The requested extension of the Exclusive Periods is necessary and appropriate to enable the Debtor to attempt to resolve or, if unsuccessful, discover and litigate the myriad of claims and issues between its partners, affiliates and creditors which must be accomplished in order for the Chapter 11 case to be properly resolved. Accordingly, application of the relevant above factors to the facts of this Chapter 11 Case demonstrate that ample cause exists to grant the reasonable extension of the Exclusive Periods requested herein.

**A.    This Chapter 11 Case is Large and Complex.**

25. The scale and complexity of the Debtor's business and industry, which require the Debtor to navigate complex issues in its reorganization efforts, support the need for the extension of the Exclusive Periods. This factor weighs heavily in favor of extending exclusivity.

9

*See In re Texaco Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."). The legislative history of section 1121 provides that "if an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963.

26. This Chapter 11 Case, as a result of the Debtor's various and multiple management and membership interests, is necessarily complex. With new experienced counsel in tow, the Debtor has begun the groundwork necessary to attempt to resolve and, if necessary discover and litigate in order to fully ascertain its assets, rights, interests and claims of the respective parties. The parties' varying rights and legal positions necessarily add complexity to the Chapter 11 case.

27. Furthermore, since the Amended Petition Date, the Debtor has taken various steps towards the required resolutions and/or litigations as detailed above,.

28. Accordingly, the size and the complexity of this Chapter 11 Case, and the breadth of financial and legal issues involved herein, given the Debtor's recent good faith efforts, compliance and proactivity, warrant the requested extension of the Exclusive Periods.

**B.    The Debtor Needs Sufficient Time to Negotiate or, if Necessary, Discover and litigate with Constituents, and Negotiate a Chapter 11 Plan.**

29. This is the Debtor's first motion requesting an extension of the Exclusive Periods. As discussed above, the Debtor is intently focused on discovering all of its assets and potential liabilities – necessary to promulgate Chapter 11 plan that will enable it to emerge from this Chapter 11 Case in a reasonable amount of time. A confirmable Chapter 11 plan, however, is

predicated on the Debtor obtaining further verified information about the current status of the Arch real estate portfolio, as well as marshalling its other, non-Oak related real estate asset interests. Despite the recent meaningful progress achieved by the Debtor, the Debtor needs additional time to investigate, resolve and/or litigate in order to maximize the value of all of its assets and interests. Admittedly this is a complex and time consuming process, which must take into consideration numerous factors and competing interests of the parties.

30. The Debtor and its advisors are working with alacrity to investigate and resolve or prosecute its interests. The Debtor will use the extension of the Exclusive Periods—if it is granted by this Court—to continue these efforts which are absolutely necessary for the Debtor to promulgate a meaningful plan capable of being confirmed.

C. **The Debtor has in the Recent Time Period Demonstrated Good Faith Progress Towards Reorganization.**

31. Since the Amended Petition Date, the Debtor and tis new counsel have been hard at work laying the groundwork for a successful reorganization. While much work remains, the Debtor has made considerable progress with respect to identifying the critical issues and attempting to resolve them before commencing significant discovery and litigation.

32. The Debtor has worked diligently to ensure that this Chapter 11 Case is being managed efficiently and without unnecessary costs, all in an effort to preserve value for all stakeholders. Debtor's current counsel has reached out to all of the material constituents to try and resolve the significant and difficult issues between the various *inter se* parties while keeping the Debtor's case on track and in compliance with the US Trustee and Court guidelines.

33. Accordingly, the Debtor has made considerable progress in this case, notwithstanding that the plan of reorganization is still being finalized. On this basis alone, the requested extension of the Exclusive Periods is warranted. *See in re Adelphia Commc'ns Corp.*,

352 B.R. 578, 588 (Bankr. S.D.N.Y. 2006) (viewing the good faith progress factor "as one of the more important factors" in the analysis).

**D.    The Debtor Remains Engaged with Creditor Constituents and will be Continue to Negotiate a Chapter 11 plan or Adjudicate the Parties' *Inter Se* Claims in a Reasonable Amount of Time.**

34.    Although plan formulation cannot yet be commenced, as discussed above, the Debtor is in regular contact with all of the key party and creditor constituencies. The Debtor hopes these discussions will lay the groundwork for upcoming plan negotiations and enable the parties to engage in constructive negotiations over a plan of reorganization, and in the event unsuccessful, the Debtor will move quickly with discovery and litigation necessary to adjudicate the parties' respective claims and interests.

**E.    Relatively Little Time has Elapsed in the Chapter 11 Case and an Extension of the Exclusive Periods Will Not Prejudice the Creditors.**

35.    An extension of the Exclusive Periods will not prejudice the Debtor's stakeholders. On the contrary, the Debtor filed this case in March, approximately three months ago, and this is the Debtor's first request for extension of the Exclusive Periods. While material and complex unresolved issues remain, with additional time and absent the added confusion and disruption of competing third-party plans, the Debtor will endeavor to resolve or litigate all such issues in furtherance of a plan of reorganization. An extension of the Exclusive Periods is warranted to enable the Debtor to effectively determine the totality of its assets, liabilities, claims and interests as well as those of the other parties in interest.

**F.    The Debtor is Not Seeking to Extend the Exclusive Periods to Pressure Creditors.**

36.    The Debtor is not pressuring its creditors via the relief requested by this Motion—in fact, the granting of the Motion will avoid unnecessary litigation concerning rival or competing plans which would also be premature for the Court to consider in light of the unresolved

issues concerning the Debtor's assets, rights and interests and the claims of third parties. The extension of the Exclusive Periods will serve only to allow such negotiations to progress constructively and in a controlled manner rather than introducing potential confusion, litigation and value and resource degradation.

37. Accordingly, for the reasons set forth herein, the Debtor submits that "cause" exists to extend the Exclusive Periods and respectfully request that the Court grant the relief requested herein.

## NOTICE

38. The Debtor has provided notice of this Motion to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) all creditors; and (iii) all parties that have requested or that are required to receive notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). The Debtor submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

39. No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: July 5, 2024
    New York, New York                     Respectfully submitted,

                                                  **DAVIDOFF HUTCHER & CITRON LLP**
                                                  */s/ Jonathan S. Pasternak*
                                                  605 Third Avenue
                                                  New York, New York 10158
                                                  Telephone: (212) 557-7200

Email:  jsp@dhclegal.com
*Proposed Substitute Counsel for the Debtor*

14