| | |
|---|---|
| KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP<br>200 West 41st Street, 17th Floor<br>New York, New York 10036<br>(212) 972-3000<br>Sean C. Southard, Esq.<br>Brendan M. Scott, Esq.<br>ssouthard@klestadt.com<br>bscott@klestadt.com | OLSHAN FROME WOLOSKY LLP<br>Adam H. Friedman<br>Jonathan T. Koevary<br>Katherine Mateo<br>1325 Avenue of the Americas<br>New York, NY 10019<br>212.451.2300<br>afriedman@olshanlaw.com<br>jkoevary@olshanlaw.com |
| -and -<br><br>SCHWARTZ LAW PLLC<br>Allen Schwartz, Esq.<br>150 Broadway, Suite 701<br>New York, New York 10038<br>347-460-5379<br>allen@allenschwartzlaw.com<br><br>*Counsel for Jared Chassen* | *Counsel for Arch Real Estate Holdings LLC* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JJ ARCH LLC,<br><br>                  Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 24-10381 (JPM) |
| JEFFREY SIMPSON, individually and derivatively, as managing member of JJ ARCH LLC, suing derivatively as managing member of ARCH REAL ESTATE HOLDINGS LLC and JJARCH LLC,<br><br>                  Plaintiffs,<br><br>                  -against-<br><br>JARED CHASSEN and FIRST REPUBLIC BANK,<br><br>                  Defendants. | Adv. Pro. No. 24-01335 (JPM) |

| |
|---|
| JARED CHASSEN, individually and derivatively, as managing member of JJ ARCH LLC, suing derivatively as managing member of ARCH REAL ESTATE HOLDINGS LLC and JJ ARCH LLC, |
| Counterclaim-Plaintiffs, |
| -against- |
| JEFFREY SIMPSON and YJ SIMCO LLC, |
| Counterclaim-Defendants |
| And |
| JJ ARCH LLC and ARCH REAL ESTATE HOLDINGS LLC, |
| Nominal Defendants. |
| 608941 NJ INC, |
| Intervenor-Plaintiff, |
| -against- |
| JEFFREY SIMPSON, JJ ARCH LLC, and ARCH REAL ESTATE HOLDINGS LLC, |
| Defendants |
| And |
| ARCH REAL ESTATE HOLDINGS, LLC |
| Nominal Defendant. |

**JOINT OPPOSITION OF JARED CHASSEN AND ARCH REAL ESTATE HOLDINGS TO DEBTOR'S MOTION FOR AN ENTRY OF AN ORDER (I) EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF AND (II) GRANTING RELATED RELIEF**

Jared Chassen ("Mr. Chassen") and Arch Real Estate Holdings LLC ("AREH" and together with Mr. Chassen, the "Non-Debtor Parties"), by and through their respective undersigned counsel, submit this joint opposition (the "Opposition") to *Debtor's Motion For Entry Of An Order (I)*

2

*Extending the Debtor's Exclusive Periods Within Which To File A Chapter 11 Plan And Solicit Acceptances Thereof And (ii) Granting Related Relief* [ECF No. 160] (the "Motion"). In support of the Opposition, the Non-Debtor Parties respectfully state as follows:

## PRELIMINARY STATEMENT

The Motion should be denied because any extension of exclusivity will only prolong this chapter 11 case and will serve no legitimate interest of the Debtor or its creditors. The Debtor's gamesmanship in withdrawing the Subchapter V election already bought it an extension of a month, and its tactic of noticing the Motion for a hearing at the end of August has resulted in a *de facto* extension of still more time (although it appears exclusivity has expired in any case). An extension would be futile as no amount of time will cure the Debtor's inability to propose a confirmable chapter 11 plan. From day one, the Debtor has failed to demonstrate any prospects or intention of reorganization, and no meaningful progress nor even effort has been made toward negotiating a chapter 11 plan by this Debtor. At most, the Debtor indicates it needs more time to litigate matters with the Non-Debtor Parties, but the Debtor's ability to reorganize is not actually contingent on resolving that litigation. Instead, the circumstances show the Debtor is using the bankruptcy courts to frustrate the Non-Debtor Parties' efforts to salvage the real estate portfolio the Debtor once managed, while the Debtor does less than the bare minimum to keep the case alive. Due to the highly unusual nature of this case—the legitimacy of which the Non-Debtor Parties challenge—the Non-Debtor Parties are prepared to file and confirm a chapter 11 plan if that presents the most expedient means of exiting bankruptcy.

