DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
Telephone: (212) 557-7200
Jonathan S. Pasternak, Esq.
Craig Price, Esq.
*Attorneys for the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X
                                           :
In re:                                     :    Chapter 11
                                           :
JJ ARCH LLC,                               :
                                           :    Case No. 24-10381 (JPM)
                        Debtor.[1]         :
                                           :
------------------------------------------X

## JOINT COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF SMALL BUSINESS DEBTOR JJ ARCH LLC

---

[1]    The last four digits of the Debtor's federal tax identification number are 4251.

## TABLE OF CONTENTS

                                                                          Page

DISCLAIMERS                                                               5

INTRODUCTION                                                             7

ARTICLE I.    SUMMARY OF CLASSIFICATION OF CLAIMS UNDER THE PLAN
              AND IMPORTANT SOLICITATION AND CONFIRMATION DATES
              Section 1.1 Summary of Classification of Claims            8
              Section 1.2 Important Dates and Deadlines                  9

ARTICLE II.   DEFINITIONS AND INTERPRETATIONS
              Section 2.1 Definitions                                    9
              Section 2.2 Rules of Interpretation                        15
              Section 2.3 Application of Definitions and Rules of Construction
                          Contained in the Bankruptcy Code              15
              Section 2.4 Other Terms                                   16

ARTICLE III.  BACKGROUND
              Section 3.1 Business Overview                             16
              Section 3.2 The Debtor's Organizational Structure         17
              Section 3.3 The Debtor's Management                       17
              Section 3.4 The Debtor's Assets                           18
              Section 3.5 Sale of the Debtor's Assets                   20
              Section 3.6 The Debtor's Key Agreements                   20
              Section 3.7 The Debtor's Capital Structure                21
              Section 3.8 Circumstances Leading to the Chapter 11 Cases 21
              Section 3.9 The Chapter 11 Case – Administrative/Litigation 22

ARTICLE IV.   CLASSIFICATION OF CLAIMS
              Section 4.1 Classification and Treatment Generally        25
              Section 4.2 Unclassified Claims – Administrative Claims and
                          Priority Tax Claims                           25
              Section 4.3 Debtor's Claims and Interests                 25

ARTICLE V. TREATMENT OF CLAIMS UNDER THE PLAN
              Section 5.1 Unclassified Claims                           25
              Section 5.2 Treatment of Administrative Claims            25
              Section 5.3 Treatment of Priority Tax Claims              27
              Section 5.4 Statutory Fees                                27
              Section 5.5 Treatment of Classified Claims and Interests  27
              Section 5.6 Reservation of Rights Regarding Claims        28

ARTICLE VI. CONFIRMATION AND VOTING
              Section 6.1 Confirmation Hearing                          28
              Section 6.2 Procedures for Objections                     29
              Section 6.3 Requirements for Confirmation                 29
              Section 6.4 Feasibility                                   29
              Section 6.5 Classification of Claims                      29

Section 6.6 Voting Procedures 30
Section 6.7 Releases, Exculpations, and Injunctions 30
Section 6.8 Alternatives to Combined Plan and Disclosure Statement 30

ARTICLE VII. IMPLEMENTATION OF THE PLAN
Section 7.1 Plan Funding Mechanism 31
Section 7.2 Dissolution of Operations 31
Section 7.3 Corporate Governance 31
Section 7.4 Section 1145 Exemption 31
Section 7.5 Closing of the Chapter 11 Case 31
Section 7.6 Preservation and Application of Insurance 31
Section 7.7 Distributions to Holders of Claims and Interests 32

ARTICLE VIII. EFFECT OF THE PLAN ON CLAIMS AND INTERESTS AND
CAUSES OF ACTION
Section 8.1 Binding Effect 34
Section 8.2 Term of Injunctions or Stays 34
Section 8.3 Retention, Reservation, and Prosecution of Causes of Action 34
Section 8.4 Injunctions 34
Section 8.5 Exculpation 35
Section 8.6 Compromise of Controversies 36
Section 8.7 Releases by the Debtor 36
Section 8.8 Preservation and Application of Insurance 36
Section 8.9 Vesting of Assets 36
Section 8.10 Authority to Effectuate Plan 37

ARTICLE IX. EXECUTORY CONTRACTS
Section 9.1 Executory Contracts and Unexpired Leases 37
Section 9.2 Rejection Damages Bar Date 38
Section 9.3 Effect of Post-Confirmation Rejection 38

ARTICLE X. CONDITIONS TO CONFIRMATION AND OCCURRENCE OF
EFFECTIVE DATE
Section 10.1 Conditions to Confirmation 38
Section 10.2 Conditions to Occurrence of the Effective Date 38

ARTICLE XI. CERTAIN RISK FACTORS
Section 11.1 Certain Risk Factors to be Considered 39

ARTICLE XII. CONFIRMABILITY AND SEVERABILITY OF A PLAN 40

ARTICLE XIII. ADMINISTRATIVE PROVISIONS
Section 13.1 Retention of Jurisdiction 40
Section 13.2 Governing Law 42
Section 13.3 Effectuating Documents, Further Transactions 42
Section 13.4 Continuing Viability of Other Orders/Administration 42
Section 13.5 Waiver of Bankruptcy Rules 3020(e) and 7062 42
Section 13.6 Discharge 42
Section 13.7 Headings 42
Section 13.8 Governmental Carve-Out 42
Section 13.9 Amendments 42

Section 13.10 Revocation, Withdrawal or Non-Consummation        43
Section 13.11 Exhibits/Schedules                                43
Section 13.12 Successors and Assigns                            43
Section 13.13 Confirmation Order and Plan Control               43
Section 13.14 Further Action                                    43
Section 13.15 Notices                                           43
Section 13.16 Substantial Consummation                          44
Section 13.17 Deemed Acts                                       44

## DISCLAIMERS

EACH HOLDER OF A CLAIM AGAINST THE DEBTOR ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE.[2] IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTOR URGES YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH §§ 1121 AND 1125 AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, EVENTS IN THE CHAPTER 11 CASE, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTOR BELIEVES THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS. THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY DISCREPANCY WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT. CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTOR AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTOR DISCLAIMS ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE

---

[2]   All references to section or chapter herein are to the Bankruptcy Code, 11 U.S.C. §§ 101, et seq., as amended. All references to "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF. THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES. ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTOR INVOLVES MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTOR'S CONTROL. ACCORDINGLY, THE DEBTOR'S FUTURE PERFORMANCE AND FINANCIAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED IN ANY SUCH FORWARD-LOOKING STATEMENTS. THE DEBTOR DOES NOT INTEND TO UPDATE OR REVISE ITS FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.

ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTOR. ALTHOUGH THE DEBTOR HAS MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTOR CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.

BECAUSE THE PLAN CONTEMPLATES PAYING ALL ALLOWED CLAIMS IN FULL, WHILE THE DEBTOR WILL BE DISTRIBUTING THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBITS HERETO, AND CONFIRMATION NOTICE TO EACH RECORD HOLDER OF CLAIMS, THE DEBTOR WILL NOT BE DISTRIBUTING BALLOTS. THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED. NOTHING STATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR, OR ANY OTHER PARTY. THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY NOT BE REPRODUCED OR PROVIDED TO ANYONE OTHER THAN ADVISORS TO THE RECIPIENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE DEBTOR.

# INTRODUCTION[3]

JJ Arch LLC (the "Debtor" or "JJ Arch") proposes the following combined disclosure statement and small business liquidating plan pursuant to §§ 1121(a) and 1125(b) and (f) (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement"). Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Article II hereof.

As discussed in greater detail below, the Plan proposes to pay or otherwise satisfy Allowed Administrative Claims, Allowed Secured Claims, and Allowed General Unsecured Claims in full and in Cash on the Effective Date or as soon as practicably thereafter. The Plan will be funded from amounts generated from the sale of certain or all of the Non-Debtor Real Property Assets. Such Non-Debtor Real Property Assets will only be sold to the extent necessary to raise sufficient funds to consummate the Plan.

The Debtor also holds certain interests in other real properties through certain affiliated entities (the "Portfolio Property Entities"). Following the temporary control of AREH by Oak, the Debtor is entitled to consent rights regarding these entities pursuant to their respective governing documents. Such Portfolio Property Entities and the related real properties ("Portfolio Projects") are listed on Schedule A hereto.[4]

It has come to the Debtor's attention that since the temporary change of control occurred regarding AREH, certain of the real property of these Portfolio Property Entities may have been improperly sold, disposed of, and/or refinanced, and guarantees removed, all without the required consent of the Debtor and/or affiliates of the related Portfolio Property Entities, and in contravention of their respective governing documents. The Debtor also believes that Oak has used its powers improperly to engage in self-dealing, fraudulent conveyances, improper capital calls, and to put in place Liens on such properties, all in violation of the control provisions of the respective governing documents. The Debtor asserts that these actions of Oak, taken in violation of the governing documents, which have sought to improperly sideline Mr. Simpson, have eroded the value of the Arch Companies' operating business and resulted in a significant negative impact upon the Debtor's affiliates.

Such actions have also served to create Claims by the Debtor against the parties taking such actions. The Portfolio Property Entities are in the process of assigning their interests in the Portfolio Projects to the Debtor directly pursuant to the various entities' transfer provisions. The Debtor asserts that the various governing documents of the Portfolio Property Entities grant significant control and information rights to Mr. Simpson (personally as an investor, through the Debtor, and through its affiliates) and to the Debtor on account of its interests in AREH. Further, notwithstanding the provisions of the governing documents, the Debtor has been denied material information regarding the Portfolio Projects.

The Plan proposes that the Debtor's interests in (i) any remaining Non-Debtor Real

---

[3]    Capitalized terms used in this introduction, but not otherwise defined herein, shall have the meanings ascribed to them in the body of the Plan.

[4]    The various Portfolio Property Entities were listed in Part 9 of the Debtors' *Official Form 206, Summary of Assets and Liabilities for Non-Individuals* [Docket No. 31].

Property Assets, (ii) the Portfolio Projects, (iii) the Portfolio Property Entities, (iv) any Receivable Payments, and (v) the Debtor's interests in the Causes of Action, including any amounts generated from litigation claims against AREH, Oak, and Mr. Chassen, in his former capacity as a Member of JJ Arch, among others, alleging certain *ultra vires* actions and lack of consent, will be retained by the Reorganized Debtor to maximize funds available to Creditors and holders of Interests.

