DAVIDOFF HUTCHER & CITRON LLP
605 Third Avenue
New York, New York 10158
(212) 557-7200
Jonathan S. Pasternak, Esq.
Craig M. Price, Esq.
*Counsel for the Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------ X
                                            :
In re:                                   :      Chapter 11
                                            :
JJ ARCH LLC,                       :
                                            :      Case No. 24-10381 (JPM)
                   Debtor.[1]        :
                                            :
------------------------------------------ X

## DEBTOR'S OBJECTION TO JARED CHASSEN AND ARCH REAL ESTATE HOLDINGS LLC'S JOINT MOTION TO DISMISS CASE

JJ Arch LLC, the above-captioned debtor and debtor-in-possession ("Debtor"), by and through its undersigned counsel, objects (the "Objection") to the motion (the "Motion") filed by Jared Chassen ("Mr. Chassen") and Arch Real Estate Holdings LLC ("AREH" and together with Mr. Chassen, the "Movants"), seeking an order dismissing the above-captioned Chapter 11 Case for cause pursuant to 11 U.S.C. § 1112(b)(1) [Dkt. No. 170]. In opposition of the Motion, the Debtor respectfully represents as follows:

### PRELIMINARY STATEMENT

As the second motion to dismiss this Chapter 11 Case filed by the Movants,[2] the Motion is yet another litigation tactic in a long, drawn-out dispute between former partners designed to wrongfully punish the Debtor and its sole managing member and forestall the orderly conclusion

---

[1]    The last four digits of the Debtor's federal tax identification number are 4251.
[2]    *See Motion for an Order Dismissing the Debtor's Bankruptcy Case* (the "Initial Dismissal Motion") [Dkt. No. 4]. It should be noted that the Movants adjourned their motion rather than grant discovery to the Debtor.

of this Chapter 11 Case. Among other things, the Motion wrongfully asserts that the Chapter 11 Case should be dismissed because "the Debtor has no legitimate purpose in chapter 11, no assets, hardly any debt, and no ability to reorganize"[3] and "the Debtor has been engaged in gamesmanship and dereliction of its duties". Motion at ¶ 1. Despite this assertion, the Debtor has recently filed its *Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation for Small Business Debtor JJ Arch LLC* [Dkt. No. 184] (the "Plan"), whereby the Debtor sets forth its intention to sell certain assets, pay in full all Allowed Claims, and, following the Effective Date of the Plan and subject to payment of all Claims, the Reorganized Debtor will distribute the remainder of its assets to the holder of Interests or his nominee.[4] Further, given that the Plan seeks to liquidate all of the Debtor's Assets, it triggers the dissolution provisions in the Debtor's Operating Agreement.[5] The Debtor believes that a judicially approved sale of its Assets to the extent necessary to fund its Plan, followed by an orderly payment of its creditors in full, and then finally dissolution is the best way to orderly resolve this Chapter 11 Case.[6] To do so, however, the Debtor requires a continued reasonable amount of time under Chapter 11 protection to successfully liquidate certain of the Debtor's Assets and confirm the liquidating Plan. The Debtor asserts that dismissing the case at this time pursuant to the Motion will only create further chaos and uncertainty, likely result in additional litigation, and that, if the proposed path is approved by this Court, all rights of all parties will be preserved throughout the remainder of this case.[7]

---

[3] While the Movants claim in the Motion that there is no debt at the Debtor level, AREH, which Oak temporarily controls, has recently presented the Debtor with its *2022 K-1 Partner's Share of Income, Partner's Share of Income, Deductions, Credits, Etc. from Arch Real Estate Holdings LLC*, attached to the Plan as Exhibit C. The K-1 lists approximately $32,576,245 in potential contingent debt owed by the Debtor.
[4] Terms not otherwise defined herein have the meanings ascribed to them in the Plan.
[5] *See* Section 9 of the Debtor's Operating Agreement, which is attached as Exhibit A to the Plan. To the extent necessary, the Debtor will file a dissolution procedure under New York State law.
[6] The Debtor will also seek to judicially dissolve AREH. It should be noted that prior to the bankruptcy, the various parties engaged in discussions and engaged a party to dissolve the various Arch Companies. Owing to the market at the time, as well as disagreements between the parties, dissolution was not achieved.
[7] To the extent that the Movants have issues with the Plan and the sales which will take place to fund the Plan, they

