| | |
|---|---|
| KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP<br>200 West 41st Street, 17th Floor<br>New York, New York 10036<br>(212) 972-3000<br>Sean C. Southard, Esq.<br>Brendan M. Scott, Esq.<br>ssouthard@klestadt.com<br>bscott@klestadt.com | OLSHAN FROME WOLOSKY LLP<br>Adam H. Friedman<br>Jonathan T. Koevary<br>Katherine Mateo<br>1325 Avenue of the Americas<br>New York, NY 10019<br>212.451.2300<br>afriedman@olshanlaw.com<br>jkoevary@olshanlaw.com |
| -and - | *Counsel for Arch Real Estate Holdings LLC* |
| SCHWARTZ LAW PLLC<br>Allen Schwartz, Esq.<br>150 Broadway, Suite 701<br>New York, New York 10038<br>347-460-5379<br>allen@allenschwartzlaw.com | |
| *Counsel for Jared Chassen* | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JJ ARCH LLC,<br><br>               Debtor. | Chapter 11<br><br>Case No. 24-10381 (JPM) |

**REPLY IN FURTHER SUPPORT OF JARED CHASSEN AND ARCH REAL ESTATE HOLDINGS LLC'S JOINT
MOTION TO DISMISS THE CHAPTER 11 CASE
<u>FOR THE DEBTOR'S FAILURE TO COMPLY WITH ITS OBLIGATIONS</u>**

12622264-1

Table of Contents

Page

PRELIMINARY STATEMENT ...................................................................................................1

REPLY ............................................................................................................................................2

    I.      The Chapter 11 Plan Is a Bad Faith Farce That Cannot Save the Chapter 11 Case ....................................................................................................................2

          A.      The Plan Presupposes the Results of the State Court Proceeding in Mr. Simpson's Favor ..................................................................................3

          B.      The Plan Relies on the Illegal Assignment of Non-Debtor Property to the Debtor ..............................................................................................4

          C.      The Plan Has No Bankruptcy Purpose, as Mr. Simpson Acknowledged ..................................................................................................5

          D.      The Plan Is Patently Unconfirmable ............................................................7

    II.     The Debtor Cannot Rebut the Allegations Concerning Bad Faith, Gross Mismanagement, and Untimeliness ..........................................................................7

    III.    Best Interest of Creditors and the Estate Are Served by Dismissal .......................10

CONCLUSION.............................................................................................................................11

i

Jared Chassen ("Mr. Chassen") and Arch Real Estate Holdings LLC ("AREH" and together with Mr. Chassen, the "Movants")), by and through their respective undersigned counsel, respectfully submit this reply (the "Reply") in response to the above captioned debtor's objection (the "Objection") dated September 3, 2024 [ECF No. 185] to the Movants' *Motion* (the "Motion")[1] *to Dismiss the Chapter 11 Case for the Debtor's Failure to Comply with its Obligations* dated August 6, 2024 [ECF No. 170] and in further support of the Motion and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      For six months, the Debtor has done nothing to advance this Chapter 11 Case, having conceded that nothing can proceed until the governance issues in the State Court Proceeding are resolved. Then in a desperate response to the Motion on the objection deadline, the Debtor filed a chapter 11 plan along with untimely bare-bones monthly operating reports for May through July and argues the exact opposite position – that this Chapter 11 Case must now proceed down a plan path that ignores the pendency of the governance disputes and finds them in Mr. Simpson's favor on all relevant fronts. Never mind that the plan, purporting to leave all classes unimpaired, evidences no bankruptcy purpose (beyond, perhaps, a release grab). Never mind that the plan relies upon the illegal transfer of interests of non-debtor subsidiaries to the Debtor and assets from subsidiaries for which the Debtor at this late hour has still not provided the information required by Bankruptcy Rule 2015.3. Never mind that plan is patently unconfirmable and that the late-filed MORs show that the Debtor has under $500 on account and no operations. Unconfirmable as it is, the plan comprises the Debtor's latest litigation tactic to allow Mr. Simpson to keep control of the Debtor before the Bankruptcy Court for at least a few more months.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.  Cherry picking from the Motion's least facially offensive assertions, the Debtor responds that certain selected acts were not "illegal" and within the Debtor's rights. Even were this true, it would be only true in isolation with respect to each act. The Debtor forum shopped its way into the Bankruptcy Court and has now filed a bad faith plan of liquidation, with no cash to fund it, concessions of impropriety in its April MOR and at the 341 Meeting, and a history of untimely and opaque filings to date. Taken together the pattern is simple: do nothing except that which it takes to keep this case in bankruptcy and keep the corporate governance issues away from the State Court Proceeding. This tactic should be recognized for what it is and the Court should overrule the Objection and grant the Motion.

