# OLSHAN

1325 AVENUE OF THE AMERICAS ▪ NEW YORK, NEW YORK 10019
TELEPHONE: 212.451.2300 ▪ FACSIMILE: 212.451.2222

EMAIL: JKOEVARY@OLSHANLAW.COM
DIRECT DIAL: 212.451.2265

September 19, 2024

**BY ECF**
Hon. John P. Mastando III
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 601
New York, New York 10004-1408

  Re: *In re JJ Arch LLC*, No. 24-10381 (JPM)
    **Response to Debtor's Unauthorized Sur-Reply**

Dear Judge Mastando:

  This office is counsel to Arch Real Estate Holdings LLC. We write on behalf of the Movants to briefly (and not fully) respond to the *Debtor's Response to the Reply in Further Support of Jared Chassen and Arch Real Estate Holding LLC's Joint Motion to Dismiss the Chapter 11 Case* dated September 9, 2024 [Dkt. No. 189] (the "Sur-Reply").

  Movants filed the motion to dismiss [Dkt. No. 170] (the "Motion")[1] on August 6 with an August 29 hearing date;[2] adjourned initially at the Debtor's request to September 10. Movants did not condition their agreement to adjourn on maintaining the original August 22 objection deadline. Rather, they re-noticed the hearing with a September 3 deadline, providing the Debtor a full 28 days to object.[3] Had the Debtor wanted to sur-reply, there was ample opportunity to attempt to negotiate a briefing schedule accordingly or otherwise seek leave to do so. Instead, the Sur-Reply was filed without authorization on the afternoon prior to the then-scheduled hearing on the Motion, fewer than 15 minutes prior to Chambers' communication that the hearing would be adjourned.

  The Sur-Reply and its accompanying declarations should be stricken in their entirety as unauthorized. *See, e.g., In re TPG Troy, LLC*, No. 12-14965, 2013 WL 3789344, at *3 (Bankr. S.D.N.Y. July 18, 2013) (Court struck sur-reply and accompanying declarations where filer "never asked either the [opposing party] or the Court for permission to file a sur-reply in the many rounds of negotiations surrounding the scheduling orders"). Movants disclaim any obligation to respond to the Sur-Reply in writing and will respond as necessary at the hearing.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[2] At the time of filing of the Motion, the Debtor had already noticed August 29 as the hearing date for its pending exclusivity motion.
[3] In the discussion over the Debtor's adjournment request, the Debtor never raised its intention to file a plan on the revised September 3 objection deadline or its intention to rely on the filing of a plan in support of its objection.

OLSHAN FROME WOLOSKY LLP      WWW.OLSHANLAW.COM

12642588-1

**September 19, 2024**
Page 2

However, Movants believe it appropriate to make a few responsive points herein.

First, the Debtor emphasizes in both the Objection and Sur-Reply that the Movants are essentially collaterally attacking the plan through the Motion, and that "[r]egardless of the merits of these objections" they are inappropriately addressed as part of a dismissal motion. This assertion is nothing but convenient nonsense. The filing of the plan on the objection deadline is the Debtor's key defense to the Motion. That the plan amounts to an illegal house of cards meant to buy the Debtor yet another two to three months in chapter 11 is relevant and fair game in reply when the Debtor's objection is premised upon the filing of a plan together with its objection.

Second, although there is no bankruptcy purpose, the Sur-Reply invents a new one: the need for the automatic stay. To protect what? In the Debtor's own words in the Sur-Reply, the plan is premised on the "sale of Non-Debtor Real Property." All of the Debtor's late-filed MORs show essentially no assets of the estate other than LLC interests in certain entities and management oversight rights in entities managed by AREH. If the Plan is premised on non-Debtor assets, no automatic stay is needed.

Third, as to use of assets themselves, the Movants disagree that the operating agreements allow for such transfer. Set aside the obvious breach of fiduciary duty and fraudulent transfer issues, the applicable operating agreements *do not* allow for the transfer of interests. Without limitation, the ARCH Nostrand MM LLC agreement cited in the Sur-Reply is a case in point. Section 8.2 therein provides terms in which transfers may occur, but the Debtor does not state which category would allow for transfer to the Debtor. Among other things, the Debtor also ignores Section 8.3(iii), which prohibits transfers that would violate, "federal, state or local laws," meaning, *inter alia*, the Debtor cannot make a transfer that would be a breach of fiduciary duty or a fraudulent transfer. The Debtor cannot explain what consideration it intends to advance to the actual LLC Members for any transfer upon which its plan is premised.

Finally, the Sur-Reply must be noted for what it does not rebut, including: (i) that Mr. Simpson sent a September 5 email providing that "we've started dissolution and I don't need any court order to tell me anything to the contrary," (ii) that the filing of the plan constitutes an about-face of the Debtor's previous position that nothing can happen until the corporate governance issues are resolved; (iii) that Mr. Simpson used the Debtor as a pass through to pay funds to YJ Simco LLC; (iv) that the Debtor has never filed a Rule 2015.3 Statement for subsidiaries upon which its plan in part relies; (v) any of the bullet points explaining why the plan is patently unconfirmable (beyond claiming not relevant to the Motion); and (vi) Mr. Simpson's contention that he can pay himself from the non-Debtor subsidiaries.

Respectfully submitted,

/s/ Jonathan T. Koevary
Jonathan T. Koevary

12642588-1