**OLSHAN**

1325 AVENUE OF THE AMERICAS ▪ NEW YORK, NEW YORK 10019
TELEPHONE: 212.451.2300 ▪ FACSIMILE: 212.451.2222

EMAIL: JKOEVARY@OLSHANLAW.COM
DIRECT DIAL: 212.451.2265

September 30, 2024

**BY ECF**
Hon. John P. Mastando III
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 601
New York, New York 10004-1408

Re:   *In re JJ Arch LLC*, No. 24-10381 (JPM)
      **Response to Debtor's Letter Request for Mediation**

Dear Judge Mastando:

This office is counsel to Arch Real Estate Holdings LLC ("AREH"). I write this on behalf of AREH, supported by Mr. Jared Chassen ("Mr. Chassen"), and 608941 NJ Inc. ("Oak" and together with AREH and Mr. Chassen, the "Respondents") in response to the Debtor's *Letter Request for Mediation* (the "Mediation Letter") dated September 26, 2024 [Dkt. No. 203]. For the avoidance of doubt, the Respondents object to compelled mediation.

This Court issued only one directive at the September 25 hearing: in light of the Debtor's attempted withdrawal of its exclusivity motion for the first time at the hearing, the Court directed the Debtor to file a written notice of withdrawal of same. The Debtor has not yet complied with that directive. One day after the hearing, however, the Debtor did muster its resources to file the Mediation Letter.

The Mediation Letter is best understood as a brief in support of what amounts to the Debtor's unnoticed motion to compel mediation, which was made orally on the record on September 25 under the auspices of a status conference. Given the relative detail and authorities cited, it stands to reason that Mediation Letter was prepared in advance of last Wednesday's arguments.

If the Debtor wants to seek an order of this Court to compel mediation over the Respondent's objections, it should try something novel: follow the Fifth Amendment's command of due process, the Bankruptcy Rules, and the Local Rules and arrange for a proper notice, hearing, and an opportunity to object.[1]

---

[1] Should the Debtor want its bar date motion heard, it must properly notice that hearing as well. As of today, no hearing has been noticed. The Respondents will continue to object to proceeding on any issue presented by the Debtor that has not been in accord with applicable notice requirements.

OLSHAN  FROME  WOLOSKY  LLP                                        WWW.OLSHANLAW.COM
12653721-1

September 30, 2024
Page 2

Here, we have the opposite: lying in wait, the Debtor sprung its compelled mediation request as a lead-in to its oral argument on other motions, and then filed its brief on its oral motion one day later. This breach of due process cannot be countenanced.

Nonetheless, we respond briefly, with rights reserved should procedure be followed. As an initial matter, it could not be more clear that Mr. Simpson caused the Debtor to forum shop a litigation into bankruptcy, sees that imminent dismissal is on the table, and now wants to use any remaining bankruptcy tools to coerce Respondents with the hope that several more months' of potential mischief by Mr. Simpson can leverage concessions from Respondents.

The notion that Mr. Simpson comes in good faith is demonstrably insincere. Among the multitude of emails from Mr. Simpson touting his positions, on August 3, 2024, Mr. Simpson sent an email to Kevin Wiener of AREH among others to state that: "I will not stop until Justice is found and candidly I don't even know why Jon [Pasternak] is talking to you about any type of settlement agreement." *See Exhibit A.* There is no reason to believe that Mr. Simpson has had a sudden change of heart.

Bankruptcy tools are reserved for the honest debtor. Set aside Respondents' pending dispute that the Debtor had no authority to file for bankruptcy, that the purpose of bankruptcy was forum shopping, and that after seven months, there is and can be no other demonstrated bankruptcy purpose. *Even* set aside that the Debtor's proposed resolution of this case relies on Mr. Simpson's naked conversion of LLC interests of his fiduciary beneficiaries for the benefit of the Debtor and just focus on one thing: a fundamental problem with the mediation demand is that Mr. Simpson seeks the *benefits* of the chapter 11 filing without Mr. Simpson having adhered to his *burdens.* Debtor's counsel mentioned at the hearing that the Debtor complied with some obligations, but not others. But the Debtor does not get to cherry pick which rules to follow and which it does not. We will not repeat in full the bases for the dismissal motion here, but the Debtor has been in chapter 11 for seven months and has been opaque about its affiliate operations, has still not complied with Rule 2015.3 concerning the subsidiaries controlled by the Debtor (the "Non-Debtor Subsidiary Entities"). These are the very same Non-Debtor Subsidiary Entities that Debtor's counsel argues have material value and that Mr. Simpson intends to cause the Debtor to sell in order to fund the proposed plan, i.e., they are the lynchpin to feasibility.[2] The Debtor has been both habitually late and deficient with its MOR filings. A Debtor who has thumbed its nose at the burdens of bankruptcy should not be entitled to its benefit.

Mr. Simpson is also in continuing violation of a February 7, 2024 Court order that expressly required him to give Mr. Chassen books and records and bank account viewing access for the Non-Debtor Subsidiary Entities. The reason for this lack of transparency concerning the Non-Debtor Subsidiary Entities seems simple enough: Mr. Simpson is in a position to trap and extract value from those Non-Debtor Subsidiary Entities for his personal use, including to fund payments to Debtor's counsel. In this manner, he continues to control these Non-Debtor Subsidiary Entities with no oversight or accountability. While Mr. Simpson continues to sell vehicles at Rever Motors,

---

[2] Setting aside the value to potentially be realized from a sale of the Non-Debtor Subsidiary Entities, the Respondents do not believe that the Debtor's current plan is confirmable for all the reasons stated, including the large disputed unsecured claims that will exist in the event that the Debtor were to proceed with establishing a bar date.

12653721-1

**September 30, 2024**
**Page 3**

an entity owned and operated by the Debtor subsidiaries 1640 Montauk LLC and 1640 Motors LLC, upon information and belief, Mr. Simpson is suspected by Mr. Chassen of continuing to transfer proceeds of these sales to himself or entities in his personal control. He has admittedly transferred some of Rever Motors' income to his entity YJ Simco LLC in insider transfers previously admitted. At the Section 341 Meeting he admitted that his record keeping at the business is "sporadic." There are now multiple foreclosure proceedings concerning the Non-Debtor Subsidiary Entities, including two proceedings filed on September 23, 2024: one in Suffolk County Supreme Court, concerning the property that houses Rever Motors and the other in Kings County Supreme Court, concerning 550 Metropolitan Avenue, in Brooklyn. Notably, these properties were formerly self-supporting and only ceased making debt service payments since the chapter 11 petition, which Mr. Simpson is using as a shield to keep Mr. Chassen—and everyone else—in the dark.

An order compelling mediation would effectively give Mr. Simpson months to worsen the situation for the Respondents and their own constituents, with a benefit to inure exclusively to Mr. Simpson and not even the Debtor or its constituents.

Lastly, there is simply no trust that Mr. Simpson would mediate in good faith or that mediation has even a remote possibility of success.

For these reasons, we object to compelled mediation.

Respectfully submitted,

/s/ Jonathan T. Koevary
Jonathan T. Koevary