# <u>Exhibit A</u>

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

JARED CHASSEN, and 55 MANOR LLC,
individually, and derivatively on
behalf of JJ ARCH NOSTRAND LLC, JJ
HAVERHILL LLC, JJ TUSCALOOSA LLC,
JJ PEBBLE CREEK LLC, JJ CENTRE POINTE LLC,
JJ COLOMBIA LLC, JJ MIDTOWN OAKS LLC,
JJ MYRTLE POINT LLC, JJ 88 ARCH LLC,
JJ CAMBRIDGE LLC, JJ NCSC LLC, JJ CAMELOT
LLC and 5401 CALIFORNIA INVESTORS, LLC


                            Plaintiff,              Index No. _____

            -against-

JEFFREY SIMPSON and YJ SIMCO LLC,

                            Defendants.

JJ ARCH NOSTRAND LLC, JJ
HAVERHILL LLC, JJ TUSCALOOSA LLC,
JJ PEBBLE CREEK LLC, JJ CENTRE POINTE LLC,
JJ COLOMBIA LLC, JJ MIDTOWN OAKS LLC,
JJ MYRTLE POINT LLC, JJ 88 ARCH LLC,
JJ CAMBRIDGE LLC, JJ NCSC LLC, JJ CAMELOT
LLC and 5401 CALIFORNIA INVESTORS, LLC

                            Nominal Defendants

-------------------------------------------------------------------x


**PLANTIFFS' MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION**

24-10381-jpm    Doc 221-1    Filed 10/24/24    Entered 10/24/24 14:19:29    Exhibit Memo
of Law    Pg 3 of 27

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ............................................................................................4

A.    The JJ Arch Corporate Control Litigation ..............................................................4

B.    Simpson Puts JJ Arch into Bankruptcy in Breach of His Fiduciary Duties and Contractual
Obligations and in Violation of Court Orders ................................................................6

C.    Simpson's Improper Removal of the Corporate Control Action to Bankruptcy Court and its
Remand ..........................................................................................................................8

D.    Simpson's Conduct During the JJ Arch Bankruptcy and His Proposed Plan of
Reorganization ..............................................................................................................9

E.    JJ Arch is Not an Owner or Member of the Portfolio Property Entities That Simpson Seeks
to Transfer to JJ Arch for No Consideration ...............................................................11

ARGUMENT ....................................................................................................................11

I.    The Court Should Enjoin Simpson's Insider Transfer of Non-JJ Arch Assets to JJ Arch or to
Simpson or any Entity He Owns or Controls ...............................................................11

A.    Plaintiffs are Likely to Prevail on the Merits .......................................................12

     1.    Plaintiffs are Likely to Prevail in Showing the Transfers are a Breach of Fiduciary
     Duty ....................................................................................................................12

     2.    Plaintiffs are Likely to Prevail in Showing that the Transfers are Fraudulent .............13

     3.    Plaintiffs are Likely to Prevail in Showing that the Transfers Violate the Operating
     Agreements .........................................................................................................14

     B.    The Transfer is Threatened and Imminent, Plaintiffs Face Serious Irreparable Injury, and
     Are Without An Adequate Remedy at Law ............................................................17

     C.    The Equities Favor Plaintiffs Because Plaintiffs Face a Total Loss of their Rights and
     Interests and Merely Seek to Maintain the Status Quo Pending the Outcome of this Action ...19

CONCLUSION ................................................................................................................20

ii

FILED: NEW YORK COUNTY CLERK 09/22/2024 11:01 PM
INDEX NO. 654928/2024
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 09/23/2024

24-10381-jpm    Doc 221-1    Filed 10/24/24    Entered 10/24/24 14:19:29    Exhibit Memo
of Law    Pg 4 of 27

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*214 Knickerbocker LLC v Shou Pan*, 217 A.D.3d 431 (1st Dep't 2023)
..............................................................................................................14

*Abdulla v Gross*, 124 A.D.3d 1255 (4th Dep't 2015)
..............................................................................................................17

*Arthur Young & Co. v Black*, 97 A.D.2d 369 (1st Dep't 1983)
..............................................................................................................19

*Cali v Merrimack Mut. Fire Ins. Co.*, 2006 N.Y. Misc. LEXIS 4115 (Nassau Co. Nov. 30, 2006)
..............................................................................................................17

*Certain Underwriters at Lloyd's, London v Forty Seventh Fifth Co. LLC*, 75 Misc 3d 1232[A] (N.Y. Co. 2022)
..............................................................................................................17

*Ching Nor Yee v Xiudong Chen*, 2023 N.Y. Misc. LEXIS 20814  (Queens Co. Sep. 26, 2023)
..............................................................................................................18, 19

*Congregation Erech Shai Bais Yosef, Inc. v Werzberger*, 189 A.D.3d 1165 (2d Dep't 2020)
..............................................................................................................11

*Elow v Svenningsen*, 58 A.D.3d 674 (2d Dep't 2009)
..............................................................................................................12

*Gartner v Cardio Ventures, LLC*, 121 A.D.3d 609 (1st Dep't 2014)
..............................................................................................................16

*Gso Special Situations Master Fund Lp v Wilmington Trust*, 2015 N.Y. Misc. LEXIS 6334 (N.Y. Co. Oct. 16, 2015)
..............................................................................................................18

*Hollinger Intl., Inc. v Black*, 844 A2d 1022 (Del. Ch. 2004)
..............................................................................................................17

*In re JJ Arch LLC*, 2024 Bankr LEXIS 1349 (Bankr. S.D.N.Y. June 10, 2024)
..............................................................................................................2, 8

*Laffey v Laffey*, 174 A.D.3d 586 (2d Dep't 2019)
..............................................................................................................16

*Manitaras v Beusman*, 56 AD3d 735 (2d Dep't 2008)
..............................................................................................................15

*Massoumi v Ganju*, 204 A.D.3d 571 (1st Dep't 2022)
..............................................................................................................17

*Matter of Eight of Swords, LLC*, 96 A.D.3d 839  (2d Dep't 2012)
..............................................................................................................16

*Matter of Goodwin Law Group P.C. v Zilong Wang*, 226 A.D.3d 537 (1st Dep't 2024)
..............................................................................................................12

