

200 WEST 41ST STREET
17TH FLOOR
NEW YORK, NY 10036
TELEPHONE (212) 972-3000
TELEFAX (212) 972-2245
WWW.KLESTADT.COM

October 28, 2024

**VIA ECF**
The Honorable John P. Mastando III
United States Bankruptcy Judge
U.S. Bankruptcy Court – SDNY
One Bowling Green
New York, New York 10004

> **Re:**    *In re JJ Arch LLC,* **Chapter 11 Case No. 24-10381 (JPM),**
> ***Simpson, et al. v. Chassen, et al.,* Adv. Pro. No. 24-01335 (JPM) and**
> ***Great American Insurance Company, v. Arch Real Estate Holdings, LLC, et al.,***
> **Adv. Pro. No. 24-04026 (JPM)**

Dear Judge Mastando:

This firm represents Jared Chassen in relation to the above-captioned matters. With reference to this firm's recent correspondence to Your Honor dated October 24, 2024 (the "October 24 Correspondence"), I would like to advise that we inadvertently attached the wrong state court memorandum of law from Mr. Chassen.  Attached hereto as Exhibit A is the memorandum that we intended to reference in the October 24 Correspondence.  Following the filing of our October 24 Correspondence, Justice Cohen further issued the Order attached hereto as Exhibit B declining to issue the order to show cause of Mr. Chassen for the reasons set forth.

Respectfully submitted,

Sean. C. Southard

Enclosures.

Cc (via ECF):  James B. Glucksman
            Jonathan S. Pasternak
            Adam H. Friedman
            Jonathan T. Koevary
            Aishlinn Bottini
            Leslie C. Thorne
            Allen Schwartz

# **Exhibit A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION
-----------------------------------------------------------------------x
JEFFREY SIMPSON, individually and derivatively,
as managing member of JJ ARCH LLC,
suing derivatively as managing member of
ARCH REAL ESTATE HOLDINGS LLC,
and JJ ARCH LLC,

        *Plaintiffs,*                            Index No. 158055/2023

        -against-                        Justice Joel M. Cohen

JARED CHASSEN and FIRST REPUBLIC BANK,

        *Defendants.*
-----------------------------------------------------------------------x
JARED CHASSEN, individually and derivatively
on behalf of JJ ARCH LLC, as member,
and derivatively on behalf of
ARCH REAL ESTATE HOLDINGS LLC,
as member of JJ ARCH,

        *Counterclaim Plaintiff,*

        -against-

JEFFREY SIMPSON and YJ SIMCO LLC,

        *Counterclaim Defendants,*

        -and-

JJ ARCH LLC and
ARCH REAL ESTATE HOLDINGS LLC,

        *Nominal Defendants.*
-----------------------------------------------------------------------x
608941 NJ, INC.,

        *Plaintiff,*

        -against-

JEFFREY SIMPSON, JJ ARCH LLC and ARCH REAL
ESTATE HOLDINGS LLC,

i

FILED: NEW YORK COUNTY CLERK 10/20/2024 08:09 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 642
RECEIVED NYSCEF: 10/20/2024
24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
Pg 4 of 36

*Defendants*,

-and-

ARCH REAL ESTATE HOLDINGS LLC,

*Nominal Defendant.*

------------------------------------------------------------------------x

**JARED CHASSEN'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY
MOTION SEEKING TO MODIFY INJUNCTION AND MOTION SEEKING TO HOLD
JEFFREY SIMPSON IN CONTEMPT**

FILED: NEW YORK COUNTY CLERK 10/20/2024 08:09 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 642
24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
RECEIVED NYSCEF: 10/20/2024
Pg 5 of 36

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ....................................................................................................4

    A.   The Order Restoring Simpson to Interim Managerial Control Was Contingent on Chassen's Rights and Expressly Subject to Further Order of the Court ...................................4

    B.   Simpson Puts JJ Arch into Bankruptcy as Purported "Sole Member" in Contempt of the Court's Orders ................................................................................................................7

    C.   Simpson's Unhinged Conduct During the JJ Arch Bankruptcy and His Proposed Plan of Reorganization ................................................................................................................9

    D.   The Bankruptcy Court Dismisses the Bankruptcy Because Simpson Filed it in Bad Faith and Grossly Mismanaged the Bankruptcy Estate ....................................................................10

    E.   Simpson has Systematically Destroyed JJ Arch and Refused to Comply with Court Orders ..........................................................................................................................11

ARGUMENT ........................................................................................................................12

    I.   The Court Should Vacate or Modify its Preliminary Injunction Restoring Simpson to Managerial Control Because of Compelling and Changed Circumstances that Render his Continued Interim Managerial Control of JJ Arch Inequitable .................................................12

    II.   The Court Should Grant Immediate Relief Because Chassen and JJ Arch Stand to Suffer Irreparable Injury and the Equities Weigh in Chassen's Favor .................................................14

    III.   The Court Should Hold Simpson in Contempt and Enforce its Orders ........................16

        A.   Simpson Took the Wrong Lesson When the Court Previously Exercised its Discretion Not to Hold Him in Contempt .................................................................................................16

        B.   The Court Should Hold Simpson in Civil Contempt Because He Has Routinely Disobeyed Court Orders to Chassen's Prejudice ...................................................................17

        C.   The Court Should Hold Simpson in Criminal Contempt Because Simpson's Disobedience Has Been Willful and Has Damaged the Dignity of the Court ......................20

CONCLUSION .....................................................................................................................22

WORD COUNT CERTIFICATION ......................................................................................23

FILED: NEW YORK COUNTY CLERK 10/20/2024 08:09 PM
NYSCEF DOC. NO. 642

INDEX NO. 158055/2023

RECEIVED NYSCEF: 10/20/2024

24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
Pg 6 of 36

## TABLE OF AUTHORITIES

### CASES

*Ching Nor Yee v. Xiudong Chen*, 2023 N.Y. Misc. LEXIS 20814 (Queens Co. Sep. 26, 2023) .................................................................................................................................................14

*Dept. of Envtl. Protection v. Dept. of Envtl. Conservation*, 70 N.Y.2d 233 (1987) .................................................................................................................................................20

*Gso Special Situations Master Fund Lp v. Wilmington Trust*, 2015 N.Y. Misc. LEXIS 6334 (N.Y. Co. Oct. 16, 2015) .......................................................................................................................................15

*In re JJ Arch LLC*, 2024 Bankr LEXIS 1349 (Bankr. S.D.N.Y. June 10, 2024) .................................................................................................................................................1

*In re JJ Arch LLC*, 2024 Bankr. LEXIS 2505 (Bankr. S.D.N.Y. Oct. 11, 2024) .........................................................................................................................................passim

*Madigan v. Berkeley Capital, LLC*, 205 A.D.3d 900, 906 (2d Dep't 2022) .................................................................................................................................................20

*Matter of DeSiena v. DeSiena*, 167 A.D.3d 1006 (2d Dep't 2018) .................................................................................................................................................20

*Matter of Rankin*, 78 Misc. 3d 337 (Kings Co. 2023) .................................................................................................................................................19

*McCain v. Dinkins*, 84 N.Y.2d 216 (1994) ............................................................................................................................................17, 21

*McCormick v. Axelrod*, 59 N.Y.2d 574 (1983) .................................................................................................................................................21

*McLaughlin, Piven, Vogel, Inc. v. W. J. Nolan & Co.*, 114 A.D.2d 165 (2d Dep't 1986) .................................................................................................................................................14