## FACTS

**A.     The Chapter 11 Case**

1.     On March 7, 2024, Mr. Simpson signed a voluntary petition for relief under chapter 11 of Title 11 of the U.S. Code (the "Bankruptcy Code") purportedly on behalf of the Debtor and

3

thereby caused counsel to the Debtor to commence the case now pending before this Court (the "Chapter 11 Case"). The underlying basis for Mr. Simpson's alleged corporate authority to commence the Chapter 11 Case was his allegation that he was then the sole member of the Debtor which was, in turn, based on his further allegation that Mr. Chassen had either been terminated on August 5, 2023 or voluntarily resigned at some point thereafter.[1]

2. On March 8, 2024 the United States Trustee appointed Eric Huebscher as the Subchapter V Trustee in the Chapter 11 Case (the "Sub V Trustee") [ECF No. 2].

3. On June 5, 2024, the same day that a Subchapter V Plan was due, the Debtor filed an amended petition purporting to withdraw the Debtor's Subchapter V election and convert this case to a traditional Chapter 11 case.

## OPPOSITION

**A.    Untimeliness of the Motion and Loss of Exclusivity**

4. The Debtor filed the Motion seeking to extend both the exclusive period to file and to solicit acceptances of a chapter 11 plan (collectively, the "Exclusive Periods") on July 5, 2024, exactly 120 days after the voluntary petition was filed commencing the Chapter 11 Case on March 7, 2024 (the "Petition Date").

5. Section 1121 of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a Chapter 11 case and entry of an order for relief during which a debtor has the exclusive right to file a plan. *See* 11 U.S.C. § 1121(b). If a plan is filed by the debtor within that 120-day period, no other party may file a plan for a total of 180 days from the petition date, in order to provide the debtor with sufficient time to solicit acceptances of its plan. *See* 11 U.S.C. § 1121(c)(3).

---

[1] Mr. Chassen vehemently disputes these allegations.

4

6. Section 1121(d) of the Bankruptcy Code provides, however, that the bankruptcy court may, for cause shown, increase the 120-day and 180-day exclusive periods. *In re Adelphia Communs. Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 407 (E.D.N.Y. 1989); *In re United Press Int'l, Inc.*, 60 B.R. 265, 270 (Bankr. D. D.C. 1986).

7. In particular, Section 1121(d)(1) of the Bankruptcy Code provides:

> Subject to paragraph (2),[2] on request of a party of interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

8. "[A]s long as a request for extensions for the exclusivity periods is made by a motion filed, listed, and decided before the exclusivity periods expire, the motion is timely . . . . Of course, if the motion is not granted before the original 120–day period has expired and no stay is issued, other creditors can proceed to file a plan of their own." *In re Nicolet, Inc.* 80 B.R. 733, 741 (Bankr. E.D. Pa. 1987).

9. Local Rule 9006-2, adopted August 1, 2013, eliminated the requirement of seeking a bridge order prior to expiration by automatically granting one, *provided the movant complied with terms of the rule.* The local rule provides:

> Unless otherwise provided in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or order of the Court, when a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, or order of the Court, *with a return date that is no later than fourteen (14) days after the date of such filing or, if the Court is unable to schedule a return date*

---

[2] Paragraph (d)(2) of Section 1121 of the Bankruptcy Code provides that the 120-day period and 180-day period specified in paragraph (1) may not be extended beyond the dates that are 18 months and 20 months, respectively, after the date the order for relief is entered.

5

> *within such period, as soon thereafter as the return date may be scheduled by the Court,* the time shall automatically be extended until the Court resolves the motion to extend the time. An automatic extension under this rule shall not require the issuance or entry of an order extending the time.

Local Bankruptcy Rule 9006-2 (emphasis added).

10. By Local Rule 9006-2's terms, to obtain the automatic bridge, a movant must seek to have a motion heard within 14 days of the filing of the motion. Only if the Court is "unable" to schedule one within those 14 days will the automatic bridge still attach with a later return date, and such motion must still be heard "as soon thereafter as the return date may be scheduled by the Court." Thus, a movant is not entitled to enlarge the extensions available under Local Rule 9006-2 by the artifice of seeking the latest possible return date the Court will offer.