This liquidating Chapter 11 Plan contemplates the disposition of all or substantially all of the Debtor's Assets. Section 9 of the Operating Agreement provides that the Debtor shall be dissolved upon any such disposition, and that such dissolution shall be effective on the day the event occurs giving rise to the dissolution. See Section 9.1 of the Operating Agreement, attached hereto as Exhibit A. As such, the Debtor asserts that this Plan serves to initiate the dissolution of the Debtor. To the extent deemed necessary, the Debtor or Reorganized Debtor will file for dissolution with the State of New York as well.

The Debtor will distribute the Combined Plan and Disclosure Statement to all holders of Claims in accordance with § 1125(b); Bankruptcy Rules 2002, 3016, and 3017. The Combined Plan and Disclosure Statement and the exhibits hereto include a discussion of: (i) the nature and history of the Debtor's business and liabilities; (ii) events leading up to, and during, the Chapter 11 Case; (iii) the requirements for confirmation of the Plan; and (iv) additional factors and disclosures to be considered, including risk factors. The Combined Plan and Disclosure Statement also provides other pertinent information and details regarding, *inter alia*, the treatment of Claims and Interests under this Plan and the means for its implementation. Any agreements and documents which are referenced in the Plan are incorporated as if set forth in full therein and will be filed with the United States Bankruptcy Court for the Southern District of New York, as applicable.

The Combined Plan and Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to enable holders of Claims against the Debtor, equity holders, and other interested parties to make informed judgments about the Plan. This Plan is a contract between the Debtor and its creditors. It provides the mechanism, timing, and details of all treatment and payment of creditor Claims. The Debtor expressly reserves the right to alter, amend, or modify the Combined Plan and Disclosure Statement, including any Plan Supplement, one or more times, before substantial consummation thereof. Please review the Combined Plan and Disclosure Statement, the exhibits, other supporting materials. If the Bankruptcy Court confirms the Plan, it will be binding on the Debtor, its creditors, equity holders, and other interested parties.

As the Plan contemplates payment in full for all of its creditors, including all holders of Allowed Secured Claims and General Unsecured Claims, the Debtor believes that the Combined Plan and Disclosure Statement provides the best and most efficient method of maximizing the recoveries for the holders of Claims against the Debtor. Therefore, the Debtor submits that Confirmation of the Plan is in the best interests of the Debtor, its creditors, and its bankruptcy estate, and recommends that the Bankruptcy Court approve the Combined Disclosure Statement and Plan and confirm the Plan.

## ARTICLE I
## SUMMARY OF CLASSIFICATION OF CLAIMS UNDER PLAN AND
## IMPORTANT SOLICITATION AND CONFIRMATION DATES

1.1     Summary of Classification of Claims. The following table designates the two Classes

of Claims against the Debtor and specifies that neither of those Classes are (a) Impaired by the Plan, and (b) entitled to vote to accept or reject the Plan in accordance with § 1126. In accordance with § 1123(a)(1), Administrative Claims, Professional Claims, statutory fees, and Priority Tax Claims have not been classified. All of the potential Classes for the Debtor are set forth herein.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Secured Claims | Not Impaired | No (deemed to accept) |
| Class 2 | General Unsecured Claims | Not Impaired | No (deemed to accept) |

    1.2   <u>Important Dates and Deadlines</u>.

| Event | Proposed Date |
|---|---|
| Voting Record Date | TBD |
| Deadline to file Plan Supplement | TBD |
| Combined Plan and Disclosure Statement Objection Deadline | TBD |
| Deadline to file Confirmation Brief and any other evidence supporting the Combined Plan and Disclosure Statement | TBD |
| Confirmation Hearing | TBD |

**ARTICLE II**
**DEFINITIONS AND INTERPRETATION**

**2.1**   **Definitions**.

The following terms, when used in this Combined Plan and Disclosure Statement or any subsequent amendments or modifications thereof, and in addition to those terms defined in the text of the Combined Plan and Disclosure Statement, shall have the respective meanings hereinafter set forth.

2.01     "<u>Administrative Claim</u>" means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the Debtor's business; (b) Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code; and (c) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of

the Bankruptcy Court; provided, however, that an Administrative Claim shall not include any Claim for which the holder of such Claim does not seek payment from the Estate.

2.02    "Administrative Claims Bar Date" means the date that is thirty (30) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court.

2.03    "Allowed" with respect to a Claim, means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order of the Bankruptcy Court; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by a Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or determined by a Final Order (but only to the extent such Claim has been allowed); (d) determined to be valid by the Reorganized Debtor; or (e) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing. A proof of Claim that is not timely filed (or not deemed timely filed) shall not be "Allowed" for purposes of distribution or voting under the Plan.

2.04    "AREH" means Arch Real Estate Holdings LLC, a non-debtor subsidiary in which the Debtor previously held an eighty percent (80%) equity interest, and following an applicable sunset provision, claims to hold a one hundred (100%) percent equity interest.

2.05    "Assets" means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, tax refunds, claims of right, interests, and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

2.06    "Assumed Contracts" means any executory contracts and unexpired leases assumed by the Debtor.

2.07    "Assumption Schedule" means the schedule of Assumed Contracts, which shall include proposed Cure Amounts, to be attached to the Plan Supplement, as such schedule may be amended, modified, or supplemented from time to time by the Debtor.

2.08    "Bankruptcy Code" means title 11 of the United States Code, as amended, in effect and applicable to the Chapter 11 Case concerning the Debtor.

2.09    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Case.

2.10    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, in effect and applicable to the Chapter 11 Case.

2.11    "Bar Date" means the date fixed by the Bankruptcy Court as the last date by which all Persons and entities must have filed proofs of Claim against the Debtor, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of Claim, in which case it means, for the specific Creditor, such different date set by the Bankruptcy Court in the order

approving such Bar Date or otherwise.

2.12     "Business Day" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York City are required or authorized by law to be closed.

2.13     "Cash" means cash and cash equivalents in U.S. dollars.

2.14     "Causes of Action" means any and all Claims, rights, actions, choses in action, suits, causes of action, Liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to, or after, the Petition Date and in each case whether known or unknown, in law, equity or otherwise, including, without limitation, receivables and those Claims and actions to avoid or recover pre-petition or post-petition transfers of money or property pursuant to applicable bankruptcy and non-bankruptcy law and also including the State Court Litigation.

2.15     "Chapter 11 Case" means the case commenced by the Debtor on March 27, 2024 under chapter 11 of the Bankruptcy Code, administered under case number 24-10381 (JPM).

2.16     "Chassen" means Jared Chassen, the Debtor's former minority member.

2.17     "Claim" means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.18     "Class" means a category of Claims or Interests described in Article II hereof.

2.19     "Collateral" means any property or interest in property of the Estate subject to an unavoidable Lien to secure the payment or performance of a Claim.

2.20     "Confirmation" means the Bankruptcy Court's confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code.

2.21     "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket corresponding to the Chapter 11 Case.

2.22     "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider Confirmation.

2.23     "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan, or any amendment thereto, pursuant to section 1129 of the Bankruptcy Code, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

2.24     "Creditor" means any Person who: (a) holds a Claim against the Debtor that arose prior to the Petition Date; (b) holds a Claim against the Debtor, which arose after the Petition Date, other than an Administrative Claim of the type specified in Bankruptcy Code section 503(b); or (c) holds a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g),

502(h) or 502(i).

2.25    "<u>Cure Amounts</u>" means any amount the Debtor believes is required to be paid pursuant to section 365(b) of the Bankruptcy Code to cure any defaults under the Assumed Contracts listed on the Assumption Schedule.

2.26    "<u>Debtor</u>" means JJ Arch LLC in its capacity as small business debtor and debtor in possession in this Chapter 11 Case.

2.27    "<u>Disallowed</u>" means, when referring to a Claim or Interest, a Claim (including a claim listed by the Debtor in its Schedules) or Interest, or any portion of a Claim or Interest, which has been disallowed or expunged by a Final Order.

2.28    "<u>Disputed Claim</u>" means a Claim that is not an Allowed Claim nor a disallowed Claim, and is any Claim, proof of which was filed, or an Administrative Claim or other unclassified Claim, which is the subject of a dispute under the Plan or as to which Claim the Debtor or the Reorganized Debtor, as applicable, has interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of Claim was not timely or properly filed (or deemed timely or properly filed).

2.29    "<u>Distribution</u>" means any distribution made pursuant to the terms of this Plan.

2.30    "<u>Distribution Address</u>" means the address set forth in the applicable proof of Claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no proof of Claim is or has been filed with respect to a particular Claim, "Distribution Address" means the address set forth in the Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

2.31    "<u>Distribution Date</u>" means any date on which a Distribution is made to holders of Allowed Claims under this Plan, or as otherwise agreed. The first Distribution shall occur on or as soon as practicable after the Effective Date or as otherwise agreed by the Reorganized Debtor. Subsequent Distributions shall occur as soon as practicable after the first Distribution Date as the Reorganized Debtor shall determine, but with such final Distribution Date occurring no later than five (5) years after the Effective Date.

2.32    "<u>Effective Date</u>" means the Date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of the Plan have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Debtor.

2.33    "<u>Encumbrances</u>" means, collectively, any and all security interests, Liens, pledges, Claims, levies, charges, escrows, encumbrances, options, rights of first refusal, transfer restrictions, conditional sale contracts, title retention contracts, mortgages, hypothecations, indentures, security agreements or other agreements, arrangements, contracts, commitments, understandings or obligations of any kind whatsoever, whether written or oral.

2.34    "<u>Estate</u>" means the Debtor's estate created pursuant to section 541 of the

Bankruptcy Code upon the Petition Date.

2.35 "<u>Exculpated Parties</u>" means each of the following, if any, in its capacity as such, and only in its capacity as such: the Debtor's Professionals, advisors, attorneys, Representatives, managing member, officers, employees (acting in such capacity), and directors and the Reorganized Debtor.

2.36 "<u>Fee Claim Deadline</u>" means the deadline for all Professionals or other Persons to file an application for final allowance of compensation and reimbursement of Professional Fee Claims for services rendered before the Effective Date, which deadline shall be the date which is thirty (30) days after the Effective Date.

2.37 "<u>Fee Application</u>" means the final fee application and/or an application for payment of reasonable fees and expenses filed under section 503(b) of the Bankruptcy Code by any parties seeking payment of Professional Fee Claims and/or reimbursement of expenses, as applicable, which shall be filed in accordance with Section 5.2(c)(ii) hereof.