2

For these reasons, and because the Movants have failed to demonstrate the necessary cause to warrant dismissal under applicable law in this jurisdiction, the Debtor asserts that the Motion should be denied.

## RELEVANT BACKGROUND

**A.    Procedural Posture**

1.    On March 7, 2024, the Debtor filed its Voluntary Subchapter V Voluntary Petition [Dkt. No. 1], and on June 5, 2024, the Debtor amended its petition to withdrawal its Subchapter V election [Dkt. No. 124].

2.    On March 14, 2024, Mr. Chassen, the Debtor's former minority member, filed his Initial Dismissal Motion. On March 18, 2024, AREH filed a Notice of Joinder to the Initial Dismissal Motion [Dkt. No. 13]. On April 16, 2024, the Debtor filed the *Motion for an Order (I) Compelling Expedited Discovery in Connection with Motions to Dismiss and Remand Filings, (II) Adjourning Hearing on Remand Filings Until Dismissal Issues Have Been Resolved and (III) Setting a Briefing and Hearing Schedule to Resolve Dismissal Issues* [Dkt. No. 85/Adv. Pro. 16] (the "Discovery Motion"). The Initial Dismissal Motion and the Discovery Motion have been adjourned.[8]

3.    On March 20, 2024, 40 Neutral LLC and Kay Properties LLC filed their *Motion to Expand Powers of the Subchapter V Trustee* [Dkt. No. 23] ( the "Expanded Powers Motion"). Due to the amendment of Debtor's voluntary petition, the Expanded Powers Motion was rendered moot.

---

will be afforded ample opportunity at the proper time to voice their concerns. Moreover, there are explicit provisions in the operating agreements that are triggered when there are disputes regarding the sales of assets.

[8] The Movants have resisted all attempts by the Debtor to gain access to information regarding the Debtor, the Arch Companies, and the relationship between Oak and Mr. Chassen.

3

4. On March 24, 2024, the Debtor filed its *Schedules of Assets and Liabilities and Statement of Financial Affairs* [Dkt. Nos. 31 and 32] (the "Schedules").

5. On March 25, 2024, AREH and Mr. Chassen each filed a *Motion for Entry of an Order (I) Confirming that the Automatic Stay does not Apply to Certain Corporate Governance Disputes, and/or (II) Modifying the Automatic Stay as Necessary in Order to Address such Corporate Governance Disputes* [Dkt. Nos. 38 and 40] (the "Stay Motions"). On April 1, 2024, the Debtor and Jeff Simpson filed omnibus objections to the Stay Motions [Dkt. Nos. 60 and 62] (the "Stay Motion Objections"). On April 4, 2024, Mr. Chassen and AREH each filed an omnibus reply [Dkt. Nos. 69 and 70] to the Stay Motion Objections.

6. On April 3, 2024, the Debtor filed a Notice of Removal [Adv. Pro. Doc 1] ("Notice of Removal") with respect to the State Court Litigation. On April 10, 2024, in response to the Notice of Removal, Mr. Chassen and AREH filed a *Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative Principles of Abstention or Equity* [Adv. Pro. Doc. 2] (the "Motion to Remand"). On the same date, 608941 through its parent entity, Oak, joined the Motion to Remand [Adv. Pro. Doc. 4].