## **REPLY**

**I.    The Chapter 11 Plan Is a Bad Faith Farce That Cannot Save the Chapter 11 Case**

3.  Throughout the Chapter 11 Case, the Debtor has taken the position that the case cannot move forward until the control issues that are subject to the State Court Proceeding are resolved. *See Memorandum Opinion and Order and Findings Of Fact And Conclusions of Law, On Jared Chassen and Arch Real Estate Holdings LLCs Joint Motion to Remand Based on Lack of Jurisdiction or, in the Alternative, Principles of Abstention or Equity*, [ECF No. 131] at 26 (the "Remand Order") (noting "where proposed Debtor's counsel agrees that reorganization 'will be virtually impossible because [the Debtor] can't move forward with anything until the questions that the state court action [raises] are dealt with.'"). This Court agreed:

> Put differently, until questions relating to the Debtor's governance are answered under New York law, this bankruptcy cannot proceed. The same would be true regardless of whether those questions were resolved by this Court or by Justice Cohen, the latter of whom already possesses an intimate familiarity with the State Court Proceeding and the Interim Orders issued therein.

*Id.* at 26.

2

12622264-1

4. Yet, on the objection deadline to this Motion, September 3, 2024, the Debtor filed a combined chapter 11 plan and disclosure statement [ECF No. 184] (the "Plan").[2] The Objection heavily relies on the Plan to overcome the Motion.[3] A Plan that ignores this Court's Remand Order by simply presuming the results of the State Court Proceeding in favor of Mr. Simpson.

**A.     The Plan Presupposes the Results of the State Court Proceeding in Mr. Simpson's Favor**

5. The Plan is premised as an ordinary liquidating plan that will lead to dissolution of the Debtor in or outside of bankruptcy. Plan at 7-8, 31. In its description of the Debtor's management, it sidelines Mr. Chassen's management role by citing as fact its disputed litigation position in the State Court Proceeding, notwithstanding the contrary holdings of the Existing State Court Orders. Plan at 17.

6. The "liquidation" upon which the Plan is premised, relies upon "amounts generated from the sale of certain or all of the Non-Debtor Real Property Assets," which consist of four real properties held by Debtor subsidiaries that are not managed by AREH. Plan at 7, 13. It is further premised upon the assignment of interests in "Portfolio Property Entities" to the Debtor. *Id.* at 7.

7. In short, the Plan looks to bypass the outcome of the State Court Proceeding remanded by this Court on mandatory and, alternatively, permissive grounds that include forum shopping, by allowing Mr. Simpson to control the fate of the Debtor's assets and the subsidiaries it controls, even though such control is barred by the Existing State Court Orders. This end run should not be countenanced. Rather, the filing of a plan that usurps the State Court Proceeding,

---

[2] The Plan is styled as a "Small Business Debtor" plan, despite the Debtor not having taken any position whatsoever consistent with operating as a small business debtor or designating as such pursuant to Bankruptcy Rule 1020. To the extent the Debtor so-designates, the Movants reserve all rights to object.