*Matter of Madelone*, 2008 NY Slip Op 50258[U] (Albany Co. 2008)
..............................................................................................................19

*Mazzola v County of Suffolk*, 143 A.D.2d 734  (2d Dep't 1988)
..............................................................................................................16

*McLaughlin, Piven, Vogel, Inc. v W. J. Nolan & Co.*, 114 A.D.2d 165 (2d Dep't 1986)
..............................................................................................................18

*Pilipiak v Keyes*, 286 A.D.2d 231 (1st Dep't 2001)

iii

FILED: NEW YORK COUNTY CLERK 09/22/2024 11:01 PM INDEX NO. 654928/2024

NYSCEF DOC. NO. 46 24-10381-jpm Doc 221-1 Filed 10/24/24 Entered 10/24/24 14:19:29 Exhibit Memo RECEIVED NYSCEF: 09/23/2024

of Law Pg 5 of 27

........................................................................................................................................18

*Pokoik v Pokoik*, 115 A.D.3d 428 (1st Dep't 2014)

........................................................................................................................................12

*R&L Well Drilling v Zackman*, 2019 N.Y. Misc. LEXIS 9264 (Suffolk Co. Sep. 19, 2019)

........................................................................................................................................18

*Shefa Trading III, LLC v E.N.Y. Plaza, LLC*, 192 A.D.3d 937, 939 (2d Dep't 2021)

........................................................................................................................................15

*Simpson v First Republic Bank et. al.*, 2024 Bankr. LEXIS 1347 (Bankr. S.D.N.Y. June 10, 2024)

........................................................................................................................................2, 8

*Spivak v Bertrand*, 147 A.D.3d 650 (1st Dep't 2017)

........................................................................................................................................19

*T.F. Demilo Corp. v E.K. Constr. Co.*, 207 A.D.2d 480 (2d Dep't 1994)

........................................................................................................................................18

*Tverskoy v Ramaswami*, 83 A.D.3d 1195  (3d Dep't 2011)

........................................................................................................................................17

*Unique Laundry Corp. v Hudson Park NY LLC*, 55 A.D.3d 382 (1st Dep't 2008)

........................................................................................................................................18

*Vanderminden v Vanderminden*, 226 A.D.2d 1037 (3d Dep't 1996)

........................................................................................................................................19

*Witham v VFinance Invs., Inc.*, 2007 NY Slip Op 52306[U], (N.Y. Co. 2007)

........................................................................................................................................19

*Yemini v Goldberg*, 60 A.D.3d 935 (2d Dep't 2009)

........................................................................................................................................19

**STATUTES**

DCL § 270

........................................................................................................................................13

DCL § 273

........................................................................................................................................3

DCL § 273(a)

........................................................................................................................................13, 14

DCL § 273(b)

........................................................................................................................................14

DCL § 274

........................................................................................................................................3

DCL§ 274(a)

........................................................................................................................................14

Limited Liability Company Law § 402 [d] [2]

........................................................................................................................................15, 17

**TREATISES**

1 Symonds & O'Toole on DE Limited Liability Cos. § 14.07

........................................................................................................................................15

**OTHER AUTHORITIES**

Black's Law Dictionary 594 (9th ed 2009)

iv

.................................................................................................................................17

Merriam Webster's Online Dictionary

.................................................................................................................................16

v

## INTRODUCTION

This emergency motion seeks to enjoin an insider transfer by Jeffrey Simpson ("<u>Simpson</u>") and his entity YJ Simco LLC ("<u>Simco</u>") of all the property belonging to non-debtor entities—the Portfolio Property Entities[1]—to a debtor in bankruptcy, JJ Arch LLC ("<u>JJ Arch</u>" or the "<u>Debtor</u>") for no consideration. While these entities have numerous individual investors, JJ Arch is neither a member nor owner of these entities. The common thread is merely that Simpson is a member of all—and his apparent purpose is to convert for his own personal benefit millions of dollars of equity belonging to third parties, including Chassen and his relatives. Without immediate injunctive relief, Plaintiffs and these other investors stand to see their assets stripped into an entity in bankruptcy that Simpson contends belongs to him alone.

To give some background, on March 7, 2024, Simpson filed a Chapter 11 Bankruptcy Petition (the "<u>Petition</u>") for JJ Arch as purported "sole member" of that entity. Compl. Ex. 1.[2] The Petition was filed in defiance of court orders entered in an action captioned *Simpson v. Chassen*, Index No. 158055/2023 (the "<u>Corporate Control Action</u>"), where Simpson and Jared Chassen ("<u>Chassen</u>") had sued each other asserting, inter alia, that each could terminate the other as a member of JJ Arch for cause. In the Corporate Control Action, the court nullified and enjoined both Simpson and Chassen's purported terminations in August 2023 and enjoined them from unilaterally acting to terminate the other from JJ Arch without prior court permission.

---

[1] The Portfolio Property Entities consist of JJ Arch Nostrand LLC, JJ Haverhill LLC, JJ Tuscaloosa LLC JJ Pebble Creek LLC, JJ Centre Pointe LLC, JJ Colombia LLC, JJ Midtown Oaks LLC, JJ Myrtle Point LLC, JJ 88 Arch  LLC, JJ Cambridge LLC and 5401 California Investors, LLC.

[2] The "Compl." refers to the complaint filed in this action simultaneously with this motion and available at NYSCEF No. 1-44. The Compl. is incorporated herein by reference together with each of the exhibits annexed thereto.

JJ Arch, in turn, is a member of Arch Real Estate Holdings, LLC ("AREH"), a company

that manages a large portfolio of real estate, with JJ Arch acting as managing member until it was

removed from that role by the court by preliminary injunction in the Corporate Control Action in

November 2023 because of Simpson's misconduct. The Court replaced JJ Arch with AREH's

investor member, 608941 NJ LLC ("Oak").