*Mount Sinai Hosp., Inc. v. Davis*, 8 A.D.2d 361 (1st Dep't 1959) ............................................................................................................................................17, 19

*Newport Tire & Rubber Co. v. Tire & Battery Corp.*, 504 F Supp 143 (E.D.N.Y. 1980) .................................................................................................................................................14

*Pilipiak v. Keyes*, 286 A.D.2d 231 (1st Dep't 2001) .................................................................................................................................................14

*Prudential Sec. Credit Corp., LLC. v. Teevee Toons, Inc.*, No. 603112/02, 2003 WL 346440 (N.Y. Co. Feb. 7, 2003) .................................................................................................................................................16

*R&L Well Drilling v. Zackman*, 2019 N.Y. Misc. LEXIS 9264 (Suffolk Co. Sep. 19, 2019) .................................................................................................................................................14

*Reuschenberg v. Town of Huntington*, 16 A.D.3d 568 (2d Dep't 2005) .................................................................................................................................................14

*Town of Copake v. 13 Lackawanna Props., LLC*, 73 A.D.3d 1308 (3d Dep't 2010) .................................................................................................................................................17

*Wellbilt Equip. Corp. v. Red Eye Grill, L.P.*, 308 A.D.2d 411 (1st Dep't 2003) .................................................................................................................................................12

iv

**STATUTES**

CPLR 6314

..............................................................................................................................2, 12

N.Y. Jud. § 750

...........................................................................................................................20

N.Y. Jud. § 753

...........................................................................................................................17

v

FILED: NEW YORK COUNTY CLERK 10/20/2024 08:09 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 642
RECEIVED NYSCEF: 10/20/2024

24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
Pg 8 of 36

# INTRODUCTION

In March 2024, Jeffrey Simpson contemptuously forum shopped JJ Arch LLC into an unlawful bankruptcy as an escape hatch from this Court. But the change in audience could not mask Simpson's behavior. The Bankruptcy Court found that Simpson grossly mismanaged the bankruptcy estate since the March 2024 filing, caused a substantial diminution to the value of the estate, and filed the bankruptcy in bad faith. *In re JJ Arch LLC*, 2024 Bankr. LEXIS 2505, at *31-53 (Bankr. S.D.N.Y. Oct. 11, 2024) (dismissing bankruptcy) (hereinafter "*JJ Arch II*").[1] Compelling circumstances, changed circumstances, and equity itself now demand the vacatur or modification of the interim—and from the beginning conditional—order restoring Simpson to managerial control of JJ Arch. NYSCEF No. 159.

The order restoring Simpson to interim managerial control was entered over a year ago:

- *before* Simpson caused JJ Arch to be forcibly removed by the Court in November 2023 as managing member of AREH because of his misconduct as managing member of JJ Arch. NYSCEF Nos. 321, 374, 417, 418, 298-318, 356-360, 375-389;

- *before* Simpson contemptuously put JJ Arch into bankruptcy in March 2024 as purported "sole member" in defiance of the very orders from this Court that restored him to managerial control. NYSCEF Nos. 36, 86, 159, 631;

- *before* Simpson caused all JJ Arch Investment Entities to default on their mortgages, with foreclosure proceedings now pending against all but one property and Chassen named as a guarantor defendant in each. *See 146 E. 89 Street Funding LLC v. 146 E 89 Borrower 1 LLC*, Index No. 850010/2024 (N.Y. Co.); *Watermill Capital Holdings LLC v. JJ NY 550 LLC et. al.*, Index No. 525730/2024 (Suffolk Co.); *Watermill Capital Holdings LLC v. 1640 Montauk LLC et. al.*, Index No. 623575/2024 (Suffolk Co.);

---

[1] The Bankruptcy Court's findings follow its June 2024 finding that Simpson engaged in improper forum shopping in removing this proceeding. *See Simpson v. First Republic Bank*, 2024 Bankr. LEXIS 1347 at *41-44 (Bankr S.D.N.Y. June 10, 2024). *See also In re JJ Arch LLC*, 2024 Bankr. LEXIS 1349 (Bankr. S.D.N.Y. June 10, 2024) (granting lift stay motion). Simpson challenged those decisions to the United States District Court, further paralyzing Arch Real Estate Holdings LLC ("AREH") and Chassen.

FILED: NEW YORK COUNTY CLERK 10/20/2024 08:09 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 642
24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
RECEIVED NYSCEF: 10/20/2024
Pg 9 of 36

- *before* Simpson failed to defend foreclosure proceedings on behalf of JJ Arch even when there were viable standing defenses, which were instead successfully asserted by Chassen, leading the lender to withdraw its motion for an order of reference. Chassen Affirm. Exs. 15-18.[2]

- *before* Simpson unleashed a litany of unhinged, threatening emails to Chassen, 608941 NJ LLC ("Oak"), and their counsel, including slanderously implying that's Oak's principals are responsible for unsolved murders and known suicides, and claiming that Oak and Chassen are in "cahoots in prostitution and narcotics." Chassen Affirm. Exs. 19-24, 27;

- *before* Simpson disobeyed even the Court orders that only required that he shed light on his activities at JJ Arch by giving Chassen books and records and bank account viewing access. NYSCEF No. 36, NYSCEF No. 604; Chassen Affirm. Exs. 31-33;

- *before* Simpson admitted to only "sporadic" record-keeping at Rever Motors, though he admits money is coming in and out every day. Chassen Affirm. Ex. 14 at 47:17, 48:9;

- *before* Simpson grossly mismanaged the bankruptcy estate and failed to satisfy his "fiducial obligation" to keep the Court and parties "apprised of the Debtor's business operations" after he filed the bankruptcy in bad faith. *JJ Arch II*, 2024 Bankr. LEXIS 2505, at *31-38; and

- *before* Simpson incurred hundreds of thousands of dollars of legal fees on behalf of JJ Arch that the Bankruptcy Court found "excessive for a debtor without a stream of revenue" and thereby caused "a substantial or continuing loss to or diminution of the estate . . ." *Id.* at *33 (citations and quotations omitted, cleaned up).

It is simply unjust for Simpson to remain in managerial control during the remainder of this litigation, as he is obviously unfit to act as a fiduciary. And this cannot wait. One year after the Court restored him to managerial control by interim order, it can hardly be clearer that JJ Arch is doomed under Simpson. It can hardly be clearer that court orders mean little if anything to Simpson. Without immediate injunctive relief, it is not an overstatement to say that there is no telling what new breach of fiduciary duty Simpson is liable to commit next. With these overwhelming compelling and changed circumstances, what the Court gave Simpson a year ago (interim, conditional managerial control), is within the Court's discretion to modify or take away,

---

[2] The "Chassen Affirm." refers to the affirmation of Jared Chassen submitted herewith.

2

(*see* CPLR 6314), especially when the order restoring Simpson to managerial control was always expressly conditional and subject to "further order from the Court." *See* NYSCEF No. 159 at 1.[3] The Court should modify its injunction so that Chassen is given interim managerial control or should order any other modification that will immediately protect Chassen and JJ Arch from Simpson.

Separately, the Court should also hold Simpson in contempt of the Court's prior orders and enforce those prior orders. Indeed, this Court's observation over a year ago that Simpson appeared inclined to "take every opportunity possible to either get around court orders or further inflame the situation at every turn," (NYSCEF No. 224, Sept. 29, 2023, Hr. Tr. at 50:18-21), was a prescient understatement.