11. Although the Motion was filed on the 120th day following the Petition Date (July 5th), it wasn't noticed immediately. Thereafter, on July 9, 2024, the Debtor docketed notice of hearing on the Motion for August 29, 2024, nearly 8 full weeks after expiration of the Exclusive Periods, which is tantamount to extending the Debtor's exclusivity period by 55 days, or nearly 1.5x the 120-day exclusivity period. The Non-Debtor Parties submit that Local Rule 9006-2 does not contemplate such an extension, unless the Court's unavailability for an earlier hearing dictated it. The Non-Debtor Parties have not been provided any record suggesting that the Debtor sought to have the Motion heard within the time prescribed by Rule 9006-2. Unless there is a record to the contrary, the Debtor's exclusivity period has irrevocably lapsed. *See In re Congoleum Corp.*, 362 B.R 198, 204-205 (Bankr. D.N.J. 2007) (determining that Bankruptcy courts lack the authority to reinstate exclusivity once period has elapsed).

**B.    Relevant Factors Courts Consider When Considering Cause to Extend the Exclusive Periods.**

12.    Even if this Court determines that Local Rule 9006-2 should serve to save this Debtor's exclusivity, the Debtor has established no cause to further extend the Exclusive Periods beyond the several months it has already obtained. Indeed, the Motion should be denied based upon an examination of the following factors that bankruptcy courts consider when reviewing such a request:

   a. the size and complexity of the case;

   b. the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

   c. the existence of good faith progress towards reorganization;

   d. whether the debtor is paying its bills as they come due;

   e. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

   f. whether the debtor has made progress in negotiations with its creditors;

   g. the amount of time which has elapsed in the case;

   h. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

   i. whether an unresolved contingency exists.

*Adelphia*, 336 B.R. at 674; *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (citing *Texaco*, 76 B.R. 322); *In re Dow Corning Corp.*, 208 B.R. 661, 665 (Bankr. D. Mich. 1997); *In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. D. Tex. 1996).

13.    Because not all factors are relevant to every chapter 11 case, courts have broad discretion and flexibility to consider the relevant factors in determining whether cause exists to extend the exclusive periods. *See Adelphia,* 352 B.R. at 586 ("A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact specific."); *See In*

7

*re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (the "Court has broad discretion in extending or terminating exclusivity").

14. The Debtor offers only a reference to the first day declaration of Mr. Simpson as its evidentiary support for the Chapter 11 Case progress to date [ECF. No. 16], though it alludes to potential additional supporting evidence and a willingness to subject Mr. Simpson to cross examination. *See* Motion, ¶8, FN 1. However, Mr. Simpson's first day declaration, which was filed on March 19, 2024, contains no description whatsoever of how this Chapter 11 Case has progressed since it was commenced nor any clear exit strategy. *See* ECF No. 16.

15. The primary argument offered by the Debtor (via Mr. Simpson) in favor of extending the Exclusive Periods (which is weaved into nearly every corner of the Motion) is that the Debtor needs additional time to either resolve or litigate the governance disputes that this Court sent back to the New York State Supreme Court, New York County, Commercial Division (the "Commercial Division") for consideration via the Remand Ruling.[3] The Debtor promises to spend lots of time seeking discovery to "ascertain the current state and condition of the Debtor's membership and other equity interest in the Arch real estate portfolio which is currently under the exclusive and unfettered control of Arch and Oak" in the event those settlement negotiations are unsuccessful. Motion at ¶ 3. The Debtor's circular arguments then suggest that the Debtor lost access to information about the state of the non-debtor entities that Mr. Simpson purports to have control rights over via the Debtor and so discovery is therefore required to figure out how to reorganize. These same arguments have been regurgitated again and again by Mr. Simpson throughout this Chapter 11 Case in an effort to excuse and explain the Debtor's total disregard of

---

[3] Capitalized terms not otherwise set forth herein shall have the meanings set forth for the same in the Motion.