2.38 "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; <u>provided</u>, <u>however</u>, if an appeal, or writ of certiorari, reargument, or rehearing thereof has been filed or sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; <u>provided</u>, <u>further</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.39 "<u>General Unsecured Claim</u>" means a Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, or a Secured Claim.

2.40 "<u>Impaired</u>" means any Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

2.41 "<u>Interest</u>" means the rights and interests as of the Petition Date of any Person in the Debtor.

2.42 "<u>Lien</u>" means any charge against, security interest in, Encumbrance upon, or other interest in property to secure payment of a debt or performance of an obligation.

2.43 "<u>Non-Debtor Real Property Assets</u>" means the real property in which the Debtor owns an interest in and located at: (i) 550 Metropolitan Avenue in Brooklyn, New York 11211; (ii) 225 Head of Pond Road in Water Mill, New York 11976; (iii) 1640 Montauk Highway in Water Mill, New York,11976; and (iv) 146 E. 89th Street in New York, New York 10128.

2.44 "<u>Oak</u>" means, collectively, 35 Oak and 608941.

2.45 "<u>Operating Agreement</u>" means the Limited Liability Operating Agreement of JJ

Arch, dated as of December 11, 2017, as amended, attached hereto as <u>Exhibit A</u>.

2.46      "<u>Person</u>" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other entity.

2.47      "<u>Petition Date</u>" means March 7, 2024, the date the Debtor filed its voluntary petition for relief as a small business debtor under chapter 11 of the Bankruptcy Code.

2.48      "<u>Plan</u>" means this chapter 11 liquidating plan and any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized amendment or modification pursuant to section 1190, 1191, and 1129 of the Bankruptcy Code and the Bankruptcy Rules.

2.49      "<u>Plan Supplement</u>" means any documents, agreements, schedules, and exhibits, specified in this Plan to be filed with the Bankruptcy Court provided that the Debtor may amend such Plan Supplement at any time prior to the Confirmation Hearing.

2.50      "<u>Priority Tax Claim</u>" means a Claim or a portion of a Claim, which is entitled to priority under sections 502(i) or 507(a)(8) of the Bankruptcy Code.

2.51      "<u>Proceeds</u>" means all amounts generated from the Debtor's interests in the Portfolio Projects and the Non-Debtor Real Property Assets including, but not limited to, contract fees, sale proceeds, and/or rental proceeds.

2.52      "<u>Professionals</u>" means an entity (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 and 363 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

2.53      "<u>Professional Fee Claims</u>" means any Claim of (a) a Professional, retained in the Chapter 11 Case, pursuant to sections 327 and 363 of the Bankruptcy Code for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date, but prior to and including the Effective Date, when and to the extent any such Claim is Allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, and 503(b) of the Bankruptcy Code, or (b) a Person seeking compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

2.54      "<u>Receivable Payments</u>" means any receivable payments paid or to be paid to the Estate on account of amounts due and owing to the Debtor including, but not limited to, all amounts due and owing to the Debtor from AREH.

2.55      "<u>Released Party</u>" means each of the following in their capacity as such, and only in their capacity as such: the Debtor's managing member, officers, directors, Professionals, advisors, attorneys, Representatives, and the Reorganized Debtor.

2.56      "<u>Reorganized Debtor</u>" means the Debtor upon and after the Effective Date of this Plan.

2.57       "Representative" means any person who is authorized to act on behalf of another.

2.58       "Schedules" means the Schedules of Assets and Liabilities and Statement of Financial Affairs for the Debtor [Dkt. No. 31] filed by the Debtor with the Bankruptcy Court on March 24, 2024, pursuant to Bankruptcy Rule 1007, and any amendments thereto.

2.59       "Secured Claim" means a Claim secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non bankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

2.60       "State Court Litigation" means the action pending before the Supreme Court of the State of New York, New York County, styled as *Jeffrey Simpson, individually and derivatively, as managing member of JJ Arch LLC, suing derivatively as managing member Arch Real Estate Holdings LLC, and JJ Arch LLC v. Chassen,* Index No. 158055/2023.

2.61       "U.S. Trustee" means the United States Trustee for Region 2.

2.62       "Unclassified Claims" means Administrative Claims and Priority Tax Claims.

**2.2       Rules of Interpretation and Time Periods.**

Unless otherwise specified, all section or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (c) unless otherwise noted above, the rules of construction set forth in § 102 shall apply.

**2.3       Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Combined Plan and Disclosure Statement unless a different definition is given herein.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Combined Plan and Disclosure Statement.

**2.4      Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained herein.

## ARTICLE III
## BACKGROUND

**3.1      Business Overview.**

Founded in late 2017, the Debtor and its non-debtor affiliates (collectively, the "Arch Companies") constitute a vertically integrated real estate manager, owner, operator, and developer – with a general focus on real estate investment, development, construction, and asset management across primary and secondary markets in the United States. The Arch Companies have invested in single and multi-family, mixed-use, hotel, and office properties in those markets, effectuating investment strategies directed toward repositioning, rehabilitations, and "ground-up" development projects (defined as the "Portfolio Projects" above). In conjunction with this strategic direction, the Arch Companies have sourced, invested, and operated in excess of $1 billion of real estate across the United States, which, at one time, included 5.7 million of square footage and fifteen (15) active investments in seven (7) states. As of the Petition Date, by square footage, the Portfolio Projects consisted of: commercial office space (17%), multi-family units (71%), retail space (5%), and hospitality space (7%). Mr. Simpson was the founder and driving force behind the Arch Companies' businesses, with control over all matters of substance throughout the history of the Arch Companies' businesses. No substantial hire, transaction, investment, debt repayment, or equity placement occurred without his knowledge and supervision.

The various Portfolio Projects were each structured in a similar fashion, with each property owned by an entity that was, in turn, controlled by an intermediary entity (the Portfolio Property Entities), whose interests were controlled by AREH, which was ultimately controlled by the Debtor. At each level, control and consent provisions were included in the various governing documents to give control over the affiliated entities to the Debtor.[5]

Oak was brought in (for a limited time period) as an investor member (a non-controlling, non-active, and non-managing member) to provide seed equity and guaranty support to fund the Portfolio Projects, but ultimate control of the various non-debtor affiliates remained with Mr. Simpson. None of the financings or other investor documents provided for any control party other than by Mr. Simpson. Other investors participated in a similar fashion but they were not afforded the right to participate at the general partner level and had no obligations to provide any guarantees or capital calls. The financing documents do not contemplate any other party other than the Debtor having the right to control any asset, and several lenders sent default notices immediately following the temporary appointment of Oak as managing member. Such financing documents were also structured to protect investors from the managing members proceeding with transactions that could be construed as self-dealing.

---

[5]    Not only did the governing document give the Debtor control or consent rights over all important matters, but the Portfolio Property Entities' operating agreements also permit the transfer of the interests in the entities to the Debtor. *See*, for example, the Article VIII of the Limited Liability Company Operating Agreement of Arch Nostrand MM LLC, attached hereto as Exhibit B.

**3.2     The Debtor's Organizational Structure.**

JJ Arch is a real estate management and investment company.  The Debtor's business involves direct management and indirect ownership interests in the Non-Debtor Real Property Assets – which are unrelated to the Portfolio Projects – and contractual managerial control in each of the Portfolio Projects through the Portfolio Property Entities.  These interests include assets held by the Debtor: (i) with third-party investors through non-debtor subsidiaries, where the Debtor is a manager, member and/or managing member – the Portfolio Projects, and (ii) through non-Debtor affiliates where the Debtor is the managing member and ultimate parent company – the Non-Debtor Real Property Assets. The Debtor's Operating Agreement, and the various governing documents of certain non-debtor affiliates, each contained control provisions, and specific prohibitions against self-dealing. Such controls did not contemplate control by another party, but to the extent that such control provisions were overridden, the various governing documents also maintain a blocking right for the Debtor, a right which, the Debtor alleges, has recently been circumvented and ignored.

The Debtor asserts that the parties now in control of the various other Arch Companies have violated such control provisions. Further, it has come to the Debtor's attention that certain of the real property of the Portfolio Property Entities has been improperly sold, disposed of, and/or refinanced, or the guarantees removed, all without the required consent of the Portfolio Property Entities and in contravention of their respective governing documents. The Debtor also believes that there may have been fraudulent conveyances, Liens put in place, and self-dealing, all in contravention of the operating agreements. The Debtor believes that such actions have resulted in significant erosion of the Arch Companies' business, and that such actions may have created Claims by the Debtor against those parties taking such actions. The Portfolio Property Entities are in the process of assigning all of their interests in the Portfolio Projects directly to the Debtor pursuant to the various entities' transfer provisions.

**3.3     The Debtor's Management.**

Since the Debtor's formation, Mr. Simpson has been the Debtor's managing member and has held a majority of the Debtor's membership interests. Mr. Simpson is presently the Debtor's sole managing member, who, for the reasons described below, currently owns 100% of the Interests in the Debtor.

Jared Chassen previously owned a 49.9% non-controlling membership interest in the Debtor. Prior to the Petition Date, however, upon the occurrence of multiple "Cause Events", Mr. Chassen was deemed to have resigned as a member of JJ Arch, pursuant to the definition of "Resignation" as set forth in the Operating Agreement. Moreover, prior to the Petition Date, it's the Debtor position that Mr. Chassen's interests in the Debtor were foreclosed upon in accordance with Article 4.2(d) of the Operating Agreement, based upon, among other things: (i) Mr. Chassen's failure to meet an August 31, 2023 capital call duly made to him, (ii) consequent unexcused defaults on certain Member Loans made to Mr. Chassen, and (iii) the making of certain unauthorized distributions to himself. Following Mr. Chassen's resignation, pursuant to Section 3.1 of the Operating Agreement, Mr. Simpson possesses all rights to direct all of the Debtor's "business, affairs and assets", including but not limited to all matters pertaining to the Non-Debtor Real Property. In addition, pursuant to the terms of the Operating Agreement, Mr. Chassen was contractually devested of his ability to maintain negative controls in the Debtor as of December 11, 2021.

### 3.4    The Debtor's Assets.

1.    *The Debtor's Portfolio Project Holdings*.

JJ Arch initially held an 80% membership interest in AREH (later increasing to a 100% membership interest by virtue of the sunset provisions of the Debtor's Operating Agreement), which was at one time one of the Debtor's most valuable assets.[6] AREH is a vertically integrated real estate operating company that does not own physical assets.[7] Instead, it is responsible for the Arch Companies' overall business direction, including management, investment decisions, executing corporate strategy, and fostering and maintaining relationships with the Arch Companies' prospective and existing capital partners and investors. The Arch Companies' executive and decision-making teams were housed and compensated under the AREH umbrella. AREH also served as the Arch Companies' primary administrative services provider with all accounting, human resources, and investor relations functions situated at the AREH level.