7. The Court heard the parties' arguments on the Stay Motion and Motion to Remand on May 2, 2024. On June 10, 2024, the Bankruptcy Court issued its *Memorandum Opinion and Order, and Findings of Fact and Conclusions of Law, on Jared Chassen and Arch Real Estate Holdings LLC's Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative, Principles of Abstention or Equity* [Dkt. No. 131] (the "Remand Opinion"), whereby the Bankruptcy Court decided that it lacked sufficient jurisdiction over the State Court Litigation and abstention was warranted. The Bankruptcy Court separately ruled on the Stay Motions [Dkt. No.

4

132] (the "Stay Order"), holding that it would lift the automatic stay conditionally upon a ruling from the District Court for the Southern District of New York regarding the Remand Opinion.

8. On June 10, 2024, the Debtor filed its *Motion for an Order Pursuant to Bankruptcy Rule 3003(c)(3) Establishing a Deadline for Filing Certain Proofs of Claim and Approving Form and Manner of Notice Thereof* [Dkt. No. 130] (the "Bar Date Motion"), whereby the Debtor sought to establish August 5, 2024 as the bar date. On June 19, 2024, AREH [Dkt. No. 142] filed an objection to the Bar Date Motion. On June 20, 2024, both Oak [Dkt. No. 143], and Mr. Chassen [Dkt. No. 144] filed joinders to AREH's objection to the Bar Date Motion.

9. Subsequently, on June 24, 2024, the Debtor filed (a) objections to the Court's proposed findings of fact and (b) a *Notice of Appeal* of both the Remand Opinion and the Stay Order [Dkt. No. 147] (the "Notice of Appeal") to the District Court. The appeal remains pending with the District Court.

10. On July 5, 2024, the Debtor filed its *Motion for Entry of an Order Extending the Debtor's Exclusive Periods Within Which To File A Chapter 11 Plan And Solicit Acceptances Thereof and (ii) Granting Related Relief* [ECF No. 160] (the "Exclusivity Motion"), whereby the Debtor sought to extend the exclusive periods by six (6) months through and including January 3, 2025 for the exclusive filing period and March 3, 2025 for the exclusive solicitation period. On August 17, 2024, Mr. Chassen and AREH filed their Joint Objection [Dkt. No. 174] to the Exclusivity Motion.

11. On August 6, 2024, the Movants filed the Motion.

12. On September 3, 2024, the Debtor filed its Plan, which, among other things, proposes to pay all Allowed Claims in full in cash. Given that the Plan seeks to liquidate the

5

Debtor's Assets, the Plan triggers the dissolution procedures in Section 9 of the Debtor's Operating Agreement.

13. On September 3, 2024, the Debtor also filed its Monthly Operating Reports for the months of May, June, and July 2024 [Dkt. Nos. 181, 182 and 183]; the Debtor had previously filed Monthly Operating Reports for the months of March and April 2024 (collectively, the "<u>Monthly Operating Reports</u>").

**B.      The Debtor's Operations**

14. The Debtor is a real estate holding company. The Debtor's business is limited solely to its: (i) indirect ownership interests in various real property assets where the Debtor is the ultimate parent company (the "<u>Non-Debtor Real Property</u>") and (ii) indirect managerial control of certain real property owned with third-party investors through non-debtor subsidiaries, where the Debtor is the majority owner (the "<u>Portfolio Projects</u>"). Among other things, the Debtor served as the upper tier owner of AREH through which it controlled and operated a vertically integrated real estate investment company. Control by the Debtor of the various related affiliates was built into all of the various operating agreements of the various Arch affiliates. Despite the clear language of such control provisions, Mr. Simpson alleges that he has been stripped of his contractual rights to control these entities. Further, upon information and belief, the Debtor alleges that the Movants have taken certain improper actions regarding the Portfolio Properties in violation of the control provisions, which have negatively affected the Debtor's interests and eroded the Arch Companies' business.[9]