[3] The Debtor claims that the Plan moots the Debtor's pending exclusivity motion, but that is incorrect for two reasons: First the exclusivity period lapsed because the Debtor did not invoke Local Bankruptcy Rule 9006-2 in filing its exclusivity motion and thus the period was not extended pending determination of the motion. Alternatively, even if the period had been extended pending the motion, unless the plan been accepted by all classes of impaired claims by 180 days after the Petition Date, the exclusivity period has lapsed. 11 U.S.C. § 1121(c).

3

12622264-1

the Existing State Court Orders, and this Court's Remand Order must be rejected as a defense to dismissal.

      **B.    The Plan Relies on the Illegal Assignment of Non-Debtor Property to the Debtor**

8. Apart from sidestepping the State Court Proceeding, the Plan touts Mr. Simpson's intent to engage in unlawful fraudulent transfers to the Debtor in his personal role as managing member of those entities. Specifically, his purported transfer of all property interests of non-debtors to the Debtor as described in the Introduction and Section 3.2 of the Plan would be in violation of the various operating agreements of those entities, a breach of fiduciary duty on the part of Mr. Simpson to the members of those entities, which include Mr. Chassen, his family members, and other investors (but not the Debtor), and above all, a fraudulent transfer under New York's Uniform Voidable Transaction Act ("<u>UVTA</u>"), which, among other things, prohibits such no consideration transfers as fraudulent to creditors when it renders the entity insolvent. *See* DCL §§ 273 and § 274.[4] Consistent with the UVTA, the applicable operating agreements prohibit such asset transfers away from those limited liability companies to the Debtor.

---

[4] Under the UVTA a "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." DCL § 270(c). And a "creditor" is "a person that has a claim." DCL § 270(d). A "debtor" is "a person that is liable on a claim." DCL § 274 protects present creditors and provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." DCL § 273 protects both present and future creditors and provides that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation" where (1) there is "actual intent to hinder, delay or defraud any creditor of the debtor" or (2) the transfer was done "without receiving a reasonably equivalent value in exchange for the transfer" and (a) the remaining assets of the transferor "are unreasonably small" or (b) the debtor should have reasonably believed it would incur debts beyond its ability to pay as they become due.

4

9. The transfer, if consummated, will further expose the Debtor to derivative and direct suit from the members in those entities (who have "claims" to those assets), which include Mr. Chassen and his family members, and will expose the Debtor (and Mr. Simpson) to liability for attorney's fees since such fees are awarded as a matter of right. *See* DCL §§ 276-a (creditor "shall have judgment [of attorney's fees] therefor against the debtor and . . . against any transferee (or person for whose benefit the transfer was made) against whom relief is ordered, in addition to the other relief granted by the judgment.").

10. The Movants reserve all rights to seek relief in that respect.

11. Moreover, this Court cannot overlook that that the Debtor's subsidiary assets upon which the Plan is premised are subject to Bankruptcy Rule 2015.3 reporting. As set forth in the Motion, six months into this case and the Debtor has not yet filed a single Bankruptcy 2015.3 report that would provide insight as to the condition of these subsidiaries.

### C. The Plan Has No Bankruptcy Purpose, as Mr. Simpson Acknowledged

12. The Plan has no class of impaired creditors or interests. The Plan is premised on a simple liquidation and dissolution pursuant to the terms of the Debtor's operating agreement. Plan at 8. The Plan does not contain a discharge. Plan at 42. By purporting to leave all classes unimpaired (regardless of whether a contract is assumed or rejected) the Plan proposes no transactions that require the operation of the Bankruptcy Code, except perhaps with respect for the exculpation provision and the plan releases (see Plan at Sections 8.5 and 8.7), the latter of which could be duplicative of state law in any event to the extent the plan actually leaves a creditor

unimpaired.[5] The Objection discusses saved expenses, but it provides no reason why the sale and dissolution proposed by the Plan cannot be performed outside of bankruptcy.