After putting JJ Arch into bankruptcy, Simpson removed the Corporate Control Action to

the Bankruptcy Court. On June 10, 2024, the Bankruptcy Court granted Chassen's motions

seeking to remand the Corporate Control Action and to declare the automatic stay inapplicable to

the claims in the Corporate Control Action. *See Simpson v First Republic Bank et. al.*, 2024

Bankr. LEXIS 1347 (Bankr. S.D.N.Y. June 10, 2024) (the "Remand Decision") (granting remand

motion); *In re JJ Arch LLC*, 2024 Bankr LEXIS 1349 (Bankr. S.D.N.Y. June 10, 2024) (the "Lift-

Stay Decision") (granting lift-stay motion as to all claims in Corporate Control Action).[3]

In remanding the Corporate-Control Action, the Bankruptcy Court expressly found that

Simpson had engaged in improper forum shopping. *See Simpson*, 2024 Bankr. LEXIS 1347, at

*46-47 ("The Court believes that the record recited above establishes . . . the tenth factor—

forum shopping."). Further, in the Lift-Stay Decision, the Bankruptcy Court found that the filing

had adversely affected those to whom Simpson was supposed to act as a fiduciary. *In re JJ Arch

LLC*, 2024 Bankr LEXIS 1349, at *26 (The bankruptcy had improperly "cast doubt on the

applicability of provisional orders intended to benefit *all* parties . . ." ) (emphasis in original).

On September 3, 2024, Simpson filed a proposed Chapter 11 bankruptcy plan for JJ Arch

(the "Plan"), wherein he brazenly asserted that he is in the process of transferring "all the assets"

---

[3] Simpson has challenged those decisions to the United States District Court for the Southern
District of New York, further delaying the remand of the Corporate Control Action.

2

of the Portfolio Property Entities to the Debtor even though these entities are not owned by the Debtor.[4] *See* Compl., Ex. 2. Plan at Introduction; *See also id.* § 3.2. This was the first that Chassen learned of Simpson's plan to steal these entities' assets, with the end goal of distributing these assets to himself at the conclusion of the bankruptcy process.

The threatened transfer of all the property of the Portfolio Property Entities is a blatant breach of fiduciary duty as JJ Arch has no conceivable claim to ownership of the interests— through membership or otherwise—and is offering nothing in exchange for the interests. Such a transfer is also a fraudulent conveyance under the Uniform Voidable Transaction Act ("UVTA") (DCL § 273 and § 274). In addition, these transfers violate the relevant operating agreements.

Chassen recently sought confirmation from Simpson that he would not consummate the transfers. Compl. Ex. 3. JJ Arch's purported counsel informed movants that Simpson had not yet done the transfers but could do so at any time. *Id.* To say that all this is troubling would be an understatement considering Simpson's repeated defiance of court orders and his disregard for his legal and fiduciary obligations. Just recently, Simpson announced that he is unbound by any court orders, writing Kevin Wiener, an Oak principal, that "[w]e've started dissolution [of JJ Arch] and I don't need any court order to tell me to the contrary. They are not the owners of the company, I am, you've been pushed to the sideline after the exclusivity, you're nobody as it relates to Arch, absolutely nobody." Compl., Ex. 4.

Plaintiffs stand to suffer irreparable injury if Simpson and Simco are allowed steal these assets and transfer them to the Debtor, or to Simpson or entities he controls, let alone for no

---

[4] Simpson did not include 5401 California Investors, LLC, JJ NCSC LLC, or JJ Camelot LLC in his list of entities he intended to transfer to JJ Arch and labeled "Portfolio Property Entities" but given his stated plan to transfer entities in which the JJ Arch has no ownership to JJ Arch, Plaintiffs are also seeking relief with respect to these entities.

3

consideration. Accordingly, Plaintiffs bring this emergency motion seeking to enjoin these transfers.

**FACTUAL BACKGROUND**

### A. The JJ Arch Corporate Control Litigation

In early August 2023, both of JJ Arch's members, Simpson and Chassen, sent each other termination notices each claiming that the other committed Cause Events under the JJ Arch Operating Agreement. Chassen Affirm. ¶ 14.[5] With Chassen in control of JJ Arch, on August 15, 2023, Simpson commenced the Corporate Control Action, and sought, inter alia, injunctive relief to restore him to membership and managerial control. Corporate Control Action at NYSCEF No. 1. Chassen, in turn, asserted counterclaims seeking, inter alia, a declaratory judgment removing Simpson from JJ Arch. *Id.* at NYSCEF No. 392.

On August 21, 2023, the Court issued an Order Regarding Interim Operating Procedures which among other things ruled that "the August 2023 instruments sent by Simpson and Chassen to the other purportedly resigning or terminating the other as member or managing member of JJ Arch are hereby void and of no force or effect." *Id.* at NYSCEF No. 36. The court also ordered that during the pendency of the proceeding "the business, affairs, and assets of JJ Arch shall be managed by Simpson, subject to the limitations set forth in Section 3.2 of the JJ Arch Operating Agreement, which provides among other things that any Company Major Decision, as defined in the JJ Arch Operating Agreement, shall be undertaken only with the prior written consent of Chassen." *Id.* One of those Company Major Decisions requiring Chassen's consent was the decision to file bankruptcy. *Id.* at NYSCEF No. 395, Amended JJ Arch Operating Agreement at §

---

[5] The "Chassen Affirm." refers to the affirmation of Jared Chassen submitted in support of this motion. The Chassen Affirm. incorporates the exhibits annexed to the Compl.

4

3.2(b). The Court further directed them to cooperate in good faith in their respective roles. *Id.* at

NYSCEF No. 36.

On September 1, 2023, days after being expressly directed to cooperate in good faith with

Chassen, Simpson did the opposite and again purported to terminate Chassen and shut off his

access to company systems, and his bank account viewing access. Corporate Control Action at

NYSCEF No. 87. On September 15, 2023, the court ordered that Simpson "shall reinstate

Chassen" and that "neither Simpson nor Chassen shall purport to terminate or 'resign' the other

from membership in the company without court permission." *Id.* at NYSCEF No. 86, Sept. 15,

2023 Signed Order to Show Cause. The Court reiterated that its "Order Regarding Interim

Operating Procedures (NYSCEF 36) remains in effect." *Id.*[6]

On October 17, 2023, AREH's investor member, Oak, intervened in the Corporate

Control Action and filed an emergency application seeking to appoint a temporary receiver over

JJ Arch, submitting evidence showing that Simpson had engaged in rampant breaches of

fiduciary duty and misappropriation of assets and detailing the dire state affairs at AREH, with

numerous loans defaulting because of Simpson's misconduct. Corporate Control Action at

NYSCEF Nos. 225-266.