While he has disobeyed every court order, his bankruptcy filing was most egregious of all. The bankruptcy filing has already been adjudged as having been filed in bad-faith, *JJ Arch II*, 2024 Bankr. LEXIS 2505, at *35-53, but beyond the bad-faith, it was also a contempt of this Court. It followed Simpson's ongoing refusal to comply with the Court's orders and was a direct attack on the power and dignity of the Court. It was preceded by an ex parte collateral attack on the Court via email from Simpson to the Honorable Deborah Kaplan and was filed just a day after taunting Oak's principals that he was going to bring this case to another judge, and two days after Chassen's counsel demanded his compliance with court orders or face a contempt motion. Chassen Affirm. Exs. 10-12, 33. And the bankruptcy filing itself, without Chassen's consent, was based on a contemptuous, sworn petition in which Simpson claimed he was the "sole member" of JJ Arch because of the August 2023 termination email that the Court had expressly nullified and enjoined

---

[3] It was also subject to an undertaking Simpson was to post that was never determined. *Id.*

as a very condition of Simpson's own interim restoration. *See* NYSCEF Nos. 36, 86, 159. A contempt order compelling compliance with the prior court orders, awarding Chassen civil contempt damages, and repairing the dignity of this Court with a criminal contempt finding, is long overdue.

## FACTUAL BACKGROUND

### A. The Order Restoring Simpson to Interim Managerial Control Was Contingent on Chassen's Rights and Expressly Subject to Further Order of the Court

In early August 2023, Simpson and Chassen sent each other termination notices under the JJ Arch Operating Agreement. Chassen Affirm., ¶ 7. With Chassen in control of JJ Arch, on August 15, 2023, Simpson commenced this action, and sought, inter alia, injunctive relief to restore him to membership and managerial control. NYSCEF Nos. 1-21. Chassen asserted counterclaims seeking, inter alia, a declaratory judgment removing Simpson from JJ Arch. *Id.* at NYSCEF No. 392.

On August 21, 2023, the Court issued an Order Regarding Interim Operating Procedures which among other things ruled that "the August 2023 instruments sent by Simpson and Chassen to the other purportedly resigning or terminating the other as member or managing member of JJ Arch are hereby void and of no force or effect." NYSCEF No. 36. The Court also ordered that during the pendency of the proceeding "the business, affairs, and assets of JJ Arch shall be managed by Simpson, subject to the limitations set forth in Section 3.2 of the JJ Arch Operating Agreement, which provides among other things that any Company Major Decision, as defined in the JJ Arch Operating Agreement, shall be undertaken only with the prior written consent of Chassen." *Id.* One of those Company Major Decisions requiring Chassen's consent was the decision to file bankruptcy. NYSCEF No. 395, Amended JJ Arch Operating Agreement at § 3.2(b).

24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
Pg 12 of 36

The Court further directed them to cooperate in good faith in their respective roles. NYSCEF No.
36.

On September 1, 2023, days after being expressly directed to cooperate in good faith with
Chassen, Simpson did the opposite and again purported to terminate Chassen and shut off his
access to company systems, and his bank account viewing access. NYSCEF No. 87. On September
15, 2023, the court ordered that Simpson "shall reinstate Chassen" and that "neither Simpson nor
Chassen shall purport to terminate or 'resign' the other from membership in the company without
court permission." NYSCEF No. 86, Sept. 15, 2023 Signed Order to Show Cause. The Court
reiterated that its "Order Regarding Interim Operating Procedures (NYSCEF 36) remains in
effect." Id.[4]

On October 17, 2023, AREH's investor member, Oak, intervened and filed an emergency
application seeking to appoint a temporary receiver over JJ Arch, submitting evidence showing
that Simpson had engaged in rampant breaches of fiduciary duty and misappropriation of assets
and detailing the dire state affairs at AREH, with numerous loans defaulting because of
Simpson's misconduct. NYSCEF Nos. 225-266.

After Simpson furloughed all of AREH's employees just hours after the court issued an
order requiring him to comply with the AREH operating agreement, Oak delivered JJ Arch a notice
that it was terminating JJ Arch as the managing member of AREH pursuant to Section 7.1.4 of the

---

[4] On September 29, 2023, the Court granted Simpson's motion to be restored as managing member,
in part, and subject to further order of the court, "to the extent set forth in the Court's Interim Order
(NYSCEF 36) and Order to Show Cause entered in Mot. Seq. 003 (NYSCEF 86), which shall
remain in effect until further Order of the Court." NYSCEF No. 159. On November 22, 2023, the
Court granted a preliminary injunction which provided Simpson second termination letter was
"void and shall not take effect." NYSCEF No. 419. Further, the court issued a preliminary
injunction that barred either "from unilaterally seeking to terminate or force the resignation of the
other member without permission of the Court." Id.

5

AREH Operating Agreement for numerous Cause Events by Simpson. NYSCEF No. 303; *See also* NYSCEF Nos. 296-318. On November 3, 2023, the Court entered a temporary restraining order that restrained JJ Arch from acting as the managing member of AREH. NYSCEF No. 321. On November 22, 2023, the Court issued an Amended Decision and Order which granted Oak's motion and enjoined Simpson and JJ Arch from denying "prompt consent" to major decision proposed by Oak as the managing member of AREH "unless both JJ Arch members (Jeffrey Simpson and Jared Chassen) jointly agree to deny such consent (or alternatively, either JJ Arch member may convey consent) . . ." NYSCEF No. 418.

Months later, Simpson moved to modify the preliminary injunction removing JJ Arch as managing member of AREH and for permission to remove Chassen as a member of JJ Arch. NYSCEF No. 521. The Court denied that portion of the motion seeking to reinstate JJ Arch as the managing member of AREH and set the other requested relief for a later hearing. NYSCEF No. 605.

Also, on February 7, 2024, this Court issued a TRO which ordered, among other things, that Simpson "ensure and continue to ensure that Chassen is provided with online viewing access for all bank accounts of JJ Arch and the JJ Arch Controlled Entities." NYSCEF No. 604.[5] That TRO prohibited Simpson from selling JJ Arch Investment Entity assets without Chassen's consent. And it also ordered Simpson to "provide and continue to provide Chassen with the JJ Arch and JJ Arch controlled books and records under the process detailed in Article 6 of the JJ Arch Operating Agreement." *Id.*

---

[5] The "JJ Arch Controlled Entities" are "Investment Entities" as defined in the JJ Arch Operating Agreement.

**B. Simpson Puts JJ Arch into Bankruptcy as Purported "Sole Member" in Contempt of the Court's Orders**

After receiving an adverse ruling on his motion to vacate or modify the injunction removing JJ Arch as managing member of AREH, on February 12, 2024 Simpson sent an email to the Deputy Chief Administrative Judge of the New York City Courts attacking the Court. Chassen Affirm., Ex. 10.

On February 21, 2024, Simpson filed an emergency application to the Appellate Division, First Department seeking to stay that part of the injunction that allowed Chassen to consent on behalf of JJ Arch to Major Decisions made by AREH, which was denied after briefing and oral argument and referred to a "full bench for disposition." *See* Appeal No. 2024-01021, NYSCEF No. 9. But rather than wait for the Appellate Division, Simpson decided to further take matters into his own hands and defy the Court.