8

its obligations, and to deflect attention and blame away from himself.[4]  It should now be clear to all that the Debtor's strategy (as guided by Mr. Simpson) in the Chapter 11 Case is to drag the proverbial anchor and prevent any forward progress by non-debtor affiliates, thereby exploiting the bankruptcy cloud over the Debtor, as a means to pressure the Non-Debtor Parties to relent to his demands.[5]

16.    Importantly, the Debtor is not allowed to make threats and use the extension of exclusivity to pressure creditors or other parties in interest into acquiescence on reorganization demands. "In considering a motion to extend exclusivity, the court must be mindful that the debtor should not be permitted to use the extension as a way to pressure the secured claimants to accede to the debtor's proposals." *See In re General Bearing Corp.*,136 B.R. 361, 367 (Bank. S.D.N.Y. 1992).  Moreover, the Debtor is most certainly not allowed to use such an extension of the Exclusive Periods to extort parties in interest into resolving a dispute involving non-debtors where there is no other reorganizational purposes or plan.  This Court should not countenance this use of chapter 11 as a sword and should instead afford other parties in interest the right to propose an exit from chapter 11 for this Debtor.

*(i)    Size and Complexity of the Chapter 11 Case*

17.    This Chapter 11 Case is neither large nor complex.  The Debtor filed a creditor matrix on March 20, 2024 [ECF No. 22] and filed schedules of assets and liabilities and a statement of financial affairs on March 24, 2024 [ECF Nos. 31 & 32] (the "Schedules").  The Schedules listed aggregate debt of $136,250.68 (of which $128,353 was to a single law firm that represented

---

[4] The Non-Debtor Parties' Joint Motion to Dismiss the Chapter 11 Case for the Debtor's Failure to Comply with Its Obligations [ECF No. 170], filed August 6, 2024, and noticed for hearing on the same date as the present Motion more fully details the Debtor's postpetition conduct that compels dismissal of the Chapter 11 Case.

[5] The Sub V Trustee aptly recognized the circumstances of the Chapter 11 Case "appear to present . . . use of the bankruptcy system for purposes other than for which it is intended." [ECF No. 95].

9

Mr. Simpson). Apart from the Non-Debtor Parties, no creditor has appeared and only the IRS has filed a proof of claim. This Court sent the disputes between the Non-Debtor Parties, Mr. Simpson and 608941 NJ Inc. ("Oak") back to the Commercial Division on account of the Remand Ruling. However, the Remand Ruling was challenged by the Debtor before the U.S. District Court and the same is currently in a state of legal limbo. If the Remand Ruling is confirmed by the District Court and the governance disputes are returned to the Commercial Division from which they came, the Chapter 11 Case will serve no purpose but to confound and frustrate the efforts of the non-debtor affiliates and their counterparties to proceed with their business. Indeed, the Chapter 11 Case continues to accrue administrative expenses which have likely eclipsed the value of scheduled debts purportedly owed by the Debtor. Indeed, the Debtor's recognition that "Debtor's prior counsel was unable to make considerable progress in the first 120 days of the Chapter 11 case" as much admits all administrative expenses to date were a waste. Motion at ¶ 4. Without any real progress or obvious benefit, the administrative accruals raise further serious questions about the benefits to creditors for this Chapter 11 Case and the Debtor's reorganization strategy.

18. Indeed, on April 24, 2024 and before this Chapter 11 Case was reset as a traditional chapter 11 case, the Sub V Trustee filed a status report, which among other things noted that:

> The banking documents provided by the Debtor's counsel for the years 2017-2023 and a portion of 2024 **did not reveal any core economic business activity**. Instead the bank statements showed **the account was primarily used as a conduit** for transfers into and out of the Debtor's account. The statements revealed that the account was used for payment of possible business-related expenses, including, but not limited to, automobile expenses and related items. The statements **did not show any credits** (with few exceptions) **from third parties demonstrating the sale of goods and services, real property, or other income. A review of the other documents**, including the 2021 tax return (the "2021 Tax Return") **did not show that this Debtor owns real property, nor did it show that it has leases, executory contracts, or debt**.

10

Subchapter V Trustee Status Report dated April 24, 2024 [ECF No. 95] (emphasis added). "Taken together, these issues appear to present not only obstacles to a small business reorganization but use of the bankruptcy system for purposes other than for which it is intended." *Id.*

19.    At the meeting of creditors (the "341 Meeting") held on June 20, 2024, Mr. Simpson admitted that the Debtor has no current income or prospects for the same. *See* Transcript of 341 Meeting annexed hereto as **Exhibit A** at pages 38-39.