Pursuant to the various governing documents, AREH serves as the transaction's top tier manager member for the complex organizational structures that constitute each Portfolio Project transaction, and as such, controls all decisions relating to the underlying real property asset. Under the Portfolio Projects' transaction structure, AREH receives profits or tier stepped "promotes" pursuant to a waterfall structure when all "limited partner" investor party's returns have reached certain agreed upon percentages or "preferred returns." AREH also holds management and profits interests in lower tiers of each Project Portfolio transaction as a "general partner." In such capacity, AREH is also entitled to a percentage of investment returns based on the waterfall structure. The promotes interests from Portfolio Project transactions are paid only after all investors receive a minimum "hurdle return." The steps in the waterfall vary deal by deal, but generally all investor members receive *pari passu* distributions up to a specified annualized return hurdle rate. Upon reaching this hurdle rate, distribution splits are increased for investors based on Portfolio Project yield. A portion of those yields are awarded to the transaction's management operator – AREH. AREH then shares a portion of those yields with the Debtor, Oak and certain key employees.

Additionally, AREH is the ultimate parent company for certain of the Arch Companies' non-debtor affiliates that provide low-cost vertical asset management, property management, advisory, direct construction trades, and construction management services (collectively, the "Affiliate Services") for the Portfolio Projects – namely through Arch Asset Management LLC ("Arch Asset Management"), Arch Advisors LLC ("Arch Advisors") and Arch Builders LLC ("Arch Builders," together with Arch Asset Management and Arch Advisors, the "Arch Service Providers"). Any profits earned by the Arch Service Providers are distributed to AREH.

- *Arch Asset Management*: Arch Asset Management serves as the asset manager and real estate property manager for each of the Portfolio Projects. In addition, Arch Asset Management is responsible for ensuring that the Arch Companies' properties are managed and operated in an efficient and cost-effective manner, effectuating business plan integration and execution at the real property level of each Portfolio Project. These services are rendered through Arch Asset Management's 100% directly owned

---

[6]    608941 NJ, Inc. ("608941"), a New Jersey corporation, holds the remaining 20% membership interest in AREH. Upon information and Belief, 35 Oak Holdings, Ltd. ("Oak"), a company organized under the laws of Canada, is the sole owner of 608941.

[7]    In certain circumstances, AREH temporarily held title to Portfolio Project real property until a stand-alone entity is organized to hold such property.

subsidiary, Arch Property Management LLC ("Arch Property").[86]

- *Arch Advisors*: Arch Advisors provides capital raising services for the Portfolio Projects and brokerage services for certain related property sales and leasing.

- *Arch Builders*: Arch Builders provides dedicated construction management services and in-house construction expertise in connection with the Arch Companies "ground-up" developments and rehabilitation investments. Arch Builders is responsible for managing the Arch Companies' large- and small-scale construction to ensure that projects are completed properly, on schedule, and in accordance with applicable business plans and budgets. Arch Builders is also the direct 100% equity owner of Construction Services & Solutions LLC ("CSS"). CSS is a staffing company providing skilled and unskilled construction trade services for the Portfolio Projects. The utilization of CSS results in substantial cost-efficiencies for these projects. In conducting its business, Arch Builders relied on Mr. Simpson's construction licenses in multiple states and with the New York City Department of Buildings.

Current control over the Arch Companies and AREH is among the subjects of the State Court Litigation, discussed further below. Pursuant to this Plan, the Debtor intends to maintain its interest in AREH and to commence a proceeding to request to have AREH judicially dissolved and its assets liquidated, through a receiver, and distributed among its owners.

2.    *The Non-Debtor Real Property*.

As part of its holdings, the Debtor also owns 100% of the membership interests in the Non-Debtor Real Property Assets, which include the following entities wholly unrelated to the Portfolio Project Holdings: JJ NY Schwenks LLC ("JJ Schwenks"); JJ NY 550 LLC ("JJ 550"); 225 HPR LLC ("225 HPR"); 146 E. 89 Borrower I LLC ("146 E. 89 Borrower"), and 1640 Montauk LLC ("1640 Montauk").[9]

- *JJ Schwenks*: JJ Schwenks owns 50% of the membership interests in 88 Schwenks LLC, which in turn was the sole owner of real property located at 88 Schwenks Road in Water Mill, New York, 11976. The Schwenks real property was sold in 2023 for approximately $1.6 million (the "Schwenks Proceeds"), with $1 million of the Schwenks Proceeds distributed to the property's mortgagee and the balance escrowed to satisfy tax and dissolution expenses. Following the sale, no equity remains in this property for the Debtor. The Debtor does allege, however, that certain improper distributions were made to Mr. Chassen from the Schwenks Proceeds.

- *JJ 550*: JJ 550 is the sole owner of real property located at 550 Metropolitan Avenue in Brooklyn, New York, 11211 (the "JJ 550 Property"). The JJ 550 Property is a 400 square foot, street level, retail condominium. It is believed that there is limited equity (possibly less than $50,000) in this Asset.

---

[8]    Arch Property is also the 100% owner of Ore Living II LLC, a staffing company providing management and oversight of all day-to-day activities on the Arch Companies' property level real estate projects, including maintenance, accounting, and financial reporting.

[9]    The Debtor is also the sole member of 1640 Motors LLC d/b/a Rever Motors ("Rever Motors"). Rever Motors holds a real property lease for property owned by 1640 Montauk. Jeffrey Simpson, the Debtor's managing member, oversees the management of Rever Motors, but there is a dedicated staff that runs the day-to-day operations.

- *225 HPR*: 225 HPR is the sole owner of real property located at 225 Head of Pond Road (the "HPR Property") in Water Mill, New York, 11976. The HPR Property is a single-family residential property, currently used as a rental property. The Debtor believes that there exists equity of slightly less than $1 million dollars in this property. The Debtor is pursuing a sale of this property.

- *1640 Montauk*: 1640 Montauk is the sole owner of real property located at 1640 Montauk Highway (the "Montauk Property") in Water Mill, New York, 11976. The Montauk Property includes an automotive shop with a residential apartment. The Debtor believes that there is equity of slightly more than $2 million in this property.

- *146 E. 89 Borrower I*: 146 E. 89 Borrower is the indirect majority owner of real property located 146 E. 89th Street in New York, New York, 10128.[10] The property consists of a 5,000 square foot vacant townhouse. Upon information and belief, it is alleged that Liens were added to this property without Mr. Simpson's consent and that substantial default interest has accrued. Given such Liens, its unknown the amount of equity, if any, that exists in this property for the Debtor's Estate.

The Debtor believes that the JJ 550 Property, Montauk Property and HPR Property have a positive equity value of more than $2 million.

### 3.5    Sale of the Debtor's Assets.

It is the Debtor's intention to sell all or a portion of the Non-Debtor Real Property Assets in the near term to the extent necessary to fund the payments under the Plan. It is likely that only certain, not all, of such properties will need to be sold to pay all creditors in full. The Debtor is currently marketing such properties and anticipates sales closing in the near term; the Debtor is not liquidating any other Assets or interests at this time. The various payments to be made under this Plan are conditioned upon the closing of the sale of some or all of the Non-Debtor Real Property Assets. The Debtor is aware that Mr. Chassen has attempted to interfere with such sales. The State Court has, however, granted relief that would limit the ability to stop such sales. Specifically, Judge Cohen, in the Order to Show Cause, dated February 9, 2024, modified Mr. Chassen's alleged consent rights and provided that none of the Debtor's property should be sold without the written consent of Mr. Chassen, which shall not be unreasonably withheld.

Following the Effective Date and subject to payment of all Claims, the Reorganized Debtor will distribute the remainder of its assets to the holder of Interests or his nominee. Such interest will include the various interest in the Portfolio Project Entities. Given that this liquidating Chapter 11 Plan contemplates the disposition of all or substantially all of the Debtor's Assets, the Debtor asserts that this Plan serves to initiate the dissolution of the Debtor.  To the extent deemed necessary, the Debtor or Reorganized Debtor will file for dissolution with the State of New York as well.

### 3.6    The Debtor's Key Agreements.

Due to JJ Arch's holding company status, its key agreements are limited to the following operating company agreements in which it is a member party:

---

[10]    JJ Arch's ownership interest in the E.89th Street Property is through a tenancy in common with two other owners, where JJ Arch is the non-member manager of the property-owner limited liability company for all owners.

    (i)        Limited Liability Company Operating Agreement of JJ Arch LLC dated December 11, 2017 (as amended) (the "Operating Agreement");

    (ii)       Limited Liability Company Operating Agreement of Arch Real Estate Holdings LLC dated December 11, 2017 (the "AREH Operating Agreement");

    (iii)     Limited Liability Company Operating Agreement of Arch Property Holdings I LLC dated July 9, 2020;

    (iv)     Limited Liability Company Operating Agreement of JJ NY 550 LLC dated January 27, 2022;

    (v)      Limited Liability Company Operating Agreement of 225 HPR LLC dated January 27, 2022;

    (vi)     Limited Liability Company Operating Agreement of 1640 Montauk LLC dated March 23, 2022; and

    (vii)    Limited Liability Company Operating Agreement of 146 E. 89 Street Borrower I LLC dated June 27, 2022.

**3.7**       **The Debtor's Capital Structure.**

As of the Petition Date, the Debtor has no secured debt, and the General Unsecured Claims listed on the Debtor's Schedules consist of approximately $143,000 in general unsecured professional services and trade debt. The only Claim filed by a Creditor to date has been a single Claim filed by the United States Internal Revenue System in the amount of $2,982.33.

AREH has recently provided to the Debtor its recent 2022 K-1 Partner's Share of Income, Partner's Share of Income, Deductions, Credits, Etc. from Arch Real Estate Holdings LLC, attached hereto as Exhibit C.  The K-1 lists approximately $32,576,245 in potential contingent liabilities owed by the Debtor.

The Debtor has no current employees, and all revenue for the Debtor is derived from its indirect ownership interests in the Portfolio Projects and Non-Debtor Real Property Assets.

In addition, upon information and belief, certain required capital contributions and member loan amounts are owed by Mr. Chassen. Additionally, the Debtor possesses certain Claims related to improper actions taken regarding the real property of the Portfolio Property Entities.