---

[9] The Debtor alleges that, since the temporary change in control occurred, the Portfolio Properties may have been improperly sold, disposed of, and/or refinanced, and guarantees removed, all without the required consent of the Debtor and/or affiliates of the related Portfolio Property Entities, in contravention of their respective governing documents. The Debtor also alleges that Oak has used its powers improperly to engage in self-dealing, fraudulent conveyances, improper capital calls, and to put in place Liens, all in violation of the control provisions of the respective governing documents. Lastly, the Debtor alleges that the Movants have also improperly resisted attempts by the Debtor to gain information regarding their actions in contravention of the various governing

6

15. The Debtor's management is presently controlled by its sole managing member Jeffrey Simpson, who, for the reasons described further in the Plan, currently owns 100% of the Interests in the Debtor. The Portfolio Property Entities are in the process of assigning their interests in the Portfolio Projects to the Debtor directly pursuant to the various entities' transfer provisions.

16. As part of its holdings, the Debtor owns 100% of the membership interests in the Non-Debtor Real Property located at: (i) 550 Metropolitan Avenue in Brooklyn, New York, 11211; (ii) 225 Head of Pond Road in Water Mill, New York, 11976; (iii) 1640 Montauk Highway in Water Mill, New York, 11976; and (iv) 146 E. 89th Street in New York, New York, 10128.

17. To fund the payments to be made under the Plan, the Debtor, as managing member, is in the process of negotiating for the sale of certain of the Non-Debtor Real Property Assets. Upon reaching any agreement, the Debtor, to the extent the Plan has not yet been confirmed, will file the appropriate motion pursuant to section 363 of the Bankruptcy Code to seek authorization for any such sale.[10]

## OBJECTION

**A.    The Court Should Deny the Motion Under Bankruptcy Code Section 1112(b)(2)**

18. Section 1112(b)(2) of the Bankruptcy Code provides that:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
>    (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

---

agreements.

[10] While Mr. Chassen has attempted to hinder such sales, the State Court has granted relief that would limit his ability to stop such sales. Specifically, Judge Cohen provided, in the Order to Show Cause, dated February 9, 2024, that none of the Debtor's property should be sold without the written consent of Mr. Chassen, which shall not be unreasonably withheld.

7

    (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

        (i) for which there exists a reasonable justification for the act or omission; and

        (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

19. The Debtor asserts that "unusual circumstances" exist in this instance to deny the Movant's Motion. While the Debtor has been in bankruptcy for several months, in that time, the Debtor has been forced to focus on two separate motions to dismiss, the State Court Litigation, and prosecuted its removal action. Moreover, the Debtor has recently obtained new counsel which has assisted the Debtor in formulating and filing its Plan to move this case towards a swift conclusion. The Plan proposes an orderly process by which all or certain of the Non-Debtor Real Property may be sold and creditors will be paid in full – thus resolving and ending this case in an organized fashion.[11] The Debtor is now in the process of marketing the Non-Debtor Real Property. The Debtor has also recently filed and brought up to date its Monthly Operating Reports.[12] The filing of the liquidating Plan also triggers the dissolution procedures in the Debtor's Operating Agreement. The Debtor only requires a reasonable amount of time to complete the Plan process and file the related sale motions, if necessary.[13] Once the Plan is confirmed, the Debtor's creditors will be paid in full, the Debtor will be dissolved, and this case closed.

---

[11] To the extent the Movants have issues with the Plan, there will be an orderly process to object, and for related discovery to take place, all before this Court.

[12] The Debtor asserts that prior to the bankruptcy, Mr. Chassen had Mr. Simpson improperly removed from all bank accounts held by First Republic, including his personal accounts. Owing to the lack of information from the Movants, in contravention of the governing documents, and difficulties reestablishing the flow of information from banking institutions, the Debtor has had numerous difficulties accessing information, resulting in the delays associated with the MORs.

[13] To ensure that all Claims are adjudicated, the Debtor also requires that the Court enter the Bar Date Motion to move forward with the prosecution of the Plan.