13. In fact, *after* the Plan was filed, Mr. Simpson acknowledged that the bankruptcy itself has no purpose. *See September 5, 2024 email from Mr. Simpson to Kevin Wiener of AREH*, attached hereto as Exhibit A: "**We've started dissolution** and I don't need **any court order** to tell me anything to the contrary. They are not the owners of this company, I am, **you've been pushed to the sidelines after the exclusivity**, you're nobody as it relates to Arch, absolutely nobody." (emphasis added).

14. Indeed, the only purpose of the Plan (which is the same purpose of this Bankruptcy Case overall) is for Mr. Simpson to remove Mr. Chassen's consent rights. Mr. Simpson already to accomplish this before Judge Cohen in the State Court Proceeding, and his current attempt to surreptitiously end run the Existing State Court Orders must be rejected. In point of fact, Mr. Simpson's email lets Mr. Wiener know:

> Please note **Jared is not relevant** in these conversations. **He has no authority to give any consent** on behalf of the JJ entity for this property or any of the JJ entities. You will also notice the papers that were filed earlier this week, **the JJ dissolution process has commenced so you will be speaking to the dissolution member only and that is me**.

*Id.* (emphasis added).

15. This dissolution process Mr. Simpson alludes to having commenced is in complete disregard for the Existing State Court Orders and Mr. Chassen's consent rights.

16. Mr. Simpson displays that he is unbridled and willing to take any position to maintain control over the Debtor for whatever period he is able.

---

[5] The Plan does contain certain provisions that purport to be Bankruptcy Code or Bankruptcy Rule specific, but these appear to be boilerplate. For example, the securities registration exemptions of Bankruptcy Code section 1145 is not implicated where equity interests are left unimpaired.

6

12622264-1

### D. The Plan Is Patently Unconfirmable

17. Without waiver to any objection to the disclosure statement or confirmation of the Plan, the Plan is unconfirmable for at least the following reasons.

- ***11 U.S.C. § 1124: The Plan does not provide for a basis to leave claims unimpaired.*** The Plan has no mechanism to provide for the payment of contingent liabilities, such as the $32,576,245 in potential contingent liabilities noted in Section 21 of the Plan.

- ***11 U.S.C. § 1129(a)(3): The Plan was not proposed in good faith and by means forbidden by law:*** The Plan is obviously the latest forum shopping attempt to undermine the State Court Proceeding, is premised upon the violation of Existing State Court Orders and the illegal transfer of assets to the Debtor, runs counter to the Remand Opinion and Debtor's litigation position of six months that the Debtor cannot move forward until the State Court Proceeding issues are resolved, relies upon the sale of Debtor subsidiary assets that the Debtor failed to disclose any information about during the pendency of the Chapter 11 Case in violation of Bankruptcy Rule 2015.3, and is completely unnecessary in that it seeks relief that has no bankruptcy purpose beyond forum shopping.

- ***11 U.S.C. § 1129(a)(9): The Plan cannot show administrative claims can be paid in full.*** The Plan projects $300,000 in legal fees for Debtor's current counsel alone and does not show a mechanism to pay administrative claims outside of illegal transactions from subsidiaries whose financial information remains undisclosed.

- ***11 U.S.C. § 1129(a)(11): The Plan is not feasible.*** The Plan is completely speculative concerning both the amount of claims and available assets for distribution on account of claims.

## II. The Debtor Cannot Rebut the Allegations Concerning Bad Faith, Gross Mismanagement, and Untimeliness

18. The Debtor argues that it was entitled to take each of the actions it has taken, and that its conduct did not constitute mismanagement or bad faith. The Debtor further seeks to cure its untimely monthly operating reports, having filed three months-worth on September 3.

19. As set forth in the Motion, Bankruptcy Code section 1112(b) provides for an inexhaustive list of grounds for cause for dismissal. "The list contained in this subsection is not

7

12622264-1

exhaustive, however, and courts are free to consider other factors." *In re Giuliani*, No. 23-12055 (SHL), 2024 WL 3384185, at *4 (Bankr. S.D.N.Y. July 12, 2024).