---

[6] On September 29, 2023, the Court granted Simpson's motion to be restored as managing member, in part, and subject to further order of the court, "to the extent set forth in the Court's Interim Order (NYSCEF 36) and Order to Show Cause entered in Mot. Seq. 003 (NYSCEF 86), which shall remain in effect until further Order of the Court." *Id.* at NYSCEF No. 159. Simpson's restoration was on an interim basis only and was expressly premised on his compliance with the terms of the Court's prior orders. On November 22, 2023, the Court granted a preliminary injunction which provided Simpson second termination letter was likewise "void and shall not take effect." *Id.* at NYSCEF No. 419, Nov. 22, 2023 Decision and Order. Further, the court issued a preliminary injunction that barred either "from unilaterally seeking to terminate or force the resignation of the other member without permission of the Court." *Id.*

After Simpson furloughed all of AREH's employees just hours after the court issued an

order requiring him to comply with the AREH operating agreement, Oak delivered JJ Arch a

notice that it was terminating JJ Arch as the managing member of AREH pursuant to Section

7.1.4 of the AREH Operating Agreement for numerous Cause Events by Simpson. *Id.* at

NYSCEF No. 303; *See also id.* at NYSCEF Nos. 296-318. On November 3, 2023, the Court

entered a temporary restraining order that restrained JJ Arch from acting as the managing

member of AREH. *Id.* at NYSCEF No. 321. On November 22, 2023, the Court issued an

Amended Decision and Order which enjoined Simpson and JJ Arch from, among other things,

"[d]enying prompt consent to any Major Decision proposed by Oak as Managing Member

under Section 7.1.3 of the Operating Agreement unless both JJ Arch members (Jeffrey

Simpson and Jared Chassen) jointly agree to deny such consent (or alternatively, either JJ Arch

member may convey consent) . . . *Id.* at NYSCEF No. 418.

Months later, Simpson moved to modify the preliminary injunction removing JJ Arch as

managing member of AREH and for permission to remove Chassen as a member of JJ Arch.

Corporate Control Action at NYSCEF No. 521. The Court denied that portion of the motion

seeking to reinstate JJ Arch as the managing member of AREH pursuant to CPLR 6314 and

set the remainder of the motion for a hearing. *Id.* at NYSCEF No. 605.

**B.** **Simpson Puts JJ Arch into Bankruptcy in Breach of His Fiduciary Duties and Contractual Obligations and in Violation of Court Orders**

After receiving an adverse ruling on his motion to vacate the removal of JJ Arch as

managing member of AREH, on February 12, 2024 Simpson sent an email to the Deputy Chief

Administrative Judge of the New York City Courts attacking the court. Compl. Ex. 5. Special

Counsel to Justice Kaplan responded that "Judge Cohen is a judge of coordinate jurisdiction with

Judge Kaplan and Judge Kaplan cannot interfere with his rulings . . .if your counsel disagrees

with the judge's decision, an application to reargue or appeal might be appropriate." Comp. Ex.

6.

On February 21, 2024, Simpson filed an emergency application to the Appellate Division,

First Department seeking to stay that part of the injunction that allowed Chassen to consent on

behalf of JJ Arch to Major Decisions made by AREH. *See* Appeal No. 2024-01021. After oral

argument and briefing, the application was denied and referred to a "full bench for disposition."

App. Div. NYSCEF No. 9.

On March 6, 2024, the day before he contemptuously put JJ Arch into bankruptcy,

Simpson wrote Kevin Weiner, an Oak principal the following email:

> YOU DON'T KNOW ANYTHING, GO BACK TO CANADA AS YOU ARE
> PLANNING TO DO ANYWAY AFTER YOU ARE FINISHED RUINING THE
> BUSINESS THAT I BUILT. THE GROWN UPS WILL HANDLE IT. YOU
> WILL NEVER BE ALLOWED BACK IN THE US WHEN WE ARE DONE
> WITH THIS NONSENSE. DON'T SEND ME ANYTHING MORE, YOU WILL
> BE PROVEN GUILTY ON ALL RESPECTS – GOOD THAT YOU DUPED ONE
> JUDGE, YOU WON'T DUPE OTHERS. WHAT HAPPENED WITH CARTER?
> YOU DIDN'T LIKE WHAT HE SAID SO YOU WITHDREW? LIKE A
> COWARD THAT YOU ARE. THIS ISNT A VIDEO GAME KEVIN.

Compl. Ex. 7 (emphasis in original).

On March 7, 2024, Simpson filed the Petition as purported "sole member." *See* Compl. Ex.

1. In his List of Equity Security Holders attached to the Petition, Simpson swore that he was the

sole member, even though the court had nullified his purported termination notice, saying that:

> Jared Chassen of 55 Manor Pond Lane, Irvington, NY 10533, previously owned a
> 49% percent membership interest in the Debtor JJ Arch LLC . . . Mr. Chassen was
> deemed to have resigned as a member of JJ Arch as of August 5, 2023, pursuant to
> the definition of 'Resignation' as set forth in the Limited Liability Company
> Agreement of JJ Arch LLC, dated December 11, 2017, as amended and restated on
> May 21, 2021 . . . and Section 7.5 of the Operating Agreement.

Simpson also did not seek or obtain Chassen's consent prior to filing the bankruptcy. Chassen

Affirm. ¶ 29.

FILED: NEW YORK COUNTY CLERK 09/22/2024 11:01 PM        INDEX NO. 654928/2024

NYSCEF DOC. NO. 48        24-10381-jpm    Doc 221-1    Filed 10/24/24    Entered 10/24/24 14:19:29    Exhibit Memo        RECEIVED NYSCEF: 09/23/2024
                                                of Law    Pg 14 of 27

In addition to being in violation of court orders and his contractual and fiduciary obligations, Simpson had no proper bankruptcy purpose for the filing. Simpson listed JJ Arch's aggregate debt as primarily consisting of $128,353.00 to a single law firm that represented Mr. Simpson personally in the Corporate Control Litigation, Adam Leitman Baily, P.C.  Chassen Affirm. ¶ 30. And Simpson did not put any of JJ Arch's Investment Entities into bankruptcy and gave the entities JJ Arch actually owns no bankruptcy protection, allowing foreclosures to proceed unabated. *See, e.g., 146 E. 89 Street Funding LLC v. 146 E 89 Borrower 1 LLC*, Index No. 850010/2024 (N.Y. Co.); Chassen Affirm. ¶ 30.