On March 6, 2024, the day before he put JJ Arch into bankruptcy, Simpson wrote Kevin Wiener, an Oak principal the following email showing his intent to forum shop:

> YOU DON'T KNOW ANYTHING, GO BACK TO CANADA AS YOU ARE PLANNING TO DO ANYWAY AFTER YOU ARE FINISHED RUINING THE BUSINESS THAT I BUILT. THE GROWN UPS WILL HANDLE IT. YOU WILL NEVER BE ALLOWED BACK IN THE US WHEN WE ARE DONE WITH THIS NONSENSE. DON'T SEND ME ANYTHING MORE, YOU WILL BE PROVEN GUILTY ON ALL RESPECTS – GOOD THAT YOU DUPED ONE JUDGE, YOU WON'T DUPE OTHERS. . . LIKE A COWARD THAT YOU ARE. THIS ISNT A VIDEO GAME KEVIN.

Chassen Affirm., Ex. 12. (emphasis in original).

On March 7, 2024, Simpson filed a Petition for Chapter 11 Bankruptcy as purported "sole member" of JJ Arch (the "Petition"). *See* Chassen Affirm., Ex. 13. In his List of Equity Security Holders attached to the Petition, Simpson swore that he was the sole member, even though the Court had nullified his purported termination notice, saying that:

> Jared Chassen of 55 Manor Pond Lane, Irvington, NY 10533, previously owned a 49% percent membership interest in the Debtor JJ Arch LLC . . . Mr. Chassen was deemed to have resigned as a member of JJ Arch as of August 5, 2023, pursuant to the definition of 'Resignation' as set forth in the Limited Liability Company Agreement of JJ Arch LLC, dated December 11, 2017, as amended and restated on May 21, 2021 . . . and Section 7.5 of the Operating Agreement.

*Id.* at List of Equity Security Holders at fn. 1. Simpson also did not seek or obtain Chassen's consent prior to filing the bankruptcy. Chassen Affirm. ¶ 17.

In addition to being in violation of court orders and his contractual and fiduciary obligations, Simpson had no proper bankruptcy purpose for the filing. Simpson listed JJ Arch's aggregate debt as primarily consisting of $128,353.00 to a single law firm that represented Mr. Simpson personally in this action, Adam Leitman Bailey, P.C. Chassen Affirm., Ex. 13 at Form 204.

And Simpson did not put any of JJ Arch's Investment Entities into bankruptcy. The entities JJ Arch owns therefore had no bankruptcy protection, allowing foreclosures to proceed unabated. *See 146 E. 89 Street Funding LLC v. 146 E 89 Borrower 1 LLC*, Index No. 850010/2024 (N.Y. Co.).[6] Since filing the bankruptcy, foreclosures were commenced against all but one of JJ Arch's Investment Entity Properties. *Watermill Capital Holdings LLC v. JJ NY 550 LLC et. al.*, Index No. 525730/2024 (Suffolk Co.); *Watermill Capital Holdings LLC v. 1640 Montauk LLC et. al.*, Index No. 623575/2024 (Suffolk Co.). Chassen is a named guarantor defendant in each foreclosure action.[7]

---

[6] Simpson defaulted on behalf of JJ Arch, but Chassen answered as a guarantor defendant and opposed the motion seeking an order of reference, leading the lender to withdraw the motion. Chassen Affirm. Exs. 15-18.

[7] Upon information and belief, the time to answer the new foreclosure complaints has not lapsed yet as of the date of this filing.

8

FILED: NEW YORK COUNTY CLERK 10/20/2024 08:09 PM   INDEX NO. 158055/2023
NYSCEF DOC. NO. 642   24-10381jpm   Doc 223   Filed 10/28/24   Entered 10/28/24 10:48:41   Main Document   RECEIVED NYSCEF: 10/20/2024

Pg 16 of 36

**C. Simpson's Unhinged Conduct During the JJ Arch Bankruptcy and His Proposed Plan of Reorganization**

Simpson has grown more unhinged after filing the bankruptcy, turning to wild conspiracy theories that Oak and its principals are behind famous unsolved murders, and known suicides.[8] No longer content with the claim that Chassen worked with Oak to remove him for cause, he now says in emails that Chassen is "in cahoots with Michael [Wiener] in 'prostitution, narcotics, straight up collusion.'" Chassen Affirm. Ex. 20. He calls Kevin Wiener a "lowlife" and tells him Michael Wiener and Chassen are involved in prostitution. *Id.*, Ex. 21. He emails Kevin Wiener telling him he is a "loser" who "live[s] by your lonesome self with your videogames," and that "nobody will marry you." *Id.*, Ex. 22. He tells Oak's principals, "you guys are nothing but disgusting pigs . . . thieves and criminals." *Id.*, Ex. 23. He sends unsolicited emails to Chassen and his attorneys addressing them as "Good day group of unethical criminals." *Id.*, Ex. 24. And he flaunts how he is using his control of JJ Arch to prevent Chassen from working at all, telling Chassen that the "only thing else you knew to do was be a male prostitute. Maybe that's what you're going be pursuing now because you're not able to do anything." *Id.*, Ex. 20.

He also touts how he has "contacted just about every criminal investigation organization that exist between the US, New York and Canada" and has "disclosed to them quite a bit of information in their requests about you guys and Jared and the others who have participated in your criminal activities." *Id.*, Ex. 22. Simpson openly proclaims he is unbound by court orders, telling Kevin Wiener "We've started dissolution and I don't need any court order to tell me to the contrary. They are not the owners of the company, I am . . ." *Id.*, Ex. 26.

---

[8] *See* Chassen Affirm. at n.16 (attaching email and detailing Simpson's accusations that Oak is behind unsolved murders and suicides); *id* at. Ex. 19.

Even at formal proceedings, Simpson has been unable to control himself from hurling

abuse. On June 20, 2024, the Office of the United States conducted an initial Section 341 meeting

(the "Section 341 Meeting") in the bankruptcy proceeding. At the Section 341 Meeting, both his

counsel and Mr. Masumoto, the United States Trustee, had to admonish Simpson for his conduct.

*Id.,* Ex. 14 at 73:23-24, 78:20-25, 80:11 – 81:13.

On September 3, 2024, Simpson filed a Proposed Plan of Reorganization (the "Plan") that

openly touted that Simpson was in the process of breaching his fiduciary duties to Chassen, his

family members and others by transferring all the assets belonging to various non-JJ Arch owned

limited liability corporations to JJ Arch for no consideration. *See Chassen et. al. v. Simpson et. al.*,

Index No. 654928/2024 (N.Y. Co.), NYSCEF Nos 1-48. The Court entered a TRO restraining any

such transfer. *Id.* at NYSCEF No. 52.

**D. The Bankruptcy Court Dismisses the Bankruptcy Because Simpson Filed it in Bad
Faith and Grossly Mismanaged the Bankruptcy Estate**

On October 11, 2024, the Bankruptcy Court dismissed the bankruptcy entirely because of

Simpson's bad faith in filing it and his subsequent gross mismanagement of the bankruptcy estate.

*JJ Arch II*, 2024 Bankr. LEXIS 2505, at *35-53. The Bankruptcy Court found that the filing was

"an attempt by Mr. Simpson to avoid the resolution of the governance issues raised in the State

Court Proceeding—a proceeding initiated by Mr. Simpson." *Id.* at *43. Further, "no reasonable

person would have believed reorganization was possible . . ." *Id.* at *47. The Bankruptcy Court

also dismissed the bankruptcy on a finding that there was "gross mismanagement of the estate,"

which included a failure to preserve estate assets, a failure to adequately report operating activities,

and a failure to adequately explain his insider transactions with YJ Simco LLC. *Id.* at *35-38. JJ

Arch's "post-petition lack of income and excessive accrual of expenses—[also] indicate that there

has been 'gross mismanagement of the estate . . . '" *Id.* at *36 (citations omitted). Simpson incurred

10

hundreds of thousands of dollars of legal fees on behalf of JJ Arch that the Bankruptcy Court found "excessive for a debtor without a stream of revenue" and thereby caused "a substantial or continuing loss to or diminution of the estate . . ." *Id.* at *33 (citations and quotations omitted, cleaned up).