   *(ii)    Time to Negotiate a Plan and Prepare Adequate Disclosures*

20.    The Debtor through Simpson argues that it hasn't had sufficient time to negotiate a plan and that discovery is necessary to gather the information needed to proceed with a plan process because it doesn't understand the status of non-debtor affiliate entities and properties that it would purport to treat as part of a plan. This is simply untrue.

21.    In terms of purported plan negotiations, the Debtor's counsel (as directed by Mr. Simpson) reached out to discuss the potential for settlement and dismissal of the Chapter 11 Case. However, it was quickly determined that the Debtor is unable or unwilling to agree upon terms that will convince Mr. Simpson to voluntarily dismiss this Chapter 11 Case. As such, the purported need for additional time to negotiate or gather information sufficient to prepare and confirm a plan of reorganization is but a pretext designed to create further delay and obfuscation by the Debtor for the benefit of Mr. Simpson.

22.    Much argument has been made on these disclosure points in previous filings before this Court. Contrary to the Debtor's assertions, AREH has made available to the Debtor all books of account in its possession related to the Debtor. To the extent any Debtor files or accounts are password protected, current management of AREH does not and never had knowledge of those passwords and does not know who does, given all these accounts and files were created when

11

AREH was managed by the Debtor (prior to its removal as AREH's managing member by the State Court).

23. The Non-Debtor Parties reject any inference or allegation that they are in any way responsible for Debtor's inability to file accurate schedules (which they argued to this Court must be done prior to any bar date being entered). If the Debtor is missing any documents or files it believes is in possession of the Non-Debtor Parties it should identify which files and where they were maintained.

*(iii)    Good Faith Progress Towards Reorganization*

24. The Debtor has not made any progress toward reorganization and will never make such progress as the same is futile without the support of the Non-Debtor Parties and Oak. The Debtor has not progressed the Chapter 11 Case in any meaningful way. The Debtor does not seek to administer any assets in the Chapter 11 Case and has failed to timely report any activity of the non-Debtor subsidiaries as required by Federal Rule of Bankruptcy Procedure 2015.3. There is simply no business to reorganize. *See* Motion, ¶ 13 ("Debtor is a real estate holding company *with no operations*") (emphasis added). As such, there is neither progress nor is there a showing of good faith effort by the Debtor to support extending the Exclusive Periods.

*(iv)    Paying Bills As They Come Due (Postpetition Operations).*

25. The Debtor has no operations, but has nonetheless failed to timely report activities during the Chapter 11 Case. In point of fact, the Debtor has only filed two operating reports, one for the stub period of March 7, 2024 through March 31 2024 (the "March MOR") and the other for the month of April 2024 (the "April MOR"). The March MOR was filed on May 9, 2024 (nearly three weeks after the deadline). [ECF No. 108]. The March MOR showed no business operations.[6]

---

[6] As noted in the First Day Affidavit of Jeffrey Simpson, "The Debtor is a real estate holding company *with no operations*." [ECF No. 16, ¶ 8 n.4] (emphasis added).

The March MOR identified cash flow below $3,000 and month-end cash on hand of less than $4,000. In its Response to Question 4, the Debtor conceded that it has no "Debtor-in-Possession Account," and admitted in response to Question 10 that it has two "non-Debtor in-Possession" bank accounts.

26. Although there has been very little financial activity, the activity that has been reported shows that the Debtor has flouted its obligations and the rules of this Court. In response to MOR Question 11 on the March MOR, the Debtor admitted to the postpetition sale of a 2020 Land Rover Defender[7] that included the satisfaction and pay down of $38,000 of debt. The Debtor, who has on several occasions preached the sanctity of seeking court approval for transactions outside the ordinary course concerning property of the estate under Bankruptcy Code section 363(b), never sought court approval for the sale and paydown of the Land Rover. Furthermore, this purported paydown of debt represents nearly one-third of the amount of the Debtor's scheduled debt.

27. The April MOR, filed over one month late on June 25, 2024 [ECF No. 152] shows a cash balance of $133.97 on hand at both the beginning and the end of the month. Of the approximately $13,000 that passed through the Debtor in April, the Debtor reports $10,750 was directed to YJ Simco LLC, an entity controlled by and for the benefit of Mr. Simpson. *See* April MOR, Q.21. These funds came from a subsidiary of the Debtor, 88 Schwenks LLC. *Id.* at Q.20.[8] This apparent conversion of Debtor funds by Mr. Simpson shows his disregard for the rules that he is now subject to in this Chapter 11 Case.