**3.8**       **Circumstances Leading to The Chapter 11 Case.**

The decline in the Arch Companies' business commenced on account of financial turmoil in the global real estate investment and lending markets due to inflation and interest rate growth, and substantial disagreements regarding financial obligations between the Debtor, its guarantor and seed investor Oak, which disagreements have resulted in the State Court Litigation.

Prior to the initiation of the State Court Litigation and this Chapter 11 Case, Oak and the Debtor took certain steps, including hiring professionals, to dissolve the various Arch Companies and sell their assets. Owing to market factors at that time, however, the parties were not able to agree

upon dissolution. Subsequently, owing the various failures to fund the business as required under the governing documents, the Arch Companies' business was severely disrupted. Mr. Simpson and others sought to reach agreements with lenders and other investors to reorganize the Arch Companies. Upon information and belief, the Debtor alleges that Oak and other parties began a process to attempt to sideline him from the business and engage in an out of court restructuring that would relieve them of liabilities, all in contravention of the various governing documents and corporate controls. Such actions included removing Mr. Simpson's access to bank accounts and other material information. The resulting State Court Litigation arose from, among other things, disputes as to how to reorganize the Arch Companies investments and obligations, failure by certain parties to make required capital contributions, and failures to pay certain member loans. Pursuant to the State Court Litigation, Judge Cohen granted Oak temporary control over AREH. Following such change in control, lenders have alleged, among other things, defaults related to the change of control provisions.

### 3.9    The Chapter 11 Case – Administration/Litigation.

1. *General Case Administration*.

On March 7, 2024, the Debtor filed its Voluntary Subchapter V Voluntary Petition [Dkt. No. 1]. The next day, on March 8, 2024, the Office of the United States Trustee appointed Eric Huebscher as the Subchapter V trustee (the "Subchapter V Trustee") for the Debtor [Dkt No. 2].

On March 24, 2024, the Debtor filed its Schedules of Assets and Liabilities and  Statement of Financial Affairs [Dkt. Nos. 31 and 32].

On April 22, 2024, the Debtor filed the *Debtor's Pre-Status Conference Report* [Dkt. No. 93] in the Chapter 11 Case.

On June 5, 2024, the Debtor amended its voluntary petition to withdrawal its Subchapter V election [Dkt. No. 124].

2. *Motions Regarding Case Status*

The Initial Motion to Dismiss the Chapter 11 Case.

On March 14, 2024, Jared Chassen, the Debtor's former minority member, filed a  *Motion for an Order Dismissing the Debtor's Bankruptcy Case* (the "Initial Dismissal Motion") [Dkt. No. 4]. On March 18, 2024, AREH filed a Notice of Joinder to the Dismissal Motion [Dkt. No. 13]. On April 16, 2024, the Debtor filed the *Motion for an Order (I) Compelling Expedited Discovery in Connection with Motions to Dismiss and Remand Filings, (II) Adjourning Hearing on Remand Filings Until Dismissal Issues Have Been Resolved and (III) Setting a Briefing and Hearing Schedule to Resolve Dismissal Issues* [Dkt. No. 85/Adv. Pro. 16] (the "Discovery Motion"). The Initial Dismissal Motion and the Discovery Motion have been adjourned.[11]

---

[11]    The motion was adjourned without any discovery being shared by the parties. Oak and Mr. CHassen have resisted all requests for information from the Debtor, despite such information sharing being required under various governing documents.

The Motion to Expand the Subchapter V Trustee's Powers.

On March 20, 2024, 40 Neutral LLC and Kay Properties LLC filed that certain *Motion to Expand Powers of the Subchapter V Trustee* (the "Expanded Powers Motion") [Dkt. No. 23].  Due to the amendment of Debtor's voluntary petition, the Expanded Powers Motion was rendered moot.

The Second Motion to Dismiss the Chapter 11 Case.

On August 6, 2024, Jared Chassen, the Debtor's former minority member, and Arch Real Estate Holdings LLC filed their *Joint Motion to Dismiss the Chapter 11 Case for The Debtor's Failure to Comply with its Obligations* (the "Second Dismissal Motion") [Dkt. No. 170]. The Second Dismissal Motion remains pending.

The Debtor's Exclusivity Periods.

On July 5, 2024, the Debtor filed its *Motion for Entry of an Order Extending the Debtor's Exclusive Periods Within Which To File A Chapter 11 Plan And Solicit Acceptances Thereof and (ii) Granting Related Relief* [ECF No. 160] (the "Exclusivity Motion"). On August 17, 2024, Jared Chassen and Arch Real Estate Holdings filed their Joint Objection [Dkt. No. 174] to the Exclusivity Motion.  The Debtor's Exclusivity Motion remains pending but will be mooted due to the filing of this Plan.

       3.   *Motions Regarding the State Court Litigation*

The Contested Stay Relief Motions.

On March 25, 2024, AREH and Chassen each filed a *Motion for Entry of an Order (I) Confirming that the Automatic Stay does not Apply to Certain Corporate Governance Disputes, and/or (II) Modifying the Automatic Stay as Necessary in Order to Address such Corporate Governance Disputes* (the "Stay Motions") [Dkt. Nos. 38 and 40]. On April 1, 2024, the Debtor and Jeff Simpson filed omnibus objections to the Stay Motions (the "Stay Motion Objections") [Dkt. Nos. 60 and 62]. On April 4, 2024, Chassen and AREH each filed an omnibus reply [Dkt. Nos. 69 and 70] to the Stay Motion Objections.

The Removal/Remand Adversary Proceeding.

On April 3, 2024, the Debtor filed a Notice of Removal [Adv. Pro. Doc 1] ("Notice of Removal") with respect to the State Court Litigation. On April 10, 2024, in response to the Notice of Removal, Chassen and AREH filed a *Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative Principles of Abstention or Equity* [Adv. Pro. Doc. 2] (the "Motion to Remand"). On the same date, 608941 through its parent entity, 35 Oak, joined the Motion to Remand [Adv. Pro. Doc. 4].

The Court heard the parties' arguments on the Stay Motion and Motion to Remand on May 2, 2024. On June 10, 2024, the Bankruptcy Court issued its *Memorandum Opinion and Order, and Findings of Fact and Conclusions of Law, on Jared Chassen and Arch Real Estate Holdings LLC's Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative, Principles of Abstention or Equity* [Dkt. No. 131] (the "Remand Opinion"), whereby the Bankruptcy Court decided that it lacked sufficient jurisdiction over the State Court Litigation and abstention was warranted. The Bankruptcy Court separately ruled on the Stay Motions (the "Stay Order") [Dkt. No. 132], holding

that it would lift the automatic stay conditionally upon a ruling from the District Court for the Southern District of New York (the "District Court") regarding the Remand Opinion.

Subsequently, on June 24, 2024, the Debtor filed (a) filed objections to the Court's proposed findings of fact and (b) a *Notice of Appeal* of both the Remand Opinion and the Stay Order [Dkt. No. 147] (the "Notice of Appeal") to the District Court. The District Court appeal remains pending.

The D&O Interpleader Action

On June 26, 2024, Great American Insurance Company ("GAIC"), the insurer that issued a certain Asset Management Liability Policy, Policy Number PEPE246619 (the "Policy") to named insured Arch Real Estate Holdings, LLC ("AREH"), filed an interpleader action pursuant to CPLR § 1006 in New York State Supreme Court under Index No. 653208/2024 (the "Interpleader Action") naming as party defendants AREA, Jeffrey Simpson, Jared Chassen, Wiggin and Dana LLP ("Wiggin"), Griffin LLP ("Griffin"), and Offit Kurman PA ("Offit Kurman"). According to the complaint (the "Complaint"), GAIC faces competing demands from at least two Insureds (Simpson and Chassen), each of whom is seeking coverage for the Policy's remaining available Limit of Liability, which as of the date of the Complaint was $2,105,999.29 (the "Remaining Policy Proceeds"). Also, according to the Complaint, Wiggin and Griffin may be entitled to a portion of the Remaining Policy Proceeds in connection with their representation of the Debtor in certain litigations and Offit Kurman may be entitled to a portion of the Remaining Policy Proceeds in connection with its representation of Simpson in certain litigations. Pursuant to the Complaint, GAIC "seeks relief from liability as an uninterested stakeholder by depositing the [Remaining Policy Proceeds] to [sic] the Court, which [Remaining Policy Proceeds] can then be distributed pursuant to the Court's equitable findings and determinations for the claimants.

On August 2, 2024, the Debtor, a non-party to the Interpleader Action, filed in the Interpleader Action a motion to intervene (the "Intervention Motion"), which Intervention Motion argued that the Debtor qualifies as an Insured under the Policy and therefore, is entitled to some or all of the Remaining Policy Proceeds. The Debtor contends, among other things, that it should be permitted to intervene because it is owned and controlled by Simpson, an Insured under the Policy, thus qualifying the Debtor as an "Operating Entity" and consequently, an Insured under the Policy. On August 19, 2024, AREA filed papers in opposition to the Debtor's Intervention Motion. AREA contends, among other things, that the Debtor should not be permitted to intervene because it does not also qualify as an "Investment Fund," which claim the Debtor disputes. Most recently, the Debtor filed reply papers in further support of the Intervention Motion.

It is unknown whether the Debtor will be found to have an interest in the Remaining Policy Proceeds.

\*\*\*

The above-listed litigations remain ongoing at this time. The Debtor intends to maintain its interest in AREH and to commence a proceeding to request to have AREH judicially dissolved and its assets liquidated, through a receiver, and distributed among its owners.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1**     **Classification and Treatment Generally**

Pursuant to sections 1122, 1123, and 1190 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests.

**4.2**     **Unclassified Claims - Administrative Claims and Priority Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims shall not be classified under the Plan and shall instead be treated separately as Unclassified Claims on the terms set forth in Article V of the Plan.

**4.3**     **Debtor's Claims and Interests.**

The Classes of Claims against, and Interests in, the Debtor shall be:

    (a)     **Class 1 – Secured Claims.**

    Class 1 Claims shall consist of the Secured Claims against the Debtor.

    (b)     **Class 2 – General Unsecured Claims.**

    Class 2 Claims shall consist of the General Unsecured Claims against the Debtor.

    (c)     **Interests**

    The Interests shall consist of all Interests in the Debtor.

## ARTICLE V
## TREATMENT OF CLAIMS UNDER THE PLAN

**5.1**     **Unclassified Claims.**

As set forth below, the Administrative Claims and Priority Tax Claims shall be treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.