20. If, however, this case is dismissed and creditors are allowed to proceed independently against the Debtor, there will undoubtedly, at the very least, be a loss of value and equity of the Debtor as the Debtor's principal and its professionals will be forced to divert time and resources away from their efforts in this case at this critical juncture. The Debtor will also be forced to cede its appellate rights with respect to the State Court Litigation. Such delay (or worse), and the additional chaos and costs that the Debtor may bear, will only diminish any return to the Debtor's creditors and not be in the best interests of the Debtor's creditors and its estate.

21. Given that dismissing the Chapter 11 Case will not be in the best interest of the Debtor's creditors and its estate, and that the Debtor intends to move swiftly to confirm its Plan, the Debtor asserts that Section 1112(b) requires that the Motion be denied.

**B.  The Movants Have Not Established Sufficient Cause to Dismiss the Chapter 11 Case**

22. The Movants have also failed to establish sufficient "cause" to dismiss this case. The Movants seek to dismiss this Chapter 11 Case pursuant to Section 1112(b)(1) of the Bankruptcy Code, which provides in pertinent part that:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

23. After attempting to argue that dismissal is somehow mandatory under revisions to the Bankruptcy Code upon a finding of "cause", in the Motion, Movants eventually admit that "the Bankruptcy Court has wide discretion in determining if cause exists and how to ultimately dispose of a case pursuant to Section 1112 of the Bankruptcy Code." *See* Motion at ¶ 33 (citing cases).

9

24. Section 1112(b)(4) sets forth a non-exclusive list of grounds that may constitute "cause" under subsection 1112(b)(1). This list is illustrative but not exhaustive of the events that can constitute cause. *In re State Street Assoc.*, 348 B.R. 627 (Bankr. N.D.N.Y. 2006) (citing *In re 3 Ram, Inc.*, 343 B.R. 113 (Bankr. E.D. Pa. 2006)); *see also In re The 1031 Tax Group, LLC*, 374 B.R. 78 (Bankr. S.D.N.Y. 2007) (a case may be dismissed for reasons other than those specified in section 1112(b), as long as the reasons establish "cause").

25. The Movants assert that "here, cause is easily met just by the first two enumerated subsections of Bankruptcy Code section 1112(b)(4), which are (A) 'substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation' and (B) 'gross mismanagement of the estate.'" Motion at ¶ 36. The Debtor asserts that the Movants have failed to establish that either prong has been met, and as a result, "cause" to dismiss this case does not exist.

26. The Debtor asserts that there has been no "substantial or continuing loss to or diminution of the estate." While the Movants criticize the Debtor for not filing numerous substantive motions and taking other actions, the Debtor has attempted to keep costs low, including professional fees. As the sole holder of the Debtor's interests, its managing member has every incentive to retain value. Moreover, prosecuting the liquidating Plan already filed will be straightforward as will selling the Assets necessary to fund the Plan. While there will be professional costs to the estate in prosecuting the Plan and marketing the assets, such costs will result in payment in full of the Debtor's creditors.

27. Second, the Movants attempt to evidence "gross mismanagement" by raising issue with the fact that, among other things: (i) the Debtor has changed counsel, (ii) revised its Subchapter V election, (iii) sought to remove the State Court Litigation to the Bankruptcy Court,

10

and (iv) alleging that Mr. Simpson sold a vehicle without Bankruptcy Court approval.[14] While the Movants make numerous allegations – Movants fail to establish that any of these actions were illegal and not within the Debtor's right. The Movants cite numerous pages of transcripts of the Debtor's 341 meeting to paint a negative picture of the Debtor's sole member. The Movants fail, however, to mention that they have cut off Mr. Simpson from all information and resisted all efforts at discovery yet attempted to use that meeting for that very purpose. In addition, the Movants attempt to use conjure up bad acts out of thin air simply by twisting the language used by the Debtor's prior counsel upon their withdrawals – without having any understanding of the exact facts regarding the end of these attorney-client relationships, which facts are protected by the attorney client privilege.[15] Similarly, the Movants assert that simply because the Debtor attempted to remove the State Court Litigation to the Bankruptcy Court, that it was tantamount to "forum shopping". The Movants simply ignore that the Arch Companies suffered from a severe financial meltdown owing to macroeconomic factors, a lack of funding, and the parties were engaged in contentious litigation in multiple forums – which were all legitimate reasons to commence this bankruptcy case.