20. The *Giluiani* case is instructive. The Bankruptcy Court dismissed the case for cause approximately six months in based on the debtor's conduct. The core of the Bankruptcy Court's holding was that the "record in [that] case reflect[ed] Mr. Giuliani's continued failure to meet his reporting obligations and provide the financial transparency required of a debtor in possession." *Id.* at *4.

21. Among the factors in *Giuliani* were failure to timely file complete and accurate schedules. *Id.* at * 5. Each monthly operating report was late-filed and each contained inadequate information. *Id.* The Court noted that the "lack of financial transparency [was] particularly troubling given concerns that Mr. Giuliani has engaged in self-dealing and that he has potential conflicts of interest that would hamper the administration of his bankruptcy case."

22. Here the comparisons to *Giuliani* are clear. First, the conflicts of interest are apparent and the allegations of self-dealing are not sufficiently rebutted. Every step the Debtor has taken to date is a step that advances Mr. Simpson's own litigation position. As discussed in the Motion (but *not in the* Objection), the April MOR reports $10,750 of a subsidiary of the Debtor's cash passing through the Debtor to YJ Simco LLC, an entity controlled by Mr. Simpson. Motion at 6. At the 341 Meeting, Mr. Simpson indicated that he determined that he has the right to take funds in satisfaction of undocumented loans he purports to have previously made to the subsidiaries. *Id.* at 6 (citing 341 Meeting Trans. at 44-53).

23. The June 341 Meeting was the last anyone heard from the Debtor on these matters. Regarding these non-debtor subsidiaries, the Debtor has not filed any reports concerning the "value, operations, and profitability" of the reports, in violation of Bankruptcy Rule 2015.3. These

8

reports were due on April 1, 2024 and they concern the very subsidiaries that the Debtor is now claiming will provide the consideration necessary to confirm a plan and leave all classes unimpaired. Yet the Debtor does not respond. The Objection is silent as to the absence of these reports.

24. On September 3, 2024, the Debtor filed its monthly operating reports for May, June, and July. Each were late, the May MOR by three months. They provide no information concerning the Debtor other than $478 sitting in its account. Each concedes that the Debtor has not paid its quarterly trustee fees. None attach any supporting documentation. There is no statement of disbursements; no aging; no statement of capital assets; and no bank statements. These very concerns were also addressed by the Subchapter V Trustee's Third Status Report dated September 5, 2024 [Dkt. No. 186] (the "Third Status Report").

25. The nature of "$0s" across the board on the MORs without any financial records attached, combined with the lack of required Rule 2015.3 disclosure, Mr. Simpson's previous reported use of the Debtor as a pass-through from non-debtor subsidiaries to himself, and his contention that he can pay himself from non-Debtor subsidiaries, and his belligerence at the 341 Meeting discussed in the Motion, make clear that we have in this case the same issue in *Giuliani*: a self-dealing debtor with a conflict of interest who has remained as opaque as possible.[6]

26. The fact is when it comes to his bankruptcy obligations, the Debtor has evaded them as much as possible, and when pressed, only performed certain of those obligations and even there, insufficiently. All other actions, including filing of the Plan, have been to pursue Mr. Simpson's own interests. This is a bad faith debtor who filed for the purpose of forum shopping

---

[6] The Debtor argues that it hasn't been able to fully complete schedules because AREH has not provided the Debtor complete documents within its control. AREH disputes these allegations. In any event, these allegations do not address the Debtor's lack of transparency concerning the non-AREH related subsidiaries, the Debtor's post-petition activities concerning same, or the bare bones monthly operating reports that exclude banking information.

9

12622264-1

(*Remand Order* at 27-35) and has grossly mismanaged the case for his own benefit This is a Debtor who, according to the Third Status Report, never escrowed fees for the Subchapter V Trustee and has not timely paid the Subchapter V Trustee pursuant to the Court's orders. He is on record through his September 5 email attached as Exhibit A with his view that he will obtain the dissolution provided for in the Plan with or without this Court's orders. For these reasons, Movants have shown cause for dismissal, which has not been rebutted by the Debtor.