### C.  Simpson's Improper Removal of the Corporate Control Action to Bankruptcy Court and its Remand

On March 25, 2024, Chassen moved for an order confirming that the automatic stay did not apply to the Corporate Control Action or to lift the automatic stay. Chassen Affirm. ¶ 31. In response, on April 1, 2024, Simpson removed the Corporate Control Action to the Bankruptcy Court, arguing that this mooted the motion to lift the automatic stay. *Id.* Chassen then moved to remand the Corporate Control Action. Chassen Affirm. *Id.*

On June 10, 2024, the Bankruptcy Court granted Chassen's motions. *See Simpson*, 2024 Bankr. LEXIS 1347 (granting remand motion); *In re JJ Arch LLC*, No. 24-10381 (JPM) 2024 Bankr LEXIS 1349 (granting lift-stay motion). Simpson then challenged those decisions to the United States District Court for the Southern District of New York, further delaying the remand of the Corporate Control Action, and achieving his larger purpose of paralyzing AREH, and harming Chassen, his family and others, by prolonging the bankruptcy. Chassen Affirm. ¶ 32.

INDEX NO. 654928/2024
24-10381-jpm    Doc 221-1    Filed 10/24/24    Entered 10/24/24 14:19:29    Exhibit Memo RECEIVED NYSCEF: 09/23/2024
of Law    Pg 15 of 27

**D.**  **Simpson's Conduct During the JJ Arch Bankruptcy and His Proposed Plan of Reorganization**

Simpson has grown even more unhinged during the bankruptcy, turning to wild conspiracy theories that Oak and its principals are behind famous unsolved murders, and known suicides.[7] No longer content with touting the claim that Chassen worked with Oak to remove him for cause, he now says in emails that Chassen is "in cahoots with Michael [Wiener] in 'prostitution, narcotics, straight up collusion.'" Compl., Ex. 9. He calls Kevin Wiener a "lowlife" and tells him Michael Wiener and Chassen are involved in prostitution. *Id.*, Ex. 10. He emails Kevin Wiener telling him he is "loser" who "live[s] by your lonesome self with your videogames," and that "nobody will marry you." *Id.*, Ex. 11. He tells Oak's principals, "you guys are nothing but disgusting pigs . . . thieves and criminals." *Id.*, Ex. 12. He sends unsolicited emails to Chassen and his attorneys addressing them as "Good day group of unethical criminals." *Id.*, Ex. 13. And he flaunts how he is using his control of JJ Arch to prevent Chassen from working at all, telling Chassen that the "only thing else you knew to do was be a male prostitute. Maybe that's what you're going be pursuing now because you're not able to do anything." *See* Ex. 9.

---

[7] In one recent unsolicited email, he tells Kevin and Michael Wiener that "[n]ow I am really troubled that Brandon Miller committed suicide in the last few weeks" and implies that they may be behind it and "there are to many coincidences here. I guess we shall see if there is any connection." Compl. Ex. 8. Brandon Miller was a prominent real estate businessman who committed suicide on July 3, 2024. *See* https://www.ndtv.com/world-news/this-new-york-based-real-estate-mogul-died-with-34-million-in-debt-had-just-8-000-in-bank-6458440. Simpson tells them "there's so many commonalities here it's indisputable and frankly concerning.  We will let the authorities decide if they want to investigate if it has merit. . . it won't go away Kevin it won't unless you try to do something to me like may have happened to Brandon or to the Shorfam family . . ." *Id.* Simpson appears here to be referring to the Sherman family in Toronto, owners of the Sherfam Inc. family fund, whose murder remains unsolved. *See* https://en.wikipedia.org/wiki/Barry_Sherman; Family of murdered billionaire Barry Sherman split by lawsuit over money, National Post, Jan 16, 2024 available at: https://nationalpost.com/news/canada/barry-sherman-family-money-lawsuit

24-10381-jpm   Doc 221-1   Filed 10/24/24   Entered 10/24/24 14:19:29   Exhibit Memo of Law   Pg 16 of 27

He also repeatedly touts how he has "contacted just about every criminal investigation organization that exist between the US, New York and Canada" and has "disclosed to them quite a bit of information in their requests about you guys and Jared and the others who have participated in your criminal activities." *Id.*, Ex. 12. Even JJ Arch's prior purported bankruptcy counsel was forced to withdraw from its representation pursuant to Rule 1.16(c) of the New York Rules of Professional Conduct because Simpson insisted on presenting claims or defenses that it believed unwarranted under the law. *Id.*, Ex. 14. Simpson now openly proclaims he is unbound by court orders, telling Kevin Wiener "We've started dissolution [of JJ Arch] and I don't need any court order to tell me to the contrary. They are not the owners of the company, I am . . ." *Id.*, Ex. 4.

Even at formal proceedings, Simpson has been unable to control himself from hurling abuse. On June 20, 2024, the Office of the United States conducted an initial Section 341 meeting (the "Section 341 Meeting") in the bankruptcy proceeding. At the Section 341 Meeting, both his counsel and Mr. Masumoto, the United States Trustee, had to admonish Simpson for his conduct. *See, eg.*, *id.*, Ex. 15 at 73:23-24, 78:20-25, 80:11 – 81:13.

On September 3, 2024, Simpson filed the Plan, after months of inactivity, that presumed that Chassen was not a member—even after the Bankruptcy Court had remanded this proceeding to the New York County Supreme Court as the appropriate forum to adjudicate their corporate control disputes. Chassen Affirm. ¶ 38.