### E. Simpson has Systematically Destroyed JJ Arch and Refused to Comply with Court Orders

Simpson has been completely derelict in his management of JJ Arch. Every single Investment Entity mortgage is in default, with all but one the subject of pending foreclosure proceedings. Chassen Affirm. ¶ 19. At the June 20, 2024 Section 341 Meeting, when asked about the income of JJ NY 550 LLC, 225 HPR LLC, and 1640 Montauk LLC, Simpson testified that "they're all vacant at this point" and they have "practically no activity." Chassen Affirm., Ex. 14 at 49:2-7. He boasted that though the Head of Pond property owned by 225 HPR LLC had been earning income through "unauthorized Airbnb leasing, which had been conducted by Mr. Chassen after I've asked him not to," "[i]t finally stopped recently" so that it too was now generating no income. *Id.* at 49:23-50:5. The only business with financial activity, Mr. Simpson testified, was Rever Motors, with "money in and out every day," but its bookkeeping was, like every business managed by Simpson, "sporadic." *Id.* at 47:17, 48:9. He admitted taking funds from Rever Motors to reimburse himself for purported loans. *Id.* at 52:16. And as to JJ Arch, Simpson testified that it had no income. *Id.* at 38:11-39:24. Chassen has learned that Simpson even pocketed withheld employee payroll taxes at Rever Motors. Chassen Affirm. Ex. 29. And the IRS is now demanding payment of those payroll taxes from Chassen, as a member of JJ Arch, though Chassen did not manage Rever Motors and had little involvement in running it. Chassen Affirm. ¶ 30.

Simpson has also refused to give Chassen account viewing access, and books and records, while selling assets without seeking Chassen's consent. Chassen Affirm. ¶¶ 28-35, 45. He has

continued to disobey the Court's orders, with the Court's interim orders remaining in effect throughout the bankruptcy because "under Bankruptcy 9027(i), Justice Cohen's Interim Orders apply wholesale to this bankruptcy." *JJ Arch II*, 2024 Bankr LEXIS 2505, at *36, n 36.

## ARGUMENT

**I.    The Court Should Vacate or Modify its Preliminary Injunction Restoring Simpson to Managerial Control Because of Compelling and Changed Circumstances that Render his Continued Interim Managerial Control of JJ Arch Inequitable**

"A motion to vacate [or modify] a preliminary injunction [under CPLR 6314] is addressed to the sound discretion of the court and may be granted either upon compelling or changed circumstances that render continuation of the injunction inequitable." *Wellbilt Equip. Corp. v. Red Eye Grill, L.P.*, 308 A.D.2d 411, 411 (1st Dep't 2003). Simpson's conduct since his interim restoration—exemplified by the Bankruptcy Court's findings of bad faith, gross mismanagement and substantial diminution—and JJ Arch's dire condition are compelling and changed circumstances that render his continued managerial control inequitable. Among other things, since the Court entered the injunction restoring Simpson to managerial control:

- Simpson caused JJ Arch to be removed as managing member of AREH because of his malfeasance. NYSCEF Nos. 321, 374, 417, 418, 298-318, 356-360, 375-389.

- Simpson used a bad-faith, contemptuous bankruptcy filing in March 2024 as purported "sole member" to paralyze AREH and then worked to strip JJ Arch—and other entities not owned by JJ Arch—of their assets. *See* Chassen Affirm. Exs. 13, 34; *See also Chassen et. al. v. Simpson et. al.*, Index No. 654928/2024 (N.Y. Co.), NYSCEF Nos 1-48.

- Simpson caused JJ Arch's Investment Entities to default on their loans, with all but one in foreclosure (and with Chassen named as a guarantor-defendant in each), and then failed to defend foreclosure proceedings, left properties completely vacant, sold assets without seeking Chassen's consent, and admitted to "sporadic" record-keeping. *See 146 E. 89 Street Funding LLC v. 146 E 89 Borrower 1 LLC*, Index No. 850010/2024 (N.Y. Co.); *Watermill Capital Holdings LLC v. JJ NY 550 LLC et. al.*, Index No. 623575/2024 (Suffolk Co.); *Watermill Capital Holdings LLC v.*

*1640 Montauk LLC et. al.*, Index No. 623575/2024 (Suffolk Co.); Chassen Affirm. Exs. 14-18, 30.

- Simpson disregarded court orders requiring him to give Chassen viewing access to bank accounts and books and records, leaving Chassen in the dark as to what he is doing with the finances of JJ Arch and its Investment Entities. Chassen Affirm. ¶¶ 28-35, 46.

- Simpson grossly mismanaged the bankruptcy estate since March 2024, when he filed the bankruptcy in bad faith. *JJ Arch II*, 2024 Bankr. LEXIS 2505, at *31-53.

And beyond his gross mismanagement and wrongdoing, Simpson has shown that he will not comply with Court orders—indeed, there has been practically no order that Simpson has obeyed:

- Simpson immediately disobeyed the August 22, 2023 Interim Order that barred him from removing Chassen's bank account viewing access without court permission, and that directed him to seek Chassen's consent for major decisions. Simpson blocked Chassen's account viewing access without court permission and purported to again terminate Chassen within days of the order. *See* infra at p. 16-17.

- Simpson immediately furloughed all of AREH's employees within hours of being directed to comply with the AREH Operating Agreement. NYSCEF No. 295; NYSCEF No. 298 at ¶ 10.

- Simpson immediately disobeyed the November 22, 2024 order that barred him from interfering with Oak's management of AREH, or withholding consent to Major Decisions by AREH unless Chassen also withheld consent. NYSCEF No. 418. He routinely withheld consent and interfered with Oak's management of AREH, culminating in the ultimate interference by filing the bad faith bankruptcy. NYSCEF No. 562 at ¶¶ 45-52; NYSCEF No. 631.

- Simpson immediately disobeyed the February 7, 2024 TRO that mandated that he provide bank account viewing access to newly opened accounts and books and records, and that he seek Chassen's consent before selling assets. NYSCEF No. 605. Instead, he has steadfastly refused to provide books and records, account viewing access, and or to seek Chassen's consent for any asset sales. Chassen Affirm. ¶¶ 28-35, 46.

Each of Simpson's post-restoration breaches of fiduciary duty and misconduct is a sufficient compelling and changed circumstances to independently warrant vacatur or

modification. And these cannot be dismissed by Simpson as mere "allegations": not only did this Court remove JJ Arch as managing member of AREH because of Simpson's misconduct in November 2023, (NYSCEF No. 418), but the Bankruptcy Court expressly found that his bankruptcy filing was in bad faith, *JJ Arch II*, 2024 Bankr. LEXIS 2505, at \*38-52, that his removal of this proceeding an act of improper forum shopping, *Simpson*, 2024 Bankr. LEXIS 1347 at \*41-44, and that his conduct after the bankruptcy filing amounted to gross mismanagement. *JJ Arch II*, 2024 Bankr. LEXIS 2505, at \*31-37. And when Simpson's conduct is viewed in combination with his unhinged communications, his unfitness to act as a fiduciary is simply irrefutable. These circumstances are compelling and changed and render Simpson's continued interim restoration to managerial control inequitable.