---

[7] For the avoidance of doubt, the Debtor also failed to include the 2020 Land Rover Defender as an asset in the Schedules sworn to by Mr. Simpson.
[8] At the Section 341 Meeting, Mr. Simpson testified generally that he was reimbursing entities controlled by him from debtor entities. 341 Meeting Trans. at p.52:9-53:4, 87:15-21.

13

28. Further, the Debtor controls several subsidiaries, including JJ NY 550 LLC, 225 HPR LLC, 1640 Montauk LLC and 146 East 89 Borrower 1 LLC (collectively, the "<u>Non-Debtor Subsidiaries</u>"). Pursuant to Bankruptcy Rule 2015.3 (a) and (b), the Debtor was obligated to have filed reports concerning the "value, operations, and profitability" of each of these Non-Debtor Subsidiaries by April 1, 2024 (seven days before the first scheduled date of the meeting of creditors). The Debtor has never filed any such statements despite Mr. Simpson's apparent operation of these Non-Debtor Subsidiaries through the Debtor since the Petition Date. This lack of disclosure is likely because Mr. Simpson, who acknowledged his continued control over these Non-Debtor Subsidiaries via his management of the Debtor, has determined in consultation with Debtor's counsel that he has the right to take funds in satisfaction of undocumented loans he purports to have previously made to these entities. *See* 341 Meeting Trans., p. 44-53 (defined below).

29. Further, Mr. Chassen recently discovered that Mr. Simpson has unilaterally listed for sale certain real property owned by the Non-Debtor Subsidiaries, including 225 Head of Pond Road, Montauk, NY and 550 Metropolitan Avenue, Brooklyn, NY. Given Mr. Simpson's expressed position that he has unilateral authority to control the Debtor and the Non-Debtor Subsidiaries in disregard of Mr. Chassen's rights, there is grave concern about this activity occurring without adequate disclosure or authority.[9]

30. Upon information and belief and in addition to the funds diverted from 88 Schwenks as outlined above, Mr. Simpson is also personally accepting cash and other

---

[9] Any sale of these properties would violate not only the JJ Arch Operating Agreement but orders issued in the State Court Proceeding. As previously addressed in the context of motion to remand the State Court Proceeding, the Commercial Division presents the most appropriate venue for such relief, having issued the subject orders. Thus, Simpson appears to be exploiting the delay in the return to the Commercial Division occasioned by his objection to this Court's findings of facts and conclusions of law regarding the remand motion, which is now pending.

consideration or otherwise directing the same to YJ Simco LLC, which consideration the Non-Debtor Parties believe should rightfully be paid to the Debtor or its wholly owned subsidiaries. Specifically, it is alleged that Mr. Simpson is actively taking value from the post-petition operations of 1640 Montauk LLC and/or 1640 Motors LLC d/b/a Rever Motors.[10] Overall, the Non-Debtor Parties believe this conduct amounts to conversion of estate property.

    *(v)    **Reasonable Prospects for Filing a Viable Plan***

31.    The Debtor has no reasonable prospect for filing a confirmable plan in this Chapter 11 Case without support from the Non-Debtor Parties and Oak. *See In re Grossinger's Associates*, 116 B.R. 34 (Bankr. S.D.N.Y. 199) (determining to terminate exclusivity due to mounting administrative expenses and unconfirmable plan filed by Debtor as tactic to extend exclusive period). Even if at the end of the litigation before the Commercial Division (referred to as the "State Court Proceeding" in prior filings), Mr. Simpson is found to be the proper party in control of the Debtor, that he commenced the Chapter 11 Case with adequate legal authority, and that the Debtor does not owe Oak or the Non-Debtor Parties anything, there is still no actual business operations of this Debtor to reorganize. As such, there is no viable plan to be confirmed by this Debtor. The analysis and conclusion are no different if Mr. Simpson is removed or terminated from JJ Arch as a result of the State Court Proceeding. The irreducible fact is that the Debtor has no business to reorganize.

    *(vi)    **Progress In Negotiations With Creditors***

32.    The Motion does not suggest that there have been any negotiations with creditors other than the Non-Debtor Parties and Oak. The negotiations with the Non-Debtor Parties and

---

[10] Presumably Mr. Simpson's plan is to continue extracting value from the non-AREH subsidiaries of the Debtor for his personal benefit until this Chapter 11 Case is dismissed. It is for this reason that the Non-Debtor Parties believe the Debtor is not reporting the activity of the subsidiaries pursuant to Bankruptcy Rule 2015.3.