**5.2**     **Treatment of Administrative Claims.**

    (a)     Allowance of Administrative Claims. An Administrative Claim is defined in the Plan and means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) the actual and necessary postpetition costs and expenses incurred by the Debtor in preserving the Estate or operating its business, (b) Allowed Claims pursuant to section 503(b)(9) of the Bankruptcy Code, and (c) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

    (b)     Payment of Allowed Administrative Claims. Subject to the Bar Date and

other provisions in the Plan and except to the extent the Debtor and the holder of an Allowed Administrative Claim agree to different and less favorable treatment, the Reorganized Debtor shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Administrative Claim, Cash, in an amount equal to such Allowed Administrative Claim, on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.

(c)   <u>Administrative Bar Date</u>.

(i)   <u>General Provisions</u>. Except as provided below for Professionals requesting compensation or reimbursement for Professional Fee Claims, requests for payment of Administrative Claims must be filed no later than thirty (30) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by order of the Bankruptcy Court. Holders of Administrative Claims who are required to file a request for payment of such Claims and who do not file such requests by the Administrative Claims Bar Date, shall be forever barred from asserting such Claims against the Debtor or its respective property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

(ii)   <u>Subchapter V Trustee</u>:  The Subchapter V Trustee was appointed by the U.S Trustee on March 8, 2024 [Docket No. 2].  The Subchapter V Trustee filed its Final Fee Application [Docket No. 153] on June 27, 2024, seeking professional fees and expenses in the amount of $12,298.74.  All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Reorganized Debtor to the Subchapter V Trustee as soon as is practicable after any claims for fees and expenses are Allowed.

(iii)   <u>Professionals</u>. All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than the Fee Claim Deadline. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than twenty-one (21) days after any such application is filed. All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Reorganized Debtor to the applicable Professional or other entities requesting compensation or reimbursement of Professional Fee Claims as soon as is practicable after any such Professional Fee Claims are Allowed. Each Professional or other Person that intends to seek payment on account of a Professional Fee Claim shall provide the Debtor with a statement, by no later than three (3) days after entry of the Confirmation Order, of the amount of

26

estimated unpaid fees and expenses accrued by such Professional up to the date of such statement, the amount of fees and expenses that each such Professional expects to incur from such date through the Effective Date, and the amount of fees and expenses that each such Professional expects to incur from such date in connection with the preparation and prosecution of each such Professional's Fee Application. For the avoidance of doubt, the estimate included in such statement shall not be a cap and any amount that exceeds the estimate shall still be treated as a Professional Fee Claim payable to such Professional.

The Debtor estimates the net Allowed Professional Fees are:

| Law Firm | Amount/Status |
|---|---|
| Davidoff Hutcher & Citron LLP | $300,000 |
| Griffin LLP | Unknown and Disputed |
| Wiggin and Dana LLP | Unknown and Disputed |

**5.3    Treatment of Priority Tax Claims.** Subject to the Bar Date and other provisions in the Plan and except to the extent the Debtor and the holder of an Allowed Priority Tax Claim agree to different and less favorable treatment, the Reorganized Debtor shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Priority Tax Claim, Cash, in an amount equal to such Allowed Priority Tax Claim, no later than ten (10) days following the Effective Date.

**5.4    Statutory Fees.** Statutory fees shall be paid by the Debtor or Reorganized Debtor, as applicable, in the ordinary course of business until the closing, dismissal or conversion of the Chapter 11 Case to another chapter of the Bankruptcy Code. Any unpaid statutory fees that accrued before the Effective Date shall be paid no later than thirty (30) days after the Effective Date.

**5.5    Treatment of Classified Claims and Interests.**

The Classes of Claims against and Interests in the Debtor shall be treated under the Plan as follows:

(a)    **Class 1 – Secured Claims.**[12]

**Classification:** Class 1 is comprised of Secured Claims.

**Treatment:** The Debtor does not believe any Secured Claims are outstanding. To the extent such Secured Claims exist, provided that the holder of a Class 1 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 1 that were Disputed Claims on the Effective Date and have thereafter become Allowed Secured Claims, immediately following the date upon which such Claims became Allowed Secured Claims, or as soon thereafter as is practicable, holders of each such Allowed Secured Claim shall receive (a) Cash in an amount not to

---

[12]    While the Debtor does not believe that any party holds a Secured Claim against the Estate, however, to the extent a Claim is deemed an Allowed Secured Claim, such Claim shall receive the treatment set forth in this Section 5.5(a).

exceed the amount of such Allowed Secured Claim or (b) such other treatment as may be agreed upon by the Reorganized Debtor and the holder of such Allowed Secured Claim, or as may otherwise be provided in the Bankruptcy Code, provided that the holder of such Allowed Secured Claim will not receive more than the value of the Collateral securing such Claim.

**Voting:** Holders of Allowed Claims in Class 1 are unimpaired under the Plan. Each holder of an Allowed Secured Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(b)    **Class 2 - General Unsecured Claims.**

**Classification:** Class 2 is comprised of General Unsecured Claims.

**Treatment:** Provided that the holder of a Class 2 Claim has not yet been paid, on the later of (i) the Effective Date and (ii) for Claims in Class 2 that were Disputed Claims on the Effective Date and have thereafter become Allowed General Unsecured Claims, immediately following the date upon which such Claims became Allowed General Unsecured Claims, or as soon thereafter as is practicable, holders of each such Allowed General Unsecured Claim shall receive (a) Cash in an amount not to exceed the amount of such Allowed General Unsecured Claim or (b) such other treatment as may be agreed upon by the Reorganized Debtor and the holder of such Allowed General Unsecured Claim, or as may otherwise be provided in the Bankruptcy Code, provided that the holder of such Allowed General Unsecured Claim will not receive more than the value of the General Unsecured Claim.

**Voting:** Holders of Allowed Claims in Class 2 are unimpaired under the Plan. Each holder of an Allowed General Unsecured Claim is conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and is therefore not entitled to vote to accept or reject the Plan in its capacity as a holder of such Claim.

(c)    **Class 3 - Interests.**

Class 3 Interests are unimpaired and holders will retain such Interests on the Effective Date of the Plan. On the Effective Date, all current Class 3 Interests will remain in full force and effect. Class 3 Interests shall be assigned all of the remaining assets of the Debtor after payment of all unclassified and classified Allowed Claims in full. The holders of Class 3 Interests are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

**5.6**    **Reservation of Rights Regarding Claims.**

Except as otherwise explicitly provided in the Plan, nothing shall affect, as applicable, the Debtor or Reorganized Debtor's rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoff or recoupment.

**SECTION VI
CONFIRMATION AND VOTING**

**6.1    Confirmation Hearing.** The Confirmation Hearing has been scheduled for **[a date to be determined]** (prevailing Eastern Time) to consider (a) final approval of the Combined Plan

and Disclosure Statement as providing adequate information pursuant to § 1125 and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to § 1129. The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

**6.2    Procedures for Objections.** Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to § 1125 and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and filed with the Bankruptcy Court by no later than **[a date to be determined]** and be served in accordance with the Local Bankruptcy Rules of the Bankruptcy Court and on the Notice Parties listed herein. Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

**6.3    Requirements for Confirmation.** The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of § 1129. Among the requirements for confirmation in the Chapter 11 Case is that the Combined Plan and Disclosure Statement be "feasible" and (i) the Combined Plan and Disclosure Statement has classified Claims in a permissible manner; (ii) the Combined Plan and Disclosure Statement complies with the requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtor believes that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

**6.4    Feasibility.** Section 1129(a)(11) requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor. Based on the Debtor's analysis, the Debtor will have sufficient assets from the sale of Non-Debtor Real Property Assets to accomplish its tasks under the Combined Plan and Disclosure Statement. Given that all Allowed Administrative Claims, Priority Tax Claims, Secured Claims, and General Unsecured Claims will be paid in full, creditors will receive at least as much or more under the Plan than they would receive if the Chapter 11 Case was converted to a chapter 7 case. Further, owing to the specific provisions of the Operating Agreement, the Debtor will be dissolved and will therefore not be the subject of any further liquidation and/or reorganization.

**6.5    Classification of Claims.** Section 1123 provides that a plan must classify the claims of a debtor's creditors. In accordance with § 1123, the Combined Plan and Disclosure Statement divides Claims into Classes and sets forth the treatment for each Class (other than those claims which pursuant to § 1123(a)(1) need not be and have not been classified).

Section 1122 requires the Combined Plan and Disclosure Statement to place a Claim in a particular Class only if such Claim is substantially similar to the other Claims in such class. The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Secured Claims and General Unsecured Claims. The Debtor believes that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims in the same Class and, thus, meet the requirements of § 1122.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim of a particular class unless the claim holder agrees to a less favorable treatment of its claim. The Debtor

believes that the Combined Plan and Disclosure Statement complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the holders of Claims affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

A Claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class, and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

It is possible that a holder of a Claim may challenge the Debtor's classification of Claims and that the Bankruptcy Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed. If such a situation develops, the Debtor intends, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.

**6.6**    **Voting Procedures.** Given that there are no Impaired classes under the Plan, the Debtor does not contemplate voting by the Creditors or holders of Interests. To the extent any parties are entitled to vote, the Debtor will revise this Combined Plan and Disclosure Statement to provide for voting procedures and ballots.

**6.7**    **Releases, Exculpations, and Injunctions.** This Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunction language. Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtor and certain third parties. THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.

**6.8**    **Alternatives to the Combined Plan and Disclosure Statement.** If the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be: (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Case. As discussed below, the Debtor does not believe that any of these

alternatives, even if viable, would afford holders of Claims a greater recovery than what is provided by the Combined Plan and Disclosure Statement. If the Combined Plan and Disclosure Statement is not confirmed, then the Debtor or any other party in interest could attempt to formulate a different plan. The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Case be converted to chapter 7. At this time, the Debtor does not believe that there are viable alternative plans available to the Debtor. If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtor's remaining assets in accordance with the priorities established by the Bankruptcy Code. As discussed above, the Debtor believes that the Combined Plan and Disclosure Statement provides a better outcome for holders of Claims than a chapter 7 liquidation would provide. If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Case also could be dismissed. Among other effects, dismissal would result in the termination of the automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtor and its Assets, likely to the detriment of other creditors. While it is impossible to predict precisely what would happen in the event the Chapter 11 Case is dismissed, it is unlikely that dismissal would result in a distribution of the Debtor's assets among creditors as provided in the Combined Plan and Disclosure Statement. Thus, the vast majority of creditors could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

### ARTICLE VII
### IMPLEMENTATION OF THE PLAN

**7.1**      **Plan Funding Mechanism.** As noted above, the Plan shall be funded from the sale of certain or all of the Non-Debtor Real Property Assets.