28. Without more, the Movants should not be allowed to dismiss this Chapter 11 Case on innuendo and allegations alone. Rather, the Debtor asserts that all of its actions should be taken in context of a hotly contested commercial dispute. As such, none of the Debtor's actions to date rise to a sufficient level of "gross mismanagement" to dismiss this case. As the Movants themselves cited, "Section 1112(b)(4)(B) … requires that the mismanagement be gross in character, meaning that it is **'glaringly noticeable usually because of inexcusable badness or**

---

[14] Contrary to the Movants' assertions, Mr. Simpson sold the vehicle in February 2024, in the month prior to the Petition Date, which is why the Debtor did not include the vehicle as an Asset in the Schedules.

[15] The Movants fail to mention, for example, that Mr. Chassen made demands on the Debtor's insurance company, which resulted in the Interpleader Action and temporary curtailment of funding for the Debtor's attorneys.

11

24-10381-jpm    Doc 185    Filed 09/03/24    Entered 09/03/24 13:07:42    Main Document
Pg 12 of 16


**objectionableness. . . . Given the plain language, a debtor's mismanagement must be beyond all reasonable measure.**'". *In re Stream TV Networks, Inc.*, No., 23-10763, 2024 WL 87639, *17, *28 (Bankr. E.D. Pa. Jan. 5, 2024). The Debtor asserts that its actions simply have not risen to the sufficient level of gross mismanagement required for dismissal. As such, the Debtor asks the Court to find that "cause" has not been established to dismiss this case, or given the circumstances, that the Court uses its discretion to permit the Chapter 11 Case to proceed to confirmation.

      C.      <u>**The Debtor's Actions Were Not in Bad Faith**</u>

29. Even in the absence of the existence of one of the factors identified in Section 1112(b)(4), courts in the Second Circuit have recognized an implicit requirement that a chapter 11 case must be filed in good faith. *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304 (2d Cir. 1997) (bankruptcy court may dismiss a chapter 11 filing upon a finding that the case was filed in "bad faith" even without consideration of the factors set out in section 1112(b)); *see also In re Gen. Growth Props., Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009); *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) ("a bankruptcy petition will be dismissed if both objective futility of the reorganization and subjective bad faith in filing the petition are found").

30. The leading case in the Second Circuit on the dismissal of a case for bad faith is *CTC 9th Ave. P'ship*. *See Gen. Growth Props.*, 409 B.R. at 56. The bad faith standard in the Second Circuit requires showing "both objective futility of the reorganization process and subjective bad faith in filing the petition." *Kingston Square*, 214 B.R. at 725; *Gen. Growth Props.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (following the standard articulated in *Kingston Square Assocs.*). Once a movant has established the existence of both subjective bad faith and objective futility, "a rebuttable presumption of bad faith arises and the burden shifts to the debtor 'to establish good and sufficient reasons why the relief should not be granted.'" *Squires Motel, LLC v. Gance (In re*

12

*Squires Motel, LLC)*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (quoting *In re Yukon Enters.*, Inc., 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984)). In other words, the debtor must demonstrate the existence of "unusual circumstances" that establish that "dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1)–(2); *see also Squires Motel*, 39 B.R. at 921. "Once a party establishes cause, a court must examine whether dismissal or conversion of a case under chapter 7 is in the best interests of the creditors and the estate." *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

31. "[A] determination of bad faith requires a full examination of all the circumstances of the case; it is a highly factual determination but also one that may sweep broadly." *C-TC 9th Ave. P'ship.*, 113 F.3d at 1312. *In C-TC 9th Ave. P'ship.*, the court identified eight factors indicative of a bad faith filing: (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which could be resolved in [a] pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees. *Id.* at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992); *see also In re Project Orange Assocs.*, 432 B.R. 89, 113 (Bankr. S.D.N.Y. 2010) (applying the *C-TC 9th Avenue P'ship.* factors).