### III.  Best Interest of Creditors and the Estate Are Served by Dismissal

27.  Dismissal is in the best interest of the creditors and the estate and the Debtor cannot show otherwise. To the extent the Debtor can legally tap into the assets of the non-debtor subsidiaries in a manner sufficient to leave creditors unimpaired and conduct a dissolution under the Debtor's operating agreement, there is no bankruptcy purpose to do so, as those are state law matters to which the Bankruptcy Code affords no extra protection. Without any bankruptcy purpose, the cost and expense of continuing under bankruptcy, which, *inter alia*, will involve administrative costs including U.S. Trustee fees on distributions which have not been paid to date, makes no sense.

28.  The Debtor's contention that dismissal moots its "appellate rights" concerning the Remand Order makes the case *both* (i) for dismissal for cause generally and that (ii) dismissal is in the best interest of creditors. First, they are not "appellate rights," but rather the right to have the District Court hear its "objections"[7] to the proposed findings in the Remand Order. Second, it should be remembered that the Debtor both *consented* to the Bankruptcy Court's entry of non-core final orders *and argued* that the State Court Proceeding was core. It is only because the Movants

---

[7] The "objections" were essentially a bad faith re-hash of the Debtor's brief on the remand motion and not tailored as required by Bankruptcy Rule 9034.

10

12622264-1

did not consent to the entry of non-core final orders and this Court found the matter to be non-core that the Debtor even had an opportunity to object to the proposed findings.

29.     That opportunity allowed Debtor to yet again game the system.[8] The matter has now been fully submitted to the District Court for two months and the Debtor continues to survive on its forum shopping. Theoretically, had this Court agreed with the Debtor that the matter was core, but otherwise ruled as it did in the Movant's favor on permissive abstention, the proceeding would have been remanded three months ago, and the Debtor would have needed to obtain a stay pending appeal to avoid returning to state court. But the "objections" to this Court's thorough and well-reasoned ruling fortuitously bought the Debtor at least three more months.

30.     Third, to whose benefit does the so-called "appellate-right" inure? Not to any creditor because there is no bankruptcy purpose. Instead, its pursuit just added to the cost of administration. It inures to Mr. Simpson's benefit alone and simply because it keeps him in control for a bit longer, and aids in his personal state court litigation strategy. There is no benefit of bankruptcy that inures to the benefit of the Debtor or its creditors.

## **CONCLUSION**

WHEREFORE, Movants respectfully request that this Court overrule the Objection and grant the Motion, and grant the Movants such other relief as is just and proper.

---

[8] The Debtor has also appealed this Court's June 10, 2024 order concerning the lift stay motions [ECF. No. 132]. To further game the system, in that case, the Debtor filed a letter seeking to extend the briefing schedule pending the determination of the Remand Order and *also* this Motion. *See* August 26 Letter, attached as *Exhibit B* hereto.

Dated: September 6, 2024

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**

*/s/ Sean C. Southard*
Sean C. Southard
Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
ssouthard@klestadt.com
bscott@klestadt.com

-and-

**SCHWARTZ LAW PLLC**
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, New York 10038
347-460-5379
allen@allenschwartzlaw.com

*Counsel for Jared Chassen*

-and-

**OLSHAN FROME WOLOSKY LLP**

*/s/ Jonathan T. Koevary*
Adam H. Friedman
Jonathan T. Koevary
Katherine Mateo
1325 Avenue of the Americas
New York, NY 10019
212.452.2300
afriedman@olshanlaw.com
jkoevary@olshanlaw.com

*Counsel for Arch Real Estate Holdings LLC*

12

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 6, 2024, a true and correct copy of the foregoing was served on all parties in interest by electronic transmission via the Court's ECF system to all parties authorized to receive electronic notice in this case.

                                     */s/ Jonathan T. Koevary*
                                     Jonathan T. Koevary

12622264-1