The Plan openly touted that Simpson was in the process of breaching his fiduciary duties to Chassen, his family members and others by transferring all the assets belonging to various non-JJ Arch owned limited liability corporations that are partners with AREH and Oak (these entities are owned by Chassen, his father, his sister and his brother-in law, and mother (as well as others), but not JJ Arch) to JJ Arch for no consideration. Compl., Ex. 2. Plan at Introduction; *See also id.*

10

§ 3.2. He labels these the "Portfolio Property Entities." *Id.* Simpson is the managing member of those entities, with fiduciary duties to Plaintiffs and the other members, which includes not transferring all of the entities' assets to a debtor in bankruptcy for no consideration or fraudulently conveying their assets to an entity he is trying to dissolve and keep for himself any remaining assets.

### E. JJ Arch is Not an Owner or Member of the Portfolio Property Entities That Simpson Seeks to Transfer to JJ Arch for No Consideration

JJ Arch is not an owner or member of the Portfolio Property Entities. Rather, Chassen, his family, Simpson, and others are members of these entities. *Id.*, Exs. 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 38, 40; Chassen Affirm. ¶¶ 40-42. The operating agreements show that that these entities are owned by numerous individuals, including Plaintiffs. Simpson is thus intending to transfer the assets of these non-debtor entities to a debtor in bankruptcy that he seeks to dissolve, while keeping any remaining assets for himself.

## ARGUMENT

### I. The Court Should Enjoin Simpson's Insider Transfer of Non-JJ Arch Assets to JJ Arch or to Simpson or any Entity He Owns or Controls

"To be entitled to a preliminary injunction, a movant must establish (1) a probability of success on the merits, (2) a danger of irreparable injury in the absence of an injunction, and (3) a balance of the equities in the movant's favor." *Congregation Erech Shai Bais Yosef, Inc. v Werzberger*, 189 A.D.3d 1165, 1166-1167 (2d Dep't 2020)(citations and quotations omitted). "The purpose of a preliminary injunction is to maintain the status quo and prevent the dissipation of property that could render a judgment ineffectual." *Id.* (citations omitted). "The decision as to whether to grant or deny a preliminary injunction rests in the sound discretion of the court

FILED: NEW YORK COUNTY CLERK 09/22/2024 11:01 PM
NYSCEF DOC. NO. 48
24-10381-jpm    Doc 221-1    Filed 10/24/24    Entered 10/24/24 14:19:29    Exhibit Memo
of Law    Pg 18 of 27
INDEX NO. 654928/2024
RECEIVED NYSCEF: 09/23/2024

hearing the motion." *Chana v Machon Chana Women's Inst., Inc.*, 162 A.D.3d 635, 637 (2d Dep't 2018).

### A. Plaintiffs are Likely to Prevail on the Merits

The Portfolio Property Entities' assets belong to numerous investors, not JJ Arch, and Plaintiffs are likely to prevail on their claim for declaratory relief that the transfer to JJ Arch, a debtor in bankruptcy, is a breach of fiduciary duty, a fraudulent conveyance, and violates the relevant operating agreements.

Plaintiffs are also likely to prevail on their claims for a permanent injunction, which requires showing a "violation of a right presently occurring, or threatened and imminent," and that plaintiff has no adequate remedy at law, faces "serious and irreparable injury," and that the equities are "balanced in the plaintiff's favor." *Elow v Svenningsen*, 58 A.D.3d 674, 675 (2d Dep't 2009) (citations and quotations omitted).

### 1. Plaintiffs are Likely to Prevail in Showing the Transfers are a Breach of Fiduciary Duty

As the managing member of the Portfolio Property Entities, Simpson owes the non-managing members fiduciary duties. *Matter of Goodwin Law Group P.C. v Zilong Wang*, 226 A.D.3d 537, 538 (1st Dep't 2024) ("Under Delaware or New York law, the managing member of an LLC owes fiduciary duties to the LLC members.") (citations omitted). "[I]t is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect. This is a sensitive and inflexible rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." *Pokoik v Pokoik*, 115 A.D.3d 428, 429 (1st Dep't 2014) (citations and quotations omitted).

Simpson's no-consideration insider transfer of the assets of the Portfolio Property Entities to an entity in bankruptcy, JJ Arch (an entity Simpson is unilaterally declaring himself to be the only member of), clearly breaches Simpson's fiduciary duties to the members of the Portfolio Property Entities. And an insider transfer of the Portfolio Property Entities' assets into an entity that is in Chapter 11 bankruptcy not only steals the assets from the members, but also makes the assets part of a bankruptcy estate and subject to creditor claims.

> **2. Plaintiffs are Likely to Prevail in Showing that the Transfers are Fraudulent**

The transfers are fraudulent conveyances under the UVTA. Under the UVTA, a "[c]reditor means a person that has a claim," (DCL § 270), and a "[c]laim" is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* at § 270.

DCL § 273(a) protects both present and future creditors, and applies either (1) "where the transfer" was made either "with actual intent to hinder, delay or defraud any creditor of the [transferor]," or was (2) made "without receiving a reasonably equivalent value in exchange for the transfer or obligation" and where the debtor was "about to engage in . . . a transaction for which the remaining assets of the [transferor] were unreasonably small in relation to the business or transaction" or the transfer "reasonably should have believed that the [transferor] would incur[] debts beyond the debtor's ability to pay as they became due." *Id.*

The no-consideration transfer of all the assets of the Portfolio Property Entities violates DCL § 273(a)(2) because the Portfolio Property Entities will be left with no assets. In addition, it appears the Portfolio Property Entities face tax and other liabilities that they will be left unable to

pay. It is certainly reasonable to believe that the Portfolio Property Entities will incur debts and that they will not be able to pay them without any assets or income. Chassen Affirm. ¶ 45.

Simpson's transfer also violates DCL § 273(a)(1). Simpson's actual intent to hinder creditors, especially the members of the Portfolio Property Entities (who are creditors under the UVTA), is established by the so-called badges of fraud, which include that the "transfer or obligation was to an insider," "the transfer was of substantially all the debtor's asset's," and "the value of the consideration was not . . . reasonably equivalent." *Id.* at § 273(b). These and other badges of fraud are present here, as Simpson is transferring all the assets of these entities to JJ Arch, an entity he claims only he owns, and for no consideration. Fraudulent intent can be shown with only three badges of fraud. *214 Knickerbocker LLC v Shou Pan*, 217 A.D.3d 431, 432 (1st Dep't 2023) (affirming grant of summary judgment based on three badges of fraud).