## II.    The Court Should Grant Immediate Relief Because Chassen and JJ Arch Stand to Suffer Irreparable Injury and the Equities Weigh in Chassen's Favor

"Irreparable injury, for purposes of equity, has been held to mean any injury for which money damages are insufficient." *McLaughlin, Piven, Vogel, Inc. v. W. J. Nolan & Co.*, 114 A.D.2d 165, 174 (2d Dep't 1986). "Irreparable injury exists where the defendant's act[s] threatens to destroy an ongoing business concern." *Reuschenberg v. Town of Huntington*, 16 A.D.3d 568, 570 (2d Dep't 2005) (citing *Newport Tire & Rubber Co. v. Tire & Battery Corp.*, 504 F Supp 143, 149 (E.D.N.Y. 1980)). There is clearly irreparable injury where "the corporation['s] . . . assets were finite and dwindling." *Pilipiak v. Keyes*, 286 A.D.2d 231, 232 (1st Dep't 2001). "A preliminary injunction may be granted to prevent the defendant from dissipating" assets "in a manner that could render the final judgment ineffectual." *R&L Well Drilling v. Zackman*, 2019 N.Y. Misc. LEXIS 9264, at \*18 (Suffolk Co. Sep. 19, 2019); *Ching Nor Yee v. Xiudong Chen*, 2023 N.Y. Misc. LEXIS 20814, at \*6 (Queens Co. Sep. 26, 2023) ("[P]laintiffs allege that assets of the company are being dissipated, which further constitutes irreparable harm.").

14

And where the wrongdoer, here Simpson, is himself on the verge of insolvency such that any recovery from him is nil, Plaintiff stands to suffer irreparable injury under "[t]he bankruptcy exception [which] generally applies in cases where a plaintiff may not be able to recover on a money judgment because the defendant is insolvent or the verge of facing insolvency." *Gso Special Situations Master Fund Lp v. Wilmington Trust*, 2015 N.Y. Misc. LEXIS 6334, at *10 (N.Y. Co. Oct. 16, 2015) (Scarpulla, J.).

Without an immediate TRO, Chassen and JJ Arch stand to suffer irreparable injury, as Simpson has shown that he will not obey Court orders, or comply with fiduciary obligations or Chassen's consent and other rights, and he has not only led AREH to the brink of destruction, warranting JJ Arch's removal as managing member of that entity, but he has also done the same to JJ Arch, with every asset now in default. Absent an immediate modification and temporary restraining order, Chassen stands to suffer a total loss of his interests in JJ Arch, massive financial liabilities on the suits seeking to enforce guaranties he signed for JJ Arch, and loss of his contractual rights, all at the helm of an individual who contemptuously forum shopped his way out of this Court only to  be adjudged by another court as having filed a bad-faith bankruptcy and then after grossly mismanaged the estate.

The balance of equities tips sharply in Chassen's favor, because Chassen is merely seeking to preserve the assets of JJ Arch and to manage JJ Arch as a going concern. For his part Simpson has shown no interest in meeting his fiduciary duties or complying with court orders. There is simply no business that will be left to save unless the Court vacates or modifies Simpson's restoration during the pendency of this dispute. Since Simpson cannot be trusted to follow this Court's orders, and since Simpson himself is wholly incapable of acting as a fiduciary, the equities greatly weigh in Chassen's favor. Simpson's adjudged unclean hands—which includes an

15

adjudged bad faith bankruptcy filing and gross mismanagement—further weigh in Chassen's favor.

Ultimately, granting immediate relief will cause zero hardship for Simpson—and can only help him—because it provides the only chance to salvage JJ Arch, which he has brought to ruin and effectively admitted—in his Plan and by his conduct—cannot survive as a going concern so long as he is at the helm. *See Prudential Sec. Credit Corp., LLC. v. Teevee Toons, Inc.*, No. 603112/02, 2003 WL 346440, at *4 (N.Y. Co. Feb. 7, 2003) ("Preservation of the assets similarly presents no undue hardship for the defendants, while it is essential to plaintiff's rights therein.").

### III. The Court Should Hold Simpson in Contempt and Enforce its Orders

#### A. Simpson Took the Wrong Lesson When the Court Previously Exercised its Discretion Not to Hold Him in Contempt

In August 2023, when as a condition of Simpson's restoration to managerial control, the Court ordered that Chassen had to be provided with viewing access to company bank accounts and "such access shall not be terminated without further order of the Court," (NYSCEF No. 36), Simpson disobeyed within days, removing Chassen's bank account viewing access without court permission. *See* NYSCEF No. 198, Chassen Aff. at ¶ 39; *See* NYSCEF No. 211, Bank User Log; *See also* NYSCEF No. 83, Sept. 11, 2023 Hr. Tr. at 25:8-15 (First Republic Bank's counsel telling the Court that "on September 6th . . . Mr. Simpson or somebody acting on his behalf toggled the settings so that Mr. Chassen can no longer access the accounts online. The bank is now aware of that . . . they are working as we speak to restore full access to all of the accounts online."). Simpson denied it, but his First Republic user logs showed that First Republic's counsel was telling the truth. NYSCEF No. 211, Simpson's First Republic User Log. Though Chassen moved for contempt then, the Court exercised its discretion not to punish Simpson. Unfortunately, Simpson learned the wrong lesson from the Court's kindness.

16

But though it did not hold him in contempt, the Court recognized that Simpson "acted in ways that trouble [the Court] in terms of complying with court orders . . ." NYSCEF No. 224, Sept. 29, 2023, Hr. Tr. at 43:3-5. The Court acknowledged that it had "several times either underestimated or overestimated Mr. Simpson in terms of his reactions to being chastened as a result of court proceedings." NYSCEF No. 417, Nov. 20, 2024 Hr. Tr. at 79:18-80:1.

### B. The Court Should Hold Simpson in Civil Contempt Because He Has Routinely Disobeyed Court Orders to Chassen's Prejudice

To sustain a finding of civil contempt under N.Y. Jud. § 753, the movant must establish that a lawful order clearly expressing an unequivocal mandate was in effect, that the order was disobeyed, and that the contemptor had knowledge of the order. *Town of Copake v. 13 Lackawanna Props., LLC*, 73 A.D.3d 1308, 1309 (3d Dep't 2010). Civil contempt "is designed to compensate the injured private party for the loss of or interference with the benefits of the mandate." *McCain v. Dinkins*, 84 N.Y.2d 216, 226 (1994). Thus, prejudice is an element of civil contempt. *U.S. Bank N.A. v. Sirota*, 189 A.D.3d 927, 930 (2d Dep't 2020).

As far back as August 2023, this Court ordered that Simpson had to give Chassen bank account viewing access. NYSCEF No. 36. Simpson refused to comply with the Court's order, and instead opened new bank accounts so that Chassen would not have viewing access. Chassen Affirm. ¶ 28. This compelled Chassen to, inter alia, move to enforce that order on January 28, 2024. NYSCEF No. 606. In that motion, Chassen also warned the Court that Simpson was dissipating JJ Arch's assets, including selling them without seeking his consent, and sought books and records of Simpson's transactions at JJ Arch and its Investment Entities, as Simpson was obligated in any case to provide under the JJ Arch Operating Agreement. *Id.* After the Court issued the February TRO requiring Simpson to give Chassen books and records, viewing access to all bank accounts, and to seek Chassen's consent before any asset sales, Simpson refused to provide

FILED: NEW YORK COUNTY CLERK 10/20/2024 08:09 PM
NYSCEF DOC. NO. 642
INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/20/2024

24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
Pg 25 of 36

any books and records, refused to ensure that Chassen had access to the newly opened accounts, and continued to sell assets without seeking Chassen's consent. Chassen Affirm. ¶¶ 28-35, 46. Indeed, rather than comply with the February TRO, Simpson told Chassen to "go to court and cry." Chassen Affirm. Ex. 31. Simpson clearly had knowledge of the February TRO and the Court's orders, referencing them in his emails, and having been served via his counsel. NYSCEF No. 606.