15

Oak were quick, preliminary and unsuccessful. There is no active dialogue concerning a plan or settlement with the Debtor. From these circumstances, it is clear the only consensual pathway is voluntary dismissal of the Chapter 11 Case.

### *(vii)    Amount of Time Elapsed in the Chapter 11 Case*

33. The Debtor has been in chapter 11 nearly 5 months. No real progress has been made. Certainly none that would justify an extension of the Exclusive Periods.

### *(viii)   Extension of Exclusivity Sought to Pressure Creditors to Submit to the Debtor's Reorganization Demands*

34. The Debtor is only seeking to extend the Exclusive Periods so that Mr. Simpson may continue to attempt to exert pressure and leverage the Non-Debtor Parties and Oak into a settlement to benefit Mr. Simpson personally. No benefit to the Debtor exists by continuing to tread water in this Chapter 11 Case. Under these circumstances in particular, this Court should deny the requested extension of the Exclusive Periods.

### *(ix)    Existence of an Unresolved Contingency*

35. The one factor that even potentially supports an extension of the Exclusive Periods derives from the State Court Proceeding. Mr. Simpson and the Debtor have been taking whatever steps are available to them, including contesting the findings of this Court on the Remand Ruling and appealing this Court's Lift Stay Ruling to cause delay and continue their grip on the Chapter 11 Case and the associated automatic stay. This contingency concerning control over the Debtor to be adjudicated in the State Court Proceeding in no way precludes confirmation of a chapter 11 plan however. Indeed, the Debtor has resources to pay all creditors in full from a sale of one of its non-AREH assets and could exit bankruptcy without needing to address the claims and issues now before the Commercial Division. That is to say, the state court matters could "ride through" the bankruptcy and the Debtor could exit bankruptcy addressing the small number of liquidated claims

that do exist. But Mr. Simpson and the Debtor are not interested in progressing this Chapter 11 Case toward confirmation. Rather, they are dragging the anchor intentionally.

## **CONCLUSION**

36. For all of the foregoing reasons, it's clear that no showing has been made to support an extension of the Exclusive Periods for this Debtor. This Court should not permit Mr. Simpson and the Debtor to prolong the stay in chapter 11 when the Debtor is not attempting to follow the rules or advance the ball.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]

**WHEREFORE**, for the reasons set forth above, the Non-Debtor Parties respectfully request that the Court grant deny the Debtor's Motion and grant such other and further relief as the Court deems just and proper.

Dated: August 13, 2024

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

/s/Sean C. Southard
Sean C. Southard
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
ssouthard@klestadt.com
bscott@klestadt.com

-and-

**SCHWARTZ LAW PLLC**
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

-and-

**OLSHAN FROME WOLOSKY LLP**

/s/Adam H. Friedman
Adam H. Friedman
Jonathan T. Koevary
Katherine Mateo
1325 Avenue of the Americas
New York, NY 10019
212.452.2300
afriedman@olshanlaw.com
jkoevary@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case as noted below.

**VIA CM/ECF:**

**Brian S. Masumoto brian.masumoto@usdoj.gov**

**Eric Huebscher ehuebscher@huebscherconsulting.com**

**Scott Griffin sgriffin@grifflegal.com**

**Frank Eaton featon@grifflegal.com**

**Nagi, Jason Jason.Nagi@offitkurman.com**

**Dawn Kirby dkirby@kacllp.com**

**Allen Schwartz allen@allenschwartzlaw.com**

**Leslie Thorne leslie.thorne@haynesboone.com**

**Richard Kanowitz Richard.Kanowitz@haynesboone.com**

**Aishlinn Bottini Aishlinn.Bottini@haynesboone.com**

**Nathan E. Denning, NDenning@wiggin.com**

**Kate Cassidy kcassidy@wiggin.com**

**Nestor Rodriguez Smyt nrodriguezsmyt@wiggin.com**

**Andrew Ritter ARitter@wiggin.com**

**William C. Heuer wheuer@westermanllp.com**

**Jacob S. Frumkin jfrumkin@coleschotz.com**

*/s/ Sean C. Southard*
Sean C. Southard