**7.2**      **Dissolution of Operations.** Pursuant to Section 9 of the Operating Agreement, the dissolution of the Debtor has been triggered.

**7.3**      **Corporate Governance.** Prior to dissolution, the Debtor will continue to be governed by its sole managing member Jeffrey Simpson. On the Effective Date, the Debtor's managing member shall be the sole member of the Reorganized Debtor.

**7.4**      **Section 1145 Exemption.** In accordance with section 1145 of the Bankruptcy Code, the retention under the Plan of the Interests is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

**7.5**      **Closing of the Chapter 11 Case.** As this is a liquidating Chapter 11 plan and the Debtor is being dissolved, following the Effective Date, or at such other time as the Reorganized Debtor deems appropriate, the Reorganized Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**7.6**      **Preservation and Application of Insurance.** The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any member of the Debtor, or any other Person, including, without limitation, insurance for the

Debtor's members, directors, or officers, as applicable.

**7.7      Distributions to Holders of Claims and Interests.**

(a)      <u>Reorganized Debtor to Make Distributions</u>.

Unless ordered otherwise in the Confirmation Order, the Reorganized Debtor shall make all payments required by this Plan.

(b)      <u>Estimation of Claims</u>.

The Debtor or the Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  The foregoing objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated by the Bankruptcy Court and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(c)      <u>Automatic Disallowance and Expungement of Certain Claims</u>.

On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed in advance of such Bar Date and under the terms of the order relating thereto, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

(d)      No holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the amount of such Allowed Claim plus interest as provided herein.

(e)      *De Minimis* Distributions. The Reorganized Debtor shall not be required  to make any Cash payment of less than twenty-five dollars ($25.00).

(f)      <u>Setoffs</u>. The Reorganized Debtor is authorized, pursuant to and to the extent permitted by applicable law, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the Claims, rights, and Causes of Action of any nature that the Estate may hold against the holder of such Allowed Claim; <u>provided</u>, that the Reorganized Debtor gives the holder of such Allowed Claim no fewer than five (5) days' notice in writing (including email) of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within thirty (30) days of receiving such notice.  If an objection is timely raised to a proposed setoff, the Reorganized Debtor may seek relief from the Bankruptcy Court to effectuate the setoff. Neither the failure to affect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Estate or the Reorganized Debtor of any such Claims, rights, and Causes of Action the Estate may have against such holder.

(g)      <u>Address for Delivery of Distributions</u>. Subject to Bankruptcy Rule 9010, any

Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth on the registers maintained by the Reorganized Debtor as provided for in the Plan. If any Distribution is returned to the Reorganized Debtor as undeliverable, no Distributions shall be made to such holder unless the Reorganized Debtor is notified of such holder's then current address within sixty (60) days after such Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distribution shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan.

(h)    Federal Income Tax Consequences to the Debtor. The Debtor does not anticipate that confirmation of the Plan will result in the Debtor being assessed or owing any Federal Income Tax. Confirmation will not trigger a taxable event.

(i)    Time Bar to Cash Payments. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be in writing to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any such written claim in respect of such a voided check must be received by the Reorganized Debtor on or before sixty (60) days after the expiration of the 60-day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Estate. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

(j)    Record Date for Distributions to Holders of Claims. As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of the Claims for purposes of the Distribution. The Debtor or the Reorganized Debtor, as applicable, shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date.

(k)    Disputed Payments. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Reorganized Debtor may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement signed by all of the interested parties to such dispute.

(l)    No Agency Relationship. The Reorganized Debtor shall not be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Reorganized Debtor shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless arising from gross negligence, willful misconduct, or breach of fiduciary duty. The Reorganized Debtor shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of each of its, respective, duties under the Plan, except to the extent its actions constitute gross negligence, willful misconduct, or breach of fiduciary duty. The Reorganized Debtor may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which it, respectively, believes to be genuine and to have been signed or presented by the proper party or parties. The Reorganized Debtor may also rely upon information previously generated by the Debtor and such additional information provided to each of them,

respectively, by former affiliates of the Debtor.

## ARTICLE VIII
## EFFECT OF THE PLAN ON CLAIMS INTERESTS AND CAUSES OF ACTION

### 8.1    Binding Effect.

On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has been deemed to accept the Plan.

### 8.2    Term of Injunctions or Stays.

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

### 8.3    Retention, Reservation, and Prosecution of Causes of Action.

Except as otherwise provided in the Plan, all Causes of Action are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under Bankruptcy Code section 1123(b)(3)(B) for purposes of the Causes of Action. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Causes of Action, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code section 1123(b)(3)(B). The Reorganized Debtor shall have sole discretion to determine in its business judgment which Causes of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, cause, or Causes of Action, the Reorganized Debtor shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Causes of Action shall survive confirmation and the commencement or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

### 8.4    Injunctions.

(a)    Satisfaction of Claims.  The treatment to be provided for Allowed Claims shall be in full satisfaction, settlement, and release of each such Claim.

(b)    Scope of Injunction.  Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold a Claim are permanently enjoined from taking any of the following actions against the Debtor, its affiliates, the Reorganized Debtor or any present and former directors, officers, trustees, agents, attorneys, advisors, members, or employees of the Debtor, its affiliates, the Reorganized Debtor or any of their respective successors or assigns, or any of their respective assets or properties, on account of any Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order with respect to a Claim; (iii) creating, perfecting or enforcing any Lien or Encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation or recoupment of any kind with respect to a Claim, the Assets or other

34

property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan.  Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions against third-parties or from pursuing third-party insurance that does not cover Claims against the Debtor. For the avoidance of doubt, nothing in this Injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.

   (c) <u>Release of Collateral</u>.  Except as expressly provided herein: (i) each holder of (a) an Allowed Secured Claim; and/or (b) an Allowed Claim that is purportedly secured, on the Effective Date shall (x) turn over and release to the Debtor any and all property that secures or purportedly secures such Claim;  and (y) execute such documents and instruments as the Debtor or the Reorganized Debtor, as applicable, require to evidence such claimant's release of such property;  and (ii) on the Effective Date, all Claims, rights, title, and interest in such property shall revert to the Debtor, free and clear of all Claims, including (without limitation) Liens, charges, pledges, Encumbrances, and/or security interests of any kind.  No Distribution shall be made to or on behalf of any holder of such Claim unless and until such holder executes and delivers to the Reorganized Debtor such release of Liens.  Any such holder that fails to execute and deliver such release of Liens within sixty (60) days of any demand thereof shall be deemed to have no further Claim and shall not participate in any Distribution hereunder. Notwithstanding the immediately preceding sentence, a holder of a Disputed Claim shall not be required to execute and deliver such release of Liens until the time such Claim is Allowed or disallowed.

   (d) <u>Cause of Action Injunction</u>.  On and after the Effective Date, all Persons other than the Reorganized Debtor will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any Claim, debt, right, or Cause of Action that the Reorganized Debtor retains authority to pursue in accordance with the Plan.

  **8.5**  <u>**Exculpation.**</u>

   **Except as otherwise set forth in the Plan, and subjected to the limitations of Section 1125 of the Bankruptcy Code, neither the Debtor nor the Exculpated Parties shall have or incur any liability to any Person or entity for any action taken or omitted to be taken between the Petition Date and the Effective Date in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Confirmation Order, or any contract, release, or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, the administration of the Plan or property to be distributed pursuant to the Plan, and actions taken or omitted to be taken in connection with the Chapter 11 Case or the operations, monitoring, or administration of the Debtor during the Chapter 11 Case; provided, however, that such action taken or not taken by such Person or Entity was specifically on behalf of the Debtor and in conjunction with the Chapter 11 Case, provided further, however, that the Exculpated Parties did not engage in fraud, gross negligence, willful misconduct, or acts performed outside the scope of section 1184 of the Bankruptcy Code not authorized by the Bankruptcy Court. The Reorganized Debtor shall have no liability for any action taken or omitted to be taken in connection with or related to the winding down and post-confirmation administration of the Estate, except for (i) fraud, gross negligence, or willful misconduct, and (ii) solely in the case of attorneys, to the extent that such exculpation would violate any applicable professional disciplinary rules, including Rule 1.8(h) of the New York State Rules**

of Professional Conduct.

### 8.6    Compromise of Controversies.

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

### 8.7    Releases by the Debtor.

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party and their respective advisors, attorneys, and Representatives of any professional employed by any of them, is deemed released, solely in their capacity in acting on behalf of the Debtor or its Estate, by the Debtor and its Estate from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Case, the subject matter of, any Claim or Interest that is treated in the Plan, the negotiation, formulation, or preparation of the Plan, the Confirmation Order, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence relating to the Debtor, in connection with the Chapter 11 Case, provided, however, that the Released Parties did not engage in fraud, willful misconduct, or gross negligence, taking place on or before the Effective Date.**

### 8.8    Preservation and Application of Insurance.

The provisions of this Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any manager, member, trustees, or officers of the Debtor, or any other Person, including, without limitation, insurance for the Debtor's member.

### 8.9    Vesting of Assets.

Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Causes of Action but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of

all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

**8.10    Authority to Effectuate Plan**.

Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), and except as may otherwise be provided herein, any treatment or actions provided for or contemplated under the Plan shall be deemed to be authorized and approved without any further order or approval of the Bankruptcy Court. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court but subject to the terms of the Plan to take whatever action is necessary or proper to consummate and carry out the Plan, to consummate any transaction provided for herein, and to effectuate the distributions provided for hereunder.

## ARTICLE IX
## EXECUTORY CONTRACTS

**9.1    Executory Contracts and Unexpired Leases**.

(a)    Assumption Procedures.  In connection with any proposed Assumed Contract, if any, the Debtor will file the Assumption Schedule with the Court no later than five (5) Business Days prior to the Confirmation Hearing and concurrently serve notice of such filing, by email or overnight mail, upon all counter-parties to the Assumed Contracts.