32. No one factor is determinative of good (or bad) faith, and the Court "must examine the facts and circumstances of each case in light of several established guidelines or indicia,

essentially conducting an 'on-the-spot evaluation of the Debtor's financial condition [and] motives[.]'" *Kingston Square Assocs.*, 214 B.R. at 725, quoting *In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). "It is the totality of circumstances, rather than any single factor, that will determine whether good faith exists." *Kingston Square Assocs.*, 214 B.R. at 725, citing Cohoes, 931 F.2d at 227. A bankruptcy court should dismiss a case for want of a good faith filing only after proceeding with "great caution and upon supportable findings both of the objective futility of any possible reorganization and the subjective bad faith of the petition" seeking bankruptcy protection. *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 848 (E.D.N.Y. 1995 (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir. 1989)).

33. Not all of the factors in *C-TC 9th Ave. P'ship.* are present in this case.

34. One, the Debtor has more than one asset.

35. Two, the Debtor has no secured creditors.

36. Factors three and five are not applicable.

37. Factors six, and eight the Debtor concedes.

38. Regarding the fourth factor, the Debtor disputes the assertion that this Chapter 11 Case is a two-party dispute involving a secured creditor. Additionally, the Debtor is still entitled to a reasonable amount of time to prosecute its appeal of the Remand Order.

39. Regarding the fifth factor, the Debtor also disputes the assertion that this case was filed to delay and frustrate Movant's right to foreclose on the Property. The Debtor filed its Chapter 11 Case to preserve its own management and ownership interests.

40. Regarding the seventh factor, while the Debtor has little cash presently, upon the sale of certain of its Assets, the Debtor believes it will have more than sufficient funds to pay Allowed Claims in full under the Plan.

14

41.     Additional considerations for a finding against a bad faith filing include the fact that the Debtor has been busy prosecuting its Chapter 11 Case. As noted, the Debtor has recently brought up to date its Monthly Operating Reports and filed its liquidating Plan which will provide repayment of all Allowed Claims and for the orderly conclusion of this case.

### D.    Dismissal Is Not in the Best Interests of the Debtor's Creditors and Estate.

42.     Despite the Movant's repeated assertions to the contrary, dismissal of the Chapter 11 Case is not in the best interest of the Debtor's estate and creditors. If the Debtor's Chapter 11 Case is dismissed, there is no assurance of what will happen to the Debtor's assets and what actions may be taken by creditors. Rather than an orderly process overseen by the Court, a dismissal will result in increased administrative expenses as Debtor and its counsel are required to deal with creditors independently and in an unorderly manner. Moreover, Debtor's appeal of the Remand Order will be rendered moot, thus denying the Debtor its appellate rights. While the Movants repeatedly assert that the Debtor's estate has no identifiable source of income and no assets to liquidate, the Debtor asserts that the sale of the Non-Debtor Real Property will be more than sufficient to cover the costs of the Allowed Claims associated with the Plan. Only limited additional time is needed to move this case forward to ensure that all creditors are paid in full. Moreover, to the extent the Movants have issues with the Debtor's Plan, or proposed sales or any other issue, the proper path is for discovery and argument before this Court, not a wholesale dismissal of the case.

**WHEREFORE**, the Debtor respectfully requests the Court deny Movant's Motion, and for such other, further, and different relief as this Court deems just and proper.

Dated: September 3, 2024
      New York, New York

                                    Respectfully submitted,

                                    DAVIDOFF HUTCHER & CITRON LLP
                                    *Attorneys for the Debtor*
                                    605 Third Avenue
                                    New York, New York 10158
                                    (212) 557-7200


                                    By:*/s/ Jonathan S. Pasternak*
                                         Jonathan S. Pasternak