The transfers also violate DCL § 274(a), which protects present creditors, because Simpson is making "the transfer . . .without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." *Id.* The Portfolio Property Entities are not receiving any reasonably equivalent value, and after the transfers, the Portfolio Property Entities will be left insolvent.

### 3. Plaintiffs are Likely to Prevail in Showing that the Transfers Violate the Operating Agreements

The relevant managing member agreements of the entities in which the Portfolio Property Entities are members also prohibit these transfers. These agreements prohibit the transfer of all the Portfolio Property Entities' interests in the managing member entities without the consent of all members, (*see* Compl.*,* Exs. 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41 at Article 8.1),

and prohibit smaller transfers, for example, where such transfers would violate any state or federal law. *Id.* at Article 8.2-8.3.

These transfers also violate the consent rights of the members in the Portfolio Property Entities. For one thing, each of the Operating Agreements requires unanimous consent of all members before "any transaction, agreements or other arrangements on behalf of the Company with the Managing Member or his Affiliates." *Id.,* Exs. 16, 18, 20, 22, 24, 26, 28, 30, 33, 34, 36, 38, 40 at Article 9. "Affiliates" of the Managing Member include entities he controls. *Id.* at Article 12.

Additionally, the JJ NCSC LLC Operating Agreement, the JJ Cambridge LLC Operating Agreement, the JJ Camelot LLC Operating Agreement, and the JJ Midtown Oaks LLC Operating Agreement, (Compl. Exs. 28, 32, 38, 40), do not permit Simpson to transfer all the assets of these entities without member consent, and under settled law, in the absence of such a provision, "Limited Liability Company Law § 402 requir[es], in relevant part, the vote of a majority of the members to approve the sale of 'all or substantially all of the assets of the limited liability company.'" *Shefa Trading III, LLC v E.N.Y. Plaza, LLC*, 192 A.D.3d 937, 939 (2d Dep't 2021) (quoting Limited Liability Company Law § 402 [d] [2]); *Manitaras v Beusman*, 56 A.D.3d 735, 736 (2d Dep't 2008) (holding that where operating agreement is silent on issue of the sale of all assets, the default NY LLC rule applies).[8] In addition, there does not appear to be a signed JJ Myrtle Point LLC operating agreement, (Chassen Affirm. ¶ 49), and where there is no operating,

---

[8] 5401 California Investors LLC, governed by Delaware Law, also precludes transfers to Simpson's affiliates without unanimous consent, and has no provision authorizing Simpson to sell all the assets without the consent of the other members. Compl., Ex. 34. Compl., Ex. 34; *See generally* 1 Symonds & O'Toole on DE Limited Liability Cos. § 14.07 (Delaware law generally requires vote of majority to sell substantially all assets).

the default rules of the LLC Law govern. *See Matter of Eight of Swords, LLC*, 96 A.D.3d 839, 839 (2d Dep't 2012); *Gartner v Cardio Ventures, LLC*, 121 A.D.3d 609, 609 (1st Dep't 2014); *See also Laffey v Laffey*, 174 A.D.3d 586, 589-590 (2d Dep't 2019) (where there is no "corporate document evincing an intent to depart from the general provisions of the Limited Liability Company Law" then the default rule applies that "corporate actions [are] to be approved by a vote of a majority in interest of the members entitled to vote thereon.") (citations omitted).

And even in those agreements which do have an affirmative provision that purports to allow Simpson to "sell, pledge, lease or otherwise transfer all or substantially all of the assets of the Company" without member consent, those provisions do not allow these transfers without at least majority consent because the threatened transfers entail no consideration in exchange, and therefore do not fall within this grant of authority. "It is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." *Mazzola v County of Suffolk*, 143 A.D.2d 734, 735 (2d Dep't 1988). The words "sell," "pledge," and "lease" connote a transactions for consideration. The dictionary defines the term "sell" to mean to "to give up (property) to another for something of value,"[9] the term "pledge" to mean a "bailment of a chattel as security for a debt or other obligation without involving transfer of title,"[10] and the term "lease" to mean "a contract by which one conveys real estate, equipment, or facilities for a specified term and for a specified rent."[11] Each of these terms share a common element of consideration or exchange.

---

[9] Merriam Webster's Online Dictionary, available at: https://www.merriam-webster.com/dictionary/sell

[10] *Id.*, available at: https://www.merriam-webster.com/dictionary/pledge

[11] *Id.*, available at: https://www.merriam-webster.com/dictionary/lease

16

FILED: NEW YORK COUNTY CLERK 09/22/2024 11:01 PM
NYSCEF DOC. NO. 46
24-10381-jpm    Doc 221-1    Filed 10/24/24    Entered 10/24/24 14:19:29    Exhibit Memo
of Law    Pg 23 of 27
INDEX NO. 654928/2024
RECEIVED NYSCEF: 09/23/2024

Under the cannon of ejusdem generis, when a general term follows such specific words, here "or otherwise transfer," the general phrase should be construed as "of the same class." *Abdulla v Gross*, 124 A.D.3d 1255, 1257 (4th Dep't 2015) (quoting Black's Law Dictionary 594 (9th ed 2009); *Cali v Merrimack Mut. Fire Ins. Co.*, 2006 N.Y. Misc. LEXIS 4115, at *15 (Nassau Co. Nov. 30, 2006). That is, "such a catch-all provision following a list of specific items in a statute will generally be interpreted to include only items of the same type as those listed." *Tverskoy v Ramaswami*, 83 A.D.3d 1195, 1197-1198 (3d Dep't 2011). "[I]f all the other words in a series share a particular attribute, the words in the series that require interpretation must be interpreted as sharing that attribute." *Certain Underwriters at Lloyd's, London v Forty Seventh Fifth Co. LLC*, 75 Misc 3d 1232[A], *3 (N.Y. Co. 2022). A "transfer" for no consideration clearly does not share the common attributes of the preceding terms, and the "catch-all" does not include such transfers. Thus, irrespective of his fiduciary obligations and his obligations to creditors, Simpson must first obtain at least the majority consent of the members under NY LLC Law § 402 (d)(2).