Simpson then quickly upped his disobedience in filing the contemptuous and perjurious Petition. NYSCEF No. 631. In the Petition, Simpson asserted that he was the purported sole member of JJ Arch because of the very August 2023 termination this Court had expressly nullified in the orders restoring Simpson to managerial control. *See* NYSCEF No. 36. Simpson did not seek Chassen's consent, which was also an express condition of his own interim restoration as managing member. *Id.* Simpson was aware of the August 2023 Interim Order that nullified his August 2023 termination email, and which was incorporated into the subsequent orders, because he obtained it by his own motion. *See* NYSCEF Nos. 9-22, 37.

Further, Simpson was aware that Chassen remained a member of JJ Arch by virtue of the Court's orders because on January 29, 2024, Simpson moved for permission to terminate Chassen and filed an affidavit in support of that motion. NYSCEF Nos. 521-557. He was further aware that he needed permission to remove Chassen by virtue of his appeal to the Division, First Department. *See* Appeal No. 2024-01021. Thus, he was clearly aware that Chassen remained a member of JJ Arch under the Court's orders and that he needed the Court's permission to terminate Chassen. Simpson's own statements and conduct further show that he understood "the Interim Orders to prohibit the filing of a bankruptcy petition on behalf of the Debtor pending either: (i) a successful appeal of those Orders: or (ii) the final resolution of the State Court Proceeding." *JJ Arch II*, 2024 Bankr LEXIS 2505, at *45-46 (citing statements). And even after the Bankruptcy Court

"emphasized [that] the proper interpretation of the Interim Orders is a matter best left to Justice

Cohen," *Id.* at *47, n. 47, Simpson did everything in his power to avoid coming back to this Court

for that "proper interpretation." *Id.* His strenuous attempts to avoid coming back to this Court for

interpretation about the propriety of his bankruptcy filing further evidence his awareness that the

bankruptcy was unlawful.

Ultimately, Simpson's beliefs as to the invalidity and wrongfulness of the orders will be

no defense because "[a] good faith belief that a court order is improper or unlawful will not render

the order unlawful nor will it excuse willful disobedience." *Matter of Rankin*, 78 Misc. 3d 337,

345 (Kings Co. 2023) (citations omitted). "[I]t is elemental that a contemnor may not question the

validity of the order violated." *Mount Sinai Hosp., Inc. v. Davis*, 8 A.D.2d 361, 363 (1st Dep't

1959).

Chassen has been prejudiced by Simpson's disobedience, because these orders protected

his rights and interests in JJ Arch during the pendency of this proceeding. Chassen Affirm. ¶ 47.[9]

The Court should compel Simpson to comply with the Court's orders by, inter alia, ordering him

fined and incarcerated until he complies in full. In the interim, the Court should also enter an TRO

requiring him to immediately provide full books and records and complete bank account viewing

access as required by the Court's orders, and that he ensure continued access. Given Simpson's

adjudged gross-mismanagement of the estate, the need for an immediate TRO is now even more

compelling than it was in February 2024, when the Court granted that TRO. NYSCEF Nos. 604,

606.

---

[9] By filing bankruptcy as "sole member," Simpson also violated the Oak Preliminary Injunction,
which expressly provided that Chassen remained a member of JJ Arch and could consent to Major
Decisions with respect to AREH.

Finally, the Court should also direct an inquest to determine the amount of Chassen's damages from Simpson's contempt, which at a minimum should include all legal fees, costs, and damages connected with the contemptuous, bad-faith bankruptcy filing.

### C. The Court Should Hold Simpson in Criminal Contempt Because Simpson's Disobedience Has Been Willful and Has Damaged the Dignity of the Court

In contrast to civil contempt, "[c]riminal contempt [under N.Y. Jud. § 750] . . . involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates" and "the aim in a criminal contempt proceeding is solely to punish the contemnor for disobeying a court order, the penalty imposed being punitive rather than compensatory." *Dept. of Envtl. Protection v. Dept. of Envtl. Conservation*, 70 N.Y.2d 233, 239 (1987) (citations and quotations omitted). With criminal contempt, "[t]he proponent of a finding of criminal contempt must [also] demonstrate willfulness." *Madigan v. Berkeley Capital, LLC*, 205 A.D.3d 900, 906 (2d Dep't 2022) (citations omitted). Nonetheless, "[k]nowingly failing to comply with a court order gives rise to an inference of willfulness which may be rebutted with evidence of good cause for noncompliance." *Id.* (citations and quotations omitted). "[A] hearing [for criminal contempt] is not necessary when there is no factual dispute as to [the party's] conduct unresolvable from the papers on the motion." *Id.* (citations and quotations omitted).

"A contempt of court ultimately may constitute a criminal contempt, a civil contempt, or both a criminal and a civil contempt." *Matter of DeSiena v. DeSiena*, 167 A.D.3d 1006, 1007 (2d Dep't 2018) (citations and quotations omitted). "Although the line between the civil and criminal contempt may be difficult to draw in a given case and the same act may be punishable as both a civil and a criminal contempt, the element which escalates a contempt to criminal status is the level of willfulness associated with the conduct." *McCain*, 84 N.Y.2d at 226.

FILED: NEW YORK COUNTY CLERK 10/20/2024 08:09 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 642
RECEIVED NYSCEF: 10/20/2024

24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
Pg 28 of 36

Simpson was aware of the Court's orders, and his awareness of the orders gives rise to an inference of willfulness. *Madigan*, 205 A.D.3d at 906. Indeed, "the record overwhelmingly suggests that this bankruptcy was a means of removing the State Court Proceeding from the purview of Justice Cohen." *JJ Arch II*, 2024 Bankr LEXIS 2505, at *41. Further demonstrating Simpson's willfulness, is his email the day before the bankruptcy filing to Kevin Wiener, and his "ex parte, off-the-record email to the Honorable Deborah A. Kaplan (the Deputy Chief Administrative Judge of the New York City Courts) regarding the propriety of Justice Cohen's Interim Orders." *Id.* at *41, n 43.

By repeatedly disobeying the Court without consequence, Simpson has harmed the Court's dignity and the respect for its mandates. Simpson's disobedience warrants criminal contempt, which "is utilized to protect the dignity of the judicial system and to compel respect for its mandates." *McCormick v. Axelrod*, 59 N.Y.2d 574, 583 (1983). Only a finding of criminal contempt can remedy the damage that Simpson has done to the dignity of the Court and the judicial system.

## **CONCLUSION**

For the forgoing reasons, the Court should grant this motion in its entirety together with

such other and further relief the Court deems just and proper.


Dated: New York, New York                SCHWARTZ LAW PLLC
      October 20, 2024

                                                     By:__/s/_____
                                                   Allen Schwartz, Esq.
                                     150 Broadway, Suite 701
                                     New York, New York 10038
                                     Tel: 347-460-5379
                                     allen@allenschwartzlaw.com

                                   *Counsel for Jared Chassen*

## <u>WORD COUNT CERTIFICATION</u>

      I, Allen Schwartz, Esq., certify that the foregoing Memorandum of Law contains less than 7000 words, as counted by Microsoft Word's word-processing system, excluding the caption, table of contents, table of authorities and signature block, and that it complies with the applicable word limits.