The Assumption Schedule shall identify the proposed Assumed Contracts and the corresponding Cure Amounts required by section 365 of the Bankruptcy Code, if any. All non-debtor parties to the Assumed Contracts shall have ten (10) Business Days following service of the Assumption Schedule (or any amendment to such schedule), to file an objection (an "Assumption Objection") to the proposed assumption and assignment of any Assumed Contract or any Cure Amount listed for an Assigned Contract.  Any party filing an Assumption Objection shall state with specificity the basis of the objection and what Cure Amount it asserts, and shall include appropriate documentation in support thereof.

If an Assumption Objection is timely filed and not consensually resolved, this Court shall hold a hearing with respect to such Assumption Objection at such date as this Court shall designate.

(b)    Rejection Procedures. To the extent not previously rejected, on the Effective Date, but subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtor entered into prior to the Petition Date that have not previously been assumed or rejected, or are not set forth on the Assumption Schedule to be assumed, shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

(c)    Effect of Confirmation Order. Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, the assumptions or rejections of any executory contracts and unexpired leases assumed, assumed and assigned, or rejected pursuant to the Plan. Any motions to assume, assume

and assign, or reject any executory contracts or unexpired leases that is pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Debtor, with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date.

To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto.

**9.2** **Rejection Damages Bar Date.**

If rejection by the Debtor, pursuant to the Plan, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, and/or the Reorganized Debtor, unless a proof of claim is filed with the Clerk of the Bankruptcy Court and served upon the Debtor and the Reorganized Debtor, as applicable, not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

**9.3** **Effect of Post-Confirmation Rejection.**

The entry by the Bankruptcy Court on or after the Confirmation Date of an order authorizing the rejection of an executory contract or unexpired lease of the Debtor entered into prior to the Petition Date shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

**ARTICLE X**
**CONDITIONS TO CONFIRMATION AND OCCURRENCE OF EFFECTIVE DATE**

**10.1** **Conditions to Confirmation.**

The Plan may not be confirmed unless the Confirmation Order is entered in a form and substance acceptable to the Debtor.

**10.2** **Conditions to Occurrence of Effective Date.**

The Effective Date for the Plan may not occur unless each of the conditions set forth below is satisfied. Any one or more of the following conditions may be waived in whole or in part at any time by the Debtor:

(a)    The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order;

(b)    The Confirmation Order shall provide for the releases, injunctions and exculpation of the Persons provided for in the Plan; and

(c)    With respect to all other documents and agreements necessary to implement the Plan: (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements.

Waiver of Condition. The Debtor alone may waive the conditions to effectiveness of this Plan, without leave of the Bankruptcy Court and without any formal action, other than proceeding with confirmation of this Plan and filing a notice of confirmation with the Bankruptcy Court. To the extent that the Debtor believes that it is unable to comply with the conditions to the effectiveness of this Plan, the Debtor reserve the right to amend the Plan at such time (in accordance with the terms hereof) to address such inability.

## ARTICLE XI
## CERTAIN RISK FACTORS

**11.1    Certain Risk Factors to be Considered.** THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

(a)    The Combined Plan and Disclosure Statement May Not Be Confirmed. There is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement. Even if the Bankruptcy Court determined that the Combined Plan and Disclosure Statement were appropriate, the Bankruptcy Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met. While the Debtor believes that the Combined Plan and Disclosure Statement complies with or will comply with all such confirmation requirements, there can be no guarantee that the Bankruptcy Court will agree. Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation. If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation. If an alternative could not be agreed to, it is possible that the Debtor would have to liquidate its remaining assets in chapter 7, in which case it is likely that the Holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

(b)    Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections. The Debtor believes that all amounts outstanding under the Plan will be paid following the sale of certain or all of the Non-Debtor Real Property. There can be no assurance that the estimated Claim amounts set forth in the Combined Plan and Disclosure Statement are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amounts of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtor's

estimates. If the total amount of Allowed Claims in a Class is higher than the Debtor's estimates, or the funds available for distribution to such Class are lower than the Debtor's estimates, the recovery to Holders of Allowed Claims in such Class will be less than projected. There can also be no assurance that the sales of the Debtor's real property will be permitted or close.

(c)    <u>Failure to Consummate the Combined Plan and Disclosure Statement</u>. Although the Debtor believes that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

(d)    <u>The Releases and Exculpation May Not Be Approved</u>. There can be no assurance that the releases and exculpation, as provided herein, will be granted.

## ARTICLE XII
## CONFIRMABILITY AND SEVERABILITY OF A PLAN

**12.1    <u>Confirmability and Severability of Plan</u>.**

Subject to the Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan. If the Debtor revokes or withdraws the Plan, then nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Debtor or any Persons in any further proceedings involving the Debtor. A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify the Plan to satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code. Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions therein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

## ARTICLE XIII
## ADMINISTRATIVE PROVISIONS

**13.1        <u>Retention of Jurisdiction</u>.**

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation, the following purposes:

(a)    To determine any motion, adversary proceeding, avoidance action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b)    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(c)    To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    To hear and determine objections to the allowance of Claims, whether filed,

40

asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(e)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     To hear and determine any application to modify the Plan, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all Professional Fee Claims;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release, exculpation, or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)     To enter a final decree closing the Chapter 11 Case;

(o)     To recover all Assets of the Debtor and property of the Estate, wherever located;

(p)     To hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior orders; and

(q)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

**13.2**    **Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of New York, without giving effect to principles of conflicts of law of New York.

**13.3**    **Effectuating Documents, Further Transactions.**

The Debtor or the Reorganized Debtor, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**13.4**    **Continuing Viability of Other Orders/Agreements.**

Except to the extent expressly modified by the Plan, all Final Orders previously entered by the Bankruptcy Court shall continue in full force and effect.

**13.5**    **Waiver of Bankruptcy Rules 3020(e) and 7062.**

The Debtor may request that the Confirmation Order include (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order, and (ii) authorization for the Debtor or the Reorganized Debtor, as applicable, to consummate the Plan immediately after entry of the Confirmation Order.

**13.6**    **Discharge.**

Since this is a liquidating plan, the Debtor will not receive a discharge under Section 1141 of the Bankruptcy Code.

**13.7**    **Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of provisions of the Plan.

**13.8**    **Governmental Carve-Out.**

Nothing in the Plan or the Confirmation Order shall (i) effect a release of any Claim of, (ii) enjoin from bringing any Claim, suit, action or other proceedings by, or (iii) exculpate any party from any liability to, the United States Government or any of its agencies or any state or local government within the United States, arising under (v) the federal securities laws, (w) the Employment Retirement Income Security Act of 1974, as amended, (x) the Internal Revenue Code, (y) the environmental laws or (z) any criminal laws of the United States.

**13.9**    **Amendments.**

The Debtor may alter, amend, or modify the Plan under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may

under section 1193(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.

**13.10    Revocation, Withdrawal or Non-Consummation.**

The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtor's filing of a notice thereof, and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Causes of Action or Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**13.11    Exhibits/Schedules.**

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein. In the event of any inconsistency between the Plan and the exhibits and schedules to the Plan or the Plan Supplement, the terms of the Plan shall control.

**13.12    Successors and Assigns.**

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such Person.

**13.13    Confirmation Order and Plan Control.**

To the extent the Confirmation Order and/or the Plan is inconsistent with any agreement entered into between the Debtor and any third party, the Plan controls any such agreements, and the Confirmation Order controls the Plan.

**13.14    Further Action.**

Nothing contained in the Plan will prevent the Debtor or the Reorganized Debtor, as applicable, from taking such actions as may be necessary to consummate the Plan even though such actions may not be specifically provided for within the Plan.

**13.15    Notices.**

Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

**For the Debtor/Reorganized Debtor**:
Jeffrey Simpson
Managing Member
1055 Park Avenue #4
New York, New York 10028

**Counsel to the Debtor**:
Jonathan S. Pasternak, Esq.
Craig Price, Esq.
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158

**For the United States Trustee**:
William K. Harrington United States Trustee
United States Department of Justice
201 Varick Street, Room 1006
New York, New York 10014
Attn:  Brian Masumoto, Esq.

### 13.16  Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

### 13.17  Deemed Acts.

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

DATED:    New York, New York
September 3, 2024

**JJ ARCH LLC**
Debtor and Debtor in Possession

By:

**_/s/ Jeffrey Simpson_**
Jeffrey Simpson
Managing Member

**Schedule A**

| LLC Entity | Location of Property |
|---|---|
| JJ Arch Nostrand LLC | 1580 Nostrand Ave. Brooklyn, NY |
| JJ Haverhill LLC | 3200 N Haverhill Rd. West Palm Beach, FL |
| JJ Tuscaloosa LLC | Cooper Creek 3504 12th Ave E. Tuscaloosa, AL 35405 |
| JJ Tuscaloosa LLC | Broadmoore Gardens 235 James I Harrison Jr. Pkwy. Tuscaloosa, AL 35405 |
| JJ Tuscaloosa LLC | Woodlawn Manor 3820 1st Ave Tuscaloosa, AL  35405 |
| JJ Pebble Creek LLC | Forestdale Birmingham, AL |
| JJ Center Pointe LLC | Center Pointe Landings 107 Sterling Court NW Center Point, AL 35215 |
| JJ Center Pointe LLC | City Landing Apartments 856 Park Brook Trail Birmingham, AL 35215 |
| JJ Center Pointe LLC | Village Square Landings 4141 Pinson Valley Parkway Birmingham, AL 35215 |
| JJ Columbia LLC | Mallard Pointe Apartments 1101 Halbrook Dr. Columbia, SC 29209 |
| JJ Columbia LLC | Austin Woods Apartments 7648 Garners Ferry Rd. Columbia, SC 29209 |
| JJ Columbia LLC | Harbour Landing Apartments 7625 Garners Ferry Rd. Columbia SC 29209 |

| | |
|---|---|
| JJ Columbia LLC | Ravenwood Hills Apartments<br>4215 Bethel Church Rd.<br>Columbia, SC 29206 |
| JJ Vandam LLC | 9 Vandam St.<br>New York, NY 10013 |
| JJ Midtown Oaks LLC | 1351 Dekalb Ave.<br>Brooklyn, NY 11221 |
| JJ Midtown Oaks LLC | 1010 Bushwick Ave.<br>Brooklyn, NY 11221 |
| JJ Midtown Oaks LLC | 435 Central Ave.<br>Brooklyn, NY 11221 |
| JJ Myrtle Point LLC | 3-50 St. Nicholas Ave.<br>Queens, NY 11385 |
| JJ 88 Arch LLC | 88 University Pl.<br>New York, NY 10003 |
| JJ Cambridge LLC | 10101-10133<br>Claude Freeman Dr.<br>Charlotte, NC |

.
.