Most importantly, even to the extent a transaction does not require consent, that does not mean that Simpson is free to breach his fiduciary duties or engage in fraudulent transfers. He still must abide by his fiduciary obligations and his obligations to present and future creditors under the UVTA. "[I]nequitable action does not become permissible simply because it is legally possible." *Massoumi v Ganju*, 204 A.D.3d 571, 573 (1st Dep't 2022) (qouting *Hollinger Intl., Inc. v Black*, 844 A2d 1022, 1080 (Del. Ch. 2004).

### B. The Transfer is Threatened and Imminent, Plaintiffs Face Serious Irreparable Injury, and Are Without An Adequate Remedy at Law

"Irreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient." *McLaughlin, Piven, Vogel, Inc. v W. J. Nolan & Co.*, 114

17

A.D.2d 165, 174 (2d Dep't 1986). The harm here is both threatened and imminent. *See* Compl.

Exs. 2-3. Further, "there is [][no] adequate remedy at law (i.e. money damages)," (*T.F. Demilo Corp. v E.K. Constr. Co.*, 207 A.D.2d 480, 481 (2d Dep't 1994)), as Plaintiffs have demonstrated

that they are likely to suffer irreparable injury because the Portfolio Property Entities will be

immediately rendered insolvent by the transfers. That is Plaintiffs have "satisfied the irreparable

injury requirement for preliminary injunctive relief by explaining why it would

become insolvent if denied." *Unique Laundry Corp. v Hudson Park NY LLC*, 55 A.D.3d 382,

384 (1st Dep't 2008).  And there is irreparable injury where "the corporation['s] . . . assets were

finite and dwindling." *Pilipiak v Keyes*, 286 A.D.2d 231, 232 (1st Dep't 2001). "A preliminary

injunction may be granted to prevent the defendant from dissipating" assets "in a manner that

could render the final judgment ineffectual." *R&L Well Drilling v Zackman*, 2019 N.Y. Misc.

LEXIS 9264, at *18 (Suffolk Co. Sep. 19, 2019); *Ching Nor Yee v Xiudong Chen*, 2023 N.Y.

Misc. LEXIS 20814, at *6 (Queens Co. Sep. 26, 2023) ("[P]laintiffs allege that assets of the

company are being dissipated, which further constitutes irreparable harm.").

And, in the other direction, where, as here, the assets are being transferred to an entity

already in bankruptcy, Plaintiffs stands to suffer irreparable injury under "[t]he bankruptcy

exception [which] generally applies in cases where a plaintiff may not be able to recover on a

money judgment because the defendant is insolvent or the verge of facing insolvency." *Gso Special Situations Master Fund Lp v Wilmington Trust*, 2015 N.Y. Misc. LEXIS 6334, at *10

(N.Y. Co. Oct. 16, 2015) (Scarpulla, J.). Here, Simpson is purporting to transfer these assets into

an entity already in bankruptcy. Simpson himself is on the verge of insolvency, or already

insolvent, considering the millions of dollars of personal liability he faces in connection with his

wrongdoing at AREH and JJ Arch in the Corporate Control Action.

Further, these membership interests Simpson is transferring "represent[] control of a close corporation and damages would thus not appear to be an adequate remedy for an improper transfer." *Kurtz v Zion*, 61 AD2d 778, 779 (1st Dep't 1978). "[A]n improper transfer would not only cost Petitioner money, but rights in the company." *Witham v VFinance Invs., Inc.*, 2007 NY Slip Op 52306[U], *7 (N.Y. Co. 2007); *Yemini v Goldberg*, 60 A.D.3d 935, 937 (2d Dep't 2009) ("[B]ecause control and management of ANO and its holdings were at stake, money damages were not sufficient."). And the loss of voting or consent rights is itself irreparable injury. *See e.g., Spivak v Bertrand*, 147 A.D.3d 650, 651 (1st Dep't 2017) (holding that there was irreparable injury where plaintiff stands to lose "right to vote on the potential merger with defendant Modus Operandi."). There is irreparable injury where the defendants "seek to upset the status quo by setting in motion a process that would deny [plaintiffs] any role in the management and affairs of the company during the pendency of this action." *Matter of Madelone*, 2008 NY Slip Op 50258[U], *7 (Albany Co. 2008).

And in unique circumstances such as those presented here an injunction may be "proper even if the injury were purely monetary." *Vanderminden v Vanderminden*, 226 A.D.2d 1037, 1041 (3d Dep't 1996); *See also Arthur Young & Co. v Black*, 97 A.D.2d 369, 370 (1st Dep't 1983) ("Although ultimately monetary damages would be compensation to plaintiff, we prefer to maintain a *status quo . . .*").

### C. The Equities Favor Plaintiffs Because Plaintiffs Face a Total Loss of their Rights and Interests and Merely Seek to Maintain the Status Quo Pending the Outcome of this Action

The equities also favor Plaintiffs because "the business and any interest the plaintiffs have in the business [will] be harmed in the absence of an injunction." *Ching Nor Yee*, 2023 N.Y. Misc. LEXIS 20814, at *7. Plaintiffs stand to lose all their property interests without an

injunction, while Defendants will "lose nothing as a result of the preliminary injunction which

has the purpose of maintaining the status quo." *Vanderminden*, 226 A.D.2d at 1042. In addition,

Simpson's unclean hands further shift the equities in Plaintiffs' favor.

## **CONCLUSION**

For the foregoing reasons, the Court should grant this motion in its entirety together with

such other and further relief the Court deems just and proper.

Dated: New York, New York                    SCHWARTZ LAW PLLC
       September 22, 2024


                                       By:__/s/_____
                                           Allen Schwartz, Esq.
                                    150 Broadway, Suite 701
                                    New York, New York
                                    347-460-5379
                                    allen@allenschwartzlaw.com

                                    *Counsel for Plaintiffs*

20

## WORD COUNT CERTIFICATION

Allen Schwartz, Esq., hereby certifies that this memorandum of law contains less than 7000 words, exclusive of the caption, table of contents, table of authorities, and signature block, complies with applicable word limits,  and that I relied on Microsoft Word to determine the word count.

By:_/s/_____
Allen Schwartz, Esq.

21