<u>/s/</u>
Allen Schwartz

23

# Exhibit B

FILED: NEW YORK COUNTY CLERK 10/25/2024 10:15 AM
NYSCEF DOC. NO. 709

INDEX NO. 158055/2023

RECEIVED NYSCEF: 10/25/2024

24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document
Pg 32 of 36

At Part 3 of the Supreme Court of
the State of New York, held in and
for the County of New York, at the
Courthouse located at 60 Centre
Street, New York, New York on the
23rd day of October 2024

PRESENT: Hon. Joel M. Cohen,
          J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION
------------------------------------------------------------------------x
JEFFREY SIMPSON, individually and derivatively,
as managing member of JJ ARCH LLC,
suing derivatively as managing member of
ARCH REAL ESTATE HOLDINGS LLC,
and JJ ARCH LLC,

          *Plaintiffs,*

        -against-

JARED CHASSEN and FIRST REPUBLIC BANK,

          *Defendants.*
------------------------------------------------------------------------x
JARED CHASSEN, individually and derivatively
on behalf of JJ ARCH LLC, as member,
and derivatively on behalf of
ARCH REAL ESTATE HOLDINGS LLC,
as member of JJ ARCH,

          *Counterclaim Plaintiff,*

        -against-

JEFFREY SIMPSON and YJ SIMCO LLC,

          *Counterclaim Defendants,*

        -and-

JJ ARCH LLC and
ARCH REAL ESTATE HOLDINGS LLC,

Index No. 158055/2023

Justice Joel M. Cohen

Mot. Seq. 011

*Nominal Defendants.*

-------------------------------------------------------------------x

608941 NJ, INC.

      *Plaintiff,*

      -against-

JEFFREY SIMPSON, JJ ARCH LLC and ARCH REAL
ESTATE HOLDINGS LLC,

      *Defendants*,

      -and-

ARCH REAL ESTATE HOLDINGS LLC,

      *Nominal Defendant.*

-------------------------------------------------------------------x

## WARNING:
## YOUR FAILURE TO APPEAR IN COURT
## MAY RESULT IN YOUR IMMEDIATE ARREST
## AND IMPRISONMENT FOR CONTEMPT OF COURT.

## NOTICE:
## THE PURPOSE OF THE HEARING UPON THE FOLLOWING
## APPLICATION IS TO PUNISH THE ACCUSED FOR CONTEMPT OF
## COURT, AND THAT SUCH PUNISHMENT MAY CONSIST OF FINES OR
## IMPRISONMENT OR BOTH, ACCORDING TO LAW

### <u>EMERGENCY ORDER TO SHOW CAUSE</u>

Upon the annexed affirmation of Jared Chassen, together with its exhibits, the annexed

affirmation of Allen Schwartz, together with its exhibits, the memorandum of law, and all

documents cited to NYSCEF in the annexed papers, and all pleadings and proceedings had

herein:

FILED: NEW YORK COUNTY CLERK 10/25/2024 10:15 AM INDEX NO. 158055/2023

NYSCEF DOC. NO. 709    24-10381-jpm    Doc 223    Filed 10/28/24    Entered 10/28/24 10:48:41    Main Document    RECEIVED NYSCEF: 10/25/2024

Pg 34 of 36

LET Jeffrey Simpson ("Simpson") show cause before this Court, at Part 3, Room 208, at the Courthouse located at 60 Centre Street, New York, New York on _____ at _____ or as soon thereafter as counsel can be heard, why an order should not be entered:

(1) pursuant to CPLR 6314, based on compelling and changed circumstances immediately vacating or modifying those parts of the (i) the August 21, 2023 Order Regarding Interim Operating Procedures (NYSCEF 36) (the "August Interim Order"), and (ii) the September 29, 2023 Decision and Order (NYSCEF 159) (the "Simpson Preliminary Injunction"), that restored Simpson to managerial control of JJ Arch LLC ("JJ Arch"), and modifying the orders to remove Simpson from managerial control and restore Jared Chassen ("Chassen") to managerial control or ordering such other modifications that will ensure that JJ Arch is protected from Simpson during the pendency of this proceeding;

(2) enforcing this Court's prior orders and ordering that Simpson immediately provide Chassen with full viewing access of the bank accounts of JJ Arch and its Investment Entities (as defined in the JJ Arch LLC Operating Agreement), that Simpson provide Chassen with the books and records as requested by Chassen in his books and records demand, as well as a listing of all transactions at JJ Arch and any Investment Entities during the bankruptcy proceeding;

(3) holding and adjudging Simpson in civil contempt of the following Court orders: (i) the August Interim Order, (ii) the September 15, 2023 Order to Show Cause (NYSCEF 86) (the "September TRO") (NYSCEF 86), (iii) the Simpson Preliminary Injunction, (iv) the November 22, 2023 Decision and Order (NYSCEF 419)(the "Chassen Preliminary Injunction"), (v) the November 22, 2023 Amended Decision and Order (NYSCEF 418) (the "Oak Preliminary Injunction"), and (vi) the February 7, 2024 Temporary Restraining Order (NYSCEF 604) (the "February 2024 TRO") (collectively, the "Orders"), ordering Simpson incarcerated and fined until he complies with the Orders, and setting an inquest to determine Chassen's damages;

(4) holding and adjudging Simpson in criminal contempt of the Orders and punishing him by fine and imprisonment for his injury to the power and dignity of the Court; and

(5) granting such other and further relief as the Court deems just and proper.

SUFFICIENT CAUSE THEREFORE BEING ALLEGED:

~~IT IS ORDERED that pending the hearing and adjudication of this motion, Simpson is hereby enjoined and restrained from acting as managing member of JJ Arch, and Chassen shall act as managing member of JJ Arch; and it is further~~

~~ORDERED that Simpson immediately provide, and continue to provide, Chassen with (1) complete access to the bank accounts of JJ Arch and its Investment Entities (as defined in the JJ Arch LLC Operating Agreement), (2) JJ Arch and its Investment Entities' books and records as previously requested by Chassen in his books and records demands, and (3) a complete listing of all transactions at JJ Arch and its Investment Entities during the pendency of the bankruptcy proceeding; and it is further~~

~~ORDERED that opposition to this motion, if any, shall be e-filed on NYSCEF on or before _____, 2024; and it is further~~

~~ORDERED that reply, if any, shall be e-filed on NYSCEF on or before _____, 2024;~~

~~LET service of this Order and annexed affidavits upon Jeffrey Simpson, or his counsel, if any, via NYSCEF and email, or Fedex overnight courier, on or before _____, _____ be deemed good and sufficient service thereof.~~

**The Court declines to sign the proposed order to show cause for the reasons stated on the record following oral argument on October 23, 2024. In short, the Court has been presented with a notice of the removal of this case to federal District Court (NYSCEF 635), but has not yet been presented with a final order from the Southern District of New York remanding the proceeding to this court. Accordingly, there is no clear basis for the Court to exercise jurisdiction to consider Defendant Chassen's request for relief.**

**The movant is asked to obtain and upload the transcript of the October 23, 2024 hearing to NYSCEF upon receipt.**

[Signature page follows.]

ENTER:

Hon. Joel M. Cohen, J.S.C.

Date: 10/24/24